IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RANDI FREYER,
BRANDY BECK,
ERIN ZIELINSKI, and            Case No. 1:19-cv-03468-CMA-SKC
SHANNON KIEDROWSKI

      Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

      Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

## I.     Introduction and Summary of Argument

Plaintiffs, four long-time pilots at Frontier Airlines, never doubted that they could continue to pursue their careers after starting their families. Yet they faced systemic discrimination during and after their pregnancies that literally grounded them from flying. Frontier forced each of the Plaintiffs onto unpaid leave at a certain point during their pregnancies, regardless of their medical fitness to fly, and with no possibility of receiving any accommodations that would have enabled them to continue working. As Frontier offered no paid parental leave and only a short period of unpaid leave following childbirth,[1] Plaintiffs were all still breastfeeding their newborns when it came time for

---

[1] Contrary to Defendant's suggestion (Def. Mot. 1), Plaintiffs do not challenge the lack of paid parental leave as itself violating the law, but rather, reference the lack of paid leave as the reason they were still nursing when they returned to work. Compl. ¶ 2. Paid leave was just one of several accommodations—or less discriminatory alternatives—Plaintiffs proposed to prevent them and others from being forced off the job during pregnancy and while they were nursing.

them to return to work. Yet Frontier refused to make it possible for them to pump breast milk on the job.[2] Plaintiffs paid a steep price as a result of these policies and practices, including being forced onto unpaid leave, depriving them of critical income when they needed it the most; forced to give up breastfeeding and the many associated benefits for their health and their babies' health; and forced to work under conditions that caused them pain and distress and put their health at risk.

Plaintiffs claim that their treatment and Frontier's broader policies violate Title VII and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401 *et seq*., as well as two Colorado laws affirmatively requiring employers to accommodate pregnancy and breastfeeding: the Law on Reasonable Accommodations for Pregnancy and Related Conditions, commonly referred to as the Pregnant Workers Fairness Act ("PWFA"), Colo. Rev. Stat. Ann. § 24-34-402.3, and the Colorado Workplace Accommodations for Nursing Mothers Act ("WANMA"), Colo. Rev. Stat. § 13-1-124(1). Plaintiffs seek monetary relief, a declaration that Frontier's policies and practices were unlawful, and injunctive relief to enact policy changes that would enable pregnant and breastfeeding pilots to continue working.

Defendant concedes that at least one claim—Randi Freyer's challenge to the ban

---

[2] As detailed in the Complaint (¶¶ 28-32), those who are breastfeeding and are separated from their babies must remove, or "express," breast milk from the breast on roughly the same schedule as the baby's feeding schedule—approximately every 2-3 hours. This is usually accomplished by using a breast pump, which is a manual or electric device for drawing milk from the breasts by suction—a process referred to as "pumping." The process typically takes 15-20 minutes. Failure to remove milk from the breasts with sufficient frequency causes pain, swelling, discomfort, and leaking breast milk, and can lead to medical complications, including blocked ducts or mastitis, an infection of the breast tissue, as well as diminished milk supply, and ultimately cessation of lactation altogether.

on flying after 32 weeks of pregnancy—is both valid and timely, and must move forward to discovery. (Def. Mot. 16, 24.) But it moves to dismiss "the vast majority" of Plaintiffs' claims as untimely, even as it simultaneously concedes the timeliness of numerous allegations supporting their claims under Title VII, CADA, PWFA, and WANMA. (*See* Def. Mot. 16.)[3] Defendant further asserts that the allegations related to failure to accommodate pregnancy and breastfeeding fail to state a claim under Title VII and CADA, and the state CADA, PWFA and WANMA claims are preempted by the Federal Aviation Act (FAA) and the Airline Deregulation Act (ADA). None of these arguments has merit.

First, Plaintiffs' claims are timely for several reasons. Plaintiffs' claims accrued on March 25, 2016 when Frontier constructively denied their request for accommodations and policy changes sent by counsel. In addition, Plaintiffs remain subject to the discriminatory policies in question and seek forward-looking relief. Moreover, wholesale dismissal of their damages claims is inappropriate because at least one Plaintiff suffered harms during the relevant statutory time period as a result of the challenged policies. And they make allegations regarding their need for accommodations and Frontier's discriminatory conduct during the relevant time periods, which Defendant has either ignored or mischaracterized.

Second, Plaintiffs' 67-page, 361 paragraph Complaint readily satisfies the requirements of Rule 12, setting forth in detail the factual basis for pursuing both disparate treatment and disparate impact claims. Plaintiffs allege that the challenged

---

[3] Frontier concedes that specific Plaintiffs' allegations supporting claims 1-6 and 11-13 are timely. (Def. Mot. 16.)

policies are specifically targeted at pregnancy and lactation, thus constituting facial discrimination. They further allege that Frontier denied their accommodation requests related to pregnancy and breastfeeding, while at the same time, accommodating others similar in their ability or inability to work—including by permitting other employees to take breaks necessary to address their physiological needs and by providing them with temporary placement in ground positions for reasons unrelated to pregnancy or breastfeeding. Plaintiffs also state valid disparate impact claims because they adequately identify the practices they are challenging and allege that they affect pregnant and breastfeeding pilots exclusively. And Plaintiffs make detailed allegations regarding Frontier's repeated failures to respond to their accommodation requests, as required by PWFA, or to make reasonable efforts to provide breaks and a location to pump other than a restroom as required by WANMA. Therefore, Plaintiffs far exceed the standard necessary to survive a motion to dismiss as to each of their claims.

Finally, Frontier's preemption arguments are premature. They concern ordinary preemption, an affirmative defense that does not implicate this Court's subject matter jurisdiction and that requires an examination of disputed facts that cannot be resolved from the face of the Complaint. Preemption is therefore inappropriate for resolution under either Rule 12(b)(1) or Rule 12(b)(6).

Defendant's motion should therefore be denied in its entirety.

## II.   Statement of the Case[4]

### A.   The Post-32 Week Pregnancy Ban (Compl. ¶¶ 37-43)

Frontier maintained a written policy requiring pregnant pilots to "request maternity leave"—a euphemism for ceasing work altogether, as Frontier offered no paid parental leave—by no later than 32 weeks of pregnancy ("the post-32-week pregnancy ban"). Pregnancy is the only medical condition Frontier singled out for an automatic disqualification from flying, despite Federal Aviation Administration ("FAA") guidelines providing that pregnancy is not disqualifying and leaving fitness determinations to be determined case by case. All four Plaintiffs were grounded and forced onto unpaid leave during their pregnancies pursuant to this policy; Ms. Freyer and Ms. Kiedrowski would have been fit to fly beyond their 32nd week. Compl. ¶¶ 80, 94, 196.

### B.   Forced Unpaid Leave and Refusal to Accommodate Pregnancy (¶¶ 44-48)

Despite grounding pregnant pilots at least two months before their due dates, Frontier provided no alternatives that would have enabled them to continue working during the period when they were grounded. All four Plaintiffs allege that they would have been able to continue working in ground positions after the point in pregnancy when they were no longer able to fly. *Id.* ¶¶ 80, 94, 138, 163, 196. During her first pregnancy in 2014, Ms. Freyer emailed several individuals at Frontier, including the Chief Pilot and the Director of Training, requesting a ground position after her 32nd week. No one responded to her emails. Compl. ¶ 81. And although she also would have

---

[4] Plaintiffs contest many of Defendant's characterizations of the facts. Where there is a discrepancy between Plaintiffs' factual allegations and Defendant's characterization, the Complaint is what controls in evaluating this Rule 12(b) motion. *See Carroll v. Jefferson Cty. Sheriff*, No. 1:19-CV-02132, 2020 WL 5015454, at *1 (D. Colo. Aug. 25, 2020).

been able to work in a ground position in the last two months of her second pregnancy in 2015, she believed based on her prior experience that requesting one would have been futile. *Id.* ¶ 95.

      C.    <u>Refusal to Accommodate Breastfeeding and Ban on Pumping (¶¶ 49-77)</u>

      Although Plaintiffs were still breastfeeding when they returned to work, Frontier had no policy to accommodate breastfeeding. Frontier provided neither breaks to express breast milk nor accessible, sanitary facilities to use for pumping. All four Plaintiffs requested accommodations to continue breastfeeding, which Frontier systematically ignored or categorically denied. Frontier even went so far as to prohibit the use of regular breaks for pumping, even though pilots are permitted to take breaks as needed to address other physiological needs, like using the restroom.

      Ms. Kiedrowski was the first to encounter these obstacles. She had pumped breast milk on the aircraft without incident when she returned to work after having her first child in 2011. But when she did the same after having her second child, she was disciplined after another pilot reported her for pumping on duty. Frontier management, including the Chief Pilot and a representative of Frontier's HR department, Michelle Zeier, suggested she give up breastfeeding and feed her child formula if she wanted to continue flying. Frontier prohibited her from pumping while on duty at all—even between flights. When she suggested Frontier adopt policies to address the needs of nursing moms, the company brushed her off, implying the issue was unlikely to arise again. Compl. ¶¶ 198-216.

      But it did. When Ms. Zielinski reached out to HR during her first pregnancy in 2014 to request information on what accommodations would be available for pumping,

Frontier pointed her to a lactation room at DIA, but gave her no further information. When she followed up again to ask where she could pump at other airports, she received an email from Ms. Zeier, which she believes was copied to her in error, stating "She's still baiting us. No reply. She needs to come in for a meeting. No recordings/no games." Almost immediately after that, her work email address and access to company manuals was abruptly suspended—which an IT representative informed her had been done at Ms. Zeier's direction. This experience left her feeling too intimidated and fearful to pursue her requests for accommodations, and she ended up taking unpaid medical leave. *Id.* ¶¶ 165-76. As a result, when it came time for her to return to work following the birth of her second child in June 2016, she sought an extension of her unpaid leave, believing she had no other choice. *Id.* ¶ 189.

Ms. Beck's experience was similar: prior to returning to work with her second child in March of 2015, she notified Frontier of her need for breaks; having received no response, in July 2015 she requested permission to pump in the aircraft lavatory. Frontier did not respond until August 18, 2015—three months after she had already returned to work—when it prohibited her from pumping in the lavatory. Although she was promised a list of locations at outstations, the list was never provided to her, and she continued to pump without accommodations, suffering frequent pain and engorgement and diminished milk supply as a result. *Id.* ¶¶ 143-56.

Ms. Freyer faced the same issues following the births of both her first and second children. After having her first child in 2015, her numerous emails and phone calls requesting information about breastfeeding accommodations went entirely unanswered. As a result of returning to work without accommodations, she suffered from mastitis

twice. *Id.* ¶¶ 90-91. Her efforts to secure accommodations after having her second child were no more successful. In March 2016 she advised Frontier of her need to take regular breaks due to breastfeeding. *Id.* ¶¶ 98-99, 101, 105.[5] Frontier responded several weeks later by encouraging her to seek an unpaid leave of absence and directing her to speak with a different HR representative about lactation accommodations. She was eventually given a form stating: "Nursing Mothers: If you are an expecting mother applying for a leave of absence and have a need to express breast milk at work after returning please contact the leave department. We will work with you to make necessary arrangements." Despite filling out the form and asking, "Can someone please tell me what types of arrangements would be possible?" *Id.* ¶¶ 100-01, no one answered. Instead, she was placed on medical leave. In fact, it was not until December 2016 that Frontier finally responded to her request—by prohibiting her from pumping during flight. *Id.* ¶¶ 105-06.

Determined to comply with the prohibition on pumping during flight, Ms. Freyer made repeated efforts over the course of the next several months, from December 2016 through April 2017, to obtain assistance with modifying her flight schedule to avoid flights longer than 3-4 hours. Although Frontier initially indicated it would provide such assistance, she was ultimately told that *she* was responsible for rearranging her schedule herself using Frontier's automated system for bidding for schedules—despite

---

[5] Defendant misrepresents the nature of Ms. Freyer's March 31 request, asserting that she did not request breaks but only a leave of absence. Def. Br. 6. The Complaint clearly alleges that Ms. Freyer notified Frontier of "her need to take regular breaks"— which plainly amounts to a request for breaks. Compl. ¶ 98. Ms. Freyer's inquiry regarding *eligibility* for medical leave did not absolve Frontier of its responsibility to respond to her other accommodation request.

her explaining that it was not technically possible for her to do so. *Id*. ¶¶ 106-16.

D.    Failure to Provide Locations to Pump

In addition to denying Plaintiffs' requests for accommodations in flight, Frontier failed to provide locations to pump at airports to which Frontier flies. Although there is a designated lactation room at DIA, Plaintiffs were not informed of its existence or given the information they needed in order to access it. Ms. Beck alleges that on the two occasions she attempted to use the room she was unable to do so, once because it was in use as a storage facility and once because the key she had been provided did not work. She was later told that a new facility had been designated but no one had informed her of the change. *Id*. ¶ 152. Ms. Freyer also describes being unable to access the DIA lactation room—for example, when no one bothered to provide her with the access code necessary for entry—despite her repeated entreaties for assistance in finding locations to pump at airports. *Id*. ¶ 123.

Moreover, Frontier for years ignored repeated requests, including from Ms. Zielinski, Freyer, and Beck, for assistance in identifying locations where they could pump at "outstations." *Id*. ¶¶ 68, 117-18. Although Frontier eventually provided a list of locations to Ms. Freyer—*after* Plaintiffs had filed their EEOC charges—the list was largely worthless. Many airports to which Frontier flies had no location listed, and of those that were listed, almost all turned out to be inaccessible or unusable. *See Id*. ¶¶ 68, 118-29, 151-52.

E.    Plaintiffs' Administrative Complaints

As Plaintiffs' individual attempts to obtain accommodations were unsuccessful, they sought counsel and sent Frontier a letter demanding accommodations and policy

changes. *Id.* ¶¶ 225-26. When Defendant failed to respond by the requested date, March 25, 2016, Plaintiffs filed Equal Employment Opportunity Commission ("EEOC") charges on May 9, 2016 and an amended charge on May 27, 2017. Following a two-year EEOC investigation, they filed suit. *Id.* ¶ 227.[6]

### III.    Plaintiffs' Claims are Timely

Each of Plaintiffs' claims accrued on March 25, 2016, well within the relevant period for Title VII, CADA, and WANMA, when Frontier constructively denied Plaintiffs' written request that Frontier provide necessary accommodations for pregnancy and breastfeeding and modify its discriminatory policies. *Id.* ¶ 225. This amounted to notice to each of the Plaintiffs of a fresh, clear, and actionable denial of accommodation, causing their corresponding claims to accrue on that date. *See Proctor v. United Parcel Serv., Inc.*, 502 F.3d 1200, 1206 (10th Cir. 2007) ("[A] cause of action accrues on the date the employee is notified of an adverse employment decision by the employer.").

Even absent Defendant's express denial of accommodation, Plaintiffs' claims would be timely because Plaintiffs remain employed at Frontier and seek forward-

---

[6] Defendant's references to correspondence between Frontier and the FAA (Def. Exs. 2-4) occurring after this suit was filed are not properly considered by the Court on a motion to dismiss and should be struck from the record. (*See* Def. Mot. at n.5, 20 n.16.) As Defendant itself acknowledges, the Court may only consider documents outside the complaint if they are "both central to Plaintiff's claims *and* to which Plaintiff refers in her complaint." *Id.* (emphasis added); *accord GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Frontier's correspondence with the FAA is neither central to Plaintiffs' claims nor referred to in the Complaint. Thus, any consideration by this Court would be improper. *See Parr v. Stevens*, No. 18-CV-01955-KLM, 2019 WL 1358849, at *6 (D. Colo. Mar. 25, 2019). Nor would consideration aid the Court in resolving disputed jurisdictional issues under Rule 12(b)(1) because, as explained in Part III below, Frontier's preemption arguments concern ordinary rather than complete preemption and thus do not implicate this Court's jurisdiction. Pursuant to CMA Civ. Practice Standard 7.1D, Plaintiffs oppose conversion of the instant motion into a summary judgment motion.

looking relief against the operation of discriminatory policies that continue to affect them.[7] Plaintiffs challenging the harmful effects resulting from implementation of ongoing discriminatory policies may assert disparate impact claims, so long as the discriminatory *application* of those policies continues within the statutory filing window. *See Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010). Moreover, plaintiffs may prospectively challenge a discriminatory policy under Title VII, regardless of whether the policy has yet been applied to them, based on "a danger of future violations." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997). Accordingly, courts have routinely found that employees may challenge policies that discriminate based on pregnancy, even if they were not actually pregnant at the time the discrimination occurred, due to their capacity to become pregnant in the future. *See Int'l Union, United Auto, Aerospace, & Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991); *Jolley v. Phillips Educ. Grp. of Cent. Fla., Inc.*, No. 95-147-CIV-ORL-22, 1996 WL 529202, at *3 (M.D. Fla. July 3, 1996); *Pacourek v. Inland Steel Co.*, 858 F. Supp. 1393, 1401 (N.D. Ill. 1994).

Here, Plaintiffs remain subject to the challenged policies, and are at risk of being subjected to them should they become pregnant again. Plaintiffs Zielinski and Freyer, who have each given birth and breastfed again at least once since their EEOC charges

---

[7] Even if Frontier were to have since altered its position on any of the challenged policies and practices, Plaintiffs would still maintain damages claims for harms they suffered during the time the policies were in effect, and further, could still obtain declaratory and injunctive relief to ensure they are not reinstated. *See Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016) ("[V]oluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." (citations omitted)).

were first filed in 2016, are a case in point. Moreover, the ongoing operation of the challenged policies "continues to affect [Plaintiffs'] family and reproductive decision-making" to this day. *See* Compl. ¶¶ 133, 159, 193, 223.

Plaintiffs' damages claims are also timely because they allege ongoing violations and because at least one violation supporting their claims occurred during the statutory window. Plaintiffs alleging "continuing violations" of law, as Plaintiffs do here, may seek damages for related acts occurring outside the relevant statutory window so long as those acts "collectively constitute one unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)); *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019). Alternatively, plaintiffs alleging a discriminatory act with repeated (though discrete) discriminatory effects, both inside and outside of the limitations period, may seek damages for those acts taking place within the limitations period. *Hamer*, 924 F.3d at 1107. Here, Plaintiffs challenge several systemic, unlawful employment practices, and at least one Plaintiff was pregnant or breastfeeding (or both) and has alleged actionable conduct supporting her claims occurring during the relevant time frame. These allegations are summarized in the chart below.[8]

---

[8] Plaintiffs recognize that because some of the challenged conduct (*e.g.* Ms. Kiedrowski's experiences) took place outside the relevant limitations period, they may ultimately be precluded from seeking *damages* in connection with that conduct. *See Hamer*, 924 F.3d at 1107. But all Plaintiffs retain the ability to seek forward-looking relief. Moreover, Title VII allows consideration of acts outside the statutory window "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113. Here, such allegations are relevant to (a) Plaintiffs' disparate impact claims, (b) the likelihood of future harm, and (c) Frontier's notice of the policies' discriminatory effects and willfulness in refusing to modify them.

| Claim | Cause(s) of Action | Relevant Period | Allegations, Paragraph, and Time Period Alleged |
|---|---|---|---|
| *Post 32-week pregnancy ban* | | | |
| *Title VII* | 1 | 7/11/15 | ¶¶ 93-94: *10/1/15-12/5/15*<br>**Freyer** was grounded following her 32nd week of pregnancy despite being healthy and fit to fly. |
| *Forced unpaid leave and refusal to accommodate pregnancy* | | | |
| *Title VII* | 2, 3 | 7/11/15 | ¶¶ 80, 93-95: *10/1/15-12/5/15*<br>**Freyer** was forced onto unpaid leave following her 32nd week of pregnancy but would have been able to work a ground position during the time she was grounded. |
| *CADA* | 9, 10 | 11/8/15 | |
| | | | ¶¶ 163, 186: *3/9/16-6/23/16*<br>**Zielinski** went on medical leave during pregnancy but would have been able to work a ground position during the time she was grounded. |
| *Refusal to accommodate breastfeeding and ban on use of breaks for pumping* | | | |
| *Title VII* | 4, 5 | 7/11/15 | ¶¶ 97-116: *3/31/16-4/13/17*<br>**Freyer** made multiple requests for breastfeeding accommodations to no avail (7/31/2016-4/8/2017). Frontier denied her requests and placed her on medical leave. Frontier prohibited her from using physiological needs breaks to pump (12/8/2016, 12/23/2016, 3/22/2017, 4/13/2017). She was never provided schedule modifications despite numerous requests (starting 11/27/2016). She returned to work in March/April 2017 and pumped without accommodations, suffering pain and engorgement. |
| *CADA* | 12, 13 | 11/8/15 | |
| *PWFA* | 11 | 8/10/16 | |
| | | | ¶¶ 143-50: *7/29/15-12/1/16*<br>**Beck** made requests for breastfeeding accommodations (May 2015 and 7/29/15). Frontier did not respond for months, then prohibited her from using physiological needs breaks to pump in the lavatory (8/18/2015). She returned to work in July 2015 and pumped without accommodations, suffering pain and engorgement. |
| | | | ¶¶ 189: *6/23/16-11/1/17*<br>**Zielinski** found it futile to request an accommodation to breastfeed her second child after being refused an accommodation with her first child. "[S]he felt that her only option was to seek an extension of her unpaid 'maternity' leave" through November 2017. |

| Claim | Cause(s) of Action | Relevant Period | Allegations, Paragraph, and Time Period Alleged |
|-------|---------|----------|---------------------------------------------------|
| *WANMA* | 6 | 5/26/15 | **¶¶ 117-29: *3/31/16-4/13/17*** **Freyer:** Defendant failed to make reasonable efforts to respond to Freyer's accommodation requests and failed provide break time or a location other than a toilet to pump. Frontier failed to provide adequate pumping locations at DIA or at outstations, despite repeated requests. Freyer pumped without accommodations beginning in March/April 2017, suffering pain and engorgement. <br><br> **¶¶ 68, 150-54: *7/29/15-12/1/16*** **Beck:** Defendant failed to make reasonable efforts to respond to Beck's accommodation requests and failed to provide break time or a location other than a toilet to pump. Frontier failed to provide adequate pumping locations at DIA or at outstations, despite repeated requests. Beck was unable to access lactation room at DIA in August 2015, December 2015, and May 2016. |

Finally, Frontier contends that various Plaintiffs' claims are time-barred because they did not request accommodations during a particular time window. But Plaintiffs are not required to allege that they requested accommodations; rather, they must allege plausible facts giving notice of a discriminatory employment practice that harmed them. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Because they have met that standard, and because the conduct they describe took place within the relevant statutory windows, Plaintiffs' claims are timely.

For example, Defendant argues that Ms. Freyer's CADA claims based on her second pregnancy in October 2015 are not timely. (Def. Mot. 15.) This ignores that Ms. Freyer was grounded for approximately the last 8 weeks of pregnancy—from October 1, 2015 through December 5, 2015, which timeframe includes approximately one month *after* the November 8, 2015 CADA cutoff—during which she would have been able to work had Frontier made that option available. Compl. ¶ 80. Similarly, Frontier ignores

14

Ms. Freyer's allegations that she did not seek a ground position because it would have been futile considering the lack of response to her previous requests. *Id.* ¶ 95. Under the circumstances, she was not required to repeat a request that Frontier had previously completely ignored and that its own written policy—which by its terms, *required* her to "request maternity leave" rather than a ground position, *Id.* ¶ 37—plainly does not allow.

As another example, Defendant's argument that Ms. Zielinski did not request a ground position or breastfeeding accommodations during the limitations period similarly misses the mark. The Complaint alleges that Ms. Zielinski would have been able to work in a ground position at the end of her pregnancy if she had the option, and that she sought extended leave only because she believed requesting breastfeeding accommodations would have been futile: Frontier's response to her accommodation request following the birth of her first child—accusing her of "baiting" the company and playing "games," and freezing her access to work email and resources, *Id.* ¶¶ 169-77— led her to conclude that unpaid leave that was her "only option." *Id.* ¶ 189.

Similarly, Defendant ignores Ms. Beck's allegations that she did request accommodations—twice—and did not receive them. Frontier *never* responded to the request for breaks contained in her doctor's letter (aside from prohibiting her from pumping in the lavatory). When she returned to work in July 2015, she had no choice but to pump without accommodations. *Id.* ¶¶ 144-56. "An indeterminate delay has the same effect as an outright denial." *See*, *e.g.*, *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (failure to respond within six months was sufficient for a reasonably prudent person to assume his requested accommodation had been constructively denied). And she requested a list of lactation locations from

Frontier's HR department in June 2016, which Frontier never provided. *Id.* ¶ 160. Thus, her allegations that she was denied accommodations and pumped for several months without them are timely under CADA, PWFA, and Title VII.

## IV.   Plaintiffs State Valid Claims Under Title VII, CADA, PWFA, and WANMA

At the 12(b)(6) stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz*, 534 U.S. at 511. Moreover, because plaintiffs alleging sex discrimination may show discrimination using several different theories and methods of proof, there is no requirement to affirmatively plead specific elements of the *prima facie* case in order to advance beyond the pleading stage. *See id*; *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Plaintiffs easily meet this standard for each of their claims.

### A.   Plaintiffs' Disparate Treatment Claims under Title VII and CADA are Valid

The Complaint adequately supports Plaintiffs' intentional discrimination claims under both the "direct" and "indirect" methods of proof.[9] Policies or practices that expressly single out a protected characteristic for differential treatment constitute "direct evidence" of discrimination. *See Johnson Controls*, 499 U.S. at 199. Such policies presumptively discriminate "because of sex," with the only available defense being to demonstrate that the discriminatory classification is a bona fide occupational qualification ("BFOQ"). *Id.*; 42 U.S.C. 2000e-2(e).

---

[9] These claims are Causes of Action nos. 1, 2, 4, 7, 9, and 12. Defendant mischaracterizes the nature of Causes of Action nos. 2 and 3. (Def. Mot. 24 n.17.) To be clear, Cause of Action 2 explicitly specifies that it is a disparate treatment (not disparate impact) claim, Compl. at p. 44, and Cause of Action 3 addresses the practice of grounding pilots during pregnancy without alternatives as a form of discriminatory treatment. *Id.* ¶¶ 250-57.

Here, several of the policies challenged—the post-32-week pregnancy ban, the categorical refusal to accommodate pregnancy or breastfeeding, and the ban on the use of physiological needs breaks for pumping breast milk—"rel[y] expressly on a protected characteristic." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015).[10] As Frontier's HR representatives' responses to Ms. Freyer's and Beck's accommodation requests indicate, Frontier does not consider pregnancy *or* breastfeeding eligible for accommodations and categorically prohibits pumping in flight—which is facially discriminatory. Compl. ¶¶ 106, 108, 113, 149. Aside from acknowledging that the challenge to the post-32-week pregnancy ban states a valid claim subject to a BFOQ defense, Defendant has not addressed the "direct" method of proof for these other policies. But even if it had, it would be inappropriate to credit any such affirmative defenses at this stage. Plaintiffs' challenge to these overtly discriminatory policies thus survives dismissal.

The Complaint also supports a finding of pregnancy discrimination using the "indirect" method of proof. As established above, Plaintiffs are not required to plead the elements of the *prima facie* case at all. *See Swierkiewicz*, 534 U.S. at 510; *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). But the fact that a plaintiff *has*

---

[10] Defendant does not dispute Plaintiffs' membership in a protected group for purposes of their Title VII and CADA claims related to failure to accommodate breastfeeding, nor could it seriously do so. As numerous courts have recognized, lactation is covered under Title VII's prohibitions on sex discrimination because it is sex-linked and is a pregnancy-related condition. *See Hicks v. Tuscaloosa*, 870 F.3d 1253, 1259 n.8 (11th Cir. 2017); *EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 (5th Cir. 2013); *Allen-Brown v. District of Columbia,* 174 F. Supp. 3d 463, 478 (D.D.C. 2016); *Martin v. Canon Bus. Sols., Inc.*, No. 11-CV-02565-WJM-KMT, 2013 WL 4838913, at *8 n.4 (D. Colo. Sept. 10, 2013); EEOC, *Enforcement Guidance: Pregnancy Discrimination and Related Issues* (June 25, 2015) at *13 & n.106, *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues.

pled facts supporting the *prima facie* case may inform the Court's analysis of whether a

complaint states a plausible claim. *Khalik*, 671 F.3d at 1190-92. Under the familiar

*McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence of

discrimination must demonstrate that (1) they belong to a protected class; (2) they

suffered adverse employment actions; and (3) the challenged actions took place under

circumstances giving rise to an inference of discrimination. *Tabura v. Kellogg USA*, 880

F.3d at 544, 549 n.3 (10th Cir. 2013). The standard is "not onerous." *Young*, 135 S. Ct.

1338 at 1354; *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (showing required

is "de minimis").

　　　　The Supreme Court in *Young v. United Parcel Service* explained one way in

which this standard may be met by a plaintiff challenging failure to accommodate

pregnancy: by showing "that [1] she belongs to the protected class, [2] that she sought

accommodation, [3] that the employer did not accommodate her, and [4] that the

employer did accommodate others 'similar in their ability or inability to work.'" *See*

*Young*, 135 S. Ct. 1338 at 1354.

　　　　Defendant does not dispute that Plaintiffs satisfy the first three prongs of the

*Young* test, but rather, limits its argument to the fourth element—the purported failure to

identify others who received breaks to pump during flight and were otherwise sufficiently

"similar" to Plaintiffs. (Def. Mot. 27.) But Plaintiffs *do* adequately allege similarly situated

comparators. First, Plaintiffs allege that they sought *other* accommodations in addition

to pumping during flight—including schedule modifications and temporary ground

positions—that Frontier has provided as a matter of both policy and practice to other

pilots. Those include pilots with "disabilities, injuries, and medical conditions unrelated

to pregnancy, childbirth, or lactation," but who are otherwise "similar in their ability or inability to work" due to their inability to fly. *See* Compl. ¶¶ 47-48, 241-42, 246, 260-62, 267, 314-15, 319, 343-44.[11] The existence of such policies alone would be sufficient to satisfy *Young*'s fourth prong. *See Young*, 135 S. Ct. 1338 at 1344 (instructing courts to "to consider the extent to which an employer's policy treats pregnant workers less favorably than it treats non-pregnant workers similar in their ability or inability to work"); *Durham v. Rural Metro Corp.*, 955 F.3d 1279, 1286 (11th Cir. 2020) (employer policies of accommodating those injured on the job and of considering accommodations for those with ADA-qualifying conditions constituted sufficient comparator evidence to satisfy *prima facie* case under *Young*); *Legg*, 820 F.3d at 74 (same). And even if these policies were not sufficient, Plaintiffs further allege that they are personally aware of specific individuals who were unable to fly for conditions unrelated to pregnancy, including for vertigo and seizures, and who have been provided ground positions, including several individuals who have enjoyed a transfer to non-flying administrative or management positions after suffering an on-the-job injury or loss of medical certification.[12] Compl. ¶¶ 104, 220.

---

[11] Although this source is not directly referenced in the Complaint, Plaintiffs do not object to the Court's taking judicial notice of the terms of the collective bargaining agreement between Frontier Airlines and the Frontier Airline Pilots' Association (*hereinafter* "FAPA CBA"), which Defendant has introduced, because it is one of the bases for these allegations and is thus incorporated into the Complaint. The FAPA CBA provides for temporary assignment to ground or "non-flying" positions in a variety of circumstances, including allowing "modified duty" to pilots injured on the job, and permitting transfer of pilots who lose their medical certification due to sickness or injury to "No Bid" or "Management" status and designated a "Special Project Pilot" with "administrative or other non-flying duties." FAPA CBA §10, DE 33-2, at 111-12, 146.

[12] Defendant's somewhat baffling reference to Rule 11 notwithstanding, Plaintiffs allegations as to particular comparators are made upon information and belief formed

Plaintiffs also adequately allege comparators with respect to their requests for permission to pump during flight. Frontier pilots routinely take permitted breaks to address "physiological needs," which can take anywhere from "5-10 minutes and … even longer on occasion." Compl. ¶¶ 69-77. But Plaintiffs have been categorically denied permission to use even those existing breaks for pumping—no matter their duration. *See id.* ¶¶ 106, 108 (stating Frontier "cannot accommodate [Ms. Freyer] pumping in the lav[atory] while in flight"); 149 (informing Ms. Beck the lavatory was "not a designated room for pumping").

Plaintiffs need not, as Defendant suggests, allege *specific individuals* who also "requested and were granted permission to take breaks of the [same] length and frequency." (Def. Mot. 28.) Pilots are permitted to take physiological needs breaks *without any limits* in length or duration and *without making any specific request* to do so. Compl. ¶¶ 72-76. Nor does the fact that Plaintiffs requested breaks every 2-3 hours mean that Plaintiffs are not adequately "similar" to other pilots who "routinely" use the allowed breaks on an unscheduled, as-needed basis. Their similarity lies in the fact that, like all other pilots, they need periodic breaks to address the "discomfort"—and potential resulting health risks—that would result from ignoring their physiological needs. *See Durham*, 955 F.3d at 1286 ("[T]he comparator analysis under the PDA focuses on a single criterion—one's ability to do the job.").[13]

_____

under a reasonable inquiry and good faith investigation by Plaintiffs and their counsel. The full basis for these allegations will of course be illuminated in discovery.

[13] The duration and frequency of the breaks requested does not go to whether Plaintiffs and the comparators are sufficiently similar, but rather, to the feasibility of the requested accommodation. *See Durham*, 955 F.3d. at 1286 (plaintiff EMT's restriction on lifting over 50 pounds due to pregnancy and others' restrictions on lifting more than 10 or 20 pounds due to on-the-job injuries were similar in their ability or inability to work because

The cases Defendant relies upon are distinguishable either, as in *LaCount*, because the plaintiff failed to allege that others who had been accommodated were similar in their ability or inability to work, *see LaCount v. S. Lewis SH OPCO, LLC*, No. 16-CV-0545, 2017 WL 1826696, at *5 (N.D. Okla. May 5, 2017), or, as in *Clark*, because *after trial* the evidence of comparators was found to be insufficient. *Compare Clark v. City of Tucson*, No. CV-14-02543, 2020 WL 914524, at *14 (D. Ariz. Feb. 26, 2020) *with Clark v. City of Tucson*, No. CV 14-02543, 2018 WL 1942771, at *17 (D. Ariz. Apr. 25, 2018) (denying summary judgment on the same grounds). Here, Plaintiffs allege that other employees with similar limitations on their ability to work (*e.g.*, their inability to fly for whatever reason) have been accommodated, while Plaintiffs were not. No further detail is required at this stage. *See West v. Wynne*, No. CIV.A. 06-CV-01349-P, 2007 WL 2116381, at *2 (D. Colo. July 19, 2007) (although plaintiff would ultimately have to present comparative evidence that she was treated worse than others due to her lifting restriction, lack of such allegations did not warrant dismissal at pleading stage).

B.    Plaintiffs' Disparate Impact Claims under Title VII and CADA are Valid

In addition, Plaintiffs state a valid claim that the challenged policies have a disparate impact on the basis of pregnancy in violation of Title VII and CADA. To establish a *prima facie* disparate impact claim, plaintiffs must: (1) identify a particular employment practice (2) demonstrate a disparity that disadvantages a protected group,

---

they were "equally unable to perform the 100-pound lifting duties"). If Defendant considered the request unreasonable, it was required to engage in an interactive process to identify an alternative, for example, by allowing breaks for pumping but setting limits on their frequency and/or duration.

and (3) prove a causal link between the identified practice and the disparity. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). Disparate impact theory may be used to attack a set of employment practices or decision-making, as opposed to a discrete policy. *See Smith v. Merck & Co., Inc.*, No. 13-CV-2970, 2014 WL 5026321, at *9 (D.N.J. Oct. 8, 2014); *Barrett v. Forest Labs, Inc.,* 39 F. Supp. 3d 407, 437 (S.D.N.Y. 2014).

Plaintiffs identify several specific employment practices that they allege have a disparate impact: (1) the practice of refusing to accommodate pregnancy when pilots are grounded; (2) the practice of ignoring or denying accommodation requests related to breastfeeding; and (3) the ban on the use of "physiological needs" breaks for pumping.

Plaintiffs allege these practices impact *100%* of pregnant pilots and *virtually all* pilots who are breastfeeding when they return to work, while *zero* pilots who are not pregnant or breastfeeding are subject to and harmed by them. *See* EEOC, *Enforcement Guidance: Pregnancy Discrimination and Related Issues* (June 25, 2015) at *13 & n.106, *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues (specifying that for purposes of assessing disparate impact, "the appropriate comparison is between pregnant women and all others similar in their ability or inability to work"). Such allegations regarding disproportionate effects are sufficient at the pleading stage. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038 (10th Cir. 2020); *Barrett,* 39 F. Supp. 3d at 451. This is particularly true in pregnancy discrimination cases such as this one, in which the policies in question affect all or nearly all—and only—workers who carry their pregnancies to term. *See Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir.

1996); *Germain v. Cty. of Suffolk*, No. 07-cv-2523, 2009 WL 1514513, at *4-*5 (E.D.N.Y. May 29, 2009).

Finally, Defendant's argument that facially discriminatory policies are somehow immune from disparate impact liability is meritless. "Disparate-impact claims may be based on any employment policy, not just a facially neutral policy." *Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014). And because the same facts may give rise to both disparate treatment and disparate impact claims, Plaintiffs are entitled to plead their claims under both theories. *See Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010); *Aramburu v. Boeing Co.*, 885 F. Supp. 1434, 1443 (D. Kan. 1995).

C.     Plaintiffs State a Valid Claim Under Colorado PWFA

Plaintiffs' Complaint states a valid claim for violation of PWFA. The law, enacted in 2016, places an affirmative obligation on employers to "engage in a timely, good-faith, and interactive process to determine effective, reasonable accommodations" for pregnancy and related conditions (such as more frequent restroom breaks or modified work schedules), and to provide such accommodations unless it would pose an undue hardship on the employer's business. Colo. Rev. Stat. Ann. § 24-34-402.3(1)(a), (2). And PWFA directly prohibits employers from requiring employees to take leave in connection with pregnancy and related conditions "if the employer can provide another reasonable accommodation." *Id.*

As detailed above, Plaintiffs adequately allege that Frontier violated the requirement to engage in an interactive process by ignoring or categorically denying their requests for pregnancy and breastfeeding accommodations. *E.g.* Compl. ¶¶ 143-56 (Ms. Beck's request for breaks were ignored); ¶¶ 98-106 (Ms. Freyer's requests for

permission to use breaks to pump and for schedule modifications were ignored). They also allege that Frontier forced them onto unpaid leave without considering alternatives. *Id.* ¶¶ 187-89 (Ms. Zielinski's unpaid leave during and following pregnancy). And Plaintiffs allege that Frontier has engaged in a timely interactive process with and granted reasonable accommodations, including schedule modifications and ground positions, to others (*see supra* at 18-19)—creating a presumption that such accommodations are feasible. Colo. Rev. Stat. Ann. § 24-34-402.3.

D.   Plaintiffs State a Valid Claim under WANMA

Colorado's WANMA was enacted in light of "the medical importance of breastfeeding," with the goal "to become involved in the national movement to recognize the medical importance of breastfeeding . . . and [to] encourage removal of boundaries placed on nursing mothers in the workplace." Colo. Rev. Stat. § 8-13.5-102(2). It affirmatively requires employers to make reasonable efforts to provide break time and access to a private room or location other than a toilet, close to Plaintiffs' work areas, for employees to express breast milk, for up to two years after the child's birth. Colo. Rev. Stat. § 8-13.5-104.

Here, again, Frontier's routine lack of response to or flat out denial of all requests for breaks and a location to pump hardly constitute "reasonable efforts." *See supra* at 6-9. Other than the lactation room at DIA, Frontier does not provide any facilities other than a restroom for employees to pump. Moreover, Frontier prohibits pilots from using even *existing* breaks for pumping, and it has denied requests from Ms. Beck and Ms. Freyer for breaks and schedule modifications. Compl. ¶¶ 77, 108, 113, 207, 209, 149.

The mere existence of a lactation room at DIA does not satisfy Frontier's

affirmative obligations under WANMA—nor have Plaintiffs conceded its adequacy. (*See* Def. Mot. 30.) Although Plaintiffs acknowledge that the room exists, Frontier did not notify them of its existence despite repeated requests for assistance locating lactation facilities at airports, and when Ms. Beck and Ms. Freyer attempted to use the room it was inaccessible—locked with no key or code provided, or in use as storage. Compl. ¶¶ 68, 123, 152. These shortcomings suggest far more than mere "inconvenience."

Nor is there authority for Frontier's assertion that the Court should ignore allegations regarding lack of compliance at locations outside of Colorado because WANMA has no extraterritorial application. (Def. Mot. 23.) Contrary to Defendant's argument, Colorado has *rejected* a presumption against extraterritoriality, instead determining the geographic scope of state statutes using ordinary rules of statutory interpretation. *See Tulips Invs., LLC v. State ex rel. Suthers*, 340 P.3d 1126, 1135 (Colo. 2015). And even if there were a presumption against extraterritoriality, it "can be overcome if a party presents 'authority manifesting a contrary intent' from the Colorado legislature.'" *Airquip, Inc. v. HomeAdvisor, Inc.*, No. 16-CV-01849-PAB-KLM, 2017 WL 4222618, at *6 (D. Colo. Sept. 21, 2017) (quoting *Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088, 1089 (Colo. 1977)).

Here, there is ample evidence to support WANMA's extraterritorial application. The statute expressly situates its purpose of eliminating obstacles to breastfeeding within the national context, and its language is accordingly broadly drafted to extend these benefits to all workers. Colo. Rev. Stat. § 8-13.5-102 (2); *see also* 16A Colo. Prac., Emp. L. & Prac. Handbook § 5:6 (2019-2020 ed.). Despite the presence of a wide variety of Colorado employers conducting business interstate—including many

airlines—no industry is categorically exempt. Rather, exemption is determined case-by-case under the "undue hardship" analysis. *See Goldthorpe v. Cathay Pac. Airways Ltd.*, 279 F. Supp. 3d 1001, 1003 (N.D. Cal. 2018). It is that analysis, rather than a categorical rule against extraterritorial application, that should govern here.

## V.   Plaintiffs' CADA, PWFA, and WANMA Claims Are Not Preempted

Frontier's preemption arguments are wholly premature and cannot be resolved at the pleading stage, under either Rule 12(b)(1) or 12(b)(6). Preemption should be raised under Rule 12(b)(1) in the narrow context of "complete preemption" by a federal statute that ousts state courts of jurisdiction to adjudicate federal law claims. *See generally Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 387-88 (1986). The Supreme Court has recognized complete preemption in only a few, discrete areas, which do not include the federal laws on which Frontier relies. *See Devon Energy Prod. v. Mosaic Potash Carlsbad*, 693 F.3d 1195, 1204-05 (10th Cir. 2012). By contrast, "ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint." *Devon Energy*, 693 F.3d at 1203 n.4; *accord Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 n.1 (3d Cir. 2013); *Trollinger v. Tysons Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004).

Here, Frontier argues that Plaintiffs' state law claims are preempted by the FAA "because they require the factfinder to intrude upon the federally occupied field of aviation safety" (D. Mem. 17), and that the ADA conflicts with Plaintiffs' state law claims relating to the "use of breaks in aircraft lavatories," which are a facet of customer service. (*Id*. at 20-22.) But both are ordinary preemption arguments that do not implicate this Court's subject matter jurisdiction. *See Devon Energy*, 693 F.3d at 1203 n.4. These

arguments may only be raised as affirmative defenses, and their resolution under Rule 12(b)(1) is not appropriate. *Harris*, 724 F.3d at 464 n.1; *Trollinger*, 370 F.3d at 608.[14]

Frontier's preemption defenses do not fare any better under Rule 12(b)(6). Preemption arguments that implicate a nondiscriminatory justification for a defendant's conduct rather than an element of a plaintiff's state law claims are premature on a motion to dismiss. *See Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1466-67 (11th Cir. 1998); *Bader v. United Airlines, Inc.*, 113 F. Supp. 3d 981, 989 (N.D. Ill. 2015). As to the FAA, aviation safety is in no way intrinsic to Plaintiffs' claims under CADA, PWFA, or WANMA; rather, safety has been Frontier's proffered justification for its denial of Plaintiffs' requests for one particular form of accommodation—permission to use breaks to pump during flight. *See*, *e.g.*, Compl. ¶ 106. Frontier does not argue—nor could it— that the other possible accommodations Plaintiffs suggested "clearly implicate" airline safety or are subject to pervasive FAA regulations. *See, e.g.*, Compl. ¶¶ 81, 225 (ground positions); ¶¶ 281, 361 (assistance with avoiding longer flights or providing a period of paid leave); ¶¶ 148, 168 (lactation facilities at outstations). But, in any event, because Frontier's "preemption argument arises from its contention, in *response* to plaintiffs' allegations, that it took the allegedly discriminatory action on the basis of airline safety," it would be inappropriate to resolve the issue of FAA preemption at the

---

[14] The cases on which Frontier relies do not in fact support application of Rule 12(b)(1) here. In *Pliuskaitis v. USA Swimming*, the Tenth Circuit explained that "[p]reemption may deprive a forum of jurisdiction *or it may just create an affirmative defense*." 720 Fed. Appx. 481, 484 (10th Cir. 2018) (emphasis added). In *Romero v. United States*, although the court stated in dicta that "[p]reemption arguments are analyzed under rule 12(b)(1)," it also confirmed that resolution under Rule 12(b)(1) is improper where, as here, any "jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits." 2018 WL 1363833, No. 17-cv-00130, at *4 (D. N.M. Mar. 15, 2018).

pleading stage. *Bader*, 113 F. Supp. 3d at 989. *Accord Hobbs v. Labor Comm'n*, 991 P.2d 590, 594-95 (Utah Ct. App. 1999).[15]

Moreover, the FAA does not automatically preempt the entire field of aviation safety. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 705 (3d Cir. 2016). Rather, courts assess "whether the particular area of aviation commerce and safety implicated by the lawsuit is governed by pervasive federal regulations." *Gilstrap v. United Air Lines, Inc.,* 709 F.3d 995, 1006 (9th Cir. 2013) (quotations omitted). Indeed, courts routinely apply state antidiscrimination laws to airlines, recognizing that equal application of existing rules poses no particular safety issue. *See Keum v. Virgin America Inc.*, 781 F. Supp. 2d 944, 950 (N.D. Cal. 2011); *Chowdhury v. Nw. Airlines Corp.*, 238 F. Supp. 2d 1153, 1156 (N.D. Cal. 2002) ("[A]s California's laws mimic the federal civil rights laws and the federal civil rights laws do not conflict with the federal aviation statutes, it follows that California's civil rights laws also do not conflict with federal aviation laws"). Plaintiffs' allegations make clear that any safety justifications will be vigorously contested, *see* Compl. ¶¶ 71-73—indeed, even Frontier admits that such defenses

---

[15] The NTSB opinion and FAA Memorandum that Frontier points to as raising possible preemption questions are readily distinguishable, as Defendant essentially admits. (Def. Mot. 19.) The NTSB opinion involved a first officer who was absent from the flight deck and "chatted with passengers in the cabin" for 80 minutes—which the Board found was "substantially in excess of that required to satisfy [physiological] needs." *In re Joel E. Brown and J. Michael Freebairn*, 1 N.T.S.B. 2041, 2043, 1972 WL 17123, at *2. Likewise, the FAA Memorandum concerns a pilot's request to *sleep* during flight while at the controls, which the FAA found was not a permissible use of the regulation governing physiological needs. (Def. Mot. Ex. B.) Here, Plaintiffs are seeking in-flight breaks that *are* necessary to address their physiological needs—which they allege are typically 15 to 20 minutes and "can be terminated at a moment's notice" in case of necessity "in roughly the same time it takes to terminate using the restroom." Compl. ¶¶ 30-31. It is these allegations rather than Defendant's safety defenses that must be accepted for purposes of the instant motion.

"likely will involve extensive expert testimony." (Def. Mot. 24.) Plaintiffs should not be deprived of the opportunity to demonstrate that the proffered safety justifications are pretextual.[16] *See Hobbs*, 991 P.2d at 593-94.

The same is true for ADA preemption. The ADA prohibits states from enacting or enforcing laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). ADA preemption is not automatic but depends on the facts and the nature of the claims in question. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 128 F.3d 77, 85-86 (2d Cir. 1997). And state laws will be preempted only when they have a "significant effect" or a "significant impact" on rates, routes, or services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388-90 (1992). Here, neither prices, routes, nor service is germane to, much less intrinsic to, any of Plaintiffs' claims themselves. Rather, any purported impacts on customer services of providing the required accommodations—on the aircraft or at airports—is Frontier's burden to show. Thus, because the rationale for preemption articulated by Frontier has "no connection to [the Colorado] statute[s] prohibiting discrimination," preemption should not be considered until Plaintiffs have had an opportunity to present evidence in response. *Parise*, 141 F.3d at 1466; *see also Bader*, 113 F. Supp. 3d at 989.[17]

---

[16] Where state law claims have been preempted, it was because there, unlike here, safety was integral to the claims themselves. *See*, *e.g.*, *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326, 1329 (10th Cir. 2010) (finding that the FAA preempted New Mexico from regulating, under state liquor law, airline's alcoholic beverage service based "on the pervasive federal regulations concerning flight attendant and crew member training and the [attendant] aviation safety concerns"); *Ventress v. Japan Airlines,* 747 F.3d 716, 719-23 (9th Cir. 2014) (preemption applied where safety was central to retaliation and constructive termination claims); *Stonecypher v. IASCO Flight Training Inc.* 2018 WL 4409438, at *4 (E.D. Cal. Sept. 16, 2018) (same).

[17] As with the FAA, state employment discrimination claims "typically have been held to fall outside the scope of the ADA's pre-emption clause." *Branche v. Airtran Airways,*

A brief analysis of Plaintiffs' WANMA claims illustrates the perils of applying preemption at this stage. The question of whether and to what extent providing the required accommodations to employees would impact customer service would involve an analysis similar to that applicable to WANMA's undue hardship analysis. Undue hardship is a fact-intensive inquiry requiring consideration of multiple factors, including whether providing the required accommodations "requires significant difficulty or expense when considered in relation to factors such as the size of the business, the financial resources of the business, or the nature and structure of its operation, including consideration of the special circumstances of public safety." *Id.* at 103(3). But no authority demands that Plaintiffs anticipate and rebut such arguments on the face of their Complaint. The question of preemption by either the ADA or the FAA is no different. Despite Frontier's attempts to dress up its affirmative defenses by reference to preemption, they remain affirmative defenses that are not appropriate for consideration on a motion to dismiss.

## CONCLUSION

For the foregoing reasons Defendant's motion to dismiss should be denied in full.

---

*Inc.*, 342 F.3d 1248, 1259 (11th Cir. 2003); *see also Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 496 (6th Cir. 1999) (reservation clerk's Michigan claim not preempted, as "[n]either air safety nor market efficiency is appreciably hindered by the operation of state laws against racial discrimination"); *Parise*, 141 F.3d at 1465-68 (Florida age discrimination claim by customer service agent not preempted); *Aloha Islandair v. Tseu*, 128 F.3d 1301, 1303 (9th Cir.1997) (pilot's claim under Hawaii law barring physical disability discrimination not preempted).

Respectfully submitted this 14th Day of September, 2020

By: /s/ Jayme Jonat_____
Jayme Jonat
Vincent Levy
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE
AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: vlevy@hsgllp.com
Email: ksebaski@hsgllp.com

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org

Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

*Attorneys for Plaintiffs*