IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.  1:19-cv-03468-CMA-SKC

RANDI FREYER, et al.

             Plaintiffs,

v.

FRONTIER AIRLINES, INC.

             Defendant.

---

## FRONTIER'S MOTION TO DISMISS AMENDED COMPLAINT

---

Under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), Defendant Frontier Airlines, Inc. ("Frontier") moves for partial dismissal of Plaintiffs' Amended Complaint [ECF #74].[1]  Under **CMA Civ. Practice Standard 7.1D**, the parties have previously conferred by telephone, and conferred by email, and Plaintiffs oppose the Motion.[2]

---

[1] Frontier will file an answer to the one remaining claim that Frontier is not moving to dismiss (described below) within 14 days after the Court's final order on this Motion. Fed. R. Civ. P. 12(a)(4)(A).

[2] For purposes of this Motion, the only material differences between Plaintiffs' Amended Complaint and Plaintiffs' prior Complaint (ECF #1) are the addition of factual allegations directed to Plaintiff Freyer that occurred only **after** her prior Charges with the EEOC and CCRD, which she did not amend with respect to the facts alleged.  ECF #74, ¶¶ 130-138.  As a result, the arguments in Frontier's prior Motion [ECF #33] and Reply [ECF #61], apply equally to Plaintiffs' Amended Complaint.  Furthermore, when "discrete incidents of discrimination occur **after** an employee files an initial EEOC charge, the employee must file an additional or amended charge with the EEOC to satisfy the exhaustion requirement as to discrete incidents occurring after the initial charge." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018).  Of course, an "employer's rejection of an employee's proposed accommodation is a discrete act that must be the subject of a charge of discrimination within 300 days of the employer's rejection." *Sanchez v. City & Cty. Of Denver*, No. 19-cv-01307-DDD-SKC, 2019 WL 5695949, at *5 (D. Colo. Nov. 4, 2019).

## I.      INTRODUCTION

Plaintiffs in this Title VII action are four pilots who assert that Frontier discriminated against them and failed to accommodate their medical needs related to pregnancy and lactation.   Among other things, they claim that Frontier should have provided paid medical leave—even though no applicable law requires it.   They further assert that the job-protected unpaid leave provided by Frontier (at least three years for Plaintiff Beck, 14 months for Plaintiffs Freyer and Zielinski, and seven months for Plaintiff Kiedrowski) was insufficient—even though such leave was well in excess of what any applicable law requires.[3]

Plaintiffs' 70-page Amended Complaint, laced with inflammatory rhetoric and legal conclusion, is largely devoid of substance.   The vast majority of the actions that Plaintiffs challenge are long time-barred, some extending as far back as 2010. Plaintiffs' Colorado statutory claims are preempted by federal law occupying the fields of aviation safety and air transportation services.   Most of Plaintiffs' remaining causes of action fail to state a claim upon which relief can be granted.

When distilled down, Plaintiffs' timely claims relate to Plaintiff Beck's and Plaintiff Freyer's requests for breaks of up to 25 minutes every two to four hours—while on duty, in flight—to pump breast milk in the aircraft's cockpit or lavatory.   Their claims fail as a matter of law for a number of reasons, including, but not limited to the fact that they have not (and cannot in good faith under Rule 11) point to any other individuals or

---

[3] The Family and Medical Leave Act guarantees up to twelve weeks of unpaid leave. 29 U.S.C. §§ 2612(a)(1), 2614(a).   Under the Americans with Disabilities Act, "six months of leave is generally the tipping point in terms of whether a leave of absence is reasonable."   *Forge v. Sisters of Charity of Leavenworth*, No. 18-2204-JWL, 2019 U.S. Dist. LEXIS 152016, at *24 (D. Kan. Sep. 6, 2019).

groups similar in their ability or inability to work who were granted the same accommodations. Plaintiffs' claims should be dismissed as a matter of law.

## II.    STATEMENT OF MATERIAL FACTS

1.      Plaintiffs are all currently employed as pilots for Frontier.  ECF #74, ¶¶ 78, 140, 167, 200.

2.      "Pilots' schedules are determined by a bidding system that is based on seniority." *Id.* ¶ 58; *see also* Ex. A (Lambert Decl.); Ex. 1 to Lambert Decl. (Agreement Between Frontier Airlines, Inc. and the Airline Pilots in the Service of Frontier Airlines, Inc. ("CBA")).[4]

3.      "On May 6, 2016, Plaintiffs Freyer, Beck, Kiedrowski, and Zielinski each filed charges with the [Equal Employment Opportunity Commission] ['EEOC'], cross-filed with the Colorado Civil Rights Division ('CCRD')."  ECF #74, ¶ 235.

4.      The parties entered into an agreement that tolled the statute of limitations for Plaintiffs' Workplace Accommodations for Nursing Mothers Act ("WANMA") claim effective May 26, 2017.  *Id.* ¶ 236.

5.      Plaintiff Kiedrowski alleges she was grounded when she reached her 32nd week of pregnancy in March 2010, and her 30th week of pregnancy in June 2012.  *Id.* ¶¶ 203, 207-208.[5]   She claims that she was willing to work a ground position, but does

---

[4]  The Court properly considers the CBA because it is central to Plaintiffs' claims concerning flight schedules, and is referenced in Plaintiffs' Amended Complaint.  *Berry v. Cherwell Software, Ltd. Liab. Co.*, No. 17-cv-02532-CMA-MJW, 2018 U.S. Dist. LEXIS 142686, at *2 n.2 (D. Colo. Aug. 22, 2018); *see also Acevedo v. Southwest Airlines Co.*, No. CV 16-24 MV/LF, 2018 U.S. Dist. LEXIS 87805, at *10-11 (D.N.M. May 25, 2018) (a CBA may be considered even when not directly named in the complaint).
[5]  Frontier assumes all factual allegations made by Plaintiffs as true only for the limited purpose of this Motion.

not allege that she requested one.  *Id.* ¶¶ 205-208.

6.  Plaintiff Kiedrowski alleges that she was told she could not pump breast milk while performing duties on August 6, 2013.  *Id.* ¶ 217.  In September 2013, Frontier offered Plaintiff Kiedrowski the use of the Chief Pilot's office for lactation, but she declined.  *Id.* ¶ 222.  As of November 6, 2014, there was a locked lactation room at Denver International Airport ("DIA").  *Id.* ¶ 175.

7.  Plaintiff Zielinski took unpaid leave from July 2014, through November 2014.  *Id.* ¶ 172.

8.  In November 2014, Plaintiff Zielinski requested a list of locations in which to pump and a reduced flight schedule down to 50 hours; the second request was granted.  *Id.* ¶¶ 177-178.  Plaintiff Zielinski ultimately accepted the reduced flight schedule accommodation in 2015.  *Id.* ¶ 186.

9.  In March 2016, Plaintiff Zielinski requested and was granted unpaid leave at 25 weeks of pregnancy.  *Id.* ¶ 193.  Plaintiff Zielinski alleges that she was willing and able to work a ground position, but does not allege that she asked for one.  *Id.* ¶ 194.

10.  On April 5, 2016, Plaintiff Zielinski requested and was granted full FMLA leave, as well as non-FMLA medical leave; she requested an extension on June 23, 2016, which was approved, and ultimately returned to work on June 30, 2017.  *Id.* ¶¶ 195, 197.

11.  Plaintiff Beck was on unpaid leave from 2010 through 2013.  *Id.* ¶ 143. Plaintiff Beck was grounded at 28 weeks in 2014 and medically unable to fly, but alleges she was willing to work in a ground position.  She does not allege that she requested a ground position.  *Id.* ¶¶ 145-146.

12.     Plaintiff Beck alleges that she requested an accommodation to take breaks in May 2015, but that Frontier did not respond.  *Id.* ¶ 151-152.

13.     On July 29, 2015, Plaintiff Beck requested permission to use the aircraft lavatory to express breast milk in flight.  *Id.* ¶¶ 156-158.

14.     "The process of pumping typically takes between 15 and 25 minutes, depending on the individual."  *Id.* ¶ 30.

15.     "[T]hose who are breastfeeding typically need to pump breast milk every two to three hours."  *Id.* ¶ 29.  Plaintiff Freyer requested permission to pump every three to four hours.  *Id.* ¶ 107.

16.     In August 2015, Plaintiff Beck alleges that she could not access the lactation room at DIA, and that by December 2016 it was accessible but cluttered.  She further alleges that in May 2016, there was a new lactation location, but that no one told her about it.  *Id.* ¶ 160.

17.     Plaintiff Freyer alleges she was grounded at 32 weeks of pregnancy in 2013.  *Id.* ¶ 79.  Plaintiff Freyer alleges that she "emailed several individuals at Frontier, including the Chief Pilot and the Director of Training, to offer to work in a ground position after the 32nd week of her pregnancy. No representative from Frontier ever responded to her emails."  *Id.* ¶ 81.

18.     Plaintiff Freyer alleges that in late 2014, she reached out to the Chief Pilot's Office and Human Resources to inquire about accommodations and the possibility of working a reduced schedule when she returned to work. "No one responded to her inquiries."  ECF #74, ¶¶ 83-85.

19.     Plaintiff Freyer was grounded at 32 weeks of pregnancy in October 2015

(in advance of her December 5, 2015 delivery), and she alleges she "would have been fit to fly for some period beyond the 32nd week of pregnancy." *Id.* ¶¶ 94–96. Plaintiff Freyer did not request a temporary ground assignment at that time because she thought it would be futile. *Id.* ¶ 95.

20.     On March 31, 2016, Plaintiff Freyer alleged that she "advise[d] Frontier of her need to take regular breaks because she was breastfeeding." *Id.* ¶ 98. She does not allege that she requested breaks as an accommodation at that time; instead, she alleges that she asked only for a medical leave of absence, which was granted: "Frontier subsequently responded to [Plaintiff Freyer's] request by placing her on unpaid medical leave." *Id.* ¶¶ 98, 103.

21.     Plaintiff Freyer made a request for accommodation on November 27, 2016 "for regular breaks in order to express breast milk." *Id.* ¶ 105. Frontier responded on December 8, 2016 that it could not "accommodate pumping in the lav[atory] while in flight given the safety sensitive nature of [Plaintiff Freyer's] position." *Id.* ¶ 106. However, Frontier indicated that Plaintiff Freyer would be "permitted to pump in the lav[atory] before takeoff and after landing, when the plane is blocked into its arrival/departure gate." *Id.*

22.     Plaintiff Freyer made a request for accommodation in December 2016 to "pump in the flight deck" (which is another name for the cockpit). *Id.* ¶ 107. On December 23, 2016, Frontier once again responded that it could not accommodate the request to pump in the cockpit, but reiterated that Plaintiff Freyer could use the lavatory "before takeoff and after landing, when the plane is blocked into its arrival/departure gate." *Id.* ¶ 108.

23.     Frontier responded to renewed requests for the same accommodations in March 2017 and April 2017, again reiterating Frontier's position.  *Id.* ¶¶ 113, 115.

24.     On March 15, 2017, Frontier offered to Plaintiff Freyer that she could "drop her minimum required flight time from 70 to 50 hours per monthly bid period."  *Id.* ¶ 111.

25.     Plaintiff Freyer made a request for lactation locations in outstation airports (those outside of Colorado) on April 20, 2016.  *Id.* ¶¶ 117-19.  Plaintiff Freyer attempted to and/or did utilize the facilities, but allegedly found them insufficient.  *Id.* ¶¶ 118-122.

26.     Frontier provided a lactation room at DIA that Plaintiff Freyer utilized.  *Id.* ¶ 123.  It was a conference room locked with a passcode.  *Id.*  Plaintiff Freyer did not know the passcode on one occasion, and it took her 15 minutes to access the room.  *Id.*

27.     On June 26, 2020, in accordance with Federal Aviation Act ("FAAct") regulations, Frontier submitted a request to the Federal Aviation Administration ("FAA") for approval to revise Frontier's Flight Operations Manual Volume 1, to allow lactating pilots to express breast milk in an aircraft under certain conditions on the ground, including, but not limited to, when the aircraft is on the ground with the parking brake set.  Exs. 2-3 to Ex. A. [6],[7]

28.     Three days later, on June 29, 2020, the FAA denied Frontier's request, ruling that it would "put the airline in noncompliance with 14CFR 121.391 d" (the "FAA Determination Letter").   Ex. 4 to Ex. A.   The FAA Determination Letter explained that a

---

[6] The FAA correspondence may be considered by the Court for purposes of evaluating Frontier's Rule 12(b)(1) Motion.  *Berry*, 2018 U.S. Dist. LEXIS 142686, at *2 n.2.

[7] Frontier is required by FAAct regulations to maintain confidentiality as to the proposed language change itself in the Manual, and therefore refers to the previously submitted document at ECF #32 that was ordered by the Court to maintain Level Restriction.  *See* Order, Sept. 2, 2020, ECF #49.

pilot's departure from the cockpit would require flight attendants to "leave [their duty stations] to do the security detail in the flight deck while passengers are on board," which flight attendants are not permitted to do for safety and security reasons. *See id.*

## III.   LEGAL ARGUMENT

### A.   Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6) as Untimely

#### 1.   The Vast Majority of Plaintiffs' Claims Are Time-Barred[8]

##### a)   Applicable Statute of Limitations Cutoff Dates

###### (1)   PWFA (Claim ## 8, 11) – <u>August 10, 2016</u>

Colorado's Pregnant Workers Fairness Act ("PWFA") did not take effect until August 10, 2016.   *See* C.R.S. § 24-34-402.3.   Any alleged discriminatory actions occurring before **August 10, 2016** are therefore time-barred.

###### (2)   CADA (Claim ## 7, 9-10, 12-13) – <u>November 8, 2015</u>

The Colorado Anti-Discrimination Act ("CADA") statute of limitations period (180 days) cuts off at November 8, 2015.   "Prior to commencing a Title VII action in federal court in a 'deferral state' like Colorado, a plaintiff first must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice."   *Deneffe v. Skywest, Inc.*, No. 14-cv-00348-MEH, 2015 U.S. Dist. LEXIS 5517, at *10-13 (D. Colo. Jan. 16, 2015).   "This administrative time limit is akin to a statute of limitations."   *Id.*

CADA requires that discrimination charges be filed within "six months after the alleged discriminatory or unfair employment practice occurred."   *Id.* at *11 (citing C.R.S

---

[8] Under *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019), Frontier raises its timeliness arguments under Rule 12(b)(6).

§ 24-34-403).   A claim is time-barred if it is not filed within these limits.  *Id.* (regarding the same events, plaintiff's Title VII claim brought within 300 days was timely, but plaintiff's CADA claim was not).

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' for which a charge of discrimination must be filed."   *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).  As such, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred."  *Id.; Berry v. Cherwell Software, Ltd. Liab. Co*., No. 17-cv-02532-CMA-MJW, 2018 U.S. Dist. LEXIS 142686, at *3 (D. Colo. Aug. 22, 2018).   Furthermore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."   *Gomez v. Sam's W., Inc*., No. 16-cv-02240-CMA-STV, 2018 U.S. Dist. LEXIS 120799, at *5 (D. Colo. July 19, 2018).

These principles apply to both disparate treatment and disparate impact claims. *Christie v. Loomis Armored US, Inc*., No. 10-cv-02011-WJM-KMT, 2013 U.S. Dist. LEXIS 94705, at *11 (D. Colo. July 8, 2013) ("[A] charge alleging [a] disparate impact claim must be filed within 300 days of the offending event."); *Martinez v. Texas Workforce Comm'n-Civil Rights Div*., No. A-11-CA-837 LY, 2013 U.S. Dist. LEXIS 136300, at *21-22 (W.D. Tex. Sep. 24, 2013) (each time a policy allegedly creating a disparate impact is applied to the plaintiff, she "ha[s] 300 days to challenge the decision"); *Briscoe v. City of New Haven*, 967 F. Supp. 2d 563, 567 (D. Conn. 2013) (same); *Chin v. Port Authority of N.Y. & N.J*., 685 F.3d 135, 158 (2d Cir. 2012) (same).

Here, Plaintiffs dual-filed their charges of discrimination with the EEOC and CCRD on May 6, 2016.  *Id.* ¶ 235.  The applicable statute of limitations cutoff for their CADA claims (Claim ## 7, 9-10, 12-13) is therefore **November 8, 2015**, and any alleged discriminatory actions occurring prior to that date are time-barred.

### (3)    Title VII (Claim ## 1-5) – July 11, 2015

As stated above, to have an actionable Title VII claim, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice.  *See infra.*  Given Plaintiffs' dual-filing with the EEOC and CCRD on May 6, 2016, the applicable statute of limitations cutoff for their Title VII claims (Claim ## 1-5) is therefore **July 11, 2015**, and any alleged discriminatory actions occurring prior to that date are time-barred.

### (4)    WANMA (Claim #6) – May 26, 2015

WANMA itself does not contain a statute of limitations, and therefore is subject to the general statute of limitations of two years under Colorado law.  *See* C.R.S. § 8-13.5-101, *et seq.* (WANMA); C.R.S. § 13-80-102(1)(i) (providing for a two-year statute of limitations for "[a]ll other actions of every kind for which no other period of limitation is provided").  In this case, the parties entered into an agreement tolling the statute of limitations effective May 26, 2017.  ECF #74, ¶ 236.  The applicable statute of limitations cutoff for their WANMA claims (Claim #6) is therefore **May 26, 2015**, and any alleged discriminatory actions occurring prior to that date are time-barred.

### b)    All of Plaintiff Kiedrowski's Claims Are Time-Barred

Plaintiff Kiedrowski alleges a series of events and actions by Frontier related to her pregnancies and births, all of which take place between 2010 and 2013.  *See* ECF

#74, ¶¶ 203-229.  None of Frontier's actions about which she complains occurred within the applicable statute of limitations periods for her respective claims (the earliest of which, her WANMA claim, begins on May 26, 2015).  *See* Sections III(A)(1)(a)(1)-(4).  Her claims (Claim ## 1-13) should therefore be dismissed.

c)    <u>All</u> of Plaintiff Zielinski's Claims Are Time-Barred

Plaintiff Zielinski's claims are not based on any adverse actions within the applicable statute of limitations periods.  Frontier's challenged actions related specifically to her take place between July 2014 and June 2016.  *See* ECF #74, ¶¶ 172-199.  None of the actions about which Plaintiff Zielinski complains occurred after August 10, 2016, the statute of limitations cutoff for a PWFA claim.  *See* Section III(A)(1)(a)(1).  Her PWFA claims (Claim ## 8, 11) therefore should be dismissed.

With respect to Plaintiff Zielinski's Title VII and CADA claims, as stated above, any challenged employment actions occurring prior to July 11, 2015 and November 8, 2015, respectively, are time-barred.  *See* Sections III(A)(1)(a)(2)-(3).  Ms. Zielinski therefore cannot bring her Title VII or CADA claims based on her requests for accommodation in 2014, or for any of Frontier's decisions related to them (*e.g.*, requests for unpaid leave, the use of a lactation room, and/or a reduced flight schedule (ECF #74, ¶¶ 172-180)).

The only action that Frontier took with respect to Plaintiff Zielinski within the Title VII and CADA statute of limitations periods was to <u>approve</u> Plaintiff Zielinski's requests for FMLA leave and extended non-FMLA medical leave, due to which she received the

benefit of <u>68 weeks</u> of job-protected leave.[9]  *Id.* ¶¶ 195-197 (taking leave from March 9, 2016, through June 30, 2017).   She does not allege that she made any request for accommodation that Frontier <u>rejected</u> within the applicable statute of limitations period.[10]   Her Title VII and CADA claims (Claim ##1-5, 7, 9-10, 12-13) should therefore be dismissed.

Finally, with respect to Ms. Zielinski's WANMA claim, she must allege conduct on or after May 26, 2015 that is arguably actionable under WANMA.   *See* Section III(A)(1)(a)(4).   Once again, Plaintiff Zielinski's only complained-about events within the WANMA statute of limitations concern her requests for leave, and nothing else.   ECF #74, ¶¶ 195, 197.   WANMA, however, concerns only break time and/or private lactation rooms, not leaves of absence.   C.R.S. § 8-13.5-104.   Plaintiff Zielinski's WANMA claim (Claim #6) is therefore time-barred, and should be dismissed.

### d)   Most of Plaintiff Beck's Claims Are Time-Barred

Plaintiff Beck's claims are based in large part on occurrences falling outside of the applicable statute of limitations periods.   Frontier's challenged actions related

---

[9] Plaintiff Zielinski alleges that she "went on leave" "[d]ue to medical conditions relating to pregnancy on March 9, 2016.  *Id.* ¶ 193.  She does not allege that Frontier forced her to do so, nor does she allege that she made a request for accommodation that was denied.  *See id.*  Plaintiff Zielinski further alleges that she was "approved" for maximum FMLA and also for Non-FMLA medical leave on April 5, 2016.  *Id.* ¶ 195.  Once again, she does not allege that Frontier forced her to take leave; her allegation that the leave was "approved" shows that she requested it.  Nor does Plaintiff Zielinski allege that she made a request for accommodation that was denied.  *Id.*  Likewise, with her June 2016 extension of leave, she alleges that she "requested and was granted" the leave.  *Id.* ¶ 197.  She admits that she did not request any other form of accommodation.  *Id.*

[10] As noted above, "an employer's rejection of an employee's proposed accommodation is a discrete act that must be the subject of a charge of discrimination within 300 days of the employer's rejection."  *Sanchez*, 2019 WL 5695949, at *5.  The statute of limitations is measured from the date of rejection.

specifically to her take place between 2010 and May 2016.  *See* ECF #74, ¶¶ 143-160. None of the actions about which Plaintiff Beck complains occurred after August 10, 2016, the statute of limitations cutoff for a PWFA claim.  *See* Section III(A)(1)(a)(1).  Her PWFA claims (Claim ## 8, 11) therefore should be dismissed.

With respect to Plaintiff Beck's CADA claims, as stated above, any challenged employment actions occurring prior to November 8, 2015 are time-barred.  *See* Section III(A)(1)(a)(2).  Plaintiff Beck therefore cannot bring her CADA claims based on her requests for accommodation made between 2010 and August 2015 (ECF #74 ¶¶ 143-160)), or any of Frontier's actions related to them.  Frontier did not take any relevant action with respect to Plaintiff Beck after August 2015, and her CADA claims (Claim ##7, 9-10, 12-13) are therefore time-barred, and should be dismissed.[11]

With respect to Plaintiff Beck's Title VII claim, as stated above, any challenged employment actions occurring prior to July 11, 2015 are time-barred.  *See* Section III(A)(1)(a)(3).  Plaintiff Beck therefore cannot bring her Title VII claims based on requests for accommodation made between 2010 and June 2015 (ECF #74, ¶¶ 143-160)).  The only relevant action that Frontier took with respect to Plaintiff Beck within the Title VII statute of limitations period was to **deny her request in August 2015** to use the aircraft lavatory as a space for expressing breast milk in flight (*id.*  ¶¶ 156-157).  Her Title VII claims (Claim ## 1-5) should be limited to that denial.

---

[11] Plaintiff Beck additionally alleges that Frontier failed to provide a sufficient lactation room at DIA, or to provide her with a list of airport lactation locations.  ECF #74, ¶¶ 156-160.  Those allegations presumably would only be actionable under WANMA, and Frontier acknowledges that they are timely for the limited purposes of that claim.

### e)   Many of Plaintiff Freyer's Claims Are Time-Barred

Not all of Plaintiff Freyer's claims are based on occurrences falling within the applicable statute of limitations periods.  Frontier's actions related specifically to her, at least those prior to the filing of her Charge on May 15, 2017, take place between 2013 and May 2017.  *See id.* ¶¶ 78-130.  With respect to Plaintiff Freyer's PWFA claim, as stated above, any challenged employment actions prior to August 10, 2016 are time-barred.  *See* Section III(A)(1)(a)(1).  Plaintiff Freyer therefore cannot bring her PWFA claim based on her requests for accommodation made between 2013 and July 2016, or any action by Frontier in that time period (ECF #74, ¶¶ 78-104).

The only relevant action that Frontier took with respect to Plaintiff Freyer within the PWFA statute of limitations period was to deny her requests to pump on the flight deck while on duty and/or take breaks while on duty in order to express breast milk.  Frontier **denied those requests in December 2016, March 2017, and April 2017** (*id.* ¶¶ 108; 113; 115).  Her PWFA claims (Claim ##8, 11) should be limited to those denials.[12]

With respect to Plaintiff Freyer's CADA claims, as stated above, any challenged employment actions occurring prior to November 8, 2015 are time-barred.  *See* Section III(A)(1)(a)(2).  Plaintiff Freyer therefore cannot bring her CADA claims based on her requests for accommodation made between 2010 and October 2015 (ECF #74, ¶¶ 78-

---

[12] As noted, Plaintiff failed to exhaust the denial of any requests in 2020, as she has not amended her prior Charge or filed a new Charge directed to these allegations.  *Id.* ¶¶ 130-138.  Plaintiff Freyer additionally alleges that Frontier purportedly failed to provide sufficient lactation facilities, or to provide her with a sufficient list of airport lactation locations.  *Id.* ¶¶ 118-129.  Those allegations presumably would only be actionable under WANMA, and Frontier acknowledges that they are timely for the limited purposes of that claim.

93)), nor can she base her CADA claims on her October 2015 grounding at 32 weeks of pregnancy.  *Id.* ¶¶ 94-96.  The only relevant actions that Frontier took with respect to Plaintiff Freyer within the CADA statute of limitations period were the **December 2016; March 2017; and April 2017** denials as discussed above (*id.* ¶¶ 108; 113; 115).  Her CADA claims (Claim ## 7, 9-10, 12-13) should be limited to those specific denials.

With respect to Plaintiff Freyer's Title VII claim, as stated above, any challenged employment actions occurring prior to July 11, 2015 are time-barred.  *See* Section III(A)(1)(a)(3).  The only relevant actions that Frontier took with respect to Plaintiff Freyer within the Title VII statute of limitations period were **the December 2016; March 2017; and April 2017 denials** as discussed above (ECF #74, ¶¶ 108, 113, 115), in addition to her **grounding at 32 weeks of pregnancy** October 2015.  *Id.* ¶¶ 94-96.  Her Title VII claims (Claim ## 1-5) should be limited to those specific discrete actions.

## 2.      Summary  of <u>Timely</u> Actions and Claims

In sum, only the following discrete actions taken by Frontier are <u>timely</u> (with everything else being time-barred or not exhausted with either the EEOC or the CCRD): **(1)** Frontier's **August 2015 denial** of Plaintiff Beck's request "seeking official permission to use the aircraft lavatory as a space for expressing breast milk" in flight (timely and relevant under Title VII Claim ## 4-5; WANMA Claim #6); **(2)** Frontier's **December 2016, March 2017, and April 2017 denials** of Plaintiff Freyer's requests to "be permitted to pump in the flight deck for longer flights where pumping would not otherwise be possible for periods as long as four to six hours" (ECF #74, ¶ 107); and to be "permitted to take a physiological needs break during flight to accommodate her lactation needs" (*id.* ¶ 112; 114) (timely and relevant under PWFA Claim #11; CADA

Claim ##12-13; Title VII Claim ##4-5; WANMA Claim #6); **(3)** Frontier's **October 2015 grounding** of Plaintiff Freyer at 32 weeks of pregnancy (*id.* ¶ 112) (timely and relevant under Title VII Claim ## 1-3); **(4)** Frontier's alleged failure to provide sufficient **lactation facilities** to Plaintiffs Beck and Freyer in 2015, 2016, and 2017, either (a) at DIA, and/or (b) in other airports outside of Colorado (timely and relevant under WANMA, Claim #6).

### B.   Plaintiffs' State-Law Claims Should Be Dismissed Under Rule 12(b)(1)

#### 1.   Plaintiffs' State Law Claims Are Preempted by the FAAct[13]

As summarized above, Plaintiffs' remaining timely claims under the PWFA, CADA, and/or WANMA relate solely to Plaintiff Beck's and Plaintiff Freyer's requests to take breaks and express breast milk while on duty <u>on the aircraft</u>, with the one exception of their WANMA claims related to lactation facilities at DIA and at outstation airports.   Regarding on-aircraft requests for accommodation, however, Plaintiffs' claims are preempted by the Federal Aviation Act of 1958 (the "FAAct"), 49 U.S.C. § 40103 *et seq.*, because they require the factfinder to intrude upon the federally occupied field of aviation safety. *See US Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010).

The Tenth Circuit has held that, "based on the FAA[ct]'s purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the FAA[ct], . . . federal regulation occupies the field of aviation safety to the exclusion of state regulations."   *O'Donnell*, 627 F.3d at 1326.   The FAAct was enacted to create a "uniform and exclusive system of federal regulation" in the field of air safety.

---

[13] Field preemption is analyzed under Rule 12(b)(1). *Pliuskaitis v. USA Swimming*, 720 F. App'x 481, 483-484 (10th Cir. 2018); *Romero v. United States*, No. CIV 17-0130 JB\KBM, 2018 U.S. Dist. LEXIS 42697, at *27 (D.N.M. Mar. 15, 2018); *Morgan v. Crage*, No. CIV-09-673-C, 2009 U.S. Dist. LEXIS 106761, at *2 (W.D. Okla. Nov. 16, 2009).

*City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 639 (1973); *O'Donnell*, 627 F.3d at 1326 (noting "[t]he magnitude and critical nature of [airspace use and air-safety problems]" and agreeing that it was essential that one agency of government, and one agency alone, be responsible for issuing safety regulations").

The language of the FAAct explicitly directs the Administrator of the FAA to promulgate regulations for the "safe flight of civil aircraft in air commerce," and directs the Administrator to regulate any "other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security." *O'Donnell*, 627 F.3d at 1326-27.

Here, FAAct regulations extensively govern whether and to what extent pilots may leave their duty stations in the flight deck for any purpose, including to take physiological needs breaks; as well as pilots' conduct and procedures in the flight deck. FAAct regulations also govern pilots' and crew members' safety and security procedures when a pilot leaves the flight deck.   *See* ECF #74, ¶¶ 69-72; 14 C.F.R. § 121.543 (requiring pilots to "remain at the assigned duty station with seat belt fastened while the aircraft is taking off or landing, and while it is en route"); *id*. § 121.587 (regulations concerning the compartment door); *id*. § 121.547 (regulations concerning persons admitted to the flight deck); *id*. § 121.333 (regulations concerning a pilots' required use of an oxygen mask when only one pilot is at the controls); *id*. § 121.537 (regulations concerning careless or reckless conduct by a pilot that endangers the lives of passengers).

Because of the "pervasiveness of federal safety regulations for pilots and the congressional goal of a uniform system of aviation safety," Plaintiff Beck's and Plaintiff

Freyer's claims related to on-aircraft breaks and lactation locations are preempted by the FAAact.  *See Ventress v. Japan Airlines*, 747 F.3d 716, 719-723 (9th Cir. 2014) (retaliation and constructive discharge claims brought under California statute related to a pilot's fitness were preempted because the FAAct regulates pilots' medical fitness).

Critically, Plaintiffs are asking the Court to apply Colorado state law to rule that Frontier should have, and must, permit pilots to take regular on-duty, inflight physiological needs breaks of up to 25 minutes in length.  *See* ECF #74, ¶ 30, Prayer For Relief ¶¶ A, B(i).  That is exactly the scenario that FAAct preemption was designed to avoid.[14]  *See, e.g., Stonecypher v. Iasco Flight Training, Inc.*, No. 2:17-cv-02409-MCE-EFB, 2018 U.S. Dist. LEXIS 158365, at *12 (E.D. Cal. Sep. 16, 2018) (applying preemption where plaintiff's claims would require the court to examine whether conduct required by state law was a violation of FAAct regulations:  "[W]henever the Court has to look at whether a safety threat existed, preemption applies").[15]

As just one example of how the application of Colorado state law could conflict with federal law on this issue, and why Colorado state law is preempted:  The National Transportation Safety Board in the matter of *Joel E. Brown and Michael E. Freebairn* (1 N.T.S.B. 2041; 1972 NTSB LEXIS 9) found that the Captain and First Officer of an American Airlines flight from Hawaii to Japan violated five different FAAct regulations in connection with the First Officer taking 20- to 30- minute breaks to stretch his legs while the aircraft was in flight.  *Id.*; *see also* Ex. B (FAA Memorandum dated January 20,

---

[14] Tellingly, airlines such as Frontier are exempt from the provisions of the Fair Labor Standards Act requiring break time and lactation facilities for nursing mothers (and the FLSA's break-time requirements more generally).  *See* 29 U.S.C. § 213(b)(3).

[15] WANMA itself specifically states that "special circumstances of public safety" is a consideration in the statute's undue hardship analysis.  C.R.S. § 8-13.5-103(3).

2012) (finding that the federally-regulated "physiological needs" exception "has been interpreted narrowly to only permit <u>short</u> breaks for activities such as using the restroom or stretching one's limbs <u>briefly</u> during a long flight") (emphasis added).[16]

Frontier fully expects that Plaintiffs will attempt to distinguish the NTSB opinion and FAA interpretation letter. Frontier disagrees with Plaintiffs' position,[17] but what is abundantly clear is that <u>federal</u> law must decide the issue, not state law. Plaintiffs' PWFA, CADA, and WANMA claims are preempted as to on-aircraft requests for breaks and lactation facilities, and should be dismissed.

### 2.      Plaintiffs' State-Law Claims Are Preempted by the ADA

Similarly, Plaintiffs' remaining timely claims under the PWFA, CADA, and/or WANMA related to on-aircraft breaks and pumping in the lavatory are preempted by the Airline Deregulation Act of 1978 ("ADA"). The ADA was enacted after Congress "determin[ed] that maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety and quality of air transportation services." *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1057 (10th Cir. 2019) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)). Per the ADA's

---

[16] The Court may consider the NTSB opinion and FAA Memorandum under Rule 12(b)(1). The Court may also take judicial notice of them and consider them under Rule 12(b)(6) "as facts which are a matter of public record." *Ingle v. Ieros, LLC*, No. 1:18-cv-02759-LTB, 2019 U.S. Dist. LEXIS 98961, at *8 (D. Colo. June 13, 2019). Here, the NTSB opinion is available on Lexis, and the FAA Memorandum can be accessed from the FAA's website: https://www.faa.gov/about/office_org/headquarters_offices/agc/practice_areas/regulations/interpretations/Data/interps/2012/Cintron-AFS-800%20-%20(2012)%20Legal%20Interpretation.pdf.

[17] Indeed, in response to Frontier's recent request to the FAA for permission to allow pilots to take 20-minute breaks for lactation while the aircraft is on the ground, with the parking brake engaged, the FAA denied the request, finding that such breaks would violate federal safety and security regulations. *See* Exs. 2-4 to Ex. A.

preemption provision, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." *Id.*; 49 U.S.C. § 41713(b)(1).

The Supreme Court has "recognized that the key phrase [in § 41713(b)(1),] 'related to[,]' expresses a 'broad pre-emptive purpose.'" *Scarlett*, 922 F.3d at 1061. Accordingly, the Court has "held that a claim 'relates to rates, routes, or services,' within the meaning of the ADA, if the claim 'has a connection with, or reference to, airline rates, routes, or services.'" *Id.*; *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 85 (2008) (commenting on the "unusual breadth" of the ADA's preemption provision)). Indeed, ADA preemption is not limited to statutes, such as the Colorado statutes at issue here; the Supreme Court has interpreted the phrase "other provision having the force and effect of law" to include even state common-law claims. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014).

As relevant here, courts have found that the provision of an aircraft lavatory is a "service" within the meaning of the Act. *Covino v. Spirit Airlines, Inc*., 406 F. Supp. 3d 147, 150-151 (D. Mass. 2019). As the District of Massachusetts recently held in *Covino*, a "service" has been defined broadly as an "anticipated provision of labor from one party to another," including "matters 'appurtenant and necessarily included with the contract of carriage between the passenger and the airline,' such as ticketing, boarding, providing food and drink and handling baggage." *Id.* (citing *Tobin v. Federal Express Corp.*, 775 F.3d 448, 453-56 (1st Cir. 2014)).

The *Covino* court "readily conclude[d] that providing access to an in-flight

lavatory is a necessary service appurtenant to passenger air transportation." *Id.; see also Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008) ("[W]e have little difficulty concluding that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays relates to the service of an air carrier.").

Here, Plaintiffs' remaining timely claims under the PWFA, CADA, and WANMA claims clearly "relate to" Frontier's provision of a lavatory to customers within the broad meaning of the Act, given that Plaintiffs sought permission to utilize the lavatory for up to 25 minutes at a time during flight. Plaintiffs' state-law claims, to the extent that they are related to the use of breaks in aircraft lavatories, are therefore preempted. *See Covino*, 406 F. Supp. 3d at 150-151 (the plaintiff's claim was "inextricably related to Spirit's provision of passenger services. The denial of access to the in-flight restroom [was] at the heart of [her] claim").

### 3.   Plaintiffs' WANMA Claims Have No Extraterritorial Application

Plaintiffs appear to base their WANMA claims, at least in part, on Frontier's purported failure to provide sufficient lactation facilitates outside of the state of Colorado. *See, e.g.*, ECF #74, ¶ 68 (alleging that "outstations" at other airports had lactation rooms that "proved in large part to be unusable or inaccessible"). Plaintiffs' WANMA claims must be dismissed, however, as to any lactation locations outside of Colorado, because WANMA has no application extraterritorially.

"It is well settled that the legislative authority of every state must spend its force within the territorial limits of the state, and that a law does not have any effect of its own force beyond the limits of the sovereignty from which its authority is derived." *Donahue*

*v. Warner Bros. Pictures, Inc.*, 194 F.2d 6, 23-24 (10th Cir. 1952).    Therefore, "[l]egislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction."  *Id.*

Here, WANMA does not "expressly provide for extraterritorial application," and "[i]n the absence of any extraterritorial phraseology in [the] Act, it cannot be construed to have an extraterritorial effect."  *Peerless Ins. Co. v. Clark*, 29 Colo. App. 436, 440 (1971); *accord Sanchez v. Q'Max Solutions, Inc.*, No. 17-cv-01382-CMA-KLM, 2018 U.S. Dist. LEXIS 31486, at *9 (D. Colo. Feb. 27, 2018) (finding that a request for out-of-state application "would run afoul of the well-established presumption against the extraterritorial application of state laws"); *Friedman v. Dollar Thrifty Automotive Group, Inc.*, No. 12-cv-02432-WYD-KMT, 2013 U.S. Dist. LEXIS 140691, at *21-22 (D. Colo. Sep. 27, 2013) (no extraterritorial application of Colorado state statutes where the statutes did not "contain express language that they apply extraterritorially").

### C.    Plaintiffs' Remaining Allegations Largely Fail to State a Claim

Analyzing Plaintiffs' remaining (timely) claims, the vast majority of them fail under Rule 12(b)(6) scrutiny.   Only <u>one</u> claim is not subject to dismissal at this stage in the proceedings: Plaintiff Freyer's Title VII Claim (Claim #1) based on Frontier's 32-week grounding rule.[18]    That claim will turn on a well-recognized bona fide occupational qualification defense based on safety, which likely will involve extensive expert

---

[18]  Claim #2 is pleaded as a disparate impact claim, and is not cognizable for the reasons discussed below.  Claim #3, while referencing the 32-week rule in passing, is a failure-to-accommodate claim based on the rejection of other accommodation requests, not based on Plaintiff Freyer's grounding as an adverse action.

testimony.[19,20]   All other claims should be dismissed for the reasons stated above, and those described in more detail below.

"Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim if it appears beyond a doubt that the plaintiff can plead no set of facts in support of his claim that entitle him to relief." *Rattler v. Garside*, No. 19-cv-01119-CMA-KLM, 2019 U.S. Dist. LEXIS 217200, at *4-5 (D. Colo. Dec. 18, 2019). "Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory." *Id*.

While "all well-pleaded allegations in the plaintiff's complaint [are taken] as true and construe[d] in the light most favorable to the plaintiff, a litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Rattler*, 2019 U.S. Dist. LEXIS 217200, at *4-5 (citing *Bell*

---

[19] *See, e.g., Johnson Controls*, 499 U.S. 187, 204 (1991) (recognizing non-pregnancy as a BFOQ under a "safety exception"); *Richards v. City of Topeka*, 173 F.3d 1247, 1252 (10th Cir. 1999) ("Under the PDA, the City can raise a BFOQ as an affirmative defense."); *Harriss v. Pan American World Airways, Inc*., 649 F. 2d 670 (9th Cir. 1980) (Pan Am's "Stop Policy" as to pregnant flight attendants, while constituting prima facie discrimination, was justified as a BFOQ based on safety considerations); *Burwell v. Eastern Air Lines, Inc*., 633 F. 2d 361 (4th Cir. 1980) (finding that grounding pregnant flight attendants at 13 weeks of pregnancy would not be considered a safety BFOQ, but that grounding at 28 weeks certainly would); *Condit v. United Air Lines, Inc*., 558 F. 2d 1176 (4th Cir. 1977) (grounding pregnant flight attendants was a BFOQ because pregnancy could incapacitate a stewardess in ways that might threaten the safe operation of aircraft); *In re National Airlines, Inc*., 434 F. Supp. 249 (SD Fla. 1977) (reviewing comprehensive medical data and expert testimony, and concluding that – while grounding pregnant flight attendants in the first trimester was not a BFOQ – grounding pregnant flight attendants in their third trimester most definitely was a BFOQ: [T]he court must conclude that as a blanket rule National may require its flight attendants not to fly during the final trimester of pregnancy").

[20] Frontier cannot help but note in passing that Plaintiffs' Amended Complaint contains references to seven pregnancies. Out of those seven, over half of them—four out of seven—resulted in medical complications grounding the pilot prior to 32 weeks of pregnancy.  *See* ECF #74, ¶¶ 145 (28 Weeks); 170 (30 Weeks); 193 (25 Weeks); 207 (30 Weeks); and 79, 93, 203 (32 Weeks).

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court may not assume that plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged."  *Id.*

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Grays v. Granicus, LLC*, No. 18-cv-02271-CMA-NRN, 2019 U.S. Dist. LEXIS 66196, at *9-10 (D. Colo. Apr. 18, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Grays*, 2019 U.S. Dist. LEXIS 66196, at *9-10.  For the reasons discussed below, Plaintiffs' claims do not establish that they are entitled to relief under the relevant law, and their claims should be dismissed.

### 1. Plaintiffs' Remaining (Timely) Title VII and CADA Disparate Treatment Claims Should Be Dismissed

Setting the 32-week rule aside, Plaintiffs' remaining timely Title VII/CADA claims are based on Frontier's denials of Plaintiff Beck's and Plaintiff Freyer's requests "seeking official permission to use the aircraft lavatory as a space for expressing breast milk" in flight; to "be permitted to pump in the flight deck for longer flights where pumping would not otherwise be possible for periods as long as four to six hours"; and to be "permitted to take a physiological needs break during flight to accommodate [] lactation needs."  ECF #74, ¶¶ 13, 108, 113, 115.[21]  Plaintiffs' claims related to these

---

[21] Plaintiffs' timely breaks claims as explicitly pleaded relate to inflight breaks only.  That said, if and to the extent that they were based on breaks on the ground in between flights, the ability to take breaks is subject to the seniority bidding rights of the CBA, which governs pilot flight schedules.  *See* ECF #74, ¶ 58; Ex. 1 to Ex. A.  Under well-settled binding precedent, a request to violate collectively-bargained for seniority rights

requests fail to state a claim as a matter of law on the face of the Amended Complaint.

Under Title VII, it is unlawful "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).   Further, Title VII provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). A plaintiff may prove a Title VII violation through either direct or circumstantial evidence. See Furr v. AT & T Techs., Inc., 824 F.2d 1537, 1548-49 (10th Cir. 1987).

A plaintiff alleging that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act "may make out a *prima facie* case by showing . . . that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'"   *Young v. United Parcel Service, Inc.*, 135 S.Ct. 1338, 1345, 191 L. Ed. 2d 279 (2015).[22]

Frontier assumes, solely for purposes of this motion, that Plaintiff Beck and Plaintiff Freyer are part of a protected class, and requested the accommodations of in-

---

is unreasonable as a matter of law.  *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 403-04 (2002); *Sanchez v. United States DOE*, 870 F.3d 1185, 1200 (10th Cir. 2017).

[22] The Title VII legal framework and elements are the same for CADA.  *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001) (the standard for a discrimination claim under the CADA is the same as Title VII); *Waters v. AXL Charter Sch.*, No. 12-cv-01384-LTB, 2013 U.S. Dist. LEXIS 31643, at *5 (D. Colo. Mar. 7, 2013) ("Under both Title VII and the CADA, the *McDonnell-Douglas* burden-shifting test applies to discrimination claims based on non-direct or circumstantial evidence."); *Rios v. Nexion Health at Cherry Creek*, No. 17-cv-03062-MSK-NYW, 2019 U.S. Dist. LEXIS 142458, at *9 (D. Colo. Aug. 21, 2019) ("[C]laims for sex and pregnancy discrimination under state and federal law are subject to the same analysis.").

flight physiological needs breaks and permission to pump in the lavatory and in the flight deck.   The third element, however, is not satisfied.   Plaintiffs' only basis for asserting that they were treated differently from others "similar in their ability or inability to work" is as follows:   "Frontier has even gone so far as to prohibit pilots from pumping on the job, even though pilots are permitted to take breaks as needed to address other physiological needs such as going to the bathroom or stretching – essentially singling out the need to express breast milk as the sole physiological need that pilots are categorically banned from addressing while in flight."   ECF #74, ¶ 6; *see also id.* ¶ 273 ("Defendant has maintained a policy, pattern, or practice of permitting pilots to take physiological needs breaks for purposes of addressing all other physiological needs.").

Plaintiffs' logic is flawed, and their conclusory allegation that Frontier allows pilots to take physiological needs breaks to address "all other physiological needs" is not sufficient to satisfy their Rule 12(b)(6) burden.   Instead, the legal element that they must plead and prove requires Plaintiffs to identify non-lactating comparators "<u>similar in their ability or inability to work</u>" who were granted the accommodation that Plaintiffs were denied.   *Young*, 135 S.Ct. 1338, 1345; *see also Lacount v. South Lewis SH OPCO, Ltd. Liab. Co.*, No. 16-CV-0545-CVE-TLW, 2017 U.S. Dist. LEXIS 69128, at *10-16 (N.D. Okla. May 5, 2017) (dismissing pregnancy discrimination claim under Rule 12(b)(6) where plaintiff alleged that defendant accommodated workers with conditions other than pregnancy, but did not explain what physical or mental impairments the employees had or how the employees were accommodated).

Here, Plaintiffs', by their own admission, were restricted in their ability to work by a medical need to take a break typically "every two to three hours" (and in Plaintiff

Freyer's case, every three to four hours), "between 15 and 25 minutes" each time.  ECF #74, ¶¶ 29-30, 87, 107.   Plaintiffs have pointed to no other comparator individuals or groups in the Complaint—nor can they in good faith—who had the same level of medical restrictions (or even close), and who requested and were granted permission to take breaks of the length and frequency that Plaintiffs requested in this case.  *See, e.g., Clark v. City of Tucson*, No. CV-14-02543-TUC-CKJ, 2020 U.S. Dist. LEXIS 32644, at *39-42 (D. Ariz. Feb. 24, 2020) (three male comparators identified by plaintiff were not similarly-situated because they did not have "similarly limiting medical conditions") (citing EEOC Guidance No. 915.003).   Plaintiffs' Title VII and CADA disparate treatment claims should be dismissed for failure to state a claim.

### 2.    Plaintiffs' Remaining (Timely) Title VII and CADA Disparate Impact Claims Should Be Dismissed

Plaintiffs' disparate impact claims also should be dismissed.   "Disparate impact claims, as recognized in the Title VII context, challenge 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'"   *Ellis v. United Airlines, Inc*., 73 F.3d 999, 1006 (10th Cir. 1996).   "To establish a *prima facie* case of disparate impact discrimination, Plaintiff must prove a 'specific identifiable employment practice or policy caused a significant disparate impact on a protected group.'"   *Chavez v. Coors Brewing Co*., 176 F.3d 488 [published in full-text format at 1999 U.S. App. LEXIS 5300] at *3 (10th Cir. 1999).   Here, Plaintiffs do not identify any <u>facially neutral</u> policies or practices—instead, they allege and assert that Frontier's policies and practices <u>intentionally</u> single out and discriminate against pregnant and lactating pilots.

Plaintiffs' disparate impact claims should be dismissed.

### 3. Plaintiffs' Remaining (Timely) WANMA Claim Should Be Dismissed

As discussed above, Plaintiffs' WANMA claim with respect to on-aircraft breaks and lactation facilities is preempted by federal law.   Because WANMA has no extraterritorial application, the only remaining timely claim under WANMA is related to Plaintiff Beck's and Plaintiff's Freyer's allegations concerning the lactation room at DIA. Under WANMA, an employer is required to "make reasonable efforts to provide a room or other location in close proximity to the work area, other than a toilet stall, where an employee can express breast milk in privacy."   C.R.S. § 8-13.5-104(1)-(2).   Here, Plaintiffs do not dispute that Frontier—at all times during the statute of limitations period —provided a passcode-protected, lockable, private lactation room for Plaintiffs' use at DIA.   *See* ECF #74, ¶¶ 123, 160, 174.   Plaintiffs do not allege that the room was unsanitary.   Instead, they complain that the location of the room was inconvenient, and that they were unable to access it on two occasions. *See id*.

Plaintiffs fail to state a claim.   They concede that Frontier actually did "provide a room . . . other than a toilet stall where" Plaintiffs could "express breast milk in privacy." The statute requires that the room be "in close proximity to the work area," but pilots do not have a static "work area."   DIA itself is, in essence, the "work area."   Nothing in the statute suggests that Frontier was required to provide a separate lactation room next to every gate, or even on every concourse, out of which Frontier flies.   Nor is material that the room was inaccessible on two occasions.   Here, the statute only requires that an employer make "reasonable" efforts, not perfect efforts.   Plaintiffs' WANMA claim should

be dismissed.  *See, e.g., Tolene v. T-Mobile, USA, Inc*., 178 F. Supp. 3d 674, 685-686 (N.D. Ill. 2016) (holding that the employer had made "reasonable efforts" as a matter of law under Illinois' lactation accommodation statute).

## IV.    CONCLUSION

Frontier respectfully requests that Plaintiffs' claims be dismissed in their entirety, with the one exception of Plaintiff Freyer's First Cause of Action (as to Plaintiff Freyer only), and limited to her grounding in October 2015 at 32 weeks of pregnancy.

Dated this 4th day of February, 2021

Respectfully submitted,


*s/ Danielle L. Kitson*

Danielle L. Kitson
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
dkitson@littler.com

*Attorneys for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of February, 2021, I electronically filed

**FRONTIER'S MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to the following:

Galen L. Sherwin, Esq.
ACLU Women's Rights Project
125 Broad Street, 18th Floor
New York, NY  10004
gsherwin@aclu.org

*Attorneys for Plaintiffs*

Jayme Jonat, Esq.
Vincent G. Levy, Esq.
Karen Sebaski
Holwell, Shuster & Goldberg, LLP
425 Lexington Avenue, 14th Floor
New York, NY  10017
jjonat@hsgllp.com
Vlevy@hsgllp.com
ksebaski@hsgllp.com

*Attorneys for Plaintiffs*

Mark Silverstein, Esq.
Sara R. Neel, Esq.
American Civil Liberties Union-Denver
303 East 17th Street, Suite 350
Denver, CO  80203
msilverstein@aclu-co.org
sneel@aclu-co.org

*Attorneys for Plaintiffs*

*s/Arlene Aguilar*
Arlene Aguilar