

**Collective Bargaining Agreement**                                  03/03/07

2) Initial and Upgrade Simulators. For initial or upgrade training, simulator sessions scheduled on consecutive days shall be scheduled with no more than a 4 hour start time variance, except with consent of the Pilot.

b. Simulator Rest Requirements. A Pilot who has been scheduled for simulator training shall not be scheduled by the Company to perform any duty within 12 hours of the simulator training period (including the scheduled brief time and a ½ hour debrief session) as a required flight deck crew member or as a Deadhead.

c. Simulator Training Duration Limits.
   1) A Pilot assigned to simulator training shall not receive in excess of 8 hours of total training (including oral briefing and debriefing) in a Calendar Day.
   2) No Pilot shall be scheduled more than 2 hours and 30 minutes (2:30) as the Pilot Flying (PF) and not more than 6 hours total elapsed time in a simulator in any 1 Duty Period.

d. PC/PT Notice Requirements. A Pilot shall be given at least 5 Calendar Days notice prior to any PC/PT with the exception of training and subsequent check rides required as provided in Paragraph E. (Performance Standards).
   1) If the simulator period is cancelled and re-scheduled to a date after the originally scheduled period, no further notification is required other than the date, time and place of the re-scheduled period.

   *Notice requirements for check-rides.*

   2) If the period is rescheduled to a date prior to the originally scheduled period, with less than 5 days notice, it shall be the Pilot's option to accept the re-scheduled period; however, in the event the Cancellation occurs in the Pilot's Late Grace Month, and the rescheduled period is prior to the originally scheduled period, with less than 48 hours notice, it shall be the Pilot's option to accept the re-scheduled period.

e. Seat Support. A Pilot who performs duty in the flight simulator for the purpose of facilitating training being administered to another Pilot, but who is not receiving training (i.e. a seat support Pilot), may perform flight duty as a required flight crewmember on that same Calendar Day. Normal flight duty (including simulator time) limitations shall apply (but not the 12 hour requirement in Paragraph b. above).



**Collective Bargaining Agreement** 03/02/07

C. BIDDING FOR TRAINING

Pilots shall bid for training in accordance with Section 5.G.

D. PAY DURING TRAINING

Pilots shall be paid for training in accordance with Section 4.

E. PERFORMANCE STANDARDS

1. General Performance Standards.

   a. Failure Documentation. If a Pilot's performance is judged to be unsatisfactory during any training or checking event, considering standards appropriate to the particular session, a statement to that effect must be included in the documentation.

   b. Oral Examinations Failures. A failure of an Oral Examination associated with a PC or PT shall be considered a failure of the PC or PT. Additional simulator training sessions, where required in this Performance Standards Section, shall not be required if the training or checking event is due to failure of the Oral Examination. Additional training provided by the Company, if any, for a failed Oral Examination shall be ground/classroom training.

   c. Seat Support Pilots.
      1) A Pilot who performs duty in the flight simulator for the purpose of facilitating training being administered to another Pilot, but who is not receiving training (i.e. a seat support Pilot) shall be subject to evaluation based upon applicable FARs but shall not be required to participate in an oral exam.
      2) If, during the seat support event, the Check Airman or instructor notes a serious deficiency, such deficiency shall not be considered a failure but may serve as the basis for recommended or required additional training.

   d. Wrong Seat During PC or PT.
      1) For recurrent PC or PT events, if a Pilot is sitting in a Position the Pilot is not qualified for and a Check Airman notes a serious deficiency, the Check Airman shall not fail the Pilot.
      2) However, the deficiency may serve as the basis for declaring the event incomplete pending additional training and successful completion of the event.

   e. Multiple Failures and Training Review Board
      1) For the purposes of this Paragraph, Training Phases shall include: Training Simulator (Paragraph 3.b.), Simulator Qualification (Paragraph 3.c.), Operating Experience/Line Checks (Paragraph 4.) and Recurrent Simulator (Paragraph 5.).

*Reduced jeopardy for support Pilots.*



**Collective Bargaining Agreement** 09/09/09

2) If a Pilot has a pattern of failures, the Company shall notify the Pilot and the Association in writing, within 30 days of the failure that determined the pattern, that he may be subject to review by the Training Review Board (TRB) following another failure.

3) The TRB shall consist of 4 members, 2 who shall be selected by the Company and 2 selected by the Association. The Company and Association members shall be Frontier Airlines' employees familiar with Pilot training. In the event a TRB is convened to review a Pilot's training performance, either party may invite a person who is familiar with the equipment, Pilot and/or training involved who may speak on training issues under consideration.

4) The TRB shall recommend by majority vote to the Vice President, Flight Operations whether future upgrade attempts or continued employment should be allowed. Upon deadlock of the TRB, the Vice President, Flight Operations shall make the final determination.

5) The Pilot shall have the right to appeal the final decision of the Vice President, Flight Operations under Section 14 of the Agreement.

6) The TRB's deliberations shall not be admissible in any proceeding under Section 14 of the Agreement.

f. Simulator Scheduling Following a Failure. Simulator training/checking following a failure shall be paid in accordance with Section 4.M. Such re-training/re-checking will be scheduled at the Company's discretion with the following limitations:

1) The training will not be scheduled to begin earlier than 48 hours following the initial failure except by the Pilot's consent, and

2) If scheduled within the first five days following the training failure, the training will not be scheduled outside of a previously scheduled Sequence or reserve period except by the Pilot's consent.

2. Initial New Hire Training and Probationary PC Performance Standards.

a. Initial New Hire Training. If a Pilot's performance during any phase of an Initial New Hire Training is unsatisfactory, the Company may determine if any further training will be given and whether his employment will be continued. This decision must be explained in writing with copies to the Pilot and the Association.

*Consequences for unsatisfactory performance for Probationary Pilots*

b. Probationary PC. If a Pilot fails a Probationary PC, the Company may determine if any further training will be given.



**Collective Bargaining Agreement** | 12/10/07

3. Upgrade Training Performance Standards.

   a. Captain VSA Award Eligibility. The Pilot must meet the requirements to upgrade in accordance with this Section, Section 6 and Section 13.

   b. Training Simulator Phase (this includes Simulator events excluding Simulator Qualification Events as defined under the Flight Operations Training Manual (FOTM)):

*Requirements and consequences for failure during upgrade.*

     1) A Pilot shall be considered to have failed the Upgrade Training Simulator Phase if he receives an overall Unsatisfactory grade (as defined in the FOTM) for a total of 3 times, whether on the same simulator period (e.g., 3 attempts to successfully complete Simulator Period #1), different simulator periods, or on any combination thereof.

     2) Failure During the First Attempt at Upgrade: If a Pilot fails the Upgrade Training Simulator Phase, he shall return to First Officer, and he shall not be awarded a Captain VSA with an originally published Effective Date within 8 months from the date of his last Upgrade Training Simulator Phase failure.

     3) Failure During the Second Attempt at Upgrade: If a Pilot is awarded a second Captain VSA and fails the Upgrade Training Simulator Phase, he shall again return to First Officer.

     4) A third attempt at Upgrade will not normally be authorized by the Company.

   c. Simulator Qualification Phase (this includes Simulator Qualification Events as defined under the FOTM):

     1) First Failure - Following the first failure of a Qualification Event, a Pilot shall receive additional training specific to the deficiency. The additional training shall consist of at least 1 simulator period (the Pilot may waive this in writing) but not to exceed 2 simulator periods. The Pilot shall then be given a second Qualification Event attempt.

     2) Second Failure - If a Pilot fails a second Qualification Event, he shall elect one of the following 2 options:

       a) Third Qualification Attempt Option. He may elect to receive at least 1 additional simulator period, and a third Qualification Event. If his third Qualification Event is not satisfactory, his retention in the service of the Company will be at Company discretion subject to the provisions of Section 13; or

*Consequences for failure of check-rides.*

**20.8** | **Training**



**Collective Bargaining Agreement** 12/10/07

b) First Officer Option. He may remain as a First Officer in the aircraft in which he was attempting to upgrade and shall receive at least 1 training simulator period, and a First Officer PC prior to returning to the line as a First Officer. At the Pilot's option, the Pilot shall receive 1 Flight Training Device (FTD) period prior to the training simulator.

   i. Satisfactory First Officer PC. If the Pilot's First Officer PC is satisfactory, he shall not be awarded a Captain VSA with an Effective Date within 8 months from the date of his most recent failure (and the Company shall have the option to give the Pilot an evaluation flight prior to awarding him the Captain VSA).

   ii. Unsatisfactory First Officer PC.

      1. If the Pilot's First Officer PC is not satisfactory, he shall receive additional training (the Pilot may waive this in writing) to include at least 1 simulator period but not to exceed 2 simulator periods, and another First Officer PC.

      2. If the second First Officer PC is satisfactory, the Pilot shall be restricted from being awarded a Captain VSA with an Effective Date within 18 months from the date of his most recent failure (and the Company shall have the option to give the Pilot an evaluation flight prior to awarding the Captain VSA).

      3. If his second First Officer PC is not satisfactory, his retention in the service of the Company will be at Company discretion subject to the provisions of Section 13.

4. Operating Experience (OE)

   a. Initial Captain Line Check (end of OE): if a Pilot fails his Initial Captain Line Check, he shall receive additional training specific to the deficiency and a subsequent Initial Captain Line Check. If a Pilot fails the second attempt at the Initial Captain Line Check, at the Company's option:

      1) he shall return to First Officer and he shall not be awarded a Captain VSA with an Effective Date within 8 months from the date of his most recent failure (and the Company shall have the option to give the Pilot an evaluation flight prior to awarding the Captain VSA) or,



**Collective Bargaining Agreement** 12/10/07

2) the Company may provide a LOFT and a third Line Check. This option shall not normally be allowed. If the Pilot fails this third Line Check, he shall return to First Officer and he shall not be awarded a Captain VSA with an Effective Date within 24 months from the date of his most recent failure (and the Company shall have the option to give the Pilot an evaluation flight prior to awarding the Captain VSA).

b. 50 Hour Rule. If a Pilot is not ready for his Line Check (or to be signed off for OE) after receiving 50 hours of OE and that Pilot has flown with only 1 Check Airman during OE, the Company shall assign a second Check Airman to continue the OE.

c. 60 Hour Rule. If a Pilot is not ready for his Line Check (or to be signed off for OE) after receiving a total of 60 hours of OE, the Company shall decide whether the Pilot will receive additional OE.

*Consequences for failure of OE.*

1) For a Captain trainee: At the completion of at least 60 hours of OE, if the Pilot is not ready for his Line Check and the Company has determined he shall not receive any more, he shall have failed OE. The Pilot shall return to First Officer and he shall not be awarded a Captain VSA with an Effective Date within 8 months from the date of his last Captain trainee OE event (and the Company shall have the option to give the Pilot an evaluation flight prior to awarding the Captain VSA).

2) For an FO trainee: at the completion of at least 60 hours of OE, if the Pilot is not ready to be signed off for OE, he shall have failed OE and the Company may determine whether his employment will be continued. This decision must be explained in writing with copies to the Pilot and the Association.

5. Recurrent Simulator Training - the following standards applicable to Captains and First Officers are in reference to 1 individual recurrent training event (e.g., 1 PC or PT event).

a. Captain Recurrent Simulator Training (applicable to Captains other than Probationary Pilots).

1) First Failure.

*Consequences for failure of recurrent for a Captain.*

a) Following the first failure of a PC/PT a Captain shall receive additional training specific to the deficiency. The additional training shall consist of at least 1 simulator period (the Pilot may waive this in writing) but not to exceed 2 simulator periods.

b) The Captain shall then be given a second PC/PT event.

2) Second Failure. If a Captain fails the second PC/PT, he shall elect 1 of the following 2 options:



**Collective Bargaining Agreement**                    12/10/07

    a) Third PC/PT Option. He may elect to receive at least 1 additional simulator period and a third PC/PT. If his third PC/PT is not satisfactory, his retention in the service of the Company will be at Company discretion subject to the provisions of Section 13; or

    b) First Officer Option. He may elect to move down to First Officer in the aircraft in which he was qualified as a Captain and shall receive at least 2 simulator training periods, and a First Officer PC before flying as a First Officer. At the Pilot's option, the Pilot shall receive 1 FTD period prior to the training simulator.

       i.   If the Pilot's First Officer PC is satisfactory, he shall not be awarded a Captain VSA with an Effective Date within 8 months from the date of his most recent failure.

       ii.   If the Pilot's First Officer PC is not satisfactory, he shall receive additional training (the Pilot may waive this in writing) to include at least 1 simulator period but not to exceed 2 simulator periods, and another PC/PT. If the second PC/PT is satisfactory, the Pilot shall not be awarded a Captain VSA with an Effective Date within 2 years from the date of his most recent failure.

       iii.   If his second First Officer PC/PT training is not satisfactory, his retention in the service of the Company will be at Company discretion subject to the provisions of Section 13.

  b.  First Officer Recurrent Simulator Training (applicable to First Officers other than Probationary Pilots).

    1)  First PC/PT Attempt.

      a) Following the first failure of a PC/PT, a First Officer shall receive additional training (the Pilot may waive this in writing) specific to the deficiency. The additional training shall consist of at least 1 simulator period but not to exceed 2 simulator periods.

      b) The First Officer shall then be given a second PC/PT.

    2)  Second PC/PT Attempt.



**Collective Bargaining Agreement**    12/10/07

*Consequences for failure of recurrent for a First Officer.*

    a) If the second First Officer PC/PT is not satisfactory, the First Officer shall receive additional training (the First Officer may waive this in writing) specific to the deficiency. The additional training shall consist of at least 1 simulator period but not to exceed 2 simulator periods.

    b) The First Officer shall then be given a third PC/PT.

  3) Third PC/PT Attempt.

    a) If the third First Officer PC/PT is satisfactory, the Pilot shall be restricted from being awarded a Captain VSA with an Effective Date within 8 months from the date of his most recent failure (and the Company shall have the option to give the Pilot an evaluation flight prior to awarding the Captain VSA).

    b) If the third First Officer PC/PT is not satisfactory, his retention in the service of the Company will be at Company discretion subject to the provisions of Section 13.

F. RECURRENT LINE CHECKS

1. If a Pilot fails a Line Check, he shall receive additional training specific to the deficiency and an associated second Line Check.

2. If the Pilot fails the second Line Check he shall receive additional training specific to the deficiency and shall be subject to receiving a LOFT event and subsequent Line Check.

3. If the Pilot fails the LOFT or third Line Check he shall move down to First Officer in the aircraft in which he was qualified as a Captain and shall receive at least 2 simulator training periods, and a First Officer PC before flying as a First Officer. At the Pilot's option, the Pilot shall receive 1 FTD period prior to the training simulator.

  a. If the Pilot's First Officer PC is satisfactory, he shall not be awarded a Captain VSA with an Effective Date within 8 months from the date of his most recent failure.

  b. If the Pilot's First Officer PC is not satisfactory, he shall receive additional training (the Pilot may waive this in writing) to include at least 1 simulator period but not to exceed 2 simulator periods, and another PC/PT. If the second PC/PT is satisfactory, the Pilot shall not be awarded a Captain VSA with an Effective Date within 18 months from the date of his most recent failure.

  c. If his second First Officer PC/PT training is not satisfactory, his retention in the service of the Company will be at Company discretion subject to the provisions of Section 13.

 **Collective Bargaining Agreement**                    03/02/07

---

## SECTION 21

### DUES CHECK-OFF AND UNION SECURITY

A. CHECK-OFF

1. The Company shall allow the deduction of Association Membership Dues or Agency Shop Fees from a Pilot's paycheck provided such Pilot voluntarily executes 1 of the following agreed upon forms known as the "Check-Off Form", which shall be prepared and furnished by the Association.

2. The Company shall remit to the Association by check, or other suitable means (acceptable to both the Company and the Association), all dues and Agency Fees collected as soon as possible after the pay date on which the deduction was made.

3. The Company remittance of Association Membership Dues and Agency Fees to the Association shall be accompanied by a list of names, employee numbers, and amounts of deductions for each Pilot for whom deductions have been made in that particular pay period.

*Dues may be automatically deducted from paychecks and submitted to the Association by the Company.*

---



**Collective Bargaining Agreement** 03/02/07

## B. DUES CHECK-OFF FORM

Assignment and Authorization for
Check-off of Association Dues
for the Frontier Airline Pilots Association

To: Frontier Airlines

I,_____, hereby assign the Frontier Airline Pilots Association my Association dues from any wages earned or to be earned by me as your employee. I authorize and direct you to deduct from my pay each pay period Association Membership Dues in the amount of 1.5% of my gross pay (or such monthly Dues as may hereafter be established in accordance with the Constitution of the Frontier Airline Pilots Association).

This assignment, authorization and direction may be revoked by me in writing at any time after the expiration of 1 year from the date hereof, or upon the termination date of the Dues Check-Off Agreement between the Company and the Association, whichever occurs sooner.

Signature of Employee _____

Date _____ Employee #_____

Domicile _____

Any notice of revocation as set forth in the Association Check-Off Form must be in writing, signed by the Pilot, and delivered by certified mail addressed to the Frontier Airlines payroll department, with a copy to the Secretary/ Treasurer of the Frontier Airline Pilots Association. Dues Check-Off Forms and notices received by the Company shall be stamp-dated on the date received.

The Company shall remit to the Association a check for payment of all dues collected as soon as possible after the pay date on which the deduction was made. The Company remittance of Association membership dues to the Association shall be accompanied by a list of names, employee numbers and amounts of deductions for each Pilot for whom deductions have been made in that particular pay period.



**Collective Bargaining Agreement**                                    03/02/07

C.  AGENCY SHOP CHECK-OFF FORM

Assignment And Authorization for
Check-Off of Association Agency Shop Fees
for the Frontier Airline Pilots Association

To: Frontier Airlines

I,_____, hereby assign the Frontier Airline Pilots Association my Agency Shop Fees from any wages earned or to be earned by me as your employee. I authorize and direct you to deduct from my pay each pay period Agency Shop Fees in the amount of 1.5% of my gross pay (or such monthly Fees as may hereafter be established in accordance with the Constitution of the Frontier Airline Pilots Association).

This assignment, authorization and direction may be revoked by me in writing at any time after the expiration of 1 year from the date hereof, or upon the termination date of the Agency Shop Check-Off Agreement between the Company and the Association, whichever occurs sooner.


Signature of Employee _____

Date _____ Employee #_____

Domicile _____


Any notice of revocation as set forth in the Agency Shop Check-Off Form must be in writing, signed by the Pilot, and delivered by certified mail addressed to the Company payroll department, with a copy to the Secretary/Treasurer of the Frontier Airline Pilots Association. Agency Shop Check-Off Forms and notices received by the Company shall be stamp-dated on the date received.

The Company shall remit to the Association a check for payment of all Fees collected as soon as possible after the pay date on which the deduction was made. The Company remittance of Agency Shop Fees to the Association shall be accompanied by a list of names, employee numbers and amounts of deductions for each Pilot for whom deductions have been made in that particular pay period.



**Collective Bargaining Agreement** | 03/02/07

### D. AGENCY SHOP

*Dues start 30 days after off Probation.*

1. Each Pilot of the Company covered by this Agreement who fails to voluntarily acquire or maintain membership in the Association shall be required, as a condition of employment, beginning 30 days after the effective date of this Agreement or 30 days after the completion of the Pilot's Probationary Period, whichever is later, to pay the Association each pay period a service charge as a contribution for the administration of the Agreement and the representation of such Pilot. This service charge shall be an amount equal to the Association's regular monthly dues, initiation fees, and periodic assessments that would normally be required to be paid by such Pilot if they were a member.

*Delinquent Pilots must pay within 15 days of notice or shall be discharged.*

2. If any Pilot of the Company covered by this Agreement becomes delinquent in the payment of this service charge or any Association member becomes delinquent in the payment of dues, the Association shall attempt to notify such Pilot by certified mail, return receipt requested, with a copy sent by regular U.S. mail and a copy to the Vice President-Flight Operations, that the Pilot is delinquent in the payment of such service charge or membership dues as specified herein and is subject to discharge as a Pilot of the Company. Such letter shall also notify the Pilot that the required payment must be remitted within a period of 15 days or the Pilot shall be discharged.

3. The notice of delinquency required under Paragraph D.2., shall be deemed to be received by the Pilot, whether or not it is personally received by such Pilot, when mailed by the Association's Secretary/Treasurer, or their designee, by certified mail, return receipt requested, to the Pilot's last known address or to any other address that has been designated by the Pilot. It shall be the duty of every Pilot covered by this Agreement to notify the Association of every change in home address, or of an address where the notice required by this Paragraph can be sent and received by the Pilot, if the Pilot's home address is at any time unacceptable for this purpose.

4. If, upon the expiration of the 15 day period, the Pilot still remains delinquent, the Association shall verify in writing to the Vice President-Flight Operations, copy to the Pilot, that the Pilot has failed to remit payment within the grace period allowed and is therefore to be discharged. The Company's Vice President-Flight Operations shall hereupon take steps to discharge such Pilot from the service of the Company.

5. A grievance by a Pilot who is to be discharged as the result of an interpretation or application of the provisions of this section shall be subject to the following procedure:



   a. A Pilot who believes that the provisions of this Section have not been properly interpreted or applied as it pertains to the Pilot may submit a request for review in writing within 5 days from the date of notification by the Vice President-Flight Operations as provided in Paragraph 4 above. The request must be submitted to the Vice President-Flight Operations, or their designee, who shall review the grievance and render their decision in writing no later than 5 days following receipt of the grievance.

*A Pilot may grieve discharge under this Section.*

   b. The Vice President-Flight Operations, or their designee, shall forward their decision to the Pilot, with a copy to the Association. Said decision shall be final and binding on all interested parties unless appealed, as hereinafter provided. If the decision is not satisfactory to either the Pilot or the Association, then either may appeal the decision within 10 days from the date of the decision directly to a neutral referee who may be agreed upon by the Pilot and the Association within 10 days thereafter. In the event the parties fail to agree upon a neutral referee within the specified period, either the Pilot or the Association may request the National Mediation Board to name such neutral referee. The decision of the neutral referee shall be final and binding on all parties to the dispute. The fees of such neutral referee shall be borne equally by the Pilot and the Association.

6. During the period a grievance is being handled under the provisions of this section, and until final award by the Vice President-Flight Operations, or their designee, or the neutral referee, the Pilot shall not be discharged from the Company nor lose any seniority rights because of noncompliance with the terms and provisions of this section. A decision shall be deemed final when the time for appeal has expired.

   a. A Pilot discharged by the Company under the provisions of this Paragraph shall be deemed to have been "discharged for cause" within the meaning of the terms and provisions of this Agreement.

   b. It is agreed that the Company shall not be liable for any time or wage claim of any Pilot discharged by the Company pursuant to a written order by any authorized Association representative under the terms of this Paragraph.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                                    03/02/07

## SECTION 22

### MEDICAL STANDARDS

A.  The medical standards required of a Pilot shall be the standards established by the FAA, including its waiver policy.

B.  If, in the opinion of the Company, a Pilot develops a medical impairment to the Pilot's ability to perform Pilot duties between routine physical examinations as required by this Section, the Company shall have the right to require said Pilot to submit to a medical examination from a medical examiner of the Pilot's choice. If the Pilot fails to specify a medical examiner, the Company shall choose a medical examiner. The financial responsibility for the requested examination shall be borne by:

   1.  The Company, if the Pilot is examined by a medical examiner specified by the Company.

   2.  The Pilot, if the Pilot is examined by a medical examiner specified by the Pilot.

C.  In the event a Pilot is unable to hold a first class medical certificate, yet is able to hold a second class medical and is no longer on a Leave of Absence related to the medical condition, he shall return to work as and be paid as a First Officer.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**     03/25/10

## SECTION 23

### DEFINITIONS

**Accrued Vacation** - vacation a Pilot accrues in the current year that may be used the next year.

**Active Service** - the period of time that begins on a Pilot's most recent date of hire as a Pilot and continues until resignation, termination, furlough, or as set forth in Section 9 (Leaves of Absence). A Pilot shall continue Active Service upon return from Leave of Absence or Furlough in accordance with those Sections. A Pilot shall forfeit all Active Service upon resignation or termination.

**Actual Block Hours** - actual time from Block Out to Block In.

**Aggressive Reserve** - a process that allows Reserve Pilots to bid for Sequences after Daily Open Time closes and prior to Reserve assignment (see Section 5.S.9.).

**Average Target Line Credit Value** - a target number determined by the Company to which the SSC will build the average Pay Credit for all lines.

**Base Month** - the calendar month a Pilot is due for training as defined by FARs. Training may also occur in the month prior to the Base Month or in the Late Grace Month.

**Bid Category** - a Pilot's Bid Category is defined by crew position, domicile and type of equipment.

**Block In** - the time at which an aircraft reaches a destination (generally, at a gate), the parking brake is set and a door is opened (typically as shown by ACARS).

**Block Out** - the time at which an aircraft's parking brake is released and all doors are closed for departure (generally from a gate, and typically as shown by ACARS).

**Block Time** - the time elapsed from Block Out to Block In.

**Calendar Day** - the twenty-four (24) hour period commencing at 0001 and ending at 2400 hours local time.

**Cancellation** - any scheduled flight which does not operate for any reason.

**Captain** - a Pilot who is in command of the aircraft, is responsible for the aircraft and crew while on-duty, is properly qualified and designated by the Company and who holds currently effective airman's certificates authorizing such Pilot to serve as Captain and act as pilot-in command.



Captain Qualified First Officers (CQFO) - a Pilot who is qualified as a Captain, but, does not hold a Hard, Reserve, or Relief line as a Captain. CQFOs will be designated on the monthly bid package by an asterisk (*).

Check Airman - a Pilot who is designated by the Company, and approved by the FAA, to examine other Pilots to determine Pilot proficiency with respect to Company and FAR procedures and competency to perform Pilot duties.

Continuous Duty Overnight (CDO) - a scheduled duty period which begins in one Calendar Day and ends in the following Calendar Day which includes an overnight stay out of Domicile that is scheduled for less then FAR required minimum rest.

CDO Line - line of flying consisting of only CDO Sequences.

Daily Drop Limit - the limit on the number of Duty Periods that may be Dropped on a given day. The limit will include all Duty Periods operating that day.

Day Off - a Calendar Day free from all duty with the Company which occurs in a Pilots' domicile.

Deadhead - transportation at Company direction (not local in character) to or from a duty assignment.

Domicile - a geographic location, usually a city served by scheduled Company service, where Pilots are based and the location where Sequences are constructed to start. As of the date of signing of this Agreement, the only Domicile is Denver.

Drop - a Sequence, Pay Credit, or portion thereof, that a Pilot voluntarily removes from his schedule for a deduction in Pay Credits.

Duty Period - scheduled report time until 15 minutes after actual Block In for Domestic, 30 minutes for International (see Section 5.J.5.).

Earned Vacation - unused vacation a Pilot has accrued the previous year for use in the current year.

Effective Date - the date when a Pilot's Hourly Rate changes as a result of a Staffing Adjustment, and as further defined in Section 6.B.

Electronic Bid System - an internet based method for Pilots to access and modify their schedules. As of the date of signing of this Agreement, the Electronic Bid System is FLiCA.



Electronic Flight Bag (EFB) - Is defined as an approved electronic device used to display information required for flight operations. Specific policies and procedures for use of EFBs are defined in Company manuals to include, but not limited to: EFB Program Manual, FOM I, FOM II, FOTM and DOM. The specific hardware device shall be defined by the Company in accordance with these manuals.

Extended/Extension - a Reserve assignment out of the normal order in accordance with Section 5.Q.4.

Flight Time - for scheduling and pay purposes, Flight Time shall be defined as: The total time from Block Out to Block In. In the event of any FAA enforcement action, the definition of flight time in FAR Part 1 shall prevail.

Final Line Check - the line check that qualifies the Pilot to be released to the line (either by the Company or FAA).

First Officer - a Pilot who is second-in-command of the aircraft whose duty is to assist and relieve the Captain and, in the absence of the Captain, is responsible for the aircraft and crew while on-duty. A First Officer shall be properly qualified and designated by the Company, hold currently effective airman's certificates authorizing such Pilot to serve as First Officer and act as second-in-command.

Golden Days - days chosen by a Pilot on which no training can be assigned.

Ground Training - all training conducted in a classroom or at any place that is not usually associated with flight training. It shall include classroom instruction, and training involving aircraft emergency procedures, flight equipment, hands on equipment, home/distance learning, or a Cockpit Procedure Trainer (CPT).

Hard Line - line of flying other than Relief and Reserve Lines, including Regular Lines and CDO Lines.

Hourly Rate - the rate of pay for a Pilot as defined by Section 4.

Incentive Pay - pay for credits in excess of 82 hours.

Instructor Pilot - a Pilot assigned by the Company to provide simulator or ground training.

Operating Experience - the operating experience required by FARs and administered by Company Check Airman.

Irregular Operations - flights that are delayed or do not operate in accordance with the published schedule because of circumstances such as weather, maintenance, ATC, or other similar circumstances.

Junior Assignment (JA) - assigned duty outside of a Pilot's awarded schedule, except as allowed by Reassignment, and as further described in Section 5.V.



Late Grace Month - the month after the Base Month during which a Pilot must complete recurrent training to maintain currency.

Local Time - the time of day where the Pilot is physically located.

Longevity - the period of time commencing on the Pilot's date of hire (as a Pilot) which shall begin on the first day a Pilot is scheduled to and reports to the Company's Pilot Training Program and continuing while the Pilot is in the Active Service of the Company except where specifically stated otherwise in this Agreement.

Management Pilot - a Company Pilot whose name appears on the Seniority List who has been designated by the Company and is responsible for managing Pilots and administering Company policy as it relates to the Pilot work force.

Master Bid - a Pilot's bid for Position as describe in Section 6.C.

Monthly Bid Package - a compilation of information including Domicile specific Sequences, lines of flying, etc. as described in Section 5.J.

Monthly Bid Period - a Calendar month based period of 30 or 31 days as described in Section 5.F.

Monthly Pay Guarantee - minimum amount of Pay Credits generally paid per Monthly Bid Period as described in Section 4.G. and Section 5 as applicable

New Hire Pilot - a Pilot who has not completed initial training.

No-Bid Pilot - a Pilot (other than a Management Pilot) working on Company business who does not participate in the monthly line bid process (see Section 18.D.).

Open Time - Sequences that have not been assigned or awarded to a Pilot.

Open Vacation Period - a block of vacation that has not been assigned or awarded.

Overnightable Reserve - a Short Call Reserve Pilot who is available for 2 RDP's or a Medium or Long Call Reserve who is available for multiple calendar days.

Pay Credit - unit of pay to be multiplied by a Pilot's Hourly Rate to determine the Pilot's actual pay.

Pay Report - monthly report published by the Company indicating daily Pay Credit, Pay Credit adjustments (i.e. JA), and per diem.

Pilot - any employee of Frontier Airlines, Inc. covered under this Agreement, whose name appears on the Seniority List.

Position - Seat, equipment and domicile specific (e.g. Airbus Captain, DEN).

Positive Telephone Contact - a telephone conversation between the Pilot and the Company.

Probation - a period of 12 months from the date of hire (or as extended by a leave of absence) as a Pilot or the successful completion of the Probationary Proficiency Check as described in Section 20, whichever comes later (see Section 3.D.).

Reassignment - a Pilot is reassigned if they are directed to perform flying which is not a part of their scheduled Sequence(s) as described in Section 5.P.

Red-Eye - any Duty Period, other than a CDO, that reports prior to and releases after, or the entire Duty Period occurs between, 0100-0300 LDT.

Regular Line - line of flying other than Relief, Reserve or CDO Lines.

Relief Line - line of flying built after Regular and CDO Lines per Section N.

Report Time - the time that a Pilot is scheduled to report at the beginning of a Duty Period.

Reroute - a Reassignment in accordance with Section 5.P.3.

Reschedule - a Reassignment in accordance with Section 5.P.2.

Reserve Line - line of flying consisting only of Long, Medium or Short Call reserve duty.

Rest Period - the period of time free from all Company duty between scheduled Duty Periods.

Scheduled Block - scheduled length of time from Block Out to Block In as shown in the Monthly Bid Package.

Scheduled Deadhead - deadhead leg published in the Monthly Bid Package.

Seat - Captain, First Officer.

Secondary Staffing Adjustments - Staffing Adjustments directly caused by a posted Staffing Adjustment and awarded or assigned as part of the same bid.

Seniority List - the list of Pilots employed by the Company with rights as described in Section 3. The Seniority List as of the date of signing of this Agreement is attached as Appendix 1.

Sequence - a series of flights over 1 or more days, which starts in the Pilot's Domicile and ends with a legal rest break in the Pilot's Domicile.

Sequence Release Time - the time of the end of duty in Domicile on the last day of a Sequence.

Sequence Report Time - the time of the start of duty in Domicile on the first day of a Sequence.



Small Jets - aircraft allowed to be flown by Pilots not on the Seniority List as described in Section 1.

Staffing Adjustment - a movement of a Pilot from one Position to another as described in Section 6.

Swap - an exchange of flying, vacation or reserve days/duty periods (or other activities as allowed by this Agreement) between a Pilot and Open Time (or Open Vacation Periods). For Swaps involving flying or reserve days/duty periods, all elements of the Swap request (i.e., the work being added and the work being removed) must be scheduled to occur within the same Monthly Bid Period.

TAFB (Time Away From Base) - the time from a Sequence initial report to final release from duty.

Trade - an exchange of flying, vacation or reserve days/duty periods (or other activities as allowed by this Agreement) between two Pilots.

Transition Conflict - consists of any conflicts due to an interference or illegality form the current Monthly Bid Period to the following Monthly Bid Period.

Unscheduled Deadhead - deadhead leg not shown in the Monthly Bid Package.



| **FAPA** | Collective Bargaining Agreement | 09/30/09 |

---

## SECTION 24

## DURATION AND TERMINATION

This Agreement shall become effective upon the date of signing of this Agreement, and shall remain in full force and effect until March 2, 2015, and shall renew itself without change each succeeding March 2 thereafter, unless written notice of intended change is served in accordance with Section 6, Title I of the Railway Labor Act, as amended, by the Association up to 12 months prior to March 2, 2015, or by either party hereto at least 90 Calendar Days prior to the date the parties may commence negotiations or a subsequent anniversary of such date, unless the parties agree otherwise.

In witness whereof, the parties have signed this Agreement September 30, 2009.

For Frontier Airlines, Inc.:

_____
Jeff Potter
President and Chief Executive Officer

_____
Chris Collins
Senior Vice President - Operations

_____
Ann Block
Vice President - Human Resources

_____
James W. Sullivan
Vice President - Flight Operations

_____
Paul Tate
Senior Vice President & CFO

For Frontier Airline Pilots Association:

_____
Jeffrey M. Thomas
President

_____
Scott Gould
Negotiating Committee Chairman

_____
Kent Katnik
Negotiating Committee Member

_____
John Stemmler
Negotiating Committee Member

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement** 03/02/07

| APPENDIX 1 |
| :-: |

## SENIORITY LIST

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 1 | KING | TERRANCE | 35 | 04/18/94 | 07/07/47 | AIRBUS | CAPT |
| 2 | ALLEN | JAMES | 56 | 05/16/94 | 02/13/52 | AIRBUS | CAPT |
| 3 | FLAVAN III | DAVID | 57 | 05/16/94 | 07/08/53 | AIRBUS | CAPT |
| 4 | RIDER | MIKE | 60 | 05/16/94 | 07/26/61 | AIRBUS | CAPT |
| 5 | STALEY | ANTHONY | 181 | 06/20/94 | 11/14/47 | AIRBUS | CAPT |
| 6 | ROSS | DEREK | 188 | 06/20/94 | 04/21/60 | AIRBUS | CAPT |
| 7 | BROADY | JEFFERY | 192 | 06/20/94 | 06/08/61 | AIRBUS | CAPT |
| 8 | DURNFORD | FRANCIS | 194 | 06/20/94 | 12/26/62 | AIRBUS | CAPT |
| 9 | CLARK | LARRY | 260 | 09/06/94 | 07/24/59 | AIRBUS | CAPT |
| 10 | VAUGHAN | GORDON | 261 | 09/06/94 | 05/30/62 | AIRBUS | CAPT |
| 11 | SULLIVAN JR | JAMES | 266 | 09/06/94 | 07/14/64 | AIRBUS | CAPT |
| 12 | CAVENDER | TIMOTHY | 178 | 09/06/94 | 03/14/66 | AIRBUS | CAPT |
| 13 | STOCK | RONALD | 373 | 11/16/94 | 09/07/55 | AIRBUS | CAPT |
| 14 | BENINE | RYAN | 375 | 11/16/94 | 12/19/65 | AIRBUS | CAPT |
| 15 | SMITH | DARIN | 536 | 06/11/95 | 04/29/65 | AIRBUS | CAPT |
| 16 | PRICE | JEFFERY | 548 | 07/05/95 | 12/21/56 | AIRBUS | CAPT |
| 17 | BAIR | DAVID | 549 | 07/05/95 | 01/28/58 | AIRBUS | CAPT |
| 18 | NEWMAN | SHANE | 550 | 07/05/95 | 03/08/66 | AIRBUS | CAPT |
| 19 | McLAUGHLIN | TODD | 557 | 07/10/95 | 04/19/56 | AIRBUS | CAPT |
| 20 | FLESCH | KARL | 561 | 07/10/95 | 12/13/57 | AIRBUS | CAPT |
| 21 | GRAHAM | STEVEN | 572 | 07/10/95 | 03/29/63 | AIRBUS | CAPT |
| 22 | APPLEBY | HENERY | 609 | 10/02/95 | 11/09/54 | AIRBUS | CAPT |
| 23 | KELLEY | DAVID | 610 | 10/02/95 | 05/24/60 | AIRBUS | CAPT |
| 24 | SALA | ORVILLE | 614 | 10/02/95 | 11/20/65 | AIRBUS | CAPT |
| 25 | WAYMAN | IAN | 658 | 10/23/95 | 08/27/61 | AIRBUS | CAPT |
| 26 | SUNDQUIST | CHRISTOPHER | 663 | 10/23/95 | 12/06/67 | AIRBUS | CAPT |
| 27 | McCOLLOUGH | VAL | 748 | 12/04/95 | 08/01/57 | AIRBUS | CAPT |
| 28 | FONTES | JOE | 860 | 03/11/96 | 09/07/47 | AIRBUS | CAPT |
| 29 | ZINK | DOUGLAS | 867 | 03/11/96 | 09/29/60 | AIRBUS | CAPT |
| 30 | HOWELL | ERIC | 869 | 03/11/96 | 12/23/63 | AIRBUS | CAPT |
| 31 | MORREY II | THOMAS | 872 | 03/11/96 | 01/27/65 | AIRBUS | CAPT |
| 32 | NEVELS | WESLEY | 876 | 03/11/96 | 02/27/66 | AIRBUS | CAPT |
| 33 | DURHAM | DANNY | 922 | 04/08/96 | 03/08/48 | AIRBUS | CAPT |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 34 | HAYES | KEVIN | 925 | 04/08/96 | 12/18/54 | AIRBUS | CAPT |
| 35 | ALEXANDER | JOHN | 927 | 04/08/96 | 08/06/60 | AIRBUS | CAPT |
| 36 | EASTMAN | DOUGLAS | 933 | 04/08/96 | 03/01/67 | AIRBUS | CAPT |
| 37 | GATES | DENNIS | 934 | 04/12/96 | 03/21/51 | AIRBUS | CAPT |
| 38 | TORZA | DOUGLAS | 955 | 04/29/96 | 03/03/51 | AIRBUS | CAPT |
| 39 | MALLO | RORY | 959 | 04/29/96 | 09/29/61 | AIRBUS | CAPT |
| 40 | HELLING | TODD | 960 | 04/29/96 | 10/13/62 | AIRBUS | CAPT |
| 41 | DOYLE | PATRICK | 963 | 04/29/96 | 12/19/67 | AIRBUS | CAPT |
| 42 | BEEMAN | JERRY | 1322 | 01/13/97 | 10/16/60 | AIRBUS | CAPT |
| 43 | PELLEY | GREG | 1323 | 01/13/97 | 12/22/60 | AIRBUS | CAPT |
| 44 | SPARKS | SAMUEL | 1324 | 01/13/97 | 09/30/63 | AIRBUS | CAPT |
| 45 | POWELL | SHAWN | 1326 | 01/13/97 | 10/09/67 | AIRBUS | CAPT |
| 46 | BLACKMON | DAVID | 1397 | 03/03/97 | 11/17/57 | AIRBUS | CAPT |
| 47 | HALL | RENAN | 1398 | 03/03/97 | 02/03/60 | AIRBUS | CAPT |
| 48 | SCHMIDT | KEITH | 1399 | 03/03/97 | 01/17/61 | AIRBUS | CAPT |
| 49 | VITA | ANDREAS | 1400 | 03/03/97 | 06/02/62 | AIRBUS | CAPT |
| 50 | GYSIN | KATHY | 1401 | 03/03/97 | 07/02/63 | AIRBUS | CAPT |
| 51 | EMERY | JAMES | 1404 | 03/03/97 | 04/22/70 | AIRBUS | CAPT |
| 52 | HILLMAN | CRAIG | 1440 | 03/31/97 | 05/20/50 | AIRBUS | CAPT |
| 53 | THIGPEN | JAMES | 1444 | 03/31/97 | 08/12/64 | AIRBUS | CAPT |
| 54 | MALONE | MICHAEL | 1499 | 05/05/97 | 08/10/48 | AIRBUS | CAPT |
| 55 | HANRAHAN | EDWARD | 1535 | 06/02/97 | 11/15/60 | AIRBUS | CAPT |
| 56 | TYSON | DAVID | 1536 | 06/02/97 | 06/12/63 | AIRBUS | CAPT |
| 57 | DURBIN | BRIAN | 1541 | 06/02/97 | 05/31/73 | AIRBUS | CAPT |
| 58 | FURNAS | JERRY | 1594 | 07/07/97 | 05/28/49 | AIRBUS | CAPT |
| 59 | FAIR | CHRISTOPHER | 1601 | 07/07/97 | 01/03/50 | AIRBUS | CAPT |
| 60 | ZELINSKI | TIMOTHY | 1609 | 07/07/97 | 10/29/59 | AIRBUS | CAPT |
| 61 | STEFFERS | STEVEN | 1611 | 07/07/97 | 09/05/63 | AIRBUS | CAPT |
| 62 | BAER | JEFFERY | 1612 | 07/07/97 | 07/06/64 | AIRBUS | CAPT |
| 63 | MEEHAN | FREDERICK | 1663 | 08/11/97 | 02/25/57 | AIRBUS | CAPT |
| 64 | HART | STEPHEN | 1665 | 08/11/97 | 10/15/57 | AIRBUS | CAPT |
| 65 | PUCCI | LARRY | 1666 | 08/11/97 | 08/10/59 | AIRBUS | CAPT |
| 66 | RINEHART | SCOTT | 1671 | 08/11/97 | 08/30/68 | AIRBUS | CAPT |
| 67 | HOWELL | NICHOLAS | 1676 | 08/11/97 | 11/23/68 | AIRBUS | CAPT |
| 68 | HARKE | GWYN | 1873 | 10/20/97 | 08/05/56 | AIRBUS | CAPT |
| 69 | MATEYKO | GREGORY | 1877 | 10/20/97 | 10/19/67 | AIRBUS | CAPT |
| 70 | WALKER | DAVID | 1884 | 10/20/97 | 08/27/68 | AIRBUS | CAPT |
| 71 | VOGEL | KEVIN | 1892 | 10/20/97 | 10/13/70 | AIRBUS | CAPT |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 72 | SMITH | HARRIS | 2132 | 02/03/98 | 05/14/49 | AIRBUS | CAPT |
| 73 | BENDIK | JAMES | 2133 | 02/03/98 | 01/20/60 | AIRBUS | CAPT |
| 74 | SPANOS | CHRISTOPHER | 2135 | 02/03/98 | 01/16/65 | AIRBUS | CAPT |
| 75 | DUNCAN | THOMAS | 2226 | 03/02/98 | 01/24/50 | AIRBUS | CAPT |
| 76 | ROSCOE | KARL | 2227 | 03/02/98 | 02/21/61 | AIRBUS | CAPT |
| 77 | WERTZBAUGHER | SHAWN | 2228 | 03/02/98 | 05/08/63 | AIRBUS | CAPT |
| 78 | PARKER | KEITH | 2312 | 05/04/98 | 03/27/51 | AIRBUS | CAPT |
| 79 | THOMAS | JACK | 2317 | 05/04/98 | 04/04/56 | AIRBUS | CAPT |
| 80 | PRATT | LEONARD | 2318 | 05/04/98 | 08/28/58 | AIRBUS | CAPT |
| 81 | MIHALCIN | MICHAEL | 2321 | 05/04/98 | 10/07/58 | AIRBUS | CAPT |
| 82 | BOYD | SIMON | 2322 | 05/04/98 | 11/23/60 | AIRBUS | CAPT |
| 83 | FRANCOIS | PAUL | 2402 | 06/29/98 | 03/13/63 | AIRBUS | CAPT |
| 84 | BOIFEUILLET | GEORGE | 2405 | 06/29/98 | 08/14/64 | AIRBUS | CAPT |
| 85 | SCHNEIDER | CHRIS | 2408 | 06/29/98 | 12/23/64 | AIRBUS | CAPT |
| 86 | CAMPBELL | PETER | 2680 | 09/08/98 | 04/09/47 | AIRBUS | F/O |
| 87 | STATHAM JR | VIVIAN | 2681 | 09/08/98 | 05/08/52 | AIRBUS | F/O |
| 88 | RIVERS | DAVE | 2682 | 09/08/98 | 10/01/53 | AIRBUS | CAPT |
| 89 | OSBORN | IVER | 2683 | 09/08/98 | 09/09/63 | AIRBUS | CAPT |
| 90 | VOLLSTAD-McKEAN | KRISTIN | 2684 | 09/08/98 | 09/22/64 | AIRBUS | CAPT |
| 91 | JEWETT | BRANDON | 2687 | 09/08/98 | 08/14/73 | AIRBUS | CAPT |
| 92 | McDONALD | THOMAS | 2798 | 10/12/98 | 07/20/51 | AIRBUS | F/O |
| 93 | JAMESON | THOMAS | 2800 | 10/12/98 | 05/12/54 | AIRBUS | CAPT |
| 94 | WORKER | LEWIS | 2802 | 10/12/98 | 09/09/61 | AIRBUS | CAPT |
| 95 | GWYNN | WILLIAM | 2850 | 10/26/98 | 08/25/54 | AIRBUS | CAPT |
| 96 | DerVARTANIAN | MICHAEL | 2852 | 10/26/98 | 08/08/56 | AIRBUS | CAPT |
| 97 | RIGGIO | FRANK | 2854 | 10/26/98 | 02/09/61 | AIRBUS | CAPT |
| 98 | NEWMAN | SAMUEL | 2856 | 10/26/98 | 04/07/65 | AIRBUS | CAPT |
| 99 | FRIEDMAN | STEVEN | 2857 | 10/26/98 | 01/17/68 | AIRBUS | CAPT |
| 100 | HAEHNEL | PATRICK | 2858 | 10/26/98 | 04/18/68 | AIRBUS | CAPT |
| 101 | CHAPMAN | DARRIN | 2859 | 10/26/98 | 08/27/71 | AIRBUS | CAPT |
| 102 | JORDAN | JAMES | 2860 | 10/26/98 | 02/08/73 | AIRBUS | CAPT |
| 103 | JOHNSON | EVAN | 2887 | 11/09/98 | 02/10/50 | AIRBUS | CAPT |
| 104 | KUGLER | JOHN | 2888 | 11/09/98 | 08/01/50 | AIRBUS | CAPT |
| 105 | WALDROP | LUTHER | 2889 | 11/09/98 | 05/06/55 | AIRBUS | CAPT |
| 106 | SCOFIELD | TOM | 2890 | 11/09/98 | 08/04/56 | AIRBUS | F/O |
| 107 | KOHLER | JOHN | 2891 | 11/09/98 | 03/17/59 | AIRBUS | CAPT |
| 108 | DAVIDSON | DAVID | 2892 | 11/09/98 | 07/18/59 | AIRBUS | CAPT |
| 109 | JACOBS | ZAMIR | 2893 | 11/09/98 | 03/21/61 | AIRBUS | CAPT |



**Collective Bargaining Agreement**                                    03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 110 | ESTES | DANIEL | 2894 | 11/09/98 | 03/27/61 | AIRBUS | CAPT |
| 111 | LOUGH | DAVID | 2895 | 11/09/98 | 07/08/62 | AIRBUS | CAPT |
| 112 | ARELLANO | LARRY | 2897 | 11/09/98 | 05/06/64 | AIRBUS | CAPT |
| 113 | LENBERG | EDWARD | 2898 | 11/09/98 | 07/01/64 | AIRBUS | CAPT |
| 114 | HERMANCE | SCOTT | 2900 | 11/09/98 | 11/26/68 | AIRBUS | CAPT |
| 115 | HART | SEAN | 2901 | 11/09/98 | 03/25/69 | AIRBUS | CAPT |
| 116 | LUND | DAVID | 3071 | 01/18/99 | 09/24/55 | AIRBUS | CAPT |
| 117 | REIGLE | DUANE | 3073 | 01/18/99 | 10/08/64 | AIRBUS | CAPT |
| 118 | PONDER | GILBERT | 3074 | 01/18/99 | 05/05/65 | AIRBUS | CAPT |
| 119 | RUGGEBERG | JEFFREY | 3077 | 01/18/99 | 06/02/70 | AIRBUS | CAPT |
| 120 | GOULD | SCOTT | 3078 | 01/18/99 | 07/06/71 | AIRBUS | CAPT |
| 121 | SCHOPPE | ROBERT | 3223 | 02/15/99 | 09/21/52 | AIRBUS | CAPT |
| 122 | SANDERS | WEST | 3224 | 02/15/99 | 03/18/54 | AIRBUS | CAPT |
| 123 | RENCO | ANGELO | 3225 | 02/15/99 | 05/27/55 | AIRBUS | CAPT |
| 124 | ATTERBURY JR | THOMAS | 3226 | 02/15/99 | 07/06/56 | AIRBUS | CAPT |
| 125 | CEPEDA | RAYMOND | 3227 | 02/15/99 | 12/21/61 | AIRBUS | CAPT |
| 126 | ISERT | TIMOTHY | 3229 | 02/15/99 | 09/05/67 | AIRBUS | CAPT |
| 127 | LINN | CRAIG | 3230 | 02/15/99 | 05/10/73 | AIRBUS | CAPT |
| 128 | MANOUCHEHERIAN | AMIR | 3430 | 03/15/99 | 06/12/61 | AIRBUS | CAPT |
| 129 | MEZO | DEREK | 3431 | 03/15/99 | 04/17/63 | AIRBUS | CAPT |
| 130 | GUTHRIE | KEVIN | 3432 | 03/15/99 | 07/20/63 | AIRBUS | CAPT |
| 131 | VAN LOO | KARL | 3434 | 03/15/99 | 05/02/65 | AIRBUS | CAPT |
| 132 | MAREK JR | CLIFFORD | 3435 | 03/15/99 | 11/12/66 | AIRBUS | CAPT |
| 133 | PETERSON | CRAIG | 3436 | 03/15/99 | 11/20/68 | AIRBUS | CAPT |
| 134 | CERVANTES | ARTURO | 3437 | 03/15/99 | 11/16/69 | AIRBUS | F/O |
| 135 | ERNST | JACQELINE | 3588 | 04/26/99 | 12/15/53 | AIRBUS | CAPT |
| 136 | CHRISTY | JAMES | 3591 | 04/26/99 | 07/14/57 | AIRBUS | CAPT |
| 137 | DROEGEMUELLER | DAVID | 3592 | 04/26/99 | 07/25/58 | AIRBUS | CAPT |
| 138 | BICKERSTAFF | KEVIN | 3593 | 04/26/99 | 03/10/60 | AIRBUS | CAPT |
| 139 | CHURCHILL | RICHARD | 3594 | 04/26/99 | 09/28/62 | AIRBUS | F/O |
| 140 | WOODWARD | TERRANCE | 3595 | 04/26/99 | 03/30/65 | AIRBUS | CAPT |
| 141 | MORTON | TODD | 3597 | 04/26/99 | 01/24/68 | AIRBUS | CAPT |
| 142 | THOMAS | MATTHEW | 3598 | 04/26/99 | 06/25/70 | AIRBUS | CAPT |
| 143 | VAN CLEVE | GEORGE | 3734 | 06/07/99 | 04/30/55 | AIRBUS | CAPT |
| 144 | McLEOD | RICHARD | 3736 | 06/07/99 | 06/05/55 | AIRBUS | CAPT |
| 145 | BRENNER | DANA | 3738 | 06/07/99 | 07/13/60 | AIRBUS | CAPT |
| 146 | ROBERTSON | JAMES | 3857 | 07/19/99 | 01/11/51 | AIRBUS | CAPT |
| 147 | SMITH | THOMAS | 3858 | 07/19/99 | 07/22/57 | AIRBUS | CAPT |



**Collective Bargaining Agreement**                    03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 148 | MARTIN | CAMERON | 3860 | 07/19/99 | 12/07/62 | AIRBUS | CAPT |
| 149 | ROSEBORO | ROBERT | 3861 | 07/19/99 | 01/14/63 | AIRBUS | CAPT |
| 150 | ROHRER | JON | 3863 | 07/19/99 | 09/03/68 | AIRBUS | CAPT |
| 151 | *POOL, II | *FRED | 4001 | 09/13/99 | 01/28/48 | AIRBUS | CAPT |
| 152 | DAHLQUIST | JEFFREY | 4003 | 09/13/99 | 08/27/57 | AIRBUS | CAPT |
| 153 | WARMACK | JUSTIN | 4006 | 09/13/99 | 02/20/71 | AIRBUS | CAPT |
| 154 | VAUGHAN | JAMES | 4376 | 12/13/99 | 05/25/47 | AIRBUS | CAPT |
| 155 | LUTZ | LAWRENCE | 4378 | 12/13/99 | 12/02/55 | AIRBUS | CAPT |
| 156 | COOTE | DAVID | 4379 | 12/13/99 | 05/30/59 | AIRBUS | CAPT |
| 157 | SPECTOR | BORIS | 4380 | 12/13/99 | 06/19/63 | AIRBUS | CAPT |
| 158 | HOOK | RUSSEL | 4381 | 12/13/99 | 04/23/66 | AIRBUS | CAPT |
| 159 | FITZGERALD | MICAHEL | 4384 | 12/13/99 | 07/14/70 | AIRBUS | CAPT |
| 160 | MILLER | SCOTT | 4385 | 12/13/99 | 01/02/73 | AIRBUS | CAPT |
| 161 | KLEMME | ERIK | 4400 | 01/03/00 | 08/15/58 | AIRBUS | CAPT |
| 162 | GLASS | RALPH | 4401 | 01/03/00 | 08/13/62 | AIRBUS | CAPT |
| 163 | DRAPER | TODD | 4403 | 01/03/00 | 11/06/64 | AIRBUS | CAPT |
| 164 | LOVE | DAVID | 4406 | 01/03/00 | 03/13/66 | AIRBUS | CAPT |
| 165 | SMALLEY | JEFFREY | 4407 | 01/03/00 | 07/18/69 | AIRBUS | CAPT |
| 166 | WALLIN | GAYLAND | 4408 | 01/03/00 | 11/26/69 | AIRBUS | CAPT |
| 167 | BARRENTINE | JOHN | 4696 | 04/03/00 | 12/22/47 | AIRBUS | CAPT |
| 168 | PURFIELD | CHRISTIAN | 4697 | 04/03/00 | 02/12/60 | AIRBUS | CAPT |
| 169 | HOWELL | JOHN | 4698 | 04/03/00 | 02/18/67 | AIRBUS | CAPT |
| 170 | GUGGENHEIM | DANIEL | 4699 | 04/03/00 | 09/18/67 | AIRBUS | CAPT |
| 171 | INGALLS | JASON | 4700 | 04/03/00 | 07/22/69 | AIRBUS | CAPT |
| 172 | CHASE | DAN | 4701 | 04/03/00 | 01/08/70 | AIRBUS | CAPT |
| 173 | FISCHER | NILE | 4702 | 04/04/70 | 04/04/70 | AIRBUS | CAPT |
| 174 | SOUTH | TROY | 4703 | 04/03/00 | 05/15/71 | AIRBUS | CAPT |
| 175 | POPE | MARK | 4704 | 04/03/00 | 08/21/71 | AIRBUS | CAPT |
| 176 | TRUJILLO | KASEY | 4705 | 04/03/00 | 07/21/72 | AIRBUS | CAPT |
| 177 | CONSTANTINE | KOSTA | 4720 | 04/24/00 | 06/22/50 | AIRBUS | CAPT |
| 178 | O'BRIEN | KEVIN | 4721 | 04/24/00 | 12/06/53 | AIRBUS | CAPT |
| 179 | LUCHSINGER | JEFFERY | 4723 | 04/24/00 | 09/07/57 | AIRBUS | CAPT |
| 180 | PAPINEAU | DARRYL | 4725 | 04/24/00 | 05/07/60 | AIRBUS | CAPT |
| 181 | KENYON | CAMERON | 4727 | 04/24/00 | 07/22/64 | AIRBUS | CAPT |
| 182 | KAUFFMAN | MICHAEL | 4728 | 04/24/00 | 01/17/68 | AIRBUS | CAPT |
| 183 | LOPEZ | ALBERTO | 4967 | 08/07/00 | 09/16/48 | AIRBUS | CAPT |
| 184 | DAVIS | SCOTT | 4968 | 08/07/00 | 06/12/61 | AIRBUS | CAPT |
| 185 | WETERRINGS | MARIK | 4969 | 08/07/00 | 06/26/61 | AIRBUS | CAPT |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 186 | FERRARO | STACY | 4970 | 08/07/00 | 08/18/68 | AIRBUS | CAPT |
| 187 | DOYLE | JASON | 4971 | 08/07/00 | 11/20/68 | AIRBUS | CAPT |
| 188 | SNEED | STACI | 4972 | 08/07/00 | 11/27/68 | AIRBUS | CAPT |
| 189 | SWINGLEY | SCOTT | 4973 | 08/07/00 | 11/29/70 | AIRBUS | CAPT |
| 190 | DEY | THOMAS | 4974 | 08/07/00 | 11/09/71 | AIRBUS | CAPT |
| 191 | BOHLAND | DAVID | 5194 | 10/16/00 | 07/10/64 | AIRBUS | CAPT |
| 192 | LEONI | ERIC | 5197 | 10/16/00 | 01/31/66 | AIRBUS | CAPT |
| 193 | KA'AIHUE | LOUISA | 5199 | 10/16/00 | 04/10/68 | AIRBUS | F/O |
| 194 | MAJOR | THEODORE | 5200 | 10/16/00 | 10/20/69 | AIRBUS | CAPT |
| 195 | PATTERSON | SHANE | 5201 | 10/16/00 | 10/17/70 | AIRBUS | CAPT |
| 196 | CROOK | STEPHEN | 5202 | 10/16/00 | 12/14/71 | AIRBUS | CAPT |
| 197 | VAN PELT | MARTIN | 5315 | 12/04/00 | 04/29/48 | AIRBUS | CAPT |
| 198 | GRAGG | MARK | 5316 | 12/04/00 | 01/24/52 | AIRBUS | CAPT |
| 199 | LOEBE | SUSAN | 5317 | 12/04/00 | 05/28/55 | AIRBUS | CAPT |
| 200 | WOGRIN | CHRIS | 5318 | 12/04/00 | 09/17/58 | AIRBUS | CAPT |
| 201 | BARTON | STEVE | 5319 | 12/04/00 | 07/21/60 | AIRBUS | CAPT |
| 202 | JONES | JEFFREY | 5321 | 12/04/00 | 10/06/64 | AIRBUS | CAPT |
| 203 | MARTIN | KENNETH | 5322 | 12/04/00 | 02/02/68 | AIRBUS | CAPT |
| 204 | LUKASEZCK | BRIAN | 5323 | 12/04/00 | 08/30/70 | AIRBUS | CAPT |
| 205 | BROOKS | TODD | 5324 | 12/04/00 | 11/09/70 | AIRBUS | CAPT |
| 206 | WOOD | TAMARA | 5325 | 12/04/00 | 12/20/70 | AIRBUS | F/O |
| 207 | FARRELL | RICHARD | 2799 | 01/06/01 | 09/13/52 | AIRBUS | CAPT |
| 208 | VAN SLYKE | RICHARD | 5401 | 01/08/01 | 05/12/53 | AIRBUS | CAPT |
| 209 | WHELAN | JOHN | 5407 | 01/08/01 | 08/24/57 | AIRBUS | CAPT |
| 210 | COLBURN | JIM | 5408 | 01/08/01 | 08/25/58 | AIRBUS | CAPT |
| 211 | KINATEDER | GARY | 5410 | 01/08/01 | 07/08/61 | AIRBUS | CAPT |
| 212 | CARTWRIGHT | BRENT | 5411 | 01/08/01 | 12/22/63 | AIRBUS | CAPT |
| 213 | MUNNIS | ANDY | 5413 | 01/08/01 | 01/11/67 | AIRBUS | CAPT |
| 214 | BOBERG | JAMES | 5414 | 01/08/01 | 07/27/68 | AIRBUS | CAPT |
| 215 | THIBODEAU | JOSEPH | 5415 | 01/08/01 | 03/28/74 | AIRBUS | CAPT |
| 216 | CASSERO | ROBERT | 5453 | 01/29/01 | 09/04/55 | AIRBUS | CAPT |
| 217 | GRIFFITTS | DENNIS | 5456 | 01/29/01 | 01/02/58 | AIRBUS | CAPT |
| 218 | LYNCH | MIKE | 5457 | 01/29/01 | 03/20/58 | AIRBUS | CAPT |
| 219 | ZEIHER | ERIC | 5458 | 01/29/01 | 07/21/59 | AIRBUS | CAPT |
| 220 | KOCHEVER | ERIC | 5459 | 01/29/01 | 07/11/60 | AIRBUS | CAPT |
| 221 | CHICARELL | STEVEN | 5460 | 01/29/01 | 01/02/61 | AIRBUS | CAPT |
| 222 | GODLEVSKY | LESLIE | 5461 | 01/29/01 | 11/10/61 | AIRBUS | CAPT |
| 223 | HOLMES | THOMAS | 5462 | 01/29/01 | 11/13/61 | AIRBUS | CAPT |



**Collective Bargaining Agreement**                    03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 224 | KRUSE | THOMAS | 5463 | 01/29/01 | 11/02/62 | AIRBUS | CAPT |
| 225 | HALL | DAVID | 5464 | 01/29/01 | 05/12/63 | AIRBUS | CAPT |
| 226 | FROSTAD | SCOTT | 5465 | 01/29/01 | 09/12/63 | AIRBUS | CAPT |
| 227 | HOLZMAN | DOUGLAS | 5466 | 01/29/01 | 11/22/63 | AIRBUS | CAPT |
| 228 | BEATY | JAMES | 5467 | 01/29/01 | 05/05/64 | AIRBUS | CAPT |
| 229 | HOLMBERG | JON | 5468 | 01/29/01 | 06/09/64 | AIRBUS | CAPT |
| 230 | MANN | DAVID | 5469 | 01/29/01 | 07/17/64 | AIRBUS | CAPT |
| 231 | MCCASLAND | BRYAN | 5470 | 01/29/01 | 10/10/65 | AIRBUS | CAPT |
| 232 | LIRA | PETER | 5471 | 01/29/01 | 02/12/67 | AIRBUS | CAPT |
| 233 | BISSENER | CHRISTOPHER | 5472 | 01/29/01 | 12/26/67 | AIRBUS | CAPT |
| 234 | STEMMLER | JOHN | 5473 | 01/29/01 | 02/08/68 | AIRBUS | CAPT |
| 235 | CARTER | JHARA | 5474 | 01/29/01 | 02/20/68 | AIRBUS | CAPT |
| 236 | RICKENBACH | TODD | 5475 | 01/29/01 | 04/07/69 | AIRBUS | CAPT |
| 237 | WOOD | WILLIAM | 5476 | 01/29/01 | 06/12/69 | AIRBUS | CAPT |
| 238 | HOTALING | JAMES | 5477 | 01/29/01 | 12/03/69 | AIRBUS | CAPT |
| 239 | NICCOLAI | WILLIAM | 5478 | 01/29/01 | 02/13/70 | AIRBUS | CAPT |
| 240 | DENNY | RONALD | 5480 | 01/29/01 | 03/30/70 | AIRBUS | F/O |
| 241 | HALL | CAROL | 5481 | 01/29/01 | 09/22/70 | AIRBUS | F/O |
| 242 | ALVARADO | BYRON | 5482 | 01/29/01 | 01/17/71 | AIRBUS | CAPT |
| 243 | LEONI | HOPE | 5483 | 01/29/01 | 01/31/73 | AIRBUS | F/O |
| 244 | WILLIAMS | JEFFREY | 5484 | 01/29/01 | 07/11/73 | AIRBUS | CAPT |
| 245 | COLVIN | CLU | 5485 | 01/29/01 | 03/10/74 | AIRBUS | CAPT |
| 246 | SAYRE | JASON | 5486 | 01/29/01 | 09/13/74 | AIRBUS | CAPT |
| 247 | DIAMOND | CHRISTOPHER | 5487 | 01/29/01 | 06/20/75 | AIRBUS | CAPT |
| 248 | OTI | ENRIQUE | 5507 | 02/12/01 | 11/16/47 | AIRBUS | CAPT |
| 249 | SPAETH | RICHARD | 5508 | 02/12/01 | 09/07/49 | AIRBUS | CAPT |
| 250 | YATES | GARY | 5509 | 02/12/01 | 01/30/53 | AIRBUS | CAPT |
| 251 | MILLIGAN | DAVID | 5510 | 02/12/01 | 07/17/54 | AIRBUS | CAPT |
| 252 | THOMAS | JEFF | 5511 | 02/12/01 | 08/18/54 | AIRBUS | CAPT |
| 253 | OLSON | ANTHONY | 5512 | 02/12/01 | 05/23/59 | AIRBUS | CAPT |
| 254 | CONNELLY | JOHN | 5513 | 02/12/01 | 11/10/60 | AIRBUS | CAPT |
| 255 | GONZALEZ | VICTOR | 5515 | 02/12/01 | 11/14/61 | AIRBUS | CAPT |
| 256 | BRANDNER | GERHARD | 5516 | 02/12/01 | 08/01/63 | AIRBUS | CAPT |
| 257 | STUART | SCOTT | 5517 | 02/12/01 | 06/02/65 | AIRBUS | CAPT |
| 258 | LURZ | BRIAN | 5518 | 02/12/01 | 01/01/66 | AIRBUS | CAPT |
| 259 | MOORE | WILLIAM | 5519 | 02/12/01 | 02/25/67 | AIRBUS | CAPT |
| 260 | BATES | BRENT | 5520 | 02/12/01 | 03/18/67 | AIRBUS | CAPT |
| 261 | CHURCH | CHARLES | 5521 | 02/12/01 | 06/18/68 | AIRBUS | CAPT |



**Collective Bargaining Agreement**     03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 262 | MANKE | SPENCER | 5523 | 02/12/01 | 11/17/70 | AIRBUS | CAPT |
| 263 | SCHIERHOLZ | JOHN | 5524 | 02/12/01 | 10/23/71 | AIRBUS | CAPT |
| 264 | NUNNALLEE | TODD | 5525 | 02/12/01 | 02/02/72 | AIRBUS | CAPT |
| 265 | KNUDSEN | ALAN | 5526 | 02/12/01 | 04/11/72 | AIRBUS | CAPT |
| 266 | KNAPP | TOM | 5527 | 02/12/01 | 05/19/72 | AIRBUS | CAPT |
| 267 | LAUTNER | DAVID | 5600 | 03/12/01 | 10/24/54 | AIRBUS | CAPT |
| 268 | MITCHELL | ANDREW | 5601 | 03/12/01 | 09/16/61 | AIRBUS | F/O |
| 269 | DUNLAP | JAMES | 5602 | 03/12/01 | 05/06/64 | AIRBUS | CAPT |
| 270 | WAGNER | NORMAN | 5603 | 03/12/01 | 12/20/65 | AIRBUS | F/O |
| 271 | CAVILL | WAYNE | 5604 | 03/12/01 | 05/09/68 | AIRBUS | CAPT |
| 272 | MILLER | ERNEST | 5605 | 03/12/01 | 03/02/70 | AIRBUS | CAPT |
| 273 | HARRANT | GREGORY | 5606 | 03/12/01 | 01/22/71 | AIRBUS | CAPT |
| 274 | ROCKEMAN | JOHN | 5607 | 03/12/01 | 03/04/71 | AIRBUS | CAPT |
| 275 | TRUJILLO | JEREMY | 5608 | 03/12/01 | 12/09/72 | AIRBUS | CAPT |
| 276 | POOL | HENRY | 5609 | 03/12/01 | 11/23/73 | AIRBUS | CAPT |
| 277 | ZIELINSKI | MATTHEW | 5610 | 03/12/01 | 05/20/74 | AIRBUS | CAPT |
| 278 | RUTTER | RODGER | 5703 | 04/30/01 | 03/15/54 | AIRBUS | CAPT |
| 279 | BENTON | JANE | 5704 | 04/30/01 | 05/27/58 | AIRBUS | F/O |
| 280 | GEDDES | THOMAS | 5705 | 04/30/01 | 07/23/60 | AIRBUS | CAPT |
| 281 | DANN | RUSSELL | 5706 | 04/30/01 | 09/02/60 | AIRBUS | CAPT |
| 282 | GALLAGHER | DOROTHY | 5707 | 04/30/01 | 12/16/61 | AIRBUS | CAPT |
| 283 | DUNN | MATTHEW | 5708 | 04/30/01 | 08/30/65 | AIRBUS | CAPT |
| 284 | MONNAR | FRANCOIS | 5709 | 04/30/01 | 01/30/67 | AIRBUS | CAPT |
| 285 | KROON | ARIE | 5710 | 04/30/01 | 12/03/67 | AIRBUS | F/O |
| 286 | ROGERS | SCOTT | 5711 | 04/30/01 | 12/30/69 | AIRBUS | CAPT |
| 287 | RISH | CHRISTIAN | 5712 | 04/30/01 | 01/23/70 | AIRBUS | CAPT |
| 288 | SELLYEI | ERIC | 5713 | 04/30/01 | 07/08/72 | AIRBUS | CAPT |
| 289 | FOSS | MARK | 5714 | 04/30/01 | 10/05/74 | AIRBUS | CAPT |
| 290 | RICHMOND | DAVID | 5835 | 06/18/01 | 06/12/58 | AIRBUS | CAPT |
| 291 | BELTRAN | JOSEPH | 5836 | 06/18/01 | 03/10/62 | AIRBUS | CAPT |
| 292 | McWILLIAMS | TIMOTHY | 5837 | 06/18/01 | 10/05/62 | AIRBUS | CAPT |
| 293 | WOODBURY | DOUGLAS | 5838 | 06/18/01 | 09/25/64 | AIRBUS | CAPT |
| 294 | CAMMACK | KELLI | 5839 | 06/18/01 | 06/05/66 | AIRBUS | CAPT |
| 295 | ANDERSON | BRYAN | 5840 | 06/18/01 | 01/19/68 | AIRBUS | CAPT |
| 296 | BUCK | JOEY | 5841 | 06/18/01 | 05/21/68 | AIRBUS | F/O |
| 297 | HARRIS | STEVEN | 5842 | 06/18/01 | 04/10/70 | AIRBUS | CAPT |
| 298 | FUCHS | ERIC | 5844 | 06/18/01 | 12/14/71 | AIRBUS | CAPT |
| 299 | MEEKS | CASEY | 5845 | 06/18/01 | 06/14/76 | AIRBUS | CAPT |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 300 | ANDERS | FRANK | 7296 | 1/27/2003* | 09/26/47 | AIRBUS | CAPT |
| 301 | BRIDGES | DONNA | 6335 | 03/04/02 | 07/11/54 | AIRBUS | CAPT |
| 302 | HALL | JAMES | 6337 | 03/04/02 | 11/17/54 | AIRBUS | CAPT |
| 303 | QUICK | EDWARD | 8824 | 3/15/2004* | 05/19/56 | AIRBUS | F/O |
| 304 | JORDAN | DANIEL | 6338 | 03/04/02 | 08/21/60 | AIRBUS | F/O |
| 305 | MOSER | JEFFREY | 6339 | 03/04/02 | 04/14/62 | AIRBUS | CAPT |
| 306 | MCFADDEN | RICHARD | 6340 | 03/04/02 | 04/16/64 | AIRBUS | CAPT |
| 307 | DUERR | MICHAEL | 6341 | 03/04/02 | 03/02/65 | AIRBUS | CAPT |
| 308 | WILLIAMSON | STEPHEN | 3771 | 03/04/02 | 03/17/66 | AIRBUS | F/O |
| 309 | APPLETON | TYLER | 6342 | 03/04/02 | 07/13/67 | AIRBUS | CAPT |
| 310 | WILSON | GREG | 6343 | 03/04/02 | 08/26/67 | AIRBUS | F/O |
| 311 | GEE | RYAN | 6344 | 03/04/02 | 10/02/67 | AIRBUS | CAPT |
| 312 | ORCUTT | JIMMY | 6345 | 03/04/02 | 01/02/69 | AIRBUS | CAPT |
| 313 | RICKENBACH | RODD | 6346 | 03/04/02 | 04/07/69 | AIRBUS | CAP |
| 314 | KINSEY | DALE | 6347 | 03/04/02 | 09/15/69 | AIRBUS | CAPT |
| 315 | HAYES | JONATHAN | 6348 | 03/04/02 | 03/01/71 | AIRBUS | CAPT |
| 316 | COURSEY | SHANNON | 6349 | 03/04/02 | 02/07/74 | AIRBUS | CAPT |
| 317 | ELLIOTT | DAVID | 6512 | 04/22/02 | 11/17/51 | AIRBUS | CAPT |
| 318 | SNIDER | LISA | 6513 | 04/22/02 | 05/28/59 | AIRBUS | F/O |
| 319 | FRY | DAVID | 6514 | 04/22/02 | 07/14/59 | AIRBUS | CAPT |
| 320 | LAYBOURN | DANIEL | 6515 | 04/22/02 | 07/08/61 | AIRBUS | CAPT |
| 321 | EDEN | MARK | 6516 | 04/22/02 | 04/22/62 | AIRBUS | CAPT |
| 322 | DOLVEN | ROBERT | 6517 | 04/22/02 | 09/20/63 | AIRBUS | CAPT |
| 323 | WANG | KENNETH | 6519 | 04/22/02 | 03/29/64 | AIRBUS | CAPT |
| 324 | MITCHELL | MATTHEW | 6520 | 04/22/02 | 04/17/65 | AIRBUS | CAPT |
| 325 | BAAS | CASEY | 6522 | 04/22/02 | 07/19/65 | AIRBUS | CAPT |
| 326 | PAULIN | DAVID | 6523 | 04/22/02 | 08/16/66 | AIRBUS | CAPT |
| 327 | BRENNEMAN | RANDY | 6524 | 04/22/02 | 11/26/66 | AIRBUS | CAPT |
| 328 | NOLTA | PATRICK | 6525 | 04/22/02 | 09/05/67 | AIRBUS | F/O |
| 329 | JORGENSEN | ERIC | 6849 | 06/17/02 | 04/30/59 | AIRBUS | CAPT |
| 330 | BRANDENBURG | KEVIN | 6850 | 06/17/02 | 02/06/62 | AIRBUS | CAPT |
| 331 | PALMERSHIEM | RICHARD | 6851 | 06/17/02 | 12/02/65 | AIRBUS | CAPT |
| 332 | BLUMENTHAL | CRAIG | 6852 | 06/17/02 | 08/07/69 | AIRBUS | CAPT |
| 333 | HOCKIN | AILEEN | 6853 | 06/17/02 | 03/24/71 | AIRBUS | CAPT |
| 334 | SELLYEI | CHERYL | 6854 | 06/17/02 | 03/12/75 | AIRBUS | F/O |
| 335 | ROE | JOHN | 7108 | 10/21/02 | 03/31/47 | AIRBUS | CAPT |
| 336 | STRUS | MIKE | 7110 | 10/21/02 | 05/02/52 | AIRBUS | F/O |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 337 | GINTHER | JON | 7112 | 10/21/02 | 01/31/55 | AIRBUS | F/O |
| 338 | LEFLER | ALAN | 7113 | 10/21/02 | 06/26/56 | AIRBUS | CAPT |
| 339 | INGRAM | DEWITT | 7114 | 10/21/02 | 01/24/58 | AIRBUS | CAPT |
| 340 | RICO | BETH | 7115 | 10/21/02 | 06/03/60 | AIRBUS | F/O |
| 341 | WEINTROB | RACHEL | 7116 | 10/21/02 | 10/12/60 | AIRBUS | F/O |
| 342 | ROBINSON | PAUL | 7117 | 10/21/02 | 07/07/61 | AIRBUS | F/O |
| 343 | TAYLOR | DONALD | 7118 | 10/21/02 | 06/25/62 | AIRBUS | CAPT |
| 344 | VANNELLI | STEVEN | 7119 | 10/21/02 | 10/11/62 | AIRBUS | F/O |
| 345 | LATTA | JAMES | 7120 | 10/21/02 | 04/02/63 | AIRBUS | CAPT |
| 346 | CHERIAN | LEON | 7121 | 10/21/02 | 09/21/63 | AIRBUS | CAPT |
| 347 | LORENZ | ERIC | 7123 | 10/21/02 | 09/27/64 | AIRBUS | CAPT |
| 348 | TAGLIAFERRO | ANTHONY | 7124 | 10/21/02 | 03/06/66 | AIRBUS | CAPT |
| 349 | MARKS | THOMAS | 7125 | 10/21/02 | 10/12/66 | AIRBUS | CAPT |
| 350 | FORBES | WAYNE | 7126 | 10/21/02 | 10/07/67 | AIRBUS | F/O |
| 351 | WALKER | BENNISON | 7127 | 10/21/02 | 04/21/68 | AIRBUS | CAPT |
| 352 | OLSON | SHANE | 7128 | 10/21/02 | 06/30/68 | AIRBUS | CAPT |
| 353 | LEIDIG | EDWARD | 7129 | 10/21/02 | 08/23/68 | AIRBUS | CAPT |
| 354 | DEHERRERA | ARVIN | 7131 | 10/21/02 | 12/04/69 | AIRBUS | CAPT |
| 355 | LIPPERT | BRADLEY | 7132 | 10/21/02 | 09/18/70 | AIRBUS | CAPT |
| 356 | CARTAGENA | CARLOS | 7133 | 10/21/02 | 10/15/70 | AIRBUS | F/O |
| 357 | McWILLIAMS | MICHAEL | 7217 | 01/06/03 | 08/02/49 | AIRBUS | F/O |
| 358 | FENTON | DOUGLAS | 7219 | 01/06/03 | 02/20/58 | AIRBUS | F/O |
| 359 | EGEL | DOUGLAS | 7220 | 01/06/03 | 03/19/58 | AIRBUS | F/O |
| 360 | STARCKS | DAVID | 7221 | 01/06/03 | 10/30/58 | AIRBUS | F/O |
| 361 | BENTON | MICHAEL | 7222 | 01/06/03 | 01/08/61 | AIRBUS | F/O |
| 362 | PICKAR | JAY | 7223 | 01/06/03 | 12/02/62 | AIRBUS | F/O |
| 363 | PLUMMER | MARK | 7224 | 01/06/03 | 06/05/66 | AIRBUS | F/O |
| 364 | SANDQUIST | STEVEN | 7226 | 01/06/03 | 04/15/68 | AIRBUS | F/O |
| 365 | WELT | DAVID | 7227 | 01/06/03 | 09/18/68 | AIRBUS | F/O |
| 366 | SIMMONS | KENTON | 7228 | 01/06/03 | 10/23/69 | AIRBUS | F/O |
| 367 | COONS | JOHN | 7229 | 01/06/03 | 12/30/69 | AIRBUS | F/O |
| 368 | CLARK | RICHARD | 7297 | 01/27/03 | 01/08/55 | AIRBUS | F/O |
| 369 | BOSTYAN | MICHAEL | 7298 | 01/27/03 | 01/05/57 | AIRBUS | F/O |
| 370 | HERMAN | DANIEL | 7299 | 01/27/03 | 10/06/57 | AIRBUS | F/O |
| 371 | ILER | DAVID | 7300 | 01/27/03 | 10/11/61 | AIRBUS | F/O |
| 372 | KATNIK | KENT | 7301 | 01/27/03 | 05/03/68 | AIRBUS | F/O |
| 373 | FRITZ | NICHOLAS | 7302 | 01/27/03 | 09/02/68 | AIRBUS | F/O |
| 374 | GANEM | MICHAEL | 7365 | 03/03/03 | 08/09/62 | AIRBUS | F/O |



## Collective Bargaining Agreement

03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 375 | CASE | GRANT | 7367 | 03/03/03 | 05/23/67 | AIRBUS | F/O |
| 376 | KIRK | NICHOLAS | 7368 | 03/03/03 | 04/07/69 | AIRBUS | F/O |
| 377 | BURLING | JEFFREY | 7369 | 03/03/03 | 04/09/69 | AIRBUS | F/O |
| 378 | MEYER | GEOFFREY | 7370 | 03/03/03 | 06/16/69 | AIRBUS | F/O |
| 379 | BROOKS | JAMES | 7371 | 03/03/03 | 03/25/70 | AIRBUS | F/O |
| 380 | CRAWFORD | DEBORAH | 7372 | 03/03/03 | 03/06/72 | AIRBUS | F/O |
| 381 | MIELKE | PETER | 686 | 03/24/03 | 06/26/72 | AIRBUS | F/O |
| 382 | BRUNSMAN | ROBIN | 7426 | 03/24/03 | 07/11/55 | AIRBUS | F/O |
| 383 | SWEENEY | ROBERT | 7427 | 03/24/03 | 05/28/59 | AIRBUS | F/O |
| 384 | MATSON | ROBERT | 7428 | 03/24/03 | 01/12/67 | AIRBUS | F/O |
| 385 | NEVELS | STEVEN | 7429 | 03/24/03 | 07/19/70 | AIRBUS | F/O |
| 386 | HUNTER | KAMI | 7430 | 03/24/03 | 11/06/70 | AIRBUS | F/O |
| 387 | HOLLINGSWORTH | J MATTHEW | 7508 | 04/10/03 | 06/20/58 | AIRBUS | F/O |
| 388 | HOLLAND | FREDRICK | 7509 | 04/10/03 | 01/03/62 | AIRBUS | F/O |
| 389 | KUKRAL | ALBERT | 7558 | 05/07/03 | 02/11/55 | AIRBUS | F/O |
| 390 | PEREZ | RAINIER | 7559 | 05/07/03 | 09/25/63 | AIRBUS | F/O |
| 391 | COATES | GARY | 7560 | 05/07/03 | 06/16/66 | AIRBUS | F/O |
| 392 | NOGUERRA | ERIC | 7561 | 05/07/03 | 10/01/66 | AIRBUS | F/O |
| 393 | ERICKSON | ALICIA | 7562 | 05/07/03 | 10/10/67 | AIRBUS | F/O |
| 394 | BOWMAN | MARK | 7603 | 05/28/03 | 09/23/58 | AIRBUS | F/O |
| 395 | SMITH | JONATHAN | 7604 | 05/28/03 | 02/10/59 | AIRBUS | F/O |
| 396 | BRUNNER | GLENN | 7606 | 05/28/03 | 04/14/67 | AIRBUS | F/O |
| 397 | SCHLUPPENBAUM | ALEXANDER | 7607 | 05/28/03 | 02/02/71 | AIRBUS | F/O |
| 398 | GREEN | MICHAEL | 7965 | 09/02/03 | 12/29/51 | AIRBUS | F/O |
| 399 | SINCLAIR | BEVERLY | 7966 | 09/02/03 | 10/21/53 | AIRBUS | F/O |
| 400 | ELLIOTT | JANET | 7967 | 09/02/03 | 08/21/53 | AIRBUS | F/O |
| 401 | LEE | ROBERT | 7968 | 09/02/03 | 07/12/60 | AIRBUS | F/O |
| 402 | BRASFIELD | MARK | 7969 | 09/02/03 | 09/11/64 | AIRBUS | F/O |
| 403 | SHAFFER | WILLIAM | 7970 | 09/02/03 | 10/06/65 | AIRBUS | F/O |
| 404 | BANDEMER | M'SHELL | 7972 | 09/02/03 | 12/06/68 | AIRBUS | F/O |
| 405 | GRABOESKI | BRIAN | 7974 | 09/02/03 | 10/20/74 | AIRBUS | F/O |
| 406 | HATHCOAT | JAMES | 8052 | 09/15/03 | 09/06/47 | AIRBUS | F/O |
| 407 | JONES | WAYNE | 8056 | 09/15/03 | 04/19/66 | AIRBUS | F/O |
| 408 | HOWARD | MAURIZIO | 8058 | 09/15/03 | 02/05/67 | AIRBUS | F/O |
| 409 | DOEGE | MARCUS | 8059 | 09/15/03 | 06/26/68 | AIRBUS | F/O |
| 410 | CRONSELL | KENNETH | 8062 | 09/15/03 | 01/27/70 | AIRBUS | F/O |
| 411 | ZORBAS | STEVEN | 8063 | 09/15/03 | 06/09/71 | AIRBUS | F/O |
| 412 | BOSWORTH | DAVID | 8156 | 10/08/03 | 10/26/61 | AIRBUS | F/O |



**Collective Bargaining Agreement**        03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 413 | HOLLADAY | LEONARD | 8157 | 10/08/03 | 01/11/62 | AIRBUS | F/O |
| 414 | WALLIS | CHARLES | 8159 | 10/08/03 | 07/17/64 | AIRBUS | F/O |
| 415 | HICKMAN | MICHAEL | 8160 | 10/08/03 | 02/10/65 | AIRBUS | F/O |
| 416 | LEE | DAVID | 8162 | 10/08/03 | 11/14/66 | AIRBUS | F/O |
| 417 | RONDEAU | RICHMOND | 8164 | 10/08/03 | 12/02/68 | AIRBUS | F/O |
| 418 | LLOYD | GARY | 8165 | 10/08/03 | 03/02/69 | AIRBUS | F/O |
| 419 | RUSSELL | RANDAL | 8166 | 10/08/03 | 05/25/70 | AIRBUS | F/O |
| 420 | WALMSLEY | TODD | 8167 | 10/08/03 | 06/22/70 | AIRBUS | F/O |
| 421 | DAVIS | GLEN | 8168 | 10/08/03 | 03/11/71 | AIRBUS | F/O |
| 422 | FOERSTER | MARCUS | 8169 | 10/08/03 | 10/28/71 | AIRBUS | F/O |
| 423 | SICKELS | DAVID | 8170 | 10/08/03 | 05/06/72 | AIRBUS | F/O |
| 424 | DAVIS | BRADY | 8171 | 10/08/03 | 08/31/73 | AIRBUS | F/O |
| 425 | HANSEN | TERRY | 8173 | 10/08/03 | 05/22/74 | AIRBUS | F/O |
| 426 | GOSSETT | JOHN | 8250 | 10/20/03 | 06/30/63 | AIRBUS | F/O |
| 427 | JASLOW | JEFFREY | 8251 | 10/20/03 | 05/23/64 | AIRBUS | F/O |
| 428 | LASLO | MARK | 8315 | 11/17/03 | 11/23/62 | AIRBUS | F/O |
| 429 | FIGUEROA | JUAN | 8316 | 11/17/03 | 05/07/63 | AIRBUS | F/O |
| 430 | SKARAN | ANDREW | 8318 | 11/17/03 | 01/08/65 | AIRBUS | F/O |
| 431 | McKENNA | PAUL | 8319 | 11/17/03 | 09/21/65 | AIRBUS | F/O |
| 432 | LARSON | JEFF | 8320 | 11/17/03 | 12/24/65 | AIRBUS | F/O |
| 433 | COOPER | KRISTI | 8321 | 11/17/03 | 06/10/66 | AIRBUS | F/O |
| 434 | MARICLE | JONATHAN | 8322 | 11/17/03 | 02/13/69 | AIRBUS | F/O |
| 435 | ELDREDGE | BRIAN | 8323 | 11/17/03 | 07/20/69 | AIRBUS | F/O |
| 436 | CURRY | MATTHEW | 8324 | 11/17/03 | 01/05/71 | AIRBUS | F/O |
| 437 | KESELY | PAUL | 8325 | 11/17/03 | 01/10/71 | AIRBUS | F/O |
| 438 | SKARAN | AMBER | 8327 | 11/17/03 | 09/09/73 | AIRBUS | F/O |
| 439 | STUBBS | BRANDY | 8329 | 11/17/03 | 10/30/74 | AIRBUS | F/O |
| 440 | BUTLER | DARRELL | 8330 | 11/17/03 | 01/18/77 | AIRBUS | F/O |
| 441 | ANGRISANI | ROBERT | 8404 | 12/15/03 | 08/08/56 | AIRBUS | F/O |
| 442 | COOPER | GALEN | 8405 | 12/15/03 | 02/01/58 | AIRBUS | F/O |
| 443 | NEWBERRY | TROY | 8406 | 12/15/03 | 08/12/63 | AIRBUS | F/O |
| 444 | CILEK | KEVIN | 8407 | 12/15/03 | 12/09/63 | AIRBUS | F/O |
| 445 | MILLER | GREGG | 8408 | 12/15/03 | 07/05/65 | AIRBUS | F/O |
| 446 | TUKER | KURT | 8409 | 12/15/03 | 08/13/68 | AIRBUS | F/O |
| 447 | EDWARDS | THOMAS | 8410 | 12/15/03 | 04/03/73 | AIRBUS | F/O |
| 448 | SISNEROS | CHRISTOPHER | 8411 | 12/15/03 | 03/18/74 | AIRBUS | F/O |
| 449 | BAKKE | STEVEN | 8483 | 01/05/04 | 10/22/47 | AIRBUS | F/O |
| 450 | YAKABE | MARK | 8432 | 01/05/04 | 03/21/60 | AIRBUS | F/O |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 451 | VERBSKY | DOUGLAS | 8433 | 01/05/04 | 06/27/63 | AIRBUS | F/O |
| 452 | CONROY | JOHN | 8434 | 01/05/04 | 12/16/63 | AIRBUS | F/O |
| 453 | SOLIS | RICHARD | 8435 | 01/05/04 | 12/21/65 | AIRBUS | F/O |
| 454 | GOMES | CHRISTOPHER | 8436 | 01/05/04 | 01/15/66 | AIRBUS | F/O |
| 455 | EVILSIZER | TODD | 8437 | 01/05/04 | 02/19/68 | AIRBUS | F/O |
| 456 | JOHNSON | SHANNON | 8438 | 01/05/04 | 10/30/71 | AIRBUS | F/O |
| 457 | RUPPLE | DANIEL | 8439 | 01/05/04 | 05/09/73 | AIRBUS | F/O |
| 458 | SHAULIS | JOHN | 8495 | 01/07/04 | 08/07/54 | AIRBUS | F/O |
| 459 | PAYNE | MARK | 8514 | 01/19/04 | 06/19/58 | AIRBUS | F/O |
| 460 | McHUGH | NUEY | 8515 | 01/19/04 | 09/06/62 | AIRBUS | F/O |
| 461 | FAULKISON | BRIAN | 8516 | 01/19/04 | 07/14/63 | AIRBUS | F/O |
| 462 | SWANSON | RICHARD | 8517 | 01/19/04 | 06/04/64 | AIRBUS | F/O |
| 463 | YATES | JULIA | 8518 | 01/19/04 | 09/11/71 | AIRBUS | F/O |
| 464 | ZANHANEH | ALIREZA | 8519 | 01/19/04 | 02/09/72 | AIRBUS | F/O |
| 465 | LOVE | PATRICIA | 8573 | 02/02/04 | 04/01/58 | AIRBUS | F/O |
| 466 | SCHUETT | BRIAN | 8574 | 02/02/04 | 05/15/59 | AIRBUS | F/O |
| 467 | SLAUGHTER | SCOTT | 8575 | 02/02/04 | 01/19/63 | AIRBUS | F/O |
| 468 | OVERLIE | ERIC | 8576 | 02/02/04 | 07/17/67 | AIRBUS | F/O |
| 469 | TIBBETTS | BLAKE | 8577 | 02/02/04 | 04/06/68 | AIRBUS | F/O |
| 470 | TYLER | JEFFREY | 8578 | 02/02/04 | 06/16/68 | AIRBUS | F/O |
| 471 | ASTOR | STEPHEN | 8579 | 02/02/04 | 01/04/69 | AIRBUS | F/O |
| 472 | CERAVOLO | GINO | 8580 | 02/02/04 | 06/06/69 | AIRBUS | F/O |
| 473 | LENNOX | SHAUN | 8582 | 02/02/04 | 08/22/72 | AIRBUS | F/O |
| 474 | SARKISIAN | JESSICA | 8583 | 02/02/04 | 01/15/73 | AIRBUS | F/O |
| 475 | KENNEDY | JOHN | 8767 | 03/01/04 | 06/15/63 | AIRBUS | F/O |
| 476 | VAN ZANTEN | WILLIAM | 8768 | 03/01/04 | 07/18/66 | AIRBUS | F/O |
| 477 | WOODARD | RODNEY | 8769 | 03/01/04 | 09/27/68 | AIRBUS | F/O |
| 478 | O'BRIEN | ANTHONY | 8771 | 03/01/04 | 10/28/70 | AIRBUS | F/O |
| 479 | SAUL | JASON | 8773 | 03/01/04 | 01/23/75 | AIRBUS | F/O |
| 480 | MORGAN | HUGH | 8774 | 03/01/04 | 09/02/77 | AIRBUS | F/O |
| 481 | IVISON | BARRY | 8825 | 03/15/04 | 01/21/61 | AIRBUS | F/O |
| 482 | PREECE III | JOHN | 8827 | 03/15/04 | 07/16/68 | AIRBUS | F/O |
| 483 | TURNER | SEAN | 8829 | 03/15/04 | 12/07/70 | AIRBUS | F/O |
| 484 | JOHNSTON | BO P | 8830 | 03/15/04 | 03/05/73 | AIRBUS | F/O |
| 485 | GIESE | DEBORAH | 8962 | 03/29/04 | 07/01/52 | AIRBUS | F/O |
| 486 | CLARK | COREY | 8963 | 03/29/04 | 07/24/58 | AIRBUS | F/O |
| 487 | CHRISTIE | RICHARD | 8964 | 03/29/04 | 08/18/60 | AIRBUS | F/O |
| 488 | CLEMENTS | FRANK | 8965 | 03/29/04 | 08/22/66 | AIRBUS | F/O |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 489 | BUSCH | PAUL | 8966 | 03/29/04 | 06/10/69 | AIRBUS | F/O |
| 490 | ZEIHER | LISA | 8967 | 03/29/04 | 04/23/70 | AIRBUS | F/O |
| 491 | LALLY | JAMES | 8968 | 03/29/04 | 07/07/70 | AIRBUS | F/O |
| 492 | MOEN III | JOHN | 8970 | 03/29/04 | 11/02/72 | AIRBUS | F/O |
| 493 | STURGIS | WILLIAM | 9015 | 04/12/04 | 09/26/53 | AIRBUS | F/O |
| 494 | NICHOLS | MICHAEL | 9016 | 04/12/04 | 09/23/56 | AIRBUS | F/O |
| 495 | SURETTE | PHILLIP | 9017 | 04/12/04 | 10/20/62 | AIRBUS | F/O |
| 496 | SIEGRIST | MATTHEW | 9018 | 04/12/04 | 10/18/70 | AIRBUS | F/O |
| 497 | SCHERBINSKE | DONALD | 9170 | 05/03/04 | 07/23/57 | AIRBUS | F/O |
| 498 | MAYO | MARY | 9171 | 05/03/04 | 12/18/58 | AIRBUS | F/O |
| 499 | DELUCIA | DAWN | 9172 | 05/03/04 | 04/15/64 | AIRBUS | F/O |
| 500 | CLARK | TODD | 9173 | 05/03/04 | 05/16/65 | AIRBUS | F/O |
| 501 | THOMPSON | DAVID | 9174 | 05/03/04 | 08/16/65 | AIRBUS | F/O |
| 502 | STAHL | HARRY | 9176 | 05/03/04 | 08/29/68 | AIRBUS | F/O |
| 503 | TODOVERTO | CATHY | 10597 | 09/12/05 | 01/30/51 | AIRBUS | F/O |
| 504 | BRANTLEY | CHRISTOPHER | 10598 | 09/12/05 | 04/14/61 | AIRBUS | F/O |
| 505 | COLLINS | JOSEPH | 10599 | 09/12/05 | 07/31/64 | AIRBUS | F/O |
| 506 | BUELOW | RICHARD | 10704 | 09/12/05 | 08/17/64 | AIRBUS | F/O |
| 507 | ODEY | KENNETH | 10706 | 09/12/05 | 05/18/65 | AIRBUS | F/O |
| 508 | MILLER | BENNY | 10708 | 09/12/05 | 06/29/66 | AIRBUS | F/O |
| 509 | WOOLEY | JOHN | 10709 | 09/12/05 | 09/15/69 | AIRBUS | F/O |
| 510 | KIRSCH | DAVID | 10714 | 09/12/05 | 05/15/70 | AIRBUS | F/O |
| 511 | NOVARA | JOHN | 10715 | 09/12/05 | 06/27/74 | AIRBUS | F/O |
| 512 | TRACY | STACEY | 10717 | 09/12/05 | 02/02/76 | AIRBUS | F/O |
| 513 | HOLT | KELLY | 10769 | 10/10/05 | 08/25/61 | AIRBUS | F/O |
| 514 | MUSGRAVE | BENNETT | 10770 | 10/10/05 | 03/20/62 | AIRBUS | F/O |
| 515 | SCHARF | JOHN | 10771 | 10/10/05 | 04/13/67 | AIRBUS | F/O |
| 516 | REED | ROBERT | 10772 | 10/10/05 | 02/23/68 | AIRBUS | F/O |
| 517 | SCHULTZ | CHRISTOPHER | 10773 | 10/10/05 | 12/26/68 | AIRBUS | F/O |
| 518 | SOBCZAK | BRIAN | 10774 | 10/10/05 | 07/15/70 | AIRBUS | F/O |
| 519 | DUMONT | ANDREW | 10775 | 10/10/05 | 06/23/71 | AIRBUS | F/O |
| 520 | MARTIN | ROSS | 10776 | 10/10/05 | 05/15/72 | AIRBUS | F/O |
| 521 | TUBBESING | CLIFFORD | 10839 | 11/07/05 | 08/29/54 | AIRBUS | F/O |
| 522 | MILLER | DONNA | 10840 | 11/07/05 | 12/06/60 | AIRBUS | F/O |
| 523 | SCHUMACHER | CHARLES | 10841 | 11/07/05 | 02/27/62 | AIRBUS | F/O |
| 524 | COUNTER | JEFFREY | 10842 | 11/07/05 | 12/10/67 | AIRBUS | F/O |
| 525 | ANDERSON | STEPHEN | 10843 | 11/07/05 | 01/07/69 | AIRBUS | F/O |
| 526 | SAUL | ROBERT | 10844 | 11/07/05 | 03/24/70 | AIRBUS | F/O |



**Collective Bargaining Agreement** 03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 527 | HAFFLING | MICHAEL | 10855 | 11/07/05 | 02/10/72 | AIRBUS | F/O |
| 528 | PIERCE | BRYAN | 10856 | 11/07/05 | 11/10/72 | AIRBUS | F/O |
| 529 | KNODE | ROSS | 10857 | 11/07/05 | 02/27/74 | AIRBUS | F/O |
| 530 | YOUNG | BRYAN | 10858 | 11/07/05 | 12/15/74 | AIRBUS | F/O |
| 531 | SJOLANDER | JAMES | 10924 | 12/05/05 | 03/16/64 | AIRBUS | F/O |
| 532 | ARONOVICH | MIKE | 10925 | 12/05/05 | 02/04/65 | AIRBUS | F/O |
| 533 | BEATTY | TROY | 10926 | 12/05/05 | 11/07/69 | AIRBUS | F/O |
| 534 | TUCKER | ANTHONY | 10927 | 12/05/05 | 12/28/70 | AIRBUS | F/O |
| 535 | SCHULTZ | FRANK | 10928 | 12/05/05 | 05/17/71 | AIRBUS | F/O |
| 536 | SCOFIELD | RY | 10929 | 12/05/05 | 07/02/72 | AIRBUS | F/O |
| 537 | CASE | JASON | 10930 | 12/05/05 | 04/29/73 | AIRBUS | F/O |
| 538 | REX | CHARLES | 10931 | 12/05/05 | 09/06/73 | AIRBUS | F/O |
| 539 | BROTHERTON | ANTHONY | 10932 | 12/05/05 | 04/18/74 | AIRBUS | F/O |
| 540 | COLBURN | SHARON | 10933 | 12/05/05 | 05/19/75 | AIRBUS | F/O |
| 541 | RYDALCH | CARL | 10962 | 01/03/06 | 06/06/64 | AIRBUS | F/O |
| 542 | DALKE | WILLIAM | 10963 | 01/03/06 | 05/06/65 | AIRBUS | F/O |
| 543 | LEE | BONNIE | 10964 | 01/03/06 | 01/25/68 | AIRBUS | F/O |
| 544 | GOTTRON | GREGORY | 10965 | 01/03/06 | 05/26/69 | AIRBUS | F/O |
| 545 | VANDYKE | JORDAN | 10966 | 01/03/06 | 06/22/69 | AIRBUS | F/O |
| 546 | BOWMAN | DUSTIN | 10967 | 01/03/06 | 10/03/70 | AIRBUS | F/O |
| 547 | PLUMER | MICHAEL | 10968 | 01/03/06 | 07/22/72 | AIRBUS | F/O |
| 548 | POWELL | JAMES | 10969 | 01/03/06 | 03/07/73 | AIRBUS | F/O |
| 549 | FIXEN | TRAVIS | 10970 | 01/03/06 | 03/09/73 | AIRBUS | F/O |
| 550 | ESPANET | AARON | 10971 | 01/03/06 | 05/12/73 | AIRBUS | F/O |
| 551 | SCHOENLEBER | JEORD | 10972 | 01/03/06 | 06/21/74 | AIRBUS | F/O |
| 552 | HALL | BRETT | 10973 | 01/03/06 | 06/10/75 | AIRBUS | F/O |
| 553 | POLLARD | MICHAEL | 10974 | 01/03/06 | 05/13/76 | AIRBUS | F/O |
| 554 | DWYER | BENJAMIN | 10975 | 01/03/06 | 01/26/79 | AIRBUS | F/O |
| 555 | FEINER | JOANI | 11058 | 01/18/06 | 03/31/54 | AIRBUS | F/O |
| 556 | LEONARD | SEAN | 11059 | 01/18/06 | 01/08/69 | AIRBUS | F/O |
| 557 | ALSTON | ROY | 11060 | 01/18/06 | 08/26/69 | AIRBUS | F/O |
| 558 | BURNS | CHRISTOPHER | 11061 | 01/18/06 | 01/20/70 | AIRBUS | F/O |
| 559 | STOFFER | RENEE | 11062 | 01/18/06 | 09/27/71 | AIRBUS | F/O |
| 560 | LANTAGNE | CHRISTOPHER | 11063 | 01/18/06 | 12/01/71 | AIRBUS | F/O |
| 561 | HEINLEIN | MATTHEW | 11064 | 01/18/06 | 07/23/72 | AIRBUS | F/O |
| 562 | GROSS | TOM | 11065 | 01/18/06 | 09/10/72 | AIRBUS | F/O |
| 563 | BEAVER | DEREK | 11066 | 01/18/06 | 07/02/74 | AIRBUS | F/O |
| 564 | SCHAAF | SHAD | 11067 | 01/18/06 | 12/01/74 | AIRBUS | F/O |



**Collective Bargaining Agreement**                                03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|-------|-----------|------------|------|-----|-----|--------|------|
| 565 | CARPER | CHARLES | 11068 | 01/18/06 | 02/02/75 | AIRBUS | F/O |
| 566 | TROOST | NOEL | 11069 | 01/18/06 | 07/02/75 | AIRBUS | F/O |
| 567 | RIVERA | STEVE | 11070 | 01/18/06 | 10/19/75 | AIRBUS | F/O |
| 568 | KING | TRAVIS | 11071 | 01/18/06 | 08/05/78 | AIRBUS | F/O |
| 569 | PANZARDI | DION | 11180 | 02/13/06 | 09/03/63 | AIRBUS | F/O |
| 570 | KETCHUM | BRIAN | 11181 | 02/13/06 | 03/16/65 | AIRBUS | F/O |
| 571 | MILLER | WADE | 11182 | 02/13/06 | 04/27/65 | AIRBUS | F/O |
| 572 | OUCHI | TOHRU | 11183 | 02/13/06 | 11/09/65 | AIRBUS | F/O |
| 573 | SMITH | ROBERT | 11184 | 02/13/06 | 09/13/69 | AIRBUS | F/O |
| 574 | LIPSCOMB | SAMUEL | 11185 | 02/13/06 | 02/05/70 | AIRBUS | F/O |
| 575 | BURKE | JAMES | 11186 | 02/13/06 | 05/12/71 | AIRBUS | F/O |
| 576 | MORROW | COLE | 11187 | 02/13/06 | 08/09/73 | AIRBUS | F/O |
| 577 | GIANELLA | KEVIN | 11188 | 02/13/06 | 09/02/75 | AIRBUS | F/O |
| 578 | GLASER | JOHN | 11189 | 02/13/06 | 06/20/78 | AIRBUS | F/O |
| 579 | RUSS | TIMOTHY | 11281 | 03/09/06 | 12/04/59 | AIRBUS | F/O |
| 580 | GRIGOROV | GRIGOR | 11282 | 03/09/06 | 04/05/63 | AIRBUS | F/O |
| 581 | LOOMIS | SCOTT | 11283 | 03/09/06 | 02/20/69 | AIRBUS | F/O |
| 582 | BOWMAN | JASON | 11284 | 03/09/06 | 04/02/71 | AIRBUS | F/O |
| 583 | MC WHORTER | GAVIN | 11285 | 03/09/06 | 11/25/71 | AIRBUS | F/O |
| 584 | PADDOCK | ERIC | 11286 | 03/09/06 | 10/06/75 | AIRBUS | F/O |
| 585 | DAHNCKE | ALBERT | 11287 | 03/09/06 | 10/26/75 | AIRBUS | F/O |
| 586 | WEIHING | CHARLES | 11288 | 03/09/06 | 12/01/75 | AIRBUS | F/O |
| 587 | NYE | CHRISTOPHER | 11289 | 03/09/06 | 11/22/77 | AIRBUS | F/O |
| 588 | SCHUARMAN | MARK | 11341 | 03/27/06 | 04/20/63 | AIRBUS | F/O |
| 589 | HARRIST | ROBERT | 11342 | 03/27/06 | 07/17/64 | AIRBUS | F/O |
| 590 | LUHMANN | CHRISTOPHER | 11343 | 03/27/06 | 12/02/64 | AIRBUS | F/O |
| 591 | POLTON | GEYER | 11344 | 03/27/06 | 03/22/70 | AIRBUS | F/O |
| 592 | THEODORO | ALEXANDRE | 11346 | 03/27/06 | 06/14/71 | AIRBUS | F/O |
| 593 | DRANSFIELD | DALE | 11347 | 03/27/06 | 08/12/71 | AIRBUS | F/O |
| 594 | WAGNER | JASON | 11348 | 03/27/06 | 02/24/73 | AIRBUS | F/O |
| 595 | KETELSEN | ERIC | 11349 | 03/27/06 | 10/30/73 | AIRBUS | F/O |
| 596 | SCHERRER | MIRKO | 11350 | 03/27/06 | 01/18/74 | AIRBUS | F/O |
| 597 | O'DAIR | MICHAEL | 11351 | 03/27/06 | 05/23/76 | AIRBUS | F/O |
| 598 | MCCOURT | MICHAEL | 11420 | 04/24/06 | 10/11/60 | AIRBUS | F/O |
| 599 | BROWN | DOUGLAS | 11421 | 04/24/06 | 01/08/65 | AIRBUS | F/O |
| 600 | ROSSI | LOUIS | 11422 | 04/24/06 | 03/21/66 | AIRBUS | F/O |
| 601 | GRAY | JIM | 11423 | 04/24/06 | 08/28/72 | AIRBUS | F/O |
| 602 | MCKIM | JUSTIN | 11424 | 04/24/06 | 02/11/73 | AIRBUS | F/O |



**Collective Bargaining Agreement**                    03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 603 | BEALL | IAN | 11425 | 04/24/06 | 08/12/73 | AIRBUS | F/O |
| 604 | SANCHEZ | PAULINO | 11426 | 04/24/06 | 09/21/74 | AIRBUS | F/O |
| 605 | CARTWRIGHT | MATTHEW | 11427 | 04/24/06 | 10/20/74 | AIRBUS | F/O |
| 606 | LUNDELL | ELIZABETH | 11428 | 04/24/06 | 06/24/75 | AIRBUS | F/O |
| 607 | NIEMEYER | FRANK | 11429 | 04/24/06 | 11/29/75 | AIRBUS | F/O |
| 608 | SEMKE | MICHAEL | 11475 | 05/08/06 | 07/20/66 | AIRBUS | F/O |
| 609 | STAPLETON | DANIEL | 11476 | 05/08/06 | 02/27/68 | AIRBUS | F/O |
| 610 | ALKAYED | KHALED | 11477 | 05/08/06 | 06/01/68 | AIRBUS | F/O |
| 611 | MAGNUSSON | MARK | 11478 | 05/08/06 | 10/03/68 | AIRBUS | F/O |
| 612 | CRANER | DAVID | 11479 | 05/08/06 | 10/11/68 | AIRBUS | F/O |
| 613 | GUSTKE | LEROY | 11480 | 05/08/06 | 01/23/71 | AIRBUS | F/O |
| 614 | AUMAN | PAUL | 11481 | 05/08/06 | 04/10/71 | AIRBUS | F/O |
| 615 | WELTON | JEREMY | 11482 | 05/08/06 | 03/22/72 | AIRBUS | F/O |
| 616 | BROWN | THOMAS | 11483 | 05/08/06 | 11/11/72 | AIRBUS | F/O |
| 617 | GUTHMAN | JASON | 11484 | 05/08/06 | 02/02/76 | AIRBUS | F/O |
| 618 | BERNING | ROBERT | 11634 | 06/06/06 | 10/18/48 | AIRBUS | F/O |
| 619 | TAYLOR | SCOTT | 11635 | 06/06/06 | 12/28/64 | AIRBUS | F/O |
| 620 | MCROBERTS | JOSIAH | 11636 | 06/06/06 | 09/05/66 | AIRBUS | F/O |
| 621 | NIEDZIELSKI | ERIC | 11637 | 06/06/06 | 05/14/68 | AIRBUS | F/O |
| 622 | MCKEE | BRADLEY | 11638 | 06/06/06 | 10/01/70 | AIRBUS | F/O |
| 623 | EVERETT | JOHN | 11639 | 06/06/06 | 05/07/71 | AIRBUS | F/O |
| 624 | COLE | MICHAEL | 11640 | 06/06/06 | 09/03/71 | AIRBUS | F/O |
| 625 | BLIND | BRYAN | 11641 | 06/06/06 | 10/14/72 | AIRBUS | F/O |
| 626 | DEININGER | ROBERT | 11642 | 06/06/06 | 01/25/73 | AIRBUS | F/O |
| 627 | JANSICK | JEFF | 11643 | 06/06/06 | 08/14/73 | AIRBUS | F/O |
| 628 | BEIGHTOL | JUSTIN | 11644 | 06/06/06 | 10/22/73 | AIRBUS | F/O |
| 629 | DIEHL | BRIAN | 11646 | 06/06/06 | 05/02/74 | AIRBUS | F/O |
| 630 | BUNKER | CYPRIAN | 11645 | 06/06/06 | 06/23/79 | AIRBUS | F/O |
| 631 | Brittingham | Mark | 12133 | 10/24/06 | 02/15/62 | AIRBUS | F/O |
| 632 | Smith | Michael | 12134 | 10/24/06 | 07/12/64 | AIRBUS | F/O |
| 633 | Swanson | David | 12135 | 10/24/06 | 10/31/68 | AIRBUS | F/O |
| 634 | Gordon | Patrick | 12136 | 10/24/06 | 08/06/69 | AIRBUS | F/O |
| 635 | McKee | Joshua | 12137 | 10/24/06 | 11/21/72 | AIRBUS | F/O |
| 636 | Bradford | Samantha | 12138 | 10/24/06 | 07/18/74 | AIRBUS | F/O |
| 637 | Swartzendruber | Jason | 12139 | 10/24/06 | 02/10/75 | AIRBUS | F/O |
| 638 | Kelly | Shawn | 12140 | 10/24/06 | 07/29/76 | AIRBUS | F/O |
| 639 | Hawbaker | Keith | 12141 | 10/24/06 | 07/17/77 | AIRBUS | F/O |
| 640 | Duell | Lynn | 12142 | 10/24/06 | 10/31/79 | AIRBUS | F/O |



**Collective Bargaining Agreement**                              03/02/07

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 641 | Pavelek | Renee | 12247 | 12/04/06 | 01/17/73 | AIRBUS | F/O |
| 642 | Jenkins | Andrew | 12248 | 12/04/06 | 06/22/74 | AIRBUS | F/O |
| 643 | Jenkins | Trevor | 12249 | 12/04/06 | 02/12/75 | AIRBUS | F/O |
| 644 | Johannsen | Karrie | 12250 | 12/04/06 | 05/30/75 | AIRBUS | F/O |
| 645 | Ennis | Ciaran | 12251 | 12/04/06 | 02/07/76 | AIRBUS | F/O |
| 646 | Tracy | Douglas | 12252 | 12/04/06 | 04/25/76 | AIRBUS | F/O |
| 647 | Davis | Donald | 12253 | 12/04/06 | 07/28/76 | AIRBUS | F/O |
| 648 | Conner | Edward | 12254 | 12/04/06 | 08/02/78 | AIRBUS | F/O |
| 649 | Livingston | Erin | 12255 | 12/04/06 | 10/04/79 | AIRBUS | F/O |
| 650 | Savage | Julie | 12256 | 12/04/06 | 10/12/79 | AIRBUS | F/O |
| 651 | WILDEN | MARTIN | 12428 | 01/29/07 | 12/12/55 | AIRBUS | F/O |
| 652 | NADING | TODD | 12429 | 01/29/07 | 08/11/63 | AIRBUS | F/O |
| 653 | ELIASON | JOHN | 12430 | 01/29/07 | 08/12/70 | AIRBUS | F/O |
| 654 | SWEATT | JUSTIN | 12431 | 01/29/07 | 07/23/72 | AIRBUS | F/O |
| 655 | DEJEAN | ROGER | 12432 | 01/29/07 | 11/13/73 | AIRBUS | F/O |
| 656 | VELASQUEZ | AGUSTIN | 12433 | 01/29/07 | 12/27/74 | AIRBUS | F/O |
| 657 | TIMKO | KRIS | 12434 | 01/29/07 | 02/10/75 | AIRBUS | F/O |
| 658 | TIFT | SAMUEL | 12435 | 01/29/07 | 05/19/75 | AIRBUS | F/O |
| 659 | CAMPBELL | RYAN | 12436 | 01/29/07 | 11/06/75 | AIRBUS | F/O |

\* Seniority number reflects rights obtained under USERRA.



**Collective Bargaining Agreement** 03/02/07

## RETIRED PILOTS WITH SENIORITY RIGHTS

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIP. | SEAT |
|---|---|---|---|---|---|---|---|
| 1 | ANTCZAK | ARTHUR | 52 | 05/16/94 | 04/09/42 | BOEING | CAPT |
| 2 | HARVEY | EDWIN | 53 | 05/16/94 | 08/30/44 | AIRBUS | CAPT |
| 3 | RICHARD JR | JOHN | 54 | 05/16/94 | 11/07/46 | AIRBUS | CAPT |
| 4 | DEMBY | WILLIAM | 258 | 09/06/94 | 06/16/45 | AIRBUS | CAPT |
| 5 | STELLMON | LAWRENCE | 509 | 06/05/95 | 06/05/46 | AIRBUS | CAPT |
| 6 | TODOVERTO | JOHN | 921 | 04/08/96 | 02/22/47 | AIRBUS | CAPT |
| 7 | KURZ | EDWARD | 1319 | 01/13/97 | 05/21/42 | AIRBUS | CAPT |
| 8 | KIRKWOOD | ROBERT | 1533 | 06/02/97 | 10/07/45 | AIRBUS | CAPT |
| 9 | HALE | STEPHEN | 2131 | 02/03/98 | 09/13/42 | AIRBUS | CAPT |
| 10 | WINDERS | JIMMIE | 2222 | 03/02/98 | 11/23/44 | BOEING | CAPT |
| 11 | SELVIG | ERIK | 2308 | 05/04/98 | 07/30/45 | AIRBUS | CAPT |
| 12 | YODER | CLARENCE | 2885 | 11/09/98 | 08/15/44 | BOEING | F/O |
| 13 | GORTMAKER | WIEBE | 3221 | 02/15/99 | 05/21/45 | AIRBUS | CAPT |
| 14 | STROMQUIST | KENNETH | 3731 | 06/07/99 | 12/31/45 | AIRBUS | CAPT |
| 15 | PARKER | HENRY | 4000 | 09/13/99 | 01/14/47 | AIRBUS | CAPT |
| 16 | QUEISER | JOHN | 5452 | 01/29/01 | 06/14/45 | BOEING | F/O |
| 17 | GASSMAN | EDWARD | 5504 | 02/12/01 | 06/28/44 | AIRBUS | F/O |
| 18 | MCFALL | MICHAEL | 5505 | 02/12/01 | 06/07/45 | AIRBUS | CAPT |
| 19 | BIGGS | CLIFFORD | 7215 | 01/06/03 | 09/03/46 | AIRBUS | F/O |
| 20 | GILBERT | WARD | 7216 | 01/06/03 | 02/21/47 | AIRBUS | F/O |

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**                06/24/15

## APPENDIX 2

### PANEL OF ARBITRATORS

The panel of arbitrators in accordance with Section 14.J.2. as of June 22, 2015 shall be:

- Larry Holden
- Carol Wittenberg
- Ira Jaffee
- Roger Kaplan
- Jim Conway
- Barry Simon
- Harry MacLean

THIS PAGE

INTENTIONALLY

LEFT BLANK

**Collective Bargaining Agreement**   12/10/07

# APPENDIX 3

## RESERVE ASSIGNMENT FLOW CHART

Figure Appendix 3.1 – Open Sequence—Assignment Process Flow



Open Sequence - Assignment Process Flow

Note:

* A "Low Time Pilot" may be assigned out of the normal order for purposes of accumulating block time to satisfy legality require and Skills (FAR 121.434), High Minimums (FAR 121.652) (unless forecast weather is below the High Minimums limitations), or less than 50 block hours within the first 90 days after his Proficiency Check may be assigned out of the normal order.

**FAPA**

**Collective Bargaining Agreement**   12/10/07

Figure Appendix 3.2 – Reserve Assignment Process A—Long Call Reserve



NOTE: A "low time" pilot may be assigned out of the normal order for purposes of accumulating block time to satisfy legality requirements. This includes Consolidation of Knowledge and Skills (FAR 121.434), high minimums (FAR 121.652, unless forecast weather is below the high minimums limitations), or currency (FAR 121.439). A pilot who has accumulated less than 50 block hours within the first 90 days after the proficiency check may be assigned out of the normal order.

**FAPA**

**Collective Bargaining Agreement**                    12/10/07

Figure Appendix 3.3 – Reserve Assignment Process B—Medium Call Reserve



NOTE:    A "low time" pilot may be assigned out of the normal order for purposes of accumulating block time to satisfy legality requirements. This includes Consolidation of Knowledge and Skills (FAR 121.434), high minimums (FAR 121.652, unless forecast weather is below the high minimums limitations), or currency (FAR 121.439). A pilot who has accumulated less than 50 block hours within the first 90 days after the proficiency check may be assigned out of the normal order.

**FAPA**

**Collective Bargaining Agreement**                    12/10/07

Figure Appendix 3.4 – Reserve Assignment Process B—Short Call Reserve



NOTE:   A "low time" pilot may be assigned out of the normal order for purposes of accumulating block time to satisfy legality requirements. This includes Consolidation of Knowledge and Skills (FAR 121.434), high minimums (FAR 121.652, unless forecast weather is below the high minimums limitations), or currency (FAR 121.439). A pilot who has accumulated less than 50 block hours within the first 90 days after the proficiency check may be assigned out of the normal order.



**Collective Bargaining Agreement**                                    12/10/07

---

## APPENDIX 4

### QUESTION AND ANSWER

Question: Are the margin notes contractually binding?
Answer: No, they are simply to assist in locating specific contract language. The language in the body of the contract is controlling.

SECTION 1

Question: Couldn't the allowances in Section 1 be used by Holdings to expand flying on regional jets with non-FAPA pilots while freezing or even shrinking the flying done by FAPA pilots?
Answer: No. The letter from Holdings that recognizes Scope and other provisions in Section 1 would prevent them from "farming out" flying to other pilots except as specifically allowed in Paragraph F. Holding did not create Lynx Aviation to shift mainline operations, and has no intention of creating an alter ego or sister mainline operation for Frontier Airlines. Holdings' goal is to make the Company as successful and profitable as possible, and establishing another airline that mirrors what the Company already does extremely well would not support that goal. FAPA Pilots are leaders in our industry in terms of efficiency, commitment and professionalism. The Company has a 12 year history of cooperation with our pilot group and challenging that relationship doesn't make sense on any level. Airbus flying, or "Mainline" flying, has, does and will always stay within the Company. Holdings is establishing a regional feed because it is simply more cost-effective to do so and allows greater control over critical areas of operations, such as customer service. It is as simple as that. There are NO ulterior motives.

Question: Paragraph F.3.c. refers to: "significant adverse cost or financial liability" as an exception to returning SJs. Does this mean the Company doesn't have to return the aircraft if it's losing money?
Answer: No. This exception would apply only if the return for the aircraft itself would cause significant cost or financial liability to the Company. (i.e. Early lease termination costs, etc.)

Question: Paragraph F.4. gives the Company allowance for "block-space" and "pro-rate" agreements. Could Holdings enter into one of these agreements with the Company and then fly as many aircraft as they wanted with non-FAPA pilots?
Answer: No. The intent of these agreements is to allow the Company to purchase a limited number of seats on other airlines to serve cities we don't normally serve (e.g. 20 seats on United to HNL). Turning Frontier Airlines, Inc. into one of these agreements, or creating a new airline under the auspices of one of these agreements, would be a violation of the language and intent of Paragraph F., particularly Paragraph F.2.

---



**Collective Bargaining Agreement**                              10/15/10

SECTION 2

Question: Do I have to wear my uniform while commuting or deadheading?

Answer: The intent of Section 2.A.1. is for Pilots to wear their uniform, in full, while on duty and in view of the public. If a Pilot wants to wear part of the uniform (the trousers and shirt) for commuting, this is allowable as long as the public cannot identify the Pilot as a Frontier Pilot (e.g., the epaulets are removed and no other pins or other items identify the Pilot by sight as a Frontier Pilot).

SECTION 3

SECTION 4

Question: "This Pay Credit shall occur in the month in which the course materials are issued to the Pilot." Does this mean I get paid regardless of whether I've completed the training?

Answer: Only if the training requires no certification of completion. Certification normally consists of a test, quiz or some other document required to be turned into Flight Ops Department to indicate completion. In this case pay credit for this training would occur when this has been received. For example: the Spring Session of the 2007 Flight Ops Recurrent Training is required to be completed by February 28, 2007. If a Pilot successfully completes this training by February 28 he will be paid for the training on the March 5, 2007 paycheck.

Question: If I take an unpaid leave in the first half of the month, how much can I expect to be paid on the 20th paycheck? (Reference 4.E.1.)

Answer: In order to prevent pilots from potentially being overpaid, Pilots with unpaid leaves in the first 15 days of the Monthly Bid Period shall only be paid for any actual Pay Credits earned instead of 50 percent of the Monthly Pay Guarantee. For Example: if a Pilot earns 20 Pay Credits on the 5th-10th of the month, the Pilot shall only be paid for those 20 Pay Credits, not the standard 37.5.

SECTION 5

Question: What does "schedule integrity" mean?

Answer: The intent of schedule integrity is to provide allowance for the Company to modify Pilots' schedules to prevent cancellations, meet curfews, lengthy delays, or delays that may have a broad impact on the system or cause passengers to not reach their destination, etc. These provisions are not intended for Company convenience, to increase utilization or productivity or to avoid a delay that has no significant impact on the system or passengers.

Question: When would Scheduling release a Reserve Pilot to "call-back status" (Section 5.Q.)?



**Collective Bargaining Agreement**                                    3/10/11

Question: Can a Reserve Pilot be assigned to Deadhead out of his Domicile to another domicile without a specific flight assignment at that other domicile?

Answer: Assigning a Reserve Pilot to travel to another Domicile pending an assignment out of that other Domicile (either while "ready" on duty or while on rest in that Domicile) would be considered a TDY assignment for which there are no provisions in the Agreement. Assigning a Reserve Pilot to deadhead/fly from their Domicile to another Domicile for the purpose of being available in that other Domicile is not permitted.

However, if a Sequence meets the requirements of Section 5.0.7., Crew Scheduling may add Deadhead legs to the beginning and end of a Sequence to change the Domicile that the Sequence starts and ends in, and then subsequently assign the new Sequence to a Reserve Pilot in the new Sequence Domicile. For example: a MKE-LGA-MKE Sequence may be modified to be DEN-MKE-LGA-MKE-DEN and then assigned to a DEN Reserve Pilot, but the change to make the Sequence a DEN Sequence must occur in accordance with Section 5.0.7., and must be done prior to being assigned to the DEN Reserve Pilot.

Question: When would Scheduling release a Reserve Pilot to "call-back status" (Section 5.Q.)?

Answer: The intent of the "release to call-back status" provision is to allow Crew Scheduling to release reserve Pilots from telephone availability for an assignment within that RDP, but provide a method for Crew Scheduling to give them an assignment for a following RDP. Some examples would include:

- A reserve Pilot has already flown 7 hours that day and likely wouldn't be legal for any further assignments. Crew Scheduling expects to use the Pilot the next day due to staffing and Open Time levels, but does not have a specific assignment at the time the Pilot requests release. Without the Call-Back provision, Crew Scheduling might not release the Pilot in order to be able to notify him of an assignment tomorrow. With the Call-Back provision, Crew Scheduling is safe to release the Pilot today, with the assurance that he will call back later and can be given an assignment for his next RDP at that time.

- A reserve Pilot may have plenty of duty/flight time available, but due to staffing and Open Time levels, does not reasonably expect to use him today, but does expect to use him tomorrow. With the Call-Back provision, Crew Scheduling is safe to release the Pilot today, with the assurance that he will call back later and can be given an assignment for his next RDP at that time.



**Collective Bargaining Agreement**                                    10/15/10

Question: Is a Pilot released once being awarded an Aggressive Reserve award (Section 5.S.9.e.)?

Answer: The intent of the difference in availability requirements for Aggressive Reserves is to allow Crew Scheduling to utilize the Pilot the same day a Sequence is awarded (award date) to a Pilot, but release the Pilot from availability on the day of the awarded Sequence (Sequence operating date). In addition, once the Pilot's RDP ends prior to the Aggressive Reserve Sequence, the Reassignment rules shall be the same as those for a Lineholder. These provisions are to encourage reserve Pilots to utilize the Aggressive Reserve system to improve quality of life and reduce Crew Scheduling workload.

For example: on Monday, a Pilot gets an Aggressive Reserve award for a Sequence starting Tuesday. That Pilot shall remain telephone available for the remainder of his RDP on Monday and may be given an assignment in accordance with normal reserve rules. However, once that RDP on Monday has ended, the Pilot has no availability requirement until he reports for his Aggressive Reserve Sequence on Tuesday. In addition, should Crew Scheduling need to reassign the Pilot from the Tuesday Sequence, the Lineholder Reassignment provisions (Section 5.P.) shall apply.

Question: Paragraph O. mentions what trip-splitting will be automated. When can we expect this to happen?

Answer: The current target date for new scheduling software, including automated trip-splitting is May 2008.

Question: Will the MOT Daily Drop Limits grow as the airline grows?

Answer: Yes. The MOT Daily Drop Limits "shall grow in proportion to the increase in Duty Periods and shall be reviewed and agreed upon by the Company and the Association on a Quarterly basis" in accordance with Section 5.L.4.

Question: VJA provisions have been added (is this different than Will Fly?).

Answer: Different in that it occurs after Reserve Assignment, and that a Pilot determines ahead of time what he wants to fly and then must accept the assignment. With Will Fly, Scheduling calls the Pilot with an assignment and then he decides if he wants it or not. This proved to be very inefficient.

Question: When a Pilot's reserve call period is changed from long call to short call for more than six periods in one month, he/she is to be compensated one hour of pay total (not for each change more than six) (p. 36; R.4.a.: "any").

Answer: The intent is each change after 6 would pay an additional hour.

**Appendix 4   Pg. 4**                                    **Question and Answer**



**Collective Bargaining Agreement** 12/01/10

Question: When a Pilot's reserve call period is changed from long or medium call to short call what notice is required?
Answer: The regular long/medium notice requirements of Paragraph R. (12 hours and 8 hours, etc.) apply prior to the start of the short call RDP.

Question: If Crew Scheduling moves a short call reserve from a PM Window to a Mid Window in accordance with Section 5.S.8, can that reserve then be moved to a B RDP in the AM Window?
Answer: No.

Question: If a Pilot wishes to waive the Calendar Day requirement, or exercise other waivers or mutualy agreeable options, what should he do?
Answer: Contact Crew Scheduling directly to notify them of the requested option. As the scheduling software is programmed to follow the default rules, a Pilot wishing to exercise one of these options may not be able to perform the action through the automated system and should contact Crew Scheduling directly by phone. Items that can be waived are listed in Appendix 5.

Question: Does the minimum 12 days off in Section 5.J.7. apply only to line construction or to all Company scheduled activities?
Answer: The minimum 12 days off in Section 5.J.7. applies to all Company scheduled activities including the initial line construction, training events, etc. The 12 day off minimum does not apply to Pilot schedule changes such OT transactions and transition adjustments. Any additional scheduled Company activities (e.g. training) shall not reduce a line to less than 12 days off except by a Recurrent Ground Training bid award or mutual agreement between the Pilot and the Company.

Question: A Sequence that was originally built as DEN-DFW-DEN with the overnight in DFW has been modified to include a Deadhead leg from MKE-DEN with an overnight in DEN, then operates DEN-DFW-DEN, then a Deadhead leg DEN-MKE. The Pilot assigned to the Sequence is based in MKE. The Pilot is no longer legal for the Sequence, when can the Sequence be modified by Crew Scheduling?
Answer: The Sequence can be modified the day prior to starting in MKE as the Sequence now starts and ends in MKE (rather than DEN) and does not pass through MKE

SECTION 6

SECTION 7

SECTION 8



**Collective Bargaining Agreement**                                    10/15/10

SECTION 9

Question: Do I have to use FMLA before Medical Leave?
Answer: The assumption for Section 9.I.1. ("A Pilot who is unable to fly due to illness or injury and does not qualify for FMLA (or has exhausted FMLA), shall be granted a Medical Leave of Absence by the Company.") is that a person will in fact apply for FMLA and use it if possible before going on a Medical Leave of Absence.

Question: Can I attend training or other duties I am able to perform while on Medical Leave?
Answer: By mutual agreement between the Company and the Pilot, the Pilot may perform duties that are normally performed by a Pilot (e.g., attending recurrent ground school, going to overwater training, seat support in the simulator). In such cases the Pilot shall be paid as a Pilot for those duties, but the Medical Leave of Absence shall not be considered interrupted by such duty (in other words, this does not reset the 5 year clock to restart the time limit for the leave).

Question: If I work for the Company in another job besides Pilot while on Medical Leave am I covered under the Agreement?
Answer: The intent of Section 9.I.14. is to treat Pilots performing non-Pilot jobs on a Medical Leave of Absence as a Pilot that gains employment with a third party company: the Pilot receives the benefits, pay, and protection for that third party company. However, the rights, responsibilities and protections that a Pilot on a Medical Leave of Absence are still in place for that Pilot as a Pilot. For example, if a Pilot is employed as a financial analyst and embezzles money from the Company store, he may be terminated from his job as a financial analyst without the protections of the Agreement, but not as a Pilot from the Company or the Seniority List without the protections of the Agreement.

Question: Can the Company delay my training to return to work after Medical Leave to delay paying me?
Answer: The intent of the 45 day maximum before a Pilot starts getting paid (Section 9.I.15.b.2)) is not to give the Company carte-blanche authority to postpone training for the full 45 days. Instead, this time is meant to give the Company flexibility to train the Pilot as soon as practical, taking into account items to include, but not limited to, simulator, instructor, classroom availability and the ability to pair the Pilot up with another Pilot that also requires training in order to avoid paying someone to provide seat support. The Company should be able to provide a reasonable explanation for a delay in training.



**Collective Bargaining Agreement**                     12/10/07

Question: If I am a MKE Captain on a Leave of Absence and the Pilot senior to me is subject to an ISA, what Position would I hold upon return?

Answer: You would return to the next Position on your Master Bid that you could hold in accordance with Section 6. If DEN CA was first, then MKE CA, then DEN FO and you cannot hold DEN CA or MKE CA you would return as DEN FO.

Question: If I am a Captain on a Leave of Absence and an ISA occurs while I am on Leave that I would have been subject to had I not been on a LOA, am I immediately subject to the ISA (i.e. downgraded to FO while on leave)?

Answer: No, your Position does not change until your LOA is completed and you return. As part of the return to work process your appropriate Position will be determined.

SECTION 10

SECTION 11

SECTION 12

SECTION 13

Question: Does a Pilot have to initial every piece of paper that might be used in a Section 13 disciplinary hearing?

Answer: Disciplinary/derogatory material placed in a Pilot's file does not need to be initialed if it is a supporting document, note, letter, information, etc. that is part of a hearing and that the Pilot by the nature of the hearing is or should be aware of. In other words, we don't expect that a Pilot will initial every document that is used in a disciplinary hearing, SBA proceeding or arbitration.

Question: Could the Company hold onto derogatory material until a hearing, and then have the Pilot initial them at the hearing?

Answer: No. Keeping information on a Pilot is, in effect, placing it into his file, and that information would need to be initialed in order to be kept or placed into his file for future use.

SECTION 14

Question: What if a Pilot doesn't show up for a hearing (Section 14.A.8.) because he was stuck at his house due to a blizzard?

Answer: This language was discussed by the parties to mean that if either party has a valid, legitimate reason for not being in attendance that the party can show was reasonable, the party will not automatically lose. This would obviously not cover things like convenience for scheduling or as a delay tactic.



**Collective Bargaining Agreement** | 06/24/11

SECTION 15

SECTION 16

SECTION 17

SECTION 18

SECTION 19

SECTION 20

Question: When "months" are specified for a waiting period prior to another upgrade attempt, are these calendar months?
Answer: No. If you have to wait for 1 month, for example, and the triggering event is on, for example, July 20, 1 month later is August 20th.

Question: Does the Training Review Board (TRB) apply to multiple failures within an event or a Pilot's entire employment?
Answer: The TRB is intended to apply where a pattern of "excessive" failures occur in more than one phase of training, or multiple times in a single phase. The TRB may be used even if the other failure limits specified in the Agreement within each phase have not been met, but there is a pattern of failures.

SECTION 21

Question: What is the intent of "all Investments in Paragraph A. shall cease as of that date." in LOA 67 Paragraph C.2.?

Answer: Should an Equity Event not occur the modifications to the CBA in Paragraph A. of LOA 67 shall not apply. As a result, the following shall be reinstated and/or restored:
- Pay adjustments in LOA 21
- Longevity steps in Section 4.A.1.
- The Company's matching contribution to the 401k Plan in Section 16.B.2.
- Vacation accruals described in Section 8.B.
- Sick accruals described in Section 15.B.
- Amendable date of 3/2/2015 in Section 24

Question: What does "reinstated and/or restored" mean in the Answer above?

Answer: It means that the referenced provisions will go back into effect. It does not mean that the Company will pay back the value of any concessions which have been made prior to the date the condition as not met.



**Collective Bargaining Agreement**                                    12/10/07

## APPENDIX 5

### WAIVER TABLE

The following contractual items may be waived at a Pilot's discretion:

| Contract Reference | Rule | Rule Description | Minimum Waiver Requirements |
|---|---|---|---|
| 5.I.3. | Transition Adjustment Block Time Removal | Resolution of transition conflicts must be accomplished by removing the minimum amount of time possible from the beginning or end of a scheduled Sequence. | – The time removed must be the minimal amount required to resolve the transition conflict.<br>– The Pilot must notify Crew Scheduling prior to 1700 LDT on the 15th of the prior month if he wishes to have time removed that does not fall at the beginning or end of a Sequence. |
| 5.I.3. & 5.J.8. | "1 in 7" Requirement - Transition Adjustment | A Pilot must be scheduled with a calendar day free from duty in domicile during any 7 day period. | – Pilot may waive this rule down to FAR minimums of a 24 hour break in a 7 day period rather than a calendar day<br>– The Pilot may waive the requirement for this break to occur in domicile<br>– For a *transition* conflict involving the 1 in 7 rule, the Pilot must notify Crew Scheduling prior to 1700 LDT on the 15th of the prior month if he wishes to waive the calendar day requirement |
| 5.J.8. | "1 in 7" Requirement | Pilot must be scheduled with a calendar day free from duty in domicile during any 7 day period | – A Pilot may waive this rule down to FAR minimums of a 24 hour break in a 7 day period rather than a calendar day<br>– The Pilot may waive the requirement for this break to occur in domicile<br>– A Pilot opting to waive this requirement must advise Crew Scheduling - an Open Time bid that results in a violation of this rule is considered notification to the Company that the Pilot wishes to waive the rule |
| 20.B.1.a)2) | "1 in 7" Requirement - Training | Pilot must be scheduled with a calendar day free from duty in domicile during any 7 day period | – A Pilot may waive this rule down to FAR minimums (i.e., a Pilot may be in training on the 7th day but for purposes of flight duty on the 7th day the Pilot must have a 24 hour break within the 7 day period)<br>– The Pilot may waive the requirement for this break to occur in domicile<br>– A Pilot opting to waive this requirement must advise the Company - an Open Time bid that results in a violation of this rule is considered notification to the Company that the Pilot wishes to waive the rule |
| 20.b.1.f.A | Training Scheduling - Oral Examinations | Oral examinations for the purpose of a PIC type rating shall not be scheduled on the same calendar day with other training or duties | – Pilot may waive this restriction<br>– Waiver must be coordinated with Training Scheduling |



**Collective Bargaining Agreement**                          03/09/09

The following items may be waived through mutual agreement of the Pilot and Company:

| Contract Reference | Rule | Rule Description | Minimum Waiver Requirements |
|---|---|---|---|
| 5.S.2. & 5.Q | .Reserve Assignment - "Want to Fly" | Short Call Reserves are assigned Sequences that fall within specific timeframes | – Reserve Pilots may contact Crew Scheduling to identify themselves as "Want to Fly"<br>– Through mutual agreement with Crew Scheduling a Pilot identified as a "Want to Fly" may be assigned a Sequence outside of his Window |
| 5.Q.5.d. | Release to Call-Back status | Short Call Reserves may be released to Call-Back status and must call in between one hour before and two hours after the end of the scheduled RDP | – Through mutual agreement with Crew Scheduling a Pilot may agree to a different call-back time<br>– The Pilot and Crew Scheduling will agree to the alternate Call-Back when the Pilot is released to Call-Back status |
| 5.J.8. | Aggressive Reserve Assignments - Windows | The report time of Sequence awarded through the Aggressive Reserve process must fall within the Pilot's scheduled Reserve Window | – Through mutual agreement with Crew Scheduling a Reserve Pilot may be awarded a Sequence through Aggressive Reserve which does not report within the Scheduled Window<br>– A Pilot opting to waive this requirement must advise Crew Scheduling - an Aggressive Reserve bid for a Sequence that does not fall within a Reserve Pilot's Window is considered notification to the Company that the Pilot wishes to waive the rule |

**FAPA**

## Collective Bargaining Agreement

03/03/07

---

# FRONTIER.

Frontier Airlines, Inc.          P 720.374.4200          frontierairlines.com
Frontier Center One              F 720.374.4276
7001 Tower Road
Denver, CO 80249

March 2, 2007

Letter of Agreement 01

Captain Jeff Thomas, President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

Agreement Implementation Plan

Captain Thomas,

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association") for the purpose of implementation of the new Collective Bargaining Agreement ("CBA") effective March 2, 2007.

This letter will define the specific Agreement implementation schedule in accordance with CBA Section 24. Unless otherwise specified in the table below, all provisions of the CBA will become in full effect March 2, 2007.

Agreement Implementation Schedule

| Section | Paragraph | Item | Notes |
|---|---|---|---|
| 4 | B | Per Diem rates | The new Per Diem rates will be paid on the April 5 paycheck for the March 2007 bid period. |
| 5 | All | Various | Paragraphs 5.A, 5.J.6, 5.L.11.a, 5.Q.4.d will become effective on April 1, 2007. All other provisions of Section 5 incorporated in the May 2000 CBA remain in effect until the June 2007 bid period. Various provisions will become effective in May as necessary for the June 2007 bid period. |
| 12 | All | Dispute and Grievance | All grievances arising out of alleged contract violations that occurred prior to March 2, 2007 will be handled under the processes of the old CBA. |
| 13 | All | Investigation and Discipline | Investigations started prior to March 2, 2007 will be handled under the processes of the old CBA. |
| 14 | All | System Board of Adjustment | All disputes arising out of alleged contract violations that occurred prior to March 2, 2007 will be handled under the processes of the old CBA. |
| 16 | A | ESOP | Company funding of the pilot's ESOP will cease March 2, 2007. |
| 16 | B | 401(k) Company Match | Pay period 401(k) Company match will start with March 20 pay check for the March bid period. |
| 16 | C | DC Plan | The DC plan will be effective March 2, 2007, however the plan may not be operational until April 1, 2007. A contribution will be made to cover the period March 2, 2007-April 1, 2007. |
| 20 | B.1.e | Training Adjacent to Vacation | Effective April 1, 2007. Training has scheduled training for the March 2007 bid month. |
| 20 | B.3.a | Simulator Hours | Effective June 1, 2007. Company purchases simulator time 90 days in advance. Training periods have been established through June 1, 2007. |
| 20 | B.3.b | 12 Hour rest | Effective April 1, 2007. Simulator training has already been scheduled for March 2007 Bid Period. |

*A whole different animal.*

---

**Frontier Airlines Pilots Association**



| | Collective Bargaining Agreement | 03/03/07 |

# FRONTIER.

Frontier Airlines, Inc.      P 720.374.4200      frontierairlines.com
Frontier Center One        F 720.374.4375
7001 Tower Road
Denver, CO 80249

March 2, 2007

Letter of Agreement 01

Respectfully,

Captain Jim Sullivan
Vice President Flight Operations

CC:      Cam Kenyon
         Pat Ryan
         Eric Lorenz
         John Carkeet
         John Becorra

Agreed;

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

*A whole different animal.*

**FAPA**

**Collective Bargaining Agreement**                    03/03/07

**FRONTIER**

Frontier Airlines, Inc.          P 720.374.4200          frontierairlines.com
Frontier Center One          F 720.374.4375
7001 Tower Road
Denver, CO 80249

Letter of Agreement 02

Captain Jeff Thomas, President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

**Health Insurance and Health Care Study Committee**

Captain Thomas,

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association") for the purpose of addressing rising health insurance costs for both the Company and its employees. The Company and the Association have shared concerns regarding annual increases in health care costs and have jointly developed a plan that addresses these issues.

The Company hereby agrees to establish a joint Association-Company committee ("Health Care Study Committee" or "HCSC") comprised of representatives from FAPA and from the Company.

Objectives of Committee are to reduce the cost of health insurance, to look for ways to better manage health care costs in the future, and to look at providing different health care options to employees. In addition, we want to clearly understand if the Company's plan is competitive with other plans inside and outside the airline industry and determine if Frontier's costs are higher than other companies. While there are no guarantees that we can achieve these objectives, the Company is prepared to move forward in an attempt to try and solve these problems.

The HCSC shall:

x       Prepare and issue a Request For Proposal ("RFP") within 45 days of signing this LOA in order to retain a mutually agreeable health care consulting firm;

x       Establish a Scope of Work, define objectives, establish timelines and action plans, select a consultant, and have the analyses conducted and recommendations made to the HCSC in time for plan changes to be effective on January 1, 2008, if possible;

x       Review recommendations of the consultants to meet the objectives set forth by the HCSC.

The Company acknowledges that the recommendations of the healthcare consulting firm and those of the HCSC will not be unreasonably rejected by the Company.

Regardless of whether the recommendations from the consulting firm are implemented for 2008, the Company agrees to freeze both the plan design and the relative percentages paid by the Pilots and the Company in effect for plan year 2007 (as described in the Summary Plan Description, appended to the original copy of this letter) for plan years 2008 and 2009. Neither the plan design features nor the percentages being paid for medical coverage by Pilots (the relative shared percentages for Employee Only, Employee + Spouse, Employee + Children, and Family categories) will change. The Company agrees to provide promptly, full documentation regarding the Health Plan designs and costs as requested by the Association.

*A whole different animal.*

**Frontier Airlines Pilots Association**                    **LOA02.1**



**FRONTIER**

Frontier Airlines, Inc.    P 720.374.4200    frontierairlines.com
Frontier Center One        F 720.374.4375
7001 Tower Road
Denver, CO 80249

As a member of the HCSC, the Association input to the Committee shall be fully considered and factored into any final decisions including the hiring of the consulting firm and the development of recommendations to the Company.  In addition the Company will provide adequate resources and staff for this project to insure its purposes are met.

The cost of the program, including the hiring of the consulting firm will be paid by the Company.  In addition, the Company will appoint a project manager and provide adequate staffing for this project to insure its purposes are met.  The Company agrees to share any information provided to the Company by the consulting firm with the Association.

In recognition that the Company is moving forward to find solutions to these issues, the Association hereby agrees to withdraw the Health Insurance Grievance submitted to the Company on December 6, 2006, and to utilize its participation in the HCSC to address its concerns in this area.

Respectfully,

Captain Jim Sullivan                        Agreed: _____
Vice President Flight Operations            Captain Jeffrey M. Thomas
                                            President
CC:    Kevin Stocker                        Frontier Airline Pilots Association
       Ann Block
       Cam Kenyon
       Jerry Glass
       Randy Babbitt
       Carla Wolin

*A whole different animal.*

**LOA02.2**

**FAPA**

**Collective Bargaining Agreement**                     03/03/07



March 3, 2007

Letter of Agreement 03

Captain Jim Sullivan
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Tentative Agreement Errata and Revisions

Dear Captain Sullivan:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. to make corrections to and update language in the Tentative Agreement for the effective Collective Bargaining Agreement. The changes to the Tentative Agreement are as listed below and will be incorporated into the initial distribution of the Agreement to the membership.

**Section 1**
Paragraph F.3.c.1) changed RJ reference in "...reducing the RJ fleet..." to "...reducing the SJ fleet..."
**Section 4**
Paragraph D. FO example changed to date of 6/1/07
Paragraph D. Table II dates changed from "Effective at signing" to "3/2/07" and "1/1/10" to "3/2/10" and "1/1/11" to "3/2/11"
Paragraph I.9. changed "F/O" to "First Officer."
Paragraph R.4. Per Diem dates changed from "Effective at signing" to "3/2/07" and to reflect September 2006 Agreement in Principle from "DOS + 36 months" to "9/2/08" and "DOS + 48 months" to "3/2/10"
**Section 5**
Paragraph A.4.b. changed "All changes..." to "All Company initiated changes and Transition Contact adjustments..."
Paragraph H.1. added Ground School Bid Award to be 19th at 2100
Paragraph J.6.d.1)b) Changed "one" to "1" and "fifteen" to "15"
**Section 14**
Paragraph J.2.c. deleted "SBA" from the last sentence
**Section 16**
Paragraph C.1. changed table DOS dates to reflect actual dates of 3/2/07, 3/2/08, 3/2/09, 3/2/10
**Section 19**
Paragraph D.1. changed from "...any pay due in Paragraph B..." to refer to Paragraph C
**Section 20**
Paragraph B.3.c. changed "...shall not be scheduled to perform..." to "...shall not be scheduled by the Company to perform..."
Paragraph B.3.c.2) changed "thirty" to "30"
**Section 24**
Filled in date of March 2 to blank dates
Change "...at least ninety (90) Calendar Days..." to "...at least 90 Calendar Days..."
Removed Jeff Broady/Vice President from signature table
**Appendix 1**
Added current seniority list as of 3/2/07
**Appendix 2**
Added list of agreed arbitrators
**Appendix 3**
Added Reserve Assignment Flow Charts
**Appendix 4**
Added to Q&A list

Sincerely,                                              Agreed:

Captain Jeffrey M. Thomas                    Captain Jim Sullivan
President                                              Vice President Flight Operations
Frontier Airline Pilots Association           Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

## Collective Bargaining Agreement

05/17/07

**FRONTIER.**

Frontier Airlines, Inc.          P 720.374.4200          frontierairlines.com
Frontier Center One          F 720.374.4375
7001 Tower Road
Denver, CO 80249

**Letter of Agreement 04**

May 17, 2007

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

**DFW Taxi / Reposition**

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association") for the purpose of addressing taxi duties for Pilots in DFW in support of international operations. This LOA shall expire June 30, 2007. The parties agree to meet no later that one week prior to the expiration of this LOA to evaluate the operational issues associated with, and the suitability of the LOA and determine whether to renew, revise, or discontinue the terms of the LOA.

The Company and the Association agree that Section 4.L. of the CBA between the parties (the "Agreement") shall be amended as follows:

   The title of Section 4.L. shall be amended (and changed in the document via revision) to read: "L. TAXI PAY (as modified by LOA 04 for DFW Operations)."

For operations in DFW only, the respective subparagraphs of Section 4.L. shall be modified as follows:

1. As of the date of this LOA, Frontier plans to operate flights from MZT to DFW starting on June 7, 2007 until August 15, 2007, and then again on October 15, 2007 until August 15, 2008, to arrive at Terminal D (the international terminal) with one flight crew. A different flight crew will then be scheduled to taxi the aircraft from Terminal D to Terminal E (the "DFW Taxi") and then operate a flight from DFW to DEN. The parties agree to discuss the provisions of this LOA if the planned dates change significantly from those currently planned for this operation.
2. This DFW Taxi will be scheduled for 24 minutes (0.4 block hours), and will be paid at 24 minutes (0.4 block hours) or the actual taxi "block" time, whichever is



**Collective Bargaining Agreement**

05/17/07

greater. If the actual taxi time exceeds 24 minutes, contact Pilot Payroll at (720) 374-3544 or pilotpay@frontier.com to have your pay adjusted appropriately by providing your name, employee number, the affected flight number and date, and the actual taxi time. Either pilot on the crew may call or communicate this required pay adjustment in to Pilot Payroll as necessary.

3. The DFW Taxi will be included in the Duty Period and the crew will be scheduled to report to Terminal D 1 hour and 15 minutes prior to the scheduled departure for the DFW – DEN flight.

4. The DFW Taxi will appear on the Monthly Bid Package for affected flights.

5. The DFW Taxi may not create a scheduled reduced rest.

6. Crews scheduled to perform a DFW Taxi will be transported as necessary from the hotel in DFW to Terminal D instead of Terminal E. The Company will make all reasonable efforts to ensure that the crew is notified that they need to go to Terminal D instead of the normal Terminal E at DFW, and the hotel will also be asked by the Company to assist in ensuring that the crew is transported correctly.

7. Not applicable.

8. No change.

9. No change.

10. No change.

11. No change.

Respectfully,

Cameron M. Kenyon

Cam Kenyon
Vice President Flight Operations

Agreed:
Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

2



**Collective Bargaining Agreement**                                07/09/07

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@fifapa.org

May 31, 2007

**Letter of Agreement 05**

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

**Medical Leave Extension**

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to revise the maximum duration of Medical Leave to 10 years. This LOA shall be subject to an affirmative ratification vote of the FAPA membership, and shall not become effective until the conclusion of that vote.

In order to accomplish this change, Section 9 Medical Leaves of Absence, Paragraph I.3 of the Collective Bargaining Agreement ("CBA") shall be revised in its entirety to read as follows:

"A Medical Leave of Absence shall not exceed a total continuous period of 10 years. Upon the expiration of the 10 years the Pilot shall be removed from the Seniority list. If a Pilot reaches the FAA mandated retirement age while on a Medical Leave of Absence, the Pilot shall be responsible for providing, within 10 years of the start of his Medical Leave of Absence, a reasonably sufficient report from the Pilot's health care provider certifying the Pilot's fitness to return to work in order to preserve the Pilot's rights under Section 3."

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed: Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                07/09/07

# FRONTIER.

Frontier Airlines, Inc.     P 720.374.4200     flyfrontier.com
Frontier Center One       F 720.374.4375
7001 Tower Road
Denver, CO 80249

Letter of Agreement 06

June 25, 2007

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

### DFW Taxi / Reposition Extension LOA

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association") for the purpose of extending the expiration date of LOA 04 (regarding DFW Taxi / Reposition) through December 31, 2007.

The parties agree to meet no later than December 15, 2007 to evaluate the operational issues associated with, and the suitability of the terms of LOA 04 and to determine whether to renew, revise, or discontinue the terms of LOA 04.

Respectfully,

Cameron M Kenyon

Cam Kenyon
Vice President Flight Operations

Agreed:
Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                                    12/09/07



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 EAST 71ST AVENUE · SUITE 140 · DENVER, CO 80249
303-373-0137 · FAX 720-374-2027 · email@f9fapa.org

December 9, 2007

Letter of Agreement 07

Mr. Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, CO 80249

Dear Mr. Kenyon:

Frontier Airlines, Inc. ("the Company") has requested a delay for the January 2008 Monthly Bid Period timetable as described in Section 5.H.1 of the Collective Bargaining Agreement ("CBA") with the Frontier Airline Pilots Association ("the Association").

The Association agrees to modify the timelines described in Section 5.H.1 for the January 2008 Monthly Bid Period, on a non-precedent setting basis. The following timeline will apply for the January 2008 Monthly Bid Period. Dates and all times shall be considered "no later than" for # items.

| DATE | TIME (LDT) | EVENT (all events must occur no later than date/time specified) |
|------|------------|----------------------------------------------------------------|
| 11th | 1700 | *Line Bid -- Open on FLICA (including vacations, scheduled ground school) |
| 12th | 1700 | *Paper Bids available |
| 17th | 0900 | Line Bid -- Close |
| 17th | 1200 | *Bid -- Award |
|      |      | Protest period/Vacation Slide/Adjustment/Golden Day designation periods begin |
| 18th | 0900 | Protest period ends |
| 18th | 1700 | Golden Day designation/Vacation Slide/Adjustment period ends. |
|      |      | *MOT Drop period begins |
| 19th | 0900 | Ground School Bid -- Close |
| 19th | 2100 | Ground School Bid -- Award |
| 21st | 0900 | MOT Drop period ends |
| 23rd | 1700 | *Monthly Open Time Bid (no Drops) -- Open |
| 24th | 0900 | Monthly Open Time Bid -- Close |
| 25th | 1700 | *Monthly Open Time Bid -- Award |
| 26th | 1700 | *Relief Line Bid -- Open |
| 27th | 1700 | Relief Line Bid -- Close |
| 27th | 2100 | *Relief Line Bid -- Award (Vacation Slides must be submitted by 0800 on the 28th) |
| 28th | 0900 | Daily Open Time Bid -- Open |

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airline Pilots Association

---

**Frontier Airlines Pilots Association**                              **LOA 07.1**

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**   **Collective Bargaining Agreement**   12/10/07

# FRONTIER

Frontier Airlines, Inc.   P 720.374.4200   frontierairlines.com
Frontier Center One   F 720.374.4375
7001 Tower Road
Denver, CO 80249

Letter of Agreement 08

December 10, 2007

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO  80249

Errata LOA

Dear Capt. Thomas:

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association").

The purpose of this LOA is to correct typos that were inadvertently included in the original version of the CBA between the parties, or that were generated during the Technical Publications format conversion process.

The parties agree that the following changes will be made to correct these errors:

| Page # | Para. # | Item |
|--------|---------|------|
| 1.2 | E.2. | Add quotation mark before "Control" |
| 1.3 | E.7. | Add quotation mark before "Parent" |
| 1.7 | I.2. | Delete the comma in last sentence |
| 1.7 | K | Shift paragraph starting with "then" to the left to align justification with the first level above. |
| 2.2 | C.3. | Change "Business" to "business" |
| 3.1 | Title | Change "Senority" to "Seniority" |
| 4.1 | C.2. | Change "Involuntary Staffing Adjustment (VSA)" to "ISA" |
| 4.1. | D. | Remove "the" before each date |
| 4.5 | G.2.a. | Add a close parenthetical at the end, but before the period. |
| 5.6 | F.3. | Change "electronic bid system" to "Electronic Bid System" |
| 5.8 | H.1. | Mark the Ground School Award as a NLT item |
| 5.9 | J.3. | Add a close parenthetical |



**Collective Bargaining Agreement**   12/10/07

| Page # | Para. # | Item |
|---|---|---|
| 5.10 | | Move the margin notes down to align with paras. 4 and 5, respectively |
| 5.11 | J.6.c. | Change "Reserved" to "reserved" |
| 5.14 | L.1.b. | Change "Pay Protected" to "pay protected" |
| 5.16 | L.5. | Change "Lineholder" to "lineholder" |
| 5.17 | L.9.b. | Change "Reserve Day" to "reserve day" |
| 5.18 | L.11.a.2) | Add the word "of" after the word "excess" |
| 5.20 | N.4. | Change reference from "I." to "H." |
| 5.21 | O.2. | Add the word "the" before daily drop limit |
| 5.22 | O.5.a.1) | Move the word "split" to after the word "be" |
| 5.22 | O.5.b.4) | Add a space before "96" |
| 5.23 | P.3.d. | Change "reassigned" to "Reassigned" |
| 5.29 | | Change top margin note from "of" to "or" |
| 5.29 | Q.3 | Change reference to "Paragraph 3" to "Paragraph 2" |
| 5.32 | S.6. | Remove the extra "6" |
| 5.37 | X.2. | Change "Position" to "position" |
| 8.3 | G.1. | Change "Cancellation" to "cancellation" |
| 9.4 | E.7. & 8. | Remove the extra "7." and "8." |
| 12.1 | B.1. | Change "Accordance" to "accordance" |
| 13.2 | A.5. | Change "File" to "file" |
| 13.3 | C.1.a | Change "File" to "file" |
| 13.3 | C.1.d | Change "File" to "file" |
| 13.3 | C.1.e | Change "File" to "file" |
| 13.5 | E.1. | Change "Position" to "position" |
| 14.1 | A.1. | Change "Position" to "position" |
| 18.2 | D.6. | Remove "not" |
| 20.8 - 20.12 | | Five references to Section 12 should all be to Section 13 |
| 23.1 | | Actual Block – change "in" and "out" to "In" and "Out" |
| 23.1 | | Bid Category – change "bid category" to "Bid Category" |
| 23.1 | | Block Time – change "block out" and "block in" to "Block Out" and "Block In" |
| 23.2 | | Continuous Duty Overnight – change "domicile" to "Domicile" |
| 23.2 | | Continuous Duty Overnight – change "calendar day" to "Calendar Day" |
| 23.2 | | Day Off – change "calendar day" to "Calendar Day" |
| 23.3 | | Incentive Pay – change "eighty-two" to "82" |
| 23.4 | | Monthly Pay Guarantee – change "Credit" to "Credits" |
| 23.4 | | add an "s" to "Credit" |
| 23.4 | | No-Bid Pilot – change "Line Bid" to "line bid" |
| 23.4 | | Red Eye – change "duty period" to "Duty Period" |
| 23.4 | | Report Time – change "duty period" to "Duty Period." |



**Collective Bargaining Agreement**          12/10/07

| Page # | Para. # | Item |
|--------|---------|------|
| 23.4 | | Rest Period – change "duty periods" to "Duty Periods" |
| Appendix 3 | | Add missing first page (attached) and renumber existing pages "2" to "4" |
| Appendix 4, Pg. 1 | | Add a space between "Section" and "1" in the first question |
| Appendix 4, Pg. 3 | | Change quotations prior to examples to bullet points |

Respectfully,

Captain Cameron M. Kenyon
Vice President Flight Operations

Agreed:

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    12/10/07

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

December 10, 2007

Letter of Agreement 09

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Reserve Window Movement, VJA & Waivers Clarification

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the movement of Windows for short call reserves through the Q & A section, clarify the VJA process through a language change and clarify how and what items of the Agreement can be waived.

**Window Movement**
To clarify Window movements, the following question shall be added under Section 5 in Appendix 4 Q&A:

Question: If Crew Scheduling moves a short call reserve from a PM Window to a Mid Window in accordance with Section 5.5.8 , can that reserve then be moved to a B RDP in the AM Window.

Answer: No.

**VJA**
To clarify the VJA process, Section 5.U.2.d. shall be changed from:

The type of Sequence(s) the Pilot is interested in including:"

to:

The type of Sequence(s) the Pilot will accept including:"

**Waivers**
To clarify how Pilots may exercise their option to waive certain rules, the following question shall be added under Section 5 in Appendix 4 Q&A and Appendix 5 shall be appended to the Agreement:

Question: If a Pilot wishes to waive the Calendar Day requirement, or exercise other waivers or mutually agreeable options, what should he do?

Answer: Contact Crew Scheduling directly to notify them of the requested option. As the scheduling software is programmed to follow the default rules, a Pilot wishing to exercise one of these options may not be able to perform the action through the automated system and should contact Crew Scheduling directly by phone. Items that can be waived are listed in Appendix 5.

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed: _____
Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

 **Collective Bargaining Agreement**                           12/10/07

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX 720-374-2027 • email@ffapa.org

December 10, 2007

Letter of Agreement 10

Captain Dam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Appendix 5 – Waiver Table

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to add Appendix 5 listing items in the Agreement that can be waived by a Pilot or by mutual agreement between a Pilot and the Company.

## APPENDIX 5

### Waiver Table

The following contractual items may be waived at a Pilot's discretion:

| Contract Reference | Rule | Rule Description | Minimum Waiver Requirements |
|---|---|---|---|
| 5.I.3. | Transition Adjustment – Block Time Removal | Resolution of transition conflicts must be accomplished by removing the minimum amount of time possible from the beginning or end of a scheduled Sequence. | – The time removed must be the minimal amount required to resolve the transition conflict.<br>– The Pilot must notify Crew Scheduling prior to 1700 LDT on the 15th of the prior month if he wishes to have time removed that does not fall at the beginning or end of a Sequence. |
| 5.I.3. & 5.J.8. | "1 in 7" Requirement – Transition Adjustment | A Pilot must be scheduled with a calendar day free from duty in domicile during any 7 day period. | – A Pilot may waive this rule down to FAR minimums of a 24 hour break in a 7 day period rather than a calendar day.<br>– The Pilot may waive the requirement for this break to occur in domicile.<br>– For a transition conflict involving the 1 in 7 rule, the Pilot must notify Crew Scheduling prior to 1700 LDT on the 15th of the prior month if he wishes to waive the calendar day requirement. |
| 5.J.8. | "1 in 7" Requirement | Pilot must be scheduled with a calendar day free | A Pilot may waive this rule down to FAR minimums of a 24 hour break in a 7 day period rather |



**Collective Bargaining Agreement**                    12/10/07

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX 720-374-2027 • email@f9fapa.org

|  |  |  |  |
|---|---|---|---|
|  |  | from duty in domicile during any 7 day period | − The Pilot may waive the requirement for this break to occur in domicile<br>− A Pilot opting to waive this requirement must advise Crew Scheduling – an Open Time bid that results in a violation of this rule is considered notification to the Company that the Pilot wishes to waive the rule |
| 20.B.1.a)2) | "1 in 7" Requirement - Training | Pilot must be scheduled with a calendar day free from duty in domicile during any 7 day period | − A Pilot may waive this rule down to FAR minimums (i.e., a Pilot may be *in training* on the 7th day but for purposes of flight duty on the 7th day the Pilot must have a 24 hour break within the 7 day period)<br>− The Pilot may waive the requirement for this break to occur in domicile<br>− A Pilot opting to waive this requirement must advise the Company – an Open Time bid that results in a violation of this rule is considered notification to the Company that the Pilot wishes to waive the rule |
| 20.b.1.f. | Training Scheduling – Oral Examinations | Oral examinations for the purpose of a PIC type rating shall not be scheduled on the same calendar day with other training or duties | − A Pilot may waive this restriction<br>− Waiver must be coordinated with Training Scheduling |

The following items may be waived through mutual agreement of the Pilot and the Company:

| Contract Reference | Rule | Rule Description | Minimum Waiver Requirements |
|---|---|---|---|
| 5.S.2, & 5.Q. | Reserve Assignment – "Want to Fly" | Short Call Reserves are assigned Sequences that fall within specific timeframes | − Reserve Pilots may contact Crew Scheduling to identify themselves as "Want to Fly"<br>− Through mutual agreement with Crew Scheduling a Pilot identified as a "Want to Fly" may be assigned a Sequence outside of his Window |
| 5.Q.4.d. | Release to Call-Back status | Short Call Reserves may be released to Call-Back status and must call in between one hour before and two hours after the | − Through mutual agreement with Crew Scheduling a Pilot may agree to a different call back time<br>− The Pilot and Crew Scheduling will agree to the alternate Call- |



**Collective Bargaining Agreement**                     12/10/07

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

| | | end of the scheduled RDP | Back when the Pilot is released to Call Back status |
|---|---|---|---|
| 5.J.8. | Aggressive Reserve Assignments - Windows | The report time of Sequence awarded through the Aggressive Reserve process must fall within the Pilot's scheduled Reserve Window | Through mutual agreement with Crew Scheduling a Reserve Pilot may be awarded a Sequence through Aggressive Reserve which does not report within the Scheduled Window<br>- A Pilot opting to waive this requirement must advise Crew Scheduling – an Aggressive Reserve bid for a Sequence that does not fall within a Reserve Pilot's Window is considered notification to the Company that the Pilot wishes to waive the rule |

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed: _Cameron M. Kenyon_

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                                    12/10/07


**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 EAST 71ST AVENUE · SUITE 140 · DENVER, CO 80249
303-373-0137 · FAX 720-374-2027 · email@f9fapa.org

December 10, 2007

Letter of Agreement 11

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Reserve Block vs. Credit Change

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association "FAPA") and Frontier Airlines, Inc. ("the Company") to correct language to match originally negotiated intent regarding reserve assignments based on block vs. credit time.

Section 5.Q.2.b)3) and Section 5.Q.2.c)3) and Section 5.Q.2,d)3) shall be modified as follows:

The sentence: "If assignment of a Reserve Pilot will result in a monthly Block In excess of 75 hours a Reserve Pilot may, at Crew Scheduling's option, be bypassed for assignment."

shall be changed to read:

If assignment of a Reserve Pilot will result in Pay Credits in excess of 75 hours for a Monthly Bid Period that Reserve Pilot may, at Crew Scheduling's option, be bypassed for assignment."

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed: _Cameron W. Kenyon_
Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement** 12/12/07

## FRONTIER AIRLINE PILOTS ASSOCIATION
18300 EAST 71ST AVENUE · SUITE 140 · DENVER, CO 80249
303-373-0137 · FAX 720-374-2027 · email@f9fapa.org

December 12, 2007

Letter of Agreement 12

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Notification for Training Schedules

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to specify when Pilots will be notified of changes to their schedules as a result of training assignments.

Section 5.A.4.b. shall be modified to read:

"Except for training assignments for the following Monthly Bid Period made prior to the 18th of the current month at 0900 and in accordance with Section 20.A.3.d., all Company initiated changes and Transition Conflict adjustments to a Pilot's schedule and/or Reserve assignments require Positive Telephone Contact with the Pilot, or a mutually agreeable electronic self-notification process. Except as restricted in Paragraphs c., d. and e. below, notice of changes should be attempted at the time of the change, but no later than 24 hours from the time of the change. While a message (including telephone, answering service, Company radio, ACARS, etc.) may be left for a Pilot, the message shall not be considered received, and the Pilot is therefore not considered notified of an assignment, until Positive Telephone Contact with the Pilot has been made."

Section 5.H.1. shall be modified to add:

"18th 0900 All training assignments completed, except as notified by Positive Telephone Contact"

Section 20.A.3. shall be modified to add paragraph d.:

"1. Simulator Notification. Notification of PT and PC events for the following Monthly Bid Period shall be provided to the Pilot's "V" file by the 23rd of the current month."

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed: _Cameron M. Kenyon_

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                                                    12/10/07

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 EAST 71ST AVENUE · SUITE 140 · DENVER, CO 80249
303-373-0137 · FAX 720-374-2027 · email@f9fapa.org

December 10, 2007

Letter of Agreement 13

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Reduced Rest Duty vs. Rest clarification

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that in a reduced rest situation a Pilot's Duty Period shall end normally as described in Section J.6., but contractual rest shall be delayed as specified in Section 5.J.10.

The second sentence in Section 5.J.10. shall be modified as follows:

"If reduced rest is incurred due to operational irregularity (i.e. weather or maintenance delay), the Duty Period shall end in accordance with Section J.6., however the Rest Period shall begin 30 minutes after the crew arrives at the hotel (notice of which should be provided to Crew Scheduling by the Captain). If no notification is given by the Captain to Crew Scheduling (or Dispatch if Scheduling is unavailable) upon arrival at the hotel, the rest shall commence 30 minutes after being released on that leg."

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed: _Camwen M. Kenyon_
Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    12/10/07

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 EAST 71ST AVENUE · SUITE 140 · DENVER, CO 80249
303-373-0137 · FAX 720-374-2027 · email@f9fapa.org

December 10, 2007

Letter of Agreement 14

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Open Time Transaction for the Following Month

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to specify when pilots may modify their schedule in Open Time for the following month.

Section 5.0.3. shall be modified to add Paragraph f:

"Open Time transactions into the following Monthly Bid Period's transition period will not be processed until the 18th at 0900 due to the inability of the DAG to be applied when the next month's flying has not been created. (e.g. August 28th at 0900 September's DOT becomes available, but trips can not be dropped into October's transition period until September 18th at 0900.)"

Section 5.H.1. shall be modified to add:

"18th 0900 OT transactions for following Monthly Bid Period transition allowed".

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed: Cameron M. Kenyon
Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    12/10/07

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 EAST 71ST AVENUE · SUITE 140 · DENVER, CO 80249
303-373-0137 · FAX 720-374-2027 · email @f9fapa.org

December 10, 2007

Letter of Agreement 15

Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Late Night 10:30 Duty Limitation and Open Time

Dear Captain Kenyon:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that the 10:30 duty limitation in Section 5.J.4.b. does not apply to Open Time transactions due to limitations of the Electronic Bid System.

Section 5.J.4.b. shall be modified from;

"Except for CDOs, if any portion of a Duty Period occurs between 2300-0500 LDT, the Duty Period shall not be scheduled for greater than 10 hours 30 minutes. The actual Duty Period shall not be greater than 14 hours. Reserve Duty Periods shall not be subject to the 10 hour 30 minute limitation. Any assignment during an RDP shall be subject to the aforementioned limitations."

To read:

"Except for CDOs, if any portion of a Duty Period occurs between 2300-0500 LDT, the Duty Period shall not be scheduled for greater than 10 hours 30 minutes. (However, this 10:30 limitation shall not apply to Open Time or Aggressive Reserve Transactions.) The actual Duty Period shall not be greater than 14 hours. Reserve Duty Periods shall not be subject to the 10 hour 30 minute limitation. Any assignment during an RDP shall be subject to the aforementioned limitations."

Sincerely,

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

Agreed:  Captain Cam Kenyon
Vice President Flight Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

# FRONTIER

Frontier Airlines, Inc.     P 720.374.4200     frontierairlines.com
Frontier Center One       F 720.374.4375
7001 Tower Road
Denver, CO 80249-

**Letter of Agreement 16**

December 10, 2007

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO  80249

**DFW Taxi / Reposition Extension LOA**

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association") for the purpose of extending the expiration date of LOA 04 (regarding DFW Taxi / Reposition) through June 30, 2008.

The parties agree to meet no later than June 15, 2008 to evaluate the operational issues associated with, and the suitability of the terms of LOA 04 and to determine whether to renew, revise, or discontinue the terms of LOA 04.

Respectfully,

Cam Kenyon
Vice President Flight Operations

Agreed:

Captain Jeffrey M. Thomas
President
Frontier Airline Pilots Association

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                                06/01/08

# FRONTIER

Frontier Airlines, Inc.          P 720 374 4200
Frontier Center One              F 720 374 4375        frontierairlines.com
7001 Tower Road
Denver, CO 80249

Letter of Agreement 17

June 1, 2008

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

**Interim Restructuring Relief Agreement**

Dear Capt. Stemmler:

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association").

The Association and the Pilots have agreed to assist in the Company's Chapter 11 Bankruptcy reorganization effort and hereby agree to the terms of the attached Interim Restructuring Relief Agreement.

Respectfully,

Cameron M. Kenyon

Cam Kenyon
Vice President Flight Operations

Agreed:

Captain John Stemmler
President
Frontier Airline Pilots Association

---



**Collective Bargaining Agreement**   06/01/08

## Interim Restructuring Relief Agreement

Frontier Airlines, Inc. (the "Company") and the Frontier Airline Pilots Association ("FAPA") have agreed to interim modifications to the Collective Bargaining Agreement ("CBA") necessary as a first step towards the Company's restructuring efforts. All terms of the current CBA shall remain in full force and effect, except as modified in this Interim Restructuring Relief Agreement (the "Interim Agreement")

| | |
|---|---|
| **Effective Date** | June 1, 2008 |
| **Duration** | This Interim Agreement shall become null and void and of no further force and effect on September 30, 2008, except as otherwise specifically provided herein. The parties agree to meet within seven (7) days of ratification of this Interim Agreement to begin discussions of potential returns to FAPA and the Pilots as part of a permanent Restructuring Agreement. |
| **Revisions to Pay Rates and Pension Contribution** | Pay rates and Pension contributions in the CBA will be modified by the term of this Interim Agreement to achieve targeted savings of $4.57 million, as more fully set forth in Attachment A ("Interim Agreement Pay Rates") |
| **Furlough Options** | Immediately following the ratification of this Agreement, Company and FAPA representatives agree to meet weekly to discuss options to mitigate potential Pilot furloughs (including but not limited to voluntary long term leaves, line sharing, etc.) |
| **Financial Reporting** | The Company will provide FAPA with monthly, quarterly and annual operating statistics, financial information and projected results (as well as any other operating or financial information reasonably requested) for the duration of this Interim Agreement in order to track the Company's performance relative to its Restructuring Plan. |
| **Fragmentation** | The Company and FAPA agree to meet and discuss protective language to provide Pilot employee protection in the event of the sale of any significant number of aircraft in the service of the Company. |
| **Restructuring Negotiations Expenses** | In recognition of efforts made at Company request during the preparations, negotiations and ratification process for Pilot contributions to assist the Company in its restructuring efforts, the Company agrees to pay or reimburse FAPA for the following: |

       A. Flight Pay Loss for FAPA Board Members to participate in



**Collective Bargaining Agreement**                    06/01/08

*Interim Restructuring Relief Agreement*
*May 14, 2008*
*Page 2 of 5*

meetings to discuss this Interim Agreement with Pilots prior to a ratification vote by the Pilots; and

B. Payment of hotel meeting rooms for the purpose of the meetings referenced in A above, but not to exceed a total maximum of $4000.

**Unsecured Claim**    The Company shall not object to any prepetition unsecured claim filed by FAPA on behalf of FAPA- represented employees in the amount of savings actually and directly obtained from the FAPA-represented employees under this Interim Agreement.

Interim Restructuring Relief Agreement Company Counsel v.2



**Collective Bargaining Agreement** 06/01/08

*Interim Restructuring Relief Agreement*
*May 14, 2008*
*Page 5 of 5*

IN WITNESS WHEREOF, the parties have signed this Interim Restructuring Relief Agreement as of this 1st day of June, 2008.

FRONTIER AIRLINES, INC.

Sean Menke
President and Chief Executive Officer

FRONTIER AIRLINE PILOTS ASSOCIATION

John Stemmler
President

**LOA 17.4**

*Interim Restructuring Relief Agreement*
*May 14, 2008*
*Page 4 of 5*

## ATTACHMENT A

## INTERIM AGREEMENT ON PAY RATES

**THIS LETTER OF AGREEMENT AND ATTACHMENT A TO THE INTERIM RESTRUCTURING RELIEF AGREEMENT** is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between Frontier Airlines, Inc. (the "Company") and the Frontier Airline Pilots Association ("FAPA" or the "Association") and jointly hereinafter referred to as "the Parties."

Whereas, the Company has provided the Association with information indicating that the viability and competitiveness of the Company will be enhanced by the receipt of debtor in possession financing, and

Whereas, in order to help obtain such financing, the Company has requested immediate and interim pay reductions for all Company employees,

## THEREFORE, IT IS AGREED AS FOLLOWS:

1. Pilot Pay Reductions.

   A. Beginning with the June 20, 2008 paycheck and ending with the October 5, 2008 paycheck, hourly pay rates for all Pilots with at least one year of service with the Company will be reduced by subtracting fourteen and one half percent (14.5%) from the hourly rates of pay as set forth in the CBA. First Officers, while on the first step of the First Officer pay scale, shall have their hourly rate reduced by one percent (1%).

   B. Existing hourly pay rates as published in the CBA shall remain unchanged. These Hourly Rates will be reinstated when this Letter of Agreement becomes null and void unless otherwise agreed to by the Parties.

   C. Company matching contributions made to The Frontier Airlines, Inc. 401(k) Retirement Savings Plan will be suspended beginning with the June 20, 2008 paycheck. Matching contributions will be reinstated and included in Pilot paychecks beginning with the October 20, 2008 paycheck.

   D. In consideration of the interim modifications provided for in paragraph 1.A. and 1.C. above, the Company agrees that these modifications shall become effective only if all other employees of the Company identified in the Excel spreadsheet dated May 7, 2008, shared with FAPA leadership, and attached as Exhibit 1 to this Attachment A (the Spreadsheet), are subject to the compensation reductions specified in that spreadsheet. It is agreed and understood that the Company and other employee



**Collective Bargaining Agreement**                    06/01/08

*Interim Restructuring Relief Agreement*
*May 14, 2008*
*Page 5 of 5*

groups may reach the compensation reductions using different methodologies, including the Company's ability to seek judicial relief. If prior to September 30, the Company does not obtain the compensation reductions described in the Spreadsheet, the compensation reductions obtained pursuant to paragraphs 1.A and C above shall be calculated and treated as allowed administrative claims.

Interim Restructuring Relief Agreement Company Counter v2

**LOA 17.6**



**Collective Bargaining Agreement**

06/01/08

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**  06/01/08

# FRONTIER

Frontier Airlines, Inc.
Frontier Center One
7001 Tower Road
Denver, CO 80249

P 720 374 4200
F 720 374 4570

frontierairlines.com

Letter of Agreement 18

June 1, 2008

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

### Uniform Hats

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association")

The Company and the Association hereby agree that Section 2.A.1 of the CBA between the parties (the "Agreement") shall be amended to remove the requirement for Pilots to purchase a uniform hat, and to make such a purchase optional instead. The fourth sentence in Section 2.A.1 shall be amended to read as follows: "The Pilot shall purchase at least 1 tie, 1 uniform jacket, 1 pair of epaulets, 2 pair of trousers, and 4 shirts, and the Pilot may, at the Pilot's option, purchase a uniform hat."

Respectfully,

Cam Kenyon
Vice President Flight Operations

Agreed:
Captain John Stemmler
President
Frontier Airline Pilots Association

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**                    07/16/08

# FRONTIER.

Frontier Airlines, Inc.      P 720.374.4200      frontierairlines.com
Frontier Center One      F 720.374.4376
7001 Tower Road
Denver, CO 80249

**Letter of Agreement 19**

July 16, 2008

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

**Voluntary Long Term Leaves of Absence**

Dear Capt. Stemmler:

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association").

The Company and the Association hereby agree that Section 9 of the CBA between the parties (the "Agreement") shall be amended to:
1. Add a new Paragraph L as detailed below;
2. Re-label existing Paragraph L as Paragraph M;
3. Modify re-labeled Paragraph M to reflect new Paragraph L.

The new Paragraph L shall read as follows:

L. VOLUNTARY LONG TERM LEAVE OF ABSENCE (VLOA)

1. Unpaid VLOAs may be offered by the Company to active Pilots with the goal of reducing necessary furloughs.
2. The length of the VLOA, number of VLOAs to be awarded in each Position and minimum longevity to be eligible for the VLOA shall be determined by the Company.
3. VLOA Posting.
   a. VLOAs shall be posted for bid at all Domicile lounges, online and sent to FAPA offices not less than 10 days prior to closing (with the exception of the VLOA bid notice to be posted on 7/16/08, which shall be posted not less than 8 days prior to closing).



**Collective Bargaining Agreement**                    07/16/08

   b. The Company will specify any method(s) in addition to paper bidding that Pilots may use to submit a bid to be considered for an offered VLOA in each specific VLOA bid posting.
4. VLOA Closing.
   a. VLOAs shall be awarded by Position in seniority order.
   b. The results of each VLOA award shall be posted at all Domicile lounges, online, and sent to the Association offices no later than 24 hours after the VLOA bid closes.
   c. Once awarded, the Pilot may not withdraw from the VLOA unless the number of Pilots who bid for a particular VLOA is greater than the number of VLOAs offered and one of the Pilots who was not originally awarded a particular VLOA accepts the VLOA in place of the original awardee, and does so prior to the date on which the expected bid list is generated for the following Monthly Bid Period.
5. Protest Period. A Pilot shall have 72 hours from the close of the VLOA bid to protest the VLOA bid award.
6. Benefits during VLOA.
   a. Longevity: shall accrue for the duration of the leave.
   b. Sick Leave accrual: does not accrue.
   c. Sick Leave retention: for the duration of the leave.
   d. Vacation accrual: does not accrue.
   e. Vacation retention: for the duration of the leave. Due to Frontier's situation as of the date of this LOA, including the Chapter 11 bankruptcy, if the Pilot resigns or is otherwise terminated from the Company, the Company cannot guarantee that Accrued or Earned Vacation will be paid.
   f. Group health insurance (limited to medical, dental and vision): for the first six months of VLOA, the Pilot shall pay the employee contribution (in the same amount paid by an active employee with the same coverage) and the Company shall pay the employer contribution to the health insurance plan. Thereafter, for up to a maximum additional period of 18 months, the Pilot may elect to continue coverage by paying both the employee and employer contribution. In order for the Pilot to receive group health insurance coverage on a VLOA, the Company may require automatic deduction from the employee's bank account of the employee's applicable payment amount(s) and payment of a reasonable administrative fee, not to exceed $10.00, required for the Company to establish and maintain the automatic account deduction.
   g. Pass Benefits remain in place, except that pass privileges on other airlines (OAL) will be subject to any restrictions applicable to inactive employees under the respective reciprocal agreements between Frontier and OAL.
   h. The Pilot does not have the option to be paid from accrued sick leave.
   i. The Pilot does not have the option to be paid from Accrued or Earned Vacation.

2



**Collective Bargaining Agreement**                                07/16/08

    j.  The benefits as listed in this Paragraph 6 will be part of VLOAs, if any, offered on or before December 31, 2008. The parties agree to meet to discuss what benefits should be included for VLOAs, if any, offered by the Company after December 31, 2008.

7.  VLOA Period.

    a.  Offered VLOAs shall specify an initial duration for the VLOA ("VLOA Period") (e.g., 1 year, 18 months, 5 years, etc.).

    b.  During the awarded VLOA Period:

        i.  The Pilot may only return from the VLOA if required by the Company's staffing needs, and as further specified in Paragraph 8 below; and

        ii.  The Pilot may not be forced to return from the VLOA.

    c.  After the specified VLOA Period:

        i.  The Pilot may only return from the VLOA if required by the Company's staffing needs, and as further specified in Paragraph 8 below; and

        ii.  The Company may force the Pilot to return from the VLOA as further specified in Paragraph 8 below; and

        iii.  The VLOA Period will be extended automatically for a period of 6 months if at the time the VLOA Period expires the Company cannot provide the Pilot with a date-certain for the Pilot's return from VLOA. During a VLOA Period extension the Pilot may not be forced to return from the VLOA.

8.  Return from VLOA.

    a.  The Pilot's ability to return from a VLOA, during or after the VLOA Period, will depend on the Company's staffing requirements.

    b.  Voluntary return from VLOA:

        i.  If the Company needs additional First Officers or Captains to meet its staffing needs while any Pilot is on VLOA, the Company shall post a VSA for that Position in accordance with Section 6.

        ii.  In order to return from VLOA (whether during or after the VLOA Period), a Pilot must submit a dated and signed Master Bid Form indicating the Pilot's desire to bid for a posted VSA and make Positive Telephone Contact with the Chief Pilot or his designee confirming his desire to come back to work if awarded the VSA.

        iii.  VSAs shall be awarded in accordance with Section 6.

        iv.  If the Pilot was a Captain at the start of the VLOA and bids to return from the VLOA as a First Officer, the Pilot may not bid for a Captain VSA with an effective date less than 1 year from the successful completion of training as a First Officer and release to the line.

    c.  Forced return from VLOA:

        i.  A Pilot on a VLOA may only be forced to return from VLOA after the VLOA Period has expired.

3



    ii. A Pilot on a VLOA may not be forced to return from VLOA as a First Officer if the Pilot was a Captain at the start of the VLOA, unless the Pilot is forced to return in accordance with Section 9.L.10 and the Pilot's seniority would no longer allow that Pilot to hold a Captain Position.

    iii. After all Pilots have been recalled from furlough in accordance with Section 19, the Company may recall Pilots from any VLOA whose VLOA Period (or an extension of the VLOA Period as specified in Paragraph 7.c.iii) has expired. Pilots shall be involuntarily recalled from VLOA (after voluntary recall through the VSA process has been completed) in inverse order of seniority. A recall notice shall be sent via certified mail to their last known address and to the Association. The Company must receive, within 10 business days of the recall notice date, the Pilot's written notice of intent to return to Active Service. The Company may extend the period of time for a return to Active Service. A notified Pilot must return to Active Service on the date indicated by the Company or be removed from the Seniority List.

9. Pilots on VLOA shall be subject to potential furlough in accordance with Section 19.

10. Five and one-half years after the start of a Pilot's initial VLOA Period the Company shall send the Pilot a recall notice via certified mail to their last known address and to the Association. The Company must receive, within 10 business days of the recall notice date, the Pilot's written notice of intent to return to Active Service on the date specified by the Company for the return. The specified return date shall be within one month after the 6 year anniversary of the start of the Pilot's initial VLOA. A notified Pilot must agree to return, and actually return on the date specified, or be removed from the Seniority List.

11. A Pilot on a VLOA is responsible for:
    a. Providing the Company and the Association with current contact information.
    b. Monitoring online VSA postings in order to be able to submit a Master Bid for VSA postings the Pilot wishes to bid for.

The Company and the Association agree that existing Section 9.L of the Agreement shall be re-labeled as Section 9.M, and shall be amended to include an additional row as follows:

| VLOA | Yes | No | Yes | No | Yes, without a guarantee | For first 6 months | No | Yes | No |
|------|-----|-----|-----|-----|-------------|-------------|-----|-----|-----|

Finally, the Company and the Association hereby agree that Section 6 of the CBA between the parties (the "Agreement") shall be amended as follows:

4



**Collective Bargaining Agreement** 07/16/08

The first sentence of Section 6.A.5 shall be amended to read: "If the Company determines that it needs to hire Pilots, those SAs shall not be available for bid to Pilots on the Seniority List, other than Pilots covered by Section 3.F and 9.L."

Section 6.A.8 shall be amended to read: "If an SA is cancelled, the Pilot awarded such SA shall remain in their current Position. If an SA is cancelled and a Pilot was scheduled to return from VLOA based on the cancelled SA, the Pilot shall still return from VLOA on the date required for the originally posted SA."

Section 6.D.2 shall be amended to add the following sentence after the existing sentence: "A Pilot on a VLOA under Section 9.L who bids on a VSA in accordance with Section 9.L will be required to return from VLOA on the date directed by the Company in order to commence training for the associated VSA."

Section 6.D.4 shall be added as follows: "The number of Positions awarded in a VSA may be reduced by the number of Pilots returning from VLOA."

Respectfully,

*Cameron M. Kenyon*

Cam Kenyon
Vice President Flight Operations

Agreed: 
Captain John Stemmler
President

5

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**                    10/10/08

# FRONTIER

Frontier Airlines, Inc.       P 720.374.4200       frontierairlines.com
Frontier Center One           F 720.374.4015
7001 Tower Road
Denver, CO 80249

### Letter of Agreement 20

October 10, 2008

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO  80249

### Interim Restructuring Relief Extension Agreement (IRREA) LOA

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association") for the purpose of extending the expiration date of LOA 17 (Interim Restructuring Relief Agreement) through the end of the November 2008 Monthly Bid Period (includes December 1, 2008). All terms of the current CBA shall remain in full force and effect, except as modified in this Interim Restructuring Relief Extension Agreement (the "Interim Extension Agreement").

The Company has requested an extension of interim pay reductions for all Company employees.

### THEREFORE, IT IS AGREED AS FOLLOWS:

| | |
|---|---|
| **Effective Date** | October 1, 2008; provided that the agreements set forth herein shall be subject to approval by the Bankruptcy Court, which approval Frontier agrees to promptly seek. |
| **Duration** | This Interim Extension Agreement shall become null and void and of no further force and effect at the end of the November 2008 Monthly Bid Period (includes December 1, 2008), except as otherwise specifically provided herein. The parties agree to continue current discussions to discuss potential returns to FAPA and the Pilots as part of a permanent Restructuring Agreement. |
| **Revisions to Pay Rates and Pension Contribution** | Pay rates and Pension contributions in the CBA will be modified by the term of this Interim Extension Agreement as more fully set forth in Pilot Pay Reductions below. |
| **Financial Reporting** | The Company will provide FAPA with monthly, quarterly and |



**Collective Bargaining Agreement**                    10/10/08

annual operating statistics, financial information and projected results (as well as any other operating or financial information reasonably requested) for the duration of this Interim Extension Agreement in order to track the Company's performance relative to its Restructuring Plan.

**Fragmentation**

The Company and FAPA agree to meet and discuss protective language to provide Pilot employee protection in the event of the sale of any significant number of aircraft in the service of the Company.

**Restructuring Negotiations Expenses**

In recognition of efforts made at Company request during the preparations, negotiations and ratification process for Pilot contributions to assist the Company in its restructuring efforts, the Company agrees to pay or reimburse FAPA for the following:

A.  Up to 40 hours per month of Flight Pay Loss incurred by Negotiating Team Members to prepare for negotiations (without the Company), and any additional Flight Pay Loss necessary to participate in meetings to discuss this Agreement with the Pilots prior to a ratification vote by the Pilots; and

B.  Payment of hotel meeting rooms for the purpose of the meetings referenced in A above, but not to exceed a total maximum of $4000.

**Unsecured Claim**

Upon the Effective Date of this Interim Extension Agreement, FAPA will have an allowed general non-priority unsecured claim under section 502 of the Bankruptcy Code in the Company's Bankruptcy Case in the amount of $7,100,000 (the "FAPA Claim") that is not subject to reconsideration under section 502 of the Bankruptcy Code or otherwise, in respect of the concessions made by FAPA under this Interim Extension Agreement and the previous Interim Restructuring Relief Agreement between the Company and FAPA.  None of FAPA nor any of the pilots that it represents nor any other party shall have any other claim or cause of action on account of this Interim Extension Agreement or the previous Interim Restructuring Relief Agreement.  Any transfer of all or any part of the FAPA Claim prior to the Company's exit from bankruptcy may only be made in compliance with the Final Order Establishing Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates entered by the Bankruptcy Court on June 3, 2008.  FAPA will

2



**Collective Bargaining Agreement**                10/10/08

have the sole authority and responsibility to determine the manner of allocation among pilots on account of the FAPA Claim, including the allocation of any equity securities on account of the FAPA Claim, *provided* that the allocation schedule or formula is delivered to the Company no later than thirty (30) days prior to the date of distribution.

**Pilot Pay Reductions**

A.   Continuing with the October 20, 2008 paycheck and ending with the December 5, 2008 paycheck, hourly pay rates for all Pilots with at least one year of service with the Company will be reduced by subtracting fourteen and one half percent (14.5%) from the hourly rates of pay as set forth in the CBA. First Officers, while on the first step of the First Officer pay scale, shall have their hourly rate reduced by one percent (1%).

B.   Existing hourly pay rates as published in the CBA shall remain unchanged. These Hourly Rates will be reinstated when this Letter of Agreement becomes null and void unless otherwise agreed to by the Parties.

C.   Company matching contributions made to The Frontier Airlines, Inc. 401(k) Retirement Savings Plan will continue being suspended beginning with the October 20, 2008 paycheck. Matching contributions will be reinstated and included in Pilot paychecks beginning with the December 20, 2008 paycheck.

D.   In consideration of the interim extension modifications provided for in paragraph A. and C., above, the Company agrees that these modifications shall become and remain effective only if all other employees of the Company are subject to similar continuing compensation reductions, as specified in LOA 17, for the duration of this agreement. It is agreed and understood that the Company and other employee groups may reach the compensation reductions using different methodologies, including the Company's ability to seek judicial relief.

Respectfully,

*Cameron M. Kenyon*

Cam Kenyon
Vice President Flight Operations
Frontier Airlines

Agreed: _____

Captain John Stemmler
President
Frontier Airline Pilots Association

3

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

## Collective Bargaining Agreement                    12/20/08

**FRONTIER**

Frontier Airlines, Inc.      P 720 374 4200      flyfrontier.com
Frontier Center One          F 720 374 4375
7001 Tower Road
Denver, CO 80249

Letter of Agreement 21

December 20, 2008

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

### Restructuring Participation Agreement LOA

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association," or "FAPA") for the purpose of implementing a long term restructuring agreement. All terms of the current CBA shall remain in full force and effect, except as modified by this Restructuring Participation Agreement (the "Restructuring Agreement").

### THEREFORE, IT IS AGREED AS FOLLOWS:

#### A. Effective Date

As of January 1, 2009, provided that the agreements set forth herein shall be subject to approval by the Board of Directors of the Company and the Bankruptcy Court, which approval the Company agrees to promptly seek.

#### B. Duration

This Restructuring Agreement shall become effective on and as of January 1, 2009, and shall remain in full force and effect until March 2, 2012, and shall renew itself without change each succeeding March 2, thereafter unless written notice of intended change is served in accordance with Section 6, Title I of the Railway Labor Act, as amended, by the Association up to twelve (12) months prior to March 2, 2012, or by either party hereto at least ninety (90) calendar days prior to the date the parties may commence negotiations of a subsequent anniversary of such date, unless the parties agree otherwise.

#### C. Restructuring Negotiations Expenses

*A whole different animal.*



**Collective Bargaining Agreement**                    12/20/08

**FRONTIER**

Frontier Airlines, Inc.        P 720-374-4200        www.frontier.com
Frontier Center One          F 720-374-4375
7001 Tower Road
Denver, CO 80249

In recognition of efforts made at the Company's request during the preparations, negotiations, and ratification process for pilot contributions to assist the Company in its restructuring efforts, the Company agrees to the following:

1  Pay or reimburse the Association for up to 40 hours per month of Flight Pay Loss incurred by Negotiating Team members to prepare for negotiations (without the Company), and any additional Flight Pay Loss necessary to participate in meetings to discuss this Restructuring Agreement with Pilots prior to a ratification vote by the Pilots; and

2. The Company agrees to reimburse the Association directly for the reasonable professional fees incurred by the Association to advise the Association during the negotiations of this Restructuring Agreement (the "Fees"). Reimbursement of the Fees shall be capped at $100,000. Reimbursement of the Fees is contingent upon (1) ratification of this Restructuring Agreement; and (2) the submission of invoices with proof of the Association payment of the Fees.

### D. Unsecured Claim

Upon the Effective Date of this Agreement, the Association will have an allowed general non-priority unsecured claim under section 502 of the Bankruptcy Code in the Company's Bankruptcy Case in the amount of $28,957,432 (the "FAPA Claim") that is not subject to reconsideration under section 502 of the Bankruptcy Code or otherwise, in respect of the concessions made by the Association under this Agreement, the Interim Restructuring Relief Agreement, and the Interim Restructuring Relief Extension Agreement (and any extension thereto) between the Company and the Association; provided, however, that if the Association pay rates are restored to those set forth in the CBA sooner than March 2, 2012 pursuant to the paragraph below entitled "Restoration of Pre-Concession Pay Rates", then the FAPA Claim will be adjusted downward by the amount of the incremental amounts paid as a result thereof (or, if not feasible, the Company and the Association will agree on an equivalent true-up mechanism). None of FAPA nor any of the pilots that it represents nor any other party shall have any other claim or cause of action on account of this Restructuring Agreement, the Interim Restructuring Relief Agreement, or the Interim Restructuring Relief Extension Agreement (or any extension thereto). Any transfer of all or any part of the FAPA Claim prior to the Company's exit from bankruptcy may be made only in compliance with the Final Order Establishing Procedures and Approving Restrictions on Certain Transfers of Claims Against and Interests in the Debtors' Estates entered by the Bankruptcy Court on June 3, 2008. The Association will have the sole authority and responsibility to determine the manner of allocation among pilots on account of the FAPA Claim, including the allocation of any equity or other securities on account of the FAPA Claim. The allocation schedule or formula shall be delivered to the Company no later than thirty (30) days prior to the date of distribution.

### E. Profit Sharing Plan

*A whole different animal.*

**FAPA**

### Collective Bargaining Agreement                12/20/08

**FRONTIER**

Frontier Airlines, Inc.
Frontier Center One
7001 Tower Road
Denver, CO 80249.

Frontier will seek subsequent court approval for a post-emergence profit sharing plan to include eligible Pilots (including any on a Leave of Absence) that would be applicable so long as Frontier emerges from Chapter 11 as a stand-alone entity. Such plan would have the following or substantially similar terms:

1   Participation for all eligible employees in a Profit Sharing Pool of 10% of Pre-Tax Earnings (excluding special items) on Pre-Tax Earnings up to $10MM, and 15% on the portion of Pre-Tax Earnings above $10MM earned during each fiscal year through FY 2012.

2   The Profit Sharing Pool would be allocated among eligible employees on a pro-rata basis based on each employee's W-2 earnings during the relevant fiscal year.

3   Distributions would be accomplished no later than the end of each July for the previous fiscal year's Profit Sharing Pool. To be eligible to take part in the Profit Sharing Pool for a given fiscal year, an employee:

   a   Must be employed by the Company, or on an approved Leave of Absence, on the last day of the fiscal year for which the profit sharing applies, and

   b   Must have been employed by the Company (including on an approved Leave of Absence) for at least one full year of service as of the last day of the fiscal year for which the profit sharing applies

### F. Pilot Pay Reductions

1   Commencing with the January 20, 2009 paycheck and ending with the January 5, 2011 paycheck, hourly pay rates for all Pilots with at least one year of service with the Company will be reduced by subtracting ten percent (10%) from the hourly rates of pay as set forth in the CBA. First Officers, while on the first step of the First Officer pay scale, shall have their hourly rate reduced by one percent (1%).

2   Commencing with the January 20, 2011 paycheck and ending with the July 5, 2011 paycheck, hourly pay rates for all Pilots with at least one year of service with the Company will be reduced by subtracting seven percent (7%) from the hourly rates of pay as set forth in the CBA

3   Commencing with the July 20, 2011 paycheck and ending with the January 5, 2012 paycheck, hourly pay rates for all Pilots with at least one year of service with the Company will be reduced by subtracting four percent (4%) from the hourly rates of pay as set forth in the CBA

4   Commencing with the January 20, 2012 paycheck, hourly rates for all Pilots with at least one year of service with the Company will be restored to the Hourly Rates as set forth in the CBA.

5   These hourly rates are further defined in Appendix A to this LOA 21.

*A whole different animal.*



**Collective Bargaining Agreement**                                    05/08/09

**FRONTIER**

Frontier Airlines, Inc.        P 720 374 4200      fromtineairlines.com
Frontier Center One           F 720 374 4319
7001 Tower Road
Denver, CO 80249

### G. Restoration of Pre-Concession Pay Rates

If, during the term of the Collective Bargaining Agreement, the Company, as part of an amendment to any collectively bargained agreement providing for long-term concessions, agrees to restore in full and effective prior to March 2, 2012, the wages of the members of the relevant union to the scales set forth in the relevant pre-amendment collective bargaining agreement, then the FAPA CBA "Book" Rates shall be restored.

### H. 401K

1.  Effective with the January 20, 2009 paycheck, there shall be no Company match to the 401K Plan (as described in Section 16 B.2);

2.  Effective with the January 5, 2010 paycheck, the Company shall match thirty percent (30%) of each Pilot's pre-tax contribution to the 401(k) plan, subject to all regulatory limitations, not to exceed 3% of the Pilot's Eligible Compensation for the applicable period. For the 2010 plan year, the combined Company match and True-Up shall not exceed 3% of the Pilot's Eligible Compensation for that year, subject to all regulatory limitations;

3.  Effective with the January 5, 2011 paycheck, the Company match as described in Section 16. B.2. and True-Up as described in Section 16.B.2. shall be restored;

4.  In the event the Board of Directors reinstates the Company 401(k) match for any employees, pilots shall have their Company match restored to the greater of the restoration amount approved by the Board of Directors or the match in effect for Pilots at the time of reinstatement.

Respectfully,

_____              Agreed: _____
Chris Collins                                                          Captain John Stemmler
Executive Vice President & Chief Operating Officer      President
Frontier Airlines                                                    Frontier Airline Pilots Association

*A whole different animal.*



**Collective Bargaining Agreement**                                    12/20/08

# FRONTIER

Frontier Airlines, Inc.
Frontier Center One
7001 Tower Road
Denver, CO 80249

F 720 374 4200
F 720 374 4375

frontierairlines.com

## Appendix A : Pay Rate Tables

| Longevity | Captain | First Officer |
|---|---|---|
| Year | 1/1/2009 | |
| 1 | $100.23 | $36.30 |
| 2 | $101.12 | $57.34 |
| 3 | $105.68 | $65.38 |
| 4 | $111.62 | $69.05 |
| 5 | $115.30 | $73.60 |
| 6 | $121.98 | $75.44 |
| 7 | $124.32 | $76.90 |
| 8 | $127.18 | $78.67 |
| 9 | $125.45 | $80.07 |
| 10 | $131.73 | $81.49 |
| 11 | $134.06 | $82.93 |
| 12 | $136.43 | $84.39 |
| 13 | $138.55 | $84.39 |
| 14 | $140.65 | $84.39 |

| Longevity | Captain | First Officer |
|---|---|---|
| Year | 3/2/2010 | |
| 1 | $101.23 | $36.67 |
| 2 | $102.12 | $57.92 |
| 3 | $106.73 | $66.03 |
| 4 | $112.73 | $69.74 |
| 5 | $120.60 | $74.54 |
| 6 | $123.19 | $76.19 |
| 7 | $125.56 | $77.66 |
| 8 | $128.45 | $79.45 |
| 9 | $130.74 | $80.87 |
| 10 | $133.06 | $82.31 |
| 11 | $135.40 | $83.75 |
| 12 | $137.80 | $85.24 |
| 13 | $139.93 | $85.24 |
| 14 | $142.06 | $85.24 |

| Longevity | Captain | First Officer |
|---|---|---|
| Year | 1/1/2011 | |
| 1 | $104.61 | $37.04 |
| 2 | $105.53 | $59.85 |
| 3 | $110.29 | $68.23 |
| 4 | $116.49 | $72.07 |
| 5 | $124.62 | $77.02 |
| 6 | $127.30 | $78.73 |
| 7 | $129.74 | $80.25 |
| 8 | $132.73 | $82.10 |
| 9 | $135.10 | $83.57 |
| 10 | $137.49 | $85.06 |
| 11 | $139.91 | $86.55 |
| 12 | $142.35 | $88.08 |
| 13 | $144.60 | $88.08 |
| 14 | $146.79 | $88.08 |

| Longevity | Captain | First Officer |
|---|---|---|
| Year | 3/2/2011 | |
| 1 | $106.18 | $37.59 |
| 2 | $107.11 | $60.74 |
| 3 | $111.94 | $69.26 |
| 4 | $118.24 | $73.14 |
| 5 | $126.38 | $78.18 |
| 6 | $129.21 | $79.91 |
| 7 | $131.69 | $81.46 |
| 8 | $134.72 | $83.34 |
| 9 | $137.13 | $84.83 |
| 10 | $139.55 | $86.32 |
| 11 | $142.01 | $87.85 |
| 12 | $144.52 | $89.40 |
| 13 | $146.76 | $89.40 |
| 14 | $149.00 | $89.40 |

| Longevity | Captain | First Officer |
|---|---|---|
| Year | 7/1/2011 | |
| 1 | $109.60 | $37.59 |
| 2 | $110.56 | $62.70 |
| 3 | $115.56 | $71.49 |
| 4 | $122.05 | $75.50 |
| 5 | $130.45 | $80.70 |
| 6 | $133.38 | $82.49 |
| 7 | $135.94 | $84.09 |
| 8 | $139.07 | $86.03 |
| 9 | $141.55 | $87.56 |
| 10 | $144.05 | $89.11 |
| 11 | $146.59 | $90.68 |
| 12 | $149.18 | $92.28 |
| 13 | $151.50 | $92.28 |
| 14 | $153.80 | $92.28 |

| Longevity | Captain | First Officer |
|---|---|---|
| Year | 1/1/2012 | |
| 1 | $114.17 | $37.59 |
| 2 | $115.17 | $65.31 |
| 3 | $120.37 | $74.47 |
| 4 | $127.14 | $78.65 |
| 5 | $135.89 | $84.06 |
| 6 | $138.94 | $85.93 |
| 7 | $141.60 | $87.59 |
| 8 | $144.86 | $89.61 |
| 9 | $147.45 | $91.21 |
| 10 | $150.05 | $92.82 |
| 11 | $152.78 | $94.46 |
| 12 | $155.40 | $96.13 |
| 13 | $157.81 | $96.13 |
| 14 | $160.21 | $96.13 |

*A whole different animal.*

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**

12/22/08

**FRONTIER**

Frontier Airlines, Inc.
Frontier Center One
7001 Tower Road
Denver, CO 80249

P 720.374.4200
F 720.374.4375

Frontierairlines.com

Letter of Agreement 22

December 22, 2008

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

### Re: Interim Restructuring Relief Extension Agreement -- 401(k) Savings Plan

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association" or "FAPA") with respect to the Interim Restructuring Relief Extension Agreement LOA, Pilot Pay Reductions Paragraph C, which provides for the reinstatement of the Company match to the Pilots' 401(k) Savings Plan.

The Company and the Association hereby agree to reinstate the Company match to the 401(k) plan for the pay periods covering December 1, 2008 to December 15, 2008, and December 16, 2008 to December 31, 2008, as set forth in the Interim Restructuring Relief Extension Agreement LOA. However, due to the extensive programming required to separate out the Pilot 401(k) information from the rest of the employee groups, the Company is unable to show these contributions on the Pilots' paychecks. The Company will send a letter to each Pilot who contributes to the 401(k) plan and is eligible for the Company match that indicates the amount that was contributed to that Pilot's account for both of the above listed pay periods. This letter will be mailed no later than the week of January 12, 2009. The contributions will be made no later than January 5, 2009 for the December 19, 2008 paycheck and January 12, 2009 for the January 5, 2009 paycheck.

Respectfully,

Chris Collins
Executive Vice President &
Chief Operating Officer

Agreed:
Captain John Stemmler
President
Frontier Airlines Pilots Association

*A whole different animal.*

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    03/09/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

March 9, 2009

Letter of Agreement 23

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Vacation Slide Clarifications

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that Vacation periods may be slid as long as they don't create additional splits of Sequences. (New language italicized for purposes of this LOA only.)

Section 8.F.1. shall be changed to read:

"A Pilot may slide his vacation period plus or minus 3 Calendar Days provided the slide does not create an *additional Sequence split. (Examples: if a vacation, as awarded, splits a Sequence, the Pilot may slide the vacation and change where the split occurs, or slide the vacation to split a different Sequence. In either case, the slide may not create a greater number of splits than would have been required if the Pilot had not slid the vacation. In addition, if the vacation only covers part of a Sequence but the Sequence must be dropped in its entirety (i.e. one leg back to Domicile from an outstation) that shall not be considered a split.)* A Pilot shall not be permitted to slide a vacation period between Monthly Bid Periods."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

## Collective Bargaining Agreement

03/09/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

March 9, 2009

Letter of Agreement 24

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Monthly Open Time Clarifications

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the Monthly Open Time process for Pilots under the Monthly Pay Guarantee ("super seniority"). (New language italicized for purposes of this LOA only.)

The following changes to paragraphs in Section 5 shall be made:

> The second sentence in Section 5.1.2. shall read: "When a Pilot falls below the Monthly Pay Guarantee due to Transition Conflicts, he shall have priority, in seniority order, over all other Pilots during the Monthly Open Time bids until reaching the Monthly Pay Guarantee.

> Section 5.M.3. shall read: "Pilots will bid according to Seniority and may bid for as many Sequences as they like. Open Time will first be awarded in rounds by Seniority to Pilots who are below the Monthly Pay Guarantee at the start of MOT due to the Transition Conflicts, until reaching the Monthly Pay Guarantee. Swaps during this process shall only be considered if they would result in a net increase in Pay Credit. If a Pilot submits a single bid request that contains multiple Sequences and not all the Sequences are required to raise the Pilot to the Monthly Pay Guarantee, the bid request shall not be awarded in this process. Bid awards will then be conducted until all the Monthly Open Time is awarded or until there are no further bids that can be satisfied by the Monthly Open Time.

To clarify the Swap process during Monthly Open Time, Section 5.M.7. shall be added to read:

> During Monthly Open Time, Pilots may Swap and Add. Portions of Swaps that do not overlap are subject to the Daily Drop Limit as specified in Paragraph L.4. and M.2.. However, for individual days of a Sequence that overlap with a Swapped Sequence, the Daily Drop Limit or the limitations of Paragraphs L.4. and M.2. shall not apply.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

---

**Frontier Airlines Pilots Association**

**LOA 24.1**

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    03/09/09

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

March 9, 2009

Letter of Agreement 25

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Reserve Clarifications

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify RDPs for Reserve Pilots following completion of an assignment. (New language italicized for purposes of this LOA only.)

The following changes to paragraphs in Section 5 shall be made:

> Section 5.Q.3. shall read: "When a Reserve Pilot completes an assignment he must contact Crew Scheduling for release *(from duty or back to his RDP in accordance with Paragraph 10. and 11. below)* or a new assignment.

> The remainder of Section 5.Q.3. shall be renumbered to 5.Q.4., Section 5.Q.4. shall be renumbered to 5.Q.5., and the reference to Section 5.Q.4.d. in Appendix 5 shall be changed to: "5.Q.5.d."

> Section 5.S.10. shall read: "If the Pilot completes the assignment within his scheduled RDP, any new assignment must be in accordance with Paragraph Q. and S. and the total Duty Period must be less than 14 hours. If Crew Scheduling does not have a new assignment, the Pilot shall remain on duty for the remainder of the scheduled RDP (not to exceed 14 hours duty) under the normal Reserve provisions of this Section, including telephone availability and 2 hour notification. *For the purposes of this paragraph, the Pilot's scheduled RDP is the last RDP that he was scheduled for (and notified of) in accordance with the provisions of this Section prior to being notified of this assignment. Example: A reserve Pilot is notified that his RDP on Friday has been changed from a 'B' RDP to an 'A' RDP. After this notification of the RDP change the Pilot is assigned and notified of a Sequence which is scheduled to end on Friday at 0700 which is within the 'A' RDP. The Pilot then reports for and completes the assignment as scheduled. In this case the Pilot has completed his assignment within his scheduled RDP.*"

> Section 5.S.11. shall read: "If the Pilot completes the assignment outside of his scheduled RDP, the Pilot shall be released until the next scheduled RDP in accordance with Paragraph 3. above. *For the purposes of this paragraph, the Pilot's scheduled RDP is the last RDP that he was scheduled for (and notified of) in accordance with the provisions of this Section prior to being notified of this assignment. Example: A reserve Pilot is notified that his RDP on Friday has been changed from a 'B' RDP to an 'A' RDP. After this notification of the Pilot is assigned and notified of a Sequence which is scheduled to end on Friday at 1730 - after the end of the 'A' RDP. The Pilot then reports for and completes the assignment as scheduled. In this case the Pilot has completed his assignment outside of his scheduled RDP.*"



**Collective Bargaining Agreement**                    03/09/09

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX 720-374-2027 • email@f9fapa.org

To clarify procedures related to Pilots available for less than 15 days during a Monthly Bid Period,
Section 5, paragraph E.2.a. shall be changed to read:

"If the Pilot is available for less than 15 days during the Monthly Bid Period, the Pilot
shall not be allowed to bid. The Pilot shall be assigned Reserve Duty Periods (RDP's)
in the Window of his choosing with at least one block of 3 days off. *With the
concurrence of Crew Scheduling, the Pilot may choose Long Call or Medium Call
Reserve in lieu of choosing an RDP.* The total number of days off shall be prorated in
accordance with Paragraph J.14 with no single days off (unless required by the
proration table below). This shall also apply if the Pilot subsequently becomes
available for more than 15 days during the Monthly Bid Period after the Line Bids
have already been awarded."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed
Captain Jim Colquin
Director of Operations
Frontier Airlines, Inc.

**FAPA**

## Collective Bargaining Agreement

03/09/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE · STE 140 · DENVER CO 80249
303-373-0137 · FAX 720-374-2027 · email@5fapa.org

March 9, 2009

Letter of Agreement 26

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

**Emergency Leave Modification**

Dear Captain Colburn

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to allow Pilots to use Emergency Leave while serving an FAA suspension. (New language italicized for purposes of this LOA only.)

Section 9 E. shall be changed to read:

E. EMERGENCY LEAVE OF ABSENCE

1. The Company shall grant an Emergency Leave of Absence in cases of serious emergencies. Examples include but are not limited to fires, floods, etc. affecting a Pilot's household, a serious accident or incident involving a Pilot's family member, *or an FAA suspension*. The Company shall retain the authority to limit the number of such leaves granted during a given time period so as to avoid interruption to its operations. *The Company shall retain the authority to approve or deny Emergency Leave of Absence for FAA suspension.*

2. Emergency Leaves of Absence shall be granted for periods of up to 7 consecutive Calendar Days. The Company, at its discretion, may grant longer periods of leave where appropriate.

3. Longevity: shall accrue for the duration of the leave.

4. Sick Leave accrual: only for the first 30 days of the leave.

5. Sick Leave retention: for the duration of the leave.

6. Vacation accrual: only for the first 30 days of the leave.

7. Vacation retention: for the duration of the leave, except for any vacation used to pay for the leave.

8. Group health insurance: the Pilot shall pay the employee contribution and the Company shall pay the employer contribution to the health insurance plan for the duration of the leave.

9. Pass Benefits: no change, *except as required by any FAA suspension.*

10. The Pilot does not have the option to be paid from accrued sick leave.

11. This leave shall be unpaid unless the Pilot opts to be paid from Accrued or Earned Vacation.

In addition, the margin note referring to Emergency Leave shall be changed to read:

Emergency Leave up to 7 days (or longer at Company discretion). May be paid from Vacation.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    03/09/09

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18000 E 71ST AVE • STE 140 • DENVER, CO 80249
303-375-0137 • FAX: 720-374-2027 • email@f9fapa.org

March 9, 2009

Letter of Agreement 27

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Reduced Rest Clarifications

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify procedures related to reduced rest. (New language italicized for purposes of this LOA only.)

Section 5, paragraph J.10. shall be changed to read:

"Sequences shall not be constructed with reduced rest. However, to accommodate the change from Standard Time to Daylight Savings Time, Sequences that would otherwise be scheduled for normal rest may be scheduled with reduced rest on the overnight of the DST change. If reduced rest is incurred due to operational irregularity (i.e. weather or maintenance delay), the reduced rest shall begin at the completion of the duty period (15 minutes after Block In for domestic flights, 30 minutes after Block In for international flights in accordance with Section 5, paragraph J.5.b.). However, the minimum rest required by FAR 121.471(c) shall be augmented by 30 minutes (e.g., if the applicable FAR reduced rest is 8 hours, the crew will be provided with 8 hours and 30 minutes of rest). If a crew wishes to reduce to FAR minimums or, alternately, desires additional rest due to greater than normal transportation time to a CBA required hotel, the Pilot shall contact Crew Scheduling via telephone to coordinate the subsequent Report Time. In the event of any disagreement between the Pilot and Crew Scheduling regarding the Pilot's desire for additional rest, Crew Scheduling shall defer to the Pilot and the issue shall be referred to the Chief Pilot or his designee."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

---

**Frontier Airlines Pilots Association**                    **LOA 27.1**

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    03/09/09

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

March 9, 2009

Letter of Agreement 28

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Training Pay Clarifications

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that pay calculations for training events are done with respect to each event separately rather than looking at net Pay Credits or days off. (New language italicized for purposes of this LOA only.)

Section 4.M.2. shall be changed to read:

> "Line Qualified Pilots, when scheduled for training other than transition or upgrade training, will be Pay Credited at the rate of 4 hours per training day. If on a Reserve Pilot's Day Off, this will be in addition to the Guarantee. When this training is scheduled on a flying or Reserve day, the Pilot will be Pay Credited for the Scheduled Sequence(s) or 4 hours per day, whichever is greater. The Pilot shall be pay protected for any Pay Credits dropped for training. *(For example: A Pilot is scheduled to fly a 3-day Sequence worth a total of 15 Pay Credits on days 1, 2, 3. He attends Recurrent Ground School on days 1 and 2 that requires the entire Sequence to be dropped. He also attends a PC on day 5. The Pilot shall be Pay Credited for the Sequence (15 Pay Credits is greater than the 8 Pay Credits for the two days of training that replaced the Sequence). He shall additionally be Pay Credited 4 hours for the PC as it is not on a flying or Reserve Day.)* Should the Pilot pick up Open Time on the day(s) the Pay Credits were lost, the Pilot shall be Pay Credited for the greater of the Pay Credits lost or the Pay Credit value of the Open Time award."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**                    03/20/09

**FRONTIER**

Frontier Airlines, Inc.      P 720.374.4200      frontierairlines.us
Frontier Center One         F 720.374.4375
7001 Tower Road
Denver, CO 80249

Letter of Agreement 29

March 20, 2009

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E 71st Avenue, Suite 140
Denver, CO 80249

**Voluntary Leave of Absence (VLOA) Swaps**

Dear Captain Stemmler,

This letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. (the "Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association") for the purpose of creating a procedure to allow Pilots to swap VLOA awards. We recognize that there are Pilots who are currently on VLOA who wish to return to active service and, alternately, there are Pilots who are on active service who wish to be on VLOA. In an attempt to accommodate these Pilots while limiting the additional cost to the Company we agree to conduct a one-time VLOA Swap. That is, we will allow currently active Pilots to "assume" VLOAs of Pilots currently on VLOA status and allow the corresponding Pilots on VLOA status to return to active status in their place.

The following procedures will be used to complete the VLOA Swap:

**A. Phase 1 – Conditional VLOA (CVLOA)**
1. Any Pilot who wishes to be awarded a VLOA must be eligible to bid for the May 2009 Monthly Bid Period and submit a signed and dated, or electronic, Conditional VLOA Request Form to the Chief Pilot no later than Noon MDT April 3, 2009. A copy of this form is attached to this Letter of Agreement and available on www.f9fapa.org. Acceptance of this form by the Chief Pilot will constitute an award of a Conditional VLOA and each Conditional VLOA will create an associated Conditional Voluntary Staffing Adjustment (CVSA) in the VLOA Swap bid.
2. By submitting this Conditional VLOA Request Form a Pilot is making his Position available for bid to Pilots who are on a VLOA and is, consequently, agreeing to assume the VLOA of the Pilot with whom he swaps with the following exceptions:
   a. The assumed VLOA Period for the purposes of Section 9.L. shall be until October 31, 2011, and
   b. For group health insurance for the period of May 2, 2009 through May 31, 2009, the Pilot shall pay the employee contribution (in the same amount paid by an active employee with the same coverage) and the Company shall pay the employer contribution to the health insurance plan, and Thereafter, for up to a maximum additional period of 18 months, the Pilot may elect to continue coverage by paying both the employee and employer contribution. In order for the Pilot to receive group health insurance coverage on a VLOA, the Company may require automatic deduction from the employee's bank account of the employee's applicable payment amount(s) and payment of a reasonable administrative fee, not to exceed $10.00, required for the Company to establish and maintain the automatic account deduction, and



**Collective Bargaining Agreement**                                    03/20/09

      c. For the purposes of Section 9.L.10., the start of the VLOA shall be considered as November 1, 2008.

3. If no Pilot who is currently on VLOA bids for and is awarded the CVSA during the VLOA Swap Bid, the associated Conditional VLOA will be cancelled.
4. If a Pilot wishes to withdraw a Conditional VLOA bid, he must do so by providing written notice to the Chief Pilot prior to the close of the VLOA Swap bid.

## B. Phase 2 – VLOA Swap Bid

1. For each Conditional VLOA, the associated Conditional Voluntary Staffing Adjustment (CVSA) shall be included in the VLOA Swap bid.
2. CVSAs will only be available for bid to Pilots who are currently on a VLOA.
3. If a Pilot who is currently on VLOA bids for and is awarded a CVSA, he will "swap" status with the Pilot associated with that CVSA, i.e., the Pilot on VLOA will return from the VLOA at the start of training and the Pilot who is currently active will assume the VLOA held by the Pilot on the VLOA.
4. The VLOA Swap bid notice shall include the following information:
   a. Open and Close dates of the bid.
   b. Individual CVSAs available for bid including Position (Captain or First Officer) and required return date.
   c. List of Pilots on VLOA (i.e., those Pilot eligible to participate in the VLOA Swap bid).
5. A Pilot who began a VLOA as a Captain may bid for and be awarded either a Captain or First Officer CVSA, unless a Pilot who is senior to the VLOA Pilot has been subject to an ISA from Captain to First Officer, in which case the VLOA Pilot may only bid for and be awarded a First Officer CVSA and shall have rights under Section 6.E.2. from the ISA would have been subject to, but shall not be subject to the seat lock in Section 9.L.8.b.4). A Pilot who began a VLOA as a First Officer may only bid for and be awarded a First Officer CVSA.
6. A Pilot who submits a VLOA Swap bid must indicate his CVSA bid preferences in priority order and will not be awarded any CVSA that he did not specifically request in his bid.
7. The VLOA Swap bid shall be awarded in Seniority order among Pilots who are currently on a VLOA.
8. The VLOA Swap bid award shall be posted no more than 48 hours after the bid close. The award shall include the following information:
   a. List of Pilots awarded CVSAs, including the required return dates.
   b. List of Pilots who have been awarded VLOAs including the start date and end dates of the VLOA.
   c. List of Pilots who were not awarded VLOAs and, therefore, have had their Conditional VLOAs cancelled.
9. If a Pilot on VLOA status is awarded a CVSA he is required to be available for duty on the date specified for that CVSA
10. Starting with the day the Pilot begins training, a Pilot awarded a CVSA shall be paid in accordance with Section 4.M.

## C. Process Example

1. Assume that 3 Captains and 10 First Officers wish to be awarded VLOAs and submit Conditional VLOA request forms as outlined in A.1., above.
2. Conditional Voluntary Staffing Adjustments (CVSAs) will be posted that correspond to these Conditional VLOAs. Return date of April 14, 2009 is based on the need for training prior to the commencement of the bid period
3. Assume that 4 Captains and 2 First Officers who are currently on VLOA submit bids for these CVSAs as follows:



**Collective Bargaining Agreement**                                                03/20/09

| Pilot | Position | Bid (Priority Order) |
|-------|----------|----------------------|
| A | Captain | Captain |
| B | Captain | Captain, First Officer |
| C | Captain | Captain, First Officer |
| D | Captain | Captain, First Officer |
| E | First Officer | First Officer |
| F | First Officer | First Officer |

4. In this example, Pilots A, B and C are awarded Captain CVSAs. Pilots D,E and F are awarded First Officer CVSAs. (If Pilot D had not listed First Officer as an option, he would not be awarded a CVSA and would remain on his VLOA.)

5. Since only 3 First Officer CVSAs were awarded, the junior 7 active First Officer Conditional VLOA awards are cancelled.

### D. Disputes

The Company and the Association agree that it is in the best interest of our Pilots to allow the swapping of VLOA's. We also agree that it is in the best interest of the Company to complete the swap in the most efficient and cost-effective manner possible. We recognize that the process outlined above differs from the VLOA award and return processes outlined in LOA 19 and Section 9.L. of our CBA and agree to these exceptions only for the purpose of awarding this VLOA Swap. The Company and the Association have met to ensure compliance with the Agreement between Frontier Airlines, Inc. and the Airline Pilots in the Service of Frontier Airlines, Inc., as represented by the Frontier Airline Pilots Association ("CBA"), as it relates to the above amended VLOA award. The Association agrees that if, in the sole judgment of the Association, the Company has followed the terms of this Agreement, the Association will not present to the Company any grievances submitted to the Association by the aggrieved Pilot whose dispute has been denied by the Company under Section 12 of the CBA.

Respectfully,

Captain Jim Colburn
Director of Operations

Agreed:

Captain John Stemmler
President
Frontier Airline Pilots Association

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**

04/06/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

April 6, 2009

Letter of Agreement 30

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

LOA Distribution Extension

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to allow for an extension to the timeline requirement for distributing timelines in Section 2.H.2. Due to the large number of LOAs signed at one time, FAPA hereby gives relief to the Company to have LOAs 23-28 distributed to Pilot "V" files by 4/16/09.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement** 04/06/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX. 720-374-2027 • email@f9fapa.org

April 6, 2009

Letter of Agreement 31

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Aggressive Reserve Errata & Reserve Clarification

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to (1) correct the reference to Displacement and Reassignment paragraphs in Section 5.S.9.e. and (2) clarify when Reserve Pilots need to contact Crew Scheduling. (Emphasis added for the purposes of this LOA only.)

1) The reference to "Section 5. T. or U." shall be changed to "Section 5. P. or W."

2) The first sentence of Section 5.Q.3. shall be changed to read: "When a Reserve Pilot completes a *Reserve* assignment he must contact Crew Scheduling for release or a new assignment."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                     05/28/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

May 28, 2009

Letter of Agreement 32

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Relief/Reserve & MOT Clarification

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that Relief/Reserve Pilots are not eligible to bid in the MOT process. (Emphasis added for the purposes of this LOA only.)

Section 5.L.8.c.2) shall be changed to read:

2) during his vacation period and those days off before and after that period. (Relief/Reserve Pilots are only eligible to bid during DOT)

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**

05/28/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

May 28, 2009

Letter of Agreement 33

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Bidding Method Clarifications

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify how Pilots shall bid for specific processes. (Emphasis added for the purposes of this LOA only.)

Section 2.L. shall be added to read:

> L. Unless otherwise specified, all bidding processes shall be through the Electronic Bid System.

Section 8.F. shall be changed to read:

> A Pilot who intends to slide his vacation period must notify Crew Scheduling *(via Positive Telephone Contact or the Electronic Bid System)* in accordance with the Timetable in Section 5.H. (the close of the vacation slide/adjustment period).

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

---

**Frontier Airlines Pilots Association**

**LOA 33.1**

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**                05/08/09

May 8, 2009

Letter of Agreement 34

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

401k Clarifications

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the 401k True-Up and the Company matching amounts and dates. (Emphasis added for the purposes of this LOA only.)

2008 True-Up Clarification

> The $7,100,000 Unsecured Claim incorporated in LOA 20 (Interim Restructuring Relief Extension Agreement) includes potential Company matching and True-Up that was suspended for the June 20, 2008 through December 5, 2008 paychecks (inclusive) per LOA 17 (Interim Restructuring Relief Agreement) and LOA 20 (Interim Restructuring Relief Extension Agreement). As such, the Company is not required to include eligible compensation paid or pre-tax contributions made during those periods of suspension for the Company matching or True-Up amount contributed in 2009 as otherwise required by Section 16.B.5.

2009 True-Up Clarification

> The $28,957,432 FAPA Claim incorporated in LOA 21 (Restructuring Participation Agreement) includes potential Company matching and True-Up for 2009. As such, the Company is not required to contribute any Company matching or True-Up amount in 2010 for 2009 as otherwise required by Section 16.B.5.

2010 True-Up Clarification

> The True-Up required by Section 16.B.5 applies as set forth to all eligible compensation paid and all pre-tax contributions and Company matching made in 2010.

2010 Matching Clarification and Adjustment

> For the purposes of Company contributions required by Section 16.B.2 and Section 16.B.5., LOA 21 (Restructuring Participation Agreement) requires that the Company match 30% of a Pilot's pre-tax contribution, up to a maximum of 3% of the Pilot's Eligible Compensation for the applicable period. Eligible Compensation means eligible compensation (i) as defined in The Frontier Holdings, Inc. Retirement Savings Plan and (ii) which is a "safe harbor" definition of compensation under Treasury Regulation 1.415(c)-2(d).
>
> This matching rate shall be effective with the January 5, 2010 paycheck through the December 20, 2010 paycheck.
>
> LOA 21 Paragraphs H.2. and H.3. shall be changed to read:



**Collective Bargaining Agreement**                    05/08/09

2. Effective with the January 5, 2010 paycheck, the Company shall match thirty percent (30%) of each Pilot's pre-tax contribution to the 401(k) plan, subject to all regulatory limitations, not to exceed 3% of the Pilot's Eligible Compensation for the applicable period. For the 2010 plan year, the combined Company match and True-Up shall not exceed 3 % of the Pilot's Eligible Compensation for that year, subject to all regulatory limitations.

3. Effective with the January 5, 2011 paycheck, the Company match as described in Section 16 B.2 and True-Up as described in Section 16 B.5 shall be restored;

2011 and Forward Matching Clarification and Adjustment

Section 16 is intended to require that the Company match 50% of a Pilot's pre-tax contribution, however the match shall not exceed 5% of the Pilot's Eligible Compensation for the applicable period. In accordance with this intent, Section 16.B.2. shall be changed to read:

The Company shall match 50 percent of each Pilot's pre-tax contribution to the 401(k) plan, subject to all regulatory limitations, not to exceed 5 percent of the Pilot's Eligible Compensation for that pay period. For each plan year, the combined Company match and True-Up shall not exceed 5 percent of the Pilot's Eligible Compensation for that year.

The first sentence of Section 16.B.5. shall be changed to read:

Match "True-up" Provision: The Company shall provide a true-up matching contribution at the end of the plan year for Pilots whose actual aggregate matching contributions made by the Company for all pay periods during the plan year (the "Actual Matching Contributions") is less than the matching contributions that would have been made based on the annual 5% of compensation limitation on matching contributions (the "Annual Matching Contribution Limit").

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.



**Collective Bargaining Agreement**　　　　06/08/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

June 8, 2009

Letter of Agreement 35

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Training Assignment Correction and Clarification

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to correct the date training assignments should be made by without requiring Positive Telephone Contact, and to clarify how the assignments are made available to Pilots. (Emphasis added for the purpose of this LOA only.)

The first sentence of Section 5.A.4.b. shall be changed to read:

> Except for training assignments for the following Monthly Bid Period made and posted on the Electronic Bid System prior to the 20th of the current month at 0900 and in accordance with Section 20.A.3.d., all Company initiated changes and Transition Conflict adjustments to a Pilot's schedule and/or Reserve assignments require Positive Telephone Contact with the Pilot, or a mutually agreeable electronic self-notification process.

The table in Section 5.H.1. shall be changed to reflect the 20th instead of the 18th for the line item: "*All training assignments completed, except as notified by Positive Telephone Contact"

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed,
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                              06/08/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

June 8, 2009

Letter of Agreement 36

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Split Timeline Reduction

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to modify the time required for a Sequence to be in Open Time before it can be split. This change is being made to account for the potential difference in time between a Sequence being dropped into Open Time and the actual FLiCA timestamp on the Sequence.

Section 5.0.5.a. shall be changed to read:

> After a Sequence has been in DOT for 46 hours, Pilots may split Sequences and pick up any portion of a Sequence.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

---

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    09/09/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

September 9, 2009

Letter of Agreement 37

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

September and October 2009 Simulator Periods

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to allow limited relief from Section 5.G.1. for the September and October 2009 Bid Months.

FAPA recognizes that the potential loss of the CAE simulator facility has created difficulties for advance scheduling of PC and PT events. As such, FAPA gives relief from the requirement in Section 5.G.1. to publish available PT and PC training periods in the Monthly Bid Package if the Company needs to schedule additional simulator periods for the September and October 2009 Bid Months.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

### Collective Bargaining Agreement

09/09/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

September 9, 2009

Letter of Agreement 38

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Training After Failure Clarification

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify how Pilots are paid and scheduled after a training failure.

Section 4.M.6. shall be added to read:

"If a Pilot dequalifies due to the failure of a training or checking event, the Pilot shall be Pay Credited for any scheduled Pay Credits that may need to be removed from his schedule until the Pilot completes the required training and/or checking scheduled in accordance with Section 20.E.1.f. to be qualified in his Position. If the Pilot determines he is not fit to attend the scheduled retraining/checking he may elect to remove his scheduled flying for a period not to exceed 30 days after the date on which the training failure occurs. The Pilot will not be paid during this period unless he elects to use his Sick Leave to cover the absences."

Section 20.E.1.f. shall be added to read:

"f. Simulator Scheduling Following a Failure. Simulator training/checking following a failure shall be paid in accordance with Section 4.M. Such re-training/re-checking will be scheduled at the Company's discretion with the following limitations:
1) The training will not be scheduled to begin earlier than 48 hours following the initial failure except by the Pilot's consent, and
2) If scheduled within the first five days following the training failure, the training will not be scheduled outside of a previously scheduled Sequence or reserve period except by the Pilot's consent."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**                    09/30/09

**FRONTIER**

Frontier Airlines, Inc.        P 723.374.4200
Frontier Center One          F 720.374.4375
7001 Tower Road
Denver, CO 80249

**Letter of Agreement 39**

September 30, 2009

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71ˢᵗ Avenue, Suite 140
Denver, CO 80249

## Re: REPUBLIC AIRWAYS HOLDINGS EXIT FINANCING AGREEMENT

This Letter of Agreement 39 ("LOA 39") is made and entered into by and between Frontier Airlines, Inc. ("Company" or "Frontier") and the Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association (the "Association" or "FAPA"). The Company has represented to the Association that Republic Airways Holdings ("RAH") has conditioned its bid to buy Frontier on the specific changes to the current Collective Bargaining Agreement and Amendments that are outlined below.

## THEREFORE, IT IS AGREED AS FOLLOWS:

### A. Effective Date

This Agreement shall become effective on the Effective Date of the Plan of Reorganization, provided that the sale of Frontier to RAH has been approved by the Bankruptcy Court and RAH has closed on the sale.

### B. Conditions

1. This Letter of Agreement amends certain provisions of the Frontier – FAPA Agreement, including, but not limited to Sections 1, 4, 19, and 24. This LOA 39 also amends and alters any Letters of Agreement relating to Scope entered into prior to the date of this LOA 39, including, without limitation, the March 2, 2007 Frontier Airlines Holdings, Inc. Recognition Agreement. If there is any conflict between a prior letter of agreement and this LOA 39, this LOA 39 shall control in all respects.

2. The Company agrees to assume and assign the Agreement to any Successor.

3. The seniority lists of Frontier Airlines Pilots, Republic pilots (pilots employed by Republic Airlines, Shuttle America and Chautauqua Airlines), and any other pilot group employed by an Entity which acquires, is acquired by or merged with RAH will be integrated into a Master Seniority List (MSL) in accordance with Sections 3 and 13 of the Allegheny-Mohawk LPPs and submitted to RAH for acceptance. RAH will accept such MSL.

*A whole different animal.*



**Collective Bargaining Agreement** 09/30/09

**FRONTIER**

Frontier Airlines, Inc.    P 720.374.4200    frontierairlines.com
Frontier Center One       F 720.374.4375
7001 Tower Road
Denver, CO 80249

including conditions and restrictions, if such list and the conditions and restrictions comply with the following criteria:

    a. no "system flush," whereby any non-furloughed pilot may displace any other non-furloughed pilot from the latter's position; and

    b. furloughed pilots may not bump/displace non-furloughed pilots; and

    c. no requirement for pilots to be compensated for flying not performed, applicable only as a result of the seniority integration (e.g., differential pay for a position not actually flown). The requirement not to be compensated for flying not performed does not apply to pay protections that exist under the current Frontier-FAPA Agreement); and

    d. allows pilots who, at the time of implementation of an integrated seniority list, are in the process of completing or who have completed initial qualification training for a new category (e.g., A320 Captain or First Officer) to be assigned to the position for which they have been trained, regardless of their relative standing on the integrated seniority list; and

    e. does not contain conditions and restrictions that materially increase costs associated with training or company paid moves.

4. Such MSL list shall be applied for transfer of pilots between the Company and any RAH entity only as may be hereafter agreed to by RAH, FAPA (or any properly-designated successor to FAPA) and the properly-designated representative of Republic pilots or any other pilot group of an RAH entity. The carriers will be operated separately under their respective CBAs without integration of the Pilot seniority lists until such integration and implementation is agreed to and concluded in accordance with Sections 3 and 13 of the Allegheny-Mohawk LPPs.

**C. Amendments to the Agreement** (emphasis added only for the purposes of this LOA)

    **1. Section 1 – E. Definitions**

        Paragraph 3. shall be changed to add "Company" definition for clarification and subsequent paragraphs shall be renumbered. The new Section 1.E.3. shall read:

            3. "Company," "Frontier," or "Frontier Airlines, Inc" as used in this Agreement, means, and is specifically limited to Frontier Airlines, Inc. and does not include any other airline, other Entity, or Parent.

        Paragraph 6. "Force Majeure" (renumbered to 1.E.7.) items shall be modified as follows:

**A whole different animal.**

**FRONTIER**

Frontier Airlines, Inc.    P 720.374.4200    frontierairlines.com
Frontier Center One       F 720.374.4375
7001 Tower Road
Denver, CO 80249

c. Reduction in flight operations because of *(1)* a decrease in available fuel supply or other critical materials due to either governmental action or commercial suppliers being unable to provide sufficient fuel or other critical materials for the Company's operations *or (2) adverse economic, market or business conditions that directly materially impact the Company's level of operations;*

d. *An increase in the price of jet fuel that has a material adverse impact on the financial condition of the Company;*

f. A U.S. Government declared national emergency affecting the Company's operations, a war on U.S. soil, *an act of terrorism or invasion by the U.S. into a foreign country which has a material adverse impact on the financial condition of the Company;*

j. *A health crisis or pandemic (e.g., SARs, Swine Flu) that has a material adverse impact on the financial condition of the Company.*

k. *A Chapter 11 bankruptcy filing by the Company or RAH.*

Paragraph 8. "Scheduled Airline Service" shall be deleted as the term is no longer used in the Agreement.

## 2. Section 1 – F. Scope

Paragraph 1. shall be changed to the following to reflect the changes in Scope language that will allow RAH to fly previously restricted "Small Jets."

1. Except as otherwise provided for in this Agreement, all flying performed by the Company shall be performed by pilots whose names appear on the Frontier Airlines, Inc. Pilots System Seniority List.

Paragraph 3. and its sub-paragraphs shall be replaced with the following in order to modify scope restrictions so that limitations on, and protections from, "Small Jets" change to limitations on, and protections from, the use of Narrow Body aircraft by RAH.

3. The Company or Affiliate may not cause the number of pilots to fall below the number (639) of pilots on the Frontier System Seniority List as of the 8/1/2009 Seniority List (not including those pilots on furlough as of August 11, 2009), while at the same time operating similar Airbus or non-Airbus aircraft ("Narrow Body")

*A whole different animal.*



**Collective Bargaining Agreement** 09/30/09

**FRONTIER.**

Frontier Airlines, Inc.
Frontier Center One
7001 Tower Road
Denver, CO 80249

P 720.374.4200
F 720.374.4375

frontierairlines.com

in another entity controlled by Parent. "Narrow Body" is defined as any combination of Airbus 320 family (e.g. A318, A319, A320, and A321), Boeing 737, Boeing 757 aircraft or aircraft with a Maximum Takeoff Weight of between 120,000 and 255,000 pounds.

a. Should the Company or Affiliate acquire Narrow Body aircraft covered by sub-paragraph F.3 above and place these aircraft on the Frontier Airlines operating certificate, these aircraft will be flown by Pilots on the Seniority List. FAPA and the Company will meet to amend this Agreement per Section 4.B.2., as appropriate.

b. Should the Company or Affiliate acquire Airbus 320 Family Narrow Body aircraft types covered by sub-paragraph F.3 above, these aircraft will be added to the Frontier Airlines operating certificate and flown by Pilots on the Frontier Seniority List, pursuant to any applicable Transition Agreement that needs to be negotiated between the parties.

Paragraph 4. shall be renumbered to Paragraph 6. (and modified as described below). A new Paragraph 4. and 5. shall be added to define the limitations of the agreement to maintain a minimum number of pilots.

4. Should a force majeure event occur, the Company shall no longer be bound by the number of pilots requirements contained in paragraph F.3 of this Section. At the conclusion of the force majeure event, the parties will meet to discuss the setting or resetting of the number of pilots requirement. There will be no obligation to reach an agreement on the setting or resetting of the number of pilots requirement. The issue of setting or resetting the number of active pilots requirement is not subject to interest arbitration under any provision of this collective bargaining agreement.

5. Notwithstanding paragraph F.3 of this Section, the minimum number of pilots requirements will no longer have any force or effect as of March 1, 2015.

Paragraph 4. shall be renumbered to Paragraph 6. and shall be modified to add "capacity purchase agreement."

6. Nothing in this Section shall preclude the Company from entering into a code share agreement, a marketing agreement, *a capacity*

*A whole different animal.*

**FRONTIER**

Frontier Airlines, Inc.        P 720.374.4200        frontierairlines.com
Frontier Center One         F 720.374.4375
7001 Tower Road
Denver, CO 80249

*purchase agreement*, an interline agreement, or a pro-rate or block space agreement.

Paragraph 5. shall be renumbered to Paragraph 7, and sub-paragraph d. shall be deleted.

### 3. Section 1 – K. Reopener

Paragraph 1. shall be modified to clarify when relocation expenses are applicable.

> then this Agreement, at the sole request of the Association, shall be reopened for the sole purpose of negotiating wages, *bidding, hours, conditions of employment, or relocation expenses (applicable only to a new classification of employees)*, particularly applicable to the situation. These negotiations shall not be pursuant to Section 6 of the Railway Labor Act, as amended. This shall not prevent the Company from acquiring and placing into service any new type of aircraft or hiring, training, and placing into service such classification of employee prior to reaching an agreement.

Paragraph 2. shall be modified to address Domiciles other than Denver.

> 2. In the event the Company should open a new Domicile such that the Company has more than one Domicile, or creates a single Domicile other than in Denver, the Company and the Association shall agree on the applicable sections of this Agreement that shall be reopened.
>
> The reopening shall be for the limited purpose of addressing issues related to multiple Domiciles or the closing and opening of a single Domicile that do not exist in a single Domicile system, (e.g., displacements, moving expenses, TDYs, filling of vacancies, training.)
>
> These negotiations shall not prevent the Company from opening a new Domicile prior to reaching an agreement on the opened sections, however, until provisions can be negotiated regarding relocation to the new Domicile, the Company will agree to the same terms as are contained in Article 5 – Moving Expenses of the CHQ-IBT Agreement, and any future improvements negotiated by CHQ and IBT in the event there are multiple Domiciles or the closing or opening of a single Domicile occurs. These negotiations shall not be pursuant to Section 6 of the Railway Labor Act, as amended.

*A whole different animal.*



**Collective Bargaining Agreement**          09/30/09

**FRONTIER**

Frontier Airlines, Inc.      P 720.374.4200      frontierairlines.com
Frontier Center One          F 720.374.4315
7001 Tower Road
Denver, CO 80249

### 4. Section 1 – M. Expedited Arbitration

The first sentence of this paragraph shall be modified to allow for the Company to file for expedited arbitration.

> The *parties agree* that any grievance filed by *either the Company or* the Association alleging a violation of Section 1 of this Agreement shall bypass the initial steps of the grievance process, and shall be submitted, heard and resolved through binding arbitration on an expedited basis directly before the System Board of Adjustment sitting with a mutually agreed upon neutral arbitrator.

### 5. Section 4 – B. Aircraft Categories

Paragraph 1. shall be changed to add A321 aircraft.

> 1. For pay purposes the Airbus A318, A319, A320, *and A321* shall be considered in the same category.

### 6. Section 4 – D. Pilot Hourly Rates

The Table II in Paragraph D. shall be supplemented so that commencing with the July 20, 2013 paycheck, hourly rates for all Pilots will be increased by 2% and commencing with the January 20, 2015 paycheck, hourly rates for all Pilots will be increased by 2%.

| Longevity | Captain | First Officer | Longevity | Captain | First Officer |
|-----------|---------|---------------|-----------|---------|---------------|
| Year | 7/1/13 | | Year | 1/1/15 | |
| 1 | $116.45 | $38.34 | 1 | $118.78 | $39.11 |
| 2 | $117.47 | $66.62 | 2 | $119.82 | $67.95 |
| 3 | $122.78 | $75.96 | 3 | $125.23 | $77.48 |
| 4 | $129.68 | $80.22 | 4 | $132.28 | $81.83 |
| 5 | $138.61 | $85.74 | 5 | $141.38 | $87.46 |
| 6 | $141.72 | $87.65 | 6 | $144.55 | $89.40 |
| 7 | $144.43 | $89.34 | 7 | $147.32 | $91.13 |
| 8 | $147.76 | $91.40 | 8 | $150.71 | $93.23 |
| 9 | $150.40 | $93.03 | 9 | $153.41 | $84.89 |
| 10 | $153.05 | $94.68 | 10 | $156.11 | $96.57 |
| 11 | $155.75 | $96.35 | 11 | $158.87 | $98.28 |
| 12 | $158.91 | $98.05 | 12 | $161.68 | $100.01 |
| 13 | $160.97 | $98.05 | 13 | $164.19 | $100.01 |
| 14 | $163.41 | $98.05 | 14 | $166.68 | $100.01 |

*A whole different animal.*



**Collective Bargaining Agreement**

09/30/09

**FRONTIER**

Frontier Airlines, Inc.    P 720.374.4200    frontierairlines.com
Frontier Center One       F 720.374.4375
7001 Tower Road
Denver, CO 80249

### 7. Section 4 – Q. Company Bonus Programs

Paragraph Q. shall be modified as follows to allow Pilots to participate in the RAH bonus program.

> Pilots of Frontier Airlines, Inc. shall participate in the discretionary Republic Airways Holdings Discretionary Bonus Program on the same terms and conditions as other non-management employees.

### 8. Section 19 – E. Recall From Furlough

Paragraph 1. shall be changed to delete the second sentence referring to recall expiration and shall read:

> 1. Pilots shall be recalled in order of their seniority. Notice shall be sent via certified mail to their last known address. Such Pilots shall be allowed 10 working days in which to notify the Company in writing of their intent to return to Active Service. If such Pilot accepts the recall, then he shall be allowed 15 days from the date of acceptance to return to Active Service. The Company may, at its discretion, extend the period of time for a return to Active Service.

### 9. Section 24 – Duration and Termination

Section 24 shall be replaced with the following to remove the reference to an implementation schedule, reflect the new date of March 2, 2015, include the option for the Association to reopen up to 12 months prior, and a new signing date.

> This Agreement shall become effective upon the date of signing of this Agreement, and shall remain in full force and effect until March 2, 2015, and shall renew itself without change each succeeding March 2 thereafter, unless written notice of intended change is served in accordance with Section 6, Title I of the Railway Labor Act, as amended, by the Association up to 12 months prior to March 2, 2015, or by either party hereto at least 90 Calendar Days prior to the date the parties may commence negotiations or a subsequent anniversary of such date, unless the parties agree otherwise.

*A whole different animal.*



**Collective Bargaining Agreement** 09/30/09

**FRONTIER.**

Frontier Airlines, Inc.
Frontier Center One
7001 Tower Road
Denver, CO 80249

P 720.374.4200
F 720.374.4375

frontierairlines.com

In witness whereof, the parties have signed this Agreement September 30, 2009.

Respectfully,

Sean Menke
Chief Executive Officer

Agreed:

Captain John Stemmler
President
Frontier Airlines Pilots Association

*A whole different animal.*

**LOA 39.8**

**FAPA**

### Collective Bargaining Agreement

10/08/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 8, 2009

Letter of Agreement 40

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

December 2009 and January 2010 Simulator Periods

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to allow limited relief from Section 5.G.1. for the December 2009 and January 2010 Bid Months.

FAPA recognizes that the potential loss of the CAE simulator facility has created difficulties for advance scheduling of PC and PT events. As such, FAPA gives relief from the requirement in Section 5.G.1. to publish available PT and PC training periods in the Monthly Bid Package if the Company needs to schedule additional simulator periods for the December 2009 and January 2010 Bid Months.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**     10/08/09

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX 720-374-2027 • email@f9fapa.org

October 8, 2009

Letter of Agreement 41

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Sick Leave Bank Replenishment

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the sick leave bank replenishment provisions of 15.B.4.

Section 15.B.4. shall be changed to read:

A Pilot may replenish his sick leave bank by picking up Open Time unless the Pilot subsequently Drops or calls in sick for that Open Time. Additionally, Open Time that is picked up and subsequently replaced with Company business or FAPA business may also be used to replenish the sick leave bank. If a Pilot wishes to replenish his sick leave bank, he must do so within the next 2 full Monthly Bid Periods of using such sick leave. A Pilot may not accrue extra or additional sick leave by picking up Open Time. When a Pilot picks up Open Time to replenish his sick leave bank he must specify to Pilot Payroll (via email to pilotpay@flyfrontier.com) the date(s) he was sick by the end of the Monthly Bid Period the Open Time occurs in.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    10/08/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email @ f9fapa.org

October 8, 2009

Letter of Agreement 42

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Open Time Swap Clarification

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the Open Time Swap provisions.

Section 23 contains a definition for "Swap" that shall be changed to read:

> Swap - an exchange of flying, vacation or reserve days/duty periods (or other activities as allowed by this Agreement) between a Pilot and Open Time (or Open Vacation Periods). For Swaps involving flying or reserve days/duty periods, all elements of the Swap request (i.e., the work being added and the work being removed) must be scheduled to occur within the same Monthly Bid Period.

The following shall also be added to 5.M.7. and 5.O.7.

For Swaps involving flying or reserve days/duty periods, all elements of the Swap request (i.e., the work being added and the work being removed) must be scheduled to occur within the same Monthly Bid Period.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



## Collective Bargaining Agreement

11/30/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX 720-374-2027 • email@f9fapa.org

November 30, 2009

**Letter of Agreement 43**

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc
7001 Tower Road
Denver, Colorado 80249

**Release to Call-Back Modification**

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify Release to Call Back provisions to recognize the 14 hour duty limitation. (Emphasis added for the purpose of this LOA only.)

The last sentence of Section 5 Q 5 d. shall be changed to read:

> On Call-Back status, the Reserve Pilot shall be released from duty, but shall be required to call Crew Scheduling *at the earlier of* within one hour before to 2 hours after the originally scheduled RDP. *14 hours from the start of that Duty Period*, or a different time by mutual consent between the Pilot and Crew Scheduling.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed _____
Captain Jim Colburn
            Director of Operations
            Frontier Airlines, Inc

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    12/31/09



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX. 720-374-2027 • email@f9fapa.org

December 31, 2009

Letter of Agreement 44

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Jury Duty Pay Clarification

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify how a Pilot shall be Pay Credited while on Jury Duty Leave (Emphasis added for the purposes of this LOA only.)

Section 9.G.3. shall be modified to read:

"The Pilot shall be removed from the least amount of flying possible in order for the Pilot to actually serve on a jury or as a witness in accordance with this Section. If a Pilot is given a notice regarding multiple-day jury or witness duty, the Pilot shall notify Crew Scheduling if he is released from jury/witness duty earlier than expected and shall return to work in accordance with Section 15.E.3., *however, the Pilot shall be Pay Credited for the greater of the Pay Credits dropped, or the Pay Credits earned in accordance with Section 15.E.3.*"

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**          12/31/09

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@5fapa.org

December 31, 2009

Letter of Agreement 45

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Reserve Junior Assignment Clarification

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify when a reserve Pilot is considered Junior Assigned by removing the conflict between the definition of Junior Assignment in Section 5.V.1. and Section 23, and the language in Section 4.N.2. (Emphasis added for the purposes of this LOA only.)

Section 4.N.2. shall be modified to delete "on a scheduled Day Off" in the first sentence.

Section 5.V.1. shall be modified to read:

> "A Pilot shall be considered Junior Assigned if he is assigned duty outside of his awarded schedule, except as allowed by Reassignment. *For reserve Pilots, "outside of his awarded schedule" shall be defined as any assignment on the first reserve day following Days Off that is: 1) prior to 1200 LDT for Long Call Reserves, 2) prior to 0830 LDT for Medium Call Reserves, 3) prior to a scheduled RDP for Short Call Reserves. (For example: a Short Call Reserve scheduled for a C RDP is given an assignment with a leg that departs at 1000, and a second leg that departs at 1400. The entirety of the first leg shall be Pay Credited as a JA as it starts prior to the scheduled C RDP, and the second leg shall be Pay Credited at the normal rate as it starts during the scheduled C RDP.)"*

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    12/31/09

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

December 31, 2009

Letter of Agreement 46

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Medium Call Reserve (RSM) Assignment Notice Increase

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to modify the time prior to report that a Sequence needs to be in Open Time to 8 hours and 30 minutes (from 8 hours) in order to be assigned to an RSM to accurately reflect the actual time necessary due to the 30 minute allowance for an RSM to acknowledge an assignment. (Emphasis added for the purposes of this LOA only.)

The first sentence of Section 5.Q.2.c. shall be modified to read:

> "If a Sequence is in Open Time less than 12 hours prior to the Scheduled Report Time but more than 8 hours *and 30 minutes* prior to the Scheduled Report Time the Company will attempt to assign the Sequence to a Medium Call Reserve."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed:
Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**

02/01/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18388 E 71ST AVE • STE 140 • DENVER  CO 80249
303-373-8137 • FAX  720-374-2027 • email@fafapa.org

February 1, 2010

Letter of Agreement 47

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

"No Fly List" Adjustment

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the No Fly List process and address the number of Pilots allowed to be indicated on the No Fly List. (Emphasis added for the purposes of this LOA only.)

Section b.f.6. shall be modified to read:

> Any First Officer may designate up to 6 Pilot employee names or numbers on their monthly bid that he chooses to avoid ("the "No Fly List"). If a First Officer would be awarded a Regular line that would cause him to fly with a Pilot on his No Fly List, he shall receive the next line his seniority allows. This applies to Regular line awards only. If the Pilot cannot be awarded a line that avoids these Pilots, his No Fly List shall be disregarded. The designation of Pilot employee to the No Fly List is intended as a personal preference and such designation shall not be used to initiate disciplinary action or for disciplinary purposes.

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Approved:

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    02/25/10

 FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0132 • FAX 720-374-2027 • email@flfapa.org

February 25, 2010

Letter of Agreement 48

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Modification of Open Time

Dear Captain Colburn:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that Sequences shall not be modified during a seniority Open Time process.

Add Section 5.I, 1.d, to read:

"d. If a flight(s) needs to be modified or canceled while a seniority-based Open Time process (MOT) is occurring, the Sequence shall not be modified until the Open Time process is completed. The Pilot's schedule shall be modified within 24 hours of the change to the flight or the close of the Open Time process, whichever is later. The notification period required by Section 5.A.4.b. shall begin when the modification to the Pilot's schedule is complete. Pay protection or reassignment provisions of the CBA shall only apply to the Pilot who is assigned the flying at the time that the Sequence modification is completed."

Sincerely,

Captain John Stemmler
President
Frontier Airline Pilots Association

Agreed.

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**　　　　03/25/10

**FRONTIER**

March 25, 2010

Letter of Agreement 49

Captain John Stemmler
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, Colorado 80249

Active Service

Dear Captain Stemmler:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the definition of "Active Service."

Modify Section 23 to read:

Active Service - The period of time that begins on a Pilot's most recent date of hire as a Pilot and continues until resignation, termination, furlough, or as set forth in Section 9 (Leaves of Absence). A Pilot shall continue Active Service upon return from Leave of Absence or Furlough in accordance with those Sections. A Pilot shall forfeit all Active Service upon resignation or termination.

Sincerely,

Captain Jim Colburn
Director of Operations
Frontier Airlines, Inc.

Agreed:
Captain John Stemmler
President
Frontier Airline Pilots Association

*A whole different animal.*

---

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 50

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Unpaid Leave and Minimum Days Off Q&A

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that Pilots with unpaid leaves of absence may only be paid actual Pay Credits on the 20th paycheck rather than half of guarantee. Also, that the Company shall not schedule pilots not on reserve with less than 12 days off.

Modify Appendix 4 to add:

> Under Section 4:
>
> **Question:** If I take an unpaid leave in the first half of the month, how much can I expect to be paid on the 20th paycheck? (Reference 4.E.1.)
>
> **Answer:** In order to prevent pilots from potentially being overpaid, Pilots with unpaid leaves in the first 15 days of the Monthly Bid Period shall only be paid for any actual Pay Credits earned instead of 50 percent of the Monthly Pay Guarantee. For Example: if a Pilot earns 20 Pay Credits on the 5th-10th of the month, the Pilot shall only be paid for those 20 Pay Credits, not the standard 37.5.
>
> Under Section 5:
>
> **Question:** Does the minimum 12 days off in Section 5.J.7. apply only to line construction or to all Company scheduled activities?
>
> **Answer:** The minimum 12 days off in Section 5.J.7. applies to all Company scheduled activities including the initial line construction, training events, etc. The 12 day off minimum does not apply to Pilot schedule changes such as OT transactions and transition adjustments. Any additional scheduled Company activities (e.g. training) shall not reduce a line to less than 12 days off except by a Recurrent Ground Training bid award or mutual agreement between the Pilot and the Company.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed: Jacalyn W. Peter
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**

10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 51

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

No Fly List Submission

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that Pilots should submit their No Fly List selection for each Monthly Bid Period – they will not necessarily automatically carryover between months.

Modify Section 5.F.6. to read:

> "6. Any First Officer may designate up to 6 Pilot employee names or numbers on *his* monthly bid that he chooses to avoid (the "No Fly List"). *In order to ensure the No Fly selections are properly applied, Pilots should verify their No Fly selections with each Monthly Bid Period initial bid.* If a First Officer would be awarded a Regular line that would cause him to fly with a Pilot on his No Fly List, he shall receive the next line his seniority allows. This applies to Regular line awards only. If the Pilot cannot be awarded a line that avoids these Pilots, his No Fly List shall be disregarded. The designation of Pilot employee to the No Fly List is intended as a personal preference and such designation shall not be used to initiate disciplinary action or for disciplinary purposes."

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 52

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Protest Period Clarification

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify the protest process.

Modify Section 5.H.2. to read:

> "Any Pilot wishing to protest the results of a bid shall contact Crew Planning (or Crew Scheduling if Crew Planning is not available). The Company shall *immediately* re-run the bids to the extent necessary to correct the error and re-award the bids. *If there are valid protests after the protest period the Company and the Association shall immediately meet to resolve the issues.*"

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

---

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    12/01/10

---



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

December 1, 2010

Letter of Agreement 53

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Per Diem Clarification

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that Pilots shall be provided hotel and per diem from the time the Company requires the Pilot to leave his Domicile, for the purpose of fulfilling his duties and obligations as an employee of the Company, to the time he is returned to Domicile.

Modify Section 4.R.1. to read:

The Company shall provide and pay for any hotel room and transportation for Company (and/or Affiliate) purposes when the Pilot is required by the Company (and/or Affiliate) to be out of the Pilot's Domicile.

Delete Section 4.R.3., renumber 4.R.4. to 4.R.3., and modify Section 4.R.2. to read:

"2. Per Diem shall be paid *from the time the Company directs the Pilot to leave his Domicile to the time he is returned to Domicile (e.g.* from scheduled Report Time at the beginning of a Sequence to release at the end of a Sequence *or from the time a Pilot reports for his Company scheduled flight to leave his Domicile for training, Section 13 hearing, etc. until the time he is returned to Domicile)."*

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed: _____
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

---

THIS PAGE

INTENTIONALLY

LEFT BLANK



## Collective Bargaining Agreement

10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 54

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Contact Numbers Clarification

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify that Crew Scheduling shall call all telephone numbers provided by a Pilot when attempting to contact that Pilot for a schedule change, Junior Assignment, etc. (Emphasis added for the purposes of this LOA only.)

Modify Section 5.A.4.a. to read:

> "A Pilot shall provide at least 1 but no more than 3 contact phone numbers to the Company *and Crew Scheduling shall use all provided contact numbers when attempting Positive Telephone Contact for schedule changes, Voluntary Junior Assignment, Junior Assignment, etc.*"

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**

10/15/10

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 55

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Return from Leave of Absence Clarification

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify how Pilots return from Leaves of Absence.

Add Section 9.A.6. to read:

"Unless otherwise specified in the Agreement, a Pilot returning from a Leave of Absence shall return to the Position he held prior to the Leave of Absence. However, if he would have otherwise been subject to an ISA had he not been on a Leave of Absence that ISA shall be effective immediately upon return."

Add Appendix Q&A:

Question: If I am a MKE Captain on a Leave of Absence and the Pilot senior to me is subject to an ISA, what Position would I hold upon return?

Answer: You would return to the next Position on your Master Bid that you could hold in accordance with Section 6. If DEN CA was first, then MKE CA, then DEN FO and you cannot hold DEN CA or MKE CA you would return as DEN FO.

Question: If I am a Captain on a Leave of Absence and an ISA occurs while I am on Leave that I would have been subject to had I not been on a LOA, am I immediately subject to the ISA (i.e. downgraded to FO while on leave)?

Answer: No, your Position does not change until your LOA is completed and you return. As part of the return to work process your appropriate Position will be determined.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement** 10/15/10

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 56

Jacolyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

**Lines of Flying Definitions**

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to define different types of lines of flying.

**Modify 5.E.4.b.** to read:

If the training is cancelled at least 24 hours prior to the opening of the Monthly Open Time Bid, normally the SSC shall build lines with Pay Credit and days off similar to the average of those of *Hard* Lines. The Pilots shall then be allowed to bid on these lines in seniority order. If there is not sufficient MOT Paragraph 4.d. shall apply.

**Modify 5.F.5.** to read:

A Pilot who fails to bid or bids insufficient lines shall be assigned a *Hard*, Relief or Reserve Line remaining after all other bids have been awarded.

**Modify the first three sentences of 5.F.6.** to read:

Any First Officer may designate up to 6 Pilot employee names or numbers on their monthly bid that he chooses to avoid (the "No Fly List"). If a First Officer would be awarded a *Hard* line that would cause him to fly with a Pilot on his No Fly List, he shall receive the next line his seniority allows. This applies to *Hard* line awards only.

**Modify the fifth sentence of 5.I.3.** to read:

For Pilots with a *Hard* Line, adjustments shall be made in the following Monthly Bid Period.

**Modify 5.J.7.** to read:

A minimum of 12 days free of duty with the Company shall be scheduled in every Regular, CDO and Relief Line of flying.

**Modify 5.J.8.** to read:

A *Hard*, Relief and Reserve Line holder must be scheduled at least one Calendar Day free of any Company duty, in Domicile, during any 7 day period. The Pilot may choose to waive the requirement for this to occur in Domicile and/or as a Calendar Day.

**Modify 5.L.7.** to read:

Any Pilot not holding a *Hard*, Reserve or Relief Line of Flying shall only be allowed to pick up Open Time for the same or next day by calling Scheduling after DOT Adds have closed and before Aggressive Reserve bidding has opened.



**Collective Bargaining Agreement**                    10/15/10

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

Modify the following Section 23 Definition to read:

Captain Qualified First Officers (CQFO) - a Pilot who is qualified as a Captain, but, does not hold a *Hard*, Reserve, or Relief line as a Captain. CQFOs will be designated on the monthly bid package by an asterisk (*).

Add the following to Section 23 Definitions

CDO Line – line of flying consisting of only CDO (Continuous Duty Overnight) Sequences

Hard Line – line of flying other than Relief and Reserve Lines, including Regular Lines and CDO Lines

Regular Line – line of flying other than Relief, Reserve or CDO Lines

Relief Line – line of flying built after Regular and CDO Lines per Section N.

Reserve Line – line of flying consisting only of Long, Medium or Short Call reserve duty

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.



**Collective Bargaining Agreement**                    10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 57

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Reserve Extension Clarifications

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to correct the paragraph reference in Section 5.Q.2, and to clarify that an "Extension" is assigning a Reserve Pilot out of the normal reserve assignment order.

Modify Section 5.Q.2, to read:

"An Open Sequence or simulator training event not awarded or assigned through the Aggressive Reserve or Reassignment processes may be assigned according to the Extension provisions of Paragraph 4, below. If not assigned according to the Extension provisions, the Sequence shall be assigned in accordance with the following."

Modify Section 5.Q.3, to read:

"When a Reserve Pilot completes a Reserve assignment he must contact Crew Scheduling for: release *back into his RDP (Paragraph 5.S.10. below), release to rest (Paragraph 5.S.11. below),* or a new assignment. *If given a new assignment, the new assignment must be given within one hour and must be scheduled to depart within 4 hours of Block In.*"

Change the margin note associated with 5.Q.3, to read:

Upon completion
of an
assignment,
Reserves must
call to be
released, *assigned* or
Extended.

Modify Section 5.Q.4, to delete the first sentence and read:

"*Reserve Extension.* A new assignment may be given outside the normal order in Paragraph 2 above (Extended) under the following conditions:



**Collective Bargaining Agreement**                    10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

Add Section 5.Q.4.h. to read:

> h. The new assignment must be given within one hour and must be scheduled to depart within 4 hours of Block In."

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.



**Collective Bargaining Agreement** 10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

October 15, 2010

Letter of Agreement 58

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Staffing Adjustments

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to replace Section 6 Staffing Adjustments in its entirety.

A. GENERAL

1. Staffing Adjustments (SA) shall be filled according to Pilots' Master Bids and the Seniority List in the following order:

   a. through the vacancy procedure (Paragraph D below), then

   b. through secondary vacancies, then

   c. with furlough recalls as needed, then

   d. with New Hire Pilots as needed, then

   e. through the voluntary displacement procedure (Paragraph E below) if necessary, then

   f. through the involuntary displacement procedure (Paragraph E below) if necessary.

2. All vacancies and displacements shall be posted at all Domicile lounges, the Company intranet and mailed or hand delivered to the Association offices not less than 10 days prior to closing and shall be awarded in accordance with the Master Bid. SA postings shall include (at a minimum):

   a. The posting date

   b. The number and type of Positions available

   c. The closing date

   d. The projected training start date

   e. The projected Effective Date.

3. Secondary vacancies ( i.e. backfills) shall be filled from the preferences on the Pilot's Master Bid in seniority order, but shall not be required to be posted.

4. Changes in Position

   a. Captains

      1) A Captain may bid for and will be awarded a vacancy in the same Seat in a different Domicile in accordance with his seniority and his Master Bid.

      2) If the Company determines that it needs to hire First Officers, those SAs shall not be available for bid to Captains , other than Pilots covered by Section 3.F and 9.L.

      3) A Captain who is displaced shall be assigned any Position or Domicile, in accordance with his seniority and his Master Bid

   b. First Officers

      1) A First Officer may bid for and will be awarded a vacancy in accordance with his seniority and his Master Bid.

---

**Frontier Airlines Pilots Association** **LOA 58.1**



**Collective Bargaining Agreement**    10/15/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

    2) A First Officer who is displaced shall be assigned any Position or Domicile, in accordance with his seniority and his Master Bid.

5. The results of each SA shall be posted at all Domicile lounges, the Company intranet and mailed or hand delivered to the Association offices no later than 24 hours after the bid close.

6. A Pilot shall have 72 hours from the close of the bid to protest the bid results.

7. If an SA is canceled, the Pilot awarded such SA shall remain in his current Position. If an SA is canceled and a Pilot was scheduled to return from VLOA based on the canceled SA, the Pilot shall have the option to return from VLOA on the date required for the originally posted SA.

8. For a First Officer to be awarded a Captain vacancy, the First Officer must meet the upgrade requirements specified in Section 13 and Section 20.E.

9. SAs to a different Domicile shall be awarded no less than 30 days (or less by mutual agreement between the Company and the Association) prior to the start of the Monthly Bid Period that includes the Pilot's first assignment in the different Domicile.

10. A New Hire Pilot shall be trained as and assigned to First Officer.

B. EFFECTIVE DATE

1. When a Pilot's pay rate changes as the result of an SA, the Pilot's pay rate shall change on the Effective Date.

2. For Pilots moving from First Officer to Captain, the Effective Date shall be the date of the final Line Check, but no later than 70 days from the start of training.

3. For Pilots moving from Captain to First Officer, the Effective Date shall be 7 days after the start of training. However, if a Pilot moves from Captain to First Officer as a result of a displacement, that Pilot shall continue to receive Captain pay until the Effective Date, or for a minimum of 15 days from the date of the posting of the associated displacement (not including the posting date), whichever is later.

C. MASTER BID

1. The Company shall be responsible for maintaining an electronic Master Bid system.

2. The Association shall have access to the Master Bid system by request.

3. Every Pilot shall maintain a Master Bid and shall be bound to such bid. The Master Bid shall include (at a minimum):

    a. Seat(s)

    b. Domicile(s)

    c. Lowest placement (i.e. percentage or numbered rank) willing to accept within each Position (if any)

    d. Date/time of each change

    e. Record of the Pilot submitting each change and confirmation of bid to Pilot

4. The Master Bid system shall have functionality to allow Pilots to view a "snapshot" bid award showing what Position they would hold if a bid was awarded at that moment based on existing bids at that time.

5. If a Pilot does not have a Master Bid, that Pilot shall be bypassed for any vacancy.

6. Pilots may also submit additional Master Bids for voluntary and involuntary displacements.

D. VACANCIES

1. If a vacancy is not posted at least 10 days prior to closing, any resultant award may be declined within the 72 hour protest period described in A.6. above.

2. In addition to the provisions of Section 5.I., a Pilot awarded a vacancy to a different Domicile shall be allowed to Drop an assignment to allow a minimum of 24 hours rest between assignments in different Domiciles. This Drop shall not be subject to the limitations of Section 5.



**Collective Bargaining Agreement**                    10/15/10

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

3. When filling a vacancy and any subsequent SSAs, the Company will award a senior Pilot's bid (including furloughs who have accepted recall) and then continue to the next junior Pilot. If the senior Pilot is not awarded his first choice on the initial award and subsequent secondary vacancies become available which had been marked as a higher bid on such Pilot's Master Bid, he will be awarded the subsequent vacancy. This process will continue until all vacancies (including any secondary vacancies ) have been awarded.

4. A Pilot on a Leave of Absence with a return date after the published start date for training shall not be awarded that vacancy unless the Pilot, prior to the bid close, modifies the Leave of Absence in accordance with Section 9 to accommodate the training date. A Pilot on a VLOA under Section 9.L who bids on a vacancy in accordance with Section 9.L will be required to return from VLOA on the date directed by the Company in order to commence training for the associated vacancy.

E.   DISPLACEMENTS

1. All displacements shall be assigned in seniority order in accordance with voluntary displacement Master Bids, then assigned in reverse seniority order according to the Seniority List and involuntary displacement Master Bids.

2. A Pilot subject to a displacement shall be awarded any Position that he can hold in accordance with his Master Bid. This process shall repeat until all SAs have been completed.

3. A Pilot subject to a displacement to First Officer, by mutual agreement between the Pilot and the Company, may complete a Captain PC/PT to reset his Simulator Base Month in order to be available for a full six months after the displacement to First Officer in order to be qualified as a Captain Qualified First Officer. This option, if offered, shall be offered to Pilots in seniority order.

4. A Pilot subject to a displacement shall have the right of first refusal to return to his Position for a vacancy posted within 6 months of the displacement Effective Date.  During this 6 month period, the Pilot subject to the displacement shall be awarded a vacancy to the Position displacement ahead of Pilots senior to him if that Position is higher on his Master Bid than his current Position. (e.g. If Displaced out of MKE CA, the Pilot only has right of first refusal to return to that Position – MKE CA - within 6 months.)

5. If a Pilot subject to a displacement does not have any Positions listed on his Master Bid that he can hold, he shall be subject to a displacement in the following order:

   a.   Same Seat in a different Domicile

   b.   Same Domicile in a lower paying Seat

F.   Different Domicile in a lower paying Seat DOMICILE TRADE

1. Pilots in the same Seat may bid to Trade Domiciles under the following provisions:

   a.   Bids shall be submitted to Crew Planning via email to crewplanning@flyfrontier.com between the 5th of the month at 1700 LDT and the 23rd of the month at 0900 LDT for the Monthly Bid Period following the next Monthly Bid Period. (For example: between the 5th and 23rd of June for the August Monthly Bid Period.)

   b.   Trades shall be awarded in seniority order on the 23rd between 0900-1200 LDT. Submitted bids and awards shall be posted in Domicile lounges and submitted via email (email@f9fapa.org) to FAPA no later than 1200 LDT.

   c.   Any protest of an incorrect award (e.g. award out of seniority order) must be submitted to Crew Planning prior to the 25th at 1700 LDT.

2. Unless the two Pilots will Trade the exact same vacation period (e.g. both Pilots hold week 33), the Pilots shall forfeit their vacation and re-bid in accordance with Section 8.H.

 **Collective Bargaining Agreement**   10/15/10

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

G. DOMICILE CLOSURE

1. The Company shall post any Domicile closures in all Domicile lounges and notify the Association in writing at least 60 Calendar Days prior to the closing date of the Domicile. Any subsequent SAs shall be processed in accordance with this Section and furloughs shall be processed in accordance with Section 19.

2. Pilots from the closed Domicile shall retain their vacation periods and be afforded a move at the Company's expense in accordance with Section 7.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.



**Collective Bargaining Agreement**                    12/01/10



FRONTIER AIRLINE PILOTS ASSOCIATION
18100 E 71ST AVE · STE 140 · DENVER CO 80249
303-373-0137 · FAX 720-374-2027 · cman@f9hpa.org

December 1, 2010

Letter of Agreement 59

Jacalyn Peter
Senior Manager, Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Multiple Domiciles

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to address modifications to the Agreement necessary to accommodate Domiciles other than DEN. Should further issues related to Domiciles other than Denver arise, FAPA and the Company shall meet to mutually resolve those issues. Items marked with ** shall be reviewed by the Company and the Association in March 2011. (Emphasis added for the purposes of this LOA only.)

Add 1.K.1.c

c. open a Domicile outside the contiguous 48 states.

Modify 5.A.1. to read:

All times shall be considered Local *Domicile* Time (LDT) unless otherwise noted.

Add 5.A.5. to read:

Except as otherwise noted, all references to, but not limited to, lines of flying (including Reserve), assignments, Sequences, vacation and bidding shall be specific to one Domicile.

Modify 5.B.2. to read:

The Company shall make the final determination regarding Sequence construction and the Average Target Line Credit value for each month's schedule. The Association shall make the final determinations regarding the line construction, however no more than 1% *for a Domicile with more than 5000 monthly block hours, and no more than the greater of 30 hours or 1% for a Domicile with less than 5000 monthly block hours* of the Monthly Bid Period's total flight Pay Credit shall remain in Open Time after line construction. *These limits may be adjusted for a Monthly Bid Period upon mutual agreement of the Company and the Association.* The Company will make available all necessary computers, software, personnel, and other items required to complete the line construction.

Modify 5.D. to read:

CREW UTILIZATION REPORT *(by Position if requested and available)*



**Collective Bargaining Agreement**   12/01/10

 FRONTIER AIRLINE PILOTS ASSOCIATION
18000 E 71ST AVE · STE 140 · DENVER CO 80249
303-373-9137 · FAX 720-374-2037 · amail@ndapa.org

Modify 5.F.1. to read:

There shall be 12 calendar month based Monthly Bid Periods of 30 or 31 days. *The Monthly Bid Periods shall be the same for all Domiciles.* The Company and the Association will meet no later than August 31st of each year to designate the Monthly Bid Periods for the following calendar year. This information will then be published with the annual Pilot vacation bid.

Modify 5.F.4. to read:

*The Company may indicate Regular Lines as IOE lines that shall be available for Captains but not First Officers. The number of IOE lines shall be limited to 4% of the number of system-wide Hard Lines. However, no more than 10% of the number of Hard Lines in a Domicile shall be for IOE. (For example: There are 260 lines in DEN and 40 lines in MKE. The number of IOE lines system-wide shall not be greater than 12 (4% of 300). Of those, the number of IOE lines in MKE shall not be greater than 4 (10% of the Hard Lines in MKE)).* The number of lines affected by IOE will be shown in the Monthly Bid Package for the affected month and First Officers shall be encouraged to bid that number of extra lines of flying. If any additional IOE flying is required, the First Officers that are awarded this continuing flying shall be displaced, in accordance with Paragraph W.2., for the flying as necessary to conduct IOE

Modify 5.I.6.c. to read:

Pilots Deadheading to, or as part of, an assignment shall travel positive space *(Must Ride)* and have seats reserved in advance by the Company. Pilots may elect to sit in a cockpit jumpseat if all of the seats in the cabin are filled with positive space revenue passengers or other Deadheading crew members. Pilots returning to Domicile for legal rest shall travel positive space *(Must Ride)* and have seats reserved in advance by the Company. Pilots returning to Domicile for legal rest may be assigned a cockpit jumpseat if all seats in the cabin are filled with positive space revenue passengers or other Deadheading crewmembers *and the Scheduled Block is less than 3 hours.* Deadheading Pilots in the cabin shall be offered free LiveTv.

Modify 5.J.12.b. to read:

CDOs shall not be scheduled in more than 10 percent of the Regular Lines in each Domicile.

Modify 5.J.13. to read:

*If there are more than 10 Reserve Lines, they shall consist of at least 10% Long Call Reserve Lines and 10% Medium Call Reserve Lines, but no more than 30% of the Reserve Lines shall be Long and Medium Call Reserve Lines. Short Call Reserve Lines shall be built with no more than 40% of the lines in the Mid Window.* These percentages shall be reviewed and mutually agreed upon by the Company and the Association quarterly. *For Domiciles with 10 or fewer Reserve Lines, Medium Call Reserve Lines shall not be built and Long Call Reserve Lines shall be built in accordance with the following table:*

| # Reserve Lines | Min # RSL Lines |
|---|---|
| < 5 | 0 |
| 5-7 | 1 |
| 8-10 | 2 |



**Collective Bargaining Agreement**                    12/01/10

 FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0132 • FAX: 720-374-2027 • email@falapa.org

Modify 5.J.15 to read:

Reserve Days may be scheduled only on Reserve Lines and up to 25%, *or up to 40% per Monthly Bid Period, by mutual consent of the Association and the Company,* (rounded up to the nearest whole number) of the constructed Relief Lines (for example, if there are 13 Relief Lines built from Open Time, 4 of these lines may contain RDPs). Each of the constructed Relief Lines shall have no more than 5 RDPs *(or up to 8 RDPs per Monthly Bid Period, by mutual consent of the Association and the Company)* placed on them with a Pay Credit of 4 hours per RDP. Any Pilot awarded one of these lines, shall be able to Trade, Swap, or otherwise adjust his schedule, including the RDPs.

Modify 5.L.4, to read:

4. Drop Limits (to be reviewed and agreed upon at the monthly SSC meeting.

Change current 5.L.4. to be 5.L.4.a.

Modify 5.L.4.a. to read:

The Daily Drop Limit for Monthly Open Time shall be 8 open Sequences on Restricted Days and 35 open Sequences on all other days. For Daily Open Time, the Daily Drop Limit shall be 12 open Sequences on each weekday and 8 open Sequences on Saturdays, Sundays and Restricted Days. The Daily Drop Limits shall grow in proportion to the increase in Duty. Initially, the DDL shall be 9.5% for weekdays and 6.5% for Saturdays, Sundays and Restricted Days of the average number of Duty Periods per day based on the number of Duty Periods produced after the final solution of Sequence generation (e.g. 3720 Duty Periods for a 30-day Monthly Bid Period is an average of 124 Duty Periods per day).

Add 5.L.4.b.

For Domiciles other than DEN, the Daily Drop Limit shall be in accordance with the following table.

| Daily Duty Periods | MOT | MOT Restricted | DOT WkEnd | DOT WkDay |
|---|---|---|---|---|
| 1-10 | 4 | 2 | 2 | 3 |
| 11-20 | 6 | 3 | 2 | 3 |
| 21-30 | 7 | 5 | 3 | 4 |
| >=31 | <of 28.2% vs. 35 | =6.5% vs. 5 | >6.5% vs. 5 | >of 9.5% vs. 7 |

Modify 5.L.11.a.3) to read:

However, within 2 Calendar Days of the Duty Period during which the illegality is projected to occur (with the day prior to a Sequence that does not pass through the Domicile where the Sequence originates *and terminates,* whichever is earlier) Crew Scheduling may modify a Pilot's schedule by removing the minimum amount of time necessary.

1



**Collective Bargaining Agreement**  12/01/10



FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX 770 174-2627 | email@fapa.org

Modify 5.L.11.b.2) to read:

If a Pilot is projected to exceed 100 hours in a calendar month he should adjust his schedule to avoid the limitation. However, within 2 Calendar Days of the Duty Period during which the illegality is projected to occur (or the day prior to a Sequence that does not pass through the Domicile where the Sequence originates and terminates, whichever is earlier) Crew Scheduling may modify a Pilot's schedule by removing the minimum amount of time necessary.

Add Appendix 4 Q&A item under Section 5:

Question: A Sequence that was originally built as DEN-DFW-DEN with the overnight in DFW has been modified to include a Deadhead leg from MKE-DEN with an overnight in DEN, then operates DEN-DFW-DEN, then a Deadhead'ing DEN-MKE. The Pilot assigned to the Sequence is based in MKE. The Pilot is no longer legal for the Sequence, when can the Sequence be modified by Crew Scheduling.

Answer: The Sequence can be modified the day prior to starting in MKE as the Sequence now starts and ends in MKE (rather than DEN) and does not pass through MKE.

Modify 5.M.6. to read:

For each Domicile with at least 1500 monthly credit hours (the monthly credit hours number shall come from the final Sequences solution), 25% of any Open Time remaining in the MOT (not after the MOT awards (but not greater than 3% of the total credit time) shall be placed in the Daily Open Time (DOT) pool after Relief Lines are built. However, for each Domicile with less than 1500 monthly credit hours, Relief Lines shall not reduce the Open Time placed in the Daily Open Time (DOT) pool to less than 50 credit hours, unless otherwise mutually agreed for a Monthly Bid Period between the Company and the Association.

**Modify Section 5.O.1. to read:

DOT will consist of any RDPs placed into Open Time per Paragraph L.9. and/or Sequences remaining after Relief Lines are built, and/or drops of any kind, and/or any other unanticipated flying occurring during the Monthly Bid Period. For the first 24 hours a Sequence is in Open Time, Sequences can only be awarded to Pilots (through Open Time or Aggressive Reserve) or assigned to Reserves in the Domicile it was originally constructed for (i.e. a Sequence that either appeared in the Domicile Monthly Bid Package, a derivative of that Sequence that appeared in the Monthly Bid Package, or a Sequence that is built during the month that originates in a particular Domicile). Sequences in Open Time for >24 hours may be bid on by Pilots from any Domicile. (See 5.O.7. for further provisions.)

**Modify Section 5.O.3.c.2) to read:

For Denver or Domiciles with greater than 90 average daily duty periods, the DAG Drop number shall be based on maintaining 3 Reserves in each Window, plus one additional Reserve in any Window or Medium/Long, Call, over and above any Drops allowed. This Net Reserve number may grow in proportion to the number of Duty Periods, and shall be reviewed and mutually agreed upon by the Company and the Association quarterly.

**Add Section 5.O.3.c.3) to read:

For Domiciles other than Denver with 51-90 average daily duty periods (based on the final Sequences solution), the DAG Drop number shall be based on maintaining 2 Reserves in each Window (except for a Window to which no reserves were awarded) plus one additional Reserve in any Window or one Medium or Long Call Reserve, over and above any Drops allowed. This Net Reserve number shall be reviewed and mutually agreed upon by the Company and the Association monthly.

4



## Collective Bargaining Agreement

12/01/10



FRONTIER AIRLINE PILOTS ASSOCIATION
15100 E 71ST AVE • STE 140 • DENVER CO 80249
303-373-0147 • FAX 720-374-2027 • email@frontier.org

**Add Section 5.0.3.c.3) to read:

> For Domiciles other than Denver with 1-50 average daily duty periods, the DAG Drop number shall be based on maintaining 1 Reserve in each Window (except for a Window to which no reserves were awarded) plus one additional Reserve in any Window or one Medium or Long Call Reserve, over and above any Drops allowed. This Net Reserve number shall be reviewed and mutually agreed upon by the Company and the Association monthly.

**Add 5.0.7.

> If a Sequence 1) has been in Daily Open Time for more than 72 hours, or 2) is Dropped into Open Time 2 or 3 days prior to the start of the Sequence and has been in Daily Open Time for more than 24 hours, or 3) is available to Reserve Pilots in accordance with this Section, then:
>
> a. The Company may add Deadhead legs to and from a different Domicile. The new Sequence shall be immediately placed into the Sequence's Domicile's Daily Open Time, made available to Aggressive Reserve or assigned to a Reserve in accordance with this Section, or
>
> b. At a Pilot's request, and upon agreement of the Company, the Company may add Unscheduled Deadhead legs to and from a Pilot's Domicile to a Sequence he has been awarded.

Move current 5.0.7. to 5.0.8.

Modify Section 5.Q.2. and subparagraphs to read:

> Any Open Time or simulator training event not awarded or assigned through the Aggressive Reserve or Reassignment processes may be assigned according to the Extension provisions of Paragraph 4. below. If not assigned according to the Extension provisions, the Sequence (or portion thereof) shall be assigned in accordance with the following order (except that if assignment of a Reserve Pilot (excluding Aggressive Reserve awards) will result in Pay Credits in excess of 75 hours for a Monthly Bid Period that Reserve Pilot may, at Crew Scheduling's option, be bypassed for assignment.)
>
> a. Reserve Pilots who need to complete their Consolidation of Knowledge and Skills (FAR 121.434), High Minimums (FAR 121.652) (unless forecast weather is below the High Minimums limitations), or Currency (FAR 121.439), may be assigned Sequences out of the order required by paragraph c. below, to ensure that FAR requirements are met. If a Reserve Pilot has not accumulated at least 50 block hours toward the Consolidation of Knowledge and Skills requirement within 90 days after his Proficiency Check, the Company may assign him out of the normal Reserve assignment order until he completes his Consolidation of Knowledge and Skills requirement.
>
> b. In seniority order to Reserve Pilots who have identified themselves as 'Want to Fly'. Reserve Pilots who wish to be on the Want to Fly list shall call Crew Scheduling by 1200 LDT the day prior. The Reserve Pilot may be assigned a Sequence in any Window by mutual agreement between the Reserve Pilot and Scheduling. Then,
>
> c. For each Reserve call-out category (Long Call, Medium Call and Short Call) Reserves will be placed in availability "buckets" based on the number of available Reserve days or RDPs as applicable. For example, among the Short Call Reserves, a Pilot with 2 remaining RDPs in his current Block of RDPs will be placed in the '2 day' bucket.
>
>    1) If a Sequence is in Open Time more than 12 hours prior to the scheduled Report Time the Company will attempt to assign the Sequence to a Long Call Reserve. The Company will attempt to assign the Sequence to a Reserve Pilot in the bucket that exactly matches the number of days of the Sequence. If no Pilots are available with the exact number of days available to match the Sequence, the Company will proceed to the bucket that contains Reserve Pilots whose days of availability are equal to the Sequence length plus one day. The Company will continue with this progression until the Sequence is assigned or until there are no more Long Call Reserves to consider for the assignment. If there is more than one Reserve Pilot in a

5



**Collective Bargaining Agreement**  12/01/10



FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER CO 80249
PH: 973-3137 • FAX: 720-374-2477 – email@fapa.org

bucket, the assignment will be made based on the priorities as specified in a) and b) below. If the Sequence is not assigned to a Long Call Reserve, Crew Scheduling will proceed to Medium Call Reserves as described in paragraph 2) below.

    a) Reserve Pilots who are legal (per FARS and the Agreement) to operate the entire Sequence, then

    b) "First in/first out" (FIFO). That is, the first Reserve Pilot to be released from a Reserve flying assignment shall be the first Reserve Pilot assigned to a flying assignment.

2)  If a Sequence is in Open Time less than 12 hours prior to the Scheduled Report Time but more than 8 hours and 30 minutes prior to the scheduled Report Time the Company will attempt to assign the Sequence to a Medium Call Reserve. The Company will attempt to assign the Sequence to a Reserve Pilot in the bucket that exactly matches the number of days of the Sequence. If no Pilots are available with the exact number of days available to match the Sequence, the Company will proceed to the bucket that contains Reserve Pilots whose days of availability are equal to the Sequence length plus one day. The Company will continue with this progression until the Sequence is assigned or until there are no more Medium Call Reserves to consider for the assignment. If there is more than one Reserve Pilot in a bucket, the assignment will be made based on the priorities as specified in a) and b) below. If the Sequence is not assigned to a Medium Call Reserve, Crew Scheduling will proceed to Short Call Reserves as described in paragraph 3) below.

    a) Reserve Pilots who are legal (per FARS and the Agreement) to operate the entire Sequence, then

    b) "First in/first out" (FIFO). That is, the first Reserve Pilot to be released from a Reserve flying assignment shall be the first Reserve Pilot assigned to a flying assignment.

3)  If a Sequence is in Open Time less than 8 hours and 30 minutes prior to the scheduled Report Time the Company will attempt to assign the Sequence to a Short Call Reserve. The Company will attempt to assign the Sequence to a Reserve Pilot in the bucket that exactly matches the number of days of the Sequence. If no Pilots are available with the exact number of days available to match the Sequence, the Company will proceed to the bucket that contains Reserve Pilots whose days of availability are equal to the Sequence length plus one day. The Company will continue with this progression until the Sequence is assigned or until there are no more Short Call Reserves to consider for the assignment. If there is more than one Reserve Pilot in a bucket, the assignment will be made based on the priorities as specified in a) and b) below. If the Sequence is not assigned to a Short Call Reserve, Crew Scheduling may split the Sequence and begin the Reserve assignment process at 1) above over again.

    a) Reserve Pilots who are legal (per FARs and the Agreement) to operate the entire Sequence, then

    b) "First in/first out" (FIFO). That is, the first Reserve Pilot to be released from a Reserve flying assignment shall be the first Reserve Pilot assigned to a flying assignment.

Modify 5.T.3.d.1) to read:

*For any Domicile with greater than an average of 90 daily Duty Periods, a minimum number of Overnightable Reserves in each Window (after accounting for known open Duty Periods) shall be defined by the Association and the Company on at least a quarterly basis and published in the Reserve Trade/Swap folder. Initially, the minimum numbers shall be 4 each in the AM and Mid Windows, and 3 in the PM Window, but no less than 11 total Overnightable Reserves. This number may be modified by mutual agreement for projected Irregular Operations (e.g. forecasted Blizzard in DEN 3 days from now).*

6



## Collective Bargaining Agreement

12/01/10



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE · STE 140 · DENVER, CO 80249
303-323-0137 · FAX: 720-374-2021 · email@fapa.org

**Add 5.T.3.d.2) to read:**

In any Domicile with an average of 51 to 90 daily Duty Periods there shall be a minimum of 3 Reserves in the AM and MID Windows and 2 in the PM Window (after accounting for known open Duty Periods and prior to the Swap request) on the day of the requested Swap. However, if there were no Reserves awarded to a Window there shall be no requirement for Reserves in that Window to allow a Swap. (For example if all Windows are awarded and there are 8 total net reserves, a Swap would be allowed if the Window minimums are met. However, if no PM reserves were awarded the minimum sum to allow a Swap would be 6.) These numbers shall be reviewed by the Association and the Company on at least a quarterly basis and published in the Reserve Trade/Swap folder.

**Add 5.T.3.d.3) to read:**

In any Domicile with an average of 1 to 50 daily Duty Periods there shall be a minimum of 2 Reserves in each Window (after accounting for known open Duty Periods and prior to the Swap request) on the day of the requested Swap. However, if there were no Reserves awarded to a Window there shall be no requirement for Reserves in that Window to allow a Swap. These numbers shall be reviewed by the Association and the Company on at least a quarterly basis and published in the Reserve Trade/Swap folder.

Renumber paragraphs 5.T.3.d.2) to 5.T.3.d.4) and 5.T.3.d.3) to 5.T.3.d.5).

**Add 5.U.2.d. paragraphs:**

11) Sequence Domicile without DH
12) Sequence Domicile with DH

**Modify 5.V.2.d. to read:**

Pilots shall be called in reverse seniority order of Pilots in the Sequence Domicile who are legal for the JA and have not already been JA'd during that Monthly Bid Period.

**Modify 5.V.2.e. to read:**

If the JA cannot be filled in accordance with Paragraph d. above, then:
1) Modify the Sequence with Deadhead legs to change the Sequence to another Domicile (e.g. a MKE sequence is converted to DEN sequence with the deadhead legs) and call Pilots in that other Domicile in reverse seniority order.
2) Call Pilots who would require a schedule adjustment to be legal for the JA, in reverse seniority order. If a Schedule adjustment is required the Pilot shall be Pay Credited for the greater of the assignments at the JA rate.

**Modify 8.H. to read:**

CHANGE OF POSITION

**Modify 8.H.2. to read:**

A Pilot who changes Position must drop his scheduled vacation for the vacated Position and re-bid in seniority with Pilots in the same VSA or ISA award and associated SSA from Open Vacation Periods in his new Position. In the event there are no Open Vacation Periods available for bid in the new Position, they shall be assigned a vacation by the Company or paid in lieu of an awarded vacation at the Company's option.



**Collective Bargaining Agreement**                    12/01/10



FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER CO 80249
303-373-0197 • FAX 720-374-2027 • email@fapa.org

Modify 8.I. to read:

The following periods shall be used for bidding vacation periods. Unless otherwise mutually agreed to by the Association and the Company, vacation periods shall be distributed so that no period has more than 40% below and no more than 35% above than the annualized weekly average, and at least 1 of each of these periods shall be available for each Position. In addition, the distribution of available periods shall be similar between all Domiciles.

Modify 9.D.1. to read:

Unpaid leaves of absence may be offered to Pilots, by Position, at the discretion of the Company and shall generally be offered in increments of single Monthly Bid Periods. Pilots shall submit their request for a COLA in writing to Crew Planning prior to the deadline that shall be specified in the COLA bid. These unpaid leaves will be granted in seniority order and shall be posted online no later than the close of the next business day.

Modify 19.B.1. to read:

Pilots shall be furloughed in reverse order of seniority in accordance with the Frontier Airlines, Inc. Pilots System Seniority List.

Modify 19.E.1. to read:

Pilots shall be recalled in order of their seniority in accordance with the Frontier Airlines, Inc. Pilots System Seniority List. Such notice shall be sent via certified mail to their last known address. Such Pilots shall be allowed 15 calendar days, from postmark of the recall notice, in which to notify the Company in writing of their intent to return to Active Service.

Modify 19.E.2. to read:

A Pilot shall have the option to:

1. Accept the recall. He then shall be allowed no less than 15 calendar days (except by mutual agreement between the Pilot and the Company) from the date of acceptance to return to Active Service. The Company may, at its discretion, extend the period of time for a return to Active Service. or,
2. Bypass the specific recall, but be notified of any future recalls, or
3. Continue to bypass all recalls until all of the furloughed Pilots junior to him have been recalled or until he elects to cancel such notice.
4. If no response is received, it shall be assumed that the Pilot shall bypass the specific recall, but shall be notified of any future recalls.

Modify 19.E.3. to read:

In the event an insufficient number of Pilots accept recall, the Company may notify Pilots in inverse seniority order that recall is mandatory. In this event, the Company shall notify the Pilot of the mandatory recall. Such notice shall be sent via certified mail to their last known address. Such Pilots shall be allowed no less than 15 calendar days (except by mutual agreement between the Pilot and the Company) from the date of acceptance to return to Active Service or be removed from the Seniority List.



**Collective Bargaining Agreement**                    12/01/10



FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE · STE 140 · DENVER, CO 80249
303-373 0137 · FAX. 720-374-2027 · email@f94apa org.

Add the following to Section 23 Definitions

CDO Line : line of flying consisting only of CDO Sequences

Extended/Extension – a Reserve assignment out of the normal order in accordance with Section 5.Q.4.

Local Time – the time of day where the Pilot is physically located

Monthly Bid Package – a compilation of information including **Domicile** specific Sequences, lines of flying, etc. as described in Section 5.J

Secondary Staffing Adjustments – Staffing Adjustments directly caused by a posted Staffing Adjustment and awarded or assigned as part of the same bid

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:

Jacelyn W. Peter
Senior Manager, Labor Relations
Frontier Airlines, Inc.



**Collective Bargaining Agreement**                                    03/10/11

---

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0131 • FAX  720-374-2027 • eman@fstapa.org

March 10, 2011

Letter of Agreement 60

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Reserve Out of Domicile Assignment Clarification

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to clarify assignments that can be given to a reserve Pilot out of a Domicile.

Add the following to Appendix 4 Q&A following the "Schedule Integrity" Q&A:

Question: Can a Reserve Pilot be assigned to Deadhead out of his Domicile to another domicile without a specific flight assignment at that other domicile?

Answer: Assigning a Reserve Pilot to travel to another Domicile pending an assignment out of that other Domicile (either while "ready" on duty or while on rest in that Domicile) would be considered a TDY assignment for which there are no provisions in the Agreement. Assigning a Reserve Pilot to deadhead/fly from their Domicile to another Domicile for the purpose of being available in that other Domicile is not permitted.

However, if a Sequence meets the requirements of Section 5.0.7., Crew Scheduling may add Deadhead legs to the beginning and end of a Sequence to change the Domicile that the Sequence starts and ends in, and then subsequently assign the new Sequence to a Reserve Pilot in the new Sequence Domicile. For example a MKE-LGA-MKE Sequence may be modified to be DEN-MKE-LGA-MKE-DEN and then assigned to a DEN Reserve Pilot, but the change to make the Sequence a DEN Sequence must occur in accordance with Section 5.0.7., and must be done prior to being assigned to the DEN Reserve Pilot.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

---

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**                    04/26/11

# FRONTIER

Frontier Airlines, Inc.
7001 Tower Road
18th Level Hotel
Denver, CO 80249

April 26, 2011

Letter of Agreement 61

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association
18300 E. 71st Avenue, Suite 140
Denver, CO 80249

Grievance Process Modification

Dear Captain Thomas:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to modify the grievance process.

Modify Section 12.D to read:

D.  FIRST LEVEL OF GRIEVANCE – ASSOCIATION GRIEVANCE TO THE FRONTIER AIRLINES, INC. SENIOR MANGER OF LABOR  RELATIONS ("SENIOR MANAGER OF LABOR RELATIONS")

If the Association is not satisfied with the informal resolution of the dispute by the Chief Pilot or his designee, the Association may present a written grievance to the *Senior Manager of Labor Relations*.  If the written grievance is presented to the *Senior Manger of Labor Relations* by the Association, the following procedure shall apply:

1.   Association Grievance Format and Time Limit.

    a.  Format.  The Association shall file the grievance with the *Senior Manager of Labor Relations* in writing via hand delivery with a dated receipt signed by the *Senior Manager of Labor Relations* or via electronic mail with written (email or otherwise) response confirmation verifying receipt.

    b.  Time Limit.   The Association shall have 28 Calendar Days from the occurrence of the event upon which the grievance is based (or 28 Calendar Days after the Pilot and/or Association reasonably would be expected to have knowledge of the event upon which the grievance is based) to present the grievance to the *Senior Manager of Labor Relations*. Non-compliance by the Association with this time limit shall result in denial of the grievance on a non-precedent setting basis, with no further appeal.

2.  *Senior Manager of Labor Relations* Response Format and Time Limit.

    a.  Format.  The *Senior Manager of Labor Relations'* First Level Grievance decision shall be in writing and delivered via hand delivery with a written receipt signed by an Association employee or a member of the Association's Board, or via electronic mail to the Association President or his designee(s) listed in the written grievance submitted to the *Senior Manager of Labor Relations* with written (email or otherwise) response confirmation verifying receipt.

    b.  Time Limit.  The *Senior Manager of Labor Relations* shall render a decision within 7 Calendar days from the date the Association's grievance is filed at

**FAPA**

**Collective Bargaining Agreement**                    04/26/11

the First Level of Grievance. Non compliance by the *Senior Manager of Labor Relations* or disagreen with this time limit shall result in the grievance being advanced to Second Level of Grievance outlined in this Section.

Modify Section 12.E. to read:

E. SECOND LEVEL OF GRIEVANCE – ASSOCIATION APPEAL TO THE FRONTIER AIRLINES, INC. VICE PRESIDENT OF LABOR RELATIONS ("VICE PRESIDENT OF LABOR RELATIONS")

If the Association is not satisfied with the *Senior Manager of Labor Relations*' decision at the First Level of Grievance as described in this Section, the Association may appeal the *Senior Manager of Labor Relations*' decision to the *Vice President of Labor Relations*. If the grievance is appealed to the *Vice President of Labor Relations*, the following procedure shall be used:

1. Association Grievance Format and Time Limit.

   a. Format. The Association shall send a notice of appeal to the *Vice President of Labor Relations* in writing delivered via electronic mail with written (email or otherwise) response confirmation verifying receipt.

   b. Time Limit. The Association shall file the notice of appeal within 7 calendar days of the *Senior Manager of Labor Relations*' written decision. Non-compliance by the Association with this time limit shall result in denial of the grievance on a non-precedent setting basis, with no further appeal.

2. *Vice President of Labor Relations* Response Format and Time Limit.

   a. Format. The *Vice President of Labor Relations* shall render a decision in writing via electronic mail with written (email or otherwise) response confirmation verifying receipt.

   b. Time Limit. The *Vice President of Labor Relations* shall render a decision within 14 days from the date the Association's grievance is filed at the Second Level. Non-compliance by the *Vice President* shall result in the grievance being awarded to the Association on a non-precedent setting basis.

Modify Section 12.F. to read:

F. THIRD LEVEL OF GRIEVANCE – APPEAL TO THE SYSTEM BOARD OF ADJUSTMENT

If the Association is not satisfied with the *Vice President of Labor Relations*' decision at the Second Level of Grievance, the President of the Association or his designee (limited to a member of the Association Board) may appeal the decision to the System Board of Adjustment in accordance with the Procedures in Section 14. System Board of Adjustment.

Modify Section 13.A.3.a.2) to read:

2) Actual physical delivery with a written receipt for the delivery. Physical deliveries to the Association shall be signed for by a member of the Association's Board or by an Association employee. Physical deliveries to the Company shall be signed for by the Senior Manager of Labor Relations, a Director of Flight Operations, or a clerk in the Company mail room.

Add Section 13.A.3.a.3)

3) Electronic mail with written (email or otherwise) response confirmation verifying receipt.

Modify Section 13.A.4 to read:

Withholding a Pilot from Service. The Company may withhold a Pilot from service to the Company during any phase of Investigation or Discipline. The Pilot shall continue to receive all pay and benefits

1

**FAPA**

## Collective Bargaining Agreement

04/26/11

until the completion of the Company disciplinary hearing and subsequent decision by the Vice President of Labor Relations (or his designee) as described in this Section.

Modify Section 13.F.1 to read:

1. Time Limit – Within 7 days of the hearing, the Vice President of Labor Relations (or his designee, to include the Chief Pilot or the Senior Manager of Labor Relations) shall either issue a final decision or if mutually agreed to by the Company and the Association, hold an additional hearing on the matter at hand.

Modify Section 13.E.3. to read:

2. Failure to Render Decision. If the Vice President of Labor Relations or his designee fails to comply with the conditions specified in this subparagraph, the Pilot will not be subject to discipline, the matter will be considered abandoned by the Company and any and all records and/or references to the disciplinary proceeding and/or investigation shall be promptly removed from the Pilot's File.

Modify Section 13.F.1 to read:

1. If the Pilot is not satisfied with the decision rendered by the Vice President of Labor Relations or his designee, he shall notify the Association in writing. The Association may appeal the decision to the System Board of Adjustment in accordance with Section 14.

Modify Section 13.F.2 to read:

2. If the Association does not appeal the decision of the Vice President of Labor Relations or his designee to the System Board of Adjustment in accordance with Section 14, the decision of the Vice President of Labor Relations or his designee shall be considered final and binding on all parties.

Modify Section 14.A.4.2) to read:

2) Actual physical delivery with a written receipt for the delivery. Physical deliveries to the Association shall be signed for by a member of the Association's Board or by an Association employee. Physical deliveries to the Company shall be signed for by the Senior Manager of Labor Relations, a Director in Flight Operations, or a clerk in the Company mail room.

Add Section 14.A.4.a.3)

3) *Electronic mail with written (email or otherwise) response confirmation verifying receipt.*

Modify 14.B.1. to read:

Composition of SBA. The SBA shall consist of 2 Association Members appointed by the Association President and 2 Company employees appointed by the Vice President Labor Relations or the Senior Manager Labor Relations.

Modify Section 14.C.2. a. and b. to read:

a. Submittal to the SBA. The Association shall submit a "Notice of Appeal to the SBA" addressed to the SBA through the Chairman of the SBA. Copies of the "Notice of Appeal to the SBA shall also be sent by the Association to the SBA Vice Chairman and the Vice President Labor Relations or Senior Manager Labor Relations.

b. The Notice of Appeal to the SBA shall be submitted within 14 days of the decision of the Vice President Labor Relations (or his designee) that is being appealed to the SBA. Non-

1

---



compliance by the Association with this time unit shall result in denial of the appeal on a non-precedent setting basis, with no further appeal.

Modify Section 14.E.3. to read:

The SBA Chairman shall notify the SBA Vice Chairman, the Vice President Labor Relations or the Senior Manager of Labor Relations, and the Association President of the SBA hearing, to include the date, time and location of the hearing. The initial notification by the SBA Chairman may be in person, by telephone or by electronic mail, but shall be confirmed in writing within a reasonable time thereafter.

Modify Section 14.I.3. to read:

All SBA finding and decisions shall be rendered in writing to the Vice President Labor Relations and the Association President.

Sincerely,

*Jocelin Peltz*

Jocelin Peltz
Senior Manager, Labor Relations
Frontier Airlines, Inc.

Agreed: *[signature]*

Captain Jeff Thomas
President
Frontier Airline Pilots Association



**Collective Bargaining Agreement**                                      04/26/11



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX 720-374-2027 • email @f9tapa.org

Apri 26, 2011

Letter of Agreement 62

Jocalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, inc.
7001 Tower Road
Denver Colorado 80249

Reserve Assignments Over 14 hrs Duty for CDOs

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, inc. ("the Company") to allow Reserve Pilots to exceed the 14 Hour duty limitation for a combination of RDP and CDO duty time.

Modify Section 5.J.4.a. to read:

a. Pilots shall not be scheduled to be on duty for more than 14 hours, except:
1) during the Daylight Savings Time transition.
2) a CDO assignment that includes RDP time (i.e. the Sequence Duty Period) may not exceed 14 hours for a Short Call Reserve, in which case the Reserve Pilot shall be pay credited (on top of guarantee if the Pilot does not exceed 76 hours of Pay Credit) for all duty time (scheduled or actual) in excess of 14 hours. (For example: a CDO is scheduled for a 13 hour Duty Period and the Pilot's RDP starts 2 hours prior to the Report Time. The total duty time is scheduled for 15 hours. The Pilot shall be credited 1 hour (or greater if actual duty exceeds scheduled duty) of pay credit on top of guarantee.)

Add Section 4.N.6. to add:

6. For Short Call Reserves given CDO assignments for which the combination of CDO and RDP duty time is scheduled in excess of 14 hours of duty, the Pilot shall be pay credited on top of guarantee (greater of scheduled or actual) for all duty time in excess of 14 hours.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed
Jocalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                                    05/03/11



FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER CO 80249
303-371-0137 • FAX 720 374 2827 • email@f9fapa.org

May 3, 2011

Letter of Agreement 63

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Domicile Trade

Dear Ms. Peter,

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to allow Pilots in the Same Seat to bid to trade Domiciles under the following provisions.

Modify Section 6.F. to read:

F.     DOMICILE TRADE

    1.   A Domicile trade shall be held each July to allow Pilots to bid in/out of Domiciles.

        a.   In order to be awarded a trade, there must be a Pilot in the same Seat willing to trade out of the Domicile. Pilots shall not be bumped or displaced out of a Domicile.

        b.   Bids shall be submitted to Crew Planning via email to crewplanning@f9frontier.com between July 15 at 0900 LDT and July 20 at 0900 LDT.

        c.   Bids shall be awarded in seniority order on July 20 between 0900-1200 LDT. Submitted bids and awards shall be posted in Domicile lounges and submitted via email (emma@f9fapa.org) to FAPA no later than July 21 at 1200 LDT.

        d.   Any protest of an incorrect award (e.g. award out of seniority order) must be submitted to Crew Planning prior to July 23 at 1700 LDT.

    2.   The Domicile trade shall be effective on the first day of the September Monthly Bid Period.

    3.   Unless the two Pilots will trade the exact same vacation period (e.g. both Pilots hold week 33) the Pilots shall forfeit their vacation and re-bid in accordance with Section 8.H.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed: _____
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK

**FAPA**

**Collective Bargaining Agreement**          05/03/11



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX  720-974-2527 • email@fapa.org

May 3, 2011

Letter of Agreement 64

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado  80249

Relief Lines

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. (the Company") to modify the Relief/Reserve Line bidding and building process described in Section 5 of the FAPA Collective Bargaining Agreement. This LOA may be cancelled after July 31, 2011, by either party with seven (7) days advance written notice.

Modify the timetable in 5.H. to read:

24th 1700 *MGT bids awarded
25th 1700 *Relief line bid opens
26th 1700 Relief line bid closes
26th 2100 *Relief line bids awarded. Vacation slides must be submitted by 0800 o/n the 27th
26th 2100 Unawarded Relief line (if any) bid opens
27th 1700 Unawarded Relief line bid closes
27th 2100 *Unawarded Relief lines awarded
28th 0900 Daily open time bids open

Modify Section 5.N.2, to read:

2.   During the Relief/Reserve line construction process, the SSC and the Company shall agree on individual Sequences to be combined to create new Sequences to be added to Relief/Reserve Lines. *The SSC will also solicit input from Crew Scheduling to build additional Reserve Lines. These additional Reserve Lines will be built based upon the coverage requirements of the Company with no more than 16 RDPs in a 30-day bid month and no more than 17 RDPs in a 31-day bid month. The number of these additional Reserve Lines that will be built will be equal to the difference between the number of Relief/Reserve Lines awarded on the 14th and the number of Relief Lines built (i.e., Lines with Sequences).

Modify Section 5.N.3, to read:

3. These designated Relief/Reserve Lines and additional Reserve Lines will show Reserve Windows and days off. Flight time available after the completion of the Monthly Open Time Award will be used to construct Relief Lines. The days off shown on the Relief/ Reserve Line will no longer be valid for the construction of the Relief Line.

Modify Section 5.N.4, to read:

4.  Pilots awarded a Relief/Reserve Line have the option to:
   a.  bid on the Relief Lines built, or
   b.  bid on the additional Reserve Lines built, or
   c.  a Pilot may elect to keep his awarded Relief/Reserve Line (as of the 14th).
   Relief Lines and additional Reserve Lines shall be awarded based on seniority to those pilots awarded Relief/Reserve Lines during the initial Monthly line bidding process.



**Collective Bargaining Agreement**                    05/03/11

   FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720 374 2627 • email@fapaa.org

Moody Section 5.79.5, in main:

   5.   In the event there are *Relief Lines that are not awarded*, these lines shall be bid on by Reserve Pilots *in accordance with the timetable in Paragraph H.*

Sincerely:

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:

J8calyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.



**Collective Bargaining Agreement**                    05/03/11



FRONTIER AIRLINE PILOTS ASSOCIATION
18300 E 71ST AVE • STE 140 • DENVER CO 80249
303-373-9137 • FAX 720-374-2027 • email@frapa.org

May 3, 2011

Letter of Agreement 65

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Adding Open Time After 0930

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to allow Pilots to add Open Time after 0930 the day before the Sequence operates. This LOA may be cancelled after July 31, 2011, by either party with seven (7) days advance written notice.

Modify Section 5.0.8. to read:

8. All Sequences will no longer be available to bid *through the Electronic Bid System* by lineholders at 0930 LDT the day prior, and will be made available to Reserves at 1030 LDT the day prior to the start of the Sequence or remaining portion of a Sequence. *However, at the discretion of Crew Scheduling, Pilots may add Sequences available (i.e. not yet assigned to a Reserve prior to PTC) in Open Time by Positive Telephone Contact with Crew Scheduling after Aggressive Reserve awards are completed until two hours prior to the Report Time of the Sequence. (For example, if a Sequence is in Open Time with a Report Time of 1200 on Tuesday, a Pilot may add that trip any time between the award of Aggressive Reserve on Monday and 1000 on Tuesday.)* Swaps involving flying or reserve days/duty periods, all elements of the Swap request (i.e., the work being added and the work being removed) must be scheduled to occur within the same Monthly Bid Period.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

---

**Frontier Airlines Pilots Association**                    **LOA 65.1**


 FRONTIER AIRLINE PILOTS ASSOCIATION
5500 E 71ST AVE • STE 140 • DENVER, CO 80249
303-371-5040 • FAX 303-574-2257 • e-mail@fapa.org

May 23, 2011

Letter of Agreement 66

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Arbitrators

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to amend the list of arbitrators in Appendix 2.

Modify Appendix 2, to read:

The panel of arbitrators in accordance with Section 14.J.2, as of 5/20/11 shall be:

- Lorin Baeder
- Carol Wittenberg
- Ira Jaffee
- John Chalsen
- Roger Kaplan
- Jim Conway
- Barry Simon

Sincerely,

Captain Jeffrey Johnson
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    06/24/11

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

June 24, 2011

Letter of Agreement 67

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Restructuring Agreement

Dear Ms. Peter:

This Letter of Agreement 67 ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company").

A. **Investments:** The following modifications to the CBA constitute the investments:

1. The 7/1/11 pay adjustments in LOA 21 shall be deferred until January 1, 2016. During the duration of this agreement, should Frontier Airlines Holdings Inc. earn more than a 5% annual pretax profit (excluding special items), after payment of profit sharing payments, if any, in any calendar year, this pay adjustment shall be reinstated in the following year on the earlier of April 1st or the issuance date of the Frontier Airlines Holdings, Inc. audited financial statements.

2. The 1/1/12 pay adjustments in LOA 21 shall be deferred until January 1, 2017. During the duration of this agreement, should Frontier Airlines Holdings Inc. earn more than a 5% annual pretax profit (excluding special items), after payment of profit sharing payments, if any, for any two consecutive years, this pay adjustment shall be reinstated in the following year on the earlier of April 1st or the issuance date of the Frontier Airlines Holdings, Inc. audited financial statements.

3. In the event the reinstatement of pay in A.2. is effective prior to January 1, 2017, the Company and FAPA agree to negotiate in good faith for further upward pay adjustments based on business conditions.

4. Effective July 01, 2011 all Longevity steps, for the purposes of pay rates only, at year 2 and above shall be frozen for one year. (e.g. a Pilot moving to Year 10 Longevity for pay on August 15, 2011 would remain at year 9 Longevity scales, then move to year 10 Longevity pay on August 15, 2012). Effective July 01. 2015 the Longevity step will be restored based on Longevity in Section 4.A.1.

5. The Company's matching contribution to the 401k Plan referenced in Section 16.B.2. shall be reduced as follows:

    a. From 5% to 0% starting with the 7/20/11 paycheck until the 1/20/12 paycheck.

    b. From 5% to 3% starting with the 1/20/12 paycheck until the 1/20/14 paycheck.

    c. From 5% to 4% starting with the 1/20/14 paycheck until the 1/20/15 paycheck.

    d. Effective with the 1/20/15 paycheck or in the event Frontier Airlines Holdings Inc. earns more than a 5% annual pretax profit (excluding special items), after payment of profit sharing payments, if any, for any two consecutive years, the original match of 5% described in Section 16.B.2. shall be reinstated.

6. Vacation accruals described in 8.B. shall be reduced so that the accrual in 8.B.2. is reduced to 13 days and may be used in 1 or 2 periods; the accrual in 8.B.3. is reduced to 18 days and may be used in 1, 2 or 3 periods; and the accrual in 8.B.4. is

1



**Collective Bargaining Agreement**                    06/24/11


**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@fsfapa.org

reduced to 24 days and may be used in 1, 2, 3 or 4 periods. For purposes of bidding "blocks" of days described in Section 8.C.2., vacation periods shall be 6-8 days instead of 7 days. When bidding vacation periods, the Pilot shall bid on a numbered period listed in Section 8.I. and define the starting day, limited to the first or second day of the vacation period, and number of days for each period. Eight day periods must start on the first day, or the day prior to the first day, of the vacation period. (For example: A Pilot bids Period 35 SEP 16-22 for 6 days and may define Sep 16 or 17 as the start of the block of vacation days.) Pilots shall not be allowed to bid a 16-day vacation period. These changes shall only apply to the annual vacation periods taken in 2012 through 2015. Vacation accrual in 2015 (to be taken in 2016) shall be in accordance with Section 8.B.

7. Effective July 1, 2011 through December 31, 2015, the sick accrual described in Section 15.B. shall be reduced to 10 days per year (0.417 per pay period). The sick accrual rate described in Section 15.B. shall be reinstated effective January 1, 2016.

8. The amendable date in Section 24 shall be modified to reflect an amendable date of March 2, 2017 with an option for FAPA to reopen up to 12 months prior.

B.  Return on Investment

   1. The 1/1/15 pay rates in LOA 39 shall be effective on 3/1/17.

   2. Effective July 1, 2011, prior to Longevity being frozen per Paragraph A.4. above, all Pilots recalled from furlough in 2009 or 2010 shall have their Longevity adjusted to include the period of time on Furlough (i.e. uninterrupted Longevity based on Section 4.A.1.).

   3. In addition to the foregoing future "snapbacks" under the CBA, the Company and Republic Airways Holdings Inc. ("Republic") shall enter into a Commercial Agreement (the "Commercial Agreement") setting forth the commercial terms of the equity participation and profit sharing in the Company for the benefit of those persons employed as pilots by the Company as of the date of this LOA 67, in recognition of the immediate value of the investments made by those persons to the Company and Republic in executing the restructuring effort as presented to the Republic Board of Directors at its May 25, 2011 meeting.

C.  Conditionality:

   1. The investments in Paragraph A1, A4, A5 and A7 shall be effective, as scheduled in those paragraphs; however, those investments shall cease, and the affected terms of the CBA as in effect without the modifications in this LOA 67 shall be restored, if any of the conditions contained in Paragraph C of the Commercial Agreement are not met. All other investments in Paragraph A shall not take effect unless and until the conditions contained in Paragraph C of the Commercial Agreement have been met at the time of such investments and thereafter shall cease, and the affected terms of the CBA as in effect without the modifications in this LOA 67 shall be restored, if any of the conditions contained in Paragraph C of the Commercial Agreement are not met.

   2. Unless an Equity Event as defined in the Commercial Agreement occurs on or before December 31, 2014, all investments in Paragraph A shall cease as of that date.

D.  Additional Terms: The Commercial Agreement and related equity investment agreement and Frontier Pilots Profit Sharing Plan shall be exclusively for the benefit of those persons employed as pilots by the Company as of the date of this LOA 67 in recognition of the immediate value of the investments to the Company and Republic as set forth above, and shall not be deemed part of the CBA or subject to collective bargaining pursuant to the

2



**Collective Bargaining Agreement**                    06/24/11



**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

Railway Labor Act, as amended. References to the Commercial Agreement herein are solely for purposes of determining whether conditions of the Investments hereunder have been met or the Investments shall cease.

Agreed:

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

3

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                                06/24/11

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

June 24, 2011

Letter of Agreement 68

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

**Q&A for LOA 67**

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to add a Q&A to the end of Appendix 4.

**Question:** What is the intent of "all Investments in Paragraph A. shall cease as of that date." in LOA 67 Paragraph C.2.?

**Answer:** Should an Equity Event not occur the modifications to the CBA in Paragraph A. of LOA 67 shall not apply. As a result, the following shall be reinstated and/or restored:
- Pay adjustments in LOA 21
- Longevity steps in Section 4.A.1.
- The Company's matching contribution to the 401k Plan in Section 16.B.2.
- Vacation accruals described in Section 8.B.
- Sick accruals described in Section 15.B.
- Amendable date of 3/2/2015 in Section 24

**Question:** What does "reinstated and/or restored" mean in the Answer above?

**Answer:** It means that the referenced provisions will go back into effect. It does not mean that the Company will pay back the value of any concessions which have been made prior to the date the condition was not met.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**     06/24/11

**FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

June 24, 2011

Letter of Agreement 69

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

Structure

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company").

Modify Section 2.G.1. to read:

> *The Association Hotel Committee shall consist only of active Pilots bidding in Frontier Airlines, Inc. aircraft.* The Association *Hotel Committee* and the Company shall mutually agree on layover accommodations. The Association shall not unreasonably withhold its agreement on layover accommodations, taking into consideration the provisions of Paragraph 3. A current list of hotels shall be published each month by Flight Operations.

Modify Section 5.B.1. to read:

> The System Scheduling Committee (SSC) shall be composed of a Chairman and at least one Pilot per Domicile, *and shall consist only of active Pilots bidding in Frontier Airlines, Inc. aircraft.* The Association Board of Directors shall endeavor to appoint to the SSC those Pilots having the knowledge, experience, and available time, in order to best provide for consistent input. *For each category of aircraft (as defined in Section 4.B.1), schedules shall be built by Pilots who operate that category of aircraft.*

Modify Section 5.L.6. to read:

> Pilots on Association business shall be allowed to drop Sequences in accordance with Paragraph L.3. *by using the online Drop Form.* The Association may drop 1200 hours per year at no cost to the Association, *of which 25 hours per month shall be reserved for the SSC.* Any time over and above the 1200 hours shall be charged at that individual's Hourly Rate for the time dropped. Any time dropped for an individual(s) to meet with the Company, or for individuals to work on projects initiated by the Company shall not be charged to the Association.

Modify Section 14.B.1. to read:

> Composition of SBA. The SBA shall consist of 2 *Pilots* appointed by the Association President, and 2 Company employees appointed by the Vice President Labor Relations or the Senior Manager Labor Relations.



**Collective Bargaining Agreement**                    06/24/11

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

Modify Section 23 to read:

> Pilot - any employee *of Frontier Airlines, Inc.* covered under this Agreement, whose name appears on the Seniority List.

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed: 
Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.



**Collective Bargaining Agreement**                                    06/24/11

  **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@fsfapa.org

June 24, 2011

Letter of Agreement 70

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.
7001 Tower Road
Denver, Colorado 80249

**RSL/RSM Aggressive Reserve**

Dear Ms. Peter:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to allow Long and Medium Call Reserve to participate in Aggressive Reserve.

Modify the Section 5.S.9. margin note to read:

> All Reserves may bid Aggressive Reserve.

Modify Section 5.S.9.a). to read:

> Any open assignments shall be made available to be flown by *Long, Medium,* Short Call Reserve Pilots and be posted by 1030 LDT on the Electronic Bid System the day prior to the start of the assignment. Bids will close for these assignments daily at 1330 LDT. Sequences shall be awarded no later than 1530 LDT. All bid awards shall be *first among Short Call Reserves in seniority order, then among Long and Medium Call Reserves in seniority order.* The Pilot shall confirm the assignment by 2000 or upon release from any current assignment on the day of the award by the Electronic Bid System or Positive Telephone Contact with Scheduling. Once an assignment has been awarded it cannot be declined.

Modify Section 5.S.9.b.

> b.  Reserve Pilots may bid for desired Sequence(s) through the Aggressive Reserve process. For Short Call Reserve Pilots; the show time of the Sequence must fall within the Pilot's scheduled Reserve Window except by mutual agreement between the Pilot and Crew Scheduling. *For Long and Medium Call Reserve Pilots; if there is a Window where the net reserves on the DAG is negative, then an assignment outside that Window is at Crew Scheduling's discretion.*

Add Section 5.R.5. to read:

> *Long and Medium Call Reserves may participate in Aggressive Reserve as described in Section 5.S.9.*



**Collective Bargaining Agreement**                    06/24/11

 **FRONTIER AIRLINE PILOTS ASSOCIATION**
18300 E 71ST AVE • STE 140 • DENVER, CO 80249
303-373-0137 • FAX: 720-374-2027 • email@f9fapa.org

Sincerely,

Captain Jeffrey Thomas
President
Frontier Airline Pilots Association

Agreed:

Jacalyn W. Peter
Senior Manager Labor Relations
Frontier Airlines, Inc.



**FAPA** Frontier Airline Pilots Association

October 30, 2014

**Letter of Agreement 71**

Scott Gould
Vice President of Flight Operations
Frontier Airlines, Inc.
7001 Tower Road
Denver, CO 80249-7312

**Seniority List**

Dear Captain Gould:

This Agreement is entered into by FRONTIER AIRLINES, INC. ("Frontier" or the "Company") and the FRONTIER AIRLINE PILOTS ASSOCIATION ("FAPA" or the "Association") confirming the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA and the reasonable seniority system to be followed at Frontier as a separate carrier, and shall constitute Letter of Agreement 71 to the collective bargaining agreement governing the terms and conditions of employment of the Pilot employees of Frontier (the "Frontier CBA").

WHEREAS Section 1.B.2. of the Frontier CBA provides: "The purpose of this Agreement, in the mutual interest of the Company and the Association, is to provide for the operation of the Company under methods which shall further, to the fullest extent possible, the safety of air transportation, the efficiency of operation, the sustained profitability of the Company and the continued employment of all Pilots under reasonable working conditions and with proper compensation;" and, as a legitimate subject of collective bargaining, the seniority rights of the pilot employees of Frontier are governed by the Frontier CBA;

WHEREAS Section 1.F.1. of the Frontier CBA requires that all flying performed by the Company shall be performed by Pilots whose names appear on the Frontier Airlines, Inc. Pilots System Seniority List (the "Seniority List");

WHEREAS Section 3.A.1. of the Frontier CBA provides, in part: "The seniority of a Pilot shall begin to accrue from the date the Pilot is first placed on the Company payroll as a Pilot ...;" and Section 3.B. of the Frontier CBA requires that the Seniority List be maintained, updated and published in accordance with the provisions thereof;

WHEREAS, effective October 31, 2009, Frontier Holdings, Inc. and its affiliates, including the Company, were acquired by Republic Airways Holdings, Inc. ("RAH");

Page 1 of 6



**Collective Bargaining Agreement**                                    10/30/14

WHEREAS, in connection with the RAH acquisition, the Company and FAPA entered into Letter of Agreement 39 to the Frontier CBA ("LOA 39"), which provided, in part, for the creation of a Master Seniority List ("MSL" or "IMSL") including the pilots of Frontier and the other RAH affiliates, in accordance with Sections 3 and 13 of the Allegheny/Mohawk Labor Protective Provisions, but also provided, with respect thereto:

> Such MSL list shall be applied for transfer of pilots between the Company and any RAH entity only as may be hereafter agreed to by RAH, FAPA (or any properly-designated successor to FAPA) and the properly-designated representative of Republic pilots or any other pilot group of an RAH entity. The carriers will be operated separately under their respective CBAs without integration of the Pilot seniority lists until such integration and implementation is agreed to and concluded in accordance with Sections 3 and 13 of the Allegheny- Mohawk LPPs;

WHEREAS, on November 3, 2009, a Dispute Resolution Agreement ("DRA") establishing the procedure for the creation of the IMSL was entered into among "Republic Airways Holdings Inc. (RAH), on behalf of itself and its wholly owned affiliates Republic Airline Inc., Chautauqua Airlines, Inc. and Shuttle America Corp. (hereinafter collectively, "Republic"), Midwest Airlines, Inc., Frontier Airlines, Inc. and Lynx Aviation, Inc. (RAH and its affiliates together one "party" under this Agreement), and the Republic, Midwest, Frontier and Lynx pilots, as represented by their respective Seniority Merger Committees (the "Merger Committees") as duly created and authorized by each pilot group's duly designated representative (each such Merger Committee another "party" under this Agreement);" and Frontier was thus a party to the DRA only insofar as it was a "wholly owned affiliate" of RAH;

WHEREAS, pursuant to Section II.(e) and V.(g) of the DRA, an IMSL could not become effective before "the National Mediation Board (NMB) issues its ruling on whether the RAH affiliates comprise a single transportation system and certifies the Organization, if any, that is the duly designated representative of the pilot craft or class on that transportation system;" Section V.(g) of the DRA provided that the seniority arbitrator's award be final and binding on the single carrier and "the pilots employed by RAH and its affiliates;" Section V.(h) of the DRA provided for the continued existence of the Merger Committees solely pursuant to the authority of "[t]he Organization, if any, designated by the NMB as the duly designated representative of the combined craft or class of Flight Deck Crew Members for the single transportation system;" and Section V.(j) of the DRA required that the seniority arbitrator's award be considered to be a part of "the collective bargaining agreement(s) applicable to the combined craft or class," and provided for the resolution of disputes arising from the interpretation and application of the award before "the adjustment board established by the designated representative of the combined craft or class and the single carrier of Flight Deck Crew Members for the single transportation system final and binding on the single carrier;"

WHEREAS, pursuant to the DRA, an arbitration was held before Arbitrator Dana E. Eischen resulting in a February 19, 2011 Award creating and IMSL subject to specified conditions (the "Eischen Award");

**LOA 71.2**

WHEREAS, in his Award, Arbitrator Eischen acknowledged that "[i]t is unknown whether the NMB will find a single transportation system for the pilot craft or class; if so, which of the pre-acquisition carriers will be included; and what organization, if any, will be certified by the NMB as the representative of the combined pilot craft and class in such a single transportation system," and therefore provided in the Eischen Award that the IMSL would not become effective until 60 days following the certification of a single bargaining representative for the combined craft or class following a finding of a single transportation system;

WHEREAS Arbitrator Eischen also acknowledged in his Award that "[m]y arbitral authority under the DRA does not extend to elimination or modification of existing contract language or to resolution of issues unrelated to the seniority integration, which must be addressed in another forum or at the negotiations table;" and that, "[a]fter the NMB makes its determinations, the designated single representative and the Company must negotiate an implementing agreement and/or consolidate the applicable CBAs;"

WHEREAS the Eischen Award assumed a future finding by the NMB that a single transportation system existed including Frontier and the Frontier Pilots, and that, "if the NMB concludes that Frontier is not part of the Republic single transportation system for the pilot craft or class, the integration methodology of the Award will be applied with the Frontier pilots excluded;"

WHEREAS in March 2011, before the Eischen Award became effective, Frontier hired certain former Midwest Pilots as new hires at Frontier, at which time said pilots were first placed on the Company payroll as pilots, with seniority determined in accordance with Section 3.A.1. of the Frontier CBA;

WHEREAS, pursuant to an application by the International Brotherhood of Teamsters, Airline Division (the "IBT"), on April 7, 2011 the NMB found that a single transportation system existed including, *inter alia*, Frontier and the RAH-affiliated carriers, pursuant to which, on June 28, 2011, the NMB certified the IBT as the single bargaining representative for the combined pilot craft or class,

WHEREAS, the Eischen Award therefore became effective on August 27, 2011; but no agreement implementing the Eischen Award and/or modifying LOA 39 was ever negotiated, as a result of which Frontier's flight operations remained separate from those of RAH's other affiliates; and Section 3 and the other seniority-related provisions of the Frontier CBA otherwise remained in effect without modification following the effective date of the Eischen Award;3

WHEREAS, in a Supplemental Award issued on October 22, 2011 (the "October 2011 Supplemental Award"), Arbitrator Eischen reiterated that, while the IMSL "confer[red] on each pilot a specific seniority rank status", "[u]nless and until the Company and the IBT agree upon collectively bargained contractual modifications or new Agreements, the IMSL does so in the context of the RJET/IBT Agreement and the Frontier/FAPA Agreement. Various collectively bargained provisions in those respective Agreements address the invocation, utilization, administration, implementation and retention of the seniority rank status conferred upon a pilot by the IMSL;"

Page 3 of 6



**Collective Bargaining Agreement**                                    10/30/14

WHEREAS, in the October 2011 Supplemental Award, Arbitrator Eischen held that the Eischen Award did not support or require any conditions or restrictions upon the exercise of IMSL seniority rank status for schedule, vacation and other recurrent bidding purposes, including the exercise of IMSL seniority by the Midwest Pilots hired by Frontier in March 2011 based on the effectiveness of the Eischen Award;

WHEREAS, in a further Supplemental Award issued on September 12, 2014 (the "September 2014 Supplemental Award"), Arbitrator Eischen reiterated that "'seniority rank status' through placement on the IMSL does not, in and of itself, confer any specific contractual right to the 'invocation, utilization, administration or implementation' of that status for any given position—all of which must be determined by reference to the terms of the existing CBAs," and that 'the hard work of amending currently applicable contractual provisions to facilitate expanded utilization of the seniority rank status conferred by the IMSL must be done at the bargaining table, not by an end run through the arbitration forum;" and held that the Eischen Award does not compel the awarding of vacancies at Frontier except through the contractual processes of the Frontier CBA;

WHEREAS, pursuant to Letter of Agreement 67 of the Frontier CBA ("LOA 67"), between June 24, 2011 and December 3, 2013, RAH and Frontier took various actions to separate Frontier from RAH and the other RAH affiliates; effective December 3, 2013, RAH sold a 100 per cent interest in Frontier to an investment group controlled by Indigo Partners, LLC, in which RAH had no interest; and, effective December 3, 2013, Frontier ceased to be an affiliate of RAH;

WHEREAS, on March 31, 2014, pursuant to a petition by FAPA, the NMB found that Frontier is a separate carrier from the RAH-affiliated carriers, noting, in part:

> Arbitrator Eischen issued the IMSL on February 19, 2011, before the Board's single system determination. Eischen noted that if the Board were to find Frontier separate from the Republic system, "the integration methodology of the Award will be applied with the Frontier pilots excluded." Further, the Award noted that its application may change if "facts and circumstances have materially changed ...;"

WHEREAS, on June 13, 2014, the NMB certified FAPA as the exclusive bargaining representative of the Frontier Pilot craft or class;

WHEREAS, based on the foregoing, as of June 13, 2014 and thereafter, Frontier is not an affiliate of RAH; Frontier is not part of a single transportation system with the RAH-affiliated carriers; the Frontier Pilots are not employed by RAH or any RAH affiliate; the Frontier Pilots are not part of a combined craft or class; FAPA is not the bargaining representative of a combined craft of class; and the Frontier CBA is not a collective bargaining agreement applicable to a combined craft or class;

WHEREAS, accordingly, as of June 13, 2014 none of the conditions for the application of the Eischen Award and IMSL with respect to Frontier exist, and Section 3 and the other seniority-related provisions of the Frontier CBA apply by their terms without modification;

Page 4 of 6

WHEREAS, Frontier and FAPA have mutually agreed on the correct interpretation and application of the seniority-related provisions of the Frontier CBA in light of the foregoing;

WHEREAS, in addition to representing the correct interpretation and application of the existing seniority-related provisions of Frontier CBA, Frontier and FAPA have agreed that, in the event of any dispute or inconsistency regarding the correct interpretation and application of such provisions, the administration of seniority agreed upon in this Letter of Agreement will, in light of the same circumstances, represent reasonable working conditions and be consistent with proper compensation, by treating all pilots' seniority rights similarly based on the first date each pilot appeared on the payroll as a pilot employee of Frontier; restoring the normal seniority system historically used at Frontier as a separate carrier; and thereby furthering stability and the stated purposes of the Frontier CBA;

WHEREAS, as of September 13, 2014, at FAPA's request the Company is administering the Frontier CBA in accordance with those understandings; and

WHEREAS it is desirable to set out with specificity the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA, and in any event the reasonable seniority system to follow for Frontier as a separate carrier; and the Company and the Association accordingly wish to confirm in writing those understandings;

IT IS NOW THEREFORE AGREED AS FOLLOWS:

1. Effective June 13, 2014, the Eischen Award and the IMSL (including any restriction on a pilot's exercise of contractual seniority), are no longer effective with respect to seniority under the Frontier CBA.

2. Effective June 13, 2014, the seniority of a Pilot under the Frontier CBA shall be determined based on the date on which the Pilot was first placed on the Company payroll as a pilot, in accordance with Section 3.A.1. of the Frontier CBA; and the Frontier Airlines, Inc. Pilot System Seniority List or "Seniority List" shall be determined in accordance with Section 3.B. of the Frontier CBA.

3. A copy of the Seniority List, effective as of June 13, 2014, is attached as Appendix 1 to this Letter of Agreement, and shall constitute the Seniority List as defined in Section 3.B. of the Frontier CBA.

4. The Company will maintain and post an accurate copy of the Seniority List, as updated, in accordance with Section 3.B.3 of the Frontier CBA.

5. A Pilot may protest his position on the Seniority List in accordance with Section 3.C. of the Frontier CBA.

6. Unless otherwise specifically provided in this Letter of Agreement, all terms in this Letter of Agreement shall have the meaning they have under the Frontier CBA.



**Collective Bargaining Agreement**                                    10/30/14

7.  This written Letter of Agreement, confirming the parties' mutual understandings as to the correct interpretation and application of the seniority-related provisions of the Frontier CBA and the reasonable seniority system to be followed at Frontier as a separate carrier, shall be effective upon ratification of this written Letter of Agreement pursuant to FAPA Constitution and Bylaws.

IN WITNESS WHEREOF, the parties hereto have signed this Letter of Agreement this 30th day of October, 2014

FOR: Frontier Airlines, Inc.                    FOR: Frontier Airline Pilots Association

_____                         _____

Captain Scott Gould, VP-Flight Operations        First Officer Brian Ketchum, President

Page 6 of 6

**LOA 71.6**

**FAPA**

**Collective Bargaining Agreement**                    10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Allen | James | 400056 | 05/16/94 | 02/13/52 | AIRBUS | CAPT | LOA | DEN |
| 2 | Flavan Iii | David | 400057 | 05/16/94 | 07/08/53 | AIRBUS | CAPT | 1 | DEN |
| 3 | Rider | Mike | 400060 | 05/16/94 | 07/26/61 | AIRBUS | CAPT | 2 | DEN |
| 4 | Ross | Derek | 400188 | 06/20/94 | 04/21/60 | AIRBUS | CAPT | 3 | DEN |
| 5 | Broady | Jeffery | 400192 | 06/20/94 | 06/08/61 | AIRBUS | CAPT | LOA | DEN |
| 6 | Durnford | Francis | 400194 | 06/20/94 | 12/26/62 | AIRBUS | CAPT | 4 | DEN |
| 7 | Clark | Larry | 400260 | 09/06/94 | 07/24/59 | AIRBUS | CAPT | 5 | DEN |
| 8 | Vaughan | Gordon | 400261 | 09/06/94 | 05/30/62 | AIRBUS | CAPT | 6 | DEN |
| 9 | Sullivan Jr | James | 400266 | 09/06/94 | 07/14/64 | AIRBUS | CAPT | 7 | DEN |
| 10 | Cavender | Timothy | 400178 | 09/06/94 | 03/14/66 | AIRBUS | CAPT | 8 | DEN |
| 11 | Stock | Ronald | 400373 | 11/16/94 | 09/07/55 | AIRBUS | CAPT | 9 | DEN |
| 12 | Benine | Ryan | 400375 | 11/16/94 | 12/19/65 | AIRBUS | CAPT | 10 | DEN |
| 13 | Smith | Darin | 400536 | 06/11/95 | 04/29/65 | AIRBUS | CAPT | 11 | DEN |
| 14 | Price | Jeffery | 400548 | 07/05/95 | 12/21/56 | AIRBUS | CAPT | 12 | DEN |
| 15 | Bair | David | 400549 | 07/05/95 | 01/28/58 | AIRBUS | CAPT | 13 | DEN |
| 16 | Newman | Shane | 400550 | 07/05/95 | 03/08/66 | AIRBUS | CAPT | 14 | DEN |
| 17 | Mclaughlin | Todd | 400557 | 07/10/95 | 04/19/56 | AIRBUS | CAPT | 15 | DEN |
| 18 | Flesch | Karl | 400561 | 07/10/95 | 12/13/57 | AIRBUS | CAPT | 16 | DEN |
| 19 | Graham | Steven | 400572 | 07/10/95 | 03/29/63 | AIRBUS | CAPT | 17 | DEN |
| 20 | Appleby | Henry | 400609 | 10/02/95 | 11/09/54 | AIRBUS | CAPT | 18 | DEN |
| 21 | Kelley | David | 400610 | 10/02/95 | 05/24/60 | AIRBUS | CAPT | 19 | DEN |
| 22 | Sala | Orville | 400614 | 10/02/95 | 11/20/65 | AIRBUS | CAPT | 20 | DEN |
| 23 | Wayman | Ian | 400658 | 10/23/95 | 08/27/61 | AIRBUS | CAPT | 21 | DEN |
| 24 | Sundquist | Christopher | 400663 | 10/23/95 | 12/06/67 | AIRBUS | CAPT | 22 | DEN |
| 25 | Zink | Douglas | 400867 | 03/11/96 | 09/29/60 | AIRBUS | CAPT | 23 | DEN |
| 26 | Howell | Eric | 400869 | 03/11/96 | 12/23/63 | AIRBUS | CAPT | 24 | DEN |
| 27 | Morrey II | Thomas | 400872 | 03/11/96 | 01/27/65 | AIRBUS | CAPT | 25 | DEN |
| 28 | Nevels | Wesley | 400876 | 03/11/96 | 02/27/66 | AIRBUS | CAPT | 26 | CHI |
| 29 | Hayes | Kevin | 400925 | 04/08/96 | 12/18/54 | AIRBUS | CAPT | 27 | DEN |
| 30 | Alexander | John | 400927 | 04/08/96 | 08/06/60 | AIRBUS | CAPT | 28 | DEN |
| 31 | Eastman | Douglas | 400933 | 04/08/96 | 03/01/67 | AIRBUS | CAPT | 29 | DEN |
| 32 | Gates | Dennis | 400934 | 04/12/96 | 03/21/51 | AIRBUS | CAPT | 30 | DEN |
| 33 | Torza | Douglas | 400955 | 04/29/96 | 03/03/51 | AIRBUS | CAPT | LOA | DEN |
| 34 | Mallo | Rory | 400959 | 04/29/96 | 09/29/61 | AIRBUS | CAPT | 31 | DEN |
| 35 | Helling | Todd | 400960 | 04/29/96 | 10/13/62 | AIRBUS | CAPT | 32 | DEN |
| 36 | Doyle | Patrick | 400963 | 04/29/96 | 12/19/67 | AIRBUS | CAPT | 33 | DEN |
| 37 | Beeman | Jerry | 401322 | 01/13/97 | 10/16/60 | AIRBUS | CAPT | LOA | DEN |
| 38 | Sparks | Samuel | 401324 | 01/13/97 | 09/30/63 | AIRBUS | CAPT | 34 | DEN |
| 39 | Powell | Shawn | 401326 | 01/13/97 | 10/09/67 | AIRBUS | CAPT | 35 | DEN |
| 40 | Blackmon | David | 401397 | 03/03/97 | 11/17/57 | AIRBUS | CAPT | 36 | DEN |
| 41 | Hall | Renan | 401398 | 03/03/97 | 02/03/60 | AIRBUS | CAPT | 37 | DEN |
| 42 | Schmidt | Keith | 401399 | 03/03/97 | 01/19/61 | AIRBUS | CAPT | 38 | DEN |
| 43 | Vita | Andreas | 401400 | 03/03/97 | 06/02/62 | AIRBUS | CAPT | 39 | DEN |
| 44 | Gysin | Kathy | 401401 | 03/03/97 | 07/02/63 | AIRBUS | CAPT | LOA | DEN |
| 45 | Emery | James | 401404 | 03/03/97 | 04/22/70 | AIRBUS | CAPT | 40 | DEN |
| 46 | Thigpen | James | 401444 | 03/31/97 | 08/12/64 | AIRBUS | CAPT | 41 | DEN |
| 47 | Hanrahan | Edward | 401535 | 06/02/97 | 11/15/60 | AIRBUS | CAPT | 42 | DEN |
| 48 | Tyson | David | 401536 | 06/02/97 | 06/12/63 | AIRBUS | CAPT | 43 | DEN |
| 49 | Durbin | Brian | 401541 | 06/02/97 | 05/31/73 | AIRBUS | CAPT | 44 | DEN |
| 50 | Fair | Christopher | 401601 | 07/07/97 | 01/03/50 | AIRBUS | CAPT | 45 | DEN |
| 51 | Zelinski | Timothy | 401609 | 07/07/97 | 10/29/59 | AIRBUS | CAPT | 46 | DEN |
| 52 | Steffers | Steven | 401611 | 07/07/97 | 09/05/63 | AIRBUS | CAPT | 47 | DEN |
| 53 | Baer | Jeffery | 401612 | 07/07/97 | 07/06/64 | AIRBUS | CAPT | 48 | DEN |
| 54 | Meehan | Frederick | 401663 | 08/11/97 | 02/25/57 | AIRBUS | CAPT | 49 | DEN |

Page 1 of 15



**Collective Bargaining Agreement**   10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 55 | Hart | Stephen | 401665 | 08/11/97 | 10/15/57 | AIRBUS | CAPT | 50 | DEN |
| 56 | Pucci | Larry | 401666 | 08/11/97 | 08/10/59 | AIRBUS | CAPT | 51 | DEN |
| 57 | Rinehart | Scott | 401671 | 08/11/97 | 08/30/68 | AIRBUS | CAPT | 52 | DEN |
| 58 | Howell | Nicholas | 401676 | 08/11/97 | 11/23/68 | AIRBUS | CAPT | 53 | DEN |
| 59 | Harke | Gwyn | 401873 | 10/20/97 | 08/05/56 | AIRBUS | CAPT | 54 | DEN |
| 60 | Mateyko | Gregory | 401877 | 10/20/97 | 10/19/67 | AIRBUS | CAPT | 55 | DEN |
| 61 | Walker | David | 401884 | 10/20/97 | 08/27/68 | AIRBUS | CAPT | 56 | DEN |
| 62 | Vogel | Kevin | 401892 | 10/20/97 | 10/13/70 | AIRBUS | CAPT | 57 | DEN |
| 63 | Bendik | James | 402133 | 02/03/98 | 01/20/60 | AIRBUS | CAPT | 58 | DEN |
| 64 | Spanos | Christopher | 402135 | 02/03/98 | 01/16/65 | AIRBUS | CAPT | 59 | DEN |
| 65 | Duncan | Thomas | 402226 | 03/02/98 | 01/24/60 | AIRBUS | CAPT | 60 | DEN |
| 66 | Roscoe | Karl | 402227 | 03/02/98 | 02/21/61 | AIRBUS | CAPT | 61 | DEN |
| 67 | Wertzbaugher | Shawn | 402228 | 03/02/98 | 05/08/63 | AIRBUS | CAPT | 62 | DEN |
| 68 | Parker | Keith | 402312 | 05/04/98 | 03/27/51 | AIRBUS | CAPT | LOA | DEN |
| 69 | Pratt | Leonard | 402318 | 05/04/98 | 08/28/58 | AIRBUS | CAPT | 63 | DEN |
| 70 | Mihalcin | Michael | 402321 | 05/04/98 | 10/07/58 | AIRBUS | CAPT | 64 | DEN |
| 71 | Boyd | Simon | 402322 | 05/04/98 | 11/23/60 | AIRBUS | CAPT | 65 | DEN |
| 72 | Francois | Paul | 402402 | 06/29/98 | 03/13/63 | AIRBUS | CAPT | 66 | DEN |
| 73 | Boifeuillet | George | 402405 | 06/29/98 | 08/14/64 | AIRBUS | CAPT | 67 | DEN |
| 74 | Schneider | Chris | 402408 | 06/29/98 | 12/23/64 | AIRBUS | CAPT | 68 | DEN |
| 75 | Statham Jr | Vivian | 402681 | 09/08/98 | 05/08/52 | AIRBUS | F/O | LOA | DEN |
| 76 | Rivers | Dave | 402682 | 09/08/98 | 10/01/53 | AIRBUS | CAPT | 69 | DEN |
| 77 | Osborn | Iver | 402683 | 09/08/98 | 09/09/63 | AIRBUS | CAPT | 70 | DEN |
| 78 | Vollstad-Mckean | Kristin | 402684 | 09/08/98 | 09/22/64 | AIRBUS | CAPT | 71 | DEN |
| 79 | Jewett | Brandon | 402687 | 09/08/99 | 08/14/73 | AIRBUS | CAPT | 72 | DEN |
| 80 | Mcdonald | Thomas | 402798 | 10/12/98 | 07/20/51 | AIRBUS | F/O | 1 | DEN |
| 81 | Jameson | Thomas | 402800 | 10/12/98 | 05/12/54 | AIRBUS | CAPT | 73 | DEN |
| 82 | Worker | Lewis | 402802 | 10/12/98 | 09/09/61 | AIRBUS | CAPT | 74 | DEN |
| 83 | Gwynn | William | 402850 | 10/26/98 | 08/25/54 | AIRBUS | CAPT | 75 | DEN |
| 84 | Dervartanian | Michael | 402852 | 10/26/98 | 08/08/56 | AIRBUS | CAPT | LOA | DEN |
| 85 | Riggio | Frank | 402854 | 10/26/98 | 02/09/61 | AIRBUS | CAPT | 76 | DEN |
| 86 | Newman | Samuel | 402856 | 10/26/98 | 04/07/65 | AIRBUS | CAPT | 77 | DEN |
| 87 | Friedman | Steven | 402857 | 10/26/98 | 01/17/68 | AIRBUS | CAPT | 78 | DEN |
| 88 | Haehnel | Patrick | 402858 | 10/26/98 | 04/18/68 | AIRBUS | CAPT | 79 | DEN |
| 89 | Jordan | James | 402860 | 10/26/98 | 02/08/73 | AIRBUS | CAPT | 80 | DEN |
| 90 | Johnson | Evan | 402887 | 11/09/98 | 02/10/50 | AIRBUS | CAPT | 81 | DEN |
| 91 | Kugler | John | 402888 | 11/09/98 | 08/01/50 | AIRBUS | CAPT | 82 | DEN |
| 92 | Waldrop | Luther | 402889 | 11/09/98 | 05/06/55 | AIRBUS | CAPT | LOA | DEN |
| 93 | Scofield | Tom | 402890 | 11/09/98 | 08/04/56 | AIRBUS | F/O | 2 | DEN |
| 94 | Kohler | John | 402891 | 11/09/98 | 03/17/59 | AIRBUS | CAPT | 83 | DEN |
| 95 | Davidson | David | 402892 | 11/09/98 | 07/18/59 | AIRBUS | CAPT | 84 | DEN |
| 96 | Jacobs | Zamir | 402893 | 11/09/98 | 03/21/61 | AIRBUS | CAPT | 85 | DEN |
| 97 | Estes | Daniel | 402894 | 11/09/98 | 03/27/61 | AIRBUS | CAPT | 86 | DEN |
| 98 | Lough | David | 402895 | 11/09/98 | 07/08/62 | AIRBUS | CAPT | 87 | DEN |
| 99 | Arellano | Larry | 402897 | 11/09/98 | 05/06/64 | AIRBUS | CAPT | 88 | DEN |
| 100 | Lenberg | Edward | 402898 | 11/09/98 | 07/01/64 | AIRBUS | CAPT | 89 | DEN |
| 101 | Hart | Sean | 402901 | 11/09/98 | 03/25/69 | AIRBUS | CAPT | 90 | DEN |
| 102 | Lund | David | 403071 | 01/18/99 | 09/24/55 | AIRBUS | CAPT | 91 | DEN |
| 103 | Reigle | Duane | 403073 | 01/18/99 | 10/08/64 | AIRBUS | CAPT | 92 | CHI |
| 104 | Ruggeberg | Jeffrey | 403077 | 01/18/99 | 06/02/70 | AIRBUS | CAPT | 93 | DEN |
| 105 | Gould | Scott | 403078 | 01/18/99 | 07/06/71 | AIRBUS | CAPT | VP of Flt Ops | DEN |
| 106 | Schoppe | Robert | 403223 | 02/15/99 | 09/21/52 | AIRBUS | CAPT | 94 | DEN |
| 107 | Renco | Angelo | 403225 | 02/15/99 | 05/27/55 | AIRBUS | CAPT | LOA | DEN |
| 108 | Atterbury Jr | Thomas | 403226 | 02/15/99 | 07/06/56 | AIRBUS | CAPT | 95 | DEN |

**LOA 71.8**

**FAPA**

**Collective Bargaining Agreement**                      10/30/14

# FRONTIER AIRLINES PILOT SENIORITY LIST

## EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|-------|-----------|------------|------|-----|-----|-----------|------|------------|----------|
| 109 | Cepeda | Raymond | 403227 | 02/15/99 | 12/21/61 | AIRBUS | CAPT | 96 | DEN |
| 110 | Isert | Timothy | 403229 | 02/15/99 | 09/05/67 | AIRBUS | CAPT | 97 | DEN |
| 111 | Linn | Craig | 403230 | 02/15/99 | 05/10/73 | AIRBUS | CAPT | 98 | DEN |
| 112 | Manoucherian | Amir | 403430 | 03/15/99 | 06/12/61 | AIRBUS | CAPT | 99 | DEN |
| 113 | Mezo | Derek | 403431 | 03/15/99 | 04/17/63 | AIRBUS | CAPT | 100 | DEN |
| 114 | Guthrie | Kevin | 403432 | 03/15/99 | 07/20/63 | AIRBUS | CAPT | 101 | DEN |
| 115 | Van Loo | Karl | 403434 | 03/15/99 | 05/02/65 | AIRBUS | CAPT | 102 | DEN |
| 116 | Marek Jr | Clifford | 403435 | 03/15/99 | 11/12/66 | AIRBUS | CAPT | 103 | DEN |
| 117 | Peterson | Craig | 403436 | 03/15/99 | 11/20/68 | AIRBUS | CAPT | 104 | DEN |
| 118 | Cervantes | Arturo | 403437 | 03/15/99 | 11/16/69 | AIRBUS | CAPT | 105 | DEN |
| 119 | Ernst | Jacqueline | 403588 | 04/26/99 | 12/15/53 | AIRBUS | CAPT | 106 | DEN |
| 120 | Christy | James | 403591 | 04/26/99 | 07/14/57 | AIRBUS | CAPT | 107 | DEN |
| 121 | Droegemueller | David | 403592 | 04/26/99 | 07/25/58 | AIRBUS | CAPT | Training | DEN |
| 122 | Bickerstaff | Kevin | 403593 | 04/26/99 | 03/10/60 | AIRBUS | CAPT | 108 | DEN |
| 123 | Churchill | Richard | 403594 | 04/26/99 | 09/28/62 | AIRBUS | CAPT | 109 | DEN |
| 124 | Woodward | Terrance | 403595 | 04/26/99 | 03/30/65 | AIRBUS | CAPT | 110 | DEN |
| 125 | Morton | Todd | 403597 | 04/26/99 | 01/24/68 | AIRBUS | CAPT | 111 | DEN |
| 126 | Thomas | Matthew | 403598 | 04/26/99 | 06/25/70 | AIRBUS | CAPT | LOA | DEN |
| 127 | Van Cleve | George | 403734 | 06/07/99 | 04/30/55 | AIRBUS | CAPT | 112 | DEN |
| 128 | Mcleod | Richard | 403736 | 06/07/99 | 06/05/55 | AIRBUS | CAPT | 113 | DEN |
| 129 | Brenner | Dana | 403738 | 06/07/99 | 07/13/60 | AIRBUS | CAPT | 114 | DEN |
| 130 | Robertson | James | 403857 | 07/19/99 | 01/11/51 | AIRBUS | CAPT | LOA | DEN |
| 131 | Smith | Thomas | 403858 | 07/19/99 | 07/22/57 | AIRBUS | CAPT | LOA | DEN |
| 132 | Martin | Cameron | 403860 | 07/19/99 | 12/07/62 | AIRBUS | CAPT | 115 | DEN |
| 133 | Roseboro | Robert | 403861 | 07/19/99 | 01/14/63 | AIRBUS | CAPT | 116 | DEN |
| 134 | Rohrer | Jon | 403863 | 07/19/99 | 09/03/68 | AIRBUS | CAPT | 117 | DEN |
| 135 | Dahlquist | Jeffrey | 404003 | 09/13/99 | 08/27/57 | AIRBUS | CAPT | 118 | DEN |
| 136 | Warmack | Justin | 404006 | 09/13/99 | 02/20/71 | AIRBUS | CAPT | 119 | DEN |
| 137 | Lutz | Lawrence | 404378 | 12/13/99 | 12/02/55 | AIRBUS | CAPT | 120 | DEN |
| 138 | Coote | David | 404379 | 12/13/99 | 05/30/59 | AIRBUS | CAPT | 121 | DEN |
| 139 | Spector | Boris | 404380 | 12/13/99 | 06/19/63 | AIRBUS | CAPT | 122 | DEN |
| 140 | Hook | Russel | 404381 | 12/13/99 | 04/23/66 | AIRBUS | CAPT | 123 | DEN |
| 141 | Fitzgerald | Micahel | 404384 | 12/13/99 | 07/14/70 | AIRBUS | CAPT | 124 | DEN |
| 142 | Miller | Scott | 404385 | 12/13/99 | 01/02/73 | AIRBUS | CAPT | Asst Chief Pilot | DEN |
| 143 | Klemme | Erik | 404400 | 01/03/00 | 08/15/58 | AIRBUS | CAPT | 125 | DEN |
| 144 | Draper | Todd | 404403 | 01/03/00 | 11/06/64 | AIRBUS | CAPT | 126 | DEN |
| 145 | Love | David | 404406 | 01/03/00 | 03/13/66 | AIRBUS | CAPT | 127 | DEN |
| 146 | Smalley | Jeffrey | 404407 | 01/03/00 | 07/18/69 | AIRBUS | CAPT | 128 | DEN |
| 147 | Wallin | Gayland | 404408 | 01/03/00 | 11/26/69 | AIRBUS | CAPT | 129 | DEN |
| 148 | Howell | John | 404698 | 04/03/00 | 02/18/67 | AIRBUS | CAPT | 130 | DEN |
| 149 | Guggenheim | Daniel | 404699 | 04/03/00 | 09/18/67 | AIRBUS | CAPT | 131 | DEN |
| 150 | Ingalls | Jason | 404700 | 04/03/00 | 07/22/69 | AIRBUS | CAPT | 132 | DEN |
| 151 | Chase | Dan | 404701 | 04/03/00 | 01/08/70 | AIRBUS | CAPT | 133 | DEN |
| 152 | Fischer | Nile | 404702 | 04/03/00 | 04/04/70 | AIRBUS | CAPT | 134 | DEN |
| 153 | South | Troy | 404703 | 04/03/00 | 05/15/71 | AIRBUS | CAPT | 135 | DEN |
| 154 | Pope | Mark | 404704 | 04/03/00 | 08/21/71 | AIRBUS | CAPT | 136 | DEN |
| 155 | Trujillo | Kasey | 404705 | 04/03/00 | 07/21/72 | AIRBUS | F/O | 3 | DEN |
| 156 | Constantine | Kosta | 404720 | 04/24/00 | 06/22/50 | AIRBUS | CAPT | 137 | DEN |
| 157 | O'Brien | Kevin | 404721 | 04/24/00 | 12/06/53 | AIRBUS | CAPT | 138 | DEN |
| 158 | Luchsinger | Jeffery | 404723 | 04/24/00 | 09/07/57 | AIRBUS | CAPT | 139 | DEN |
| 159 | Papineau | Darryl | 404725 | 04/24/00 | 05/07/60 | AIRBUS | CAPT | 140 | DEN |
| 160 | Kauffman | Michael | 404728 | 04/24/00 | 01/17/68 | AIRBUS | CAPT | 141 | DEN |
| 161 | Davis | Scott | 404968 | 08/07/00 | 06/12/61 | AIRBUS | CAPT | 142 | DEN |
| 162 | Weterrings | Marik | 404969 | 08/07/00 | 06/26/61 | AIRBUS | CAPT | 143 | DEN |

Page 3 of 15



**Collective Bargaining Agreement**                    10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 163 | Ferraro | Stacy | 404970 | 08/07/00 | 08/18/68 | AIRBUS | CAPT | 144 | DEN |
| 164 | Doyle | Jason | 404971 | 08/07/00 | 11/20/68 | AIRBUS | CAPT | 145 | DEN |
| 165 | Sneed | Staci | 404972 | 08/07/00 | 11/27/68 | AIRBUS | CAPT | 146 | DEN |
| 166 | Swingley | Scott | 404973 | 08/07/00 | 11/29/70 | AIRBUS | CAPT | 147 | DEN |
| 167 | Dey | Thomas | 404974 | 08/07/00 | 11/09/71 | AIRBUS | CAPT | 148 | DEN |
| 168 | Bohland | David | 405194 | 10/16/00 | 10/07/64 | AIRBUS | CAPT | 149 | DEN |
| 169 | Leoni | Eric | 405197 | 10/16/00 | 01/31/66 | AIRBUS | CAPT | 150 | DEN |
| 170 | Ka'Aihue | Louisa | 405199 | 10/16/00 | 04/10/68 | AIRBUS | CAPT | 151 | DEN |
| 171 | Major | Theodore | 405200 | 10/16/00 | 10/20/69 | AIRBUS | CAPT | 152 | DEN |
| 172 | Patterson | Shane | 405201 | 10/16/00 | 10/17/70 | AIRBUS | CAPT | 153 | DEN |
| 173 | Crook | Stephen | 405202 | 10/16/00 | 12/14/71 | AIRBUS | CAPT | 154 | DEN |
| 174 | Gragg | Mark | 405316 | 12/04/00 | 01/24/52 | AIRBUS | CAPT | 155 | DEN |
| 175 | Loebe | Susan | 405317 | 12/04/00 | 05/28/55 | AIRBUS | CAPT | LOA | DEN |
| 176 | Wogrin | Chris | 405318 | 12/04/00 | 09/17/58 | AIRBUS | CAPT | 156 | DEN |
| 177 | Barton | Steve | 405319 | 12/04/00 | 07/21/60 | AIRBUS | CAPT | LOA | DEN |
| 178 | Jones | Jeffrey | 405321 | 12/04/00 | 10/06/64 | AIRBUS | CAPT | 157 | DEN |
| 179 | Martin | Kenneth | 405322 | 12/04/00 | 02/02/68 | AIRBUS | CAPT | 158 | DEN |
| 180 | Lukasezck | Brian | 405323 | 12/04/00 | 08/30/70 | AIRBUS | CAPT | 159 | DEN |
| 181 | Brooks | Todd | 405324 | 12/04/00 | 11/09/70 | AIRBUS | CAPT | 160 | DEN |
| 182 | Wood | Tamara | 405325 | 12/04/00 | 12/20/70 | AIRBUS | F/O | LOA | DEN |
| 183 | Farrell | Richard | 402799 | 01/06/01 | 09/13/52 | AIRBUS | CAPT | 161 | DEN |
| 184 | Van Slyke | Richard | 405401 | 01/08/01 | 05/12/53 | AIRBUS | CAPT | LOA | DEN |
| 185 | Whelan | John | 405407 | 01/08/01 | 08/24/57 | AIRBUS | CAPT | 162 | DEN |
| 186 | Colburn | Jim | 405408 | 01/08/01 | 08/25/58 | AIRBUS | CAPT | Director of Operations | DEN |
| 187 | Kinateder | Gary | 405410 | 01/08/01 | 07/08/61 | AIRBUS | CAPT | 163 | DEN |
| 188 | Cartwright | Brent | 405411 | 01/08/01 | 12/22/63 | AIRBUS | CAPT | 164 | DEN |
| 189 | Munnis | Andy | 405413 | 01/08/01 | 01/11/67 | AIRBUS | CAPT | 165 | DEN |
| 190 | Boberg | James | 405414 | 01/08/01 | 07/27/68 | AIRBUS | CAPT | 166 | DEN |
| 191 | Thibodeau | Joseph | 405415 | 01/08/01 | 03/28/74 | AIRBUS | CAPT | Chief Pilot | DEN |
| 192 | Cassero | Robert | 405453 | 01/29/01 | 09/04/55 | AIRBUS | CAPT | 167 | DEN |
| 193 | Griffitts | Dennis | 405456 | 01/29/01 | 01/02/58 | AIRBUS | CAPT | 168 | DEN |
| 194 | Lynch | Mike | 405457 | 01/29/01 | 03/20/58 | AIRBUS | CAPT | 169 | DEN |
| 195 | Zeiher | Eric | 405458 | 01/29/01 | 07/21/59 | AIRBUS | CAPT | 170 | DEN |
| 196 | Kochever | Eric | 405459 | 01/29/01 | 07/11/60 | AIRBUS | CAPT | 171 | DEN |
| 197 | Chicarell | Steven | 405460 | 01/29/01 | 01/02/61 | AIRBUS | CAPT | 172 | DEN |
| 198 | Godlevsky | Leslie | 405461 | 01/29/01 | 11/10/61 | AIRBUS | CAPT | 173 | DEN |
| 199 | Kruse | Thomas | 405463 | 01/29/01 | 11/02/62 | AIRBUS | CAPT | 174 | DEN |
| 200 | Hall | David | 405464 | 01/29/01 | 05/12/63 | AIRBUS | CAPT | 175 | DEN |
| 201 | Frostad | Scott | 405465 | 01/29/01 | 09/12/63 | AIRBUS | CAPT | LOA | DEN |
| 202 | Holzman | Douglas | 405466 | 01/29/01 | 11/22/63 | AIRBUS | CAPT | 176 | DEN |
| 203 | Beaty | James | 405467 | 01/29/01 | 05/05/64 | AIRBUS | CAPT | 177 | DEN |
| 204 | Holmberg | Jon | 405468 | 01/29/01 | 06/09/64 | AIRBUS | CAPT | 178 | DEN |
| 205 | Mccasland | Bryan | 405470 | 01/29/01 | 10/10/65 | AIRBUS | CAPT | 179 | DEN |
| 206 | Lira | Peter | 405471 | 01/29/01 | 02/12/67 | AIRBUS | CAPT | 180 | DEN |
| 207 | Bissener | Christopher | 405472 | 01/29/01 | 12/26/67 | AIRBUS | CAPT | 181 | DEN |
| 208 | Stemmler | John | 405473 | 01/29/01 | 02/08/68 | AIRBUS | CAPT | LOA | DEN |
| 209 | Carter | Jhara | 405474 | 01/29/01 | 02/20/68 | AIRBUS | CAPT | 182 | DEN |
| 210 | Rickenbach | Todd | 405475 | 01/29/01 | 04/07/69 | AIRBUS | CAPT | LOA | DEN |
| 211 | Wood | William | 405476 | 01/29/01 | 06/12/69 | AIRBUS | CAPT | Airbus Program Manager | DEN |
| 212 | Hotaling | James | 405477 | 01/29/01 | 12/03/69 | AIRBUS | CAPT | LOA | DEN |
| 213 | Niccolai | William | 405478 | 01/29/01 | 02/13/70 | AIRBUS | CAPT | 183 | DEN |
| 214 | Hall | Carol | 405481 | 01/29/01 | 09/22/70 | AIRBUS | F/O | 4 | DEN |
| 215 | Alvarado | Byron | 405482 | 01/29/01 | 01/17/71 | AIRBUS | CAPT | 184 | DEN |
| 216 | Leoni | Hope | 405483 | 01/29/01 | 01/31/73 | AIRBUS | F/O | 5 | DEN |

LOA 71.10

# FRONTIER AIRLINES PILOT SENIORITY LIST

## EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 217 | Williams | Jeffrey | 405484 | 01/29/01 | 07/11/73 | AIRBUS | CAPT | 185 | DEN |
| 218 | Colvin | Clu | 405485 | 01/29/01 | 03/10/74 | AIRBUS | CAPT | 186 | CHI |
| 219 | Diamond | Christopher | 405487 | 01/29/01 | 06/20/75 | AIRBUS | CAPT | 187 | DEN |
| 220 | Spaeth | Richard | 405508 | 02/12/01 | 09/07/49 | AIRBUS | CAPT | 188 | DEN |
| 221 | Yates | Gary | 405509 | 02/12/01 | 01/30/53 | AIRBUS | CAPT | 189 | DEN |
| 222 | Thomas | Jeff | 405511 | 02/12/01 | 08/18/54 | AIRBUS | CAPT | 190 | DEN |
| 223 | Olson | Anthony | 405512 | 02/12/01 | 05/23/59 | AIRBUS | CAPT | 191 | DEN |
| 224 | Connolly | John | 405513 | 02/12/01 | 11/10/60 | AIRBUS | CAPT | 192 | DEN |
| 225 | Gonzalez | Victor | 405515 | 02/12/01 | 11/14/61 | AIRBUS | CAPT | 193 | DEN |
| 226 | Brandner | Gerhard | 405516 | 02/12/01 | 08/01/63 | AIRBUS | CAPT | 194 | DEN |
| 227 | Stuart | Scott | 405517 | 02/12/01 | 06/02/65 | AIRBUS | CAPT | 195 | CHI |
| 228 | Lurz | Brian | 405518 | 02/12/01 | 01/01/66 | AIRBUS | CAPT | 196 | DEN |
| 229 | Moore | William | 405519 | 02/12/01 | 02/25/67 | AIRBUS | CAPT | 197 | DEN |
| 230 | Bates | Brent | 405520 | 02/12/01 | 03/18/67 | AIRBUS | CAPT | 198 | DEN |
| 231 | Church | Charles | 405521 | 02/12/01 | 06/18/68 | AIRBUS | CAPT | 199 | DEN |
| 232 | Manke | Spencer | 405523 | 02/12/01 | 11/17/70 | AIRBUS | CAPT | 200 | CHI |
| 233 | Schierholz | John | 405524 | 02/12/01 | 10/23/71 | AIRBUS | CAPT | 201 | DEN |
| 234 | Nunnallee | Todd | 405525 | 02/12/01 | 02/02/72 | AIRBUS | CAPT | 202 | DEN |
| 235 | Knudsen | Alan | 405526 | 02/12/01 | 04/11/72 | AIRBUS | CAPT | 203 | DEN |
| 236 | Knapp | Tom | 405527 | 02/12/01 | 05/19/72 | AIRBUS | CAPT | 204 | DEN |
| 237 | Lautner | David | 405600 | 03/12/01 | 10/24/54 | AIRBUS | CAPT | 205 | DEN |
| 238 | Mitchell | Andrew | 405601 | 03/12/01 | 09/16/61 | AIRBUS | F/O | 6 | DEN |
| 239 | Dunlap | James | 405602 | 03/12/01 | 05/06/64 | AIRBUS | CAPT | 206 | DEN |
| 240 | Cavill | Wayne | 405604 | 03/12/01 | 05/09/68 | AIRBUS | CAPT | 207 | DEN |
| 241 | Miller | Ernest | 405605 | 03/12/01 | 03/02/70 | AIRBUS | CAPT | 208 | DEN |
| 242 | Rockeman | John | 405607 | 03/12/01 | 03/04/71 | AIRBUS | CAPT | 209 | DEN |
| 243 | Trujillo | Jeremy | 405608 | 03/12/01 | 12/09/72 | AIRBUS | CAPT | 210 | DEN |
| 244 | Pool | Henry | 405609 | 03/12/01 | 11/23/73 | AIRBUS | CAPT | 211 | DEN |
| 245 | Zielinski | Matthew | 405610 | 03/12/01 | 05/20/74 | AIRBUS | CAPT | 212 | DEN |
| 246 | Rutter | Rodger | 405703 | 04/30/01 | 03/15/54 | AIRBUS | CAPT | LOA | DEN |
| 247 | Benton | Jane | 405704 | 04/30/01 | 05/27/58 | AIRBUS | F/O | 7 | DEN |
| 248 | Geddes | Thomas | 405705 | 04/30/01 | 07/23/60 | AIRBUS | CAPT | 213 | DEN |
| 249 | Dann | Russell | 405706 | 04/30/01 | 09/02/60 | AIRBUS | CAPT | 214 | DEN |
| 250 | Gallagher | Dorothy | 405707 | 04/30/01 | 12/16/61 | AIRBUS | CAPT | LOA | DEN |
| 251 | Dunn | Matthew | 405708 | 04/30/01 | 08/30/65 | AIRBUS | CAPT | 215 | DEN |
| 252 | Monnar | Francois | 405709 | 04/30/01 | 01/00/67 | AIRBUS | CAPT | 216 | DEN |
| 253 | Kroon | Arie | 405710 | 04/30/01 | 12/03/67 | AIRBUS | CAPT | 217 | DEN |
| 254 | Rogers | Scott | 405711 | 04/30/01 | 12/30/69 | AIRBUS | CAPT | 218 | DEN |
| 255 | Rish | Christian | 405712 | 04/30/01 | 01/23/70 | AIRBUS | CAPT | 219 | DEN |
| 256 | Sellyei | Eric | 405713 | 04/30/01 | 07/08/72 | AIRBUS | CAPT | 220 | DEN |
| 257 | Foss | Mark | 405714 | 04/30/01 | 10/05/74 | AIRBUS | CAPT | 221 | CHI |
| 258 | Richmond | David | 405835 | 06/18/01 | 06/12/58 | AIRBUS | CAPT | 222 | DEN |
| 259 | Beltran | Joseph | 405836 | 06/18/01 | 03/10/62 | AIRBUS | CAPT | 223 | DEN |
| 260 | Mcwilliams | Timothy | 405837 | 06/18/01 | 10/05/62 | AIRBUS | CAPT | 224 | DEN |
| 261 | Woodbury | Douglas | 405838 | 06/18/01 | 09/25/64 | AIRBUS | CAPT | 225 | DEN |
| 262 | Cammack | Kelli | 405839 | 06/18/01 | 06/05/66 | AIRBUS | CAPT | 226 | DEN |
| 263 | Anderson | Bryan | 405840 | 06/18/01 | 01/19/68 | AIRBUS | CAPT | 227 | DEN |
| 264 | Giles | Joey | 405841 | 06/18/01 | 05/21/68 | AIRBUS | F/O | 8 | DEN |
| 265 | Harris | Steven | 405842 | 06/18/01 | 04/10/70 | AIRBUS | CAPT | 228 | DEN |
| 266 | Fuchs | Eric | 405844 | 06/18/01 | 12/14/71 | AIRBUS | CAPT | 229 | DEN |
| 267 | Meeks | Casey | 405845 | 06/18/01 | 06/14/76 | AIRBUS | CAPT | 230 | DEN |
| 268 | Bridges | Donna | 406335 | 03/04/02 | 07/11/54 | AIRBUS | CAPT | 231 | DEN |
| 269 | Hall | James | 406337 | 03/04/02 | 11/17/54 | AIRBUS | CAPT | 232 | DEN |
| 270 | Quick | Edward | 408824 | 03/15/04 | 05/19/56 | AIRBUS | F/O | LOA | DEN |



**Collective Bargaining Agreement** | 10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 271 | Jordan | Daniel | 406338 | 03/04/02 | 08/21/60 | AIRBUS | CAPT | 233 | DEN |
| 272 | Moser | Jeffrey | 406339 | 03/04/02 | 04/14/62 | AIRBUS | CAPT | 234 | DEN |
| 273 | Mcfadden | Richard | 406340 | 03/04/02 | 04/16/64 | AIRBUS | CAPT | 235 | DEN |
| 274 | Duerr | Michael | 406341 | 03/04/02 | 03/02/65 | AIRBUS | CAPT | 236 | DEN |
| 275 | Williamson | Stephen | 403771 | 03/04/02 | 03/17/66 | AIRBUS | F/O | LOA | DEN |
| 276 | Appleton | Tyler | 406342 | 03/04/02 | 07/13/67 | AIRBUS | CAPT | 237 | DEN |
| 277 | Wilson | Greg | 406343 | 03/04/02 | 08/26/67 | AIRBUS | F/O | 9 | DEN |
| 278 | Gee | Ryan | 406344 | 03/04/02 | 10/02/67 | AIRBUS | CAPT | 238 | DEN |
| 279 | Orcutt | Jimmy | 406345 | 03/04/02 | 01/02/69 | AIRBUS | CAPT | 239 | DEN |
| 280 | Rickenbach | Rodd | 406346 | 03/04/02 | 04/07/69 | AIRBUS | CAPT | 240 | DEN |
| 281 | Kinsey | Dale | 406347 | 03/04/02 | 09/15/69 | AIRBUS | CAPT | 241 | DEN |
| 282 | Hayes | Jonathan | 406348 | 03/04/02 | 03/01/71 | AIRBUS | CAPT | 242 | DEN |
| 283 | Kiedrowski | Shannon | 406349 | 03/04/02 | 02/07/74 | AIRBUS | F/O | 10 | DEN |
| 284 | Elliott | David | 406512 | 04/22/02 | 11/17/51 | AIRBUS | CAPT | 243 | DEN |
| 285 | Snider | Lisa | 406513 | 04/22/02 | 05/28/59 | AIRBUS | CAPT | 244 | DEN |
| 286 | Fry | David | 406514 | 04/22/02 | 07/14/59 | AIRBUS | CAPT | 245 | DEN |
| 287 | Laybourn | Daniel | 406515 | 04/22/02 | 07/08/61 | AIRBUS | CAPT | 246 | DEN |
| 288 | Eden | Mark | 406516 | 04/22/02 | 04/22/62 | AIRBUS | CAPT | 247 | DEN |
| 289 | Dolven | Robert | 406517 | 04/22/02 | 09/20/63 | AIRBUS | CAPT | 248 | DEN |
| 290 | Wang | Kenneth | 406519 | 04/22/02 | 03/29/64 | AIRBUS | CAPT | 249 | CHI |
| 291 | Mitchell | Matthew | 406520 | 04/22/02 | 04/17/65 | AIRBUS | CAPT | LOA | DEN |
| 292 | Baas | Casey | 406522 | 04/22/02 | 07/19/65 | AIRBUS | CAPT | 250 | CHI |
| 293 | Paulin | David | 406523 | 04/22/02 | 08/16/66 | AIRBUS | CAPT | 251 | DEN |
| 294 | Brenneman | Randy | 406524 | 04/22/02 | 11/26/66 | AIRBUS | CAPT | 252 | DEN |
| 295 | Nolta | Patrick | 406525 | 04/22/02 | 09/05/67 | AIRBUS | CAPT | 253 | DEN |
| 296 | Jorgensen | Eric | 406849 | 06/17/02 | 04/30/59 | AIRBUS | CAPT | 254 | DEN |
| 297 | Brandenburg | Kevin | 406850 | 06/17/02 | 02/06/62 | AIRBUS | CAPT | 255 | DEN |
| 298 | Palmershiem | Richard | 406851 | 06/17/02 | 12/02/65 | AIRBUS | CAPT | 256 | CHI |
| 299 | Hockin | Aileen | 406853 | 06/17/02 | 03/24/71 | AIRBUS | CAPT | 257 | DEN |
| 300 | Sellyei | Cheryl | 406854 | 06/17/02 | 03/12/75 | AIRBUS | F/O | LOA | DEN |
| 301 | Strus | Mike | 407110 | 10/21/02 | 05/02/52 | AIRBUS | F/O | 11 | DEN |
| 302 | Ginther | Jon | 407112 | 10/21/02 | 01/31/55 | AIRBUS | CAPT | 258 | CHI |
| 303 | Lefler | Alan | 407113 | 10/21/02 | 06/26/56 | AIRBUS | CAPT | 259 | CHI |
| 304 | Rico | Beth | 407115 | 10/21/02 | 06/03/60 | AIRBUS | F/O | 12 | DEN |
| 305 | Weintrob | Rachel | 407116 | 10/21/02 | 10/12/60 | AIRBUS | CAPT | 260 | DEN |
| 306 | Robinson | Paul | 407117 | 10/21/02 | 07/07/61 | AIRBUS | CAPT | 261 | CHI |
| 307 | Taylor | Donald | 407118 | 10/21/02 | 06/25/62 | AIRBUS | CAPT | 262 | DEN |
| 308 | Latta | James | 407120 | 10/21/02 | 04/02/63 | AIRBUS | CAPT | 263 | DEN |
| 309 | Cherian | Leon | 407121 | 10/21/02 | 09/21/63 | AIRBUS | CAPT | 264 | DEN |
| 310 | Lorenz | Eric | 407123 | 10/21/02 | 09/27/64 | AIRBUS | CAPT | 265 | DEN |
| 311 | Tagliaferro | Anthony | 407124 | 10/21/02 | 03/06/66 | AIRBUS | CAPT | 266 | DEN |
| 312 | Marks | Thomas | 407125 | 10/21/02 | 10/12/66 | AIRBUS | CAPT | 267 | CHI |
| 313 | Forbes | Wayne | 407126 | 10/21/02 | 12/07/67 | AIRBUS | CAPT | 268 | CHI |
| 314 | Walker | Bennison | 407127 | 10/21/02 | 04/21/68 | AIRBUS | CAPT | 269 | DEN |
| 315 | Olson | Shane | 407128 | 10/21/02 | 06/30/68 | AIRBUS | CAPT | 270 | DEN |
| 316 | Leidig | Edward | 407129 | 10/21/02 | 08/23/68 | AIRBUS | CAPT | 271 | DEN |
| 317 | Deherrera | Arvin | 407131 | 10/21/02 | 12/04/69 | AIRBUS | CAPT | 272 | DEN |
| 318 | Cartagena | Carlos | 407133 | 10/21/02 | 10/15/70 | AIRBUS | CAPT | 273 | DEN |
| 319 | Mcwilliams | Michael | 407217 | 01/06/03 | 08/02/49 | AIRBUS | CAPT | 274 | CHI |
| 320 | Fenton | Douglas | 407219 | 01/06/03 | 02/20/58 | AIRBUS | CAPT | 275 | CHI |
| 321 | Starcks | David | 407221 | 01/06/03 | 10/30/58 | AIRBUS | CAPT | 276 | DEN |
| 322 | Benton | Michael | 407222 | 01/06/03 | 01/08/61 | AIRBUS | CAPT | 277 | CHI |
| 323 | Pickar | Jay | 407223 | 01/06/03 | 12/02/62 | AIRBUS | F/O | 13 | DEN |
| 324 | Plummer | Mark | 407224 | 01/06/03 | 06/05/66 | AIRBUS | CAPT | 278 | DEN |

**LOA 71.12**

**FAPA**

**Collective Bargaining Agreement**                                    10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 325 | Sandquist | Steven | 407226 | 01/06/03 | 04/15/68 | AIRBUS | F/O | 14 | DEN |
| 326 | Welt | David | 407227 | 01/06/03 | 09/18/68 | AIRBUS | CAPT | Dir Flt Ops Trng | CHI |
| 327 | Simmons | Kenton | 407228 | 01/06/03 | 10/23/69 | AIRBUS | F/O | 15 | DEN |
| 328 | Coons | John | 407229 | 01/06/03 | 12/30/69 | AIRBUS | CAPT | 279 | CHI |
| 329 | Clark | Richard | 407297 | 01/27/03 | 01/08/55 | AIRBUS | CAPT | 280 | DEN |
| 330 | Bostyan | Michael | 407298 | 01/27/03 | 01/05/57 | AIRBUS | CAPT | 281 | DEN |
| 331 | Herman | Daniel | 407299 | 01/27/03 | 10/16/57 | AIRBUS | CAPT | 282 | DEN |
| 332 | Katnik | Kent | 407301 | 01/27/03 | 05/03/68 | AIRBUS | CAPT | 283 | CHI |
| 333 | Fritz | Nicholas | 407302 | 01/27/03 | 09/02/68 | AIRBUS | CAPT | 284 | CHI |
| 334 | Ganem | Michael | 407365 | 03/03/03 | 08/09/62 | AIRBUS | CAPT | 285 | DEN |
| 335 | Case | Grant | 407367 | 03/03/03 | 05/23/67 | AIRBUS | F/O | LOA | DEN |
| 336 | Kirk | Nicholas | 407368 | 03/03/03 | 04/07/69 | AIRBUS | CAPT | 286 | CHI |
| 337 | Burling | Jeffrey | 407369 | 03/03/03 | 04/09/69 | AIRBUS | CAPT | 287 | DEN |
| 338 | Meyer | Geoffrey | 407370 | 03/03/03 | 06/16/69 | AIRBUS | CAPT | 288 | DEN |
| 339 | Brooks | James | 407371 | 03/03/03 | 03/25/70 | AIRBUS | CAPT | 289 | DEN |
| 340 | Baker | Deborah | 407372 | 03/03/03 | 03/06/72 | AIRBUS | F/O | 16 | DEN |
| 341 | Mielke | Peter | 400686 | 03/24/03 | 06/26/72 | AIRBUS | F/O | 17 | DEN |
| 342 | Brunsman | Robin | 407426 | 03/24/03 | 07/11/55 | AIRBUS | CAPT | 290 | CHI |
| 343 | Sweeney | Robert | 407427 | 03/24/03 | 05/27/59 | AIRBUS | F/O | 18 | DEN |
| 344 | Matson | Robert | 407428 | 03/24/03 | 01/12/67 | AIRBUS | CAPT | 291 | DEN |
| 345 | Nevels | Steven | 407429 | 03/24/03 | 07/19/70 | AIRBUS | CAPT | 292 | DEN |
| 346 | Hollingsworth | J Matthew | 407508 | 04/10/03 | 06/20/58 | AIRBUS | F/O | 19 | DEN |
| 347 | Holland | Fredrick | 407509 | 04/10/03 | 01/03/62 | AIRBUS | CAPT | 293 | CHI |
| 348 | Kukral | Albert | 407558 | 05/07/03 | 02/11/55 | AIRBUS | CAPT | 294 | DEN |
| 349 | Perez | Rainier | 407559 | 05/07/03 | 09/25/63 | AIRBUS | CAPT | 295 | DEN |
| 350 | Noguerra | Eric | 407561 | 05/07/03 | 10/01/66 | AIRBUS | CAPT | 296 | DEN |
| 351 | Erickson | Alicia | 407562 | 05/07/03 | 10/10/67 | AIRBUS | F/O | 20 | DEN |
| 352 | Bowman | Mark | 407603 | 05/28/03 | 09/23/58 | AIRBUS | F/O | 21 | DEN |
| 353 | Smith | Jonathan | 407604 | 05/28/03 | 02/10/59 | AIRBUS | F/O | LOA | DEN |
| 354 | Schluppenbaum | Alexander | 407607 | 05/28/03 | 02/02/71 | AIRBUS | CAPT | 297 | DEN |
| 355 | Green | Michael | 407965 | 09/02/03 | 12/29/51 | AIRBUS | CAPT | 298 | DEN |
| 356 | Sinclair | Beverly | 407966 | 09/02/03 | 10/21/53 | AIRBUS | F/O | 22 | DEN |
| 357 | Elliott | Janet | 407967 | 09/02/03 | 08/21/58 | AIRBUS | F/O | 23 | DEN |
| 358 | Lee | Robert | 407968 | 09/02/03 | 07/12/60 | AIRBUS | CAPT | 299 | DEN |
| 359 | Brasfield | Mark | 407969 | 09/02/03 | 09/11/64 | AIRBUS | CAPT | LOA | DEN |
| 360 | Shaffer | William | 407970 | 09/02/03 | 10/06/65 | AIRBUS | F/O | 24 | DEN |
| 361 | Stohr | M'Shell | 407972 | 09/02/03 | 12/06/68 | AIRBUS | CAPT | 300 | DEN |
| 362 | Grabowski | Brian | 407974 | 09/02/03 | 10/20/74 | AIRBUS | CAPT | 301 | DEN |
| 363 | Jones | Wayne | 408056 | 09/15/03 | 04/19/66 | AIRBUS | F/O | 25 | DEN |
| 364 | Doege | Marcus | 408059 | 09/15/03 | 06/26/68 | AIRBUS | CAPT | 302 | DEN |
| 365 | Cronsell | Kenneth | 408062 | 09/15/03 | 01/27/70 | AIRBUS | F/O | 26 | DEN |
| 366 | Lee | David | 408162 | 10/08/03 | 11/14/66 | AIRBUS | CAPT | 303 | DEN |
| 367 | Rondeau | Richmond | 408164 | 10/08/03 | 12/02/68 | AIRBUS | CAPT | 304 | DEN |
| 368 | Lloyd | Gary | 408165 | 10/08/03 | 03/02/69 | AIRBUS | CAPT | 305 | CHI |
| 369 | Russell | Randal | 408166 | 10/08/03 | 05/25/70 | AIRBUS | F/O | LOA | DEN |
| 370 | Foerster | Marcus | 408169 | 10/08/03 | 10/28/71 | AIRBUS | CAPT | 306 | DEN |
| 371 | Sickels | David | 408170 | 10/08/03 | 05/06/72 | AIRBUS | CAPT | 307 | DEN |
| 372 | Davis | Brady | 408171 | 10/08/03 | 08/31/73 | AIRBUS | CAPT | 308 | DEN |
| 373 | Hansen | Terry | 408173 | 10/08/03 | 05/22/74 | AIRBUS | CAPT | 309 | CHI |
| 374 | Gossett | John | 408250 | 10/20/03 | 06/30/63 | AIRBUS | CAPT | 310 | DEN |
| 375 | Laslo | Mark | 408315 | 11/17/03 | 11/23/62 | AIRBUS | F/O | 27 | DEN |
| 376 | Figueroa | Juan | 408316 | 11/17/03 | 05/07/63 | AIRBUS | F/O | 28 | DEN |
| 377 | Mckenna | Paul | 408319 | 11/17/03 | 09/21/65 | AIRBUS | CAPT | 311 | DEN |
| 378 | Larson | Jeff | 408320 | 11/17/03 | 12/24/65 | AIRBUS | F/O | 29 | DEN |

**Frontier Airlines Pilots Association**                                    **LOA 71.13**



**Collective Bargaining Agreement**     10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|-------|-----------|------------|------|-----|-----|-----------|------|------------|----------|
| 379 | Cooper | Kristi | 408321 | 11/17/03 | 06/10/66 | AIRBUS | CAPT | 312 | DEN |
| 380 | Eldredge | Brian | 408323 | 11/17/03 | 07/20/69 | AIRBUS | F/O | 30 | DEN |
| 381 | Curry | Matthew | 408324 | 11/17/03 | 01/05/71 | AIRBUS | CAPT | 313 | DEN |
| 382 | Kesely | Paul | 408325 | 11/17/03 | 01/10/71 | AIRBUS | CAPT | 314 | DEN |
| 383 | Skaran | Amber | 408327 | 11/17/03 | 09/09/73 | AIRBUS | F/O | 31 | DEN |
| 384 | Beck | Brandy | 408329 | 11/17/03 | 10/30/74 | AIRBUS | F/O | LOA | DEN |
| 385 | Cooper | Galen | 408405 | 12/15/03 | 02/01/58 | AIRBUS | F/O | 32 | DEN |
| 386 | Newberry | Troy | 408406 | 12/15/03 | 08/12/63 | AIRBUS | F/O | 33 | DEN |
| 387 | Edwards | Thomas | 408410 | 12/15/03 | 04/03/73 | AIRBUS | CAPT | 315 | DEN |
| 388 | Sisneros | Christopher | 408411 | 12/15/03 | 03/18/74 | AIRBUS | F/O | 34 | DEN |
| 389 | Conroy | John | 408434 | 01/05/04 | 12/16/63 | AIRBUS | CAPT | 316 | DEN |
| 390 | Evitsizer | Todd | 408437 | 01/05/04 | 02/19/68 | AIRBUS | CAPT | 317 | DEN |
| 391 | Lichtman | Shannon | 408438 | 01/05/04 | 10/30/71 | AIRBUS | F/O | 35 | DEN |
| 392 | Rupple | Daniel | 408439 | 01/05/04 | 05/09/73 | AIRBUS | F/O | 36 | DEN |
| 393 | Shaulis | John | 408495 | 01/07/04 | 08/07/54 | AIRBUS | F/O | 37 | DEN |
| 394 | Payne | Mark | 408514 | 01/19/04 | 06/19/58 | AIRBUS | CAPT | 318 | CHI |
| 395 | Mchugh | Nuey | 408515 | 01/19/04 | 09/06/62 | AIRBUS | F/O | 38 | DEN |
| 396 | Faulkison | Brian | 408516 | 01/19/04 | 07/14/63 | AIRBUS | CAPT | 319 | CHI |
| 397 | Yates | Julia | 408518 | 01/19/04 | 09/11/71 | AIRBUS | F/O | 39 | DEN |
| 398 | Schuett | Brian | 408574 | 02/02/04 | 05/15/59 | AIRBUS | F/O | 40 | DEN |
| 399 | Slaughter | Scott | 408575 | 02/02/04 | 01/19/63 | AIRBUS | CAPT | 320 | CHI |
| 400 | Overlie | Eric | 408576 | 02/02/04 | 07/17/67 | AIRBUS | F/O | 41 | DEN |
| 401 | Tibbetts | Blake | 408577 | 02/02/04 | 04/06/68 | AIRBUS | F/O | LOA | DEN |
| 402 | Tyler | Jeffrey | 408578 | 02/02/04 | 06/16/68 | AIRBUS | F/O | 42 | DEN |
| 403 | Astor | Stephen | 408579 | 02/02/04 | 01/04/69 | AIRBUS | F/O | 43 | DEN |
| 404 | Sarkisian | Jessica | 408583 | 02/02/04 | 01/15/73 | AIRBUS | F/O | 44 | DEN |
| 405 | Kennedy | John | 408767 | 03/01/04 | 06/15/63 | AIRBUS | F/O | LOA | DEN |
| 406 | Woodard | Rodney | 408769 | 03/01/04 | 09/27/68 | AIRBUS | F/O | 45 | DEN |
| 407 | O'Brien | Anthony | 408771 | 03/01/04 | 10/28/70 | AIRBUS | F/O | 46 | DEN |
| 408 | Saul | Jason | 408773 | 03/01/04 | 01/23/75 | AIRBUS | F/O | 47 | DEN |
| 409 | Ivison | Barry | 408825 | 03/15/04 | 01/21/61 | AIRBUS | F/O | LOA | DEN |
| 410 | Preece III | John | 408827 | 03/15/04 | 07/16/68 | AIRBUS | CAPT | 321 | CHI |
| 411 | Turner | Sean | 408829 | 03/15/04 | 12/07/70 | AIRBUS | F/O | 48 | DEN |
| 412 | Giese | Deborah | 408962 | 03/29/04 | 07/01/52 | AIRBUS | F/O | 49 | DEN |
| 413 | Christie | Richard | 408964 | 03/29/04 | 08/18/60 | AIRBUS | F/O | 50 | DEN |
| 414 | Clements | Frank | 408965 | 03/29/04 | 08/22/66 | AIRBUS | F/O | 51 | DEN |
| 415 | Zeiher | Lisa | 408967 | 03/29/04 | 04/23/70 | AIRBUS | F/O | 52 | DEN |
| 416 | Lally | James | 408968 | 03/29/04 | 07/07/70 | AIRBUS | F/O | 53 | DEN |
| 417 | Moen Iii | John | 408970 | 03/29/04 | 11/02/72 | AIRBUS | CAPT | 322 | CHI |
| 418 | Sturgis | William | 409015 | 04/12/04 | 09/26/53 | AIRBUS | F/O | 54 | DEN |
| 419 | Nichols | Michael | 409016 | 04/12/04 | 09/23/56 | AIRBUS | F/O | 55 | DEN |
| 420 | Surette | Phillip | 409017 | 04/12/04 | 10/20/62 | AIRBUS | CAPT | 323 | CHI |
| 421 | Siegrist | Matthew | 409018 | 04/12/04 | 10/18/70 | AIRBUS | CAPT | 324 | CHI |
| 422 | Scherbinske | Donald | 409170 | 05/03/04 | 07/23/57 | AIRBUS | F/O | 56 | DEN |
| 423 | Clark | Todd | 409173 | 05/03/04 | 05/16/65 | AIRBUS | F/O | 57 | DEN |
| 424 | Thompson | David | 409174 | 05/03/04 | 08/16/65 | AIRBUS | CAPT | 325 | CHI |
| 425 | Stahl | Harry | 409176 | 05/03/04 | 08/29/68 | AIRBUS | F/O | 58 | DEN |
| 426 | Brantley | Christopher | 410598 | 09/12/05 | 04/14/61 | AIRBUS | F/O | 59 | DEN |
| 427 | Odey | Kenneth | 410706 | 09/12/05 | 05/18/65 | AIRBUS | F/O | 60 | DEN |
| 428 | Miller | Benny | 410708 | 09/12/05 | 06/29/66 | AIRBUS | F/O | 61 | DEN |
| 429 | Woolley | John | 410709 | 09/12/05 | 09/15/69 | AIRBUS | F/O | 62 | DEN |
| 430 | Kirsch | David | 410714 | 09/12/05 | 05/15/70 | AIRBUS | F/O | 63 | DEN |
| 431 | Novara | John | 410715 | 09/12/05 | 06/27/74 | AIRBUS | F/O | 64 | DEN |
| 432 | Tracy | Stacey | 410717 | 09/12/05 | 02/02/76 | AIRBUS | F/O | 65 | DEN |

**LOA 71.14**

**FAPA**

**Collective Bargaining Agreement**

10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 433 | Holt | Kelly | 410769 | 10/10/05 | 08/25/61 | AIRBUS | F/O | 66 | DEN |
| 434 | Musgrave | Bennett | 410770 | 10/10/05 | 03/20/62 | AIRBUS | CAPT | 326 | CHI |
| 435 | Sobczak | Brian | 410774 | 10/10/05 | 07/15/70 | AIRBUS | F/O | 67 | DEN |
| 436 | Dumont | Andrew | 410775 | 10/10/05 | 06/23/71 | AIRBUS | CAPT | 327 | CHI |
| 437 | Tubbesing | Clifford | 410839 | 11/07/05 | 08/29/54 | AIRBUS | F/O | 68 | DEN |
| 438 | Schumacher | Charles | 410841 | 11/07/05 | 02/27/62 | AIRBUS | F/O | 69 | DEN |
| 439 | Counter | Jeffrey | 410842 | 11/07/05 | 12/10/67 | AIRBUS | CAPT | 328 | CHI |
| 440 | Anderson | Stephen | 410843 | 11/07/05 | 01/07/69 | AIRBUS | F/O | 70 | DEN |
| 441 | Saul | Robert | 410844 | 11/07/05 | 03/24/70 | AIRBUS | F/O | 71 | DEN |
| 442 | Haffling | Michael | 410855 | 11/07/05 | 02/10/72 | AIRBUS | F/O | LOA | CHI |
| 443 | Pierce | Bryan | 410856 | 11/07/05 | 11/10/72 | AIRBUS | F/O | 72 | DEN |
| 444 | Knode | Ross | 410857 | 11/07/05 | 02/27/74 | AIRBUS | F/O | 73 | DEN |
| 445 | Young | Bryan | 410858 | 11/07/05 | 12/15/74 | AIRBUS | F/O | 74 | DEN |
| 446 | Sjolander | James | 410924 | 12/05/05 | 03/16/64 | AIRBUS | F/O | 75 | DEN |
| 447 | Beatty | Troy | 410926 | 12/05/05 | 11/07/69 | AIRBUS | F/O | 76 | DEN |
| 448 | Tucker | Anthony | 410927 | 12/05/05 | 12/28/70 | AIRBUS | F/O | 77 | DEN |
| 449 | Schultz | Frank | 410928 | 12/05/05 | 05/17/71 | AIRBUS | F/O | 78 | DEN |
| 450 | Scofield | Ryan | 410929 | 12/05/05 | 07/02/72 | AIRBUS | F/O | LOA | DEN |
| 451 | Case | Jason | 410930 | 12/05/05 | 04/29/73 | AIRBUS | F/O | 79 | DEN |
| 452 | Rex | Charles | 410931 | 12/05/05 | 09/06/73 | AIRBUS | F/O | 80 | DEN |
| 453 | Brotherton | Anthony | 410932 | 12/05/05 | 04/18/74 | AIRBUS | F/O | 81 | DEN |
| 454 | Colburn | Sharon | 410933 | 12/05/05 | 05/19/75 | AIRBUS | F/O | 82 | DEN |
| 455 | Rydalch | Carl | 410962 | 01/03/06 | 06/06/64 | AIRBUS | F/O | 83 | DEN |
| 456 | Dalke | William | 410963 | 01/03/06 | 05/06/65 | AIRBUS | F/O | 84 | DEN |
| 457 | Kahl | Bonnie | 410964 | 01/03/06 | 01/25/68 | AIRBUS | F/O | 85 | DEN |
| 458 | Gottron | Gregory | 410965 | 01/03/06 | 05/26/69 | AIRBUS | F/O | 86 | DEN |
| 459 | Bowman | Dustin | 410967 | 01/03/06 | 10/03/70 | AIRBUS | F/O | 87 | CHI |
| 460 | Powell | James | 410969 | 01/03/06 | 03/07/73 | AIRBUS | F/O | 88 | DEN |
| 461 | Fixen | Travis | 410970 | 01/03/06 | 03/09/73 | AIRBUS | F/O | 89 | DEN |
| 462 | Espanet | Aaron | 410971 | 01/03/06 | 05/12/73 | AIRBUS | F/O | 90 | DEN |
| 463 | Schoenleber | Jeord | 410972 | 01/03/06 | 06/21/74 | AIRBUS | F/O | 91 | DEN |
| 464 | Hall | Brett | 410973 | 01/03/06 | 06/10/75 | AIRBUS | F/O | 92 | DEN |
| 465 | Dwyer | Benjamin | 410975 | 01/03/06 | 01/26/79 | AIRBUS | F/O | 93 | DEN |
| 466 | Feiner | Joani | 411058 | 01/18/06 | 03/31/54 | AIRBUS | F/O | LOA | DEN |
| 467 | Leonard | Sean | 411059 | 01/18/06 | 01/08/69 | AIRBUS | F/O | 94 | DEN |
| 468 | Alston | Roy | 411060 | 01/18/06 | 08/26/69 | AIRBUS | F/O | 95 | DEN |
| 469 | Burns | Christopher | 411061 | 01/18/06 | 01/20/70 | AIRBUS | F/O | 96 | CHI |
| 470 | Stoffer | Renee | 411062 | 01/18/06 | 09/27/71 | AIRBUS | F/O | LOA | DEN |
| 471 | Lantagne | Christopher | 411063 | 01/18/06 | 12/01/71 | AIRBUS | F/O | LOA | DEN |
| 472 | Heinlein | Matthew | 411064 | 01/18/06 | 07/23/72 | AIRBUS | F/O | 97 | DEN |
| 473 | Gross | Tom | 411065 | 01/18/06 | 09/10/72 | AIRBUS | F/O | 98 | DEN |
| 474 | Schaaf | Shad | 411067 | 01/18/06 | 12/01/74 | AIRBUS | F/O | 99 | DEN |
| 475 | Troost | Noel | 411069 | 01/18/06 | 07/02/75 | AIRBUS | F/O | 100 | DEN |
| 476 | Rivera | Steve | 411070 | 01/18/06 | 10/19/75 | AIRBUS | F/O | 101 | DEN |
| 477 | King | Travis | 411071 | 01/18/06 | 08/05/78 | AIRBUS | F/O | 102 | DEN |
| 478 | Panzardi | Dion | 411180 | 02/13/06 | 09/03/63 | AIRBUS | F/O | 103 | DEN |
| 479 | Ketchum | Brian | 411181 | 02/13/06 | 03/16/65 | AIRBUS | F/O | 104 | DEN |
| 480 | Miller | Wade | 411182 | 02/13/06 | 04/27/65 | AIRBUS | F/O | 105 | DEN |
| 481 | Ouchi | Tohru | 411183 | 02/13/06 | 11/09/65 | AIRBUS | F/O | 106 | CHI |
| 482 | Smith | Robert | 411184 | 02/13/06 | 09/13/69 | AIRBUS | F/O | 107 | DEN |
| 483 | Burke | James | 411186 | 02/13/06 | 05/12/71 | AIRBUS | F/O | 108 | DEN |
| 484 | Morrow | Cole | 411187 | 02/13/06 | 08/09/73 | AIRBUS | F/O | 109 | DEN |
| 485 | Gianella | Kevin | 411188 | 02/13/06 | 09/02/75 | AIRBUS | F/O | 110 | DEN |
| 486 | Glaser | John | 411189 | 02/13/06 | 06/20/78 | AIRBUS | F/O | 111 | DEN |

Page 9 of 15



**Collective Bargaining Agreement**

10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 487 | Russ | Timothy | 411281 | 03/09/06 | 12/04/59 | AIRBUS | F/O | 112 | DEN |
| 488 | Grigorov | Grigor | 411282 | 03/09/06 | 04/05/63 | AIRBUS | F/O | 113 | DEN |
| 489 | Loomis | Scott | 411283 | 03/09/06 | 02/20/69 | AIRBUS | F/O | 114 | DEN |
| 490 | Bowman | Jason | 411284 | 03/09/06 | 04/02/71 | AIRBUS | F/O | 115 | DEN |
| 491 | Mc Whorter | Gavin | 411285 | 03/09/06 | 11/25/71 | AIRBUS | F/O | 116 | DEN |
| 492 | Paddock | Eric | 411286 | 03/09/06 | 10/06/75 | AIRBUS | F/O | 117 | DEN |
| 493 | Dahncke | Albert | 411287 | 03/09/06 | 10/26/75 | AIRBUS | F/O | 118 | DEN |
| 494 | Weihing | Charles | 411288 | 03/09/06 | 12/01/75 | AIRBUS | F/O | 119 | DEN |
| 495 | Nye | Christopher | 411289 | 03/09/06 | 11/22/77 | AIRBUS | F/O | 120 | DEN |
| 496 | Schuerman | Mark | 411341 | 03/27/06 | 04/20/63 | AIRBUS | F/O | 121 | DEN |
| 497 | Harrist | Robert | 411342 | 03/27/06 | 07/17/64 | AIRBUS | F/O | 122 | DEN |
| 498 | Luhmann | Christopher | 411343 | 03/27/06 | 12/02/64 | AIRBUS | F/O | 123 | DEN |
| 499 | Polton | Geyer | 411344 | 03/27/06 | 03/22/70 | AIRBUS | F/O | 124 | DEN |
| 500 | Dransfield | Dale | 411347 | 03/27/06 | 08/12/71 | AIRBUS | F/O | 125 | DEN |
| 501 | Wagner | Jason | 411348 | 03/27/06 | 02/24/73 | AIRBUS | F/O | 126 | DEN |
| 502 | Ketelsen | Eric | 411349 | 03/27/06 | 10/30/73 | AIRBUS | F/O | 127 | DEN |
| 503 | Scherrer | Mirko | 411350 | 03/27/06 | 01/18/74 | AIRBUS | F/O | 128 | DEN |
| 504 | O'Dair | Michael | 411351 | 03/27/06 | 05/23/76 | AIRBUS | F/O | LOA | DEN |
| 505 | Mccourt | Michael | 411420 | 04/24/06 | 10/11/60 | AIRBUS | F/O | 129 | DEN |
| 506 | Brown | Douglas | 411421 | 04/24/06 | 01/08/65 | AIRBUS | F/O | 130 | DEN |
| 507 | Gray | Jim | 411423 | 04/24/06 | 08/29/72 | AIRBUS | F/O | 131 | DEN |
| 508 | Mckim | Justin | 411424 | 04/24/06 | 02/11/73 | AIRBUS | F/O | 132 | DEN |
| 509 | Beall | Ian | 411425 | 04/24/06 | 08/12/73 | AIRBUS | F/O | 133 | DEN |
| 510 | Cartwright | Matthew | 411427 | 04/24/06 | 10/20/74 | AIRBUS | F/O | 134 | DEN |
| 511 | Stapleton | Daniel | 411476 | 05/08/06 | 02/27/68 | AIRBUS | F/O | 135 | DEN |
| 512 | Magnusson | Mark | 411478 | 05/08/06 | 10/03/68 | AIRBUS | F/O | 136 | DEN |
| 513 | Gustke | Leroy | 411480 | 05/08/06 | 01/23/71 | AIRBUS | F/O | 137 | DEN |
| 514 | Auman | Paul | 411481 | 05/08/06 | 04/10/71 | AIRBUS | F/O | 138 | CHI |
| 515 | Welton | Jeremy | 411482 | 05/08/06 | 03/22/72 | AIRBUS | F/O | 139 | DEN |
| 516 | Brown | Thomas | 411483 | 05/08/06 | 11/11/72 | AIRBUS | F/O | 140 | DEN |
| 517 | Taylor | Scott | 411635 | 06/06/06 | 12/28/64 | AIRBUS | F/O | LOA | DEN |
| 518 | Mcroberts | Josiah | 411636 | 06/06/06 | 09/05/66 | AIRBUS | F/O | 141 | DEN |
| 519 | Niedzielski | Eric | 411637 | 06/06/06 | 05/14/68 | AIRBUS | F/O | 142 | DEN |
| 520 | Mckee | Bradley | 411638 | 06/06/06 | 10/01/70 | AIRBUS | F/O | 143 | DEN |
| 521 | Everett | John | 411639 | 06/06/06 | 05/07/71 | AIRBUS | F/O | 144 | DEN |
| 522 | Jansick | Jeff | 411643 | 06/06/06 | 08/14/73 | AIRBUS | F/O | 145 | DEN |
| 523 | Beightol | Justin | 411644 | 06/06/06 | 10/22/73 | AIRBUS | F/O | 146 | DEN |
| 524 | Diehl | Brian | 411646 | 06/06/06 | 05/02/74 | AIRBUS | F/O | LOA | DEN |
| 525 | Bunker | Cyprian | 411645 | 06/06/06 | 06/23/79 | AIRBUS | F/O | 147 | DEN |
| 526 | Smith | Michael | 412134 | 10/24/06 | 07/12/64 | AIRBUS | F/O | LOA | DEN |
| 527 | Swanson | David | 412135 | 10/24/06 | 10/31/68 | AIRBUS | F/O | 148 | DEN |
| 528 | Mckee | Joshua | 412137 | 10/24/06 | 11/21/72 | AIRBUS | F/O | 149 | DEN |
| 529 | Swartzendruber | Jason | 412139 | 10/24/06 | 02/10/75 | AIRBUS | F/O | 150 | DEN |
| 530 | Kelly | Shawn | 412140 | 10/24/06 | 07/29/76 | AIRBUS | F/O | 151 | DEN |
| 531 | Hawbaker | Keith | 412141 | 10/24/06 | 07/17/77 | AIRBUS | F/O | 152 | DEN |
| 532 | Beaver | Lynn | 412142 | 10/24/06 | 10/31/79 | AIRBUS | F/O | 153 | DEN |
| 533 | Pavelek | Renee | 412247 | 12/04/06 | 01/17/73 | AIRBUS | F/O | 154 | DEN |
| 534 | Jenkins | Andrew | 412248 | 12/04/06 | 06/22/74 | AIRBUS | F/O | LOA | DEN |
| 535 | Johannsen | Karrie | 412250 | 12/04/06 | 05/30/75 | AIRBUS | F/O | 155 | DEN |
| 536 | Davis | Donald | 412253 | 12/04/06 | 07/28/76 | AIRBUS | F/O | 156 | DEN |
| 537 | Nading | Todd | 412429 | 01/29/07 | 08/11/63 | AIRBUS | F/O | 157 | DEN |
| 538 | Eliason | John | 412430 | 01/29/07 | 08/12/70 | AIRBUS | F/O | 158 | DEN |
| 539 | Sweatt | Justin | 412431 | 01/29/07 | 07/23/72 | AIRBUS | F/O | LOA | DEN |
| 540 | Velasquez | Agustin | 412433 | 01/29/07 | 12/27/74 | AIRBUS | F/O | LOA | DEN |

**LOA 71.16**

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 541 | Galey | James | 407806 | 03/05/07 | 03/10/64 | AIRBUS | F/O | 159 | DEN |
| 542 | Frank | David | 412619 | 03/05/07 | 02/04/64 | AIRBUS | F/O | 160 | DEN |
| 543 | Kirton | John | 412621 | 03/05/07 | 05/26/69 | AIRBUS | F/O | LOA | DEN |
| 544 | Fuhr | John | 412622 | 03/05/07 | 07/12/69 | AIRBUS | F/O | 161 | DEN |
| 545 | Schell | Russell | 412623 | 03/05/07 | 03/07/72 | AIRBUS | F/O | 162 | DEN |
| 546 | Curtin | Robert | 412624 | 03/05/07 | 05/10/75 | AIRBUS | F/O | 163 | DEN |
| 547 | Ramsey | Wendy | 412626 | 03/05/07 | 09/08/76 | AIRBUS | F/O | 164 | DEN |
| 548 | Terry | James | 412766 | 03/27/07 | 03/14/63 | AIRBUS | F/O | 165 | CHI |
| 549 | Hinkley | William | 412767 | 03/27/07 | 05/17/67 | AIRBUS | F/O | 166 | DEN |
| 550 | Tallberg | Susan | 412769 | 03/27/07 | 08/14/70 | AIRBUS | F/O | 167 | CHI |
| 551 | Niedergeses | Jennifer | 412770 | 03/27/07 | 01/15/71 | AIRBUS | F/O | 168 | DEN |
| 552 | Esper | Michael | 412771 | 03/27/07 | 01/13/72 | AIRBUS | F/O | 169 | DEN |
| 553 | Brekhus | Scotti | 412772 | 03/27/07 | 09/07/74 | AIRBUS | F/O | 170 | DEN |
| 554 | Lymberopoulos | Timothy | 412773 | 03/27/07 | 04/29/76 | AIRBUS | F/O | 171 | DEN |
| 555 | Judge | Kathryn | 412774 | 03/27/07 | 12/16/77 | AIRBUS | F/O | 172 | DEN |
| 556 | Howler | John | 413059 | 05/14/07 | 01/10/52 | AIRBUS | F/O | 173 | CHI |
| 557 | Zimmerman | Steven | 413058 | 05/14/07 | 12/25/56 | AIRBUS | F/O | 174 | DEN |
| 558 | Wintersteen | Robert | 413060 | 05/14/07 | 10/15/62 | AIRBUS | F/O | 175 | DEN |
| 559 | Bachman | Sandra | 413061 | 05/14/07 | 07/13/64 | AIRBUS | F/O | 176 | DEN |
| 560 | Zahler | Thomas | 413064 | 05/14/07 | 11/22/71 | AIRBUS | F/O | 177 | DEN |
| 561 | White | Aaron | 413067 | 05/14/07 | 05/12/78 | AIRBUS | F/O | 178 | DEN |
| 562 | Wyatt | Justin | 413066 | 05/14/07 | 05/05/81 | AIRBUS | F/O | 179 | DEN |
| 563 | Beres | Michael J | 413279 | 06/04/07 | 05/12/64 | AIRBUS | F/O | 180 | DEN |
| 564 | Mitev | Youri B | 413281 | 06/04/07 | 07/22/66 | AIRBUS | F/O | 181 | DEN |
| 565 | Siegle | Timothy J | 413282 | 06/04/07 | 08/08/68 | AIRBUS | F/O | 182 | DEN |
| 566 | Becker | Matthew K | 413283 | 06/04/07 | 08/19/72 | AIRBUS | F/O | 183 | DEN |
| 567 | Simonetta | Scott R | 413286 | 06/04/07 | 02/11/76 | AIRBUS | F/O | 184 | DEN |
| 568 | Whittington | Douglas C | 413287 | 06/04/07 | 12/06/76 | AIRBUS | F/O | 185 | DEN |
| 569 | Bird | Daniel | 413511 | 07/09/07 | 11/27/69 | AIRBUS | F/O | 186 | DEN |
| 570 | Hanrahan | Erik | 413514 | 07/09/07 | 01/24/72 | AIRBUS | F/O | LOA | DEN |
| 571 | Critchley | Brian | 413515 | 07/09/07 | 07/31/72 | AIRBUS | F/O | 187 | DEN |
| 572 | Villery | Paul | 413518 | 07/09/07 | 07/22/81 | AIRBUS | F/O | 188 | DEN |
| 573 | Scott | Nick | 413519 | 07/09/07 | 07/19/82 | AIRBUS | F/O | 189 | DEN |
| 574 | Blumer | Fred | 413895 | 08/20/07 | 11/18/59 | AIRBUS | F/O | 190 | DEN |
| 575 | Mccluskey | Mark | 413896 | 08/20/07 | 05/01/61 | AIRBUS | F/O | 191 | DEN |
| 576 | Bumby | Daniel | 413899 | 08/20/07 | 10/21/67 | AIRBUS | F/O | 192 | DEN |
| 577 | Zimmer | Mark | 413900 | 08/20/07 | 05/12/68 | AIRBUS | F/O | 193 | DEN |
| 578 | Butler | Jenna | 413902 | 08/20/07 | 10/05/73 | AIRBUS | F/O | 194 | DEN |
| 579 | Small | Adam | 413904 | 08/20/07 | 03/18/77 | AIRBUS | F/O | 195 | DEN |
| 580 | Graziano | Thomas | 414159 | 09/10/07 | 11/10/59 | AIRBUS | F/O | 196 | DEN |
| 581 | Hall | James | 414169 | 09/10/07 | 07/16/64 | AIRBUS | F/O | LOA | DEN |
| 582 | Maynard | Michael | 414162 | 09/10/07 | 04/07/73 | AIRBUS | F/O | 197 | CHI |
| 583 | Lee | Jonathan | 414164 | 09/10/07 | 08/30/76 | AIRBUS | F/O | 198 | CHI |
| 584 | Watkins | John | 414165 | 09/10/07 | 09/28/76 | AIRBUS | F/O | 199 | DEN |
| 585 | Stromquist | Blake | 414168 | 09/10/07 | 02/11/81 | AIRBUS | F/O | 200 | DEN |
| 586 | Andersen | Tracy | 414260 | 10/08/07 | 12/30/61 | AIRBUS | F/O | 201 | CHI |
| 587 | Boyle | David | 414272 | 10/08/07 | 02/15/67 | AIRBUS | F/O | 202 | DEN |
| 588 | Fett | Brett | 414293 | 10/08/07 | 04/15/67 | AIRBUS | F/O | 203 | CHI |
| 589 | Johnson | Barry | 414312 | 10/08/07 | 07/27/67 | AIRBUS | F/O | 204 | DEN |
| 590 | Hash | Willard | 414306 | 10/08/07 | 01/15/73 | AIRBUS | F/O | 205 | DEN |
| 591 | Lane | James | 414317 | 10/08/07 | 08/02/76 | AIRBUS | F/O | 206 | CHI |
| 592 | Roccatani | Dante | 414362 | 10/08/07 | 09/02/77 | AIRBUS | F/O | 207 | DEN |
| 593 | Parmenter | Micah | 414330 | 10/08/07 | 05/29/80 | AIRBUS | F/O | 208 | DEN |
| 594 | Garrett | Courtney | 414297 | 10/08/07 | 12/19/80 | AIRBUS | F/O | 209 | DEN |



**Collective Bargaining Agreement** | 10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 595 | Dethlefs | Joseph | 414654 | 11/05/07 | 10/11/72 | AIRBUS | F/O | 210 | DEN |
| 596 | Wright | Nathan | 414663 | 11/05/07 | 04/24/77 | AIRBUS | F/O | 211 | DEN |
| 597 | Diffenthal | Grant | 414655 | 11/05/07 | 08/11/77 | AIRBUS | F/O | 212 | DEN |
| 598 | Combs | Chris | 409418 | 04/24/08 | 08/04/81 | AIRBUS | F/O | 213 | DEN |
| 599 | Krugerud | Scott | 415613 | 04/24/08 | 12/01/71 | AIRBUS | F/O | 214 | DEN |
| 600 | Hanson | W. Scott | 415611 | 04/24/08 | 05/22/74 | AIRBUS | F/O | 215 | DEN |
| 601 | Keck | Malia | 415612 | 04/24/08 | 05/22/78 | AIRBUS | F/O | LOA | DEN |
| 602 | Shockley | Kenlon | 420803 | 04/11/11 | 06/20/60 | AIRBUS | F/O | 216 | DEN |
| 603 | Hirao | Daichi | 420805 | 04/11/11 | 09/30/69 | AIRBUS | F/O | 217 | CHI |
| 604 | Cornish | Bryan | 420807 | 04/11/11 | 09/08/76 | AIRBUS | F/O | 218 | CHI |
| 605 | Morgan | Justin | 420804 | 04/11/11 | 11/20/80 | AIRBUS | F/O | 219 | CHI |
| 606 | Tate | Levi | 420808 | 04/11/11 | 03/07/82 | AIRBUS | F/O | 220 | DEN |
| 607 | Woodrome | Dustin | 420806 | 04/11/11 | 11/10/83 | AIRBUS | F/O | 221 | DEN |
| 608 | Westmacott | Robert | 420886 | 04/25/11 | 10/15/51 | AIRBUS | F/O | 222 | CHI |
| 609 | Orange | Gary | 420887 | 04/25/11 | 04/15/53 | AIRBUS | F/O | LOA | CHI |
| 610 | Norden | Daniel | 420888 | 04/25/11 | 10/15/53 | AIRBUS | F/O | LOA | CHI |
| 611 | Drska | Gary | 420884 | 04/25/11 | 09/15/56 | AIRBUS | F/O | 223 | CHI |
| 612 | Morgan | Arthur | 420883 | 04/25/11 | 02/06/82 | AIRBUS | F/O | 224 | CHI |
| 613 | Ward | Mark | 420949 | 05/09/11 | 03/04/51 | AIRBUS | F/O | 225 | CHI |
| 614 | Burian | Martin | 420947 | 05/09/11 | 08/21/54 | AIRBUS | F/O | 226 | CHI |
| 615 | Daniels | Thomas | 420948 | 05/09/11 | 10/24/54 | AIRBUS | F/O | 227 | DEN |
| 616 | Becerra | Christine | 423256 | 09/16/13 | 02/18/65 | AIRBUS | F/O | 228 | DEN |
| 617 | Keeton | John | 423258 | 09/16/13 | 08/08/75 | AIRBUS | F/O | 229 | DEN |
| 618 | Kinnaird | Jason | 423259 | 09/16/13 | 01/22/76 | AIRBUS | F/O | 230 | DEN |
| 619 | Sandoval | Leigh | 423260 | 09/16/13 | 02/04/79 | AIRBUS | F/O | 231 | DEN |
| 620 | Tomicich | Jerad | 423262 | 09/16/13 | 01/14/81 | AIRBUS | F/O | 232 | DEN |
| 621 | Smith | Sean | 423263 | 09/16/13 | 05/14/82 | AIRBUS | F/O | 233 | DEN |
| 622 | Mihalcin | Matthew | 423264 | 09/16/13 | 02/15/84 | AIRBUS | F/O | 234 | DEN |
| 623 | Freyer | Randi | 423265 | 09/16/13 | 05/06/85 | AIRBUS | F/O | LOA | DEN |
| 624 | Denooy | Luke | 423266 | 09/16/13 | 12/19/85 | AIRBUS | F/O | 235 | DEN |
| 625 | Pittman | Michael | 423286 | 09/16/13 | 08/04/86 | AIRBUS | F/O | 236 | DEN |
| 626 | Konterski | James | 423379 | 10/14/13 | 01/03/65 | AIRBUS | F/O | 237 | DEN |
| 627 | Munnis | Amy | 423380 | 10/14/13 | 02/18/68 | AIRBUS | F/O | 238 | DEN |
| 628 | Smith | Tracy | 423381 | 10/14/13 | 04/14/70 | AIRBUS | F/O | 239 | DEN |
| 629 | Nichols | Christopher | 402419 | 10/14/13 | 03/03/77 | AIRBUS | F/O | 240 | DEN |
| 630 | Martin | Stephen | 423382 | 10/14/13 | 01/09/81 | AIRBUS | F/O | 241 | DEN |
| 631 | Davis | William | 423383 | 10/14/13 | 05/22/82 | AIRBUS | F/O | 242 | DEN |
| 632 | Davis | Randall | 423384 | 10/14/13 | 02/15/84 | AIRBUS | F/O | 243 | DEN |
| 633 | Lembke | Robert | 423385 | 10/14/13 | 07/15/84 | AIRBUS | F/O | 244 | DEN |
| 634 | Horne | David | 423386 | 10/14/13 | 12/18/84 | AIRBUS | F/O | 245 | DEN |
| 635 | Bernardt | Billy | 423387 | 10/14/13 | 05/21/85 | AIRBUS | F/O | 246 | DEN |
| 636 | Wakefield | Jonathan | 423388 | 10/14/13 | 05/18/86 | AIRBUS | F/O | 247 | DEN |
| 637 | Hach | Ethan | 423389 | 10/14/13 | 05/22/86 | AIRBUS | F/O | 248 | DEN |
| 638 | Caroen | Harold | 423625 | 11/11/13 | 08/05/59 | AIRBUS | F/O | 249 | CHI |
| 639 | Hamel | Christopher | 423526 | 11/11/13 | 01/03/63 | AIRBUS | F/O | 250 | DEN |
| 640 | Moinette | Charles | 423527 | 11/11/13 | 05/09/65 | AIRBUS | F/O | 251 | DEN |
| 641 | Vierling | David | 423528 | 11/11/13 | 07/29/68 | AIRBUS | F/O | 252 | CHI |
| 642 | Rouse | William | 423529 | 11/11/13 | 08/22/68 | AIRBUS | F/O | 253 | CHI |
| 643 | Gordon | Patrick | 423530 | 11/11/13 | 08/06/69 | AIRBUS | F/O | 254 | DEN |
| 644 | Manausa | Mark | 423531 | 11/11/13 | 07/25/78 | AIRBUS | F/O | 255 | DEN |
| 645 | Gallagher | Ryan | 423532 | 11/11/13 | 04/01/79 | AIRBUS | F/O | 256 | DEN |
| 646 | Jakubowski | Jared | 423533 | 11/11/13 | 01/16/80 | AIRBUS | F/O | 257 | DEN |
| 647 | Zielinski | Erin | 423534 | 11/11/13 | 08/16/80 | AIRBUS | F/O | LOA | DEN |
| 648 | Draughon | Grover | 423535 | 11/11/13 | 02/01/81 | AIRBUS | F/O | 258 | DEN |
| 649 | Leonard | Jesse | 423536 | 11/11/13 | 04/20/82 | AIRBUS | F/O | 259 | DEN |

**LOA 71.18**

**FAPA**

**Collective Bargaining Agreement**                                    10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|-------|-----------|------------|------|-----|-----|-----------|------|------------|----------|
| 650 | Johnson | Mark | 423651 | 12/09/13 | 04/16/52 | AIRBUS | F/O | 260 | DEN |
| 651 | Newlon | Christopher | 423652 | 12/09/13 | 03/09/65 | AIRBUS | F/O | 261 | DEN |
| 652 | Holum | John | 423653 | 12/09/13 | 05/02/68 | AIRBUS | F/O | 262 | DEN |
| 653 | Gray | James | 423654 | 12/09/13 | 08/19/70 | AIRBUS | F/O | 263 | CHI |
| 654 | Brown | Christopher | 423655 | 12/09/13 | 12/14/80 | AIRBUS | F/O | 264 | DEN |
| 655 | Maynard | Sara | 423657 | 12/09/13 | 02/27/82 | AIRBUS | F/O | 265 | CHI |
| 656 | Herrmann | Travis | 423658 | 12/09/13 | 04/12/84 | AIRBUS | F/O | 266 | DEN |
| 657 | Houge | Scott | 423659 | 12/09/13 | 09/04/85 | AIRBUS | F/O | 267 | DEN |
| 658 | Bowers | Shilo | 423660 | 12/09/13 | 12/31/85 | AIRBUS | F/O | 268 | DEN |
| 659 | Gordon | Bryce | 423661 | 12/09/13 | 02/27/86 | AIRBUS | F/O | 269 | DEN |
| 660 | Young | William | 423662 | 12/09/13 | 09/12/86 | AIRBUS | F/O | 270 | DEN |
| 661 | Rien | Lawrence | 423773 | 01/06/14 | 01/05/52 | AIRBUS | F/O | 271 | DEN |
| 662 | Bates | Carla | 423775 | 01/06/14 | 05/09/65 | AIRBUS | F/O | 272 | DEN |
| 663 | Palus | Peter | 423776 | 01/06/14 | 04/16/68 | AIRBUS | F/O | 273 | DEN |
| 664 | Goff | Bradley | 423777 | 01/06/14 | 08/25/68 | AIRBUS | F/O | 274 | CHI |
| 665 | Zadrozny | Paul | 423778 | 01/06/14 | 12/11/68 | AIRBUS | F/O | 275 | DEN |
| 666 | Sonecha | Harish | 423779 | 01/06/14 | 04/24/69 | AIRBUS | F/O | 276 | CHI |
| 667 | Calkins | Gregory | 423780 | 01/06/14 | 04/26/69 | AIRBUS | F/O | 277 | DEN |
| 668 | Bjorklund | Alan | 423781 | 01/06/14 | 08/02/71 | AIRBUS | F/O | 278 | CHI |
| 669 | Nye | Shane | 423782 | 01/06/14 | 10/23/72 | AIRBUS | F/O | 279 | DEN |
| 670 | Hamann | James | 423783 | 01/06/14 | 07/23/73 | AIRBUS | F/O | 280 | DEN |
| 671 | George | Derik | 423784 | 01/06/14 | 11/07/73 | AIRBUS | F/O | 281 | DEN |
| 672 | Carson | Erik | 423785 | 01/06/14 | 12/17/73 | AIRBUS | F/O | 282 | DEN |
| 673 | Grove | Kelli | 423786 | 01/06/14 | 10/19/77 | AIRBUS | F/O | 283 | DEN |
| 674 | Allen | Joshua | 423787 | 01/06/14 | 01/02/80 | AIRBUS | F/O | 284 | DEN |
| 675 | Johnson | Benjamin | 423788 | 01/06/14 | 07/13/80 | AIRBUS | F/O | 285 | DEN |
| 676 | Foster | Jared | 423789 | 01/06/14 | 12/08/80 | AIRBUS | F/O | 286 | DEN |
| 677 | Simpson | Scott | 423790 | 01/06/14 | 03/12/83 | AIRBUS | F/O | 287 | DEN |
| 678 | Keller | Brian | 423791 | 01/06/14 | 12/28/83 | AIRBUS | F/O | 288 | DEN |
| 679 | Dahlberg | Devin | 423792 | 01/06/14 | 04/18/84 | AIRBUS | F/O | 289 | DEN |
| 680 | Kay | William | 423810 | 02/03/14 | 01/08/60 | AIRBUS | F/O | 290 | DEN |
| 681 | Hovland | Thomas | 423811 | 02/03/14 | 06/19/60 | AIRBUS | F/O | 291 | DEN |
| 682 | Shupe | Rex | 423812 | 02/03/14 | 09/10/66 | AIRBUS | F/O | 292 | DEN |
| 683 | Wilder | John | 423813 | 02/03/14 | 08/18/67 | AIRBUS | F/O | 293 | DEN |
| 684 | Lohrenz | Scott | 423814 | 02/03/14 | 02/13/69 | AIRBUS | F/O | 294 | DEN |
| 685 | Harmon | Stephen | 423815 | 02/03/14 | 03/11/69 | AIRBUS | F/O | 295 | DEN |
| 686 | Van Remortel | Nicholas | 423816 | 02/03/14 | 12/16/71 | AIRBUS | F/O | 296 | DEN |
| 687 | Lloyd | Robert | 423817 | 02/03/14 | 02/11/72 | AIRBUS | F/O | 297 | DEN |
| 688 | Rogers | Chancy | 423818 | 02/03/14 | 04/15/74 | AIRBUS | F/O | 298 | DEN |
| 689 | Singh | Kiran | 423819 | 02/03/14 | 03/05/77 | AIRBUS | F/O | 299 | DEN |
| 690 | Christensen | Shawn | 423820 | 02/03/14 | 08/28/79 | AIRBUS | F/O | 300 | DEN |
| 691 | Drean | Jason | 423821 | 02/03/14 | 01/17/80 | AIRBUS | F/O | 301 | DEN |
| 692 | Marques | Jeff | 423822 | 02/03/14 | 07/30/80 | AIRBUS | F/O | 302 | CHI |
| 693 | Korell | Jason | 423823 | 02/03/14 | 11/03/80 | AIRBUS | F/O | 303 | DEN |
| 694 | Bush | Michelle | 423824 | 02/03/14 | 07/10/84 | AIRBUS | F/O | 304 | DEN |
| 695 | Dean | Justin | 423825 | 02/03/14 | 04/06/85 | AIRBUS | F/O | 305 | DEN |
| 696 | Gulla | Matthew | 423826 | 02/03/14 | 07/15/85 | AIRBUS | F/O | 306 | DEN |
| 697 | Field | David | 423827 | 02/03/14 | 03/06/86 | AIRBUS | F/O | 307 | DEN |
| 698 | Peters | Jesse | 423828 | 02/03/14 | 04/26/88 | AIRBUS | F/O | 308 | CHI |
| 699 | Duck | Zachary | 423829 | 02/03/14 | 07/14/88 | AIRBUS | F/O | 309 | DEN |
| 700 | Welhaf | Mark | 424030 | 03/03/14 | 04/21/68 | AIRBUS | F/O | 310 | DEN |
| 701 | Stotz | Mark | 424031 | 03/03/14 | 06/13/68 | AIRBUS | F/O | 311 | DEN |
| 702 | Sulkowski | Nicholas | 424032 | 03/03/14 | 08/29/70 | AIRBUS | F/O | 312 | DEN |
| 703 | Robins | Brian | 424033 | 03/03/14 | 05/10/71 | AIRBUS | F/O | 313 | DEN |

**Frontier Airlines Pilots Association**                                    **LOA 71.19**



**Collective Bargaining Agreement**   10/30/14

## FRONTIER AIRLINES PILOT SENIORITY LIST

### EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 704 | Hungerford | Robert | 424034 | 03/03/14 | 01/30/73 | AIRBUS | F/O | 314 | DEN |
| 705 | Vizier | Angela | 424035 | 03/03/14 | 08/18/75 | AIRBUS | F/O | 315 | CHI |
| 706 | Voegeli | Jan | 424036 | 03/03/14 | 03/05/77 | AIRBUS | F/O | 316 | DEN |
| 707 | Saubers | Joshua | 424037 | 03/03/14 | 05/02/77 | AIRBUS | F/O | 317 | DEN |
| 708 | Wilhelm | Paul | 424038 | 03/03/14 | 09/23/79 | AIRBUS | F/O | 318 | DEN |
| 709 | Hutchins | Evan | 424039 | 03/03/14 | 09/04/80 | AIRBUS | F/O | 319 | DEN |
| 710 | Vallely | Peter | 424040 | 03/03/14 | 08/07/82 | AIRBUS | F/O | 320 | CHI |
| 711 | Langei | Joshua | 424041 | 03/03/14 | 02/26/83 | AIRBUS | F/O | 321 | DEN |
| 712 | Walker | Benjamin | 424042 | 03/03/14 | 04/25/83 | AIRBUS | F/O | 322 | DEN |
| 713 | Greene | Ryan | 424043 | 03/03/14 | 05/26/83 | AIRBUS | F/O | 323 | CHI |
| 714 | Cooper | Matthew | 424044 | 03/03/14 | 05/21/84 | AIRBUS | F/O | 324 | DEN |
| 715 | Zigler | Geoffrey | 424045 | 03/03/14 | 12/20/84 | AIRBUS | F/O | 325 | DEN |
| 716 | Isaacs | Elliott | 424046 | 03/03/14 | 05/01/85 | AIRBUS | F/O | 326 | CHI |
| 717 | Menjura- Henao | Andrea | 424047 | 03/03/14 | 12/08/85 | AIRBUS | F/O | 327 | DEN |
| 718 | Lake | Adam | 424048 | 03/03/14 | 06/18/86 | AIRBUS | F/O | 328 | DEN |
| 719 | Vella | Joshua | 424049 | 03/03/14 | 03/26/88 | AIRBUS | F/O | 329 | DEN |
| 720 | Lang | Brian | 424183 | 04/07/14 | 09/17/68 | AIRBUS | F/O | 330 | DEN |
| 721 | Bogue | Brian | 424184 | 04/07/14 | 10/10/70 | AIRBUS | F/O | 331 | DEN |
| 722 | Christensen | Travis | 424185 | 04/07/14 | 09/11/72 | AIRBUS | F/O | 332 | DEN |
| 723 | Landron | Carolyn | 424186 | 04/07/14 | 10/16/72 | AIRBUS | F/O | 333 | DEN |
| 724 | Taylor | Darrell | 424187 | 04/07/14 | 12/15/73 | AIRBUS | F/O | 334 | DEN |
| 725 | Mercer | David | 424188 | 04/07/14 | 05/19/74 | AIRBUS | F/O | 335 | CHI |
| 726 | Arjona | Miguel | 424189 | 04/07/14 | 11/29/74 | AIRBUS | F/O | 336 | DEN |
| 727 | Rose | Bradley | 424190 | 04/07/14 | 01/14/75 | AIRBUS | F/O | 337 | CHI |
| 728 | Dahlberg | Ryan | 424191 | 04/07/14 | 06/08/79 | AIRBUS | F/O | 338 | DEN |
| 729 | Cardwell | Ronald | 424192 | 04/07/14 | 02/06/82 | AIRBUS | F/O | 339 | DEN |
| 730 | Dessauer | Alan | 424193 | 04/07/14 | 06/13/83 | AIRBUS | F/O | 340 | DEN |
| 731 | Heer | Tyler | 424194 | 04/07/14 | 03/01/84 | AIRBUS | F/O | 341 | CHI |
| 732 | Thomas | Daine | 424195 | 04/07/14 | 08/15/84 | AIRBUS | F/O | 342 | DEN |
| 733 | Passmore | Edik | 424196 | 04/07/14 | 08/16/85 | AIRBUS | F/O | 343 | DEN |
| 734 | Fey | Patrick | 424197 | 04/07/14 | 03/17/86 | AIRBUS | F/O | 344 | CHI |
| 735 | Ramirez | Patrick | 424198 | 04/07/14 | 05/14/86 | AIRBUS | F/O | 345 | DEN |
| 736 | Sallee | Maria | 424199 | 04/07/14 | 09/22/86 | AIRBUS | F/O | 346 | DEN |
| 737 | Geda | Stan | 424200 | 04/07/14 | 01/11/87 | AIRBUS | F/O | 347 | CHI |
| 738 | Wallace | Dane | 424201 | 04/07/14 | 01/10/89 | AIRBUS | F/O | 348 | DEN |
| 739 | Chibnik | Anthony | 424202 | 04/07/14 | 03/31/91 | AIRBUS | F/O | 349 | CHI |

| | PILOTS WITH SENIORITY RIGHTS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | KING | TERRANCE | 35 | 04/18/94 | 07/07/47 | AIRBUS | CAPT | RETIRED | DEN |
| 2 | HARVEY | EDWIN | 53 | 05/16/94 | 08/30/44 | AIRBUS | CAPT | RETIRED | DEN |
| 3 | RICHARD JR | JOHN | 54 | 05/16/94 | 11/07/46 | AIRBUS | CAPT | RETIRED | DEN |
| 4 | STALEY | ANTHONY | 181 | 06/20/94 | 11/14/47 | AIRBUS | CAPT | RETIRED | DEN |
| 5 | DEMBY | WILLIAM | 258 | 09/06/94 | 06/16/45 | AIRBUS | CAPT | RETIRED | DEN |
| 6 | STELLMON | LAWRENCE | 509 | 06/05/95 | 06/05/46 | AIRBUS | CAPT | RETIRED | DEN |
| 7 | McCOLLOUGH | VAL | 748 | 12/04/95 | 08/01/57 | AIRBUS | CAPT | EMERITUS | DEN |
| 8 | FONTES | JOE | 860 | 03/11/96 | 09/07/47 | AIRBUS | CAPT | RETIRED | DEN |
| 9 | TODOVERTO | JOHN | 921 | 04/08/96 | 02/22/47 | AIRBUS | CAPT | RETIRED | DEN |
| 10 | DURHAM | DANNY | 400922 | 04/08/96 | 03/08/48 | AIRBUS | CAPT | RETIRED | DEN |
| 11 | KIRKWOOD | ROBERT | 1533 | 06/02/97 | 10/07/45 | AIRBUS | CAPT | RETIRED | DEN |
| 12 | WINDERS | JIMMIE | 2222 | 03/02/98 | 11/23/44 | BOEING | CAPT | RETIRED | DEN |
| 13 | SELVIG | ERIK | 2308 | 05/04/98 | 07/30/45 | AIRBUS | CAPT | RETIRED | DEN |
| 14 | CAMPBELL | PETER | 2680 | 09/08/98 | 04/09/47 | AIRBUS | F/O | RETIRED | DEN |
| 15 | YODER | CLARENCE | 402885 | 11/09/98 | 08/15/44 | BOEING | F/O | RETIRED | DEN |
| 16 | GORTMAKER | WIEBE | 403221 | 02/15/99 | 05/21/45 | AIRBUS | CAPT | RETIRED | DEN |

**LOA 71.20**



**Collective Bargaining Agreement**                                    10/30/14

# FRONTIER AIRLINES PILOT SENIORITY LIST

## EFFECTIVE June 13, 2014

| SEN # | LAST NAME | FIRST NAME | EMP# | DOH | DOB | EQUIPMENT | SEAT | POSITION # | DOMICILE |
|---|---|---|---|---|---|---|---|---|---|
| 17 | STROMQUIST | KENNETH | 403731 | 06/07/99 | 12/31/45 | AIRBUS | CAPT | RETIRED | DEN |
| 18 | PARKER | HENRY | 404000 | 09/13/99 | 01/14/47 | AIRBUS | CAPT | RETIRED | DEN |
| 19 | POOL, II | FRED | 404001 | 09/13/99 | 01/28/48 | AIRBUS | CAPT | RETIRED | DEN |
| 20 | VAUGHAN | JAMES | 404376 | 12/13/99 | 05/25/47 | AIRBUS | CAPT | RETIRED | DEN |
| 21 | GLASS | RALPH | 404401 | 01/03/00 | 08/13/62 | AIRBUS | CAPT | RETIRED | DEN |
| 22 | BARRENTINE | JOHN | 404696 | 04/03/00 | 12/22/47 | AIRBUS | CAPT | RETIRED | DEN |
| 23 | LOPEZ | ALBERTO | 404967 | 08/07/00 | 09/16/48 | AIRBUS | CAPT | RETIRED | DEN |
| 24 | VAN PELT | MARTIN | 405315 | 12/04/00 | 04/29/48 | AIRBUS | CAPT | RETIRED | DEN |
| 25 | QUEISER | JOHN | 405452 | 01/29/01 | 06/14/45 | BOEING | F/O | RETIRED | DEN |
| 26 | GASSMAN | EDWARD | 405504 | 02/12/01 | 06/28/44 | AIRBUS | F/O | RETIRED | DEN |
| 27 | MCFALL | MICHAEL | 405505 | 02/12/01 | 06/07/45 | AIRBUS | CAPT | RETIRED | DEN |
| 28 | OTI | ENRIQUE | 405507 | 02/12/01 | 11/16/47 | AIRBUS | CAPT | RETIRED | DEN |
| 29 | WAGNER | NORMAN | 405603 | 03/12/01 | 12/20/65 | AIRBUS | F/O | RETIRED | DEN |
| 30 | ROE | JOHN | 407108 | 10/21/02 | 03/31/47 | AIRBUS | CAPT | RETIRED | DEN |
| 31 | BIGGS | CLIFFORD | 407215 | 01/06/03 | 09/03/46 | AIRBUS | F/O | RETIRED | DEN |
| 32 | GILBERT | WARD | 407216 | 01/06/03 | 02/21/47 | AIRBUS | F/O | RETIRED | DEN |
| 33 | ANDERS | FRANK | 407296 | 1/27/03* | 09/26/47 | AIRBUS | CAPT | RETIRED | DEN |
| 34 | HATHCOAT | JAMES | 408052 | 09/15/03 | 09/06/47 | AIRBUS | F/O | RETIRED | DEN |
| 35 | BAKKE | STEVEN | 408483 | 01/05/04 | 10/22/47 | AIRBUS | F/O | RETIRED | DEN |
| 36 | BERNING | ROBERT | 411634 | 06/06/06 | 10/18/48 | AIRBUS | F/O | RETIRED | DEN |
| 37 | Anderson | James | 412765 | 03/27/07 | 06/26/48 | AIRBUS | F/O | RETIRED | DEN |
| 226 | MILLIGAN | DAVID | 405510 | 02/12/01 | 07/17/54 | AIRBUS | CAPT | RETIRED | DEN |
| 46 | HILLMAN | CRAIG | 401440 | 03/31/97 | 05/20/50 | AIRBUS | CAPT | RETIRED | DEN |
| 50 | FURNAS | JERRY | 401594 | 07/07/97 | 05/28/49 | AIRBUS | CAPT | RETIRED | DEN |
| 64 | SMITH | HARRIS | 402132 | 02/03/98 | 05/14/49 | AIRBUS | CAPT | RETIRED | DEN |

**Frontier Airlines Pilots Association**                              **LOA 71.21**



**Collective Bargaining Agreement**                    10/30/14

THIS PAGE

INTENTIONALLY

LEFT BLANK



**Collective Bargaining Agreement**                    11/14/14

November 14, 2014

Letter of Agreement 72

First Officer Brian Ketchum
President
Frontier Airline Pilots Association
18300 E. 71ˢᵗ Avenue, Suite 140
Denver, CO 80249

**Electronic Flight Bag (EFB)**

Dear First Officer Ketchum:

This Letter of Agreement ("LOA") is entered into between the Frontier Airline Pilots Association ("FAPA") and Frontier Airlines, Inc. ("the Company") to define allowances and restrictions associated with replacing paper manuals with Electronic Flight Bags (EFBs). Nothing within this LOA shall preclude the Company from changing any component of the approved EFB or returning to a paper flight kit.

Modify Section 2 – GENERAL to read:

E. ELECTRONIC FLIGHT BAG (EFB)

1. Manuals to be provided *electronically* to Pilots include, but are not limited to, Employee Manual, appropriate Flight Operations Manuals, Approach Plates, Enroute Charts and revisions as they are released. *The Company shall provide the necessary software to receive and use all required manuals, documents and applications.*

2. *The Company shall provide wireless internet access in crew domicile lounges for EFB updating purposes.*

3. The Company shall be responsible for distributing any and all revisions required to keep the Pilot manuals current. These revisions shall be *distributed and viewed electronically via the approved Document Management System (DMS) or applicable app (e.g., Jeppesen, Foreflight). Pilots are responsible for updating all Company issued revisions in their EFB.*

4. *The Company shall provide a stipend to each Pilot to cover the costs associated with the purchase of the minimum required original equipment manufacturer (OEM) EFB hardware as defined in FOM I (currently an iPad 2 16GB WiFi and backup battery*

FLYFRONTIER.COM





device). Stipend amounts shall be no less than the minimum manufacturer suggested retail price (MSRP), including United States average state and local taxes, for a new condition device of the minimum hardware required by the Company and available for purchase at major retail stores (e.g., Apple Store, BestBuy, Target, etc.). Pilots shall be issued the stipend (currently $600) no later than one month following their date of hire or their requirement for new EFB hardware. The stipend shall be issued no less than once every three (3) years (based on the date of the pilot's first EFB stipend issuance). The stipend amount and renewal period shall be reviewed at least once every two (2) calendar years and may be modified at any time upon mutual agreement of both the Company and the Association. Pilots may choose to purchase hardware that exceeds the minimum requirements at their own incremental cost. If, at any time, the Company revises the minimum hardware requirements, the Company shall issue a stipend to each pilot for an amount not less than the MSRP retail cost associated with the revised minimum hardware required by the Company, in new condition, including United States average state and local sales taxes. To ensure hardware compatibility throughout the three-year stipend period, the Company may require New Hire pilots to report for initial training with the latest approved EFB hardware (rather than the minimum), as long as the latest approved EFB hardware can be purchased for the stipend amount noted above.

5. The EFB is considered Pilot-owned equipment. The Pilot may choose to place personal information or software on the EFB, however, the Company is not responsible for the loss, misuse or inadvertent disclosure of personal information or software stored on the EFB by the Pilot.

6. No adverse action shall be taken based on any information that the Company may obtain through the EFB's location tracking system or usage of the EFB, in accordance with the provisions of Section 2.K.2. of the FAPA CBA, dated 05/28/09. Should at any time, it be determined that the Company has obtained or observed information directly from the audio or video capture mechanisms on the EFB that does not involve Company business, the Company will immediately notify the affected employee. The recording will be permanently destroyed, including all backups and copies, and a record of the destruction will be distributed to the affected parties.

7. The Company reserves the right to install software to manage configuration, Company documents, and Company provided software on the EFB.



**Collective Bargaining Agreement**                    11/14/14



8. *Technical Support. The Company agrees to maintain adequate technical support for the EFB in addition to the support provided by the EFB manufacturer. Online and/or toll   Free access (including International access) will be available to address Pilot questions 24/7/365 and to assist in technical troubleshooting.*

Modify Section H. COPIES OF THE AGREEMENT to read:

2. Copies of any subsequent revisions, Letters of Agreement or Memoranda of Understanding shall be provided by the drafting party electronically to the other party within 5 Calendar Days of signing, and by the Company *through the DMS within 10 Calendar Days of signing.*

*Delete paragraph 3.*

Modify Section 20 – TRAINING to read:

A.3.

a.      Training Materials. Training materials that are required to be studied or completed prior to a training event shall be provided electronically at least 7 days (or less by mutual agreement between the Pilot and the Company) prior to any simulator or Ground Training.

b.      List of Airports to be used for PC and PT Events. For PC and PT events, a list of up to 5 airports that may be used for the event shall be provided to the Pilots at least 24 hours in advance.

c.      Recurrent Ground School Syllabus. Pilots attending Recurrent Ground School shall be provided with a syllabus that describes the topics to be covered each day. The syllabus shall be provided electronically least 7 days (or less by mutual agreement between the Pilot and the Company) prior to the training.

d.      Simulator Notification. Notification of PT and PC events for the following Monthly Bid Period shall be provided *electronically (e.g. Company email address, DMS, Electronic Bidding Systems)* by the 23rd of the current month.

FLYFRONTIER.COM



**Collective Bargaining Agreement**      11/14/14



Frontier Airlines, Inc.
7001 Tower Road
Denver Colorado 80249

Modify Section 23 – DEFINITIONS to add:

Electronic Flight Bag (EFB) – Is defined as an approved electronic device used to display information required for flight operations. Specific policies and procedures for use of EFBs are defined in Company manuals to include, but not limited to: EFB Program Manual, FOM I, FOM II, FOTM and DOM. The specific hardware device shall be defined by the Company in accordance with these manuals.

FOR: Frontier Airlines, Inc.

FOR: Frontier Airlines Pilots Association

Captain Scott Gould,
Vice Preside - Flight Operations
Frontier Airlines

First Officer Brian Ketchum
President
Frontier Airline Pilots Association

FLY**FRONTIER**.COM

**LOA 72.4**



**Collective Bargaining Agreement**     06/24/15

 Frontier Airline Pilots Association

Letter of Agreement 73

June 22, 2015

Jacalyn W. Peter
Vice President of Labor Relations
Frontier Airlines, Inc.
7001 Tower Rd.
Denver, CO 80249

**Arbitrators**

Dear Ms. Peter

This Letter of Agreement ("LOA") is made and entered into by and between Frontier Airlines, Inc. ("the Company") and the Airline Pilots in the service of Frontier Airlines, as represented by the Frontier Airline Pilots Association ("the Association") to amend the list of arbitrators in Appendix 2.

Modify Appendix 2 to read:

The panel of arbitrators in accordance with Section 14.J.2 as of June 22, 2015 shall be:

- Larry Holden
- Carol Wittenberg
- Ira Jaffee
- Roger Kaplan
- Jim Conway
- Barry Simon
- Harry MacLean

Sincerely,

June 22, 2015

Brian Ketchum
President
Frontier Airline Pilots Association

June 24, 2015

Jacalyn Peter
Vice President of Labor Relations
Frontier Airlines, Inc.