IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RANDI FREYER,
BRANDY BECK,
ERIN ZIELINSKI, and                                    Case No. 1:19-cv-03468-CMA-SKC
SHANNON KIEDROWSKI,

      Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

      Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED
COMPLAINT**

---

## I.    Introduction and Summary of Argument[1]

Plaintiffs, four long-time pilots at Frontier Airlines, never doubted that they could continue to pursue their careers after starting their families. Yet they faced systemic discrimination during and after their pregnancies that literally grounded them from flying. Frontier forced each of the Plaintiffs onto unpaid leave at a certain point during their pregnancies, regardless of their medical fitness to fly, and with no possibility of receiving any accommodations that would have enabled them to continue working. As Frontier offered no paid parental leave and only a short period of unpaid leave following

---

[1]    Similar to Plaintiffs' prior opposition to Defendant's motion to dismiss the original complaint, Plaintiffs' brief does not exceed 30 pages. (Dkt. No. 39.) Pending before the Court is Plaintiffs' unopposed motion to exceed page limitations. (Dkt. No. 83.)

childbirth,[2] Plaintiffs were all still breastfeeding their newborns when it came time for them to return to work. Yet Frontier refused to make it possible for them to pump breast milk on the job.[3] Plaintiffs paid a steep price as a result of these policies and practices, including being forced onto unpaid leave, depriving them of critical income when they needed it the most; forced to give up breastfeeding and the many associated benefits for their health and their babies' health; and forced to work under conditions that caused them pain and distress and put their health at risk.

Plaintiffs assert claims seeking declaratory judgment, injunctive relief, and damages under Title VII and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401 *et seq*., as well as the Colorado Law on Reasonable Accommodations for Pregnancy and Related Conditions, commonly referred to as the Pregnant Workers Fairness Act ("PWFA"), Colo. Rev. Stat. Ann. § 24-34-402.3, and the Colorado Workplace Accommodations for Nursing Mothers Act ("WANMA"), Colo. Rev. Stat. § 13-1-124(1).

---

[2]   Contrary to Defendant's suggestion (Def. Mot. 2), Plaintiffs do not challenge the lack of paid parental leave as itself violating the law, but rather, reference the lack of paid leave as the reason they were still nursing when they returned to work. Am. Compl. ¶ 2. Paid leave was just one of several accommodations—or less discriminatory alternatives—Plaintiffs proposed to prevent them and others from being forced off the job during pregnancy and while they were nursing.

[3]   As detailed in the Amended Complaint (¶¶ 28-32), those who are breastfeeding and are separated from their babies must remove, or "express," breast milk from the breast on roughly the same schedule as the baby's feeding schedule—approximately every 2-3 hours. This is usually accomplished by using a breast pump, which is a manual or electric device for drawing milk from the breasts by suction—a process referred to as "pumping." The process typically takes 15-20 minutes. Failure to remove milk from the breasts with sufficient frequency causes pain, swelling, discomfort, and leaking breast milk, and can lead to medical complications, including blocked ducts or mastitis, an infection of the breast tissue, as well as diminished milk supply, and ultimately cessation of lactation altogether.

Defendant moves to dismiss "the vast majority" of Plaintiffs' claims as untimely, even as it simultaneously concedes the timeliness of numerous allegations supporting their claims under Title VII, CADA, PWFA, and WANMA (*see* Def. Mot. 8, 15-16, conceding timeliness of allegations supporting claims 1-6 and 11-13) and concedes that at least one claim—Ms. Freyer's challenge to the ban on flying after 32 weeks of pregnancy—is both valid and timely. (Def. Mot. 16, 22-23.) Defendant further asserts that Plaintiffs' state law claims are preempted by the Federal Aviation Act (FAAct) and the Airline Deregulation Act (ADA), and that the allegations related to failure to accommodate pregnancy and breastfeeding fail to state a claim under Title VII, CADA, or WANMA.

None of these arguments has merit. First, Plaintiffs remain subject to the challenged policies and seek forward-looking relief against their continued operation; moreover, they have made detailed allegations regarding their requests for accommodations and Frontier's discriminatory conduct during the relevant time periods, that Defendant has either ignored or mischaracterized. Second, Frontier's preemption arguments concern ordinary preemption, an affirmative defense that does not implicate this Court's subject matter jurisdiction and that requires an examination of disputed facts that cannot be resolved on the face of the Complaint. Defendants preemption arguments are therefore premature and inappropriate for resolution under either Rule 12(b)(1) or Rule 12(b)(6). Finally, Plaintiffs' 70-page, 369 paragraph Amended Complaint readily satisfies the requirements of Rule 12, setting forth in detail the factual basis for pursuing both disparate treatment and disparate impact claims, as well as their claims under PWFA and WANMA. Because Plaintiffs' claims are timely, are not

preempted, and far exceed the necessary pleading standard, Defendant's motion should be denied in its entirety.

## II.      Statement of the Case[4]

### A.      The Post-32 Week Pregnancy Ban (Am. Compl. ¶¶ 37-43)

Frontier maintained a written policy requiring pregnant pilots to "request maternity leave"—a euphemism for ceasing work altogether, as Frontier offered no paid parental leave—by no later than 32 weeks of pregnancy ("the post-32-week pregnancy ban"). Pregnancy is the only medical condition Frontier singled out for an automatic disqualification from flying, despite Federal Aviation Administration ("FAA") guidelines providing that pregnancy is not disqualifying and leaving fitness determinations to be determined case by case. All four Plaintiffs were grounded and forced onto unpaid leave during their pregnancies pursuant to this policy; Ms. Freyer and Ms. Kiedrowski would have been fit to fly beyond their 32nd week. Am. Compl. ¶¶ 80, 94, 204.

### B.      Forced Unpaid Leave and Refusal to Accommodate Pregnancy (¶¶ 44-48)

Despite grounding pregnant pilots at least two months before their due dates, Frontier provided no alternatives that would have enabled them to continue working. All four Plaintiffs allege that they would have been able to continue working in ground positions after the point in pregnancy when they were no longer able to fly. *Id.* ¶¶ 80, 94, 146, 171, 204. For example, during her first pregnancy in 2014, Ms. Freyer emailed several individuals at Frontier, including the Chief Pilot and the Director of Training,

---

[4]      Plaintiffs contest many of Defendant's characterizations of the facts. Where there is a discrepancy between Plaintiffs' factual allegations and Defendant's characterization, the Amended Complaint is what controls. *See Carroll v. Jefferson Cty. Sheriff*, No. 1:19-CV-02132, 2020 WL 5015454, at *1 (D. Colo. Aug. 25, 2020).

requesting a ground position after her 32nd week. No one responded to her emails. *Id*.

¶ 81. And although she also would have been able to work in a ground position in the

last two months of her second pregnancy in 2015, she believed based on her prior

experience that requesting one would have been futile. *Id*. ¶ 95.

      C.     <u>Refusal to Accommodate Breastfeeding and Ban on Pumping (¶¶ 49-77)</u>

      Although Plaintiffs were still breastfeeding when they returned to work, Frontier

had no policy to accommodate breastfeeding. Frontier provided neither breaks to

express breast milk nor accessible, sanitary facilities to use for pumping. All four

Plaintiffs requested accommodations to continue breastfeeding, which Frontier

systematically ignored or categorically denied. Frontier even went so far as to prohibit

the use of regular breaks for pumping, even though pilots—including Plaintiffs

themselves—are permitted to take breaks as needed to address other physiological

needs unrelated to breastfeeding, like using the restroom. *Id*. ¶ 75.

      Ms. Kiedrowski was the first to encounter these obstacles. She pumped breast

milk on the aircraft without incident when she returned to work after having her first child

in 2011. But when she did the same after having her second child, she was disciplined

after another pilot reported her for pumping on duty. Frontier management, including the

Chief Pilot and a representative of Frontier's HR department, Michelle Zeier, suggested

she give up breastfeeding and feed her child formula if she wanted to continue flying.

Frontier prohibited her from pumping while on duty at all, even between flights. When

she suggested Frontier adopt policies to address the needs of nursing moms, the

company brushed her off, implying the issue was unlikely to arise again. *Id*. ¶¶ 205-22.

      But it did. When Ms. Zielinski reached out to HR during her first pregnancy in

2014 to request information on what accommodations would be available for pumping, Frontier pointed her to a lactation room at Denver International Airport ("DIA"), but gave her no further information. When she followed up again to ask where she could pump at other airports, she received an email from Ms. Zeier, which she believes was copied to her in error, stating "She's still baiting us. No reply. She needs to come in for a meeting. No recordings/no games." Almost immediately after that, her work email address and access to company manuals was abruptly suspended—which an IT representative informed her had been done at Ms. Zeier's direction. This experience left her feeling too intimidated and fearful to pursue her requests for accommodations, and she instead struggled to schedule her pumping sessions around her flight schedule. *Id.* ¶¶ 173-86. As a result, when it came time for her to return to work following the birth of her second child in June 2016, she sought an extension of her unpaid leave, believing she had no other choice. *Id.* ¶ 197.

Ms. Beck's experience was similar: prior to returning to work with her second child in May of 2015, she notified Frontier of her need for breaks; having received no response, in July 2015 she requested permission to pump in the aircraft lavatory. Frontier did not respond until August 18, 2015—three months after she had already returned to work—when it prohibited her from pumping in the lavatory. Although she was promised a list of lactation facilities at outstations, the list was never provided to her, and she continued to pump without accommodations, suffering frequent pain and engorgement and diminished milk supply as a result. *Id.* ¶¶ 149-64.

Ms. Freyer faced the same issues following the births of both her first and second children. After having her first child in 2015, her numerous emails and phone calls

requesting information about breastfeeding accommodations went entirely unanswered. As a result of returning to work without accommodations, she suffered from mastitis twice. *Id*. ¶¶ 90-91. Her efforts to secure accommodations after having her second child were no more successful. In March 2016 she advised Frontier of her need for breastfeeding accommodations. *Id.* ¶¶ 98-99, 101, 105.[5] Frontier responded several weeks later by encouraging her to seek an unpaid leave of absence and directing her to a different HR representative to discuss lactation accommodations. She was eventually given a form stating: "Nursing Mothers: If you are an expecting mother applying for a leave of absence and have a need to express breast milk at work after returning please contact the leave department. We will work with you to make necessary arrangements." Despite filling out the form and asking, "Can someone please tell me what types of arrangements would be possible?" *Id.* ¶¶ 100-01, no one answered. Instead, she was placed on medical leave. In fact, it was not until December 2016 that Frontier finally responded to her request—by prohibiting her from pumping during flight. *Id.* ¶ 106-08.

Determined to comply with the prohibition on pumping during flight, Ms. Freyer made repeated efforts over the course of the next several months, from December 2016 through April 2017, to obtain assistance with modifying her flight schedule to avoid flights longer than 3-4 hours. Although Frontier initially indicated it would provide such

---

[5]     Defendant misrepresents Ms. Freyer's March 31 request in asserting that she did not request accommodations other than a leave of absence (Def. Mot. 6). Ms. Freyer notified Frontier of "her need to take regular breaks" and "inquire[d] about what accommodations would be available to pump while on duty"—which plainly amounts to a request for accommodations. Am. Compl. ¶ 98. Ms. Freyer's inquiry regarding *eligibility* for medical leave, which she made based on her belief that she would be unlikely to receive any accommodations on the job, *id.*, did not absolve Frontier of its responsibility to respond to her other accommodations request.

assistance, she was ultimately told that *she* was responsible for rearranging her schedule herself using Frontier's automated system for bidding for schedules—despite her explaining that it was not technically possible for her to do so. *Id.* ¶¶ 109-16.

Ms. Freyer faced similar treatment after her third pregnancy in 2020, when she was again denied permission to pump during flight and refused accommodations, including by being invited to apply for one of several open ground positions only to be told that there was a hiring freeze. She was ultimately left no choice but to remain on medical leave. *Id.* ¶¶ 131-38.

D. Failure to Provide Locations to Pump

In addition to denying Plaintiffs' requests for accommodations in flight, Frontier failed to provide locations to pump at airports to which Frontier flies. Although there is a designated lactation room at DIA, Plaintiffs were not informed of its existence or given the information they needed to access it. Ms. Beck alleges that on the two occasions she attempted to use the room she was unable to do so, once because it was in use as a storage facility and once because the key she had been provided did not work. She was later told that a new facility had been designated but no one had informed her of the change. *Id.* ¶ 160. Ms. Freyer also describes being unable to access the DIA lactation room—for example, when no one bothered to provide her with the access code necessary for entry—despite her repeated entreaties for assistance in finding locations to pump at airports. *Id.* ¶ 123.

Moreover, Frontier for years ignored repeated requests, including from Ms. Zielinski, Freyer, and Beck, for assistance in identifying locations where they could pump at outstations. *Id.* ¶¶ 68, 117-18. Although Frontier eventually provided a list of

locations to Ms. Freyer—*after* Plaintiffs had filed their EEOC charges—the list was largely worthless. Many airports to which Frontier flies had no location listed, and of those that were listed, almost all turned out to be inaccessible or unusable. *See id*. ¶¶ 68, 118-29, 159-60.

      E.    <u>Plaintiffs' Administrative Complaints</u>

As Plaintiffs' individual attempts to obtain accommodations were unsuccessful, they sought counsel and sent Frontier a letter demanding accommodations and policy changes. *Id.* ¶ 233. When Defendant failed to respond by the requested date, March 25, 2016, Plaintiffs filed Equal Employment Opportunity Commission ("EEOC") charges on May 9, 2016 and an amended charge on May 27, 2017. Following a two-year EEOC investigation, they filed suit.[6] Plaintiffs have since obtained their Notices of Right to Sue from the EEOC and the CCRD. *Id.* ¶ 13.

**III.   Plaintiffs' Claims are Timely**

Each of Plaintiffs' claims accrued on March 25, 2016—well within the relevant period for Title VII, CADA, and WANMA—when Frontier constructively denied Plaintiffs'

---

[6]    Defendant's references to correspondence between Frontier and the FAA occurring after this suit was filed (Def. Exs. 2-4) are not properly considered by the Court on a motion to dismiss and should be struck from the record. (*See* Def. Mot. n.6, n.16.) The Court may only consider documents outside the complaint if they are central to Plaintiffs' claims, referenced in their complaint, or subject to judicial notice. *See Doe v. Sch. Dist. No. 1, Denver, Colorado*, 970 F.3d 1300, 1304 (10th Cir. 2020). Frontier's correspondence with the FAA does not fall into any of these categories, and thus consideration by this Court would be improper. *See Parr v. Stevens*, No. 18-CV-01955-KLM, 2019 WL 1358849, at *6 (D. Colo. Mar. 25, 2019). Nor would consideration aid the Court in resolving disputed jurisdictional issues under Rule 12(b)(1) because, as explained below, Frontier's preemption arguments concern ordinary rather than complete preemption and thus do not implicate this Court's jurisdiction. Pursuant to CMA Civ. Practice Standard 7.1D, Plaintiffs oppose conversion of the instant motion into a summary judgment motion.

written request that Frontier provide necessary accommodations for pregnancy and breastfeeding and modify its discriminatory policies. *Id.* ¶ 234. This amounted to notice to each of the Plaintiffs of a fresh, clear, and actionable denial of accommodation, causing their corresponding claims to accrue on that date. *See Proctor v. United Parcel Serv., Inc.*, 502 F.3d 1200, 1206 (10th Cir. 2007) ("[A] cause of action accrues on the date the employee is notified of an adverse employment decision by the employer.").

Even absent this denial of accommodation, Plaintiffs' claims would be timely because they remain employed at Frontier and seek forward-looking relief against the operation of discriminatory policies that continue to affect them.[7] Plaintiffs challenging the harmful effects resulting from implementation of ongoing discriminatory policies may assert disparate impact claims, so long as the discriminatory *application* of those policies continues within the statutory filing window. *See Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010). Moreover, plaintiffs may prospectively challenge a discriminatory policy under Title VII, regardless of whether the policy has yet been applied to them, based on "a danger of future violations." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997). Accordingly, courts have routinely found that employees may challenge policies that discriminate based on pregnancy, even if they are not pregnant at the time the discrimination occurred, due to their capacity to become pregnant in the future. *See Int'l Union, United Auto, Aerospace, & Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991); *Jolley v. Phillips Educ.*

---

[7]     Even if Frontier were to have since altered its position on any of the challenged policies and practices, Plaintiffs would still maintain damages claims for harms they suffered during the time the policies were in effect, and further, could still obtain declaratory and injunctive relief to ensure they are not reinstated. *See Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016).

*Grp. of Cent. Fla., Inc.*, No. 95-147-CIV-ORL-22, 1996 WL 529202, at *3 (M.D. Fla. July 3, 1996); *Pacourek v. Inland Steel Co.*, 858 F. Supp. 1393, 1401 (N.D. Ill. 1994).

Here, Plaintiffs remain subject to the challenged policies, and are at risk of being subjected to them should they become pregnant again. Plaintiffs Zielinski and Freyer, who have each given birth and breastfed again at least once since their EEOC charges were first filed in 2016, are a case in point. Moreover, the ongoing operation of the challenged policies "continues to affect [Plaintiffs'] family and reproductive decision-making" to this day. *See* Am. Compl. ¶¶ 141, 167, 201, 231.

Plaintiffs' damages claims are also timely because they allege ongoing violations and because at least one violation supporting their claims occurred during the statutory window. Plaintiffs alleging "continuing violations" of law, as Plaintiffs do here, may seek damages for related acts occurring outside the relevant statutory window so long as those acts "collectively constitute one unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)); *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019). Alternatively, plaintiffs alleging a discriminatory act with repeated (though discrete) discriminatory effects, both inside and outside of the limitations period, may seek damages for those acts taking place within the limitations period. *Hamer*, 924 F.3d at 1107.

Here, Plaintiffs challenge several systemic, unlawful employment practices. And, as summarized in the chart below, at least one Plaintiff was pregnant or breastfeeding (or both) and has alleged actionable conduct supporting her claims occurring during the

relevant time frame.[8]

| Claim | Cause(s) of Action | Relevant Period | Allegations, Paragraph, and Time Period Alleged |
|---|---|---|---|
| **Post 32-week pregnancy ban** | | | |
| *Title VII* | 1 | 7/11/15 | ¶¶ 93-95: *10/1/15-12/5/15* **Freyer** was grounded following her 32nd week of pregnancy despite being healthy and fit to fly. |
| **Forced unpaid leave and refusal to accommodate pregnancy** | | | |
| *Title VII* | 2, 3 | 7/11/15 | ¶¶ 80, 93-95: *10/1/15-12/5/15* **Freyer** was forced onto unpaid leave following her 32nd week of pregnancy but would have been able to work a ground position during the time she was grounded. |
| *CADA* | 9, 10 | 11/8/15 | ¶¶ 171, 194: *3/9/16-6/23/16* **Zielinski** went on medical leave during pregnancy but would have been able to work a ground position during the time she was grounded. |
| *PWFA* | 8 | 8/10/16 | ¶ 131: *6/25/19-7/17/19* **Freyer** was grounded on unpaid leave from June 25, 2019 through July 17, 2019 at the end of her third pregnancy without the option to work in a temporary a ground position. |
| **Refusal to accommodate breastfeeding/lactation and ban on use of breaks for pumping** | | | |
| *Title VII* | 4, 5 | 7/11/15 | ¶¶ 97-116, 132-138: *3/31/16-4/13/17; 1/12/20-present* **Freyer** made multiple requests for breastfeeding accommodations to no avail (7/31/2016-4/8/2017). Frontier denied her requests and placed her on medical |
| *CADA* | 12, 13 | 11/8/15 | |

---

[8]      Moreover, Title VII allows consideration of acts outside the statutory window "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113; *see Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) ("[A]cts occurring after the filing of the complaint," although unexhausted, can "provide evidence of employer motivation for prior actions."). Here, such allegations are relevant to (a) Plaintiffs' disparate impact claims, (b) the likelihood of future harm, and (c) Frontier's notice of the policies' discriminatory effects and willfulness in refusing to modify them. Plaintiffs recognize, however, that because some of these acts (*e.g.*, Ms. Kiedrowski's experiences) occurred outside the relevant time period, they may ultimately be precluded from seeking *damages* in connection with that conduct. *See Hamer*, 924 F.3d at 1107.

| Claim | Cause(s) of Action | Relevant Period | Allegations, Paragraph, and Time Period Alleged |
|-------|--------|--------|---------------------------------------|
| *PWFA* | 11 | 8/10/16 | leave. Frontier prohibited her from using physiological needs breaks to pump (12/8/2016, 12/23/2016, 3/22/2017, 4/13/2017). She was never provided schedule modifications despite numerous requests (starting 11/27/2016). She returned to work in March/April 2017 and pumped without accommodations, suffering pain and engorgement. After her return to work following her third pregnancy in January 2020, Freyer was again prohibited from using breaks to pump and denied accommodations, remaining on unpaid leave. |
| | | | **¶¶ 151-64:** *7/29/15-12/1/16* <br> **Beck** made requests for breastfeeding accommodations (May 2015 and 7/29/15). Frontier did not respond for months, then prohibited her from using physiological needs breaks to pump in the lavatory (8/18/2015). She returned to work in July 2015 and pumped without accommodations, suffering pain and engorgement. |
| | | | **¶¶ 197:** *6/23/16-11/1/17* <br> **Zielinski** found it futile to request an accommodation to breastfeed her second child after being refused an accommodation with her first child. "[S]he felt that her only option was to seek an extension of her unpaid 'maternity' leave" through June 2017. |
| *WANMA* | 6 | 5/26/15 | **¶¶ 98-116, 132-38:** *3/31/16-4/13/17; 1/12/20-present* <br> **Freyer:** Defendant failed to make reasonable efforts to respond to Freyer's accommodation requests and failed provide break time or a location other than a toilet to pump. Frontier failed to provide adequate pumping locations at DIA or at outstations, despite repeated requests. Freyer pumped without accommodations beginning in March/April 2017, suffering pain and engorgement. In January through March 2020, she was again denied breaks and a place to pump. |
| | | | **¶¶ 151-60:** *7/29/15-12/1/16* <br> **Beck:** Defendant failed to make reasonable efforts to respond to Beck's accommodation requests and failed to provide break time or a location other than a toilet to pump. Frontier failed to provide adequate pumping locations at DIA or at outstations, despite repeated requests. Beck was unable to access lactation room at DIA in August 2015, December 2015, and May 2016. |

Finally, Frontier contends that various Plaintiffs' claims are time-barred because they did not request accommodations during a particular time window. But Plaintiffs are not required to allege that they requested accommodations; rather, they must allege plausible facts giving notice of a discriminatory employment practice that harmed them. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Because they have met that standard, alleging that they were harmed by and remain subject to the challenged policies, and because the conduct they describe took place within the relevant statutory windows, Plaintiffs' claims are timely.

For example, Defendant argues that Ms. Freyer's CADA claims based on her second pregnancy in October 2015 are not timely. (Def. Mot. 14.) This ignores that Ms. Freyer was grounded for approximately the last 8 weeks of pregnancy—from October 1, 2015 through December 5, 2015, which timeframe includes approximately one month *after* the November 8, 2015 CADA cutoff—during which she would have been able to work had Frontier made that option available. Am. Compl. ¶ 80. Similarly, Frontier ignores allegations that she did not seek a ground position because it would have been futile. *Id.* ¶ 95. She was not required to repeat a request that Frontier had previously completely ignored and that its own written policy—which by its terms, *required* her to "request maternity leave" rather than a ground position, *id.* ¶ 37—plainly does not allow. Frontier also ignores Ms. Freyer's allegations relating to her third pregnancy in 2019 and her requests in January through March 2020 for breastfeeding accommodations in connection with her return to work. *Id.* ¶ 132-38.[9]

---

[9]    In a footnote, Frontier asserts that Ms. Freyer "failed to exhaust the denials of any requests in 2020, as she has not amended her prior Charge or filed a new Charge

Defendant's argument that Ms. Zielinski was not denied a ground position or breastfeeding accommodations during the limitations period similarly misses the mark. The Amended Complaint alleges that Ms. Zielinski would have been able to work in a ground position at the end of her pregnancy if she had the option, and that she sought extended leave only because she believed requesting breastfeeding accommodations would have been futile: Frontier's response to her accommodation request following the birth of her first child—accusing her of "baiting" the company and playing "games," and freezing her access to work email and resources, *id.* ¶¶ 179-183—left her feeling so intimidated that she concluded unpaid leave was her "only option." *Id.* ¶ 197.

Similarly, Defendant ignores Ms. Beck's allegations that she did request accommodations—twice—and did not receive them. Frontier *never* responded to the request for breaks contained in her doctor's letter (aside from prohibiting her from

directed to these allegations." (Def. Mot. 14 n.12.) But the requirement of exhausting administrative remedies pertains to discrimination *claims* based on unlawful employment practices—not to particular facts in support of those claims. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018). The Amended Complaint has not added any additional claims, and Ms. Freyer's *factual* allegations relating to 2020 incidents are part and parcel with the existing claims of unlawful employment practices pled in the original Complaint. Moreover, her additional factual allegations fall well within the scope of the initial EEOC charges. In addition to alleging discrete, discriminatory acts of failure to accommodate, Plaintiffs' charges alleged a systemic pattern of discrimination due to the ongoing operation of discriminatory policies and practices— policies they alleged were standard operating procedure at Frontier. Accordingly, Ms. Freyer's allegations that she again became pregnant in 2019 and was once again subject to the same discriminatory policies is well within "the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (reversing district court's grant of summary judgment in defendant's favor "to the extent that it excluded from consideration [plaintiff's] theory of discrimination based on [defendant's] allegedly discriminatory policy"). *Id.* at 1189. Finally, such factual allegations may also serve as relevant evidence in support of discrete acts of discrimination occurring prior to and detailed in the original EEOC filing. *See supra* n.7.

pumping in the lavatory). When she returned to work in July 2015, she had no choice but to pump without accommodations. *Id.* ¶¶ 144-56. "An indeterminate delay has the same effect as an outright denial." *See*, *e.g.*, *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (failure to respond within six months was sufficient for a reasonably prudent person to assume his requested accommodation had been constructively denied). Thus, her allegations that she was denied accommodations and pumped for several months without them are timely under CADA, PWFA, and Title VII.

**IV.   Plaintiffs' CADA, PWFA, and WANMA Claims Are Not Preempted**

> A.   <u>Frontier's Preemption Arguments Are Affirmative Defenses Not Properly Resolved on a Motion to Dismiss.</u>

Frontier's preemption arguments are premature and cannot be resolved at the pleading stage, under either Rule 12(b)(1) or 12(b)(6). With respect to Rule 12(b)(1), courts recognize that preemption "does not normally concern the subject-matter jurisdiction of a court to hear a claim, which is what is relevant to the resolution of a Rule 12(b)(1) motion." *Trollinger v. Tysons Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004). Instead, preemption is properly "invoked in both state and federal court [only] as an affirmative defense to the allegations in a plaintiff's complaint." *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) (citations omitted). Here, Frontier argues that Plaintiffs' state law claims are preempted by the FAAct "because they require the factfinder to intrude upon the federally occupied field of aviation safety" (Def. Mot. 16), and the ADA because they relate to the "use of breaks in aircraft lavatories." (Def. Mot. 21.) These ordinary (and misplaced) preemption arguments do not implicate the Court's subject matter jurisdiction. *See Devon Energy*,

693 F.3d at 1203 n.4.

Frontier's preemption arguments do not fare any better under Rule 12(b)(6). As to the FAAct, courts recognize that preemption arguments implicating a nondiscriminatory justification are premature on a motion to dismiss. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (dismissal based on an affirmative defense is proper "only when the complaint itself admits all elements of" that defense); *see also Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1466 (11th Cir. 1998) (on the pleadings, "it is inappropriate . . . for the court to credit the defendant's proffered non-discriminatory justification . . . and use that allegation as a basis to find preemption"). Here, although Frontier claims a conflict with federal law regarding aviation safety, that law is in no way intrinsic to Plaintiffs' claims but rather goes to Frontier's proffered justification for its denial of requests for one particular form of accommodation—permission to use breaks to pump during flight. *See* Am. Compl. ¶¶ 106, 113, 217. Because Frontier's "preemption argument arises from its contention, in *response* to plaintiffs' allegations," it would be improper to resolve the issue of preemption under the FAAct on the pleadings. *Bader*, 113 F. Supp. 3d at 989.[10] In any event, justifications based on safety, as Frontier admits, "will involve extensive expert testimony," Def. Mot. 22-23, and will be vigorously contested on both the law and the facts. *See* Am. Compl. ¶¶ 71-73. It is Plaintiffs' allegations, not Frontier's defenses, that must be accepted as true—and Plaintiffs should not be deprived of the opportunity to

---

[10]   Notably, Frontier does not argue that any of the other accommodations and policy changes that Plaintiffs seek would be preempted or reasonably implicate safety. *See, e.g.*, Am. Compl. ¶¶ 81, 95, 134-37 (ground positions); ¶¶ 85, 111-12, 116, 177 (reduced schedule); ¶¶ 117-18, 173-76 (lactation facilities at outstations).

demonstrate that Frontier's proffered justifications are pretextual. *See Hobbs v. Labor Comm'n*, 991 P.2d 590, 593-94 (Utah Ct. App. 1999).

With regard to Frontier's claimed preemption by the ADA, which prohibits states from enacting or enforcing laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1), such preemption is not automatic and depends on the facts and the nature of the claims. *Abdu-Brisson v. Delta Air Lines, Inc.*, 128 F.3d 77, 85-86 (2d Cir. 1997) (ADA preemption is applied "on a case-by-case basis"). Here, the only rationale for ADA preemption articulated by Frontier is that "permission [for pilots] to utilize the lavatory for up to 25 minutes at a time during flight" might displace "Frontier's provision of a lavatory to customers within the broad meaning of the Act." (Def. Mot. 21.) But Plaintiffs are seeking in-flight breaks on an as-needed basis only for the minimum amount of time medically necessary and allege that 15 minutes is typical (Am. Compl. ¶¶ 30, 233.) And even assuming that such breaks necessitate the use of a lavatory—a point that Plaintiffs dispute—whether customers are impermissibly displaced from airplane restrooms in such a scenario is, at the very least, a disputed question of fact that is premature at the motion to dismiss stage and should be deferred until Plaintiffs have an opportunity to present evidence in response. *See Parise*, 141 F.3d at 1466; *Bader*, 113 F. Supp. 3d at 989.

B.   Plaintiffs' State Antidiscrimination Claims Are Not Preempted by the FAAct or ADA.

In addition to being premature, Frontier's preemption arguments fail on the merits. First, contrary to Frontier's suggestion, the FAAct does not automatically preempt the entire field of aviation safety. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 705 (3d Cir. 2016). Rather, courts assess "whether the particular area of

aviation commerce and safety implicated by the lawsuit is governed by pervasive federal regulations." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013) (quotations omitted). And because equal application of existing rules poses no particular safety issue, courts routinely apply state antidiscrimination laws to airlines. *See Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 950 (N.D. Cal. 2011); *Chowdhury v. Nw. Airlines Corp.*, 238 F. Supp. 2d 1153, 1156 (N.D. Cal. 2002) ("[A]s California's laws mimic the federal civil rights laws and the federal civil rights laws do not conflict with the federal aviation statutes, it follows that California's civil rights laws also do not conflict with the federal aviation laws"). No different conclusion is warranted here.

Second, state law claims may be preempted by the ADA only when they have a "significant effect" or a "significant impact" on rates, routes, or services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388-90 (1992). Frontier does not establish, as a matter of law, that any such significant impact exists here. On the contrary, most state-law-based employment discrimination claims have been found *not* to conflict with the ADA because "whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency." *Abdu-Brisson*, 128 F.3d at 84; *see Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 496 (6th Cir. 1999); *Parise*, 141 F.3d at 1465-68; *Aloha Islandair v. Tseu*, 128 F.3d 1301, 1303 (9th Cir. 1997). Although "an airline's employment decisions may have an incidental effect on its 'services' . . . [p]ermitting full operation of . . . [anti-]discrimination law[s] will not affect competition between airlines—the primary concern underlying the ADA." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1259 (11th Cir. 2003) (citations omitted). Indeed, as Colorado courts have expressly recognized, "although enforcement of a state's antidiscrimination

statutes . . . could influence a carrier's decision to operate in a particular market or to alter operations in an attempt to avoid liability, such a tenuous causal relationship between the state law and the effect on prices, routes and services does not trigger preemption." *Nokes v. Aspen Aviation, Inc.*, 104 P.3d 247, 250 (Colo. App. Div. 2004).

Here, Frontier's speculation that passenger lavatory access might be briefly reduced—let alone significantly—if pilots were permitted to pump in the lavatory has, at best, a tenuous connection to Plaintiffs' state law claims. Indeed, pilots already use the lavatory during non-critical phases of flight. By contrast, access to lavatories over a prolonged period was integral to the claims in the out-of-circuit cases that Frontier cites, which also are inapposite insofar as they do not relate to employment discrimination. *See Covino v. Spirit Airlines, Inc.*, 406 F.Supp.3d 147, 151 (D. Mass. 2019) (emotional distress claim preempted where "denial of access to the in-flight restroom [was] at the heart of Covino's claim"); *Air Transport Ass'n of America, Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (preempting New York statute "requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays").

In sum, should the Court reach the question of preemption on the merits, neither the FAAct nor the ADA require dismissal.

## III. Plaintiffs State Valid Claims Under Title VII, CADA, and WANMA

Plaintiffs have adequately stated their claims. At the 12(b)(6) stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz*, 534 U.S. at 511. Moreover, because plaintiffs alleging sex discrimination may show discrimination using several different theories and methods of proof, there is no requirement to affirmatively plead specific

elements of the *prima facie* case in order to advance beyond the pleading stage. *See id.*; *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Plaintiffs readily meet this standard.[11]

A.    Plaintiffs State Valid Disparate Treatment Claims under Title VII and CADA

The Amended Complaint adequately supports Plaintiffs' intentional discrimination claims under both the "direct" and "indirect" methods of proof.[12] Policies or practices that expressly single out a protected characteristic for differential treatment constitute "direct evidence" of discrimination. *See Int'l Union, United Auto, Aerospace, & Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991). Such policies presumptively discriminate "on the basis of sex." *Id*.

Here, several of the policies challenged—the post-32-week pregnancy ban, the categorical refusal to accommodate pregnancy or breastfeeding, and the ban on the use of physiological needs breaks for pumping breast milk—"rel[y] expressly on a protected characteristic." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015).[13] As Frontier's HR representatives' responses to Ms. Freyer's and Beck's

---

[11]    Defendant has moved to dismiss Plaintiffs' PWFA claims solely only on the grounds that they accrued after the effective date of the law and are preempted by the FAAct and ADA—not on the merits. For Plaintiffs' rebuttal to these arguments, see *supra* at pp.9-16.

[12]    These claims are Causes of Action nos. 1, 2, 4, 7, 9, and 12. Defendant mischaracterizes the nature of Causes of Action nos. 2 and 3. (Def. Mot. 22 n.18.) To be clear, Cause of Action 2 explicitly specifies that it is a disparate treatment (not disparate impact) claim, Am. Compl. at ¶ 250, and Cause of Action 3 addresses the practice of grounding pilots during pregnancy without alternatives as a form of discriminatory treatment. *Id.* ¶¶ 258-65.

[13]    Defendant does not dispute Plaintiffs' membership in a protected group for purposes of their Title VII and CADA claims related to breastfeeding, nor could it seriously do so. As numerous courts have recognized, lactation is covered under Title VII's prohibitions on sex discrimination because it is sex-linked and is a pregnancy-

accommodation requests indicate, Frontier does not consider pregnancy or breastfeeding eligible for accommodations and categorically prohibits pumping in flight—which is facially discriminatory. Am. Compl. ¶¶ 106, 108, 113, 134, 157. Aside from acknowledging that the challenge to the post-32-week pregnancy ban states a valid claim subject to a bona fide occupational qualification defense, *see* Def. Mot. 22-23 & n.18, Defendant has not addressed the "direct" method of proof for these other policies. But even if it had, it is inappropriate to credit such affirmative defenses at this stage. Plaintiffs' challenge to these overtly discriminatory policies thus survives dismissal.

The Amended Complaint also supports a finding of pregnancy discrimination using the "indirect" method of proof. As established above, a plaintiff is not required to plead the elements of the *prima facie* case. *See Swierkiewicz*, 534 U.S. at 510; *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). But the fact that a plaintiff *has* pled facts supporting a *prima facie* case may inform the Court's analysis of whether a complaint states a plausible claim. *Khalik*, 671 F.3d at 1190-92. Under the familiar *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence of discrimination must demonstrate that (1) they belong to a protected class; (2) they suffered adverse employment actions; and (3) the challenged actions took place under circumstances giving rise to an inference of discrimination. *Tabura v. Kellogg USA*, 880 F.3d at 544, 549 n.3 (10th Cir. 2013). The standard is "not onerous." *Young*, 135 S. Ct.

related condition. *See Hicks v. Tuscaloosa*, 870 F.3d 1253, 1259 n.8 (11th Cir. 2017); *EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 (5th Cir. 2013); *Allen-Brown v. Dist. of Columbia,* 174 F. Supp. 3d 463, 478 (D.D.C. 2016); *Martin v. Canon Bus. Sols., Inc.*, No. 11-CV-02565, 2013 WL 4838913, at *8 n.4 (D. Colo. Sept. 10, 2013).

at 1354; *see also Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (showing required is "de minimis").

The Supreme Court in *Young* explained that a plaintiff challenging failure to accommodate pregnancy may make out a *prima facie* case by showing "that [1] she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others 'similar in their ability or inability to work.'" *See Young*, 135 S. Ct. at 1354.

Frontier limits its argument to the fourth element—the purported failure to identify others who received breaks to pump during flight and were otherwise sufficiently "similar" to Plaintiffs. (Def. Mot. 26-27.) But Plaintiffs do adequately allege similarly situated comparators. First, Plaintiffs allege that they sought *other* accommodations in addition to pumping during flight—including schedule modifications and temporary ground positions—that Frontier has provided as a matter of both policy and practice to other pilots. Those include pilots with "disabilities, injuries, and medical conditions unrelated to pregnancy, childbirth, or lactation," but who are otherwise "similar in their ability or inability to work" due to their inability to fly. *See* Am. Compl. ¶¶ 47-48, 249-50, 254, 268-69, 275, 322-23, 327, 351-52.[14] The existence of such policies alone are

---

14      Although Defendant cites a source not directly referenced in the Amended Complaint, Plaintiffs do not object to the Court taking judicial notice of the terms of the collective bargaining agreement between Frontier Airlines and the Frontier Airline Pilots' Association (hereinafter "FAPA CBA"), which is one of the collective bargaining agreements in effect during the relevant time period, because it is one of the bases for the allegations and is thus incorporated into the Complaint. The FAPA CBA provides for temporary assignment to ground or "non-flying" positions in a variety of circumstances, including allowing "modified duty" to pilots injured on the job, and permitting transfer of pilots who lose their medical certification due to sickness or injury to "No Bid" or "Management" status and designated a "Special Project Pilot" with "administrative or

sufficient to satisfy *Young*'s fourth prong. *See Young*, 135 S. Ct. 1338 at 1344 (instructing courts to "to consider the extent to which an employer's policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work"); *Durham v. Rural Metro Corp.*, 955 F.3d 1279, 1286 (11th Cir. 2020) (employer policies of accommodating those injured on the job and of considering accommodations for those with ADA-qualifying conditions constituted sufficient comparator evidence to satisfy *prima facie* case under *Young*); *Legg v. Ulster Cnty.*, 820 F.3d 67 (2d Cir. 2016) (same). Moreover, Plaintiffs allege personal awareness of specific individuals who were unable to fly for conditions unrelated to pregnancy such as vertigo and seizures but were provided ground positions, including several individuals who enjoyed a transfer to non-flying administrative or management positions.[15] Am. Compl. ¶¶ 104, 228.

Plaintiffs also adequately allege comparators with respect to their requests for permission to pump during flight.[16] Frontier pilots routinely take permitted breaks to

---

other non-flying duties." FAPA CBA § 10, DE 33-2, at 111-12, 146. Defendant cites to ECF No. 74 Ex. 1 to Ex. A for the FAPA CBA (Def. Mot. 24 n.21), but the correct docket entry is ECF No. 78 Ex. 1 to Ex. A.

[15]    Defendant's somewhat baffling reference to Rule 11 notwithstanding, Plaintiffs allegations as to particular comparators are made upon information and belief formed under a reasonable inquiry and good faith investigation by Plaintiffs and their counsel. The full basis for these allegations will of course be illuminated in discovery.

[16]    Defendant incorrectly points to the CBA as precluding Plaintiffs' failure to accommodate claims to the extent that such claims implicate pilots' schedules. (Def. Mot. 24 n.21.) But this is an affirmative defense that is in no way admitted on the face of the Amended Complaint and is thus inappropriate for consideration under Rule 12(b)(6). *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Moreover, the affirmative obligations to provide pumping accommodations arising under PWFA and WANMA are not subject to the same statutory limitation regarding CBAs contained in Title VII, *see* 42 U.S.C. §2000e(k), but rather, would be analyzed under the "undue hardship" analysis specified by those statutes, *see* Colo. Rev. Stat. Ann. §§ 24-34-402.3(1)(a), (2); 8-13.5-103(3). Those, similarly, are affirmative defenses.

address "physiological needs," which can take anywhere from "5-10 minutes and . . . even longer on occasion." Am. Compl. ¶¶ 69-77. But Plaintiffs have been categorically denied permission to use even those existing breaks for pumping—no matter their duration. *See id.* ¶¶ 106 (stating Frontier "cannot accommodate [Ms. Freyer] pumping in the lav[atory] while in flight"); 157 (informing Ms. Beck the lavatory was "not a designated room for pumping"). Plaintiffs need not, as Defendant suggests, allege *specific individuals* who also "requested and were granted permission to take breaks of the [same] length and frequency." (Def. Mot. 27.) Pilots are permitted to take physiological needs breaks for reasons other than lactation *without any limits* in length or duration and *without making any specific request* to do so. Am. Compl. ¶¶ 71-76. Moreover, Plaintiffs allege that they *themselves* "have used physiological needs breaks for such purposes without monitoring and have personally observed other pilots doing so without advance permission or with any repercussions." *Id.* ¶ 75. These allegations— that they themselves were treated differently under the same policy when they were breastfeeding than they had been when they were not—further support the inference of disparate treatment. *See, e.g.*, *Hunter v. Mobis Alabama, LLC*, 559 F. Supp. 2d 1247, 1257-58 (M.D. Ala. 2008) (evidence that the employer did not "care about" compliance with attendance policy until the employee's pregnancy supported plaintiff's prima facie case); *cf. Martin v. Canon Bus. Solutions, Inc.*, No. 11-cv-02565-WJM-KMT, 2013 WL 11132134 (D. Colo. Sept. 9, 2013) (comparative treatment pre- and post-pregnancy could support a finding of pretext).

Nor does the fact that Plaintiffs requested breaks every 2-3 hours mean that Plaintiffs are not adequately "similar" to other pilots who "routinely" use the allowed

breaks on an unscheduled, as-needed basis. Their similarity lies in the fact that, like all other pilots, they need periodic breaks to address the "discomfort"—and potential resulting health risks—that would result from ignoring their physiological needs. *See Durham*, 955 F.3d at 1286 ("[T]he comparator analysis under the PDA focuses on a single criterion—one's ability to do the job.").[17]

The cases Defendant relies upon are distinguishable either, as in *LaCount*, because the plaintiff failed to allege that others who had been accommodated were similar in their ability or inability to work, *see LaCount v. S. Lewis SH OPCO, LLC*, No. 16-CV-0545, 2017 WL 1826696, at *5 (N.D. Okla. May 5, 2017), or, as in *Clark*, because *after trial* the evidence of comparators was found to be insufficient. *Compare Clark v. City of Tucson*, No. CV-14-02543, 2020 WL 914524, at *14 (D. Ariz. Feb. 26, 2020), *with Clark v. City of Tucson*, No. CV 14-02543, 2018 WL 1942771, at *17 (D. Ariz. Apr. 25, 2018) (denying summary judgment on the same grounds). Here, Plaintiffs allege that other employees with similar limitations on their ability to work (*e.g.*, their inability to fly for whatever reason) have been accommodated, while Plaintiffs were not. These allegations are sufficient to sustain a claim of disparate treatment based on

---

[17]    The duration and frequency of the breaks requested does not go to whether Plaintiffs and the comparators are sufficiently similar, but rather, to the feasibility of the requested accommodation. *See Durham*, 955 F.3d. at 1286 (plaintiff EMT's restriction on lifting over 50 pounds due to pregnancy and others' restrictions on lifting more than 10 or 20 pounds due to on-the-job injuries were similar in their ability or inability to work because they were "equally unable to perform the 100-pound lifting duties"). If Defendant considered the request unreasonable, it was required to engage in an interactive process to identify an alternative, for example, by allowing breaks for pumping but setting limits on their frequency and/or duration. *See Aubrey v. Koppes*, 975 F.3d 995, 1007-1009 (10th Cir. 2020) (the interactive process mandated by the Americans with Disabilities Act and CADA "requires the good faith participation of *both* the employer and employee"); Colo. Rev. Stat. Ann. § 24-34-402.3(2).

lactation; no further detail is required at this stage. *See West v. Wynne*, No. CIV.A. 06-CV-01349-P, 2007 WL 2116381, at *2 (D. Colo. July 19, 2007) (although plaintiff would ultimately have to present comparative evidence that she was treated worse than others due to her lifting restriction, lack of such allegations did not warrant dismissal at pleading stage).

B.    Plaintiffs State Valid Disparate Impact Claims under Title VII and CADA

In addition, Plaintiffs state a valid claim that the challenged policies have a disparate impact on the basis of pregnancy in violation of Title VII and CADA. To establish a *prima facie* disparate impact claim, plaintiffs must: (1) identify a particular employment practice, (2) demonstrate a disparity that disadvantages a protected group, and (3) prove a causal link between the identified practice and the disparity. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).

Plaintiffs identify several specific employment practices that they allege have a disparate impact: (1) the practice of refusing to accommodate pregnancy when pilots are grounded; (2) the practice of ignoring or denying accommodation requests related to breastfeeding; and (3) the ban on the use of physiological needs breaks for pumping.

Plaintiffs allege these practices detrimentally affect *100%* of pregnant pilots and *virtually all* pilots who are breastfeeding when they return to work, while *zero* pilots who are not pregnant or breastfeeding are subject to and harmed by them. Am. Compl. ¶¶ 37, 44-46, 53, 61-62, 66, 77; *see* EEOC, *Enforcement Guidance: Pregnancy Discrimination and Related Issues* (June 25, 2015) at n.106, *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues (specifying that for purposes of assessing disparate impact, "the

appropriate comparison is between pregnant women and all others similar in their ability or inability to work"). Such allegations regarding disproportionate and detrimental effects are sufficient at the pleading stage, particularly in pregnancy discrimination cases such as this one, where the policies in question affect all or nearly all—and only—pregnant employees. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038 (10th Cir. 2020); *Barrett,* 39 F. Supp. 3d at 451; *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996); *Germain v. Cty. of Suffolk*, No. 07-cv-2523, 2009 WL 1514513, at *4-5 (E.D.N.Y. May 29, 2009). And Plaintiffs list numerous harms resulting directly from these policies and practices, including being forced onto unpaid leave and suffering lost income, being "forced to give up breastfeeding, or, should they attempt to continue breastfeeding once they return to work, experiencing physical pain, emotional distress, and possible health risks." Am. Compl. ¶¶ 263-64, 284-285, 287-288, 336-37, 367-68.

Finally, Frontier's policies are not, as Defendant argues, immune from disparate impact liability because they are facially discriminatory. *See Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014) ("Disparate-impact claims may be based on any employment policy, not just a facially neutral policy."). On the contrary, because the same facts may give rise to both disparate treatment and disparate impact claims, Plaintiffs are entitled to plead their claims under both theories and attempt to prove that the challenged policies are discriminatory—whether intentionally or in effect. *See Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010); *Aramburu v. Boeing Co.*, 885 F. Supp. 1434, 1443 (D. Kan. 1995).

    C.   <u>Plaintiffs' WANMA Claims Are Valid</u>

Colorado's WANMA was enacted with the goal "to become involved in the

national movement to recognize the medical importance of breastfeeding . . . and to encourage removal of boundaries placed on nursing mothers in the workplace." Colo. Rev. Stat. § 8-13.5-102(2). It affirmatively requires employers to make reasonable efforts to provide break time and access to a private room or location other than a toilet, close to Plaintiffs' work areas, for employees to express breast milk, for up to two years after the child's birth. Colo. Rev. Stat. § 8-13.5-104.

Here, Frontier's routine lack of response to or flat-out denial of all requests for breaks and a location to pump hardly constitute "reasonable efforts." Other than the lactation room at DIA, Frontier does not provide any facilities other than a restroom for employees to pump. Moreover, Frontier prohibits pilots from using even existing breaks for pumping, and it has denied requests from Ms. Beck and Ms. Freyer for breaks and schedule modifications. Am. Compl. ¶¶ 77, 108, 113, 132-34, 158-59, 215. The mere existence of a lactation room at DIA does not satisfy Frontier's affirmative obligations under WANMA—nor have Plaintiffs conceded its adequacy. (*See* Def. Mot. 28.) Frontier did not notify Plaintiffs of the room's existence despite repeated requests for assistance locating lactation facilities at airports, and when Ms. Beck and Ms. Freyer attempted to use the room it was inaccessible—locked with no key or code provided, or in use as storage, Am. Compl. ¶¶ 68, 123, 158-60. These efforts were a far cry from the "reasonable efforts" required under the statute.

## CONCLUSION

For the foregoing reasons Defendant's motion to dismiss should be denied in full.

Respectfully submitted this 25th Day of February, 2021

By: /s/ Jayme Jonat
Jayme Jonat
Vincent Levy
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE
AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: vlevy@hsgllp.com
Email: ksebaski@hsgllp.com

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org

Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17thAvenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

*Attorneys for Plaintiffs*