IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RANDI FREYER,
BRANDY BECK,
ERIN ZIELINSKI, and
SHANNON KIEDROWSKI,

    Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

    Defendant.

Case No. 1:19-cv-03468-CMA-SKC

---

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION**

---

Plaintiffs in the instant case, by and through undersigned counsel, respectfully submit this memorandum of law in further support of their motion to consolidate.

**I.  Introduction**

In an apparent effort to distract the Court from the overarching similarities between the *Freyer* and *Hodgkins* Actions, Defendant focuses on inconsequential distinctions between these two actions to argue that they should not be consolidated. Defendant's argument misconstrues the letter of Fed. R. Civ. P. 42(a), which allows the consolidation of actions that involve "a common question of law or fact" but does not require complete overlap.  Defendant also overstates the risks associated with consolidation and improperly assumes that the consolidation of two cases amounts to their complete merger into one action, when in reality it preserves individualized claims and issues.  In light of the commonality of law and facts between the *Freyer* and *Hodgkins* Actions, consolidation is appropriate.

1

**II.     Argument**

    A.     <u>The Crux of Plaintiffs' Claims Is The Same.</u>

Although, as Defendant points out, there are factual differences between the *Freyer* and *Hodgkins* actions, the key similarities discussed in Plaintiffs' opening brief and below justify the consolidation Plaintiffs seek.

The central issue in both actions is the same: Plaintiffs challenge Frontier's policies and practices that fail to accommodate its pregnant and breastfeeding employees and have the effect of forcing women off the job when they become pregnant or have children. Contrary to Frontier's assertion, the challenged policies have the same effect regardless of whether they apply to pilots or flight attendants.

Both actions also share similar facts. Plaintiffs, both pilots and flight attendants, all became pregnant during their employment at Frontier. All had to cease flying and go on unpaid leave due to their pregnancy even though most would have been able to continue working had Frontier agreed to accommodate them. They all were scheduled to return to work at a time when they were still breastfeeding their babies, and Frontier either ignored or categorically denied all their requests for accommodations that would enable them to continue breastfeeding while continuing to work.

Finally, the legal claims are substantially overlapping —with Plaintiffs in both actions bringing disparate treatment and disparate impact claims under Title VII and the Colorado Law Against Discrimination, as well as claims under the Colorado Pregnant Workers Fairness Act and the Break Time for Nursing Mothers Act.

In light of these fundamental similarities, Frontier's reliance on *Dillon Companies, Inc. v. United Food & Commercial Workers, Local 7,* No. 14-CV-01473-RM-KMT, 2014

WL 5335853, at *1 (D. Colo. Oct. 20, 2014) to argue that the overlap in the *Freyer* and *Hodgkins* Actions is "insufficient for purposes of warranting consolidation" is misguided.[1] In *Dillon*, the three actions in question had nothing to do with each other except the fact that they all "ar[o]se out of the parties' relationship under the CBA." Unlike here, the three actions otherwise differed in every respect—facts, circumstances, and issues. *See id* at *1-2 (contrasting one action to vacate an arbitration award based on allegations of improper conduct by the arbitrator, a second action to compel arbitration of grievances filed on behalf of two employees, and a third action to enforce an arbitration award issued in favor of one employee).

---

[1] Also misguided—and ethically dubious—is Defendant's representation touching upon the substance the parties' discussions during mediation. *See* Def. Opp. at 5. The argument Defendant felt "compelled to address"—that Frontier had agreed to attempt to resolve both cases together before Magistrate Judge Hegarty—referenced information that was already a matter of public record by virtue of its inclusion in the docket entries in the *Hodgkins* case, as well as the joint proposed scheduling orders filed by the parties. By contrast, Defendant's representation that "during mediation, [Plaintiffs] themselves proposed that the cases be negotiated and settled separately, based upon separate merits," goes to the heart of the parties' positions as they evolved during the course of their confidential mediation discussions. *See* Colo. Rev. Stat. § 13-22-307; *see also Yaekle v. Andrews*, 195 P.3d 1101, 1110 (Colo. 2008) (holding that the mediation privilege protects "communications made in the presence or at the behest of the mediator"). With this statement, Frontier not only violated confidentiality rules without any justification, but also misrepresented the parties' positions as the mediation unfolded. Plaintiffs refer the Court to the joint status reports and joint scheduling order, but are otherwise constrained by their duty of confidentiality from responding more fully to Defendant's misrepresentation of their position. *Freyer,* no. 1:19-cv-03468-CMA-SKC, Dkt. No. 44 (Aug. 26, 2020) (Joint Proposed Scheduling Order) ("The parties have participated in three settlement conferences conducted by Judge Hegarty . . . in an attempt to reach a mutually acceptable resolution with respect to this action as well as in [*Hodgkins*]. While the parties made progress toward a resolution in the *Hodgkins* action, they have reached an impasse in the present action."); *Hodgkins*, no. 1:19-cv-03469-RM-MEH, Dkt. No. 45, at 8-9 (Nov. 9, 2020) (Joint Proposed Scheduling Order) ("The parties continue to discuss the possibility of resolution [in *Hodgkins*]."); *Freyer*, Dkt. No. 79 (Feb. 12, 2021) (Joint Mot. To Amend Scheduling Order) ("The [settlement] discussions in both [*Hodgkins* and *Freyer*] have reached an impasse.").

3

Defendant argues that the *Freyer* and *Hodgkins* Actions "do not involve common issues of fact to a degree warranting consolidation" and cites Plaintiffs' "dramatically different job duties" as the "primary and most fundamental factual distinction" between the two actions. (*See* Def. Opp. at 5-8.) But Plaintiffs having different duties, reporting to different individuals, or belonging to different unions has no bearing on the substantial overlap of their allegations regarding Frontier's misconduct. And Fed. R. Civ. P. 42(a) does not require that the facts in one action be identical to those in the other action for two cases to be consolidated.[2] *See Otter Prod., LLC v. Treefrog Developments, Inc.*, 11-CV-02180-WJM-KMT, 2013 WL 490964, at *2 (D. Colo. Feb. 7, 2013) ("Rule 42 does not demand that actions be identical before they may be consolidated.") (internal citations omitted); *see also Garcia v. Hotel Powers, Inc.*, 11-CV-02239-REB-KMT, 2011 WL 5121131, at *2 (D. Colo. Oct. 28, 2011) (consolidating two Title VII cases against same employer despite there being "some differences in the claims asserted by the two plaintiffs").

Despite Defendant's implication, there was no delay on the part of Plaintiffs in filing this motion. Rather, from day one, Plaintiffs designated the two actions as related pursuant to D.C.COLO.LCivR 3.2 in light of the similarities between the *Freyer* and *Hodgkins* Actions.[3] In addition, Plaintiffs have consistently taken the position that

---

[2] For these reasons, the fact that "comparator groups will necessarily be different given that a pilot cannot point to a flight attendant as a similarly situated employee" is not reason enough to deny Plaintiffs' motion for consolidation when there is substantial overlap, and many efficiencies will be gained.

[3] Defendant claims that Plaintiffs' counsel filed two separate actions "without indicating any relation between the two cases." (*See* Def. Opp. at 3). But the dockets – each of which contain a Notice identifying the cases as related – prove otherwise. *See* Notice of Case Association, Case No. 1:17-cv-03468-CMA-SKC, Dkt. No. 2 (Dec 10, 2019);

4

reassignment of either of the related cases to be heard by the same judicial officer pursuant to Rule 40.1(d)(4) would be appropriate.  However, the cases were not "submitted for special assignment or reassignment under D.C.COLO.LCivR 40.1(a)." After mediation reached an impasse in both cases and following the initial scheduling conferences, discovery commenced, making clear that joint administration was necessary.  Plaintiffs therefore promptly filed a letter with the Court requesting a brief status conference to discuss how the *Freyer* and *Hodgkins* cases could proceed in the most efficient manner for the Court and the parties.  (*Freyer*, Dkt. No. 67.)  At the Court's direction, Plaintiffs filed this motion for consolidation shortly thereafter.[4]

      B.      <u>Defendant Does Not Contest The Inevitable Overlap In Evidence.</u>

Defendant claims that because "[d]iscovery only recently commenced," Plaintiffs can "only speculate" as to the overlap in evidence between the *Freyer* and *Hodgkins* Actions.  (*See* Def. Opp. at 4.)  But Plaintiffs need not speculate when Defendant's counsel has made clear what information it seeks—and what witnesses likely have relevant information—in both actions.

As Plaintiffs stated in their opening brief, the majority of Defendant's discovery requests served to date in both actions are substantively identical.  Frontier declined to address this undeniable fact in its opposition, stating instead in a footnote that since

---

Notice of Case Association, Case No. 1:19-cv-03469-RM-MEH, Dkt.  No. 2 (Dec 10, 2019).

[4] Contrary to Defendant's baseless assertion, Plaintiffs do not seek to "internally forum shop."  (*See* Def. Opp. at 3.)  As suggested by the Notices of Case Association they filed in both cases, Plaintiffs would be happy for either Judge Arguello or Judge Moore —or any other judge in the District of Colorado—to manage their actions; they simply moved for consolidation before the first filed judge, as required by D.C.COLO.LCivR 42.1.1.

Plaintiffs had not specifically identified which discovery requests were identical, they could not respond to the point. But, of course, it is self-evident which of Defendant's discovery requests in both actions use the same language.[5] Defendant declines to respond because it has no response. In any event, the substantial overlap in both Defendant's requests and its Responses and Objections is a strong indication that Frontier's defenses in both actions, as well as its positions with respect to the scope of permissible discovery, will be identical in many or most respects.

As evidenced by their own initial disclosures and first set of discovery requests, along with their responses and objections, Plaintiffs also seek much of the same

---

[5] *Compare, e.g.*, RFP 6 in the *Freyer* Action ("Any electronically stored information, social media posts or messages, diaries, notes, correspondence, memoranda, calendars, journals, or other similar materials which record, reflect, or comments on each Plaintiff's experience at Frontier or with any individual at Frontier in any way, experience during pregnancy or breastfeeding, or any event that would evoke an emotional reaction for each Plaintiff. The response should include, but not be limited to, any electronically stored information, social media posts or messages, diaries, notes, correspondence, memoranda, calendars, journals, or other similar materials from any account identified in response to Interrogatory No. 13 above."), *with* RFP 6 in the *Hodgkins* Action ("Any electronically stored information, social media posts or messages, diaries, notes, correspondence, memoranda, calendars, journals, or other similar materials which record, reflect, or comments on each Named Plaintiff's experience at Frontier or with any individual at Frontier in any way, experience during pregnancy or breastfeeding, or any event that would evoke an emotional reaction for each Named Plaintiff. The response should include, but not be limited to, any electronically stored information, social media posts or messages, diaries, notes, correspondence, memoranda, calendars, journals, or other similar materials from any account identified in response to Interrogatory No. 13 above."). As Plaintiffs stated in their opening brief, 8 of the 14 Requests for Admission, 17 of the 23 Interrogatories, and 19 of the 24 Requests for Production filed by Defendant in the *Hodgkins* Action are substantively identical to those served in the *Freyer* Action. In addition, all of Frontier's responses to Plaintiffs' Interrogatories and 16 of Frontier's 21 responses to Plaintiffs' Requests for Production in the *Freyer* Action are substantively identical to those served in the *Hodgkins* Action.

evidence and expect to make similar legal arguments in both actions.[6] Defendant implicitly acknowledges this point in its opposition and argues that any overlap in evidence is insufficient to justify consolidation. But as discussed *supra*, the overlap between the *Freyer* and *Hodgkins* Actions is substantial, and is vastly more significant than in the one decision Defendant relies on.

      C.    <u>Consolidation Will Avoid Repetitive Discovery Disputes and Inconsistent Rulings.</u>

Courts in the Tenth Circuit consistently recognize that consolidation is appropriate where it would help promote judicial economy and efficiency. *See, e.g.*, *Otter Prod.*, 11-CV-02180-WJM-KMT, 2013 WL 490964, at *2 (explaining that "[c]onsiderations of judicial economy" are relevant to a motion to consolidate); *see also Ryan Transp. Servs., Inc. v. Fleet Logistics, L.L.C.*, CIV.A.04-2445-CM, 2005 WL 2293598, at *4 (D. Kan., Sept. 19, 2005) (finding that "judicial economy would be served" by consolidating three cases where "there is commonality of parties . . . and common issues of fact that arise out of the same series of events"). These objectives are precisely the ones Plaintiffs seek to achieve here.

Consolidation at this early stage of discovery will result in significant time and cost savings for the Court, the parties, as well as their fact and expert witnesses. Having met and conferred with Defendant's counsel, Plaintiffs' counsel expects that many issues or disputes arising from the parties' discovery in one action will also arise in the other action. Consolidation will therefore eliminate the need for parallel rulings on these questions, which in turn will ensure an efficient resolution of the issues at stake

---

[6] In particular, Plaintiffs seek to depose at least five of the same current or former Frontier employees in both the *Freyer* and *Hodgkins* Actions.

while also limiting the risk of inconsistent decisions.[7] *See Assad v. DigitalGlobe, Inc.*, 17-CV-01097-PAB, 2017 WL 11556406, at *1 (D. Colo. July 6, 2017) ("Consolidation will ensure efficient resolution of these and future motions by eliminating duplicative hearings while guarding against inconsistent findings."); *Airquip, Inc. v. HomeAdvisor, Inc.*, 16-CV-01849-PAB-KLM, 2018 WL 11189605, at *2 (D. Colo. Nov. 20, 2018) ("[A]ny concerns about delay . . . are substantially outweighed by the Court's – and the parties' – interests in conserving resources and avoiding inconsistent rulings on the same issues of fact and law.").

In addition, as Frontier's counsel is well aware, depositions are time-consuming, costly and burdensome to repeat, especially when the parties choose to depose a large number of witnesses. Consolidation will accordingly save the parties and witnesses from wasting time, money and effort preparing for, taking, or defending the depositions of the same individuals in both cases. *See Otter Prod.*, 11-CV-02180-WJM-KMT, 2013 WL 490964, at *2 (noting that if the cases are not consolidated, the same witnesses will have to testify about the same issues twice and concluding that "it makes sense to consolidate so depositions are not duplicated"); *Cope v. Auto-Owners Ins. Co.*, 18-CV-0051-WJM-SKC, 2019 WL 120746, at *4 (D. Colo. Jan. 7, 2019) ("Through consolidation, the parties and the Court can avoid unnecessary duplications of time and effort in litigation two cases that share common questions or law and fact."); *see also Fin. Guar. Ins. Co. v. Padilla*, CV 16-1095 (GAG), 2016 WL 369493, at *1 (D.P.R. Jan.

---

[7] As recent developments have shown, conflicting rulings may occur even when the parties agree on a specific point. Yesterday, for example, Magistrate Judges Hegarty and Kato Crews issued different rulings regarding the parties' proposed protective orders, which were substantially the same in the two actions. The rulings were consistent with each judge's practice standards.

21, 2016) ("In this case, consolidation is beneficial in order to avoid inconsistent judgments; waste of valuable judicial resources, and excess costs incurred by the parties, in particular the [Defendants] having to defend themselves in proceedings before different federal judges.")

Consolidation will also further judicial economy and minimize the risk of duplicative briefings and conflicting rulings regarding the merits of Plaintiffs' claims and Defendant's affirmative defenses. Defendant's argument that "there is no risk of inconsistent rulings," Def. Opp. at 2, 7, is belied by the parties' briefing on the pending motions to dismiss. The courts handling both actions will necessarily have to rule on many the same issues, including (1) whether Plaintiffs' state law claims are preempted by the FA Act or the Airline Deregulation Act, (2) whether Plaintiffs allegations are timely as a result of their being continuously subject to the ongoing operation of discriminatory policies and practices, (3) what allegations are required with respect to identification of specific comparators treated more favorably for purposes of Plaintiffs' disparate treatment claims, (4) what allegations regarding statistical disparities are required for purposes of their disparate impact claims, and (5) the scope and application of WANMA at various locations within and outside of Colorado.[8]

Defendant further claims that because the cases are on "different discovery schedules," consolidation will "necessarily be to the detriment of judicial economy and result in delay." Def. Opp. at 10. But any hypothetical delays to one or the other case resulting from consolidation should not outweigh the benefits of consolidation, including

---

[8] *Compare* Defendant's Motion to Dismiss Amended Complaint in the *Freyer* Action (Dkt. No. 78 at 16) *with* Defendant's Motion to Dismiss in the *Hodgkins* Action (Def.'s Mot. Dismiss at 10, Dkt. 49).

facilitating the coordinated entry of schedules that would ease burdens on both parties. *See, e.g.*, *Phillip M. Adams & Associates, LLC v. Dell Inc.*, 1:05-CV-64 TS, 2008 WL 203316, at *2 (D. Utah 2008) ("[T]he arguments regarding delay to the [defendants in one action] and inadequate time for the [defendants in the other action] are not persuasive because they can be addressed by adjustments in the scheduling 'to avoid unnecessary costs or delay."); *Assad*, 2017 WL 11556406, at *2 (granting motion to consolidate over objection because the only specific prejudice identified was "[a] potential delay in the resolution of [a] motion for a preliminary injunction" and noting that the motion can be resolved even after consolidation).

Defendant's argument that consolidation will cause jury confusion should also be rejected. Defendant not only overstates the risk of prejudice, but it also assumes that the Court, counsel, and expert witnesses are incapable of explaining to the jury any factual differences between the two cases. Considering courts in this district have consolidated cases more complex than the *Freyer* and *Hodgkins* Actions,[9] it is fair to assume that the jury will be able to distinguish issues specific to flight attendants from those applicable to pilots with guidance from the Court and the parties.[10]

D. <u>Consolidation Will Have No Bearing On Action-Specific Questions.</u>

Consolidation does "not merge [separate] suits into a single action." *Firstier*

---

[9] *See, e.g., Cocona, Inc. v. VF Outdoor, LLC*, No. 16-cv-02703-CMA-MLC, 2018 WL 10910847 (patent case consolidated for pretrial purposes); *In re Davita Healthcare Partners, Inc.*, No. 12–cv–2074–WJM–CBS, 2015 WL 3582265, at *1 (D. Colo., June 5, 2015) (consolidation of two shareholder derivative actions arising out of "numerous state and federal investigations and *qui tam* suits brought under the False Claims Act related to fraudulent Medicare billing and violations of federal anti-kickback laws").

[10] Consolidation could also be limited to pre-trial proceedings, in which case there would be two separate trials and no risk of jury confusion.

*Bank, Kimball, Neb. V. F.D.I.C. ex. rel. Firstier Bank, Louisville, Colo.*, Nos. 11–cv–03231–CMA–MJW, 11–cv–03404–CMA–MJW, 12–cv–00240–CMA–MJW, 2012 WL 1621008, at *2 (D. Colo. May 8, 2012). On the contrary, "each [consolidated] case retains its separate character and requires a separate judgment." *Id.*; *see also Chaara v. Intel Corp.*, 410 F.Supp.2d 1080, 1089, 1094 (D.N.M. 2005), aff'd, 245 Fed. Appx. 784 (10th Cir. 2007) ("[C]onsolidation is an artificial link forged by a court for the administrative convenience of the parties, which fails to erase the fact that, underneath consolidation's façade, lie two individual cases.") (citing decisions from Courts of Appeals in other circuits). In other words, actions "do not lose their separate identity because of consolidation," and "merger is never so complete in consolidation as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately." *Hall v. Hall*, 138 S. Ct. 1118, 1130, 200 L.Ed. 2d 399 (2018).

For this reason, consolidation should not be denied simply because legal or fact issues specific to one action exist *in addition to* the common questions discussed *supra*. *See* 9A C. Wright & A. Miller, Fed. Prac. & Proc. § 2384 (3d. Ed.) ("Consolidation is not barred simply because the plaintiffs may be relying on different legal theories or because there are some questions that are not common to all the actions; the critical consideration, as in other contexts under the Federal Rules, is whether there is at least one common question of law or fact to justify bringing the actions together."). Indeed, these questions could still be addressed separately by the Court after consolidation. This is particularly true of questions related to class certification and of the FMLA claims related to the "dependability policy" in the *Hodgkins* Action.

11

Defendant asserts that consolidating the *Freyer* and *Hodgkins* Actions before the Court rules on the pending motions to dismiss would be premature. Plaintiffs disagree. Consolidation will only facilitate coordination of discovery and case management—which are ongoing in both cases—until such a time as the Court issues its ruling on the motion to dismiss in either case. As an alternative, the Court may also consider Plaintiffs' motion for consolidation in conjunction with Defendant's pending motions to dismiss. *See, e.g., Henn v. Fid. Nat'l Title Ins. Co.*, 12-CV-03077-RM-KLM, 2013 WL 6662204, at *1 (D. Colo. Dec. 17, 2013) (granting consolidation).

### III.   Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' motion to consolidate.

Respectfully submitted this fifth Day of March, 2021

By: /s/ Jayme Jonat
Jayme Jonat
Vincent Levy
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE
AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: vlevy@hsgllp.com
Email: ksebaski@hsgllp.com

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org

Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17thAvenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

*Attorneys for Plaintiffs*