IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.  1:19-cv-03468-CMA-SKC

RANDI FREYER, et al.

       Plaintiffs,

v.

FRONTIER AIRLINES, INC.

       Defendant.

**FRONTIER'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendant Frontier Airlines, Inc. ("Frontier") responds to Plaintiffs' Opposition to its Motion to Dismiss Amended Complaint [ECF #84] (the "Opposition"), and submits its Reply in Support of Its Motion to Dismiss Amended Complaint [ECF #78] (the "Motion").

**I.   INTRODUCTION**

As argued in Frontier's Motion, and largely unrefuted in Plaintiffs' Opposition, the vast majority of Plaintiffs' claims should be dismissed because they are barred by applicable statutes of limitation, preempted by federal aviation statutes and regulations, and otherwise fail to state a claim.  Rather than meet these challenges, Plaintiffs instead attempt to obscure the issues through a façade of irrelevant legal arguments that simply have no bearing on these disputes.  As argued below, and in Frontier's Motion, Plaintiffs' claims should be dismissed, and only Plaintiff Freyer's Title VII claim related to the 32-week rule prior to her 2019 pregnancy be permitted to proceed.

II.     **LEGAL ARGUMENT**

   A.   **The Vast Majority of Plaintiffs' Claims Should Be Dismissed as Untimely.**

At the outset, Plaintiffs appear to concede that Frontier has raised the correct statutes of limitation for each of their claims. Opp'n 9-16; *see also Berry v. Beauvais*, No. 13-cv-2647-WJM-CBS, 2015 WL 5244892, at *3 (D. Colo. Sept. 9, 2015) ("Given [the plaintiff's] failure to respond to this argument, the Court deems it conceded."); *Alvariza v. Home Depot*, 506 F. Supp. 2d 451, 461 (D. Colo. 2007) (same). As a result, the applicable dates by which Plaintiffs' claims were barred are:

| | |
|---|---|
| Title VII | July 11, 2015 |
| CADA | November 8, 2015 |
| PFWA | August 10, 2016 |
| WANMA | May 26, 2015 |

Opp'n 12-13 (containing table listing such "Relevant Period[s]"). Plaintiffs also appear to concede that Plaintiff Kiedrowski's claims are time-barred. *Id.* Plaintiffs likewise appear to concede that Plaintiff Zielinski's claims are time-barred, since the dates listed come **after** the dates Plaintiffs concede are the relevant expiration dates. *Id.* at 12-13.[1]

To avoid the inexorable conclusion that their remaining claims are time-barred,[2] Plaintiffs argue that their claims accrued on March 25, 2016, the date that they demanded a response from Frontier to correspondence from their counsel. Opp'n 9-10. Plaintiffs

---

[1] Of course, Plaintiff Zielinksi is the only one to allege that she received the "baiting" email dated November 19, 2014, which is time-barred. Am. Compl. ¶¶ 3, 179-180. Furthermore, Plaintiff Zielinksi's allegation that she "found it futile to request an accommodation to breastfeed" some time in the period of June 23, 2016 to November 1, 2017, which came before the effective date of the PWFA on August 10, 2016, and only continued after this date without any discrete action, is barred.

[2] The claims Frontier reasonably believes are timely were delineated in Section III.A.2 of its Motion. Mot. 15-16.

2

assert that this is when "Frontier constructively denied [their] written request that Frontier provide necessary accommodations for pregnancy and breastfeeding and modify its discriminatory policies." *Id.* Yet Plaintiffs cite **no legal authority** in support of this theory.[3] A non-response to a demand letter could not restart an expired limitations period for Title VII, CADA, and WANMA claims that were barred in 2015, nor serve to timely assert a PFWA claim for a statute **that was not yet effective at the time of the letter**.

Regardless, courts that have addressed identical assertions have held in no uncertain terms that the "act of sending defendants a demand letter . . . **d[oes] not somehow independently restart the running of the limitations period**," because "[s]uch an exception would <u>eviscerate</u> the purpose of a statute of limitations." *St. Anthony Med. Centers v. Kent*, No. 2:15-cv-01926-KJM-DB, 2016 WL 4192417, at *6 (E.D. Cal. Aug. 8, 2016) (emphasis added), *aff'd,* 748 F. App'x 104 (9th Cir. 2018); *Condra v. Serv. Emps. Int'l Union*, No .4:08CV0161 TCM, 2009 WL 512583, at *3 (E.D. Mo. Feb. 27, 2009). **Such an "argument is unavailing because there is no act by [the defendant]": a "failure to respond to an act of Plaintiff—the demand letter—is not [an] act by it."** *Id.* (emphasis added). "To hold otherwise[] would vitiate the statute of limitations in § 2000e–5(e) by allowing a plaintiff to purse an otherwise untimely charge of discrimination by the simple act of demanding that the defendant remedy a past

---

[3] Of course, a "constructive denial" theory is also incompatible with the clear law that delay in responding to a request for accommodation is not actionable when there is no indication that the interactive process was not ongoing. *Barber ex rel. Barber v. Colo. Dep't of Revenue*, No. 05-cv-00807-REB, 2008 WL 207691, at *1 n.5 (D. Colo. Jan. 24, 2008) (collecting cases), *aff'd,* 562 F.3d 1222 (10th Cir. 2009); *see also Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262 (10th Cir. 2001) (affirming summary judgment in favor of employer despite alleged delay in accommodating worksite conditions).

violation." *Id.*; *see also Jones v. Douglas Cty. Sheriff's Dep't*, No. 8:17CV133, 2017 WL 6520690, at *3 (D. Neb. Sept. 13, 2017) (holding that a plaintiff in an employment discrimination case "cannot revive her time-barred claims" by demanding acquiescence to her demands "and rely[] on [an employer's] refusal as a new, discrete discriminatory act."), *aff'd,* 915 F.3d 498 (8th Cir. 2019); *see also Kaufman v. Perez*, 745 F.3d 521, 530 (D.C. Cir. 2014) ("Congress cannot have intended in setting periods of limitation that claimants could begin the clock running anew simply by demanding the undoing of a time-barred employment action."). As a result, a non-response to a demand letter simply cannot revive an expired claim.

Plaintiffs then attempt to salvage their time-barred claims with the "continuing violation" doctrine under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).[4] Opp'n 11. *Morgan* is clear, however, that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. The law post-*Morgan* is equally clear that "[w]e must conclude from *Morgan's* holdings that when a plaintiff pursues several disparate

---

[4] To the extent Plaintiffs are challenging the future effect of any policy on any individual, the authority Plaintiffs cite has nothing to do with statutes of limitations, but rather an exception to the mootness doctrine. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997) (cited by Plaintiffs and holding that voluntary cessation of allegedly unlawful policy did not moot claims); *see also Goodloe v. U.S. Parole Comm'n*, 346 F. App'x 340, 346 (10th Cir. 2009). As argued in Frontier's Motion, the continuing violation doctrine is inapplicable both to disparate treatment and disparate impact claims – as to the latter, there still must be a discrete application of an allegedly unlawful policy in order to establish a plaintiff's standing to sue, and that discrete application triggers the 300-day clock. *Christie v. Loomis Armored US, Inc.*, No. 10-cv-02011-WJM-KMT, 2013 WL 3381268, at *11 (D. Colo. July 8, 2013) ("[A] charge alleging [a] disparate impact claim must be filed within 300 days of the offending event."); Mot. 9.

treatment claims based on discrete discriminatory acts, **the limitations period will begin to run for each individual act from the date on which the underlying act occurs**." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003) (unpublished) (emphasis added). As a result, "*Morgan* implicitly overturns prior Tenth Circuit law in that **plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, <u>even if sufficiently related to those acts occurring within the limitations period</u>**." *Id.* (emphasis added).

Courts have specifically applied these precepts to alleged failures to accommodate. *Hock v. Mesa Cty. Valley Sch. Dist. 51*, No. 17-cv-02369-RBJ, 2019 WL 2085354, at *5–6 (D. Colo. May 13, 2019), *appeal dismissed,* 2020 WL 2539662 (10th Cir. Mar. 19, 2020). Even if an employer "did not deny [a plaintiff's] request immediately or that denial was not known to her at that time," the relevant "events occurred at specific points in time" when an employee "would have known . . . that her needs were not accommodated." *Id.* Here, those events occurred when Plaintiffs each piloted a plane without a transfer to a ground role, without receiving a different flight schedule, or without receiving lactation accommodations. *Id.* (holding that all allegations prior to termination, including allegations of failure to accommodate and return to work immediately, were time-barred under the ADA). Thus, the allegations beyond those stated in Section III.A.2. of Frontier's Motion are time-barred and should be dismissed.

The same logic applies with equal force to allegations of discrete acts occurring **after** the Charges were filed. Contrary to Plaintiffs' assertions, exhaustion is not "claim" specific; it applies to "'each discrete incident' of alleged discrimination." Opp'n 14-15 n.9;

5

*cf. Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (cited by Plaintiffs); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (cited by Plaintiffs and stating when "discrete incidents of discrimination occur after an employee files an initial EEOC charge, the employee must file an additional or amended charge with the EEOC to satisfy the exhaustion requirement as to discrete incidents occurring after the initial charge"). Any denial of any new request from Plaintiff Freyer for a new pregnancy in 2019 or lactation requests in "January through March 2020," for which an Amended Charge was not filed, are just such discrete incidents. *See* Mot. 1 n.2; Am. Compl. ¶¶ 130-138. An "employer's rejection of an employee's proposed accommodation is a discrete act that must be the subject of a charge of discrimination within 300 days of the employer's rejection." *Sanchez v. City & Cty. Of Denver*, No. 19-cv-01307-DDD-SKC, 2019 WL 5695949, at *5 (D. Colo. Nov. 4, 2019). Thus, Plaintiff Freyer's 2019 and 2020 allegations are barred for her failure to file exhaust through an Amended Charge.

    **B. Plaintiffs' State-Law Claims Should Be Dismissed.**

        **1. Plaintiffs' State-Law Claims Are Preempted by the FAAct.[5]**

As noted in Frontier's Motion, Plaintiffs' timely claims under the state statutes in the PFWA, CADA, and WANMA relate solely to Plaintiff Beck's and Plaintiff Freyer's requests to take breaks and express breast milk while on duty **on an in-flight aircraft**, with the one exception of their WANMA claims related to lactation facilities at DIA and outstation airports. However, the FAAct and its accompanying regulations govern all on-

---

[5] As noted in Frontier's Motion, Rule 12(b)(1) governs preemption issues. *Fell v. Cont'l Airlines, Inc.*, 990 F. Supp. 1265, 1267 (D. Colo. 1998) (granting airline's Rule 12(b)(1) motion to dismiss arising from RLA preemption); *see also Pliuskaitis v. USA Swimming*, 720 F. App'x 481, 483-484 (10th Cir. 2018) (unpublished).

aircraft activity. "Based on the FAA's purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the FAA," the Tenth Circuit has clearly held that "that federal regulation **occupies the field of aviation safety** to the exclusion of state regulations." *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir. 2010) (emphasis added). As a result, Plaintiffs' tussle with a phantom argument of "ordinary" versus "complete" preemption is immaterial, because the FAAct evinces complete preemption in regulation of on-aircraft activities.[6]

In any event, Plaintiffs' Amended Complaint repeatedly invokes the FAA regulations and guidance, as well as the "safety"-related concerns with their requests. Am. Compl. ¶¶ 69-72, 106, 113, 217; *cf.* Opp'n 4, 17. Plaintiffs' arguments that these somehow relate to a defense are unavailing, because Plaintiffs must first establish "**that an accommodation appears 'reasonable on its face**.'" *Jacobsen v. Dillon Cos.*, No. 10-cv-01944-LTB-BNB, 2012 WL 638122, at *5 (D. Colo. Feb. 28, 2012) (emphasis added). Even under WANMA, Plaintiffs must demonstrate "**reasonable unpaid break time**" and the lack of "**reasonable** efforts to provide a room or other location in close proximity to the work area, other than a toilet stall, where an employee can express breast milk in privacy." Colo. Rev. Stat. § 8-13.5-104(1)-(2); *id.* § 24-34-402.3(1) (requiring only

---

[6] Regardless, this distinction of "ordinary" versus "complete" preemption applies in the context of removal and invocation of this Court's jurisdiction when no federal claim appears on the face of the Complaint. *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 964 (D. Colo. 2019), *aff'd in part, appeal dismissed in part,* 965 F.3d 792 (10th Cir. 2020). The distinction is immaterial here, because even if "complete preemption does not apply, . . . the plaintiff's state law claim is arguably preempted [and] the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption" and must dismiss. *Id.* Thus, **whether complete or ordinary preemption, the Court should dismiss rather than address the claims on the merits**. *See id.*

7

"reasonable" accommodations). Thus, Plaintiffs must demonstrate that a reasonable accommodation was possible within the confines of an FAA-regulated aircraft.

The potentially applicable regulations are detailed in Frontier's Motion, and are **unrefuted** in Plaintiffs' Opposition. *Compare* Mot. 17 *with* Opp'n 16-20. If nothing else, the FAA regulations make clear that "[i]n any case in which this part requires the performance of two or more functions for which an airman certificate is necessary, that requirement is not satisfied by the performance of multiple functions at the same time by one airman." 14 C.F.R. § 125.263(b). Having one pilot on a large airplane leave to pump breast milk for 25 minutes would violate this requirement. While there is an exception "in connection with physiological needs," even that exception has limitations when doing so leaves less than the required number of airmen. 14 C.F.R. § 121.543(b)(2); *see Harris v. Combs*, Docket SE-12513, 1992 WL 172768, at *2 n.6 (N.T.S.B. July 2, 1992) (holding pilot leaving the cockpit with no other crewmember present could not fall within the "limited right" of a crewmember to leave "in connection with physiological needs"); *see also Blakely v. Good*, Docket SE-16443, 2003 WL 834587, at *2 (N.T.S.B. Mar. 3, 2003) (concluding that violation occurred when pilot left "unqualified pilots to fly the aircraft alone" when absent for more than "short breaks to satisfy bodily needs"). Thus, even for employment-based claims, "federal law preempts state law claims that encroach upon, supplement, or alter the federally occupied field of aviation safety and present an obstacle to the accomplishment of Congress's legislative goal to create a single, uniform system of regulating that field." *Ventress v. Japan Airlines*, 747 F.3d 716, 722–23 (9th Cir. 2014); *see also Frank v. Delta Airlines Inc.*, 314 F.3d 195, 202–03 (5th Cir. 2002) (holding that

defamation claims related to FAA-based drug testing were preempted).[7]  Plaintiffs' state-law claims are preempted and should be dismissed.

## 2. Plaintiffs' State-Law Claims Are Preempted by the ADA.

Plaintiffs' state-law claims are also preempted by the ADA, which clearly states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1); *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 85 (2008) (commenting on the "unusual breadth" of the ADA's preemption provision). A "service" has been defined broadly as an "anticipated provision of labor from one party to another," including "matters 'appurtenant and necessarily included with the contract of carriage between the passenger and the airline,' such as ticketing, boarding, providing food and drink and handling baggage." *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147, 150-151 (D. Mass. 2019) (citing *Tobin v. Federal Exp. Corp.*, 775 F.3d 448, 453-56 (1st Cir. 2014)).

Of course, extended occupancy of a lavatory by a pilot displaces the service for passengers who themselves may need to express breast milk, have a gastrointestinal concern, suffer from motion sickness, or who may suffer from any number of medical issues that would require access to a lavatory without extended delay. The Eleventh

---

[7] Plaintiffs' citation to two California cases for the proposition that "State anti-discrimination" statutes are not preempted are inapposite. Both related to complaints by passengers rather than flight crewmembers seeking accommodations that directly impact FAA-regulated in-flight activities. *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 947 (N.D. Cal. 2011) (addressing passenger complaint that flight attendant was "very rude and impatient to non-Caucasian passengers"); *Chowdhury v. Nw. Airlines Corp.*, 238 F. Supp. 2d 1153, 1154 (N.D. Cal. 2002) (alleging that pilot denied passenger ability to board because of his ethnicity).

Circuit has very recently addressed these same issues and held that allegations that an airline "did not properly accommodate [a passenger's] disability are 'incidents of ... transportation,' or aspects that 'relate[ ] to the . . . services of an air carrier'" preempted by the ADA.  *Mennella v. Am. Airlines, Inc.*, 824 F. App'x 696, 704 (11th Cir. 2020).[8] Indeed, courts have held that similar Department of Transportation regulations regarding accommodations "are part of a broad, complex regulatory scheme regarding disability non-discrimination in air travel," such that "Congress intended to displace state law in this area."  *Foley v. JetBlue Airways, Corp.*, C 10-3882 JCS, 2011 WL 3359730, at *13 (N.D. Cal. Aug. 3, 2011).  Plaintiffs' state-law claims are preempted for this additional reason.

### C. Plaintiffs' Remaining Allegations Largely Fail to State a Claim.[9]

Under Rule 12(b)(6), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Spencer v. Cumulus Broad., LLC*, No. 07-cv-02173-REB-BNB, 2008 WL 4724272, at *1 (D. Colo. Oct. 24, 2008).  Plaintiffs also "may not overcome pleading deficiencies with arguments that

---

[8] Plaintiffs' citation to *Nokes v. Aspen Aviation, Inc.*, 104 P.3d 247, 251 (Colo. App. 2004) is inapposite, in that the Colorado Court of Appeals made clear that "the specific allegations of pilot's claims are determinative of the issue," and that pilot alleged a whistleblower claim for termination of employment related to his expression of concerns directed to runway lighting. In fact, the *Nokes* court contrasted those facts with a prior finding of preemption in *Belgard v. United Airlines*, 857 P.2d 467, 470-71 (Colo. App. 1992), relating to disability accommodations, because "**airline employees' health and physical capabilities affect the services those employees render to the airline and that the quality of the employees' services**," which "**directly impacts upon the services that that airline renders to its customers**.'" *Nokes*, 104 P.3d at 250 (emphasis added) (quoting *Belgard*, 857 P.2d at 470).

[9] Plaintiffs fail to respond to, and thus concede, Frontier's argument that WANMA has no extraterritorial application.  *See* Mot. 21-22; *Berry*, 2015 WL 5244892, at *3.

extend beyond the allegations contained in the complaint." *Bauchman v. W. High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997).

   **1. Plaintiffs' Remaining (Timely) Title VII, CADA, and PFWA Disparate Treatment Claims Should Be Dismissed Because Plaintiffs Have Not Alleged Comparators.**

The law is clear that a "plaintiff alleging that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act's second clause may make out a prima facie case by showing, as in *McDonnell Douglas*, that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, **and that the employer did accommodate others 'similar in their ability or inability to work**.'" *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1354, 191 L. Ed. 2d 279 (2015) (emphasis added) (cited by Plaintiffs).[10]  As a result, Plaintiffs must sufficiently allege in their Amended Complaint, rather than argue in their Opposition, that others "similar in their ability or inability to work" were treated differently. *Compare* Compl. ¶ 104 (noting that a pilot was provided "a desk job" without any additional information about that person's ability or inability to work) *and* ¶ 228 (same with respect to those with "vertigo and seizures") *with* Opp'n 23-26.  Indeed, the applicable regulations make clear that the relevant question is whether pregnancy accommodations are treated the same as leave for "other disabilities."  *See* 29 C.F.R. § 1604.10(b); *see also* 42 U.S.C. § 2000e(k).  The EEOC's guidance further clarifies that "[a]n employer is

---

[10] Under CADA and the PFWA, "claims for sex and pregnancy discrimination under state and federal law are subject to the same analysis." *Rios v. Nexion Health at Cherry Creek*, No. 17-cv-03062-MSK-NYW, 2019 WL 3973942, at *4 (D. Colo. Aug. 21, 2019) (granting summary judgment on CADA, PFWA, and Title VII claims).

11

required to treat an employee temporarily unable to perform the functions of her job because of her pregnancy-related condition **in the same manner as it treats other temporarily disabled employees**." *See* 29 C.F.R. § Pt. 1604, App. (emphasis added). Plaintiffs allege no such differential treatment of any pilot.[11]

Bare allegations that an employee was in a protected class, and subsequently suffered some adverse employment action, "do not sufficiently allege discrimination," especially when there are "**no allegations of similarly situated employees who were treated differently**." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (emphasis added) (cited by Plaintiffs and affirming **Rule 12(b)(6) dismissal** of race claim); *Kachadoorian v. United Airlines, Inc.*, No. 18-cv-01205-RBJ, 2019 WL 1953399, at *3–4 (D. Colo. May 2, 2019) (dismissing discrimination claim **under Rule 12(b)(6)** based on similar failures to allege differential treatment of similarly situated employees); *Widjaja v. Nicholson*, No. 08-cv-00204-MSK, 2009 WL 321875, at *4 (D. Colo. Feb. 9, 2009) ("*Swierkiewicz* stands only for the proposition that a heightened pleading requirement does not apply in discrimination questions; the Plaintiff must still allege

---

[11] Plaintiffs now appear to assert that they can be comparators with themselves for purposes of their claims. Opp'n 5, 25-26. Of course, none of the Plaintiffs alleges any temporary disability unrelated to pregnancy or lactation. They also do not allege that any of them was treated differently from the others; that is, they allege they were all treated similarly, and if any was treated better than the others, such plaintiff lacks any cognizable basis for her own claims. Plaintiffs instead rely on a **superseded** September 9, 2013 opinion, replaced by the amended order in *Martin v. Canon Bus. Sols., Inc.*, No. 11-cv-02565-WJM-KMT, 2013 WL 4838913, at *8 (D. Colo. Sept. 10, 2013). The *Martin* case underscores the issues, in that the record showed "**Plaintiff was disciplined earlier and more often <u>than some of the males who were similarly failing to meet their sales quotas</u>**." *Id.* (emphasis added).

sufficient facts to state a claim for relief that is plausible on its face."). Plaintiffs' Title VII, CADA, and PFWA claims should be dismissed.

2. **Plaintiffs' Remaining (Timely) Title VII and CADA Disparate Impact Claims Should Be Dismissed Because They Are Duplicative of Their Disparate Treatment Claims.**

With respect to their disparate impact claim, Plaintiffs state that "Frontier's policies are not, as Defendant argues, immune from disparate impact liability because they are facially discriminatory." Opp'n 28. However, a disparate impact claim alleging intentional discrimination is not a disparate impact claim at all—it is a disparate **treatment** claim. "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that **are not intended to discriminate** but in fact have a disproportionately adverse effect on minorities (**known as 'disparate impact'**)." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (emphasis added).

"Disparate impact claims, as recognized in the Title VII context, challenge 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1006 (10th Cir. 1996). Thus, the "necessary premise of the disparate impact approach is that some employment practices, **adopted without a deliberately discriminatory motive**, may in operation be functionally equivalent to intentional discrimination." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1161 (10th Cir. 1991) (emphasis added). As a result, if the policies alleged (under the CBA) are facially discriminatory, then they are redundant of the disparate treatment claims alleging intentional discrimination. *Wade v. Morton Bldgs., Inc.*, 09-1225, 2010 WL 378508, at *7 (C.D. Ill. Jan. 27, 2010).

Regardless, Plaintiffs' failure to allege any statistically significant impact is fatal to any disparate impact claim. *Drake*, 927 F.2d at 1161. Indeed, the very case cited by Plaintiffs in support of their theory makes clear that "[f]or all its heft, the . . . complaint alludes to disparate impact in wholly conclusory terms," when the Court should "expect to see some factual content in the complaint tending to show . . . a relevant and statistically significant disparity . . . ." *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014); *see* Opp'n 27-28. Plaintiffs' argument, rather than well-pled factual allegations in their Amended Complaint, that "these practices impact *100%* of pregnant pilots and *virtually all* pilots who are breastfeeding when they return to work, while *zero* pilots who are not pregnant or breastfeeding are subject to and harmed by them," cannot meet their burden. Plaintiffs' disparate impact claim should be dismissed.

### 3. Plaintiffs' Remaining (Timely) WANMA Claim Should Be Dismissed.

The only remaining timely claim under WANMA is related to Plaintiff Beck's and Plaintiff Freyer's allegations concerning the lactation room at DIA. Plaintiffs' allegations, in turn, relate only to an alleged delay or difficulty in accessing the room designated for lactation at DIA. Am. Compl. ¶¶ 123, 160. As a result, by their own allegations, Frontier made "reasonable efforts to provide a room or other location in close proximity to the work area, other than a toilet stall, where an employee can express breast milk in privacy." *See* Colo. Rev. Stat. § 8-13.5-104(1)-(2); Compl. ¶¶ 123, 160, 174. A denial of "immediate access to a lactation room" simply cannot establish liability as a matter of law. *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 768-69 (8th Cir. 2014).

14

Moreover, any quarrel with the facilities at DIA is a question of public accommodations for **DIA** under Colorado Revised Statutes section 24-34-602. Plaintiffs do not allege that Frontier had any right to control any premises at DIA that it could have designated for lactation. Much like an entity cannot be liable for premises liability for property that it does not possess and for which it is not legally responsible, Frontier cannot be liable for the failure of a third-party operating public premises to provide designated lactation rooms. Colo. Rev. Stat. § 13-21-115(1), (3); *Jordan v. Panorama Orthopedics & Spine Ctr.*, 2013 COA 87, ¶ 23 (holding that entity cannot be liable for premises it did not control). Plaintiffs' remaining WANMA claims fail.

### III. CONCLUSION

For the foregoing reasons, and those asserted in its Motion, Frontier respectfully requests that Plaintiffs' claims be dismissed as argued in Frontier's Motion.

Dated this 11th day of March, 2021.

Respectfully submitted,

*s/ Stephen E. Baumann II*
Danielle L. Kitson
Erin A. Webber
Stephen E. Baumann II
Carolyn B. Theis
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: dkitson@littler.com
ewebber@littler.com
sbaumann@littler.com
catheis@littler.com

*Attorneys for Defendant Frontier Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of March, 2021, I electronically filed **FRONTIER'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Galen L. Sherwin, Esq.
ACLU Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
gsherwin@aclu.org

*Attorneys for Plaintiffs*

Jayme Jonat, Esq.
Vincent G. Levy, Esq.
Karen A. Sebaski, Esq.
Holwell, Shuster & Goldberg, LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
jjonat@hsgllp.com
vlevy@hsgllp.com
ksebaski@hsgllp.com

*Attorneys for Plaintiffs*

Mark Silverstein, Esq.
Sara R. Neel, Esq.
American Civil Liberties Union-Denver
303 East 17th Street, Suite 350
Denver, CO 80203
msilverstein@aclu-co.org
sneel@aclu-co.org

*Attorneys for Plaintiffs*

*s/Arlene Aguilar*
Arlene Aguilar