IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RANDI FREYER,
BRANDY BECK,
ERIN ZIELINSKI, and
SHANNON KIEDROWSKI

      Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

      Defendant.

Case No. 1:19-cv-03468-CMA-SKC

---

## PLAINTIFFS' DISCOVERY BRIEF

---

Plaintiffs Randi Freyer, Brandy Beck, Erin Zielinski, and Shannon Kiedrowski (the "Plaintiffs"), by and through their attorneys, respectfully submit this Discovery Brief, pursuant to the Court's order on April 23, 2021 [Dkt. 98].

Plaintiffs are four longtime pilots at Frontier Airlines who faced systemic discrimination during and after their pregnancies that grounded them from flying. Despite numerous conferrals and writings, *see* Exhibit A, the Parties have been unable to reach agreement on several issues related to their respective written discovery.

### I.    Relevant Time Period

As served, Plaintiffs' discovery requests sought documents and information from January 1, 2006 to present. With the exception of Plaintiffs' personnel files, Frontier initially took the position that its obligations should be limited to January 1, 2015 to October 6, 2017—while insisting that certain discovery from *Plaintiffs* go back much further, e.g., medical records. As a compromise, Plaintiffs therefore proposed and

1

respectfully request now that, except where otherwise agreed, *all* parties produce and accept responsive documents from January 1, 2010 to December 31, 2020. As Plaintiffs Beck and Kiedrowski each became pregnant with their first child in 2010, Plaintiffs' position reasonably seeks discovery for the entirety of the alleged liability period.

As the "party resisting discovery," it is Frontier's "burden to support . . . any objection to the temporal scope." *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661-62 (D. Kan. 2004). During conferral, Frontier has supported its position only by reference to the statute of limitations, an issue that is *sub judice*. [D.E. 78, 84 & 93].

Regardless, "courts commonly extend the scope of discovery to a reasonable number of years both prior to and following [the liability] period." *EEOC v. Kansas City Southern Ry.,* 195 F.R.D. 678, 679-80 (D. Kan. 2000). Discovery in discrimination cases "should not be narrowly circumscribed," *Gomez v. Martin Marietta Corp*., 50 F.3d 1511, 1520 (10th Cir. 1995), and Title VII further allows consideration of acts outside the liability period "as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). Plaintiffs respectfully request that, unless otherwise agreed, the Court order a mutual time period of January 1, 2010 to December 31, 2020.

II.     **ESI Protocol and Production Obligations**

On February 9, Frontier indicated that it would prepare a draft ESI protocol. After multiple requests, however, on March 24, it sent Plaintiffs a non-standard, and entirely one-sided, draft "ESI protocol" that did not obligate Frontier in any way. *See* Exhibit B. In response, Plaintiffs proposed a mutual ESI protocol on April 8, which incorporated those terms from Defendants' draft to which Plaintiffs could agree. *See* Exhibit C. After

insisting on two separate conferral calls that any ESI protocol should apply only to Plaintiffs—and not Frontier—this week, Frontier once again has changed its position. It now apparently is amenable to ESI obligations but insists that the standard litigation practice of adopting a single, mutual protocol covering processing specifications, production format, metadata fields, and the like is "confusing" because there may be differences in the parties' respective ESI sources, *see* Exhibit A. To the contrary, any such minor distinctions can be efficiently incorporated into a mutual protocol. Accordingly, Plaintiffs seek an order requiring Frontier to enter into a single, mutual ESI protocol and to negotiate in good faith as to custodians and search terms.[1]

### III.   Plaintiffs' Discovery Requests

"Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *10 (D. Colo. Feb. 8, 2010). The discovery requests at issue in this brief are provided in the attached. *See* Exhibit D.[2]

#### A. Frontier's Attempt to Limit to Others Seeking Accommodations

In response to several requests involving personnel files and other employee data, Frontier seeks to limit its production solely to employees *who had sought accommodations*. (Interrogatory Nos. 6, 8 and 14; RFP Nos. 8 and 14). Plaintiffs are

---

[1] Plaintiffs have identified and are collecting all electronic and hardcopy data sources. Plaintiffs have made an initial production that includes the entire EEOC charge file and related communications for each Plaintiff containing what Plaintiffs believe to be a majority of the relevant communications and other documents in their possession, apart from medical records (discussed below). In order to avoid having to forensically search for and produce files multiple times, Plaintiffs held off on searching and producing additional responsive electronic data while the Parties negotiated—or so Plaintiffs thought—the ESI protocol and search terms. Without providing legal authority, Frontier contends Plaintiffs' efforts to date are deficient because they have not conducted targeted searches for or produced responsive electronic materials, even without an agreement as to an ESI protocol or search terms.

[2] For the Court's convenience, Exhibit D provides a list of the discovery requests at issue in this brief. Upon request, Plaintiffs will promptly provide the parties' discovery communications and objections.

entitled to information extending beyond that group of employees, as such information is relevant to both Plaintiffs' disparate treatment and their disparate impact claims.

With respect to Interrogatory No. 14/RFP No. 14, Frontier does not even attempt to explain the basis for limiting its responses to pilots who have sought accommodations. These requests relate to Plaintiffs' allegations that Frontier's policy expressly prohibiting the use of physiological needs breaks for pumping during flight means that breastfeeding pilots are disproportionately subject to disparate discipline, including as compared to pilots taking breaks for reasons *unrelated* to accommodations. There is no basis for Frontier to limit discovery to those requesting accommodations.

Information that might show Plaintiffs were treated worse than other potential comparators is directly relevant to their disparate treatment claims more broadly. Frontier cannot "unilaterally control" the scope of that comparator pool at the discovery stage, thereby preventing Plaintiffs from obtaining relevant information and preempting the Court's role in deciding a legal question. *See Benner v. Saint Paul Pub. Sch., I.S.D. #625*, 2018 WL 4846760, at *3 (D. Minn. Oct. 5, 2018) (addressing "the proper scope of comparator discovery" and explaining that "[o]ne side's view of the importance or meaning of information in its possession should not unilaterally control").

Plaintiffs' requests for company-wide data relating to *all* pilots are also directly relevant to their disparate impact claims. Plaintiffs in such cases have wide latitude to use quantitative comparisons, such as rates of pay, promotions, and discharge, between members of the protected group and those *outside* of that group. *See, e.g., Shafer v. Commander, Army & Air Force Exch. Serv.*, 667 F. Supp. 414, 433 (N.D. Tex. 1985); *U.S. E.E.O.C. v. Warshawsky & Co.*, 768 F. Supp. 647, 655 (N.D. Ill. 1991).

### B. Documents Related to Analyses of Barriers to Promotion of Women Pilots at Frontier or in the Airline Industry

Plaintiffs seek information related to barriers to promotion of women pilots (RFP No 19), which Frontier objects to producing. Such documents are relevant to, *inter alia*, its intent and knowledge regarding the discriminatory impact of its policies and practices, allegations that its challenged policies and practices were generally applied, allegations that denials of accommodations to pregnant or breastfeeding pilots were standard operating procedure, and the availability of less discriminatory alternatives.

### C. Frontier's Refusal to Produce Responsive Communications and Files

Frontier seeks to limit its production solely to the policies, lists, and personnel files that are the subject of certain RFPs or corresponding interrogatories and refuses to provide a wealth of related information and documents, including, with few exceptions, **any** emails, analyses, spreadsheets, or responsive documents outside of personnel files. For other requests, Frontier has not confirmed whether, even subject to any ESI protocol, its productions will include all responsive, non-privileged documents and communications (Interrogatory Nos. 5, 11 and 12; RFP Nos. 2, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 20 and 21). These requests, see Exhibit D, seek information on Frontier's policies for accommodations, pregnancy and related conditions, breaks on duty, and maternity leave; they also seek information regarding comparators, discipline for taking breaks, and pay, hours, and promotions.[3]

In each case, Plaintiffs have agreed to the use of unique identifiers to protect employee privacy and have proposed that the parties negotiate search terms and

---

[3] On April 28, Frontier confirmed the summary plan documents it agreed to produce as to RFP No. 6 do not show the average and median annual per-employee value of each such benefits, objecting based on relevance and overbreadth. This information is needed for a complete and accurate damages estimate.

custodians to enable Frontier to identify responsive documents. Frontier has not provided any colorable basis for why such items should not be produced. There is none. *See Cartel Asset Mgmt.*, 2010 WL 502721, at *10.

## IV. Defendant's Discovery Requests

### A. Medical and Mental Health Records

Taken together, Frontier's Interrogatory Nos. 9, 10 and 18 and RFP Nos. 12, 13 and 20 seek *all* medical and mental health records from every health care provider, physician, psychiatrist, psychologist, therapist, hospital, or clinic. Plaintiffs have agreed to request and produce records for providers who treated them in connection with pregnancy, lactation, or related medical conditions or that otherwise relate to their Complaint. In response, Frontier posits that emotional distress claims entitle it to **all** medical and mental health records—everything from bunions to annual physical exams.

Defendants are not entitled to unfettered access to medical records simply because a plaintiff seeks damages for garden variety emotional distress. *E.E.O.C. v. Pro. Bureau of Collections of Maryland, Inc.*, 2008 WL 2801509, at *2 (D. Colo. July 18, 2008); *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 365 (D. Colo. 2004); *Frappied v. Affinity Gaming Black Hawk, LLC,* 2018 WL 1899369, at *6 (D. Colo. Apr. 20, 2018). At the very least, any additional records should be limited to any conditions affecting the plaintiffs' medical clearance to fly during the relevant period.

### B. Social Media

Frontier's RFP No. 6 seeks, *inter alia*, social media relating to "any event that would evoke an emotional reaction for each Plaintiff." Plaintiffs have agreed to produce responsive, non-public social media posts relating to their pregnancies or breastfeeding

or Frontier's policies regarding the same, and are willing to conduct searches consistent with an ESI protocol and agreed-to terms. Without such limitations, its request is a "fishing expedition, [made] in the hope that there might be something of relevance in Plaintiff's account[s]." *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 404 (D. Wyo. 2017). Such unfettered access to social media is improper. *See Johnson v. USANA Health Scis. Inc.,* 2020 WL 3270879, at *2 (D. Utah June 17, 2020); *E.E.O.C. v. Original Honeybaked Ham Co. of Ga., Inc.,* 2012 WL 5430974, at *1 (D. Colo. Nov. 7, 2012).

### C. Damages Calculations

Frontier's Interrogatory No. 6 seeks a comprehensive damages calculation, which is premature at this early stage of fact discovery and prior to expert discovery. As Plaintiffs explained, their records are partial, necessitating discovery. Indeed, Frontier's production to date has not included any Plaintiff pay data. Although Plaintiffs have pointed to the estimate contained in their Initial Disclosures and agreed to supplement their response as discovery progresses, Frontier insists Plaintiffs respond *now* in full.

### D. W2s/1099s vs. Tax Returns

Frontier's RFP Nos. 9 and 10 seek tax returns as well as "[a]ll documents that reflect or show income and/or compensation . . . received by any Plaintiffs." Plaintiffs, who remain employed at Frontier, agreed to produce non-Frontier W-2s and 1099s, if any. Frontier insists on tax returns but has not, as it must, "demonstrated a compelling need," and it is not "clear that Plaintiff[s'] tax returns, in their entirety, are relevant to [their] claim." *Gordon v. Rice*, 2014 WL 903205, at *7 (D. Colo. Mar. 7, 2014).

Respectfully submitted this 30th Day of April, 2021

By: /s/ Jayme Jonat
Jayme Jonat
Vincent Levy
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE
AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: vlevy@hsgllp.com
Email: ksebaski@hsgllp.com

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org

Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17thAvenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

*Attorneys for Plaintiffs*