# Exhibit C
## (metadata fields and proposed search terms excerpted)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RANDI FREYER, BRANDY BECK, ERIN ZIELINSKI, and SHANNON KIEDROWSKI,<br><br>Plaintiffs,<br><br>-against-<br><br>FRONTIER AIRLINES, INC.,<br><br>Defendant. | No. 19 Civ. 03468-CMA-SKC |

**STIPULATED ESI PROTOCOL REGARDING PRODUCTION SPECIFICATIONS**

Upon the stipulation of the parties, through their undersigned counsel, the following shall govern the specifications for the parties' production of hard-copy documents and electronically stored information ("ESI") subject to the capabilities of and data retained by the parties' systems maintaining ESI.

**I.      DEFINITIONS**

1. "E-mail" (Electronic mail) means an electronic means for sending, receiving, and managing communications via a multitude of different structured data applications (e-mail client software), including, but not limited to, Outlook, or Lotus Notes, or those often known as "webmail," Google Gmail, Hotmail or Yahoo mail.

2. "ESI" shall include any information stored on (i) a device capable of storing, retrieving, or processing data or information in analog or digital format including, but not limited to, computers (e.g., desktop, laptop or tablet), mobile devices (e.g., cellular phones, smart phones), USB devices (e.g., external hard drives, thumb drives, flash drives), Subscriber Identity Module ("SIM") cards, memory cards and/or memory sticks in custody of the Parties; or (ii) a third-party online platform used to share, transfer or store files, including, but not limited to, webmail and "social media."

3. "Extracted Text" means the text extracted from a Native Format file and includes all header, footer and document body information.

4. "Metadata" means structured information that describes, explains, locates, or otherwise makes it easier to retrieve, use, or manage an information resource.

5. "Native Format" means the format of ESI in the application in which such ESI was originally created.

6. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

## II. GENERAL PROVISIONS

1. The Parties will prepare their production documents in accordance with the agreed-upon specifications set forth below, but will not process them through a common vendor. Each party will retain the vendor of their choice.

2. As appropriate, the Parties' productions will be designated as Confidential or Sensitive Security Information pursuant to the parties' protective order.

3. To the extent that a party has already collected and processed documents prior to the effective date of this Agreement and asserts that it is not reasonably feasible to produce such documents in accordance with the production specifications in this Agreement (including by producing data "overlays"), the parties agree to meet and confer about the production format of such documents.

## III. PROCESSING SPECIFICATIONS

1. Each producing party shall collect and process documents using methods that avoid spoliation of data, and generate and preserve the MD5 hash values of all ESI based on the non-spoliation source native file.

2. As to E-mail and attachments, Plaintiffs shall not be required to collect and process E-mail that already resides within Frontier's E-mail servers.

3. De-duplication. ESI may be de-duplicated across custodians using industry-standard hash values. A Party is only required to produce a single copy of a responsive document. A Party may remove exact duplicate ESI according to the MD5/SHA-1 hashing method or hash value matching and shall provide the additional information about custodians of de-duplicated documents specified in a metadata field found in the corresponding load file. However, attachments to e-mails or other documents shall not be disassociated from the parent e-mail or document even if they are exact duplicates of another document in the production.

## IV. PRODUCTION FORMAT

1. Bates Numbering. Bates numbers should be unique IDs with a prefix that can be readily attributed to the relevant action (*Freyer* or *Hodgkins*) and producing party. Bates numbering should be sequential within a document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will endeavor to so note.

2. Parent-Child Relationships (i.e., the association between an attachment and its parent document) should be preserved and indicated in the metadata. Productions should be prepared at a family-complete level where feasible.

3. The electronic metadata fields in **Appendix 1** should be provided.

4. Documents gathered from electronic data should be provided in the following format:

    a. Unless otherwise specified herein, the Parties agree to produce documents as PDFs. For non-searchable, a text file containing OCR should be provided. For redacted documents, the producing party shall provide an OCR text file for the unredacted portions of such documents.

    b. Each image should have a unique file name.

    c. Unless such material contains privileged information or information subject to any other applicable protection, spreadsheet (e.g., Excel), slide presentation (e.g., PowerPoint), and comparable ESI that cannot render PDF images (e.g., Video and Audio files) shall be in native format. Any document produced in Native Format shall be produced with a Bates-numbered image slip-sheet stating the document has been produced in Native Format and noting the document's Confidentiality Designation. The accompanying text files must be created with Extracted Text or if not available, with OCR of the native document. The parties hereby reserve their rights to seek other particular electronic documents in their native form for good cause shown.

5. Documents gathered from hard-copy documents should be provided in the following format:

    a. Unless otherwise specified herein, the Parties agree to produce documents as PDFs. For non-searchable or redacted documents, a text file containing OCR should be provided.

    b. Each image should have a unique file name.

## V. SEARCH TERMS

1. Each Party will use the search terms listed in **Appendix 2** to determine whether hard-copy documents or ESI collected pursuant to the present Protocol are responsive to the other Party's discovery requests and accordingly should be produced.

## VI. CUSTODIANS

1. Frontier Airlines, Inc. ("Frontier") agrees to meet and confer with Plaintiffs about the Frontier custodians whose files will be searched and collected for production. To facilitate the identification of specific custodians, Frontier will produce organizational charts and other

3

documents sufficient to show the titles, roles, and responsibilities of its officers, directors and managers.

### VII.   THIRD-PARTY DOCUMENTS

1. This Agreement will cover joint processing of third-party documents and specifications for production of third-party documents.

2. Unless otherwise agreed among the parties, the party that first issues a third-party subpoena will be responsible for (1) taking reasonable steps to negotiate that the third-party's productions are processed in accordance with the specifications in this Agreement; (2) distributing third-party productions in accordance with the specifications in this Agreement.

### VIII.   OBJECTIONS AND RIGHTS PRESERVED

1. Nothing in this Agreement and Order shall be interpreted to require disclosure of non-discoverable information under Fed. R. Civ. P. 26(b), including irrelevant information, or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Nothing in this agreement precludes any party from seeking cost shifting.  The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of ESI through this Agreement and Order.  All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

2. The inadvertent production of attorney-client privileged communications, or any information protected by the attorney-work product doctrine, shall not be construed as a waiver of any applicable privilege or evidentiary protection against disclosure in discovery, and counsel is estopped from arguing that inadvertent production results in such waiver, or that any producing party failed to take reasonable precautions to prevent the inadvertent production of protected materials.

3. Nothing in this Agreement and Order waives the right of any party to petition the Court for an Order modifying its terms upon sufficient demonstration that compliance with such terms is unreasonable burdensome or that the production of particular documents in a different format or with different Metadata Fields is reasonably necessary, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing parties and the parties shall use reasonable best efforts to negotiate an exception from or modification to this Agreement and Order prior to seeking relief from the Court.

**SO ORDERED:**