## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 1:19-cv-03469-RM-MEH

MELISSA HODGKINS, et al.,

     Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

### ORDER

---

This matter is before the Court on Defendant Frontier Airlines, Inc.'s ("Frontier") motion to dismiss the complaint (ECF No. 49). Plaintiffs Melissa Hodgkins, Stacy Rewitzer, Renee Schwartzkopf, and Heather Crowe (collectively, "Plaintiffs") have filed a response to the motion (ECF No. 54) and Frontier has filed a reply (ECF No. 57). Upon consideration of the motion and related briefing, applicable law, and being otherwise fully advised, the Court finds and orders as follows.

## I.    LEGAL STANDARDS

Frontier moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests whether the court has subject matter jurisdiction to properly hear the case before it. The party invoking the court's jurisdiction bears the burden to establish that federal jurisdiction exists, and "since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *Basso v. Utah*

*Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) motions generally take two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The first form is a facial attack that challenges the sufficiency of the complaint's allegations as to subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). The court accepts the allegations in the complaint as true when reviewing a facial attack. *Id.*

The second form is a factual attack that goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based. *Id.* at 1003. Unlike a facial attack, the court does not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack. *Id.* "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citation omitted). And "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion[,]" unless the jurisdictional issue is intertwined with the merits of a plaintiff's case. *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

Here, Defendant is making a facial attack to the sufficiency of the allegations contained in the complaint. Thus, the Court will accept the allegations in the complaint as true and view all factual disputes in a light most favorable to Plaintiffs.

### B.     Rule 12(b)(6)

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-movant, and draw all reasonable inferences in that party's favor. *Brokers'*

*Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

## II.  BACKGROUND

Plaintiffs in this matter are female flight attendants who had children and breastfed their children during their employment with Frontier. (ECF No. 1 at ¶ 1.)

***Pregnancy and Breastfeeding***. The average length of human gestation is forty weeks. (*Id.* at ¶ 21.) During this time, an expectant mother would be medically permitted to fly. (*Id.* at ¶ 22.) In some instances, however, pregnancy may cause physical changes and conditions which could lead a doctor to limit a pregnant woman's ability to fly or, in this case, a pregnant flight attendant from performing specific activities, ultimately grounding her. (*Id.* at ¶¶ 22, 24.)

After giving birth, it is common for a mother to breastfeed her baby. Studies indicate that breastfeeding infants for up to a year has developmental and psychological benefits. (*Id.* at ¶¶ 26, 37.) A mother who wishes to breastfeed her child, but is physically separated from her, must express breast milk using a pumping device to extract milk every two to three hours. (*Id.* at ¶¶ 29-30.) This process of pumping breast milk takes on average twenty minutes but can be terminated on a moment's notice. (*Id.* at ¶¶ 31-32.) Failure to remove milk from the breast on a regular schedule can have adverse effects such as pain and swelling and can lead to medical complications as well as cessation of lactation altogether. (*Id.* at ¶ 33.)

### A.  Frontier's Employee Policies

Frontier has an employee policy which requires a pregnant employee to notify Frontier as soon as she becomes pregnant.  (*Id.* at ¶ 38.)  It also has a policy regulating work attendance, but Frontier has no written policy for flight attendants who are breastfeeding.  (*Id.* at ¶ 56.)

***Dependability Policy***.  Under Frontier's "Dependability Policy," flight attendants are assigned points for an attendance infraction such as an unexcused absence or tardiness.  (*Id.* at ¶ 39.)  Flight attendants receive 1.5 points per infraction, and after accruing three to four points, they become subject to disciplinary action.  (*Id.* at ¶ 40.)  After accruing eight points, a flight attendant can be terminated.  (*Id.*)  These points will "roll off" a flight attendant's personal record after twelve months of perfect attendance; however, the clock pauses during a period of approved medical leave of absence.  (*Id.*)  As one might expect, not all absences accrue points. Leave under the Family and Medical Leave Act ("FMLA"), medical leave, military leave, and other approved absences do not require a point to be etched in a flight attendant's record.  (*Id.* at ¶ 41.)  What Frontier's policy does not exempt from accruing points are absences related to pregnancy or breastfeeding outside of those which occur during FMLA leave.  (*Id.* at ¶¶ 43-44).

The Dependability Policy also honors stretches of perfect attendance.  Flight attendants can earn credit points toward additional days off and bonus pay over the course of a year after going six months without an absence.  (*Id.* at ¶ 42.)

***Employee Leave***.  Frontier does not offer paid leave to flight attendants who take time off because of pregnancy or a pregnancy-related condition.  (*Id.* at ¶ 46.)  In the past, Frontier has denied requests to provide accommodations, including those for temporary alternative job assignments which would allow pregnant flight attendants to continue working during portions of their pregnancy, to flight attendants who were unable to fly.  (*Id.* at ¶ 47.)  At the same time,

Frontier's policy provides accommodations for flight attendants with medical conditions unrelated to pregnancy and childbirth. (*Id.* at ¶ 49.) These medical accommodations have been provided to flight attendants who suffered on-the-job injuries as well as developed certain medical conditions outside of work. (*Id.* at ¶¶ 51-52.)

Frontier's employee policy references "maternity leave" but does not provide for a specified period of paid or unpaid leave for flight attendants after giving birth outside what is available under the FMLA. (*Id.* at ¶ 53.) Flight attendants who take time off after giving birth are placed on FMLA leave or medical leave, both of which are unpaid. (*Id.* at ¶ 54.)

***Breastfeeding Policy.*** For those employees returning to work while still breastfeeding, Frontier did and does not provide designated break time to pump or express breast milk. (*Id.* at ¶ 58.) Meanwhile, Frontier has and continues to provide break time for other physiological needs such as using the restroom. (*Id.*) Additionally, Frontier did and does not provide any non-bathroom sites located near work areas for flight attendants who are breastfeeding to pump breast milk. (*Id.* at ¶ 59.) Consequently, Plaintiffs resorted to pumping breast milk in aircraft lavatories. (*Id.* at ¶ 60.) This practice is generally not considered sanitary as it presents the potential for harmful bacteria to contaminate the breast milk. (*Id.* at ¶ 36.)

A flight attendant's work schedule is varied. Based on the distance traveled per flight, the number of turns or flights flown in a given shift, and the time between flights, flight attendants may work up to twelve hours a day. (*Id.* at ¶ 64.) Frontier creates flight attendant schedules based on seniority, which leaves more junior attendants with less control to build their schedules with sufficient breaks between flights and shorter duration flights to permit adequate time to pump breast milk during the workday. (*Id.* at ¶¶ 66-67.)

While a plane is airborne, flight attendants are required to perform specific duties to

ensure the safety and comfort of passengers. (*Id.* at ¶ 71.) Once those duties are complete, flight attendants are permitted to chat, eat, read, or visit the restroom to take care of personal needs. (*Id.* at ¶¶ 72-73.) While flight attendants are permitted to use their breaks basically as they wish, those who have disclosed to Frontier that they are breastfeeding are prohibited from using this time to pump breast milk. (*Id.* at ¶ 75.)

### B.    Individual Plaintiffs

The complaint identifies four flight attendants who allege that they have been and continue to be harmed by Frontier's policies.

***Stacy Rewitzer***. Ms. Rewitzer has been employed as a flight attendant with Frontier since 2006 and became pregnant with her son in August 2015. (*Id.* at ¶ 76.) In January 2016, Ms. Rewitzer missed ten days of work due to a pregnancy-related condition, and, as a result, she accrued three points under the Dependability Policy. (*Id.* at ¶ 85.) Frontier declined to remove the points from Ms. Rewitzer's file after repeated requests to recategorize the absences as approved FMLA leave. (*Id.* at ¶ 86.) The next month, Frontier denied Ms. Rewitzer's request for time off for pregnancy-related health complications because the requested days coincided with Super Bowl weekend. (*Id.* at ¶ 87.)

Because of pregnancy-related complications, Ms. Rewitzer exhausted all her FMLA leave early in her pregnancy which required her to go on unpaid non-FMLA medical leave when her doctor determined she was unable to fly. (*Id.* at ¶ 77.)

On August 9, 2016, almost three months after giving birth to her child, Ms. Rewitzer was cleared by her doctor to return to work with various physical limitations. (*Id.* at ¶ 78.) Ms. Rewitzer met with the Workers Compensation & Leaves of Absences manager to discuss possible breastfeeding accommodations. (*Id.* at ¶ 79.) The manager explained that Ms. Rewitzer

should bid for trips with adequate break times between flights to pump but stated that Frontier "cannot offer any accommodations to nursing flight attendants." (*Id.* at ¶ 83.)  Ms. Rewitzer was subsequently placed on unpaid medical leave until she was cleared to fly without physical limitations or requiring accommodations to pump breast milk. (*Id.* at ¶ 84.)

As a result of Frontier's policies relating to pregnancy, Ms. Rewitzer suffered economic as well as non-economic harm. (*Id.* at ¶ 89.)  Ms. Rewitzer remains employed with Frontier and continues to be subject to Frontier's policies and practices on an ongoing basis. (*Id.* at ¶ 90.) These policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions. (*Id.*)

***Melissa Hodgkins***.  Ms. Hodgkins has worked for Frontier as a flight attendant since 2007 and during that time, has had two children. (*Id.* at ¶¶ 91-92.)  When returning to work after having her first child, Ms. Hodgkins learned from her colleagues that most flight attendants who nursed their babies pumped breast milk in the aircraft lavatories during flights. (*Id.* at ¶ 94.)  Not wanting to engage in that practice for sanitation concerns, Ms. Hodgkins decided to cease breastfeeding prior to returning to work, despite her desire to continue breastfeeding her baby. (*Id.*)

In April 2017, while pregnant with her second child, Ms. Hodgkins accrued 1.5 points under the Dependability Policy for an unexcused pregnancy-related absence. (*Id.* at ¶ 95.)  In October 2017, Frontier denied Ms. Hodgkins' request for a ground assignment based on pregnancy-related physical limitations imposed by her doctor. (*Id.* at ¶ 97.)  On November 8, 2017, Frontier placed Ms. Hodgkins on unpaid medical leave which continued until sometime after she gave birth. (*Id.*)  Again, Ms. Hodgkins weaned her baby from breastfeeding earlier than desired so that she could return to work for fear of being reassigned. (*Id.* at ¶ 100.)

Based on Frontier's policies relating to pregnancy, Ms. Hodgkins suffered economic as well as non-economic harm. (*Id.* at ¶ 101.) Further, Frontier's Dependability Policy harmed Ms. Hodgkins by causing her to accrue points for pregnancy-related absences. (*Id.* at ¶ 102.) Ms. Hodgkins remains employed with Frontier and continues to be subject to Frontier's policies and practices on an ongoing basis. (*Id.* at ¶ 103.) These policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions. (*Id.*)

***Renee Schwartzkopf***. Ms. Schwartzkopf has worked for Frontier as a flight attendant since 2006 and became pregnant with her son in May 2016. (*Id.* at ¶¶ 104-05.) After giving birth, Ms. Schwartzkopf returned to work in April 2017, at which time, Frontier required her to attend a day-long training program. (*Id.* at ¶ 107.) Knowing that she would need to pump breast milk during the training, Ms. Schwartzkopf submitted an accommodation request with supporting documentation from her doctor describing her impairment. (*Id.* at ¶ 108.) Frontier granted Ms. Schwartzkopf's request. (*Id.*)

After that, however, Frontier declined to advise Ms. Schwartzkopf of any policy regarding pumping inflight or whether she was even permitted to do so. (*Id.* at ¶ 109.) Further, Frontier did not provide her with information about approved pumping locations in Denver International Airport or offer sufficient break time between flights for her to pump breast milk. (*Id.* at ¶ 115.) Consequently, Ms. Schwartzkopf felt she had no choice but to pump breast milk in the airplane lavatory during her inflight breaks and at airport restrooms between flights. (*Id.* at ¶ 117.)

As a result of Frontier's policies relating to pregnancy and breastfeeding, Ms. Schwartzkopf suffered economic as well as non-economic harm. (*Id.* at ¶ 119.) Ms. Schwartzkopf remains employed with Frontier and continues to be subject to Frontier's policies

and practices on an ongoing basis. (*Id.* at ¶ 121.) These policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions. (*Id.*)

***Heather Crowe***. Ms. Crowe works as a flight attendant for Frontier. (*Id.* at ¶ 122.) During her employment, between October 2013 and June 2018, she had three children. (*Id.*) When returning to work after her first and second pregnancies, Ms. Crowe was forced to pump breast milk in aircraft lavatories during inflight breaks because she did not have sufficient break time between flights to pump on the ground. (*Id.* at ¶ 124.) While on leave after having her second child, Frontier denied Ms. Crowe's initial request for extended leave under the FMLA to breastfeed, but eventually granted her leave after she was diagnosed with post-partum depression. (*Id.* at ¶ 127.)

During Ms. Crowe's third pregnancy, she was diagnosed with a sinus infection exacerbated by her pregnancy, and, thus, was absent from work. (*Id.* at ¶ 129.) Despite Ms. Crowe submitting medical documentation indicating she was unable to fly, she accrued points under the Dependability Policy for her pregnancy-related absences, resulting in disciplinary action. (*Id.*) Ms. Crowe returned to work while she was still breastfeeding her third child and felt forced to pump breast milk in the aircraft lavatory. (*Id.* at ¶ 130.) As a result of Frontier's policies relating to pregnancy and breastfeeding, Ms. Crowe suffered economic as well as non-economic harm. (*Id.* at ¶ 131.) Further, Frontier's Dependability Policy harmed Ms. Crowe by causing her to accrue points for pregnancy-related absences. (*Id.* at ¶ 132.)

Ms. Crowe remains employed with Frontier and continues to be subject to Frontier's policies and practices on an ongoing basis. (*Id.* at ¶ 133.) These policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions. (*Id.*)

Based on the forgoing, Plaintiffs bring sixteen causes of action, seeking damages and injunctive and declaratory relief. Plaintiffs claim Frontier has violated, and continues to violate, state and federal laws, including: Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); the FMLA, 5 U.S.C. § 6381 et seq.; the Colorado Law on Reasonable Accommodations for Pregnancy, Childbirth, and Related Conditions, Colo. Rev. Stat. § 24-34-402.3; the Colorado Workplace Accommodations for Nursing Mothers Act, Colo. Rev. Stat. § 13-1-124(1) ("WANMA"); and the Colorado Anti-discrimination Act, Colo. Rev. Stat. § 24-34-401 et seq. ("CADA"). (*Id.* at ¶ 7.) Plaintiffs also claim there are two putative classes of flight attendants, a pregnancy class and breastfeeding class, employed by Frontier who have been and continue to be harmed by Frontier's policies and practices regarding pregnancy and lactation. (*Id.* at ¶¶ 142, 144.)

***Procedural Background.*** On May 16, 2017, Ms. Rewitzer filed a charge with the Equal Employment Opportunity Commission ("EEOC") concerning Frontier's allegedly discriminatory practices and policies. (*Id.* at ¶ 134.) On October 6, 2017, Ms. Hodgkins and Ms. Schwartzkopf filed charges with the EEOC concerning Frontier's alleged conduct, with Ms. Hodgkins supplementing her charge on February 9, 2018. (*Id.* at ¶ 135.) And on June 15, 2018, Ms. Crowe filed a charge with the EEOC concerning Frontier's alleged conduct, supplementing her charge on January 4, 2019. (*Id.* at ¶ 136.)

On December 2, 2019, Plaintiffs requested a Notice of Right to Sue from the EEOC. (*Id.* at ¶ 140.) This suit followed.

## III.    DISCUSSION

Frontier asks the Court to dismiss the complaint for lack of jurisdiction and because Plaintiffs fail to state a plausible claim for relief. (ECF No. 49.) Frontier first challenges the

sufficiency of the complaint on three jurisdictional grounds: (1) standing; (2) preemption; and (3) exhaustion. (*Id.* at 3-12.) Frontier next challenges the sufficiency of the pleadings, arguing that Plaintiffs have failed to: (1) state a claim for disparate treatment on the basis of sex under Title VII and CADA; (2) establish a prima facie case of disparate impact discrimination; (3) demonstrate Frontier refused to provide rooms for lactation as prescribed under WANMA; (4) timely bring many of their claims as required under the applicable statute of limitations; and (5) propose an ascertainable class under Rule 23. (*Id.* at 14-21.)

Plaintiffs oppose the motion on all fronts. (ECF No. 54.)

### A.      Dismissal Under Rule 12(b)(1)

The Court will first address whether Plaintiffs have standing before turning to whether Plaintiffs' state law claims are preempted by federal law.[1]

### 1.      Standing

Justiciability "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III of the Constitution grants federal courts jurisdiction over "cases and controversies," and the standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154-155 (1990).

To have Article III—constitutional—standing, "the plaintiff must show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress." *Wilderness Soc'y. v. Kane Cty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quotation, citation, and brackets omitted). In other words, a plaintiff must plausibly allege (1)

---

[1] Frontier initially argued Plaintiffs failed to exhaust their CADA claim in its motion to dismiss. (ECF No. 49 at 13.) This argument, however, was subsequently abandoned after Frontier learned that Plaintiffs had received notice of right to sue on that claim (ECF No. 57 at 7). Thus, it will not be addressed by the Court.

injury in fact, (2) fairly traceable to defendant's conduct, (3) that is redressable by a favorable judicial decision. *See VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1146 (10th Cir. 2017). Article III standing is jurisdictional; it is properly raised under Rule 12(b)(1). *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018). The "plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Questions of standing and mootness are closely linked—mootness could be seen as a "time dimension[] of standing." *See* 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.12 (3d ed. 1998) ("Although discrete names have been given to the several nominate categories of justiciability, they are tied closely together."); *see also Warth*, 422 U.S. at 499 n.10 ("The standing question thus bears close affinity to . . . mootness-whether the occasion for judicial intervention persists.").

Mootness is an issue of subject matter jurisdiction which can be raised at any stage of the proceedings. *Kennedy v. Lubar*, 273 F.3d 1293, 1301-02 (10th Cir. 2001). Under Article III of the Constitution, federal courts may only adjudicate live controversies. *See* U.S. Const. Art. III, § 2, cl. 1; *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Alvarez*, 558 U.S. at 130 (internal quotation marks and citations omitted); *see also Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) ("The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction.") (citation omitted).

An exception to the mootness doctrine exists when the harm is "capable of repetition, yet evading review." *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008) (quotation and citation omitted). This doctrine applies only in exceptional circumstances.

The capable-of-repetition exception "arises 'when: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party . . . [will] be subjected to the same action again.'" *Id.* (citation omitted).

One such exceptional circumstance is a case involving pregnancy. Because the duration of a pregnancy will come to term before the typical litigation process is complete, pregnancy discrimination "truly could be capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (quotation and citation omitted).

As set forth in *Roe*:

> when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid.

*Id.* at 125. Thus, to ensure a case involving pregnancy-based discrimination is not rendered moot at the cessation of the pregnancy, the Supreme Court held "[p]regnancy provides a classic justification for a conclusion of nonmootness." *Id.* Put simply, *Roe* created an exception to the normal standing and mootness requirements for cases involving pregnancy.

Here, Frontier challenges Plaintiffs' standing to seek prospective and retrospective relief.

### a. Standing to Seek Prospective Relief

Frontier argues that Plaintiffs are not entitled to seek injunctive and declaratory relief, explaining that they have failed to prove their standing since none of them are currently pregnant or breastfeeding and none of them assert an imminent intent to become pregnant. (ECF No. 49 at 4-5.) Plaintiffs disagree, arguing that they have standing because the harms they suffered are

capable of repetition, yet evading review. (ECF No. 54 at 5.)

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). At issue here is the injury in fact requirement. To satisfy the "injury in fact" requirement for prospective relief, "the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283-84 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 101-02, 107 n.8 (1983)). "Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury" but a "claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction." *Tandy*, 380 F.3d 1283-84 (10th Cir. 2004) (citations omitted).

In this case, whether Plaintiffs have standing to seek prospective relief is a close question. Frontier argues that when this suit commenced, none of the Plaintiffs were pregnant or breastfeeding and a mere someday intention of pregnancy plans without indication of when that someday will come is insufficient to show an actual or imminent injury. Plaintiffs' response conflates the standing and mootness requirements, arguing that none of them need to remain continually pregnant or breastfeeding to maintain standing. Yet, that is not fatal to their position.

Plaintiffs rely on *Roe* in positing that because they have been harmed in the past and they remain employed with Frontier which subjects them to the challenged conduct in future pregnancies and because their claims concern pregnancy, a classic condition of nonmootness, Plaintiffs should be able to challenge Frontier's policies regardless of whether they are currently pregnant or allege any specific intent to become pregnant and breastfeed in the future. It follows,

14

Plaintiffs argue, that because the challenged conduct has impacted and continues to impact their plans with respect to their family planning and personal reproductive decisions, their allegations are sufficient to establish a continuing injury.

The Court agrees that because Plaintiffs remain employed by Frontier, it is reasonable to expect that they, or another member of the proposed class, would be subject to the same policies impacting their ability to take time off for pregnancy-related medical care or obtain breastfeeding accommodations. Based on the allegations, it seems likely, rather than speculative or conjectural, that a pregnant flight attendant will be subjected to the same alleged discriminatory practice again.

Plaintiffs have alleged that they were exposed to wrongful conduct in the past and continue to be subjected to Frontier's policies in the future. The injury in fact is the ongoing threat of being denied pregnancy-related accommodations causing Plaintiffs to modify their family planning decisions. While none of the named Plaintiffs have averred an imminent intent to become pregnant, their injury is predicated upon conduct which occurred during past pregnancies, an inherently temporary condition, and the real prospect that it will occur again.[2]

Even if the Court were to assume that none of the named Plaintiffs themselves are reasonably expected to face the same injury, under a broadened scope of injury reoccurrence, there is a reasonable expectation that one of the approximately 1,150 female flight attendants employed by Frontier will become pregnant in the future and be subject to the same alleged discriminatory conduct. *See Majors v. Abell*, 317 F.3d 719, 723 (7th Cir. 2003) (explaining that in abortion and election cases courts do not interpret the capable of repetition yet evading review

---

[2] Since filing the complaint, Ms. Hodgkins and Ms. Crowe have each given birth and breastfed. (ECF No. 54 at 6.) While neither Plaintiff explicitly indicated an immediate intention to have another child and breastfed in the complaint, this does support the finding that the allegations are sufficient to show a reasonable expectation that the same controversy will occur to the same complaining party.

exception requirement "that the dispute giving rise to the case be capable of repetition *by the same plaintiff* . . . literally") (citations omitted) (emphasis in original).  Thus, Frontier's alleged failure to provide accommodations for pregnant and breastfeeding flight attendants is a concrete injury which continues to affect each of them in a personal and particularized manner.

Frontier cites *ACLU v. Trinity Health Corp.* in support of its position.  178 F. Supp. 3d 614 (E.D. Mich. 2016).  In *Trinity Health Corp.*, the court concluded that because the number of events which must occur for a plaintiff to be injured by a hospital's pregnancy policy were too great and remote, the plaintiffs' risk of harm could not be characterized as "certainly impending."  *Id.* at 620.  There, the plaintiffs sued a parent corporation of a religious health care system alleging that its hospitals' policy precluding certain emergency pregnancy-related medical procedures was in violation of federal law.  *Id.* at 616-17.

The plaintiffs in *Trinity Health Corp.* argued that they had standing based on two theories: (1) at least one of the individual plaintiffs had "already been denied stabilizing treatment" at one of defendants' hospitals and (2) "at least one member was pregnant at the time the case was filed," had a history of pregnancy complications, and lived in a county where defendants owned the only hospital.  *Id.* at 618-19.  In holding that plaintiffs had failed to establish standing to bring their claims, the court measured the "vagueness of the allegations" to be "dubious" and focused on the speculative nature of alleged harms, explaining that even with one of the plaintiffs being pregnant, she failed to plead facts showing she faces a substantial risk of pregnancy complications.  *Id.* at 619-20.  The *Trinity Health Corp.* court reasoned that she could not guarantee that she would experience pregnancy complications, choose to be treated at defendant's hospitals, or require hospitalization in the first place.  *Id.*

Here, Plaintiffs' risk of harm is more certain than in *Trinity Health Corp.*, primarily

because Plaintiffs remain employed with Frontier. The pregnant plaintiff in *Trinity Health Corp.* was not bound to seek medical assistance at defendants' hospitals if and when a pregnancy complication should arise whereas in this case, Plaintiffs' family planning decisions are continually impacted by Frontier's policies. Moreover, Plaintiffs here do not make vague allegations of past harms like in *Trinity Health Corp.*; instead, they plead a litany of specific harms which does more to show a reasonable likelihood of repeated injury.

Ultimately, Plaintiffs allege that their family and personal reproductive decisions have been and will continue to be impacted by Frontier's policies. Pregnancy, childbirth, and other related conditions are personal interests the Pregnancy Discrimination Act was created to protect by forbidding discrimination based on a person's reproductive decisions. Plaintiffs are women of childbearing age who, while pregnant and after having had children and breastfed were allegedly harmed by Frontier's discriminatory policies, continue to work for Frontier and live under that characterized as a real specter of discrimination. This is sufficient to create a reasonable expectation that the challenged conduct will occur again and show a continuing injury adequate to establish standing. Thus, Plaintiffs have standing to seek prospective relief. *See McCormack v. Herzog*, 788 F.3d 1017, 1026 (9th Cir. 2015) (finding that plaintiff's challenge to an abortion law was not moot based on the "capable of repetition, yet evading review" doctrine where she "may become pregnant again, and her term of pregnancy is of limited duration" and that the plaintiff had "standing based on the ongoing risk of prosecution for the termination of her past pregnancy"). Accordingly, Frontier's motion to dismiss Plaintiffs' claims for prospective relief for want of standing is denied.

          *b.*      *Standing to Seek Damages*

Frontier next argues that Plaintiffs have failed to allege they were harmed by its policies.

(ECF No. 49 at 6.)  In response, Plaintiffs argue that they have sufficiently plead facts indicating they were harmed by Frontier's polices.  (ECF No. 54 at 3.)

Plaintiffs have standing to seek damages.  They have each established that during their pregnancies, they were forced into unpaid leave without the option to seek alternative work assignments.  Moreover, they have alleged that the Dependability Policy's point system deterred them from taking time off to obtain pregnancy-related medical care, resulted in disciplinary action, and disqualified them from perfect attendance bonus opportunities.  Plaintiffs have also each alleged that they breastfed during their employment and that by denying their accommodation requests, Frontier impacted their ability to continue breastfeeding.  Therefore, Plaintiffs have suffered an injury in fact.

Additionally, Plaintiff's injuries are fairly traceable to Frontier's (1) alleged failure to accommodate reassignment requests while Plaintiffs were pregnant and breastfeeding, (2) Dependability Policy, or (3) denial of adequate breastfeeding accommodations.  Finally, an award of back pay and compensatory and other economic damages can redress the injuries suffered by Plaintiffs.  As a result, Plaintiffs have standing to seek damages.  Accordingly, Frontier's motion to dismiss Plaintiffs' claims for damages for want of standing is denied.   *See e.g.*, *Santana v. City & Cty. of Denver*, 488 F.3d 860, 866 (10th Cir. 2007) (explaining that a plaintiff had standing to bring a discrimination claim where she asserted "that she was the victim of discrimination because the interview selection process resulted in a disparate impact on female candidates").

2.      Preemption

Frontier next argues that Plaintiffs' state law claims (claims eight, twelve, thirteen, and fourteen) relating to a failure to grant breastfeeding and pumping accommodation requests are

preempted by federal airline regulations.  (ECF No. 45 at 10.)  As a result, Frontier contends, the

Court lacks jurisdiction over these claims, and they must be dismissed.  (*Id.* at 11.)  Specifically,

Frontier asserts that because the Federal Aviation Act ("FAA") and the Airline Deregulation Act

("ADA") regulate the field of airline transportation, they preempt Plaintiffs' state law claims.

(*Id.* at 10.)

Plaintiffs disagree, claiming that preemption is an affirmative defense not properly raised

at the pleading stage under Rule 12(b)(1) or 12(b)(6).  (ECF No. 54 at 18.)  If Frontier's

argument is not premature, Plaintiffs assert that their state antidiscrimination claims are not

preempted by the applicable federal regulations because the state law claims do not significantly

impact the airline's "rates, routes, or services" which are exclusively regulated by federal law.

(*Id.* at 21.)

Pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, "Congress has the power to

enact statutes that preempt state law." *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th

Cir. 2010) (citation omitted).  Preemption of a state law can occur in one of three ways: (1)

"express preemption, which occurs when the language of the federal statute reveals an express

congressional intent to preempt state law;" (2) "field preemption, which occurs when the federal

scheme of regulation is so pervasive that Congress must have intended to leave no room for a

State to supplement it;" and (3) "conflict preemption, which occurs either when compliance with

both the federal and state laws is a physical impossibility, or when the state law stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 1324 (citation and quotation omitted)

Here, Frontier argues "field preemption" bars Plaintiffs' state law claims.  In this regard,

the Tenth Circuit held "that the comprehensive regulatory scheme promulgated pursuant to the

FAA evidences the intent for federal law to occupy the field of aviation safety exclusively." *Id.* at 1327.

While the Court agrees with Frontier to the extent that a state law impacting aviation safety could be preempted by the FAA, it is not apparent from the pleadings that accommodation requests under the applicable state laws impact airline safety. That is because Frontier's justification, that granting Plaintiffs' accommodation requests could interfere with proper performance of a crewmember's duties jeopardizing passenger safety, for denying accommodations to pump breast milk while inflight is a proffered non-discriminatory justification first raised in its motion to dismiss. *See Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1466 (11th Cir. 1998) (explaining that it was "inappropriate . . . for the [district] court to credit the defendant's proffered non-discriminatory justification for its decision to terminate an employee and use that allegation as a basis to find preemption" because doing so "potentially depriv[ed] the plaintiff of any remedy under either federal or state law").

Based on the allegations, Frontier denied requests for (1) ground positions during flight attendants' pregnancies and while breastfeeding, (2) shorter trips with longer ground time between flights to pump breastmilk, and (3) lactation facilities other than a lavatory. It is not apparent on the face of the complaint how these accommodation requests relate to the regulation of aviation safety; it is only after consideration of Frontier's proffered justification for denying such requests could the relation be made. As in this case, determining whether a party should prevail on its affirmative defense, such as preemption, is better left until the underlying facts have been further developed. Accordingly, Frontier's motion to dismiss the state law claims because they are preempted by the FAA is denied. *See In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 721 F. Supp. 1185, 1186 (D. Colo. 1988)

(explaining that preemption is a defense in the nature of avoidance properly "claimed as an affirmative defense in [an] answer"); *see also Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) ("preemption may be invoked in . . . federal court as an affirmative defense to the allegations in a plaintiff's complaint").

The same conclusion must be reached with regard to Frontier's motion to dismiss the state law claims as preempted by the ADA. State law "actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

Here, the Court finds Frontier's argument, that allowing a flight attendant to use an aircraft lavatory for an extended period to pump breast milk might displace passenger service thereby impacting an area regulated by the ADA, unpersuasive. As discussed with regard to the FAA, the complaint contains allegations of Frontier denying accommodation requests outside an aircraft and for pumping locations other than a lavatory while inflight. The Court agrees with Plaintiffs in that Frontier's position is premised upon heavily disputed facts that cannot be adjudged at this stage of the proceedings. Thus, Frontier's motion to dismiss the state law claims because they are preempted by the ADA is also denied.

Having determined that there are no jurisdictional barriers concerning the subject matter of this case, the Court now addresses whether Plaintiffs have alleged a plausible right to relief.

### 3.    Dismissal Under Rule 12(b)(6)

Even though "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Allegations in a complaint that are "so general that they encompass a wide swath of

conduct, much of it innocent," are insufficient; instead, allegations must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* at 1191-92.

       1.    <u>Title VII and CADA Claims</u>

Because Title VII and CADA claims "rise and fall together," the Court will examine the state and federal claims together. *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) ("CADA discrimination . . . claims are subject to the same legal standards as Title VII claims.") (citing *Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010)).

In their complaint, Plaintiffs allege that Frontier's failure to provide adequate accommodations to pregnant and breastfeeding employees constitutes disparate treatment based on sex and that Frontier's policies have a disparate impact on pregnant and breastfeeding employees. In its motion, Frontier argues the allegations fail to plausibly state a claim under either theory.

       a.    *Disparate Treatment Claims*

"The Pregnancy Discrimination Act ["PDA"] makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1343 (2015). Thus, pursuant to Title VII, employers must treat "women affected by pregnancy, childbirth, or other related conditions . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

A plaintiff can establish a prima facie case of pregnancy discrimination by showing, "[1] that she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others 'similar in their

ability or inability to work.'"  *Young*, 135 S. Ct. at 1354.

Frontier argues that Plaintiffs have failed to identify any similarly situated employees who were provided accommodations.  (ECF No. 49 at 16.)  By focusing their argument on the fourth prong of this quadripartite test, Frontier seemingly concedes that Plaintiffs can satisfy the other three requirements.  Indeed, the PDA makes clear that Plaintiffs belong to a protected class.  Moreover, facts alleged in the complaint indicate that Plaintiffs sought and were denied accommodations based on their pregnancy-related work limitations.  Thus, the only remaining issue is whether Plaintiffs identified instances where Frontier accommodated others "similar in their ability or inability to work" in their complaint.

Plaintiffs allege that Frontier denied their requests for ground assignments while providing such accommodations for flight attendants who were unable to fly based on a non-pregnancy related medical condition or disability.  Specifically, Frontier provided temporary ground positions to flight attendants who suffered various on-the-job injuries as well as developed non-pregnancy health conditions limiting their ability to fly outside of work.  Plaintiffs, therefore, have identified instances where Frontier provided accommodations for flight attendants similar in their inability to work.

At this stage of the proceedings, Plaintiffs sufficiently allege a plausible right to relief for a failure-to-accommodate claim.  *See e.g.*, *Gonzales v. Marriott Int'l, Inc.*, 142 F. Supp. 3d 961, 978 (C.D. Cal. 2015) (denying defendants' motion to dismiss a pregnancy discrimination claim for failure to accommodate where the plaintiff alleged she was a "member of a protected class of women affected by pregnancy-related conditions, that she sought accommodation for her pregnancy-related condition, and that she was denied an accommodation . . . but that defendants accommodate[d] other employees with disabilities or medical conditions that require[d]

reasonable accommodations"); *see also Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1286-87 (11th Cir. 2020) (explaining that the plaintiff "satisfied the fourth prong of her *prima facie* case" for failure to accommodate under the PDA where her temporary lifting restriction based on her pregnancy was akin to that of her colleague's lifting restriction stemming from an on-the-job injury). Accordingly, Frontier's motion to dismiss Plaintiffs' disparate treatment claims is denied.

### a. Disparate Impact Claims

At the outset, it is important to note that "[d]isparate-impact claims may be based on any employment policy, not just a facially neutral policy." *Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014) (discussing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991 (1988) ("We conclude, accordingly, that subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases."). In the context of Title VII, disparate impact claims "challenge 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1006 (10th Cir. 1996) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)).

"To establish a prima facie case of disparate impact discrimination, plaintiff must prove a 'specific identifiable employment practice or policy caused a significant disparate impact on a protected group.'" *Chavez v. Coors Brewing Co.*, 176 F.3d 488 (10th Cir. 1999) (citation omitted).

Here, Frontier argues that claims four, six, eleven, and fourteen should be dismissed for two principal reasons: (1) Plaintiffs fail to identify a specific employment practice or policy that caused a disparate impact; and (2) Plaintiffs fail to offer any statistical data of a disparate impact.

(ECF No. 49 at 16-17.)

The Court disagrees that Plaintiffs have failed to identify any specific employment policies that had a disparate impact.  As alleged in the complaint, Plaintiffs accrue points for pregnancy-related absences, despite Frontier's stated policy of not assigning points for "excused" absences, including certain recognized disability.  Further, Plaintiffs allege that the harms they suffered as a result of the Dependability Policy were disproportionate to those suffered by non-pregnant flight attendants because of the need to miss work for pregnancy-related medical care.  Thus, the Court finds the complaint identifies specific policies that have a disparate effect on pregnant and breastfeeding employees.

The Court also disagrees that Plaintiffs have made no allegations, involving statistics or any other form of data, with respect to any disparate impact they suffered due to pregnancy or breastfeeding.  Plaintiffs allege that *all* pregnant flight attendants are harmed by Frontier's categorical refusal to provide pregnancy-related accommodations, while *zero* flight attendants who were not pregnant are impacted by this policy.  Plaintiffs also claim that "virtually all" breastfeeding flight attendants who require accommodations when returning to work are harmed by Frontier's failure to provide adequate pumping accommodations while *zero* flight attendants who are not breastfeeding are subject to or impacted by this policy.  Thus, the complaint provides "fair notice" of the disproportionate impact of Frontier's employment policies. Accordingly, Frontier's motion to dismiss Plaintiffs' disparate impact claims is denied.

### 2.   WANMA Claim

Frontier asks the Court to dismiss the WANMA claim, arguing that Plaintiffs did not allege a failure or refusal to provide rooms for lactation and that Frontier is not required to provide immediate access to a lactation room under the statute.  (ECF No. 49 at 17.)  Plaintiffs

argue that their allegation is not that Frontier was required to provide immediate access to a lactation room, but rather that they lacked *any* access to a location to pump breast milk at most airports to which Frontier flies. (ECF No. 54 at 13.) Specifically, Frontier never informed Ms. Schwartzkopf of any lactation rooms at Denver International Airport, its principal hub. (*Id.*) Moreover, when Frontier did provide lactation rooms for employee use, it denied requests for break time so that employees would have adequate time to express breast milk. (*Id.*)

Colorado law requires employers to "provide reasonable unpaid break time or permit an employee to use paid break time, meal time, or both, each day to allow the employee to express breast milk" and the "employer shall make reasonable efforts to provide a room or other location in close proximity to the work area, other than a toilet stall, where an employee can express breast milk in privacy" for up to two years after the child's birth. Colo. Rev. Stat. § 8-13.5-104(1)-(2).

Because an inherent part of a flight attendant's job is to travel out-of-state, it is difficult to frame the parameters of their work area and even more difficult to pinpoint what constitutes a close proximity to that area. Frontier flight attendants, even though based in Colorado, spend much of their workday inflight, with limited, if any, private space, other than the lavatory to pump breast milk. Once reaching a terminus outside Colorado, it would seemingly be difficult for Frontier to provide accommodations at each airport to which it flies. While the statute does not require it to do so, Frontier must still make a reasonable effort to provide a location or other accommodation for employees to express breastmilk, and as indicated in the complaint, Frontier has made no such effort.

Of equal concern, Frontier has allegedly failed to provide breastfeeding flight attendants who resort to pumping breast milk in airport restrooms break time necessary to do so as

prescribed under the statute.  As explained by Ms. Rewitzer in the complaint, Frontier refuses to offer any accommodations to nursing flight attendants or provide break times between flights to pump and flight attendants who have disclosed to Frontier that they are breastfeeding, have been prohibited from using break time to pump breast milk.  (ECF No. 1 at ¶¶ 75, 83.)  Ultimately, Plaintiffs have alleged a plausible right to relief.[3]  Accordingly, Frontier's motion to dismiss Plaintiffs' WANMA claim is denied.

### 3.   Timeliness of Plaintiffs' Claims

Frontier argues that a portion of Plaintiffs' claims under Title VII and CADA and that Plaintiffs' FMLA claim are time barred by the respective statute of limitations.  (ECF No. 49 at 18.)  In response, Plaintiffs argue that their Title VII and CADA claims should be allowed to proceed based on the single-filing rule or continuing violation doctrine because they seek forward-looking relief based on discriminatory policies, and that their FMLA claims should proceed because the applicable statute of limitations is three, not two, years.  (ECF No. 54 at 15-16.)

The statute of limitations is an affirmative defense and is more aptly raised in the "defendant's answer than through a motion to dismiss."  *Kerby v. Commodity Res. Inc.*, 395 F. Supp. 786, 791 (D. Colo. 1975); *see also* Fed. R. Civ. P. 8(c)(1).  However, "when the dates given in the complaint make clear that the right sued upon has been extinguished," the issue may

---

[3] Frontier also argues that it should be exempt from complying with WANMA since the law provides no express language that it applies extraterritorially.  The Court finds it need not decide that issue at this stage of the proceedings as the facts alleged in the complaint, viewed in a light most favorable to Plaintiffs, indicate that at least a portion of Ms. Rewitzer's requests for regular breaks to pump breast milk and for convenient pumping locations pertained to accommodations in Colorado.

Frontier further argues that accommodating certain breastfeeding requests would impose an undue hardship.  The Court also finds that it need not decide that issue at this stage of the proceedings because undue hardship is an affirmative defense that Frontier bears the burdening of establishing at trial rather than on the pleadings.  *See Exby-Stolley v. Bd. of Cty. Commissioners*, 979 F.3d 784, 822 (10th Cir. 2020) ("In short, undue hardship is an affirmative defense, and, consequently, the [defendant] bears the burden to establish it at trial.").

be raised in a motion to dismiss. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). That is not the case here.

Based on the limited record before the Court and the nature of the claims asserted, it is difficult to decern precisely when the statute of limitations began to run for Plaintiffs' claims. Moreover, the fact that Plaintiffs alleged the discriminatory policy or practice is ongoing and evoke the single-filing exception and the continuing violation doctrine indicate that resolution of the statute of limitations affirmative defense with respect to Plaintiffs' Title VII and CADA claims is better left to some factual development. *See Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.*, No. 13-CV-00143-MSK-BNB, 2015 WL 1469513, at *12 (D. Colo. Mar. 26, 2015) (declining to resolve a statute of limitations defense on a motion to dismiss where the allegations were "not specific enough to resolve what precisely forms the basis or timing" of when plaintiff's "claims accrued, and therefore, when the relevant statute of limitations attached); *see also Mearin v. Vidonish*, No. Civ. A. 08-597, 2009 WL 5166258, at *3 (W.D. Pa. Dec. 29, 2009) (finding that "dismissal on the basis of the statute of limitations is not appropriate but is better left to some factual development" where plaintiff evoked the doctrine of equitable tolling in his response).

The same is true for Plaintiffs' FMLA claim. Typically, a FMLA claim must be brought within "2 years" of the alleged violation. 29 U.S.C. § 2617(c)(1). That timeframe, however, is extended to "3 years" where a claim is based on a "willful violation." *Id.* § 2617(c)(2). Willfulness, in the FMLA context, means "a plaintiff must demonstrate that his employer 'knew or showed reckless disregard' for whether its conduct was prohibited." *Bass v. Potter*, 522 F.3d 1098, 1104 (10th Cir. 2008) (citation omitted).

Here, Plaintiffs allege that they used FMLA leave based on the qualifying condition of

pregnancy, Frontier was aware the Plaintiffs were pregnant, and that Frontier interfered with

Plaintiffs' rights to FMLA leave by assessing them points under the Dependability Policy.  At

this stage of the proceedings, these allegations are sufficient to create a plausible claim of a

willful FMLA violation.  *See Ramsey v. Advance Stores Co.*, No. 15-4854-RDR, 2015 WL

3948119, at *5 (D. Kan. June 29, 2015) (denying a motion to dismiss an FMLA claim alleging

willfulness where the complaint stated plaintiff was fired after taking leave even though she was

eligible for FMLA and defendant was aware of plaintiff's qualifying condition); *see also Hudson*

*v. Indep. Blue Cross, LLC*, No. CV 18-3631, 2019 WL 1045303, at *3 (E.D. Pa. Mar. 5, 2019)

("At the motion to dismiss stage, courts often take a less stringent approach in assessing whether

an alleged FMLA violation is willful.")

Accordingly, Frontier's motion to dismiss with regard to the statute of limitations is

denied.

### 4.   Plaintiffs' Class Claims

For its last attack on the sufficiency of the complaint, Frontier argues that the proposed

classes are facially overbroad and should be stricken or dismissed.[4]  (ECF No. 49 at 20.)

Plaintiffs contend that this argument is premature, or, in the alternative, that the class can be

readily ascertained by objective criteria.  (ECF No. 54 at 22-23.)

In general, a motion to strike is "a drastic remedy . . . disfavored by the courts."  *Francis*

*v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16,

2010) (citation and quotation omitted).  Motions to strike class allegations at the pleading stage

are subject to a high standard of proof because "it requires a reviewing court to 'preemptively

terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the

---

[4] While Frontier brings its motion to strike under Rule 23(d)(1)(D), it is proper under Rule 12(f).

complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Id.* (quoting *Bryant v. Food Lion, Inc.,* 774 F.Supp. 1484, 1495 (D.S.C. 1991).

To meet this stringent burden, Frontier must "demonstrat[e] from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Id.* (emphasis and alternation in original). Frontier has not done so here.

As alleged in the complaint, Plaintiff will seek to certify two classes of plaintiffs: (1) a pregnancy class and (2) a breastfeeding class. (ECF No. 1 at ¶ 144.) Contrary to Frontier's argument that each putative class is overboard because they may include plaintiffs who were not injured by its policies, "certification requirements neither require all class members to suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). Plaintiffs allege that they can meet the requirements for class certification under Rule 23, and the facts supporting that contention are to be viewed as true at this stage of the proceedings. *Francis*, 2010 WL 3733023, at *1 (explaining that "even at the class certification stage, courts must generally accept as true the allegations supporting certification and must not base their determination on whether the class will ultimately succeed in establishing each element necessary to prove its claims") (citation omitted).

Thus, the Court finds Frontier has not shown it is impossible to certify the classes alleged in the complaint. *See e.g.*, *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2013 WL 5448078, at *4 (D. Colo. Sept. 27, 2013) (declining to strike class allegations on the pleadings because defendant had "not shown that the claims at issue [were] impossible to

certify).  Accordingly, Frontier's motion to dismiss with respect to the class claims is denied.

## IV.     CONCLUSION

Based on the forgoing, Frontier's Motion to Dismiss (ECF No. 49) is **DENIED**.

DATED this 14th day of July, 2021.

> BY THE COURT:
>
> _____
> RAYMOND P. MOORE
> United States District Judge