# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RANDI FREYER, BRANDY BECK, ERIN ZIELINSKI, and SHANNON KIEDROWSKI,<br><br>        Plaintiffs,<br><br>v.<br><br>FRONTIER AIRLINES, INC.<br><br>        Defendant. | Case No. 19-cv-03468-CMA-SKC<br><br><br>**PLAINTIFFS' MOTION TO COMPEL COMPARATOR DATA** |

Plaintiffs respectfully move this Court pursuant to Fed. R. Civ. P. 33, 34, and 37 for an order compelling Defendant Frontier Airlines, Inc. ("Frontier") to produce comparator data relevant to their civil rights claims.

## INTRODUCTION

Plaintiffs, four pilots who became pregnant and who sought to breastfeed their children during their employment with Frontier, allege they were forced onto unpaid leave during their pregnancies, prohibited from using breaks to pump during flight once they returned to work, and denied accommodations that would have enabled them to continue working while pregnant or breastfeeding, causing them physical, economic, and emotional harm. *See* Amended Complaint, ECF No. 74 ("Am. Compl.") ¶¶ 1–2. They assert that Frontier's policies and practices related to pregnancy and breastfeeding are discriminatory both intentionally and in effect,[1] and furthermore,

---

[1] Plaintiffs state causes of action regarding the disparate treatment of Frontier's pregnant and breastfeeding pilots under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* ("Title VII") and the Colorado Anti-Discrimination Act ("CADA"),

1

violate provisions of state law affirmatively requiring employers to make reasonable accommodations for their pregnant and breastfeeding employees.[2]

The Tenth Circuit has instructed that "discovery in discrimination cases should not be narrowly circumscribed." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Yet Frontier has sought to limit discovery to only a narrow and insufficient slice of the data requested: other pilots who sought accommodations (for example, leaves of absence) for reasons related to their own physical or medical limitations. Frontier's blinkered view of its discovery obligations necessitates this motion. The information sought is plainly relevant to each of the claims and defenses in play. For purposes of their disparate treatment claims, as well as their claims that do not hinge upon requests for accommodations, Plaintiffs seek and are entitled to data from Frontier regarding how its treatment of pregnant and breastfeeding pilots compares to its treatment of all others similar in their ability or inability to work, regardless of the reason. With respect to Plaintiffs' disparate impact claims, Plaintiffs seek and are entitled to data from Frontier regarding the effects of its discriminatory policies and practices on pregnant and breastfeeding pilots as compared to all Frontier pilots outside of that protected group—and not merely those who have sought accommodations. The motion should therefore be granted.

---

Colo. Rev. Stat. Ann. § 24-34-402. Am. Compl. ¶¶ 238–57; 266–79; 298–306; 319–30; 349–62. Plaintiffs also state causes of action regarding the disparate impact of Frontier's policies regarding pregnancy and breastfeeding under Title VII and CADA. Am. Compl. ¶¶ 258–65; 280–89; 331–38; 363–69.

[2] *See* Pregnant Workers Fairness Act ("PWFA"), Colo. Rev. Stat. Ann. § 24-34-402.3; Colorado Workplace Accommodations for Nursing Mothers Act ("WANMA"), Colo. Rev. Stat. § 8-13.5-104. Am. Compl. ¶¶ 290–97; 307–18; 339–48.

**BACKGROUND**

Plaintiffs originally filed this action on December 10, 2019, ECF No. 1, and amended their complaint on January 21, 2021. ECF No. 74. Defendant filed its motion to dismiss on February 4, 2021, ECF No. 78, which is currently pending.

On December 16, 2020, Plaintiffs served their initial sets of interrogatories and document requests on Frontier, Exs. A and B, and served additional interrogatories on June 14, 2021. Ex. C.[3] Among other items, Plaintiffs requested that Frontier provide information for all its pilots regarding pay, separation/termination, promotions, discipline, and accommodations, including requests for leave.[4] Frontier objected to Plaintiffs' interrogatories and requests, in part because of their alleged overbreadth and on grounds of relevance and burden. *See, e.g.*, Ex. D, Defendant's Responses and Objections to Plaintiffs' First Set of Interrogatories, at 20.

Despite multiple meet-and-confers, the parties were unable to resolve their differences regarding, among other issues, the scope of comparator data; at the Court's direction, each party filed a short discovery brief on their various disputes. *Id.*; *see also* ECF Nos. 99 and 100. Following a hearing on August 13, 2021, the Court requested further briefing regarding the remaining issue in dispute—the appropriate scope of comparator data—and granted Plaintiffs leave to file the instant motion. ECF No. 112.

---

[3] All exhibits are attached to the Declaration of Karen Sebaski, filed herewith.
[4] At issue are Plaintiffs' Interrogatories Nos. 6, 8, 14, 17, and 19; and Plaintiffs' Document Requests Nos. 8 and 14.

## ARGUMENT

Employment discrimination plaintiffs are entitled to wide latitude for discovery. In this case, under the broad relevancy standard of Rule 26(b), Plaintiffs are entitled to comparator data for all pilots similar in their ability or inability to work for their disparate treatment claims, and data for all Frontier's pilots with respect to their disparate impact claims and other state law claims that do not hinge on requests for accommodations.

### I. Employment Discrimination Plaintiffs Are Entitled to Broad Discovery

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). This language "should not be narrowly circumscribed" in a discrimination case. *Gomez*, 50 F.3d at 1520.

The question of relevance in discovery is distinct from the question of what is ultimately required to succeed on summary judgment. *Lindquist v. Arapahoe Cty.*, No. 10-CV-02264, 2011 WL 3163095, at *2 n.1 (D. Colo. July 26, 2011). Courts compel defendants to produce broad comparator information in discovery, in part because neither plaintiffs nor the court are familiar with the defendant's records and thus the universe of potential comparators. *See, e.g.*, *Davis v. Infinity Ins. Co.*, No. 2:15-CV-01111, 2019 WL 12424674, at *4 (N.D. Ala. Apr. 30, 2019) (granting motion to compel personnel files as "relevant to [plaintiff's] disparate impact claim to the extent it would potentially support the statistical disparity [she] is required to show"); *Deluca v. Sirius Xm Radio, Inc.*, No. 12-CV-8239, 2016 WL 3034332, at *2 (S.D.N.Y. May 27, 2016) (granting plaintiff's motion to compel information on "potential comparators"); *Lattimore*

*v. Wild Flavors, Inc.*, No. CV 09-23-WOB, 2011 WL 13318962, at *2 (E.D. Ky. Apr. 7, 2011) (granting motion in part because "[a]t this stage of the litigation, it cannot be known with certainty whether any of the fifty-nine employees in question could ultimately prove to be a proper comparator").

While the Court will ultimately have to determine the types of data, including comparator data, that may be admitted into evidence, any such limitation would be premature at this stage of the litigation. Allowing Defendant to unilaterally define the scope of the relevant comparator universe would hamstring the Court from making an informed decision about the evidence and constrain Plaintiffs from obtaining information in Defendant's control that could be highly relevant. *See Barrett v. Forest Labs.*, Inc., 39 F. Supp. 3d 407, 429–30 (S.D.N.Y. 2014) (criticizing defendant's reliance on pregnancy discrimination summary judgment decisions at motion to dismiss stage).

### II. For Plaintiffs' Disparate Treatment Claims, Frontier Must Provide Data for All Pilots Similar in Their Ability or Inability to Work

The data Plaintiffs have sought is plainly relevant to their disparate treatment claims, specifically, to their ability to demonstrate "circumstances giving rise to an inference of discrimination," *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007), under the fourth prong of the familiar *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804 (1973). One means of making that required showing is by providing proof that other employees outside the protected group were treated more favorably.[5] *See id*. In the context of failure to accommodate claims,

---

[5] To establish disparate treatment, a plaintiff must show the defendant's actions were motivated by a discriminatory intent, either through "direct" or "indirect" methods of

5

the Supreme Court has explicated a modified version of this test under which the plaintiff must show "[1] that she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others 'similar in their ability or inability to work.'" *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015).

At issue in this case is the fourth prong, the individuals who are considered "similar in their ability or inability to work." Defendant seeks to limit the discovery to those pilots "who requested accommodations in the traditional . . . ADA sense" or "who asked for a leave of absence or an excused absence based on a physical limitation or medical condition." Ex. E, Tr. of Aug. 13, 2021 Disc. Conf. 16:5–6, 17–18.[6] Such a limitation is inappropriate. For Plaintiffs' disparate treatment claims that do not relate to accommodations at all—*i.e.*, those related to the ban on use of breaks for pumping—the comparator universe includes all pilots who were disciplined for taking in-flight breaks. For Plaintiffs' disparate treatment claims that do relate to failure to accommodate pregnancy or breastfeeding, the comparator universe includes all pilots who sought or were granted accommodations, regardless of the reason—not just those pilots who requested accommodations for medical reasons.

---

proof. *Cf. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (observing that *McDonnell Douglas* framework applies when direct evidence is unavailable). Plaintiffs are pursuing both theories in this case, but the discovery disputes at issue mainly pertain to the indirect method of proof.

[6] This conflicts with the position taken by Frontier at a meet and confer held on August 12, where Frontier agreed to produce all personnel records for any pilot who requested any type of accommodation for any reason, including for reasons other than their own physical or medical limitations (for example, religious reasons). *See* Ex. F, Email from Jayme Jonat to Danielle Kitson, dated Aug. 17, 2021.

### A. Plaintiffs' Claims Related to Pumping During Flight Are Not Tied to Medical Accommodations

Plaintiffs allege that in banning pilots from using breaks to pump, Frontier treated such pilots differently than those who used breaks for all other reasons, such as relieving oneself or stretching one's legs to relieve cramping. Am. Compl. ¶¶ 69–77. As a result, Plaintiffs seek information related to relevant policies and disciplinary actions against all pilots who took breaks during flight for any reason. This claim is not tied to pilots who sought accommodations. Defendant's attempt to limit the allowable discovery to disciplinary actions against pilots who sought medical accommodations is thus divorced from the claims actually asserted, and Plaintiffs are entitled to all of the discipline-related information sought.[7]

### B. For Disparate Treatment "Failure to Accommodate" Claims, the Inquiry Focuses on Comparators' Ability or Inability to Work, Regardless of the Reason

Plaintiffs argue that Frontier provided certain accommodations, such as temporary ground positions, to employees not affected by pregnancy while categorically denying those accommodations to pregnant and breastfeeding employees. Am. Compl. ¶ 6. Accordingly, Plaintiffs seek information related to accommodations Frontier granted to other pilots similar in their ability to work. However, Frontier maintains that it will only provide accommodation information for pilots who sought *medical* accommodations. This is contrary to the Supreme Court's direction in *Young*.

In *Young*, a plaintiff challenged her employer's policy of refusing to accommodate

---

[7] Plaintiffs seek the same information to prove their disparate impact claims regarding the consequences of this policy, so the same analysis applies to those claims.

delivery drivers with pregnancy-related lifting restrictions while accommodating other, non-pregnant employees temporarily unable to work. *Young*, 135 S. Ct. at 1347. There, the Supreme Court considered comparators beyond those drivers who sought light duty for medical or disability reasons, including, for example, employees who lost their licenses for non-medical reasons, such as suspension for having a conviction for driving under the influence. *Id.* The reason for the accommodation was irrelevant. What mattered was that the comparator group had the same limitation: an inability to drive. Likewise, here, the key similarity between Plaintiffs and the comparator group is their inability to fly without an accommodation. *See Durham v. Rural/Metro Corp.,* 955 F.3d 1279, 1286 (11th Cir. 2020) ("[T]he comparator analysis under the PDA focuses on a single criterion—one's ability to do the job."); *Hills v. AT&T Mobility Servs.*, LLC, No. 3:17-CV-556, 2021 WL 3088629, at *4–6 (N.D. Ind. July 22, 2021) (granting plaintiff's discovery request in a pregnancy discrimination matter for comparator data related to both medical and non-medical leave of other employees).

The information sought is also relevant to Frontier's defenses. Once the plaintiff has established a prima face case, the burden shifts to the employer to show a "legitimate, nondiscriminatory" reason for its actions, before returning to the plaintiff to show that the employer's offered reason is in fact "pretextual." *Young*, 135 S. Ct. 1338 at 1354. As held in *Young*, the availability of accommodations to others—regardless of the reason why they were needed—is highly relevant to a showing of pretext. *See id.* at 1355 (questioning "why, when the employer accommodated so many, could it not

accommodate pregnant women as well?").[8] Plaintiffs are entitled to the information as to all comparators who sought or were provided accommodations, no matter the reason.

### C. Plaintiffs' WANMA and PWFA Claims Also Require Discovery of Nonmedical Accommodations

The analysis of accommodations Frontier provided to others is also relevant to Plaintiffs' WANMA and PWFA claims. *See* Am. Compl. ¶¶ 290–97; 307–18; 339–48. An employers' obligations under WANMA and PWFA do not depend on a comparison to others similar in their inability to work, but rather are an independent, affirmative obligation to provide accommodations so long as they are either "reasonable," under WANMA, or do not impose "an undue hardship," under PWFA. Colo. Rev. Stat. Ann. § 8-13.5-104; Colo. Rev. Stat. Ann. § 24-34-402.3(1)(a)(I). Evidence that an accommodation has been granted in the past is highly relevant to the inquiry as to whether the accommodation is reasonable or imposes a hardship. *See, e.g.*, Colo. Rev. Stat. Ann. § 24-34-402.3(4)(c)(II). There is therefore no principled basis on which to limit allowable discovery in the manner Defendant asks.

### III. Plaintiffs Are Entitled to the Data Requested for All Pilots for Purposes of Their Disparate Impact Claims

Plaintiffs identify several specific employment practices that they allege have a disparate impact: (1) the practice of refusing to accommodate pregnancy when pilots

---

[8] The data sought are also relevant to Frontier's defenses in disparate impact. If an employer can show a legitimate, non-discriminatory reason for the challenged practice, and a plaintiff can still prevail if they can show a less discriminatory alternative. In this case, the provision of accommodations to others is relevant to the availability of less discriminatory alternatives. *See* 42 U.S.C. §§ 2000e-2(k)(1)(A)(ii) & (k)(1)(C). Plaintiffs have presented Frontier with many less discriminatory alternatives, including allowing them to pump during flight, assistance with scheduling adjustments, temporary ground positions, and paid leave. *See, e.g.*, Am. Compl. ¶ 289.

9

are grounded; (2) the practice of ignoring or denying accommodation requests related to breastfeeding; and (3) the ban on the use of physiological needs breaks for pumping. To prove the disparate impact of these practices, Plaintiffs seek data that would enable them to draw comparisons between Plaintiffs and other pilots outside the protected group. Because the data sought are plainly relevant to Plaintiffs' disparate impact claims, and indeed, implicate their ability to make the showing courts frequently require of plaintiffs raising similar claims, the Court should grant this motion.

### A. Plaintiffs Are Entitled to Information beyond the "Total Number" of Pilots

At the outset, Frontier's assertion that Plaintiffs are owed only the *number* of total pilots and no additional data, including nothing from pilots' files or from data routinely kept in the ordinary course of business, ECF No. 99, at 7, finds no support in law.

A disparate impact claim involves the "consequences of employment practices" *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, (1971), and requires plaintiffs to show that a particular employment practice caused "discrimination against a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 997 (1988). For example, in *Drake v. City of Fort Collins*, the court did not limit its comparison to the *number* of Black applicants as compared to the total *number* of applicants. Rather, it examined the *consequences* of the purportedly discriminatory policy for Black applicants relative to white ones, that is, whether they were rejected for employment at a higher rate. 927 F.2d 1156, 1161 (10th Cir. 1991). Only after comparing outcomes for both groups could the court determine that the policy actually resulted in Black applicants being rejected at a lower rate than white applicants.

The data Plaintiffs seek would enable them to show the consequences of Frontier's policies. Plaintiffs seek to prove, for example, that they not only needed accommodations (including medical leave) at a greater rate than pilots who were not pregnant or breastfeeding, but also that as a consequence of being denied those accommodations (or of being prohibited from pumping during flight), they suffered harm, including lower salaries or annual rates of pay, promotion at lower rates, or being discharged or separated from Frontier at higher rates than other pilots. Proving these claims requires more than a mere analysis of the total number of all other pilots; rather, it requires relevant information that will enable Plaintiffs to analyze these outcomes.

Moreover, although Title VII contains no express requirement that a plaintiff make a statistical showing of the discriminatory effects of a challenged policy, courts often require it. *See, e.g., Watson*, 487 U.S. at 994 (1988) (plaintiffs in a disparate impact case must present statistical evidence "sufficient to show that the practice in question has caused [harm to plaintiffs] . . . because of their membership in a protected group"); *Eggers v. Wells Fargo Bank, N.A.*, 899 F.3d 629, 635 (8th Cir. 2018) (affirming judgment for employer because plaintiff did not show "any statistical evidence of a disparate impact"). In fact, Frontier cited a case that confirms this proposition. *See Kachel v. City of Pueblo*, 743 F. Supp. 749, 756 (D. Colo. 1990) ("Statistical evidence showing a general pattern of discrimination is relevant to a claim of disparate impact.") (cited in ECF No. 99, at 7).[9] The comparator data Plaintiffs have sought is necessary to make

---

[9] Certainly, Plaintiffs allege and intend to prove that the challenged policies harm all or most pregnant and breastfeeding pilots and no pilots who are not pregnant or

the kind of statistical showing that may ultimately be required.

### B. The Appropriate Comparator Universe for Disparate Impact Is Not "All Others Who Sought Accommodations," but All Other Pilots

Frontier would limit the comparator data to pilots who requested accommodations on the assumption that only pilots who requested accommodations are similarly situated to Plaintiffs. Ex. E, at 15:20–23. As discussed above, not all Plaintiffs' claims relate to requests for accommodations.[10] Moreover, when a policy applies to an entire group of employees, the comparator universe of a pregnancy discrimination claim properly consists of all those employees. *See Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 819 (D.C. Cir. 1981) (holding that a maximum length of disability leave potentially caused a disparate impact on women employees of childbearing age compared to all others subject to union contract); *LaBarbera v. NYU Winthrop Hosp.*, No. 2:18-CV-6737, 2021 WL 980873, at *20 (E.D.N.Y. Mar. 16, 2021) (finding no disparate impact when comparing the rates of medical exemption requests granted for pregnant woman as compared to all other employees); *U.S. E.E.O.C. v.*

---

breastfeeding, and therefore have a discriminatory impact per se. *See, e.g.*, *Legg v. Ulster Cty.*, 832 Fed. App'x 727, 731, 732 (2d Cir. 2020) (no requirement to demonstrate "statistically significant impact" to make out a prima facie disparate impact case if plaintiff could show that all or most pregnant correction officers would need an accommodation); *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 813 (5th Cir. 1996). But Plaintiffs should have access to the data necessary to make, in the alternative, a statistical showing of some of the concrete effects of Frontier's discriminatory policies.

[10] Frontier misinterprets 42 U.S.C. § 2000e(k), which states that an employer unlawfully discriminates on the basis of sex when it treats pregnant women or those with pregnancy-related conditions differently from "other persons not so affected but similar in their ability or inability to work." But section 2000e(k) "establishes no assumptions about a pregnant woman's ability or inability to work." *Legg*, 832 Fed. App'x at 731. Thus, the "framework applicable to Title VII disparate impact suits generally" is unaltered in the pregnancy context. *Id.*; *see also Barrett*, 39 F. Supp. 3d at 451 (stating that pregnancy disparate impact claims treated like all others).

*Warshawsky & Co.*, 768 F. Supp. 647, 655 (N.D. Ill. 1991) (finding disparate impact on pregnant plaintiffs under policy that fired any first-year employee requiring long-term sick leave, based on a comparison of termination rates of female first-year employees to all first-year employees). Similarly broad analyses are found in other Title VII contexts.[11]

Even if the Court does not ultimately define the comparator universe that broadly, it would be premature to decide it for purposes of discovery, just as it would be inappropriate to decide the question of the proper comparator universe on a motion to dismiss. *See, e.g.*, *Barrett*, 39 F. Supp. 3d at 449 (pregnancy discrimination claim on motion to dismiss evaluated by reference to policy's effect on pregnant women compared to all others); *Roberts v. U.S. Postmaster Gen.*, 947 F. Supp. 282, 289 (E.D. Tex. 1996) (on a motion to dismiss, looking to alleged disparity in discharge of mothers taking leave to care for children compared to all others). Establishing the comparator universe for the purpose of denying Plaintiffs' relevant discovery would prejudice Plaintiffs by depriving them of the opportunity to examine relevant data and present the Court with the most salient comparisons. There is no equivalent danger for Frontier, as courts routinely reject claims when a plaintiff's comparator evidence is not sufficiently probative. *See, e.g., Drake*, 927 F.2d at 1161.

In short, determining the appropriate comparator population for a pregnancy discrimination claim ultimately depends on the facts of the case *as developed in*

---

[11] *See, e.g.*, *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977) (comparing racial composition of school's teaching staff and all qualified public school teachers in relevant labor market); *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 604 (1st Cir. 1995) (comparing composition of workers admitted to union versus entire Boston-area available labor force).

*discovery*—as it does for other species of Title VII claims. *See, e.g.*, *Ruddy v. Bluestream Pro. Serv., LLC*, 444 F. Supp. 3d 697, 709 (E.D. Va. 2020) (on summary judgment, courts consider "characteristics, positions, and responsibilities" when defining an appropriate comparator group for a pregnancy discrimination claim). Here, Plaintiffs' claims and the factual allegations that inform them require discovery of all pilots.

### IV. Plaintiffs' Requests Are Proportionate and Not Unduly Burdensome

Frontier is unable to demonstrate that producing the data Plaintiffs seek is disproportionate or unduly burdensome. Proportionality is assessed with six factors: "[1] the importance of the issues at stake in the case, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). It is *Frontier*'s burden to establish with "specific information," *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 465 (N.D. Tex. 2016), that the discovery sought is irrelevant or that "the burden or expense of the proposed discovery outweighs its likely benefit." *Frappied v. Affinity Gaming Black Hawk, LLC*, No. 17-CV-01294, 2018 WL 1899369, at *3 (D. Colo. Apr. 20, 2018).

All factors weigh in Plaintiffs' favor. First, Plaintiffs' antidiscrimination claims "seek[] to vindicate vitally important personal and public values"; moreover, the injunctive relief requested in connection with Plaintiffs' claims will benefit nonparties to the litigation. *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 7 (D.D.C. 2017). Second, as the advisory committee notes to Rule 26(b)(1) recognize, challenges to "employment practices . . . may have importance far beyond the monetary

amount involved." Third, Frontier has exclusive access to the information sought and "shielding" it from discovery would "handicap[] [Plaintiffs'] ability to marshal facts that support [their] claims." *Theidon v. Harvard Univ.*, 314 F.R.D. 333, 335 (D. Mass. 2016). Fourth, Frontier has the resources necessary to make the requested productions. Its publicly traded parent stated $550 million in total revenue in the last quarter.[12] Fifth, accessing the requested data is vital for Plaintiffs to develop their statistical disparate impact analysis and for the Court ultimately to determine the appropriate comparator universe and resolve the issues in this case.

Finally, with respect to burden and expense, Defendant has disclosed through the meet and confer process that, in the ordinary course of business, much of the data requested is kept by Frontier in a readily accessible database. *See* Declaration of Karen Sebaski ¶ 9. Given this recordkeeping, and Frontier's acknowledgment that it is required to produce the records sought for at least some pilots, there is no reason to believe that granting Plaintiffs' requests will result in a materially greater burden on or expense for Frontier. To the extent that Defendant can demonstrate that other specific requests (or components of those requests) pose an unduly heavy burden, Plaintiffs remain open to discussing reasonable ways to limit their scope, but Defendant has not to date made any such showing—which it is their burden to do.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court issue an order compelling production of the full scope of comparator data sought for all Frontier pilots.

---

[12] *See* Frontier Group Holdings, Inc. Form 10-Q, period ending June 30, 2021, *available at* https://ir.flyfrontier.com/node/6971/html

| | |
|---|---|
| Dated: August 27, 2021 | By: /s/ Karen Sebaski<br>Jayme Jonat<br>Karen Sebaski<br>HOLWELL SHUSTER & GOLDBERG LLP<br>IN COOPERATION WITH THE<br>AMERICAN CIVIL LIBERTIES UNION<br>425 Lexington Avenue, 14th Floor<br>New York, NY 10019<br>Phone: 646-837-5151<br>Fax: 646-837-5150<br>Email: jjonat@hsgllp.com<br>Email: ksebaski@hsgllp.com<br><br>Sara R. Neel<br>Mark Silverstein<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO<br>303 East 17th Avenue, Suite 350<br>Denver, CO 80203<br>Phone: 720-402-3107<br>Fax: 303-777-1773<br>Email: sneel@aclu-co.org<br>Email: msilverstein@aclu-co.org<br><br>Galen Sherwin<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>WOMEN'S RIGHTS PROJECT<br>125 Broad Street, 18th Floor<br>New York, New York 10004<br>Phone: 212-519-7819<br>Email: gsherwin@aclu.org<br><br>*Attorneys for Plaintiffs* |