# Exhibit E

1

```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
    Case No. 19-cv-03468-CMA-SKC
3   _____

4   RANDI FREYER, et al.

5       Plaintiff,

6   vs.

7   FRONTIER AIRLINES, INC.,

8       Defendant.
    _____
9

10          Proceedings before S. KATO CREWS, United States

11  Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 9:59 a.m., August 13,

13  2021, in the United States Courthouse, Denver, Colorado.

14  _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                      APPEARANCES

19          GALEN SHERWIN and JAYME JONAT, (via phone),

20  Attorneys at Law, appearing for the Plaintiffs.

21          CAROLYN THEIS and DANIELLE KITSON, Attorneys at

22  Law, appearing for the Defendants.

23  _____

24                  DISCOVERY HEARING

25
```

1              P R O C E E D I N G S

2              (Whereupon, the within electronically recorded

3       proceedings are herein transcribed, pursuant to order of

4       counsel.)

5              THE COURT:  All right, good morning.  This is

6       Magistrate Judge Crews.  We'll go on the record in

7       19-cv-3468, Freyer, et al., vs. Frontier Airlines,

8       Incorporated.  I'll take appearances of counsel, please,

9       starting with the plaintiff.

10             MS. JONAT:  This is Jayme Jonat from the law firm

11      Holwell Shuster & Goldberg on behalf of the plaintiff.  Good

12      morning, Your Honor.

13             THE COURT:  All right, good morning.

14             MS. SHERWIN:  And good morning, Your Honor.  This

15      is Galen Sherwin with the American Civil Liberties Union,

16      also on behalf of the plaintiff.

17             THE COURT:  Okay, good morning.  And for defendant?

18             MS. KITSON:  Good morning, Your Honor.  Danielle

19      Kitson and Carolyn Theis on behalf of the defendant Frontier

20      Airlines.

21             THE COURT:  Okay, good morning.

22             All right, Counsel, we are here to endeavor to

23      resolve some discovery disputes.  I know these arose a while

24      back.  You all made some progress in making -- reaching some

25      agreement on some issues.  I had you submit the requests that

1    are particularly in dispute.

2           So is it fair to say that with that document that

3    was provided -- I'm not sure if you e-mailed this or if this

4    was docketed, but the title of the pleading is:  Discovery

5    Requests in Dispute for the Court's August 13, 2021 Discovery

6    Hearing.  Is this the universe of what's in dispute for us to

7    cover today?

8           MS. JONAT:  That's right, Your Honor.  This is

9    Jayme Jonat for the plaintiffs.

10          I think that if it's okay with the Court, you know,

11   rather than discussing it request by request, I think the two

12   disputes really boil down to two issues.  One is the temporal

13   scope of the discovery and the second relates to the

14   comparator universe.  So that is how we view the two disputes

15   and we communicated that in an e-mail to Chambers.  So that's

16   how we see things.

17          THE COURT:  Okay.  I think that approach makes

18   sense.  Ms. Kitson, are you okay with that approach?

19          MS. KITSON:  Yes, Your Honor.  And would you prefer

20   that I stand?

21          THE COURT:  You're welcome to continue to sit.

22          MS. KITSON:  Thank you.

23          THE COURT:  If you're more comfortable standing,

24   that's fine, but sitting is fine.

25          MS. KITSON:  Yes, I believe that that -- those same

4

1  two issues apply with respect to each of the discovery

2  requests in the document that you referenced.

3           THE COURT:  Okay.

4           MS. KITSON:  So it -- I think it does make sense to

5  address them that way.

6           THE COURT:  Okay.  So let's discuss the temporal

7  scope.  I understand that the plaintiffs are willing to agree

8  to a temporal scope of January 1, 2010 to December 31 of

9  2020, although their agreement appears to be contingent on

10 that being a mutual period.  Is that accurate, Ms. --

11          MS. JONAT:  That's right.

12          THE COURT:  Okay.

13          MS. JONAT:  That's right, Your Honor.

14          THE COURT:  Okay.  And the defendants would oppose

15 that being mutual; is that right?

16          MS. KITSON:  That's correct, Your Honor.  I believe

17 we've agreed with respect to what Frontier is seeking and

18 that wouldn't be part of -- in terms of medical records and

19 social media, all of that's been resolved.  So the only issue

20 in front of the Court is the temporal scope for plaintiffs'

21 production -- or sorry, defendants' production.

22          THE COURT:  Okay.  And so --

23          MS. SHERWIN:  Your Honor, if I may interrupt?  I'm

24 so sorry, but this is Galen Sherwin for the plaintiffs.  I'm

25 unable to hear Ms. Kitson.  I'm not sure if Ms. Jonat is able

5

1   to hear her, but I'm not sure if there's a way for her to

2   step closer to whatever the mic is.

3           MS. KITSON:  Is this any better, Ms. Sherwin?

4           MS. SHERWIN:  Yes, thank you.  I can hear you now.

5           THE COURT:  Okay, great.

6           All right, Ms. Jonat, what -- I'll hear your

7   arguments on the timeframe here and I guess the mutuality of

8   the timeframe that's sought.

9           MS. JONAT:  Sure, Your Honor.  Thank you.

10          So plaintiffs are taking the position that

11  defendants' document production should go back to 2010,

12  although defendants think that that timeframe should begin in

13  2013.  We believe that going back to 2010 is appropriate

14  here, because that's when we assert that the liability period

15  began.  Two of the plaintiffs became pregnant with their

16  first child in 2010.

17          So for example, plaintiff Shannon Kiedrowski, she

18  became pregnant in early 2010 and, you know, we assert that

19  she was forced off the job at 32 weeks and was no longer able

20  to fly and forced to take unpaid leave.

21          I understand that defendants' position is that

22  burden of our claims are outside of the statute of

23  limitations.  We have fully briefed that issue, Your Honor,

24  in the context of Frontier's motion to dismiss, which is

25  (indiscernible).

1          So, you know, I can speak a little bit, if you

2     would like, about, you know, why we believe that our claims

3     are timely.  You know, in short -- you know, we are asserting

4     that there is ongoing violations of law such that, you know,

5     we are entitled to seek damages for acts that occurred

6     outside of the statutory window, and I would say that in any

7     event, even if we can't ultimately get damages for actions

8     that occurred before the statute of limitations, they're

9     certainly going to be relevant as it's evidence that we can

10     use with respect to the actions that did arise during the

11     statutory window.

12          And the final thing I would note, Your Honor, is

13     that in the flight attendants' companion case, which is

14     currently before Judge Moore, he recently ruled in the

15     context of Frontier's motion to dismiss there where they made

16     very similar arguments, that because we are alleging an

17     ongoing discriminatory policy or practice, that, you know,

18     the resolution of defendants' asserted statute of limitations

19     defense was better left to some factual development and deny

20     Frontier's motion to dismiss in that regard.  And I think

21     that's particularly true here, you know, we need this factual

22     development and it's precisely why we need this discovery to

23     go back to 2010.

24          THE COURT:  Okay, thank you.  Ms. Kitson?

25          MS. KITSON:  Your Honor, I believe that this is

1    more of a proportionality issue and I think it's premature to

2    argue this, actually.  We would want to continue to confer

3    with plaintiffs' counsel and to brief the issue for Your

4    Honor, if necessary.

5          The issue is the number of pilots involved in this

6    case and the number of years involved.  So over the course of

7    2010 to 2020, which is an 11-year period that plaintiffs are

8    seeking, there were 2,295 pilots employed.  So the issue is

9    one of numerosity.  Each one of those pilots is going to have

10   a multitude of personnel records, including leave of absence

11   documents that would be relevant to the case.

12         And so the problem that we're having is that it's

13   difficult to narrow down how many documents we would be

14   dealing with from that 2010 to 2013 period of time.  And I

15   think the statute of limitations argument really plays into,

16   you know, the proportionality factors in terms of, you know,

17   balancing the relevance versus the burden.  And we know how

18   many pilots were employed in the 2010 to 2012 window, we just

19   don't know how many documents we're talking about.

20         And in connection with the relevant comparator

21   universe, Your Honor, we will be addressing that in a little

22   bit more detail, but we anticipate that 72 pilots over a

23   three-year period is going to result in burdensome discovery

24   in terms of document review and production, but we don't know

25   that yet and we've been working with plaintiffs' counsel.

1        We just got some numbers in yesterday on the

2   defense side in terms of the potential number of documents we

3   could be dealing with.

4        So all of that said, Your Honor, I think it's

5   premature to rule on this issue, but from my perspective

6   wanted to just put it in front of you in terms of a way

7   forward to deal with the dispute.

8        THE COURT:  So is there an issue here in terms of

9   the timeframe -- whatever timeframe we're dealing with

10  encompasses then requests by the plaintiffs for certain

11  policies that Frontier maintains and then secondly or

12  separately requests by the plaintiff for information

13  pertaining to some segment of pilots?

14       MS. KITSON:  It's both, Your Honor.  With respect

15  to the policies and communications about the policies, the

16  parties are negotiating a comprehensive ESI protocol for

17  electronically stored information, and until we reach

18  agreement on that, run the searches, and determine how many

19  documents are coming out of that 2010 to 2012 period, it's

20  difficult to ascertain what that burden would be.  I mean, it

21  could be 100 documents, it could be 50,000 documents.  We

22  just don't know at this stage.  And we are getting closer to

23  reaching an agreement on that protocol, but until we reach

24  that, we won't know the burden.

25       And then with respect to the pilot comparator

9

1    universe, we've been negotiating about what the relevant

2    universe is.  From Frontier's side, we know that in terms of

3    pilots and flight attendants who requested any kind of leave

4    of absence or excused absence in the 2010 to 2020 time period

5    there are 190,000 documents.  We know that's the full

6    universe and now we have to figure out how many of those

7    documents pertain to pilots and how many of those documents

8    pertain to various different types of leave requests.

9           So that's one universe we do have the numbers on.

10   We also do not have the numbers in terms of how many

11   documents would be in each pilot's personnel file for those

12   72 pilots.  I don't anticipate that that would be unduly

13   burdensome for 72 pilots, but really it's more the leave of

14   absence documentation, all of the medical records, all of the

15   communications surrounding requests for leave, requests for

16   medical leave, and all the various different kinds of leave,

17   including military leave and the like.

18          THE COURT:  Okay.  And so is the defense --

19   defendants' primary argument for not going to -- as going

20   back to 2010 the statute of limitations argument?

21          MS. KITSON:  Somewhat, Your Honor.  I think there's

22   a separate aspect of proportionality.  If you look at the

23   case law that is cited in plaintiffs' brief, there's one case

24   out of the District of Kansas from the year 2000, so it well

25   predated the 2016 amendment to the Federal Rules, and the

1   cases cited therein talk about kind of a three- to five-year

2   window that Courts usually apply as -- in terms of a

3   look-back period, but state that it is always a balancing of

4   relevance versus, you know, in that timeframe whether

5   something is reasonably calculated to lead to the discovery

6   of admissible evidence.  So relevance versus burden in those

7   cases.

8           And so I think here the number of years that we

9   would go back has to be balanced against the

10  proportionalities.  So it's not just that there's a statute

11  of limitations argument, I think that factors in, but

12  separately from that there's a burden argument that we likely

13  would make here.  I mean these cases usually arise in the

14  context of a far smaller comparator universe.

15          You know, we're talking about, you know, a

16  department of, you know, 15 people, or 20 people, or a

17  certain number of people -- like a handful of people that

18  reported to the same supervisor in the chain of command.

19  It's not, you know, 2,295 people that we're talking about in

20  the context of those cases.

21          THE COURT:  And so does your argument though assume

22  that -- well, is there an agreement between the parties as to

23  that -- what the appropriate comparative universe is or --

24  that's part of what we're discussing today, right?

25          MS. KITSON:  It's part of what we're discussing

1    today.

2         THE COURT:  Because it seems a little bit that your

3    argument assumes that whatever timeframe the Court would

4    impose, it's assuming that that's opening the door on a whole

5    bunch of stuff that might encroach outside of the bounds of

6    proportionality where I don't perceive my ruling to have that

7    automatic effect, but rather there's a ruling about what the

8    applicable timeframe would be, and then if that lends itself

9    to now we can narrow down the universe of pilots or policies,

10   then maybe there's discussions to be had about, given that

11   timeframe, who those comparators are, what those policies are

12   with whatever proportionality arguments the parties might

13   have or arguments around burden that the defendant might

14   have.

15        MS. KITSON:  I agree, Your Honor.  I've -- from the

16   way I look at it, the Court would make a ruling as to the

17   relevant comparator universe first and that would give us the

18   global number of people that we're looking at, then we would

19   find out the number of documents associated with that and we

20   find out the number of documents associated with that in the

21   2010 to 2012 time period and then we can make the

22   proportionality assessment on that time period.

23        THE COURT:  Because it strikes me that that

24   starting with or going back to 2010 is a relevant timeframe.

25   If at least one of these plaintiffs' pregnancy occurred in

1   early 2010, that timeframe just seems relevant to the Court.

2          I don't -- and so I think the proportionality issue

3   is then a separate question, because I think that's based on,

4   then, the particular discovery request that would pertain to

5   that timeframe.

6          And I understand there are arguments or perhaps

7   issues regarding the statute of limitations.  From what I

8   recall -- and I think maybe Ms. Jonat had stated this and

9   perhaps it's in the briefing, but from what I vaguely recall

10  in employment matters, that there is case law out there that

11  just because you're past a statute of limitations or a

12  pre-filing -- a filing deadline for exhausting your

13  administrative remedies, that certain of that information

14  still might be relevant to a claim, but the issue is just

15  that you can't seek liability related to that particular

16  conduct.

17         So I would find that a 2010 -- a timeframe that

18  starts with January 1 of 2010 would be relevant and

19  proportional in light of the claims in this case.

20         So we -- I will, I guess, rule that the timeframe

21  for -- well, and so I'm going to say the timeframe, for

22  discovery purposes is 2010.  However, some -- the timeframe

23  might be different depending on what each specific request

24  is.  So I'm a little loathe to just give a ruling that says,

25  For all discovery purposes or any and all requests that's

13

1   made, here's the timeframe, because I think sometimes

2   timeframes are situational depending on what the specific

3   request actually is.

4          MS. JONAT:  Yes, Your Honor.  This is Ms. Jonat, if

5   I may.

6          You know, I agree with the Court that it may depend

7   on the type of request at issue.  I think why we're

8   struggling here is that when it comes to burden, we haven't

9   really heard any specific information other than the actual

10  number of pilots and, you know, the 190,000 document volume

11  that Ms. Kitson mentioned is actually for the entire

12  population, not just pilots.

13         So, you know, we're open to having discussions

14  about which requests are particularly burdensome.  We just

15  haven't gotten any sort of detailed information yet on that.

16         THE COURT:  And so I guess which maybe gets to a

17  point I think you made a moment ago, Ms. Kitson, or -- so I

18  guess I'm trying to figure out cart and horse here.

19         MS. JONAT:  Yeah.

20         THE COURT:  Which do we put first?  Is it the

21  timeframe or do we need to go through each of these requests

22  in light of timeframe, but also in light of the comparators?

23  Because, for example, and this is where I'll need argument

24  from counsel so I'm not prejudging these requests in this

25  respect, but when I see a request that asks for information

14

1   pertaining to all pilots, you know, it automatically looks

2   pretty broad and would seem that there's a smaller universe

3   that is relevant and proportional.  And again, I'm not

4   prejudging that; I need to hear from you all.  But I don't

5   know if we need to talk about that first to then -- to

6   discuss timeframe.

7           I'm not sure the timeframe necessarily is going to

8   change, but I guess I'm looking for some guidance from you

9   all in terms of the most efficient issue to address -- or the

10  most efficient way to approach this in terms of cart and

11  horse and the two issues that are the roadblock here.

12          MS. KITSON:  Yeah.  Your Honor, if I may.  I think

13  there is one discrete issue that governs all of this in terms

14  of the relevant comparator universe that is ripe for

15  briefing.  Frontier would like to brief it, and I think that

16  it will drive, you know, the rest of the universe.  And that

17  is, you know, in a pregnancy discrimination act case, what is

18  the relevant comparator universe?  And that is something that

19  is a legal question that bears on discovery.

20          So we're at an impasse.  You know, plaintiffs'

21  position, as I understand it, is that the entire pilot

22  universe is the correct universe for comparison.  Our

23  position is that's not correct, and plaintiffs have pointed

24  to disparate impact theory of the case to support their

25  position.

15

1          But if you look at the recent case law, you know,

2     the prima facie elements are that you have to identify a

3     specific employment practice or policy, you have to

4     demonstrate that a disparity exists between two groups, and

5     you have to establish a causal relationship between the two.

6          And the disparity in the seminal case, Young vs.

7     UPS in 2015, and more recently the Courts have said that

8     disparity is between pregnant women and non-pregnant

9     employees similar in their ability or inability to work.  So

10    that much is crystal clear in the case law.

11         And then the cases in recent years have said, that

12    means it has to be something bearing on the individual's

13    physical ability to work in terms of any medical conditions,

14    physical restrictions, and the like.  So that would be

15    Frontier's position.

16         We would want to brief that for you, Your Honor.  I

17    think that that's a nuanced issue and the case law is

18    evolving on that, but what that gets down to is, you start

19    with plaintiff's proposed universe, which is all pilots.

20    Frontier then proposed, Well, no, let's narrow that down to

21    only pilots who requested some form of accommodation, because

22    those must be the pilots similar in their ability or

23    inability to work.

24         Plaintiffs came back and said, No, that's too

25    narrow, because this shouldn't be limited to pilots who just

1  formally requested an accommodation and went through the

2  interactive process.  We then came back and said, Well, okay,

3  what if we broadened it a little bit further to any pilot --

4  in addition to those who ask for accommodations, any pilot

5  who asked for a leave of absence or an excused absence based

6  on a physical limitation or medical condition of that pilot

7  as opposed to things like asking for military leave or asking

8  for leave to care for a parent or a child, that type of

9  thing.

10          So Frontier has broadened the universe.  I truly

11  think that when we brief it later on in the case that it's

12  going to be more limited than that and it's going to come

13  down to people who actually requested accommodations in the

14  traditional sense, but for purposes of discovery and

15  recognizing that discovery is a bit broader than that, you

16  know, we've agreed to any pilot that's requested any kind of

17  excused absence in addition to those who requested

18  accommodations in the traditional, you know, ADA sense.

19          THE COURT:  Okay.  Ms. Jonat?

20          MS. JONAT:  I'm actually going to turn it over to

21  Ms. Sherwin if she's still on the line.

22          THE COURT:  Okay.

23          MS. SHERWIN:  Yes.  Thank you, Ms. Jonat.

24          I would like to respond, because the defendants'

25  attempt to limit the comparator data in the way that Ms.

17

 1   Kitson has just described is unreasonable and that's

 2   particularly true in the discovery context.  That is in the

 3   discovery posture here.

 4        It ignores the plaintiffs' disparate impact claims

 5   related to failure to accommodate, which concern the

 6   consequences of the challenged policies on pilots who have

 7   been pregnant and breastfed as compared to the affect on

 8   pilots who have not, and Courts have looked at that question

 9   as a whole, looked at the affect on others in the work force

10   as a whole.

11        The defendant is free to assert these arguments

12   about the proper scope of comparator information that should

13   be considered in connection, for example, with a summary

14   judgment motion and, of course, we would have an opportunity

15   to contest that and would do so, but at this point -- at that

16   point, it would be a legal determination for the Court to

17   make.  And it's inappropriate to make that determination as a

18   matter of relevant -- potential relevant discovery, and that

19   was exactly the conclusion that Judge Hegarty suggested at

20   the discovery conference in June, that essentially it's

21   inappropriate to impose that type of constraint on

22   plaintiffs' ability to gather evidence in support of their

23   claims as a matter of discovery.  And to the contrary, the

24   Courts, including the Tenth Circuit, have been very clear

25   that discovery should not be narrowly circumscribed.

18

1       So, you know, that said, I'm happy to go through

2   the relevance and the proper comparator universe with respect

3   to the specific claims, if it would be helpful, for the

4   Court.

5       THE COURT:  Okay, thank you.  Now just give me a

6   second here.

7       Yeah, Ms. Kitson, it does strike me that the issue

8   of the appropriate comparator universe does seem a bit to be

9   a legal determination that I'm not -- that I'm not so sure is

10  an appropriate determination for me for purposes of

11  discovery.

12      Now, I get that if it's tied to proportionality in

13  some way -- I mean, if it's tied to proportionality in some

14  way, then, you know, those are decisions we as magistrate

15  judges make on a daily basis regarding proportionality, but

16  it also seems that if I were to narrow the scope of

17  comparators, I would be potentially limiting or eliminating

18  potentially relevant discovery on a subject that has yet to

19  receive a legal determination as related to the claims in the

20  case.

21      MS. KITSON:  Your Honor, may I address that?

22      THE COURT:  Yes, would you, please.

23      MS. KITSON:  So under Federal Rule of Civil

24  Procedure 26(b)(1), I believe the Court must and should

25  address relevance and must look into relevance and determine

19

1    whether, you know, comparator information is relevant or not.

2    And I think, in a Title VII context and related employment

3    laws, you know, every day the Court makes this determination

4    in a discovery context as to whether requests for comparator

5    data or information is relevant or not.

6            For instance, the Court will look at if a plaintiff

7    is asking for comparators who are outside of a certain

8    decisional unit.  The Court routinely will determine whether

9    the comparator information sought is material and all -- or

10   sorry, the same or similar in all material respects.

11           And so I disagree that the Court wouldn't be making

12   a relevance determination, because I -- that is something

13   that, you know I've seen the Court routinely do in terms of

14   determining, okay, well, you know, I'm going to make a ruling

15   that people, individuals who were outside of this same chain

16   of management, people or individuals who didn't have the same

17   set of circumstances are not relevant for purposes of

18   discovery.

19           So I do think that that's something -- I mean,

20   bottom line is that Frontier would like to file a formal

21   motion on that for protective order or -- and brief it for

22   Your Honor, because I think it is more nuanced then what

23   plaintiffs are suggesting.

24           I also will say, you know, Judge Hegarty's comments

25   at our discovery hearings, he did not say that he was not

1    taking up the relevance inquiry; that we set the relevance

2    inquiry aside and I asked if we could file a formal motion on

3    relevance if we needed to and he said that we could, he would

4    not stop anyone from filing a motion.  So that was -- those

5    were the comments that he made.

6            And so I do believe that the Court should look at

7    relevance in its determination and make a determination of

8    relevance for purposes of assessing discovery.

9            THE COURT:  Okay.

10           MS. SHERWIN:  Your Honor, if I may just respond?

11           THE COURT:  Yeah, please do.

12           MS. SHERWIN:  This is Ms. Sherwin.

13           THE COURT:  Sure.

14           MS. SHERWIN:  Thank you.  I think that the Court

15   can make a determination as to relevance today, because it's

16   very clear what the relevance is and further briefing would

17   not be necessary, and I would be happy to run through that

18   just briefly right now since Ms. Kitson, you know, has made

19   that central to their argument.

20           So I would like to just respond on the question of

21   the disparate impact claim.  All the Court needs to do is

22   look at what Courts have required of plaintiffs who are

23   asserting disparate impact claims and that is that they have

24   required them to show that there's a harm to the plaintiff,

25   that the plaintiffs are, you know, experiencing the

1   consequences of the challenged policies in ways that are

2   greater than those outside of the protected group.  And

3   oftentimes that group is -- there's no case that Ms. Kitson

4   has cited to this point or that we are aware of that was

5   decided in the discovery context that says plaintiffs in a

6   disparate impact case are limited to others who have

7   requested accommodation.

8        That limitation that the defendant is proposing

9   finds no support in the law.  None of the cases that they

10  have relied on are decided in discovery cases posture.  Those

11  are decided at summary judgment as an ultimate legal

12  determination as to what the proper comparator universe is.

13       Second, the Court in Young, you know, answers --

14  that was a disparate treatment case.  Young was a disparate

15  treatment case.  So while Young is instructive here, and

16  particular on the disparate treatment claims and what the

17  comparator universe is there, it is not, you know, an

18  appropriate way to limit discovery for the disparate impact

19  claim.

20       And so what I'd like to do is just talk through the

21  specific claims.

22       I will also mention that plaintiffs bring claims

23  around failure to accommodate pregnancy and breastfeeding.

24  They also bring claims that are straight up disparate

25  treatment and disparate impact claims related to the ban on

22

1    the use of physiological needs breaks for purposes of breast

2    pumping for the pilots.  That claim is completely unrelated

3    to requests for accommodations, because it does not concern

4    pilots' requests for accommodations.  It simply concerns the

5    policy that says the pilots are not permitted to use breaks

6    for those purposes and are permitted to use breaks for any

7    other physiological need.

8              So the relevant comparative universe there is very

9    plainly:  Anyone else who needs to take physiological needs

10   breaks, which is all pilots, right?  All pilots need to use

11   the restroom for other purposes.  So there's really no basis

12   for the proposed limitation that the defendant has argued is

13   the appropriate one in that -- with respect to those claims.

14             With respect to the failure to accommodate claims,

15   I'll take disparate treatment and disparate impact

16   separately.

17             So with respect to disparate treatment claims, the

18   restriction of a comparator universe that the defendant has

19   proposed is actually too narrow, because it ignores the

20   analysis that the Court set out in Young, which again was a

21   disparate treatment case and that's the lead case on this

22   issue.  And in that case, the Court looked at comparators who

23   were not only seeking accommodations for their own medical or

24   physical reasons, they -- the Court looked at people who were

25   seeking accommodations for other reasons, including the loss

23

1   of their driver's license, which wasn't related to a physical

2   limitation.

3          So the Court, you know, obviously took those into

4   account and basically asked the question, Ultimately, if the

5   employer could accommodate those individuals, why couldn't it

6   accommodate people who were pregnant?  And the employer had

7   to come up with a good reason.

8          But again this is not even at the discovery stage,

9   right?  The plaintiff was not precluded from gathering

10  information as to all -- so all of the employees at UPS.

11         With respect to the disparate impact claims, the

12  limited data that the defendant has agreed to provide would

13  potentially prevent plaintiffs from offering the type of

14  proof that Courts might require and have required in other

15  cases in order to (indiscernible) the Court their claim.  And

16  plaintiffs' allegation in -- with respect to those claims is

17  that the failure to accommodate has had a disparate impact,

18  because all or substantially all individuals who were

19  pregnant or breastfeeding would have needed those

20  accommodations and were denied them and that caused harm.

21         So I want to be clear that we're not conceding that

22  the plaintiffs can't prove this per se, just based on the

23  theory that the policies affect all or most pregnant or

24  breastfeeding people, but no one else.  The Courts have

25  frequently required plaintiffs in those types of cases to

24

1  make some kind of statistical showing regarding the

2  consequences of the challenged policy, and that's even shown

3  by the cases that the defendant has cited in its submission.

4         So to be clear, again, the defendant appears to be

5  taking the position that the plaintiff -- the information

6  that the plaintiffs have sought is not relevant to their

7  claims, because the plaintiffs are not required to make that

8  type of statistical showing as to the consequences of the

9  policies, but -- and if that's so, you know, certainly it

10  goes both ways:  The defendant would also have to concede

11  that that type of showing as to consequences is irrelevant to

12  Frontier's defenses and agree to waive any such defenses.

13  But even so that might make the case simpler to brief, but we

14  would still need the data, because Courts might require

15  plaintiff to -- the Court might ultimately require plaintiff

16  to make that showing.

17         So with respect to the consequences, specifically

18  the information sought is aimed at just demonstrating what

19  those consequences look like.  So it would allow plaintiffs

20  to attempt to prove, for example, that pilots who have been

21  pregnant or breastfed needed accommodation at a greater rate

22  than those who didn't -- who haven't been; that they sought

23  medical leave at higher rates than those who were not

24  pregnant or breastfeeding; that, you know, rates of pay or

25  salary were lower on average than those who had not

25

1   experienced pregnancy or breastfed; that they were promoted

2   at a lower rate, or that they were discharged or separated

3   from the company at higher rates.

4            So those are the type of consequences that our

5   discovery requests are attempting to get at, to assess the

6   impact on pilots who have been pregnant or breastfed as

7   compared to Frontier pilots overall who have not, and it is

8   not limited to other employees who have requested an

9   accommodation and to limit the discovery in that, again -- in

10  a way would essentially convert the disparate impact claims

11  into disparate treatment claims and could potentially prevent

12  the plaintiff from making the showing that a Court might

13  ultimately require.

14           And coming back to the point that I opened with,

15  the defendant shouldn't be allowed to limit the scope of

16  discovery in light of the clear relevance of the data that's

17  sought to the plaintiffs' claims.

18           THE COURT:  Okay, thank you.

19           You know, ultimately it was my hope to issue

20  rulings today to help you all move the ball forward, because

21  I think this case has stalled out a little bit based on these

22  discovery disputes and timing related to them, but I do

23  believe this issue is nuanced enough that I do need

24  additional briefing on it.  I think you all have touched upon

25  some of it in the briefs you've submitted, but I think I

26

1  would like briefing that is directed specifically at this

2  particular issue.

3          It is the case that I and my colleagues, and -- but

4  I recall a few weeks ago issuing -- making a discovery ruling

5  regarding what was the appropriate unit for purposes of

6  discovery in a disparate impact claim.  It did not involve

7  pregnancy, but it is the type of ruling that we make for

8  purposes of discovery, and so I want to make sure that I slow

9  down here and get the best information from you all as I can

10  so I can take a look at that issue as regard to these

11  particular claims and the particular comparators that the

12  plaintiffs seek to avail themselves of in discovery.

13          So I think I'm going to benefit from additional

14  briefing, ultimately, and I think there's some things that

15  are potentially nuanced here, just hearing you all make your

16  arguments today, that I don't feel it would be -- I would be

17  in a good position to rule from the bench on this issue and

18  because it is a particularly important issue, I feel, in

19  terms of what it means for setting the course for discovery

20  or helping you all to resolve the current impasse you're at

21  with the pending discovery disputes.

22          And I also feel -- you know, sometimes I have

23  parties do simultaneous briefs, but I think this might be an

24  issue that's better to have a traditional pleading.  So a

25  motion filed by a -- a response filed by -- followed by a

1    reply.

2           So perhaps the best way to tee that up is Ms.

3    Kitson indicated she'd like to file a motion for a protective

4    order.  Perhaps that's the best way to tee this particular

5    issue up.

6           Ms. Sherwin, do you have questions about that?

7           MS. SHERWIN:  Your Honor, my only question is

8    whether it would be more appropriate for the plaintiffs to

9    file a motion to compel since it is, you know, the defendant

10   is refusing to produce the information sought.

11          THE COURT:  I'm not sure.  I mean, it's -- it might

12   be six-in-one.  I'm not sure.

13          Ms. Kitson, do you have a view?

14          MS. KITSON:  Well, Your Honor, obviously both of us

15   want the right of a reply.  Perhaps if Frontier could have a

16   brief sur-reply within just a few days of when the reply is

17   submitted then we wouldn't have an objection to the

18   plaintiffs going first, if that makes sense.

19          I prefer to file a motion under 26(c) for

20   protective order.  I feel like that's the proper procedure,

21   but as I said, I think it's just an issue of who has the last

22   reply brief.

23          THE COURT:  Ms. Sherwin, did you hear that?

24          MS. SHERWIN:  Yes, I did, and I think that would

25   make sense and we might style it as a cross -- you know, a

1   cross-motion to compel in the context of just the sur-reply.

2            THE COURT:  I'm sorry, say that again?

3            MS. SHERWIN:  We could also style it as a

4   cross-motion to compel and that would, you know,

5   automatically grant us the right to a reply if Your Honor is

6   open to that.  But, you know, Your Honor as long as we have

7   the opportunity to do a sur-reply, I think it does not --

8   it's not openly going to make too much of a difference.

9            THE COURT:  Okay.  And so you wouldn't oppose a

10  sur-reply by the defendants if you filed a motion to compel?

11           MS. SHERWIN:  I think that's right, Your Honor.  We

12  would each get, you know, whatever the full opportunity would

13  be for briefing.

14           THE COURT:  Okay.  And Ms. Kitson, that works for

15  you?

16           MS. KITSON:  Yes, Your Honor.

17           THE COURT:  Okay, then let's do that.  I'll

18  authorize the plaintiffs to file a motion to compel and

19  please be sure these -- to make sure we're all on the same

20  page, I think the focus of these -- the pleadings here is on

21  this issue of the comparators, with my understanding

22  currently being that the defendants' -- the plaintiffs'

23  position is the appropriate comparators are all pilots and

24  the defendants' position being that the appropriate

25  comparators are pilots who've sought particular types of

29

1   accommodations based on conditions that would cause them to

2   not be able to perform the job or sought leave for those

3   types of reasons, and so I want to make sure your briefing

4   and arguments are focused on that particular issue.

5          And I think what's part and parcel of that is if

6   there are cases that draw any distinction or address the

7   issue of whether this is different when a Court is analyzing

8   the issue for discovery purposes versus analyzing the issue

9   on the merits, say, in a motion for summary judgment.  So

10  that should in -- that discussion should be included in your

11  respective arguments.

12         So I'll authorize that motion.  I will authorize

13  the defendant to file a sur-reply.

14         And Ms. Sherwin, Ms. Jonat, do you think you can

15  get that motion on file on or before a week from today?

16         MS. JONAT:  Yes, Your Honor, we can do that.

17         THE COURT:  Okay.  So the motion to compel should

18  be filed on or before August 20, 2021.  I'll shorten the

19  timeframe for the response to ten days for the responsive

20  pleading, seven days for the reply, and seven for the

21  sur-reply.  And perhaps -- I'll order counsel as well to

22  jointly e-mail Chambers after the filing, or with the filing

23  the sur-reply just to ping my Chambers that the matter is

24  fully briefed and I'll endeavor to take it up as quickly as

25  possible to get you all a response or a ruling so that you

1    can be on your way with discovery.

2              Ms. Kitson, are there any questions about that

3    approach?

4              MS. KITSON:  No.  Thank you, Your Honor.

5              THE COURT:  All right.  Ms. Sherwin, any questions

6    -- or Ms. Jonat, any questions from you about that approach?

7              MS. SHERWIN:  No.  Thank you, Your Honor.

8              THE COURT:  Okay.

9              MS. JONAT:  Your Honor, if I may.  This is Ms.

10   Jonat.  Just circling back to the timeframe issue, I'd like

11   to request, you know, to the extent that there are a number

12   of outstanding discovery requests that don't pertain to the

13   comparator universe, would Your Honor be willing to make a

14   ruling that the relevant timeframe is 2010 in the interest

15   of, you know, we would like to move forward with exchanging

16   documents and try to substantially complete our production?

17             THE COURT:  Yeah.  Ms. Kitson, is that a ruling I

18   can make on a timeframe that will aid at least completion of

19   some of the other outstanding issues?

20             MS. KITSON:  Your Honor, Frontier has no objection

21   to a relevance ruling.  I think we would like to reserve our

22   rights with respect to proportionality.  If we find that

23   there are, like I said, 100,000 documents in that timeframe

24   or such that -- as long as we could make a further motion or

25   -- for protective order later if that turns out to be the

1   case.  Relevance we have no issue with.

2          THE COURT:  Okay, I think that's fair.  And in

3   fairness to the -- for me as well, I think I'm making this --

4   the relevance ruling on the timeframe of -- maybe a little

5   bit in a vacuum to the extent that it -- I'm not making this

6   ruling while referring to specific written discovery

7   requests, but that being said, the relevant timeframe the

8   Court finds is January 1 of 2010 to December 31 of 2020.

9          MS. JONAT:  Thank you, Your Honor.

10          THE COURT:  All right.  Any other issues we need to

11   or should take up today?  Ms. Jonat?  Ms. Sherwin?

12          MS. JONAT:  Not from the plaintiff.

13          THE COURT:  All right.  Ms. Kitson?

14          MS. KITSON:  No, Your Honor.  Thank you.

15          THE COURT:  All right.  Counsel, thank you for your

16   time.  I appreciate it, we'll adjourn.

17          (Whereupon, the within hearing was then in

18   conclusion at 10:43 a.m.)

19

20

21

22

23

24

25

32

1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    August 19, 2021

8    Signature of Transcriber           Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25