**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:19-cv-03468-CMA-SKC

RANDI FREYER, et al.,

       Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

       Defendant.

---

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL COMPARATOR DATA [ECF NO. 116]**

---

Defendant Frontier Airlines, Inc. ("Defendant") files this Response in Opposition to Plaintiffs' Motion to Compel Comparator Data [ECF No. 116], stating as follows:

**I.  INTRODUCTION**

Plaintiffs move to compel based on seven sweeping discovery requests seeking information and documents for **all** Frontier pilots company-wide over an eleven-year period (2010 – 2020):

- Dates of Hire[1]
- Pay Grades[2]
- Dates of Pay Grade Changes[3]
- Amounts of New Pay Grades[4]
- Total Number of Hours Worked Each Year[5]

---

[1] *See* Exhibit A (Discovery Requests in Dispute for the Court's August 13, 2021 Discovery Hearing), Interrogatory No. 6.
[2] *See* Ex. A, Interrogatory No. 6.
[3] *See* Ex. A, Interrogatory No. 6
[4] *See* Ex. A, Interrogatory No. 6.
[5] *See* Ex. A, Interrogatory No. 6.

- Dates of Separation of Employment[6]
- Reasons for Separations of Employment[7]
- Any Disciplinary Actions[8]
- The Dates of Conduct Prompting Disciplinary Actions[9]
- The Nature of the Conduct Prompting Disciplinary Actions[10]
- The Nature of Any Promotion(s) Offered[11]
- Whether Any Offered Promotions Were Accepted or Declined[12]
- Reasons for Any Declinations of Promotion Offers[13]
- Production of All Documents Concerning Any Separations of Employment[14]
- Production of All Documents Concerning Any Disciplinary Actions[15]

Plaintiffs do not deny that for purposes of their claims, to be proper comparators, Frontier pilots must be "similar in their ability or inability to work." Yet in the same breath, Plaintiffs also claim that they are entitled to data concerning "all pilots" with respect to their disparate impact claims and at least "all pilots" who requested any type of accommodation for any reason at all with respect to their disparate treatment claims. Plaintiffs' inconsistent positions are untenable, unsupported by the law, and contradicted by their own allegations as set forth in their Complaint [ECF #1].

For purposes of discovery, the appropriate comparators for Plaintiffs' claims, including their Pregnancy Discrimination Act ("PDA") claims as well as their claims brought under Colorado's Workplace Accommodations for Nursing Mothers Act ("WANMA") and Pregnant Workers Fairness Act ("PWFA"), <u>at a bare minimum</u>, must be Frontier pilots who (1) were not pregnant or experiencing a pregnancy-related condition,

---

[6] *See* Ex. A, Interrogatory No. 8.
[7] *See* Ex. A, Interrogatory Nos. 8, 17.
[8] *See* Ex. A, Interrogatory No. 14.
[9] *See* Ex. A, Interrogatory No. 14.
[10] *See* Ex. A, Interrogatory No. 14.
[11] *See* Ex. A, Interrogatory No. 19.
[12] *See* Ex. A, Interrogatory No. 19.
[13] *See* Ex. A, Interrogatory No. 19.
[14] *See* Ex. B, Request for Production No. 8.
[15] *See* Ex. B, Request for Production No. 14.

but who (2) were unable to work due to their own physical limitations or restrictions of some kind without some form of accommodation.

In any event, the Court should not be persuaded by Plaintiffs' proposition that the comparator universe cannot be limited at the discovery stage of litigation proceedings—specifically, their argument that ruling on the appropriate comparator universe at this stage will somehow prevent Plaintiffs from proving their case at summary judgment or trial. Pursuant to Federal Rule of Civil Procedure 26(a)(1), courts **must** rule on relevance issues presented in discovery, and the proper scope of comparators for purposes of discovery is a relevance issue. Courts routinely rule on discovery disputes like this one concerning proper comparators. The Court should deny Plaintiffs' Motion to Compel.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs served discovery requests on Defendant, seeking, among other information and documents, data for **all Frontier pilots** regarding pay, separation/termination, promotions, discipline, and accommodations. Defendant objected to Plaintiffs' requests on the grounds of relevance and burden, among other bases. Counsel for the parties conferred on multiple occasions regarding Defendant's objections to the scope of comparator data sought by Plaintiffs. Ultimately, the Court requested written submissions regarding the dispute and held a hearing on August 13, 2021 regarding same. During that hearing, the Court ordered the parties to submit formal briefing on the scope of comparator data sought. In compliance with that Order, Plaintiffs submitted their Motion to Compel [ECF #116] on August 27, 2021.[16]

---

[16] During the hearing, the Honorable Magistrate Judge S. Kato Crews specifically defined the issue to be addressed by the parties in their briefs as the scope of comparators. *See* ECF #116-6 at 28:17-29:4 ("to make sure we're all on the same page, I think the focus of these – the pleadings here is on the issue of comparators, with my understanding currently being that the…plaintiffs' position is that the appropriate

3

### III. LEGAL STANDARD

A party may move for an order compelling discovery pursuant to Rule 37(a)(1). "'The party moving to compel discovery must prove that the opposing party's answers are incomplete[,]'" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1).'" *Radulescu v. W. Union Co.,* No. 19-CV-03009-CMA-SKC, 2021 WL 1978776, at *2 (D. Colo. May 18, 2021). "Ultimately, '[t]he administration of the rule[ ] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit.'" *Id*.

### IV. ARGUMENT

#### A. The Scope Of Discovery Is Not Unlimited.

"Rule 26 permits discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense,[17] while the proportional needs of the case serve as guardrails for further reasonably tailoring the scope of discovery." *Id.* (emphasis added), citing Fed. R. Civ. P. 26(b)(1). "Evidence is considered relevant if: "(a) it has any tendency

---

comparators are all pilots and the defendants' position being that the appropriate comparators are pilots who've sought particular types of accommodations based on conditions that would cause them to not be able to perform the job or sought leave for those types of reasons, and so I want to make sure your briefing and arguments are focused on that particular issue.") (emphasis added). Because of that, Defendant refrains from addressing Plaintiffs' arguments clearly (and inappropriately) directed to proportionality and burden, tailoring its argument instead to the specific issue as defined by the Court. *See* Mot. at 14-15.

[17] The amendments to Rule 26, effective December 1, 2015, purposefully removed the phrase "reasonably calculated to lead to admissible evidence" from the permissible scope of discovery under Rule 26. The Advisory Committee on the Federal Rules of Civil Procedure was "concerned that parties and courts had incorrectly used the phrase to expand the scope of discovery to a point where the scope "might swallow any other limitation." *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.,* No. 18-CV-01322-JLK-NYW, 2019 WL 11868519, at *3 (D. Colo. July 19, 2019), (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). Significantly, <u>many</u> of the cases cited by Plaintiffs are outdated and based on the defunct version of the Rules. *See, e.g.,* Mot. at 12-13 (citing to *EEOC Warshawsky & Co.*, 768 F. Supp. 647, 655 (N.D. Ill. 1991).

4

to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.,* No. 18-CV-01322-JLK-NYW, 2019 WL 11868519, at *5 (D. Colo. July 19, 2019). "Consequential facts are those that prove elements of claims and defenses asserted in the pleadings" and thus, Courts often "**look to the pleadings to determine relevance**." *Johns Hopkins Univ. v. Datascope Corp.,* No. WDQ-05-759, 2007 WL 1450367, *1 (D. Md. May 16, 2007) (emphasis added); *see also, Richards v. City of Atlanta, Georgia,* No. 119CV03963WMRRDC, 2021 WL 3056851, at *3 (N.D. Ga. Jan. 15, 2021) ("Plaintiff bears the initial burden of showing that the information sought is relevant, and **relevance here is anchored by her claims**.") (emphasis added).

"The Tenth Circuit has endorsed the Supreme Court edict that 'the requirement of Rule 26(b)(1) that **the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery** [to protect] 'a party or person from annoyance, embarrassment, [or] oppression.'" *Nichols v. Denver Health & Hosp. Auth.,* No. 19-CV-02818-DDD-KLM, 2020 WL 5517355, at *10 (D. Colo. Sept. 14, 2020) (emphasis added).

1. **Courts Routinely Identify The Relevant Comparator Universe For Purposes Of Discovery.**

Identifying the appropriate scope of the comparator universe with respect to Plaintiffs' claims for purposes is not premature as Plaintiffs contend.[18] Courts routinely rule on scope of comparators relevant to a plaintiff's Title VII claims in discovery when a

---

[18] Plaintiffs cite *Deluca v. Sirius Xm Radio, Inc.*, No. 12-CV-8239, 2016 WL 3034332, at *2 (S.D.N.Y. May 27, 2016) for the proposition that the court in that case granted a motion to compel as to "potential comparators." Mot. at 4. Again, however, the court only partially granted the motion, denying it as to certain purported comparators as defined by the plaintiff. *See id.* Further, the *Deluca* court was primarily evaluating the relevant time period for the comparator universe, which is not at issue in the present motion.

5

plaintiff seeks circumstantial evidence to prove discrimination, including that the defendant treated similarly-situated comparators differently than the plaintiff.[19] *See, e.g., Arms v. Milwaukee Cty.,* No. 18-CV-1835, 2020 WL 5292146, at *2 (E.D. Wis. Sept. 4, 2020) (refusing to compel defendant to produce personnel files for certain individuals who plaintiff alleged were comparators because plaintiff failed to show that they were "appropriate comparators" and failed to demonstrate "anything relevant" was "likely to be found" in those files); *Garner v. St. Clair Cty., Illinois,* No. 15-CV-535 JPG-DGW, 2016 WL 146691, at *3 (S.D. Ill. Jan. 13, 2016) (refusing to compel defendant to produce documents and information beyond that concerning employees who worked in the same division as plaintiff and held "to the same performance, qualifications, and conduct standards"); *King v. Nw. Cmty. Hosp.,* No. 09 C 5903, 2010 WL 11712048, at *1 (N.D. Ill. Apr. 19, 2010) (ruling on a motion to compel concerning "several discovery requests designed to elicit information regarding similarly situated employees"); *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24 (D.D.C. Jan. 16, 2018) (denying plaintiff's motion to compel with respect to a discovery response that would encompass information concerning employees who were not similarly situated to plaintiff); *Richards v. City of Atlanta, Georgia,* No. 119CV03963WMRRDC, 2021 WL 3056851, at *7 (N.D. Ga. Jan. 15, 2021) (ruling on parties' dispute concerning the scope of comparator discovery); *Greenwood v. Nationwide Mut. Ins. Co.,* No. 17 C 3745, 2018 WL 11268502, at *3 (N.D. Ill. Mar. 5, 2018)

---

[19] Plaintiffs cite to *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511 (10th Cir. 1995) for the general proposition that "discovery in discrimination cases should not be narrowly circumscribed." Mot. at 2, 4. The *Gomez* court went on to state, however, that "this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Ultimately, the Tenth Circuit in *Gomez* upheld the district court's denial of the discovery sought, holding that "[a]lthough Mr. Gomez did not receive all the material he sought, he was provided abundant discovery." *Id*.

(internal citation omitted) (refusing to compel the production of personnel documents for individuals the court concluded were not similarly situated to plaintiff).[20]

### B. Plaintiffs Misconstrue The Comparator Universe Proposed By Defendant.

Plaintiffs mispresent and misconstrue the scope of comparators Defendant has proposed. *See* ECF #116 at p. 6.[21] Contrary to Plaintiffs' accusation that Defendant is seeking to limit discovery "to only a narrow and insufficient slice of the data requested," as explained in greater detail in Section IV.C *supra*, Defendant has identified a comparator universe for purposes of discovery that is arguably broader than what the law requires—specifically all pilots over the relevant time period who were unable to work due to their own physical limitations or restrictions of <u>any</u> kind without <u>some</u> form of accommodation,[22] regardless of (i) whether their medical condition actually rendered them similar to Plaintiffs in the type of work restrictions imposed or form of

---

[20] Plaintiffs cite to *Davis v. Infinity Ins. Co.*, No. 2:15-CV-01111-JHE, 2019 WL 12424674, at *3-4 (N.D. Ala. Apr. 30, 2019) for the proposition that the court in that case purportedly granted a motion to compel the production of personnel files. Mot. at 4. In doing so, Plaintiffs misrepresent the rulings in *Davis*. While the court in that case did partially grant a motion to compel, critically, the court also <u>denied</u> the motion as to certain protected characteristics and departments that the court did not consider to be relevant. *See, e.g., id.* (denying motion to compel as to "the races of employees in the Customer Services Department": "[T]he racial composition of the employees remains irrelevant to [the plaintiff's] disparate impact claim.").

[21] Contrary to Plaintiffs' Motion, the transcript from the parties' hearing on August 13, 2021 and the August 17, 2021 email from Plaintiffs' counsel to Defendant's counsel, which merely memorializes Plaintiffs' counsel's understanding of a conferral call the week prior, do not support Plaintiffs' contention that Defendant has proposed a more narrow comparator universe than that which the law requires or has proposed inconsistent versions of the appropriate comparator universe. *See* ECF #116-6 at 16:11-15 ("And the disparity in the seminal case, *Young v. UPS* in 2015, and more recently the Courts have said that the disparity is between pregnant women and non-pregnant employees similar in their ability or inability to work…And then the cases in recent years have said, that means it has to be **something bearing on the individual's physical ability to work in terms of any medical conditions, physical restrictions, and the like**. So that would be Frontier's position.") (emphasis added); ECF #116-7 ("Danielle, I'm writing to memorialize our meet and confer last week. As to the comparator data, **here is our understanding**…") (emphasis added). Regardless, counsel's compromise efforts in conferrals are not binding, and do not alter how courts have defined the appropriate comparator universe for pregnancy discrimination claims.

[22] The Court ruled that for purposes of discovery, the relevant timeframe is January 1, 2020 to December 31, 2020, subject to any arguments concerning proportionality or burden with respect to specific discovery requests. See ECF #116-6 at 11:23-12:24.

accommodations sought; (ii) who they reported to, (iii) where they were located, or (iv) whether any injury suffered occurred on or off the job—all factors Defendant could have used to further limit the comparator universe.[23] *See Freppon v. City of Chandler*, 528 F. App'x 892 (10th Cir. 2013) (plaintiff was not similarly situated to two male police officers accommodated with light duty assignments because plaintiff's condition (i.e. pregnancy) did not result from an on-the-job injury like the male officers); *Trujillo,* 349 F. App'x at 365 ("employees are 'similarly situated' only if they deal with the same supervisor and [are] subject to the same standards governing performance evaluation and discipline") (internal citation and quotation omitted); *see also, Mento v. Potter,* Civ. No. 08-74S, 2012 WL 1908920, at *9 (W.D.N.Y. May 25, 2012) (concluding women who were not pregnant, as opposed to only men, were appropriate comparator employees).

### C.     Pilots Who Were Not Experiencing Their Own Physical Restrictions Or Medical Conditions Are Not True Comparators.

Plaintiffs' insistence that all non-pregnant/non-lactating pilots are the appropriate comparators for purposes of their PDA claims disregards the phrase "similar in their ability or inability to work," rendering it superfluous.[24] *See, e.g., Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1352, 191 L. Ed. 2d 279 (2015) ("We have long held that a statute ought, upon the whole, to be so construed that, if it can be prevented, no

---

[23] As a further offer of compromise, Defendant additionally offered to produce information and documents for any pilot who formally requested an accommodation and engaged in the interactive process with respect to any type of limitation, whether related to the pilot's own physical restriction or not, e.g., requests for religious accommodation.  That offer was made as a good-faith compromise effort, and not as a concession as to relevance.

[24] Plaintiffs cite *E.E.O.C. v. Warshawsky & Co.*, 768 F. Supp. 647 (N.D. Ill. 1991) to support their argument that the comparator universe should be broader, but *Warshawsky* was decided over two decades before *Young*, and does not take into account Young's pronouncement that "the [PDA] requires courts to consider the extent to which an employer's policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work."  575 U.S. at 210 (emphasis added).  Nor is *Warshawsky* in line with far more recent precedent. *See infra.*

clause is rendered superfluous, void, or insignificant."). Pursuant to the PDA, "employers must treat 'women affected by pregnancy the same for all employment-related purposes as other persons not so affected but **similar in their ability or inability to work**." *Id.* (quoting § 2000e(k)).

Had Congress sought to define the appropriate comparators in a PDA case as anyone not pregnant/not affected by pregnancy, it would have stopped at "as other persons not so affected." Instead, Congress added "but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). This Court has previously interpreted that phrase to mean other workers experiencing **disabilities, injuries, or other medical conditions** rendering them similarly able or unable to work as pregnant workers/workers experiencing pregnancy-related conditions. *See Gooch v. Meadowbrook Healthcare Servs. of Fla., Inc.,* 77 F.3d 492, n.2 (10th Cir. 1996) ("The [PDA] 'makes clear that it is discriminatory to treat pregnancy-related conditions less favorably **than other medical conditions.**'"), quoting *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 684 (1983); *see also, Falk v. City of Glendale,* No. 12-CV-00925-JLK, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) (same); *Anderson v. Cato Corp.,* 444 F. App'x 280, 283 (10th Cir. 2011) ("A woman unable to work for pregnancy-related reasons is entitled to disability benefits or sick leave on the same basis as employees unable to work **for other medical reasons.**"), citing 29 C.F.R., Pt. 1604, App. ("Written or unwritten employment policies and practices…shall be applied to disability due to pregnancy, childbirth or related medical conditions on the same terms and conditions as they are applied **to other disabilities.**"); *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 (10th Cir. 2000) ("The better approach would be to hold that a plaintiff has

satisfied the fourth element of her prima facie case by showing that she was treated differently than a **non-pregnant, temporarily-disabled employee.**") (emphasis added); *Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487, 1493 (D. Colo. 1997) (plaintiff offered no evidence "of difference treatment of males who took medical leaves").

In addition, the Supreme Court and other jurisdictions have suggested a similar interpretation. *Young,* 135 S. Ct. at 1355 (explaining that the plaintiff in a PDA case can demonstrate an employer's proffered reasons for disparate treatment are pretext for pregnancy discrimination by "providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers," explaining "Here, for example, if the facts are as *Young* says they are, she can show that UPS accommodates most **nonpregnant employees with lifting limitations** while categorically failing to accommodate pregnant employees with lifting limitations."); *LaBarbera v. NYU Winthrop Hosp.,* No. 218CV6737DRHSIL, 2021 WL 980873, at *13 (E.D.N.Y. Mar. 16, 2021) ("The identification of comparators "similar in the[ ] ability or inability to work" involves just that: discerning the extent to which **accommodated employees' limitations resemble the plaintiff's**…All that matter[s] [i]s that the comparator was accommodated **for a similar limitation**."); *Townsend v. Town of Brusly,* 421 F. Supp. 3d 352, 363 (M.D. La. 2019) ("The sole basis for comparison under *Young* is the similarity in the physical restrictions of the employee and need for similar accommodations."); *EEOC v. Wal-Mart Stores E., LP*, No. 18-cv-783-bbc, 2021 U.S. Dist. LEXIS 31099, at *25 (W.D. Wis. Feb. 19, 2021) ("In contrast to Title VII's more general comparator analysis, 'the comparator analysis under the [Pregnancy Discrimination Act] focuses on a single criterion—one's ability to do the job.'"); *Abbott v.*

*Elwood Staffing Servs*., 44 F. Supp. 3d 1125, 1160 n.41 (N.D. Ala. 2014) (co-worker was no a relevant comparator where "there was no evidence that [he] had similar work restrictions as the plaintiff"); *Waite v. Board of Trustees of the Univ. of Ala.*, No. 2:16-cv-01244-JEO, 2018 U.S. Dist. LEXIS 187933, at *43 (N.D. Ala. Nov. 2, 2018) ("Title VII, as amended by the PDA, does not prohibit discrimination based on pregnancy per se; it prohibits employers from treating pregnant employees worse than non-pregnant employees who are **similarly restricted** in their ability or inability to work.") (emphasis added); *Legg v. Ulster County,* 832 F. App'x 727, 731 (2d Cir. 2020) (disparate impact claim failed where pregnant women could not prove that non-pregnant employees similar in their ability or inability to work were disproportionately impacted).

Therefore, contrary to Plaintiffs' contention that the comparator universe includes "all pilots," the proper universe of comparators with respect to Plaintiffs' PDA claims is Frontier pilots who are not pregnant or experiencing pregnancy-related conditions, but experiencing their own physical restrictions or medical conditions rendering them similar to Plaintiffs with respect to their alleged ability or inability to work.

> **1. Plaintiffs' Claims All Concern Accommodations Related To Pregnancy And Pregnancy-Related Conditions, Which Are Indisputably Medical In Nature.**

Curiously, Plaintiffs contend that allegations concerning pumping inflight are "not tied to" a medical condition requiring accommodation and therefore, that they are entitled to information concerning all pilots—not just those experiencing non-pregnancy related disabilities, injuries, or health conditions necessitating an accommodation. *See* ECF #116 at p. 7 ("Plaintiff's Claims Related to Pumping During Flight Are Not Tied To Medical Accommodations."). This argument, however, is baseless and undermined by Plaintiffs' own Complaint. *See Johns Hopkins Univ.*, 2007 WL 1450367 at *1 (Courts often "look to

11

the pleadings to determine relevance"); *Richards*, 2021 WL 3056851 at *3 ("relevance here is anchored by [plaintiff's] claims."). Pregnancy and lactation—the conditions prompting Plaintiffs' requests for accommodation—are indisputably medical conditions experienced by women pre- and post-partum, as acknowledged by Plaintiffs in their Complaint, and the breast pumps they sought to use to express breastmilk during breaks inflight are indisputably medical devices. ECF #1 at ¶ 24 ("Lactation arises following and as a direct result of pregnancy and childbirth due to hormones secreted in the body during and after birth"); Breast Pumps, U.S. Food & Drug Administration, *available at* https://www.fda.gov/medical-devices/consumer-products/breast-pumps ("Breast pumps are medical devices regulated by the FDA") (last visited Sept. 6, 2021).

As demonstrated by Plaintiffs' own Complaint, Plaintiffs' allegations concerning pumping and the need to use breaks to express breast milk indisputably concern the need for accommodations. *See* ECF #1 at ¶ 274 (Defendant "has maintained a policy, pattern, or practice of prohibiting pilots **who request accommodations** related to breastfeeding from using physiological needs breaks to express breast milk during flight"); ¶ 279 ("As a result of Defendant's policy, pattern, or practice of prohibiting pilots **who request accommodations** related to breastfeeding from using physiological needs breaks to express breast milk during flight, virtually all pilots who are breastfeeding when they return to work have suffered detrimental effects due to the absence of **necessary accommodations**."); ¶ 275 ("Defendant's policy, pattern, or practice of **refusing to accommodate** pilots who are breastfeeding has a disparate impact.") (emphasis added).

Plaintiffs insist that they are entitled to "information related to relevant policies and disciplinary actions against all pilots who took breaks during flight for any reason" [ECF

#116 at p. 7]. Not so. The appropriate comparators with respect to physiological needs breaks are those pilots who were <u>unable to work</u> based on physiological needs without some form of accommodation—individuals necessarily encompassed by the comparator class advanced by Defendant. Plaintiffs' own Complaint agrees. *See* ECF #1 at ¶ 350 ("Defendant's refusal to engage in an interactive process with or to provide reasonable accommodations to Plaintiffs during the period when they are breastfeeding, **while doing so for other workers whose injuries or conditions are unrelated to pregnancy but who are similar in their ability or inability to work,** constitutes disparate treatment.").

### 2. Plaintiffs' Disparate Impact and Disparate Treatment Claims Do Not Warrant Different Comparator Classes.

Plaintiffs contend that "all pilots," if not the appropriate comparator universe for Plaintiffs' disparate treatment claims, is the appropriate comparator universe for their disparate impact claims. However, Plaintiffs' disparate treatment claims and disparate impact claims are based upon the same policies, accommodations sought, and alleged misconduct and most significantly, are a means to the same end–proving pregnancy discrimination in violation of the PDA, which as explained in Section IV.C *supra,* occurs when an employer fails to treat women "affected by pregnancy the same for all employment-related purposes as **other persons not so affected but similar in their ability or inability to work**.'" *Id.* (quoting § 2000e(k)) (ellipses omitted). Thus, for the same reasons set forth in Section IV.C *supra*, the appropriate comparator universe for Plaintiffs' PDA claims, both those alleging disparate treatment and those alleging disparate impact, is pilots who (1) were not pregnant or experiencing a pregnancy-related condition, but who (2) were unable to work due to their own physical limitations or restrictions of some kind without some form of accommodation. *See, e.g.,*

13

*LaBarbera*, 2021 WL 980873 at *19 ("[T]o establish a prima facie case, a plaintiff pursuing a disparate impact claim under the [PDA] must demonstrate, at a minimum, that some pregnant women are 'similar in their ability or inability to work' to non-pregnant comparators **receiving the accommodations** sought by the plaintiff.").

### D. Plaintiffs' WANMA And PWFA Claims Should Be Subject To The Same Comparator Universe As Plaintiffs' PDA Claims.

In contrast to their PDA claims, Plaintiffs appear to concede that with respect to their WANMA and PWFA claims, the appropriate comparator universe should be limited to pilots who sought and/or were provided with accommodations. *See* ECF #116 at p. 9 ("Plaintiffs' WANMA and PWFA claims also require discovery of nonmedical accommodations…An employers' obligations under WANMA and PWFA do not depend on a comparison to others similar in their inability to work, but rather are an independent, affirmative obligation to provide accommodations so long as they are either 'reasonable,' under WANMA, or do not impose 'an undue hardship,' under PWFA."). Plaintiffs, however, cite no case law supporting their entitlement to information concerning pilots who requested any type of accommodation, regardless of the reason, or to any comparator information at all with respect to these claims. WANMA provides:

> (1) An employer shall provide reasonable unpaid break time or permit an employee to use paid break time, meal time, or both, each day to allow the employee to express breast milk for her nursing child for up to two years after the child's birth.
>
> (2) The employer shall make reasonable efforts to provide a room or other location in close proximity to the work area, other than a toilet stall, where an employee can express breast milk in privacy.

C.R.S. § 8-13.5-104 (1) and (2). While Plaintiffs claim that "Evidence that an accommodation has been granted in the past is highly relevant to the inquiry as to whether

the accommodation is reasonable," that fact is only true if the accommodation granted is one required by WANMA. *See* ECF #116 at p. 9. For example, the fact that Defendant provided a non-pregnant/non-lactating pilot who was not experiencing any disability, injury, or medical condition with a personal leave of absence does not have a tendency to make it more or less probable that Defendant violated WANMA by failing "to make reasonable efforts to provide a private room or location…for employees to express breast milk" and failing "to make reasonable efforts to provide reasonable unpaid break time or permit Plaintiffs to use paid break time, meal time, or both." ECF #1 at ¶¶ 285-286.

Further, while Plaintiffs claim in their Motion that an employer's obligation under PWFA "do[es] not depend on a comparison to others similar in their inability to work," their own Complaint alleges otherwise: "Frontier engaged in an interactive process with and has provided reasonable accommodations to **pilots with disabilities, injuries, and medical conditions unrelated to pregnancy, childbirth, or lactation, but who are otherwise similar in their ability or inability to work.**" ECF #1 at ¶ 315 (emphasis added); *see also*, ¶ 319 (defining comparators as "other workers whose injuries or conditions are unrelated to pregnancy but who are similar in their ability or inability to work."). Further, given that the purpose of the PWFA is the same as the PDA—to protect employees from discrimination on the basis of pregnancy, childbirth, or related medical conditions—and that the policies, accommodations, and alleged misconduct is the same as that underlying Plaintiffs' PDA claims, the comparator universe should be the same.

## V.   CONCLUSION

Defendant requests that Plaintiffs' Motion to Compel [ECF #116] be denied.

Respectfully submitted this 13th day of September, 2021.

*s/ Danielle L. Kitson*
Danielle L. Kitson
Stephen E. Baumann
Carolyn B. Theis
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: dkitson@littler.com
    sbaumann@littler.com
    catheis@littler.com

*Attorneys for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2021, I electronically filed and served **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL [ECF NO. 116]** via the CM/ECF system, which will send notification of such filing to the following:

Jayme Jonat
Vincent Gregory Levy
Holwell Shuster & Goldberg LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: vlevy@hsgllp.com
       jjonat@hsgllp.com

Galen Leigh Sherwin
ACLU Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-519-7819
Fax: 212-549-2580
Email: gsherwin@aclu.org

Mark Silverstein
Sara R. Neel
American Civil Liberties Union-Denver
303 East 17th Street, Suite 350
Denver, CO 80203
Phone: 303-777-5482
Fax: 303-777-1773
Email: msilverstein@aclu-co.org
       sneel@aclu-co.org

*Attorneys for Plaintiffs*

                                        *s/ Joanna Fox*
                                        Joanna Fox, Legal Secretary