**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| RANDI FREYER, BRANDY BECK, ERIN ZIELINSKI, and SHANNON KIEDROWSKI,<br><br>Plaintiffs,<br><br>v.<br><br>FRONTIER AIRLINES, INC.<br><br>Defendant. | Case No. 19-cv-03468-CMA-SKC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL COMPARATOR DATA [ECF NO. 116]** |

Plaintiffs respectfully submit this reply in support of their motion to compel comparator data from Defendant Frontier Airlines, Inc. ("Frontier"), ECF No. 116 ("Mot.").

## INTRODUCTION

In resisting Plaintiffs' discovery requests, Frontier asks that the Court grant Plaintiffs only the "bare minimum," ECF No. 122 ("Opp."), at 2–3, instead of the broad discovery mandated by the Tenth Circuit. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). This "bare minimum" encompasses documents limited to only those other employees *needing accommodations due to physical or medical restrictions*. By inappropriately reducing the analysis to this narrow universe of comparators, Frontier asks the Court to reduce Plaintiffs' numerous claims to a single type of claim and method of proof—disparate treatment claims for failure to accommodate.[1] But beyond those claims, Plaintiffs also assert disparate impact claims for failure to accommodate, which are subject to a distinct method of proof, as well as

---

[1] Of Plaintiffs' thirteen claims, only four are disparate treatment claims for failure to accommodate.

1

claims concerning the discriminatory application of a generally applicable in-flight break policy and claims for violation of employers' affirmative obligations under Colorado's Pregnant Workers Fairness Act ("PWFA") and Workplace Accommodations for Nursing Mothers Act ("WANMA"), none of which hinges on requests for accommodations. To restrict discovery in the manner Frontier seeks would deprive Plaintiffs—and the Court—of the opportunity to assess the full scope of relevant evidence in Frontier's possession, hamstringing Plaintiffs from proving the majority of their claims.

Frontier's arguments that Plaintiffs' discovery requests do not satisfy relevancy rest on an incorrect understanding of the standards governing discovery of comparators and conflate the different methods of proof applicable to Plaintiffs' causes of action. As outlined in Plaintiffs' Motion, Plaintiffs' requests for comparator data are firmly tied to the specific facts of this case and the elements of claims and defenses under Title VII and Colorado Anti-Discrimination Act ("CADA"). Likewise, Plaintiffs' requests are supported by the text and purposes of WANMA and PWFA. Because Frontier has failed to carry its burden of showing that the information sought is not relevant to Plaintiffs' claims, as broadly defined under Fed. R. Civ. P. 26, this Court should grant Plaintiffs' Motion.

## ARGUMENT

### I. Frontier Misstates the Standards Governing Discovery of Comparators

#### A. Frontier's Narrow Reading of Rule 26(b)(1) Defies the Rule's Text, Purpose, and Interpretation

While Frontier attempts to use Fed. R. Civ. P. 26(b)(1) as a magic talisman against discovery, it is not. As courts have appropriately recognized, "the post-2015 rule 26(b) standard for the scope of discovery . . . in employment discrimination cases is still

broad." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 472 (D.N.M. 2018). Nor did the revisions abrogate prior decisions regarding the appropriate scope of discovery in civil rights actions. *Id.* Rather, the revisions were intended to "[r]estor[e] proportionality as an express component of the scope of discovery,"[2] while not penalizing plaintiffs bringing "cases in public policy spheres, such as employment practices." Fed. R. Civ. P. 26(b), advisory committee's note to 2015 amendment. The principle that relevancy is not synonymous with weight or even admissibility remains valid, and relevancy is still gauged based on whether the request has "*any* tendency" to make facts related to Plaintiffs' claims more or less probable. *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.*, No. 18-CV-01322, 2019 WL 11868519, at *5 (D. Colo. July 19, 2019) (emphasis added). The requests at issue here plainly meet that standard.

### B. Courts Regularly Authorize Broad Discovery of Comparators before Determining the Ultimate Comparator Universe

While courts are routinely called upon to establish the appropriate scope of discovery, to narrowly limit the potential comparator universe in the manner Frontier seeks on a motion to compel would be premature. Because in discovery "it cannot be known with certainty" who may ultimately prove to be a "proper comparator," *Lattimore v. Wild Flavors, Inc.*, No. CV 09-23, 2011 WL 13318962, at *2 (E.D. Ky. Apr. 7, 2011), determining the comparator universe first requires an analysis of the pool of *potential* comparators. Yet only Frontier has access to such potential comparator data at this

---

[2] Frontier declines to address Plaintiffs' arguments about proportionality, ostensibly because the parties were directed to focus on the "scope of comparators." Opp. at 3 n.16. But as the text of the rule and advisory committee notes indicate, proportionality considerations inform this scope and are integral to the relevancy dispute.

juncture. This information imbalance between plaintiffs and their employers explains why courts regularly grant discovery of such potential comparators in employment cases. *See, e.g.*, *Davis v. Infinity Ins. Co.*, No. 2:15-CV-01111, 2019 WL 12424674, at *4 (N.D. Ala. Apr. 30, 2019) (granting discovery of comparator files which may "potentially support" the claims); *Deluca v. Sirius Xm Radio, Inc.*, No. 12-CV-8239, 2016 WL 3034332, at *2 (S.D.N.Y. May 27, 2016) (granting plaintiff's motion to compel information on "potential comparators"). It is not for Frontier to "unilaterally define the scope of discovery based upon its own theory of the case." *Hills v. AT&T Mobility Servs., LLC*, No. 3:17-CV-556, 2021 WL 3088629, at *5, *7 (N.D. Ind. July 22, 2021).

Frontier's authorities are not to the contrary and merely stand for the unremarkable proposition that courts may limit discovery of comparators *where appropriate*, such as when the scope of the requests is not relevant to the specific claims and allegations made. None of the cases on which Frontier relies included the same breadth of claims at issue here, nor did they assert either facial challenges to broadly applicable employment policies or disparate impact claims,[3] as Plaintiffs do

---

[3] An exception is *LaBarbera v. NYU Winthrop Hosp.*, No. 2:18-CV-6737, 2021 WL 980873, at *19 (E.D.N.Y. Mar. 16, 2021), which erroneously states that comparators for purposes of disparate impact must also be "similar in ability or inability to work." The *LaBarbera* court relied on dicta from an unreported case and failed to recognize that the focus of the disparate impact analysis is on the *disadvantage to the protected group* compared to the effects on those outside of that group *as a whole. See* Mot. at 12–14 (citing cases). Moreover, *LaBarbera* concerned only a challenge to a single light duty policy and did not entail the breadth and variety of claims asserted here.

4

here. *See* Opp. at 5–6.[4] Moreover, unlike in those cases,[5] Plaintiffs here do not seek information regarding employees with different supervisors or positions, such as ticket agents or baggage handlers; instead, they seek targeted data limited to Frontier's *pilots*.[6] These cases are therefore not analogous.

## II. Plaintiffs' Requests for Comparator Data Are Relevant

In evaluating a motion to compel, this Court should only consider whether the data requested is relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). It is *Frontier*'s burden, as the party resisting discovery, to show the relevancy standard is not met with respect to Plaintiffs' specific claims. *See Anchondo-Galaviz*, 2019 WL 11868519, at *4 (cited in Opp. at 4–5). Frontier has failed to do so.

### A. Frontier's Attempt to Limit Comparator Discovery to Pilots with Physical or Medical Conditions Is Improper

Frontier asserts that the comparator universe for Plaintiffs' claims includes only pilots "unable to work due to their own physical limitations or restrictions of any kind

---

[4] *See, e.g.*, *Greenwood v. Nationwide Mut. Ins. Co.*, No. 17 C 3745, 2018 WL 11268502, at *3 (N.D. Ill. Mar. 5, 2018) (denying discovery as to comparator pay information in individual's ADA suit involving only failure to accommodate and wrongful termination claims) (cited in Opp. at 6–7).
[5] *See, e.g.*, *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24, 31 (D.D.C. 2018) (denying discovery in a case that centered on the plaintiff's specific category of misconduct); *Richards v. City of Atlanta, Georgia*, No. 119CV03963, 2021 WL 3056851, at *4 (N.D. Ga. Jan. 15, 2021) (limiting discovery due to the key role of plaintiff's particular background check results in her termination).
[6] *See, e.g.*, *Arms v. Milwaukee Cnty.*, No. 18-CV-1835, 2020 WL 5292146, at *2 (E.D. Wis. Sept. 4, 2020) (denying comparator discovery as to those with the position *sought* but never previously held by the plaintiff with respect to her claims related to retaliatory discharge) (cited in Opp. at 6); *Garner v. St. Clair Cnty., Illinois* No. 15-CV-535 JPG-DGW, 2016 WL 146691, at *3 (S.D. Ill. Jan. 13, 2016) (denying discovery in a wrongful discharge action as to employees who did not possess "similar qualifications, performance standards or job conduct" to the plaintiff) (cited in Opp. at 6).

without some form of accommodation." Opp. at 7. This distorts the Supreme Court's holding in *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338 (2015), and ignores the relevance of the information sought to Plaintiffs' claims. As explained in Plaintiffs' opening brief, the Court in *Young* made clear that the proper focus is a comparator's ability or inability to work, regardless of the reason. *See Young*, 135 S. Ct. at 1347 (considering employees given light duty for reasons including on- or off-the-job injury and loss of driver's license, rather than only those with lifting restrictions like the plaintiff's); *accord Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1286 (11th Cir. 2020); *Hills v. AT&T Mobility Servs., LLC*, No. 3:17-CV-556, 2021 WL 3088629, at *4–6 (N.D. Ind. July 22, 2021). Provision of accommodations to others, regardless of the reason, is furthermore relevant to whether the justification offered is pretextual. *See Young*, 135 S. Ct. at 1354. But Frontier completely fails to address the relevance of the information sought to any of its potential defenses, including not only the pretext analysis, but also the analysis of whether the challenged policies are supported by bona fide occupational qualifications or, in the case of disparate impact, by business necessity.

The cases Frontier cites for the proposition that comparators must experience medical conditions were decided before *Young* and do not survive its holding. *See, e.g.*, *Anderson v. Cato Corp.*, 444 F. App'x 280, 283 (10th Cir. 2011); *Gooch v. Meadowbrook Healthcare Servs. of Fla., Inc.*, 77 F.3d 492 n.2 (10th Cir. 1996). Frontier's assertion that its proposed comparator universe is "arguably broader than what the law requires," *see* Opp. at 7, is therefore wrong as a matter of law. Furthermore, none of Frontier's authority post-dating *Young* limits discovery in the manner Frontier seeks; rather, these

cases represent determinations as to proper comparators at summary judgment. *See, e.g.*, *Townsend v. Town of Brusly,* 421 F. Supp. 3d 352, 363–64 (M.D. La. 2019) (evidence of other police officers granted light duty was sufficient to defeat summary judgment despite differences in comparators' experience and disciplinary records).

Frontier's sole citation to a case decided in an earlier, motion to dismiss posture actually *supports* Plaintiffs' position. *See Falk v. City of Glendale*, No. 12-CV-00925, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012). In that case, the court dismissed the plaintiff's disparate treatment claim for failure to accommodate her need to pump breast milk because she had failed to allege that other employees, including herself, had been previously granted breaks to use the restroom for other reasons. But the court explicitly noted that "if other coworkers were allowed to take breaks to use the restroom while lactating mothers were banned from pumping, discrimination might exist." *Id.* Plaintiffs have made precisely this allegation here with respect to their claims related to in-flight pumping. Am. Compl. ¶¶ 69–77. Moreover, proving such disparate treatment requires information on all pilots who took breaks, for whatever reason. Because physiological needs breaks, like pumping, are situations in which employees may be temporarily unable to perform their duties, *all* pilots during those breaks are "similar in their . . . inability to work." *Young*, 135 S. Ct. at 1354; *Falk*, 2012 WL 2390556, at *4 ("If lactation is a natural consequence of pregnancy, then expressing milk is equivalent to any other involuntary bodily function.").[7]

---

[7] Contrary to Frontier's argument, Plaintiffs do not claim that pregnancy and breastfeeding are not medical conditions. Mot. at 7. This uncontested fact is irrelevant to the analysis of the appropriate scope of discovery, which here requires analysis of

Next, Frontier's argument that the "shared purpose" of WANMA, PWFA and Title VII necessitates the same, limited comparator universe is baseless and ignores the text and purpose of those statutes. Unlike Title VII and CADA, WANMA and PWFA impose *affirmative obligations* on Frontier to provide accommodations for pregnancy and breastfeeding, even if Frontier has not provided the same accommodations to others. Neither statute refers to employees "similar in their ability or inability to work."[8] PWFA explicitly states that evidence of previously granted similar accommodations is relevant to the inquiry into whether Plaintiffs' requested accommodations impose an "undue hardship"—but nothing in the statute restricts plaintiffs from introducing prior accommodations granted for other reasons. *See* Colo. Rev. Stat. Ann. § 24-34-402.3(4)(c)(II) ("The employer's provision of, or a requirement that the employer provide, a similar accommodation to other classes of employees creates a rebuttable presumption that the accommodation does not impose an undue hardship."). Similarly, WANMA's "undue hardship" defense requires the Court to assess whether efforts to comply with its requirements would impose "an undue hardship on the operation of the employer's business." Colo. Rev. Stat. Ann. § 8-13.5-103(2). Accommodations offered to other employees, regardless of the reason, are thus highly relevant to the presence

---

Frontier's discipline (or lack of discipline) for breaks taken by pilots for *any* reason, regardless of whether the breaks were prompted by medical conditions.

[8] In fact, the Colorado legislature enacted PWFA precisely because "[c]urrent workplace laws," like Title VII and CADA, "are inadequate to protect pregnant women . . . ." H.B. 1438, 70th Gen. Assemb., Reg. Sess. § 1(a) (Colo. 2016). The purpose of PWFA and Title VII/CADA, therefore, are not the "same," Opp. at 15, because PWFA expressly aims to *supplement* existing protections.

or absence of "undue hardship." The text of WANMA and PWFA make clear that discovery of all accommodations—not merely medical accommodations—is relevant.

### B. Plaintiffs' Requests for Discovery of "All Pilots" Seek Information Relevant to Their Disparate Impact and Non-Accommodation Claims

Plaintiffs' requests for certain data concerning "all pilots" are relevant to their disparate impact claims, as well as their claims that do not hinge on requests for accommodations but are instead traditional disparate treatment claims.

Plaintiffs' disparate impact claims require them to demonstrate that the challenged employment practices result in "significant adverse effects on [a] protected *group*[]"—here, pregnant and lactating pilots. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988) (emphasis in original). This "framework applicable to Title VII disparate impact suits generally" is unaltered in the pregnancy context. *Legg v. Ulster Cnty.*, 832 Fed. App'x 727, 731 (2d Cir. 2020); *Barrett v. Forest Labs.*, Inc., 39 F. Supp. 3d 407, 451 (S.D.N.Y. 2014) ("[T]he Court treats this [PDA] disparate impact claim the way it would any other."). Despite Frontier's conclusory assertions, the very nature of disparate treatment and disparate impact claims involves different methods of proof, even when the same policies are at issue, and therefore may involve different comparator universes.[9]

---

[9] In addition to misconstruing *Young*'s holding on proper comparators for purposes of disparate treatment, Frontier mistakenly relies on *Young* to restrict discovery for purposes of disparate impact to others who sought accommodations. As explained in Plaintiffs' opening brief, because *Young* involved a disparate treatment claim, the specific standard it set out for proving disparate treatment in failure to accommodate pregnancy does not apply in the disparate impact context. *See Young*, 135 S. Ct. at 1345.

As stated in Plaintiffs' motion, Mot. at 11–12, in pregnancy discrimination cases such as this one, courts routinely compare the effects of the challenged policies on pregnant employees to the policies' effects on *all other employees*—regardless of their ability to work. *See, e.g., Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 819 (D.C. Cir. 1981) (holding that a maximum length of disability leave potentially caused a disparate impact on women employees of childbearing age compared to all others subject to union contract). And Plaintiffs must have access to the requested comparator data for all pilots to make the statistical showing often required by courts to ultimately sustain Title VII disparate impact claims. *See* Mot. at 11–12 (collecting cases stressing the importance of a statistical showing).

Finally, as discussed *supra*, the information sought regarding the adverse effects on all pilots is relevant to Plaintiffs' claims that do not involve accommodations but concern policies applicable to *all* pilots, such as the ban on flying following 32 weeks of pregnancy and the prohibition on pumping during flight.[10] Facing such claims, Frontier has failed to justify its efforts to limit discovery to other pilots who sought accommodations for medical reasons.

## CONCLUSION

Plaintiffs respectfully request this Court grant Plaintiffs' Motion to Compel.

---

[10] The fact that the prohibition on pumping during flight was in some cases triggered by a pilot's request for accommodations does not mean that only pilots who requested accommodations were affected. Indeed, Plaintiff Shannon Kiedrowski did not initially seek accommodations, but rather was disciplined after being reported for using an in-flight physiological needs break for pumping. Am. Compl. ¶¶ 210–15.

| | |
|---|---|
| Dated: September 20, 2021 | By: /s/ Jayme Jonat<br>Jayme Jonat<br>Karen Sebaski<br>HOLWELL SHUSTER & GOLDBERG LLP<br>IN COOPERATION WITH THE<br>AMERICAN CIVIL LIBERTIES UNION<br>425 Lexington Avenue, 14th Floor<br>New York, NY 10019<br>Phone: 646-837-5151<br>Fax: 646-837-5150<br>Email: jjonat@hsgllp.com<br>Email: ksebaski@hsgllp.com<br><br>Sara R. Neel<br>Mark Silverstein<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO<br>303 East 17th Avenue, Suite 350<br>Denver, CO 80203<br>Phone: 720-402-3107<br>Fax: 303-777-1773<br>Email: sneel@aclu-co.org<br>Email: msilverstein@aclu-co.org<br><br>Galen Sherwin<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>WOMEN'S RIGHTS PROJECT<br>125 Broad Street, 18th Floor<br>New York, New York 10004<br>Phone: 212-519-7819<br>Email: gsherwin@aclu.org<br><br>*Attorneys for Plaintiffs* |