**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:19-cv-03468-CMA-SKC

RANDI FREYER, et al.,

       Plaintiffs,

v.

FRONTIER AIRLINES, INC.,

       Defendant.

**DEFENDANT'S SURREPLY IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPARATOR DATA [ECF NO. 116]**

Defendant Frontier Airlines, Inc. ("Defendant") files this Surreply In Support of Its Response In Opposition to Plaintiffs' Motion to Compel Comparator Data [ECF #116].

**I. INTRODUCTION**

Plaintiffs' Reply [ECF # 126] fails to supply any argument demonstrating that **all** Frontier pilots is the appropriate comparator universe in this case. Plaintiffs appear to acknowledge that at least with respect to their disparate treatment claims, to be appropriate comparators, Frontier pilots must have been similar in their ability or inability to work, but insist that the reason pilots became unable to work is immaterial.[1] However, the Supreme Court in *Young* specifically held that courts **must** inquire into the specific reason a nonpregnant person is unable to work to determine whether that person is

---

[1] In making this argument and throughout their Reply, Plaintiffs continue to deliberately misconstrue Frontier's definition of the relevant comparator universe, which Frontier has explicitly defined as those non-pregnant employees who "were unable to work due to their own physical limitations or restrictions" – <u>not</u> limited to those who <u>sought</u> accommodations. [ECF # 122 at 2-3]

"similar" in their "inability to work" for purposes of the Pregnancy Discrimination Act ("PDA"). *See* 42 U.S.C. § 2000e(k) (requiring employers to treat "women affected by pregnancy…the same for all employment-related purposes…as *other persons not so affected but similar in their ability or inability to work.*") (emphasis added).

Further, Plaintiffs fail to cite any case law demonstrating that their mere assertion of disparate impact and "non-accommodation" claims entitles them to a broader comparator universe, encompassing all pilots regardless of whether they were similar in their ability or inability to work or not. Accordingly, Plaintiffs have failed to sustain their burden of demonstrating the relevance of information concerning "**all** Frontier pilots" and thus, their Motion [ECF # 116] should be denied.

II.   ARGUMENT

   A.   **Plaintiffs' Attempt To Disclaim Their Initial Burden Is Futile.**

Contrary to Plaintiffs' Reply, "On a motion to compel, the moving party bears the initial burden of establishing that the requested information is relevant under Rule 26." *Hoden v. State Farm Mutual Auto. Ins. Co.,* 2021 WL 4264058, at *2 (D. Colo. Sept. 20, 2021). Only if the moving party meets their initial burden of demonstrating relevancy must the resisting party demonstrate that "the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure." *Nichols v. Denver Health & Hosp. Auth.,* 2020 WL 5517355, at *8 (D. Colo. Sept. 14, 2020).

### B. Plaintiffs Fail To Satisfy Their Burden Of Demonstrating How Data Concerning *All* Frontier Pilots Is Relevant To Their Claims.

#### 1. *Young v. UPS* Does Not Support Plaintiffs' Argument.

Plaintiffs insist that the reason a worker is able or unable to work is irrelevant. *See* ECF #126 at p. 6. However, the Supreme Court specifically rejected this argument in *Young v. UPS*, the very case Plaintiffs purport to rely upon. 575 U.S. 206 (2015). Contrary to Plaintiffs' representation, in *Young*, the Court interpreted the statutory phrase "other persons not so affected but similar in their…inability to work" to mean that individuals are **not similar** in relation to their ability or inability to work if they are unable to work for **different reasons**. *See id;* 42 U.S.C. § 2000e(k). The Court remanded the case in part because "Although UPS granted various accommodations, the record did not show whether other workers were truly 'similar in their ability or inability to work,' within the Court's understanding of the PDA," which included "inquiry into **the reasons** for that [ability or] inability." Pregnancy and Labor: An Overview of Federal Laws Protecting Pregnant Workers, Congressional Research Service (June 17, 2021), at p. 10, https://sgp.fas.org/crs/misc/R46821.pdf (emphasis added). Accordingly, "*Young* made it harder for pregnant workers to prevail in a claim that they should be accommodated because other workers are accommodated" by "overturn[ing] the rule, previously applied in some courts, that pregnant workers could show discrimination by identifying other employees, even those injured on the job as examples of how pregnant workers must be accommodated." *Id.* at p. 13.

The specific issue in *Young* was how the PDA's requirement that employers treat "women affected by pregnancy … the same for all employment-related purposes … as

other persons not so affected but similar in their ability or inability to work" applied "in the context of an employer's policy that accommodate[d] many, but not all, workers with **nonpregnancy-related disabilities**." *Young,* 135 S. Ct. at 1344 (emphasis added). The plaintiff had sought light duty assignments after her pregnancy imposed heavy lifting restrictions, which the defendant denied and pointed to the defendant's policies that accommodated workers who were injured on the job, had disabilities covered by the ADA, or had lost DOT certifications as evidence of pregnancy discrimination, claiming "UPS had accommodated several individuals whose disabilities created **work restrictions similar to hers.**" *Id.* at 1341.[2] The defendant argued that the plaintiff did not fall within any of the categories of "other persons" whom it had accommodated and therefore, that it had not discriminated against her on the basis of pregnancy, but had treated her just as it had treated all "other" relevant "persons." *Id.*

Seeking to interpret who Congress intended the "other persons" to be for purposes of the requirement that women affected by pregnancy and pregnancy-related conditions "be treated the same for all employment-related purposes…*as other persons* not so affected but *similar in their ability or inability to work*," the Court specifically described that statutory clause as "referring to nonpregnant persons with **similar disabilities**." *Id.* at 1350 (emphasis added); *see also id.* at 1351 ("post-Act guidance…simply tells employers to treat pregnancy-related disabilities like nonpregnancy-related **disabilities**.") (emphasis

---

[2] Plaintiffs continue to note that *Young* discussed a loss of DOT certification – yet ignore the fact that the Court was focused the loss of such certification because of reasons stemming from <u>physical or medical</u> conditions. *See, e.g., Young,* 575 U.S. at 216-217 (high blood pressure; sleep apnea; alcohol abuse); 240-41 ("A driver can lose DOT certification due to a great variety of <u>medical</u> conditions, including loss of a limb, . . . impairments of the arm, hand, finger, foot, or leg, . . . arthritis, . . . and epilepsy") (emphasis added).

added); *id.* at 1354 (the plaintiff could create a genuine issue of fact as to whether an accommodation would have imposed a significant burden on the defendant by showing that "[the defendant] accommodates most nonpregnant employees **with lifting limitations** while categorically failing to accommodate pregnant employees with lifting limitations.) (emphasis added).

Further, the Court expressly rejected the plaintiff's interpretation that the clause "requires an employer to provide the same accommodations to workplace disabilities caused by pregnancy that it provides to **workplace disabilities that have other causes** but have a similar effect on the ability to work" as **too broad**, stating, "Young asks us to interpret the second clause broadly" in that she argued "as long as 'an employer accommodates only a subset of workers **with disabling conditions,**' 'pregnant workers who are similar in the ability to work [must] receive the same treatment even if still other nonpregnant workers do not receive accommodations." *Id.* at 1349 (emphasis added). According to the Court, the plaintiff's interpretation granted pregnant workers a "most-favored-nation" status, which Congress clearly did not intend. *Id.* at 1349. The court explained that under the plaintiff's interpretation:

> As long as an employer provides one or two workers with an accommodation—say, those with particularly hazardous jobs, or those whose workplace presence is particularly needed, or those who have worked at the company for many years, or those who are over the age of 55—then it must provide similar accommodations to all pregnant workers (**with comparable physical limitations**).

*Id.* at 1349-50 (emphasis added).

Rejecting this interpretation, the Court explained that for purposes of determining whether a person is "similar in their ability or inability to work" courts must consider more

5

than the mere fact that the person received an accommodation, including the specific reasons or "causes" for that person's ability or inability to work that resulted in the accommodation at issue. *See id.* at 1350 ("How, for example, should a court treat special benefits attached to injuries arising out of, say, extra-hazardous duty?  If Congress intended to allow differences in treatment arising out of special duties, special service, or special needs, why would it not also have wanted courts to take account of differences arising out of special 'causes'—for example, benefits for those who drive (and are injured) in extrahazardous conditions?").  Justice Alito reiterated the fact that courts must consider the specific reason that person was able or unable to work for purposes of determining whether that person was similar in their ability or inability to work stating:

> "[S]imilar in the ability or inability to work" means "similar *in relation* to the ability or inability to work." Under this interpretation, **<u>pregnant and non-pregnant employees are not similar in relation to the ability or inability to work *if they are unable to work for different reasons*</u>**.

*Id*. at 1359 (emphasis added); *see also,* <u>Pregnancy and Labor</u>, *supra* p. 3 at p. 10 (the Court in *Young* held "any workplace adjustments required for pregnancy will depend not just on *whether* an employer accommodates other workers, but *why* it does so.").

      Plaintiffs also claim that the cases Defendant cited in support of its argument were all decided before *Young* and thus, "do not survive its holding." ECF #126 at p. 6. This is a blatant misrepresentation.  Defendant cited numerous opinions subsequent to *Young* recognizing that a pregnant worker's comparators are limited to workers with medical conditions or injuries imposing similar restrictions.  *See* ECF #122 at pp. 10-11 citing *LaBarbera v. NYU Winthrop Hosp.*, 2021 WL 980873, at *13 (E.D.N.Y. Mar. 16, **2021**)

("The identification of comparators "similar in the[ ] ability or inability to work" involves just that: **discerning the extent to which accommodated employees' limitations resemble the plaintiff's**…All that matter[s] [i]s that the comparator was accommodated for a similar limitation.") (emphasis added); *Townsend v. Town of Brusly,* 421 F. Supp. 3d 352, 363 (M.D. La. **2019**) ("**The sole basis for comparison under Young is the similarity in the physical restrictions of the employee and need for similar accommodations**.") (emphasis added); *Waite v. Board of Trustees of the Univ. of Ala*., 2018 U.S. Dist. LEXIS 187933, at *43 (N.D. Ala. Nov. 2, **2018**) ("Title VII, as amended by the PDA, does not prohibit discrimination based on pregnancy per se; it prohibits employers from treating pregnant employees worse than non-pregnant **employees who are similarly restricted** in their ability or inability to work.") (emphasis added); *see also,* 29 C.F.R., Pt. 1604, App. ("Written or unwritten employment policies and practices…shall be applied to disability due to pregnancy, childbirth or related medical conditions on the same terms and conditions as they are applied to **other disabilities**.").

Plaintiffs also claim that WANMA and the PWFA require broader comparator discovery.  Not so.  WANMA does not include a discrimination-based claim – there is no comparator universe.  Further, the PWFA is part of CADA, which means that it is subject to the same legal analysis as in *Young.  See Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010) ("Colorado and federal law apply the same standards to discrimination claims…and so…rise or fall together") (internal citation and quotation omitted), citing *Colo. Civil Rights Comm'n v. Big-O Tires, Inc.*, 940 P.2d 397, 400 (Colo.

7

1997).³  In any event, the PWFA prohibits discrimination – not based on pregnancy – but based on the request for an accommodation; the comparator universe is necessarily tied to accommodation requests, which Frontier has agreed to provide.

### C. Plaintiffs' Assertion of Disparate Impact/"Non-Accommodation" Claims Does Not Warrant A Different Outcome.

Plaintiffs also claim that "courts **routinely** compare the effects of the challenged policies on pregnant employees to the policies' effects on **all other employees**—regardless of their ability to work," but cite to just a single case—one from 1981, an entirely different district, and not concerning PDA claims. *See* ECF #126 at p. 10 (emphasis added).  Further, that case concerned a facially neutral policy concerning a sick leave policy limiting said leave to ten (10) days, which applied to employees working on a specific project. *See Abraham v. Graphic Arts Int'l Union,* 660 F.2d 811, 819 (D.C. Cir. 1981).  The Court simply noted that policy affected women employees on the project "much more severely than any male" and that the defendant could not seek refuge in what appeared to be a neutral policy unless it could demonstrate that it was "required by the exigencies of the project." *Id.* at 820.  Notably, however, the case did **not** discuss whether the plaintiff had been entitled to information concerning all employees who had worked on that project or only those who had requested sick leave pursuant to the policy.

The fact is that courts do **not** compare pregnant employees to all non-pregnant employees in a disparate impact context – instead, courts compare pregnant employees

---

³ The courts have not yet interpreted the meaning of Colorado's PWFA.  But courts in other jurisdictions have interpreted similar statutes, and have applied *Young* to the analysis.  *See, e.g., Xiang v. Eagle Enters., LLC*, 2020 U.S. Dist. LEXIS 7909, at *33 (S.D.N.Y. Jan. 16, 2020) (noting that an analysis of plaintiff's pregnancy discrimination claim under New York's PWFA – which, like Colorado's, does not use the phrase similar in the ability or inability to work – would be subject to and duplicative of the analysis in *Young*).

8

to non-pregnant employees similar in their ability or inability to work: "[T]he relevant comparison [for a disparate impact claim] is between women affected by pregnancy and employees similar in ability to work who have not [been so affected]." *EEOC v. Horizon/CMS Healthcare Corp.*, 1998 U.S. Dist. LEXIS 24641, at *8 (D.N.M. Oct. 1, 1998) (quoting *Urbano v. Continental Airlines, Inc.*, 1996 U.S. Dist. LEXIS 20412, 1996 WL 767426 * 2 (S.D. Tex)); *accord Labarbera*, 2021 U.S. Dist. LEXIS 48988, at *51-55 (" [T]o establish a prima facie case, a plaintiff pursuing a disparate impact claim under the [PDA] must demonstrate, at a minimum, that some pregnant women are 'similar in their ability or inability to work' to non-pregnant comparators receiving the accommodations sought by the plaintiff."); *Legg v. Ulster County*, 832 F. App'x 727, 731 (2d Cir. 2020) (disparate impact claim failed where pregnant women could not prove that non-pregnant employees similar in their ability or inability to work were disproportionately impacted).

Unlike the facially neutral sick leave policy at issue in the case relied upon by Plaintiffs, the challenged policies and practices in this case are not facially neutral, but specifically targeted at pregnant and/or pilots experiencing pregnancy-related conditions. Specifically, Plaintiffs challenge Defendant's "Post 32-Week Pregnancy Ban," "Forced Unpaid Leave and Refusal to Accommodate Pregnancy," and "Refusal to Accommodate Breastfeeding and Ban on Pumping on Duty."[4]  *See* ECF #1 at pp. 4-5.  Because Plaintiffs contend these policies intentionally targeted and discriminated against pregnant and/or lactating pilots, they fail to state claims for disparate impact and instead, allege claims for

---

[4] It is unclear how Plaintiffs can sustain the argument that those policies and practices were applicable to *all* pilots given that they specifically concerned pregnancy and a pregnancy-related condition. *See* ECF #126 at p.10 (referring to "the ban on flying following 32 weeks of pregnancy and the prohibition on pumping during flight" as "policies applicable to *all* pilots") (emphasis in original).

9

disparate treatment. *See* ECF #33 at p. 29 (arguing Plaintiffs' disparate impact claims should be dismissed because "Plaintiffs do not identify any facially neutral policies or practices – instead, they allege and assert that Frontier's policies and practices intentionally single out and discriminate against pregnant and lactating pilots."); *see also, Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995) (dismissing plaintiff's disparate impact claim because plaintiff did not challenge an ordinance that was "generally applicable," but rather one that was "specifically directed at group homes for the handicapped," explaining "Because [plaintiff] challenges facially discriminatory actions and not the effects of facially neutral actions, we conclude that his claim is one of disparate treatment and not disparate impact").[5] Thus, Plaintiffs are not entitled to comparator data concerning "all pilots" on the basis that they have alleged disparate impact claims because those claims necessarily fail.

Plaintiffs have failed to demonstrate the relevancy of information concerning Frontier pilots who never experienced any restrictions or received and/or request any accommodation to "raise a plausible inference of discrimination"—the very purpose of comparator analysis. *See, e.g., Povish v. Pennsylvania Dep't of Corr.*, 2014 WL 4105991, at *1 (E.D. Pa. Aug. 20, 2014). The fact that all pilots, including Plaintiffs, were allowed to take physiological needs breaks, does not mean information concerning "all pilots" is relevant to Plaintiffs' disparate impact claims. Plaintiffs are not claiming that they were not

---

[5] Neither the Tenth Circuit nor this Court have addressed whether a plaintiff can even bring a disparate impact claim under the PDA. See Pregnancy and Labor, *supra* p. 3 at p. 15 (some have argued "that the PDA precludes a typical Title VII PDA disparate impact claim because it requires that a pregnant worker be treated the same as others. Thus, the argument goes, similar treatment cannot be a violation even if it has a disparate impact.").

...

allowed to take physiological needs breaks at all, but rather that they were not permitted to take physiological needs breaks meeting their individual lactation needs (e.g., regular 15-30 minute breaks every 2-3 hours), and to operate breast pumps for purposes of expressing breast milk. *See* ECF #1 at 77 ("Frontier has maintained a policy, pattern, or practice of prohibiting pilots who are breastfeeding form taking physiological needs breaks **for purposes of pumping breast milk**") (emphasis added).  The appropriate comparators are pilots who were unable to work because of the physical or medical need for the same or similar breaks in length and duration as those requested by the Plaintiffs.

### III. CONCLUSION

For these reasons, Plaintiffs' Motion [ECF #116] should be denied.

Respectfully submitted this 27th day of September, 2021.

        *s/ Danielle L. Kitson*
        Danielle L. Kitson
        Stephen E. Baumann
        Carolyn B. Theis
        Littler Mendelson, P.C.
        1900 Sixteenth Street, Suite 800
        Denver, CO 80202
        Telephone: 303.629.6200
        Facsimile: 303.629.0200
        Email: dkitson@littler.com
               sbaumann@littler.com
               catheis@littler.com

        *Attorneys for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2021, I electronically filed and served **DEFENDANT'S SURREPLY IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL [ECF NO. 116]** via the CM/ECF system, which will send notification of such filing to the following:

Jayme Jonat
Vincent Gregory Levy
Holwell Shuster & Goldberg LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: vlevy@hsgllp.com
　　　　jjonat@hsgllp.com

Galen Leigh Sherwin
ACLU Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-519-7819
Fax: 212-549-2580
Email: gsherwin@aclu.org

Mark Silverstein
Sara R. Neel
American Civil Liberties Union-Denver
303 East 17th Street, Suite 350
Denver, CO 80203
Phone: 303-777-5482
Fax: 303-777-1773
Email: msilverstein@aclu-co.org
　　　　sneel@aclu-co.org

*Attorneys for Plaintiffs*

　　　　　　　　　　　　　　　　　　　　　　*s/ Joanna Fox*
　　　　　　　　　　　　　　　　　　　　　　Joanna Fox, Legal Secretary