**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:19-cv-03468-CMA-MEH
(Consolidated with Civil Action No. 19-cv-03469-CMA-MEH)

In re FRONTIER AIRLINES LITIGATION

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
COMPARATOR DATA [ECF #98]**

---

Defendant Frontier Airlines, Inc. ("Defendant" or "Frontier") files this Response in Opposition to Plaintiffs' Motion to Compel Comparator Data [ECF No. 98], stating as follows:

## I.    INTRODUCTION

This case is a putative class action concerning Frontier flight attendants who claim they were denied accommodations related to pregnancy and pregnancy-related conditions in violation of the Pregnancy Discrimination Act ("PDA"), Colorado's Workplace Accommodations for Nursing Mothers Act ("WANMA"), Colorado's Pregnant Workers Fairness Act ("PWFA"), and the Family Medical Leave Act ("FMLA"). Specifically, Plaintiffs allege that to the extent they were unable to work due to their pregnancies and/or pregnancy-related conditions, the accommodations Defendant provided (e.g., leaves of absence) were insufficient in that they were unpaid and/or resulted in the accrual of points under Defendant's attendance policy. In addition, Plaintiffs allege that to the extent they were able to work despite their pregnancies and pregnancy-related conditions, but needed accommodations, Defendant denied their requests for same. Specifically,

Plaintiffs allege that Defendant did not allow them to operate breast pumps inflight and did not provide them with sufficient breaks and spaces to pump while grounded.

Despite the fact that a class has not yet been certified, Plaintiffs claim that they are entitled to significantly broad discovery and seek to obtain at least **thirty-two (32)** different categories of  information and documents concerning **all Frontier flight attendants** over an **eight (8) year period.** However, Frontier flight attendants who did not personally experience a disability, injury, or medical condition and did not request and/or receive an accommodation related to that disability, injury, or medical condition are not appropriate comparators to Plaintiffs and information concerning them is not relevant or necessary for Plaintiffs to certify the classes they identify in their Complaint. Similarly, information concerning Defendant's hiring and promotion practices is irrelevant. Plaintiffs are not alleging failure to hire or promote claims and do not include any allegations in their Complaint concerning Defendant's hiring and promotion policies and practices. Thus, for these reasons and those set forth below, Plaintiffs' Motion should be denied.

## II.   PROCEDURAL HISTORY

Plaintiffs served their first set of discovery requests on August 2, 2021, which requested among other items, information for all Frontier flight attendants regarding pay, separation/termination, promotions, discipline, and accommodations. *See* ECF #98-2. Frontier objected to these requests, in part, on the grounds that they are overbroad and seek irrelevant information in that they encompass flight attendants who are not

appropriate comparators to Plaintiffs.[1] *See* ECF #98-3. The parties were unable to resolve their dispute regarding the scope of comparator data despite multiple meet-and-confers and discovery conferences on May 3 and June 21, 2021. At the discovery conference on September 16, 2021, the Court provided Plaintiffs leave to file their Motion to Compel [ECF #98] to allow the parties the opportunity to brief the issue. *See* ECF #95.

## III.   LEGAL STANDARD

A party may move for an order compelling discovery pursuant to Rule 37(a)(1). "On a motion to compel, the moving party bears the initial burden of establishing that the requested information is relevant under Rule 26." *Hoden v. State Farm Mutual Auto. Ins. Co.,* 2021 WL 4264058, at *2 (D. Colo. Sept. 20, 2021). Only if the moving party meets their initial burden of demonstrating relevancy must the resisting party demonstrate that "the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure." *Nichols v. Denver Health & Hosp. Auth.,* 2020 WL 5517355, at *8 (D. Colo. Sept. 14, 2020). "Ultimately, '[t]he administration of the rule[ ] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit.'" *Radulescu v. W. Union Co.,* No. 19-CV-03009-CMA-SKC, 2021 WL 1978776,

---

[1] Defendant's counsel refrains from addressing Plaintiffs' arguments directed to proportionality and burden, which as previously conveyed to Plaintiffs' counsel, are premature. Defendant reserves its right to further address its burden and proportionality objections at a later date after it has obtained sufficient information regarding the volume of documents and information at issue.

at *2 (D. Colo. May 18, 2021) (quoting *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

IV.   **ARGUMENT**

A.   **The Scope Of Discovery Is Not Unlimited.**

"Rule 26 permits discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense,[2] while the proportional needs of the case serve as guardrails for further reasonably tailoring the scope of discovery." *Id.* (emphasis added), citing Fed. R. Civ. P. 26(b)(1). "Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.,* No. 18-CV-01322-JLK-NYW, 2019 WL 11868519, at *5 (D. Colo. July 19, 2019). "Consequential facts are those that prove elements of claims and defenses asserted in the pleadings" and thus, Courts often "**look to the pleadings to determine relevance**." *Johns Hopkins Univ. v. Datascope Corp.,* No. WDQ-05-759, 2007 WL 1450367, *1 (D. Md. May 16, 2007) (emphasis added); *see also, Richards v. City of Atlanta, Georgia,* No. 119CV03963WMRRDC, 2021 WL 3056851, at *3 (N.D. Ga. Jan. 15, 2021) ("Plaintiff

---

[2] The amendments to Rule 26, effective December 1, 2015, purposefully removed the phrase "reasonably calculated to lead to admissible evidence" from the permissible scope of discovery under Rule 26. The Advisory Committee on the Federal Rules of Civil Procedure was "concerned that parties and courts had incorrectly used the phrase to expand the scope of discovery to a point where the scope "might swallow any other limitation." *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.,* No. 18-CV-01322-JLK-NYW, 2019 WL 11868519, at *3 (D. Colo. July 19, 2019), (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). Significantly, **many** of the cases cited by Plaintiffs are outdated and based on the defunct version of the Rules.  *See, e.g.,* ECF #98 at p. 15 (citing to *EEOC Warshawsky & Co.*, 768 F. Supp. 647, 655 (N.D. Ill. 1991).

bears the initial burden of showing that the information sought is relevant, and **relevance here is anchored by her claims**.") (emphasis added).  "The Tenth Circuit has endorsed the Supreme Court edict that 'the requirement of Rule 26(b)(1) that **the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery** [to protect] 'a party or person from annoyance, embarrassment, [or] oppression.'" *Nichols v. Denver Health & Hosp. Auth.,* No. 19-CV-02818-DDD-KLM, 2020 WL 5517355, at *10 (D. Colo. Sept. 14, 2020) (emphasis added).

### 1.    Courts Routinely Limit Discovery To That Concerning The Relevant Comparator Universe For Purposes Of Discovery.

Identifying the appropriate scope of the comparator universe for purposes of discovery is not premature as Plaintiffs contend.[3] Courts routinely rule on the scope of comparators relevant to a plaintiff's Title VII claims in discovery when a plaintiff seeks circumstantial evidence to prove discrimination, including that the defendant treated similarly-situated comparators differently than the plaintiff.[4] *See, e.g., Arms v. Milwaukee*

---

[3] Plaintiffs cite *Deluca v. Sirius Xm Radio, Inc.*, No. 12-CV-8239, 2016 WL 3034332, at *2 (S.D.N.Y. May 27, 2016) for the proposition that the court in that case granted a motion to compel as to "potential comparators."  ECF #98 at 4.  Again, however, the court only partially granted the motion, underlining denying it as to certain purported comparators as defined by the plaintiff.  *See id.*  Further, the *Deluca* court was primarily evaluating the relevant time period for the comparator universe, which is not at issue in the present motion.

[4] Plaintiffs cite to *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511 (10th Cir. 1995) for the general proposition that "discovery in discrimination cases should not be narrowly circumscribed." ECF #98 at 2, 4.  The *Gomez* court went on to state, however, that "this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."  *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995).  Ultimately, the Tenth Circuit in *Gomez* upheld the district court's denial of the discovery sought, holding that "[a]lthough

*Cty.,* No. 18-CV-1835, 2020 WL 5292146, at *2 (E.D. Wis. Sept. 4, 2020) (refusing to compel defendant to produce personnel files for certain individuals who plaintiff alleged were comparators because plaintiff failed to show that they were "appropriate comparators" and failed to demonstrate "anything relevant" was "likely to be found" in those files); *Garner v. St. Clair Cty., Illinois,* No. 15-CV-535 JPG-DGW, 2016 WL 146691, at *3 (S.D. Ill. Jan. 13, 2016) (refusing to compel defendant to produce documents and information beyond that concerning employees who worked in the same division as plaintiff and held "to the same performance, qualifications, and conduct standards"); *King v. Nw. Cmty. Hosp.,* No. 09 C 5903, 2010 WL 11712048, at *1 (N.D. Ill. Apr. 19, 2010) (ruling on a motion to compel concerning "several discovery requests designed to elicit information regarding similarly situated employees"); *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24 (D.D.C. Jan. 16, 2018) (denying plaintiff's motion to compel with respect to a discovery response that would encompass information concerning employees who were not similarly situated to plaintiff); *Richards v. City of Atlanta, Georgia,* No. 119CV03963WMRRDC, 2021 WL 3056851, at *7 (N.D. Ga. Jan. 15, 2021) (ruling on parties' dispute concerning the scope of comparator discovery); *Greenwood v. Nationwide Mut. Ins. Co.,* No. 17 C 3745, 2018 WL 11268502, at *3 (N.D. Ill. Mar. 5, 2018) (internal citation omitted) (refusing to compel the production of personnel documents for individuals the court concluded were not similarly situated to plaintiff).[5]

---

Mr. Gomez did not receive all the material he sought, he was provided abundant discovery." *Id.*

[5] Plaintiffs cite to *Davis v. Infinity Ins. Co.*, No. 2:15-CV-01111-JHE, 2019 WL 12424674, at *3-4 (N.D. Ala. Apr. 30, 2019) for the proposition that the court in that case purportedly granted a motion to compel the production of personnel files.  ECF #98 at p. 4.  In doing

### 2.     Courts Frequently Limit Putative Class Action Discovery.

Contrary to Plaintiffs' representation that "broad discovery is necessary for Plaintiffs to demonstrate satisfaction of the requirements of Fed. R. Civ. P. 23," courts frequently limit discovery in putative class actions. ECF #98 at p. 5, citing *Kennicott v. Sandia Corp.*, 327 F.R.D. 454 (D.N.M. 2018); *see Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304–05 (D. Colo. 1998) ("the recognized need for pre-certification discovery is subject to limitations which may be imposed by the court, and any such limitations are within the sound discretion of the court. The discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts present an undue burden to the defendant. Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification.") (internal citations and quotations omitted); *Peterson v. Medtronic, Inc.*, No. 217CV02457JTFDKV, 2018 WL 11240431, at *6 (W.D. Tenn. May 10, 2018) (limiting pre-certification discovery to personnel records and payroll information for the five opt-in plaintiffs and their comparators).  Consistent with that practice, the Court and the parties agreed to limit discovery pre-certification to "discovery **only** regarding Plaintiffs' individual claims and discovery **necessary** to support or oppose class

---

so, Plaintiffs misrepresent the rulings in *Davis*.  While the court  in that case did partially grant a motion to compel, critically, the court also **denied** the motion as to certain protected characteristics and departments that the court did not consider to be relevant. *See, e.g., id.* (denying motion to compel as to "the races of employees in the Customer Services Department": "[T]he racial composition of the employees remains irrelevant to [the plaintiff's] disparate impact claim.").

certification pursuant to Fed. R. Civ. P. 23." ECF #97 (bifurcating discovery into two phases two phases) (emphasis added). Plaintiffs have failed to demonstrate how information concerning flight attendants who never experienced a disability, injury, or medical condition is **necessary** for them to demonstrate that class certification is appropriate.

To the extent Plaintiffs cite *Zuniga v. Bernalillo City* in support of their proposition that data concerning all Frontier flight attendants is "highly relevant to proving their class allegations," that case is inapposite in that the plaintiffs were alleging sex discrimination and retaliation and seeking to certify a class of "**all female employees**" within certain grades who are, were, or would be employed by the defendant.[6] Similarly, the plaintiffs in *Kennicott v. Sandia Corp.*, another case relied upon by Plaintiffs, involved claims regarding the defendant's alleged policy, pattern, and practice of sex discrimination against **all** female employees. 327 F.R.D. 454 (D.N.M. 2018). While the court compelled the defendant to produce complaints and corresponding investigation files related to sexual harassment, pregnancy discrimination, hostile work environment, and retaliation, the court reasoned that the information sought was relevant in that the case was about "how [the defendant] treats **its female employees** on a wide array of topics:

---

[6] Notably, the court refused to order the defendant to provide certain information regarding all employees within the same grades as putative class members, including the employee's name, gender, dates of employment, job title and/or position, salary, total compensation, dates of any compensation change, nature of the compensation change (e.g. promotion, demotion, transfer, etc.), etc. which the defendant indicated would require pulling 459 personnel files. Instead, the court simply ordered the defendant to produce certain compensation files as it had already agreed to do in its discovery responses.

discrimination, pregnancy, pay, performance review, and retaliation" and specifically noted that "**the presence of class claims does not open the door to irrelevant discovery**." *Id.* at 474 (emphasis added).

### B.   Plaintiffs Misconstrue The Comparator Universe Proposed By Defendant.

Plaintiffs mispresent and misconstrue the scope of comparators Defendant has proposed. See ECF #98 at p. 2.[7] Contrary to Plaintiffs' accusation that Defendant is seeking to limit discovery "to only a narrow and insufficient slice of the data requested," as explained in greater detail in Section IV.C *supra*, Defendant has identified a comparator universe for purposes of discovery that is arguably broader than what the law requires—specifically all flight attendants over the relevant time period who were unable to work due to their own physical limitations or restrictions of any kind without some form of accommodation, regardless of (i) whether their medical condition actually rendered them similar to Plaintiffs in the type of work restrictions imposed or form of accommodations sought; (ii) who they reported to, (iii) where they were located, or (iv) whether any injury suffered occurred on or off the job—all factors Defendant could have used to further limit the comparator universe. *See Freppon v. City of Chandler,* 528 F. App'x 892 (10th Cir. 2013) (plaintiff was not similarly situated to two male police officers

---

[7] Contrary to Plaintiffs' Motion, the August 17, 2021 email between Plaintiffs' counsel to Defendant's counsel does not support Plaintiffs' contention that Defendant has proposed a more narrow comparator universe than that which the law requires or has proposed inconsistent versions of the appropriate comparator universe. *See* ECF #98-7. Regardless, counsel's compromise efforts in conferrals are not binding, and do not alter how courts have defined the appropriate comparator universe for pregnancy discrimination claims.

accommodated with light duty assignments because plaintiff's condition (i.e. pregnancy) did not result from an on-the-job injury like the male officers); *Trujillo,* 349 F. App'x at 365 ("employees are 'similarly situated' only if they deal with the same supervisor and [are] subject to the same standards governing performance evaluation and discipline") (internal citation and quotation omitted); *see also, Mento v. Potter,* Civ. No. 08-74S, 2012 WL 1908920, at *9 (W.D.N.Y. May 25, 2012) (concluding women who were not pregnant, as opposed to only men, were appropriate comparator employees). This comparator class includes flight attendants who sought to have any points accrued under the Defendant's Dependability Policy excused because their absence or tardiness was due to an illness, injury, or medical condition.

### C. Flight Attendants Not Experiencing Physical Or Medical Conditions Are Not Similar to Plaintiffs In Their Ability Or Inability To Work And Thus, Not True Comparators.

Plaintiffs admit that the appropriate comparators with respect to at least their disparate treatment claims should be limited to flight attendants who are similar to Plaintiffs in their ability or inability to work, but simultaneously argue that despite that limitation, they are entitled to information concerning **all** Frontier flight attendants. *See* ECF #98 at p. 7. This position, however, is untenable, unsupported by the law, and contradicted by Plaintiffs' own allegations as set forth in their Complaint.

The PDA requires employers treat "women affected by pregnancy … the same for all employment-related purposes … as **other persons not so affected but similar in their ability or inability to work**." 42 U.S.C. § 2000e(k) (emphasis added). In *Young v. UPS*, the Supreme Court was tasked with determining how that PDA requirement applies

"in the context of an employer's policy that accommodate[d] many, but not all, workers with **nonpregnancy-related disabilities**." *Young,* 135 S. Ct. at 1344 (emphasis added). The plaintiff in *Young* had sought light duty assignments after her pregnancy imposed heavy lifting restrictions, which the defendant denied and pointed to the defendant's policies that accommodated workers who were injured on the job, had disabilities covered by the ADA, or had lost DOT certifications as evidence of pregnancy discrimination, claiming "UPS had accommodated several individuals whose disabilities created **work restrictions similar to hers.**" *Id.* at 1341.[8]  The defendant argued that the plaintiff did not fall within any of the categories of "other persons" whom it had accommodated and therefore, that it had not discriminated against her on the basis of pregnancy, but had treated her just as it had treated all "other" relevant "persons." *Id.*

Seeking to interpret who Congress intended the "other persons" to be for purposes of the requirement that women affected by pregnancy and pregnancy-related conditions "be treated the same for all employment-related purposes…*as other persons* not so affected but *similar in their ability or inability to work*," the Court specifically described that statutory clause as "referring to nonpregnant persons with **similar disabilities**." *Id.* at 1350 (emphasis added); *see also id.* at 1351 ("post-[Pregnancy Discrimination] Act guidance…simply tells employers to treat pregnancy-related disabilities like

---

[8] Plaintiffs note that *Young* discussed a loss of DOT certification – yet ignore the fact that the Court was focused the loss of such certification because of reasons stemming from **physical or medical** conditions.  *See, e.g., Young,* 575 U.S. at 216-217 (high blood pressure; sleep apnea; alcohol abuse); *id.* at 240-41 ("A driver can lose DOT certification due to a great variety of **medical** conditions, including loss of a limb, . . . impairments of the arm, hand, finger, foot, or leg, . . . arthritis, . . . and epilepsy") (emphasis added).

**nonpregnancy-related disabilities**.") (emphasis added); *id.* at 1354 (the plaintiff could create a genuine issue of fact as to whether an accommodation would have imposed a significant burden on the defendant by showing that "[the defendant] accommodates most nonpregnant employees **with lifting limitations** while categorically failing to accommodate pregnant employees with lifting limitations.") (emphasis added).

Courts pre- and post-*Young*, including this Court, have interpreted the statutory phrase similarly, concluding that "*other persons* not so affected but *similar in their ability or inability to work*" refers to nonpregnant workers/works not experiencing a pregnancy related condition, but are experiencing disabilities, injuries, or other medical conditions rendering them similarly able or unable to work as pregnant workers/workers experiencing pregnancy-related conditions. *See Gooch v. Meadowbrook Healthcare Servs. of Fla., Inc.*, 77 F.3d 492, n.2 (10th Cir. 1996) ("The [PDA] 'makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than **other medical conditions**.'"), quoting Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983); see also, Falk v. City of Glendale, No. 12-CV-00925-JLK, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) (same); *Anderson v. Cato Corp.,* 444 F. App'x 280, 283 (10th Cir. 2011) ("A woman unable to work for pregnancy-related reasons is entitled to disability benefits or sick leave on the same basis as employees unable to work **for other medical reasons**."), citing 29 C.F.R., Pt. 1604, App. ("Written or unwritten employment policies and practices…shall be applied to disability due to pregnancy, childbirth or related medical conditions on the same terms and conditions as they are applied to **other disabilities**."); E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d

1184, 1195 (10th Cir. 2000) ("The better approach would be to hold that a plaintiff has satisfied the fourth element of her prima facie case by showing that she was treated differently than a non-pregnant, **temporarily-disabled employee**.") (emphasis added); *Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487, 1493 (D. Colo. 1997) (plaintiff offered no evidence "of different treatment of males who took **medical leaves**"); *LaBarbera v. NYU Winthrop Hosp.*, No. 218CV6737DRHSIL, 2021 WL 980873, at *13 (E.D.N.Y. Mar. 16, 2021) ("The identification of comparators "similar in the[ ] ability or inability to work" involves just that: **discerning the extent to which accommodated employees' limitations resemble the plaintiff's**…All that matter[s] [i]s that the comparator was accommodated for a similar limitation."); *Townsend v. Town of Brusly,* 421 F. Supp. 3d 352, 363 (M.D. La. 2019) ("**The sole basis for comparison under Young is the similarity in the physical restrictions of the employee and need for similar accommodations**."); *EEOC v. Wal-Mart Stores E., LP*, No. 18-cv-783-bbc, 2021 U.S. Dist. LEXIS 31099, at *25 (W.D. Wis. Feb. 19, 2021) ("In contrast to Title VII's more general comparator analysis, 'the comparator analysis under the [Pregnancy Discrimination Act] focuses on a single criterion—one's ability to do the job.'"); *Abbott v. Elwood Staffing Servs.*, 44 F. Supp. 3d 1125, 1160 n.41 (N.D. Ala. 2014) (co-worker was no a relevant comparator where "there was no evidence that [he] had **similar work restrictions** as the plaintiff"); *Waite v. Board of Trustees of the Univ. of Ala.*, No. 2:16-cv-01244-JEO, 2018 U.S. Dist. LEXIS 187933, at *43 (N.D. Ala. Nov. 2, 2018) ("Title VII, as amended by the PDA, does not prohibit discrimination based on pregnancy per se; it prohibits employers from treating pregnant employees worse than non-pregnant

employees **who are similarly restricted** in their ability or inability to work.") (emphasis added); *Legg v. Ulster County*, 832 F. App'x 727, 731 (2d Cir. 2020) (disparate impact claim failed where pregnant women could not prove that non-pregnant employees similar in their ability or inability to work were disproportionately impacted).

Not only is Plaintiffs' insistence that **all** non-pregnant/non-lactating flight attendants are the appropriate comparators for purposes of their claims inconsistent with these cases, it renders the statutory phrase "similar in their ability or inability to work" superfluous. *See, e.g., Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1352, 191 L. Ed. 2d 279 (2015) ("We have long held that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause is rendered superfluous, void, or insignificant."). Had Congress sought to define the appropriate comparators in a PDA case simply as anyone not pregnant/not affected by pregnancy, it would have stopped at "as other persons not so affected." Instead, Congress added "but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

### 1. Plaintiffs' Claims All Hinge On Accommodations Related To Pregnancy & Pregnancy-Related Conditions And Do Not Warrant Different Comparator Classes.

Plaintiffs claim that Defendant's position "ignores that Plaintiffs bring claims that do not hinge on requests for accommodations—i.e., those related to Frontier's Dependability Policy and the ban on use of breaks for pumping." ECF #98 at p. 8 ("Frontier's position ignores that Plaintiffs bring claims that do not hinge on requests for accommodations—*i.e.*, those related to Frontier's Dependability Policy and the ban on use of breaks for pumping"); *Id.* at p. 9 ("Plaintiffs' claim that Frontier's application of the

Dependability Policy has interfered with their ability to exercise their FMLA rights does not relate to accommodations at all").

However, Plaintiffs' allegations regarding the Dependability Policy **do** concern accommodations—specifically, Plaintiffs' alleged need to take FMLA related to their pregnancies and/or pregnancy-related conditions. According to Plaintiffs' Complaint, Frontier "routinely assigned points to flight attendants for absences related to pregnancy and has refused to re-code those absences after the fact in a manner that would exempt them from accruing points" even though "a pregnancy-related absence should qualify as an absence that would not accrue points under the Dependability Policy because it qualifies for **FMLA leave**." ECF #1 at ¶ 43. Plaintiffs' acknowledge in their own Complaint that the appropriate comparator class is flight attendants who sought to have any points accrued under the Defendant's Dependability Policy excused because their absence or tardiness was due to an illness, injury, or medical condition (necessarily encompassed by the comparator class proposed by Defendant: all flight attendants who experienced an illness, jury, or medical condition and requested and/or received an accommodation related to same), alleging that Defendant treated their pregnancy-related absences worse than **FMLA absences** "**resulting from disability**" or "**due to a recognized disability**." ECF #1 at ¶¶ 6, 41 (emphasis added); *see also,* ECF #1 at ¶ 5 ("Frontier has systematically discriminated against pregnant and breastfeeding flight attendants by penalizing them for pregnancy-related absences under the FMLA, singling out pregnancy and breastfeeding for worse treatment than **other conditions**") (emphasis added); *Johns Hopkins Univ. v. Datascope Corp*., No. WDQ-05-759, 2007 WL 1450367, *1 (D. Md. May

16, 2007) (Courts often "look to the pleadings to determine relevance"); *Richards v. City of Atlanta, Georgia,* No. 119CV03963WMRRDC, 2021 WL 3056851, at *3 (N.D. Ga. Jan. 15, 2021) (relevance is "anchored by" a plaintiff's claims).

Similarly, as reflected by Plaintiffs' own Complaint, Plaintiffs' allegations regarding Frontier's ban on flight attendants pumping inflight also indisputably concern accommodations. *See* ECF #1 at ¶ 58 ("Frontier has provided flight attendants with break time for physiological needs such as using the restroom, but it has not provided break time for the purpose of expressing breast milk for their nursing child"); ¶ 6(c) ("Frontier had no policy to address flight attendants' **needs for accommodations related to breastfeeding**. Frontier provided neither breaks to express breast milk nor accessible, sanitary facilities for flight attendants to use for pumping while they were working. Instead, Frontier has **categorically denied all requested accommodations that would allow flight attendants who are breastfeeding to remain on the job**, and informed them they would not be permitted to return to work until they were cleared of any restrictions, including that they no longer needed accommodations to pump") (emphasis added). The appropriate comparators with respect to physiological needs breaks are those flight attendants who were unable to work based on physiological needs without some form of accommodation—individuals necessarily encompassed by the comparator class proposed by Defendant.

    **D.**    **Plaintiffs' FMLA Interference Claim Does Not Entitle Plaintiffs To <u>Any</u> Comparator Data.**

Further, Plaintiffs fail to cite any case law in this jurisdiction demonstrating FMLA interference claims entitle them to **any** comparator data. *See* ECF #98 at pp. 9-10

(arguing Plaintiffs are entitled to comparator data with respect to "all flight attendants," not just those who sought accommodations because their "FMLA interference claims are entirely separate from *Young's* 'similar in their ability or inability to work' framework"). In fact, the Tenth Circuit has suggested that comparators are not relevant and certainly not necessary for purposes of stating an FMLA interference claim, concluding that the *McDonnell Douglas* burden-shifting framework applicable in retaliation and discrimination cases and under which a plaintiff may provide proof that other similarly situated employees outside the protected class were treated more favorably for purposes of demonstrating circumstances giving rise to an inference of discrimination **does not apply to FMLA interference claims** and thus, that "no pretext analysis is necessary." *Balding v. Sunbelt Steel Texas, Inc.,* 718 F. App'x 742, 746 (10th Cir. 2018); *Staggs v. City of Arvada,* No. 19-CV-02802-NYW, 2021 WL 365842, at *4 (D. Colo. Feb. 3, 2021) ("the Tenth Circuit has held that the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applicable to most federal law employment discrimination claims, **does   not** apply to FMLA interference claims.") (emphasis in original), citing *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226-27 (10th Cir. 2012); *see also, Preeson v. Parkview Med. Ctr., Inc.,* No. 15-CV-02263-MSK-KMT, 2017 WL 1197298, at *5 (D. Colo. Mar. 30, 2017) ("the employer's motivation is irrelevant in the interference context").

### E. Plaintiffs' WANMA And PWFA Claims Do Not Entitle Plaintiffs To Data Concerning All Flight Attendants.

Like Plaintiffs' FMLA interference claim, Plaintiffs fail to cite any case law supporting their entitlement to information concerning comparator information **at all** with respect to their WANMA and PWFA claims. Further, while Plaintiffs claim in their Motion

that an employer's obligation under WANMA and PWFA do not depend on a comparison to others similar in their ability or inability to work, their Complaint takes the opposite position. See ECF #1 at 237 ("Frontier has provided modified duty, temporary alternative job assignments, and other forms of reasonable accommodation to flight attendants with **temporary and permanent disabilities and medical conditions**, flight attendants **injured** on the job, and flight attendants who are unable to fly for reasons other than pregnancy or related conditions, but who are **otherwise similar in their ability or inability to work**.") (emphasis added); *Id.* at 249; *Id.* at 273, *Id.* at 274.

As Plaintiffs acknowledge, WANMA imposes certain specific affirmative obligations on an employer concerning pregnancy. *See* ECF #98 at p. 13. There is no discrimination-based claim under WANMA and thus, no comparator universe. In addition, the PWFA is part of CADA, which means that it is it is subject to the same legal analysis as in Young. *See Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010) ("Colorado and federal law apply the same standards to discrimination claims…and so…rise or fall together") (internal citation and quotation omitted), citing *Colo. Civil Rights Comm'n v. Big-O Tires, Inc.,* 940 P.2d 397, 400 (Colo. 1997).[9] In any event, the PWFA prohibits discrimination – not based on pregnancy – but based on the request for an

---

[9] The courts have not yet interpreted the meaning of Colorado's PWFA.  But courts in other jurisdictions have interpreted similar statutes, and have applied Young to the analysis.  *See, e.g., Xiang v. Eagle Enters., LLC,* 2020 U.S. Dist. LEXIS 7909, at *33 (S.D.N.Y. Jan. 16, 2020) (noting that an analysis of plaintiff's pregnancy discrimination claim under New York's PWFA – which, like Colorado's, does not use the phrase similar in the ability or inability to work – would be subject to and duplicative of the analysis in Young).

accommodation; the comparator universe is necessarily tied to accommodation requests, which Frontier has agreed to provide.

> ### F.    Discovery Concerning Promotions And Hiring Not Relevant To Plaintiffs' Claims.

Plaintiffs claim that "discovery related to flight attendants who 'applied for a supervisory, management, or training position' is relevant to demonstrating a disparate impact of Frontier's challenged policies." ECF #98 at p. 17. However, neither Plaintiffs' Complaint nor their Charges of Discrimination concern or identify any of Defendant's policies or practices regarding hiring or promoting flight attendants, or indicate that Plaintiffs ever applied for any other positions or promotions at Frontier. Instead, Plaintiffs' disparate impact claims are limited to Defendants' policies and practices with respect to accommodations (or purported lack thereof) for pregnant and/or breastfeeding flight attendants. Evidence concerning flight attendants who applied for a supervisory, management, and/or training positions at Frontier will not evidence whether Defendant's policies and practices with respect to accommodations for pregnant and/or breastfeeding flight attendants had a disparate impact on those flight attendants[10] and thus, is not

---

[10] Defendant maintains that Plaintiffs have not and cannot state a claim for disparate impact with respect to policies and practices specifically directed towards pregnant flight attendants/flight attendants experiencing pregnancy-related conditions, which are not facially neutral but rather targeted at a protected class and purportedly intentionally discriminate against pregnant and/or lactating flight attendants. *See, e.g., Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1501 (10th Cir. 1995) (dismissing plaintiff's disparate impact claim because plaintiff did not challenge an ordinance that was "generally applicable," but rather one that was "specifically directed at group homes for the handicapped," explaining "Because [plaintiff] challenges facially discriminatory actions and not the effects of facially neutral actions, we conclude that his claim is one of disparate treatment and not disparate impact").

discoverable. *See* Fed.R.Civ.P. 26 (discovery must be relevant to a party's claim or defense); *Allen v. Wal-Mart Stores, Inc.*, No. 19-CV-03594-KLM, 2021 WL 2823229, at *1 (D. Colo. Jan. 6, 2021) (denying plaintiff's motion to compel discovery concerning promotions where plaintiff failed to properly exhaust any claim for denial of promotion to those positions); *DCP Midstream, LP v. Anadarko Petroleum Corp.*,303 P.3d 1187, 1197 (Co. 2013) (amendments to Rule 26 "signal to the parties that they have no entitlement discovery to develop new claims or defenses not already identified"), citing Fed.R.Civ.P. 26 advisory committee's note (2000); *Hill v. Motel 6,* 205 F.R.D. 490, 493 (S.D. Ohio 2001) (denying plaintiff's motion to compel discovery of certain personnel files that may have contained evidence indicating defendants had a policy or practice of age discrimination where plaintiff had alleged only a disparate treatment claim, reasoning that plaintiff has no entitlement to evidence "in the hope of developing a new age-discrimination claim based on a theory of discriminatory impact"); *Lafate v. Vanguard Grp., Inc.*, No. CIV.A. 13-CV-5555, 2014 WL 4384510, at *8 (E.D. Pa. Sept. 5, 2014) ("While Plaintiff will be required to prove a significant statistical disparity of some sort in order to make a prima facie showing of disparate impact, he cannot ask for statistics now, and then identify the specific policies later.").

---

Further, Neither the Tenth Circuit nor this Court have addressed whether a plaintiff can even bring a disparate impact claim under the PDA. *See* Pregnancy and Labor: An Overview of Federal Laws Protecting Pregnant Workers, Congressional Research Service (June 17, 2021), at p. 15, available at https://sgp.fas.org/crs/misc/R46821.pdf (last visited October 7, 2021) (some have argued "that the PDA precludes a typical Title VII PDA disparate impact claim because it requires that a pregnant worker be treated the same as others. Thus, the argument goes, similar treatment cannot be a violation even if it has a disparate impact.").

## V.   CONCLUSION

For these reasons, Plaintiffs' Motion [ECF #98] should be denied.

Respectfully submitted this 8th day of October, 2021.

*s/ Danielle L. Kitson*

Danielle L. Kitson
Stephen E. Baumann
Carolyn B. Theis
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: dkitson@littler.com
        sbaumann@littler.com
        catheis@littler.com

*Attorneys for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2021, I electronically filed and served

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

**[ECF NO. 98]** via the CM/ECF system, which will send notification of such filing to the

following:

Jayme Jonat
Vincent Gregory Levy
Holwell Shuster & Goldberg LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: vlevy@hsgllp.com
        jjonat@hsgllp.com

Galen Leigh Sherwin
ACLU Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-519-7819
Fax: 212-549-2580
Email: gsherwin@aclu.org

Mark Silverstein
Sara R. Neel
American Civil Liberties Union-Denver
303 East 17th Street, Suite 350
Denver, CO 80203
Phone: 303-777-5482
Fax: 303-777-1773
Email: msilverstein@aclu-co.org
        sneel@aclu-co.org

*Attorneys for Plaintiffs*

*s/ Joanna Fox*
Joanna Fox, Legal Secretary