UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re FRONTIER AIRLINES LITIGATION | Civil Action No. 19-cv-03468-CMA-MEH (Consolidated with Civil Action No. 19-cv-03469-CMA-MEH)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL COMPARATOR DATA [ECF NO. 98]** |

Plaintiffs submit this reply in support of their motion to compel comparator data from Defendant Frontier Airlines, Inc. ("Frontier"), (*Hodgkins*) ECF No. 98 ("Mot.").[1]

## INTRODUCTION

In its opposition, Frontier belabors the truism that the "scope of discovery is not unlimited." (*Freyer*) ECF No. 130 ("Opp.") at 4. But Plaintiffs do not seek "unlimited" discovery. As outlined in Plaintiffs' Motion, Plaintiffs' requests for comparator data are firmly tied to the specific facts of this case and the elements of claims and defenses under Title VII, the Colorado Anti-Discrimination Act ("CADA"), and the Family and Medical Leave Act ("FMLA"). Likewise, Plaintiffs' requests are supported by the text and intent of Colorado's Workplace Accommodations for Nursing Mothers Act ("WANMA") and Pregnant Workers Fairness Act ("PWFA"). Frontier has yet to cite a single case holding that discovery for a plaintiff in a pregnancy discrimination case—much less a class case—should be limited only to evidence regarding comparators *who sought accommodations because of their own medical or physical limitations*. Indeed, to limit discovery in the

---

[1] Following the continued assignment of Case No. 19-cv-03469-CMA-MEH (*Hodgkins*) and the referral of this motion to Magistrate Judge Hegarty, Plaintiffs adhere to the page limitations set out in Judge Hegarty's Practice Standards. (*Freyer*) ECF No. 128; MEH Practice Standards III.D.

1

narrow manner Frontier seeks would deprive Plaintiffs—and the Court—of the opportunity to assess the full scope of relevant evidence in Frontier's possession and hamstring Plaintiffs from proving the majority of their claims or certifying a class. Frontier's contention that Plaintiffs' discovery requests are irrelevant rests on an incorrect understanding of the standards governing discovery of comparators and conflates the different methods of proof applicable to Plaintiffs' various causes of action. Because Frontier has failed to carry its burden of showing that the information sought is not relevant, this Court should grant Plaintiffs' Motion.[2]

## ARGUMENT

### I. Frontier Misstates the Standards Governing Discovery.

The Tenth Circuit has observed that "the scope of discovery under the federal rules is broad." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). This remains the law, notwithstanding Frontier's mistaken assertion that the 2015 revisions to Rule 26(b) dramatically narrowed its scope. The Rules Committee's own notes make clear that they did not: rather, the revisions were intended to "[r]estor[e] proportionality as an express component of the scope of discovery,"[3] while not penalizing those parties such

---

[2] A similar motion is fully briefed in the consolidated case and sub judice. *Freyer v. Frontier Airlines, Inc.*, No. 19-cv-03468-CMA-MEH (D. Colo.), ECF Nos. 116, 122, 126, 127.

[3] Frontier fails to address the proportionality and burdensomeness considerations that are integral to Rule 26's definition of the scope of discovery. *See* Opp. at 3 n.1. Thus, Frontier urges the Court to protect it from "oppressi[ve]" discovery, *id.* at 5, while simultaneously refusing to identify what exactly is oppressive about Plaintiffs' requests. The issue of proportionality has been raised to the Court in prior discovery conferences held on June 21 and September 16. *See* Frontier's Statement of Discovery Disputes, dated Sept. 14, 2021; Plaintiffs' Statement of Discovery Disputes, dated Sept. 14, 2021. Frontier should not be allowed to hold its specific objections—if indeed it has any—in reserve when the issues are ripe.

as Plaintiffs here, bringing "cases in public policy spheres, such as employment practices." Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

Thus, "the post-2015 rule 26(b) standard for the scope of discovery . . . in employment discrimination cases is still broad." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 472 (D.N.M. 2018). The principle that relevancy is not synonymous with weight or even admissibility remains valid, and relevancy is still gauged based on whether the request has "*any* tendency" to make "any fact that is of consequence"—one "that prove[s] elements of claims and defenses asserted in the pleadings"—more or less probable. *Anchondo-Galaviz v. State Farm Mut. Auto. Ins. Co.,* No. 18-CV-01322, 2019 WL 11868519, at *5 (D. Colo. July 19, 2019) (emphasis added); *Johns Hopkins Univ. v. Datascope Corp.*, No WDQ-05-759, 2007 WL 1450367, at *1 (D. Md. May 16, 2007) (quoted in Opp. at 4). Each of the requests here seeks to discover information that will assist in proving the facts of Frontier's discrimination or to demonstrate its consequences.

## II. Courts Regularly Authorize Broad Discovery of Comparators, Especially in Proposed Class Actions.

Frontier asks the Court to preemptively limit Plaintiffs' requests for comparator data before Plaintiffs can even identify appropriate comparators. As other courts have recognized, limiting the potential comparator universe at this stage would be premature—both because of the class-wide claims at issue, and because "it cannot be known with certainty" prior to discovery who the "proper comparator[s]" will be. *Lattimore v. Wild Flavors, Inc.*, No. CV 09-23-WOB, 2011 WL 13318962, at *2 (E.D. Ky. Apr. 7, 2011).

The need for broad discovery into potential comparators is particularly strong in the class action context. *See, e.g.*, *Kennicott v. Sandia Corp.*, No. CV 17-188 JB/GJF,

2018 WL 2206880, at *2 (D.N.M. May 14, 2018), *aff'd*, 327 F.R.D. 354 ("The scope of discovery in a Title VII employment discrimination class action case is even broader, in part because the requirements of Rule 23 constitute a high standard for the plaintiffs to overcome to have their class certified."). Here, the discovery Plaintiffs seek would support class certification by allowing Plaintiffs to identify common effects of the challenged policies across the class. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (requiring a showing that class members "have suffered the same injury" to demonstrate commonality); *Infinity Home Collection v. Coleman*, No. 17-MC-00200-MSK-MEH, 2018 WL 1733262, at *3 (D. Colo. Apr. 10, 2018) (granting pre-certification discovery on topics that might yield information relevant to commonality); *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL-DJW, 2006 WL 2620347, at *2 (D. Kan. Aug. 25, 2006) ("[D]iscovery on class certification is not a matter of ascertaining whether Plaintiffs will prevail on the merits, but whether the moving party can establish that the discovery is pertinent to the . . . class certification requirements . . . ."). Indeed, Frontier's own authority recognizes that discovery "should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998).

But the presumption for allowing broad discovery in employment matters is not unique to class action cases. To account for the inherent information imbalance between plaintiffs and defendants, courts routinely permit broad discovery into potential comparators. *See, e.g.*, *Davis v. Infinity Ins. Co.*, No. 2:15-CV-01111-JHE, 2019 WL 12424674, at *4 (N.D. Ala. Apr. 30, 2019) (granting discovery of comparator files which

4

may "potentially support" the claims); *Deluca v. Sirius Xm Radio, Inc.*, No. 12-CV-8239, 2016 WL 3034332, at *2 (S.D.N.Y. May 27, 2016) (granting plaintiff's motion to compel information on "[p]otential [c]omparators"). Only Frontier has information about any of the potential comparators. It is not for Frontier to "unilaterally define the scope of discovery based upon its own theory of the case." *Hills v. AT&T Mobility Servs., LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *7 (N.D. Ind. July 22, 2021).

Frontier claims that "[i]dentifying the appropriate scope of the comparator universe for purposes of discovery is not premature" at this stage because "[c]ourts routinely rule on the scope of comparators relevant to a plaintiff's Title VII claims . . . ." Opp. at 5. Yet none of the case law that Frontier cites in its opposition supports the limitation of comparator data in the manner Frontier seeks—i.e., to other employees with physical limitations—particularly at the pre-certification stage. Indeed, Frontier fails to cite even a single case involving class claims, let alone pre-certification discovery. *See* Opp. at 5–6. Instead, Frontier points to cases where the court imposed some limitations on comparator discovery in situations where the plaintiffs' requests were not designed to uncover suitable comparators with respect to their specific claims—for example, where they had different job responsibilities, or different supervisors for purposes of claims relating to job evaluations.[4] Here, unlike in those cases, Plaintiffs' requests are tailored to the specific

---

[4] The cases cited by Frontier at Opp. at 5–6 are inapposite. *See Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2020 WL 5292146, at *2 (E.D. Wis. Sept. 4, 2020) (denying comparator discovery when plaintiff's only explanation as to why the proposed comparators were similarly situated was factually inaccurate); *Garner v. St. Clair Cty., Illinois*, No. 15-CV-535 JPG-DGW, 2016 WL 146691, at *2–3 (S.D. Ill. Jan. 13, 2016) (denying discovery into comparator data for employees with different job responsibilities); *King v. Nw. Cmty.*

claims and defenses at issue—which allege systemic discriminatory policies and practices—and relate to flight attendants who are similarly situated: they share common job descriptions and are all subject to the same corporate policies at issue. For example, their requests related to the in-flight pumping ban seek information related to all flight attendants disciplined *for taking breaks during flight*—not those disciplined for any other reason. *See* Ex. A, Interrogatory No. 14; Ex. B, Request for Production ("RFP") No. 14.

Contrary to Frontier's argument, Opp. at 17, Plaintiffs are entitled to data showing that Frontier's penalization of pregnancy-related absences under the Dependability Policy caused harms common across the class of pregnant flight attendants for purposes of class certification for their FMLA interference claim as well as their claims under Title VII. *See Wal-Mart*, 564 U.S. at 349–50 (requiring a showing that class members "have suffered the same injury" to demonstrate commonality). The cases upon which Frontier relies do not involve plaintiffs in putative class actions seeking to compel discovery to establish commonality; rather, they all assess the merits of plaintiffs' FMLA claims on the merits, and stand only for the proposition that there is no pretext inquiry in FMLA interference cases—which Plaintiffs do not dispute. *See* Mot. at 10. In fact, courts assessing FMLA interference claims have emphasized that demonstrating broad

---

*Hosp.*, No. 09 C 5903, 2010 WL 11712048, at *3 (N.D. Ill. Apr. 19, 2010) (limiting comparator discovery in individual case to employees with the same supervisor); *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24, 32 (D.D.C. Jan. 16, 2018) (denying discovery sought by plaintiff who had been disciplined for violating police policies into employees who had been disciplined for infractions that were not of a similar severity); *Richards v. City of Atlanta, Georgia*, No. 119-cv-03963-WMR-RDC, 2021 WL 3056851, at *5–6 (N.D. Ga. Jan. 15, 2021) (applying Eleventh Circuit precedent to limit request for comparator data based on the defendants' proffered reason for terminating the plaintiff).

application of a challenged policy is necessary for purposes of class certification. *See Carrel v. MedPro Grp., Inc.,* No. 1:16-CV-130-TLS, 2017 WL 1488359, at *5 (N.D. Ind. Apr. 26, 2017) (finding commonality was satisfied where plaintiffs demonstrated all putative class members seeking relief from FMLA violations were subject to the same paid-time-off policy); *Loy v. Motorola, Inc.*, No. 03-C-50519, 2004 WL 2967069, at *5 (N.D. Ill. Nov. 23, 2004) (finding plaintiff's request for information on how her employer calculated productivity for hundreds of individuals relevant to class certification case alleging a productivity measurement system that violated the FMLA). Without data establishing the distinct impacts of the challenged practice on the affected group—here, the effects of the Dependability Policy on pregnant flight attendants as compared to those who have not been pregnant— Plaintiffs cannot assess the relative breadth and impact of the Dependability Policy across the class as a whole as they will be required to do under Rule 23. *See Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) ("In order to determine whether there is such a[] [discriminatory] impact and to ascertain whether it is attributable to a common policy or practice, it is necessary to acquire data about the class and analyze it.").

### III. Plaintiffs' Requests for Comparator Data Are Relevant.

#### A. Frontier's Attempt to Limit Comparator Discovery to Flight Attendants with Physical or Medical Conditions Is Improper.

As a threshold matter, none of Frontier's pregnancy discrimination authority post-dating *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338 (2015) supports limiting discovery in the manner Frontier seeks; rather, these cases represent determinations as to proper comparators on the merits. *See, e.g.*, *Townsend v. Town of Brusly,* 421 F. Supp.

7

3d 352, 363–64 (M.D. La. 2019) (evidence of other police officers granted light duty was sufficient to defeat summary judgment despite differences in comparators' experience and disciplinary records). Frontier's sole citation to a case decided in an earlier, motion to dismiss posture actually *supports* Plaintiffs' position. *See Falk v. City of Glendale*, No. 12-CV-00925-JLK, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) (noting that "if other coworkers were allowed to take breaks to use the restroom while lactating mothers were banned from pumping, discrimination might exist."). Unlike the *Falk* plaintiff whose disparate treatment claim was dismissed for failure to allege that other employees were granted non-pumping restroom breaks, Plaintiffs have made precisely this allegation with respect to their claims related to in-flight pumping. ECF No. 1 ("Compl.") ¶¶ 53–75.

Second, Frontier distorts the Supreme Court's holding in *Young* in asserting that the comparator universe is restricted to flight attendants "unable to work due to their own physical limitations or restrictions of any kind without some form of accommodation," and therefore should be so limited for discovery purposes. Opp. at 9.[5] As explained in

---

[5] While the dispute here centers on the scope of appropriate comparator discovery, Plaintiffs note they are not planning to rely exclusively on comparator evidence to prove pregnancy discrimination. "While one way to establish the fourth element of the prima facie claim is to allege that 'the employer did accommodate others similar in their ability or inability to work,' that is not the only way to raise an inference of discrimination." *Boyne v. Town & Country Pediatrics & Family Medicine*, No. 3:15-CV-1455 (MPS), 2017 WL 507212, at *4 (D. Conn. Feb. 7, 2017). *See also EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1197–1200 (10th Cir. 2000) (considering in the aggregate inconsistent application of policies and statements evincing animus as evidence of pretext sufficient to defeat summary judgment in pregnancy accommodation case); *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (listing "variety of circumstances" that can give rise to an inference of discriminatory motive); *Stroup v. United Airlines, Inc.*, No. 15-CV-01389-DDD-STV, 2019 WL 8359562, at *8 (D. Colo. Sept. 4, 2019) (reasonable fact-finder could infer discrimination from inconsistent explanations and application of policies).

Plaintiffs' opening brief, Mot. at 12–13, the Court in *Young* made clear that the proper focus is a comparator's ability or inability to work, regardless of the reason. *See Young*, 135 S. Ct. at 1347 (considering employees given light duty for reasons including on- or off-the-job injury and loss of driver's license, rather than only those with lifting restrictions like the plaintiff's); *accord Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1286 (11th Cir. 2020); *Hills*, 2021 WL 3088629, at *4–6. Contrary to Frontier's assertion, Opp. at 11 n.8, one of the driver's license losses discussed in *Young* resulted from an employee's conviction for driving under the influence, which was entirely divorced from a physical limitation.[6] *Young*, 135 S. Ct. at 1347.

Moreover, under *Young*, data showing that accommodations were available to others, regardless of the reason, are relevant to the analysis of whether the justification offered is genuine or pretextual. *See id.* at 1354–55 (holding that "evidence that UPS had three separate accommodation policies," including for on-the-job, disability, and loss of license, was sufficient, taken together, to raise material factual issue on whether refusal to accommodate pregnancy was pretextual). But Frontier completely fails to address the relevance of the information sought to any of its potential defenses, including not only the pretext analysis, but also the analysis of whether the challenged policies are supported by bona fide occupational qualifications or, in the case of disparate impact, by business necessity. *See UAW v. Johnson Controls*, 499 U.S. 187, 206 (1991); *Dothard v. Rawlinson*, 433 U.S. 321, 331 (1977).

---

[6] In arguing that *Young*'s analysis limits comparator data to those with medical limitations, Frontier also quotes from a concurrence, rather than *Young*'s majority opinion, without so indicating. *See* Opp. at 11 n.8 (citing 575 U.S. at 240-41 (Alito, J., concurring)).

The cases Frontier cites for the proposition that comparators must experience medical conditions akin to pregnancy predate *Young* and do not survive its holding. Opp. at 12. And tellingly, the cases that discuss the requirement that comparators have similar restrictions do not consider the *source* of the restriction, much less hold that comparators with medical or physical conditions were the *only* permissible comparators. *See, e.g.*, *LaBarbera v. NYU Winthrop Hosp.*, No. 2:18-CV-6737 (DRH) (SIL), 2021 WL 980873, at *13 (E.D.N.Y. Mar. 16, 2021) ("The auspices under which an employer accommodates a comparator employee are irrelevant [under *Young*] . . . All that mattered was that the comparator *was* accommodated for a similar limitation"); (*Freyer*) ECF No. 129 at 8 (finding Plaintiffs' allegation that Frontier accommodated other pilots "for 'reasons unrelated to pregnancy,' while declining to provide those accommodations to pilots who were pregnant or nursing," sufficient to state disparate treatment claim for failure to accommodate). Frontier's assertion that its proposed comparator universe is "arguably broader than what the law requires," Opp. at 9, is therefore wrong as a matter of law.

Next, Frontier misconstrues Plaintiffs' complaint when it asserts that Plaintiffs' allegations related to the Dependability Policy and inflight pumping themselves are framed in comparison only to flight attendants with physical restrictions. Opp. at 15. Plaintiffs have not limited their claims in this way; rather, they alleged that Frontier accommodated or gave preferential treatment to other flight attendants for "reasons unrelated to pregnancy and lactation," while denying the same accommodations or treatment to those who were pregnant or nursing. Compl. ¶¶ 186, 201, 244, 277, 292. Moreover, Frontier ignores that FMLA leave may or may not be due to one's own physical

10

or medical condition, as it also applies to leaves taken to care for family members. *Id*. ¶¶ 289–292 ("By assigning Plaintiffs and Class Members points for pregnancy-related absences, while excusing absences unrelated to pregnancy, such as those approved as FMLA leave for reasons unrelated to pregnancy and those due to a 'recognized disability,' Frontier has treated Plaintiffs and Class Members less favorably than other employees similar in their ability or inability to work."). And Plaintiffs specifically referred to Frontier's practice of excusing military leaves—which of course are not due to a physical or medical restriction—as another example of the discriminatory application of the Dependability Policy. *Id*. ¶ 41. Data on how Frontier treats absences for reasons other than physical or medical restrictions—for example, care for their family members, jury duty, union activities, and the like—are therefore highly relevant to Plaintiffs' claims.

Finally, the text of WANMA and PWFA make clear that discovery of all accommodations—not merely physical or medical accommodations—is relevant. PWFA explicitly states that evidence that similar accommodations have previously been granted is relevant to the inquiry into whether Plaintiffs' requested accommodations impose an "undue hardship," yet nothing in the statute limits consideration to prior accommodations granted for medical reasons. *See* Colo. Rev. Stat. Ann. § 24-34-402.3(4)(c)(II).[7] Similarly, WANMA's "undue hardship" defense requires the Court to assess whether efforts to

---

[7] Further, PWFA is not, as Frontier argues, subject to the same legal analysis as *Young*. *See* Opp. 17–18. In enacting PWFA, the Colorado legislature expressly intended to extend protections beyond those offered by Title VII and CADA. *See* H.B. 1438, 70th Gen. Assemb., Reg. Sess. § 1(a) (Colo. 2016) ("Current workplace laws are inadequate to protect pregnant women."); *cf. Delanoy v. Township of Ocean*, 246 A.3d 188, 193–94 (2021) (construing New Jersey's law similar to Colorado PWFA as offering claims for failure to accommodate, not merely protection against disparate treatment).

comply with its requirements would impose "an undue hardship on the operation of the employer's business." Colo. Rev. Stat. Ann. § 8-13.5-103(2). Accommodations offered to others, regardless of the reason, are thus highly relevant to the "undue hardship" inquiry.

**B. The Requests for Discovery of "All Flight Attendants" Seek Information Relevant to Their Disparate Impact and Non-Accommodation Claims.**

Plaintiffs' requests for certain data concerning "all flight attendants" are relevant to their disparate impact claims.[8] Despite Frontier's conclusory assertions, the different natures of disparate treatment and disparate impact claims require different methods of proof, even when the same policies are challenged under both theories. The two sets of claims may therefore involve different comparator universes, and there is no basis to limit discovery only to those flight attendants who sought accommodations.

Plaintiffs' disparate impact claims require them to demonstrate that the challenged employment practices result in "significant adverse effects on [a] protected *group*[]"— here, pregnant and lactating flight attendants. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986–87 (1988) (emphasis in original). As stated in Plaintiffs' Motion, Mot.

---

[8] Frontier persists in asserting those claims are invalid because the discriminatory policies at issue facially target pregnant or breastfeeding flight attendants. Opp. 19 n.10. This Court has already ruled to the contrary. *See* (*Freyer*) ECF No. 129; (*Hodgkins*) ECF No. 87. Moreover, the suggestion that the PDA cannot support claims brought under a disparate impact theory at all directly conflicts with the Supreme Court's recognition that "[b]y making clear that an employer could not discriminate on the basis of an employee's pregnancy, Congress did not erase the original prohibition against discrimination on the basis of an employee's sex." *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 684–85 (1983). Accordingly, courts have uniformly recognized that the "framework applicable to Title VII disparate impact suits generally" is unaltered in the pregnancy context. *See Legg v. Ulster Cnty.*, 832 Fed. App'x 727, 731 (2d Cir. 2020); *Barrett v. Forest Labs.*, Inc., 39 F. Supp. 3d 407, 451 (S.D.N.Y. 2014) ("[T]he Court treats this [PDA] disparate impact claim the way it would any other.").

at 15–16, in pregnancy discrimination cases such as this one, courts routinely compare the effects of the challenged policies on pregnant employees to the policies' effects on all other employees—regardless of their ability to work. *See, e.g.*, *Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 819 (D.C. Cir. 1981) (holding that a maximum length of disability leave potentially caused a disparate impact on women employees of childbearing age compared to all others subject to union contract); *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996) (plaintiff could satisfy prima facie case by showing that "all or substantially all pregnant women" would be subject to lifting restriction, without reference to others with similar restrictions).

Here, Plaintiffs seek data for all flight attendants that will enable them to make the statistical showing of harm often required by courts to ultimately sustain Title VII disparate impact claims. *See* Mot. at 14–15. Specifically, they seek to show that Frontier's practices—specifically its refusal to accommodate pregnancy and breastfeeding, its in-flight pumping ban, and its practice of penalizing pregnancy-related absences—have harmful effects across the board on the terms and conditions of employment for pregnant and breastfeeding flight attendants, including by affecting their attendance records, pay, career advancement,[9] and job tenure relative to other employees. Ex. A, Interrogatory

---

[9] As explained in their opening brief, Plaintiffs seek certain data on hiring and promotions (Ex. C, Interrogatory No. 23; Ex. D, Request for Production No. 24) not to add additional claims, but to support their existing disparate impact claims and to establish commonality of harms. Data revealing that pregnant or breastfeeding flight attendants were hired or promoted at lower rates than others would tend to support both Plaintiffs' class certification and argument that pregnancy discrimination was Frontier's "standard operating procedure." *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 82 (S.D.N.Y. 2018); *see also Kennicott*, 327 F.R.D. at 471–74 (granting discovery related to "pregnancy discrimination, sexual harassment, hostile work environment, and retaliation" where plaintiffs pled

13

Nos. 6 (pay), 8 (separation), 14 (discipline), and 15 (Dependability Policy); Ex. B, RFP Nos. 5 (pay), 8 (separation), 14 (discipline), and 15 (Dependability Policy); Ex. C, Interrogatory Nos. 18 (termination), 20 (Dependability Policy), 22 (attendance), and 23 (advancement); Ex. D, RFP Nos. 22 (Dependability Policy) and 24 (advancement).

The information sought is also of particular relevance to Plaintiffs' claims that do not involve accommodations at all, but rather concern policies applicable to *all* flight attendants, such as the Dependability Policy and the prohibition on pumping during flight. For example, a statistical showing that relatively few or no pregnant women attained perfect attendance records, while only non-pregnant individuals attained perfect records (Ex. C, Interrogatory No. 22), would be a powerful indicator of the disparate impact of the Dependability Policy on pregnant women, as well as its common effects across the class. Mot. at 9; *see also Hills*, 2021 WL 3088629, at *5. Frontier's limitation would prevent Plaintiffs from making this showing, because individuals with perfect attendance records may not have sought accommodations in connection with any absences accrued.

---

only discrimination in performance evaluations, pay, and promotions, because the former could show a "culture of bias"). The cases Frontier relies upon are therefore inapposite, and the fact that Plaintiffs are not specifically alleging discrimination in hiring and promotions does not preclude them from seeking such data. *See Allen v. Wal-Mart Stores, Inc*. No. 19-CV-03594-KLM, 2021 WL 2823229, at *1–2 (D. Colo. Jan. 6, 2021) (precluding discovery of promotion data where plaintiff attempted to raise a failure to promote claim without having exhausted administrative process); *Hills v. Motel 6*, 205 F.R.D. 490, 493 (S.D. Ohio 2001) (limiting plaintiff's discovery requests for personnel files because he had pled only a disparate treatment claim and no disparate impact claim); *Lafate v. Vanguard Group, Inc*. No. 13-CV-5555, 2014 WL 4384510, at *6, *8 (E.D. Pa. Sept. 5, 2014) (denying plaintiff's motion to compel discovery because he had not identified a policy alleged to have a disparate impact); *DCP Midstream, LP v. Anadarko Petroleum*, 303 P.3d 1187, 1197–98 (Co. 2013) (in case where plaintiff sought discovery to bring additional claims, holding only that the trial court erred in failing to take "an active role managing discovery" and making "no findings about the appropriate scope of discovery").

The same is true for the inflight pumping ban: data revealing few or no disciplinary actions taken against flight attendants for taking breaks, who may never have sought an accommodation, are relevant to showing both that pumping is treated worse than breaks taken for other purposes (disparate treatment) and that the policy has disparate effects on breastfeeding employees (disparate impact). Proving these claims requires information on all flight attendants disciplined for taking breaks. As restroom breaks generally are situations in which employees may be unable to perform their duties, *all* flight attendants during those breaks are "similar in their . . . inability to work." *Young*, 135 S. Ct. at 1354; *Falk*, 2012 WL 2390556, at *4 ("If lactation is a natural consequence of pregnancy, then expressing milk is equivalent to any other involuntary bodily function."). These claims do not hinge on accommodations but rather concern the fundamentally discriminatory nature of policies that fail to account for pregnancy and breastfeeding. *See, e.g.*, *Johnson Controls*, 499 U.S. at 198 (fetal protection policy prohibiting fertile women from holding certain positions was facially discriminatory); *Lynch v. Freeman*, 817 F.2d 380, 388 (6th Cir. 1987) (unsanitary construction site restrooms had disparate impact on women as "anatomical differences" caused women to suffer "identifiable health risks" men did not); *Johnson v. AK Steel Co.*, No. 1:07-CV-291, 2008 WL 2184230, at *8 (S.D. Ohio May 23, 2008) (construction site's lack of restrooms had disparate impact on women due to "obvious anatomical and biological differences between men and women and the unique hygienic needs of women").

## CONCLUSION

Plaintiffs respectfully request this Court grant Plaintiffs' Motion to Compel.

Dated: October 15, 2021

By: /s/ *Jayme Jonat*
Jayme Jonat
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE
AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10019
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: ksebaski@hsgllp.com

Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org

Juno Turner
TOWARDS JUSTICE
2840 Fairfax St., Suite 220
Denver, CO 80207
Phone: 720-441-2236
Email: juno@towardsjustice.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re FRONTIER AIRLINES LITIGATION | Civil Action No. 19-cv-03468-CMA-MEH (Consolidated with Civil Action No. 19-cv-03469-CMA-MEH)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL COMPARATOR DATA [ECF NO. 98]** |

## Certificate of Service

I hereby certify that on this 15th day of October, 2021, I caused a true and correct copy of the foregoing Plaintiffs' Reply in Support of Their Motion to Compel Comparator Data to be served electronically on all counsel of record via the Court's ECF filing system.

/s/ Jayme Jonat
Jayme Jonat, Esq.