UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re FRONTIER AIRLINES LITIGATION | Civil Action No. 19-cv-03468-CMA-MEH (Consolidated with Case No. 19-cv-03469-CMA-MEH) <br><br> **PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDER [ECF NO. 135]** |

## INTRODUCTION

Plaintiffs respectfully submit the following objections to the discovery order dated October 25, 2021 on Plaintiffs' motions to compel ("Order"). *See* 19-cv-03468, ECF No. 135 (*Freyer*); 19-cv-03469, ECF No. 105 (*Hodgkins*). Though the Order arose in the context of a discovery dispute, it concerns the merits of a dispositive issue in the case— the scope of permissible comparators in a pregnancy discrimination action. The premature determination of ultimate legal issues may prevent Plaintiffs from being able to present the substance of their claims to the Court at the appropriate time. Because this ruling is both legally erroneous and highly prejudicial, Plaintiffs' objections should be sustained and the motions to compel granted.

Plaintiffs are pilots and flight attendants who became pregnant and sought to breastfeed their children while working at Frontier. Plaintiffs allege they were forced to take unpaid leave, prohibited from using breaks to address their needs related to lactation, and denied reasonable accommodations. Plaintiffs allege violations of Title VII and analogous Colorado state law under both disparate treatment and disparate impact theories. They further assert violations of state laws imposing affirmative obligations on employers to accommodate pregnancy and breastfeeding as well as the Family and

1

Medical Leave Act ("FMLA"). In both cases, Plaintiffs sought discovery into comparator data that is essential to their claims—i.e., data from Frontier regarding how its treatment of pregnant and breastfeeding pilots and flight attendants compares to its treatment of all others similar in their ability or inability to work. They further sought discovery related to the harmful impacts of the challenged policies on pregnant and breastfeeding pilots and flight attendants, as compared to non-pregnant employees in their respective job categories, for purposes of establishing their disparate impact claims and, in the case of the flight attendants, of establishing common injuries across the class. Frontier has resisted such discovery on grounds of both relevance and proportionality.

Plaintiffs filed motions to compel the production of comparator data in both cases,[1] resulting in over 100 pages of briefing. *See* 19-cv-03468, ECF Nos. 116, 122, 126, 127, 130, and 134 (*Freyer*); 19-cv-03469, ECF No. 98 (*Hodgkins*). Both motions were denied in a two-page decision adopting Frontier's restrictive limitation of the comparator universe to pilots and flight attendants requiring accommodations due to their own *medical or physical restrictions*. Order 1–2.

This ruling is legally erroneous. First, it misconstrues the holding in *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015), in which the Supreme Court's analysis of the relevant comparators was not limited to those with medical or physical limitations, but rather included employees who were unable to work for a variety of

---

[1] At issue are Plaintiffs' Interrogatories Nos. 6, 8, 14, 17, and 19 and Document Requests Nos. 8 and 14 in *Freyer*, and Interrogatories Nos. 6, 8, 14, 15, 18, 20, 22, and 23 and Document Requests Nos. 5, 8, 14, 15, 22, and 24 in *Hodgkins*. The discovery requests served in both cases are attached as Exs. A–G.

2

reasons, such as a DUI conviction. Second, it incorrectly reduces Plaintiffs' numerous causes of action to a single disparate treatment claim challenging failure to accommodate pregnancy and breastfeeding, thereby ignoring the distinct standards for proving (1) claims brought under the Colorado Pregnant Workers' Fairness Act ("PWFA") and the Workplace Accommodations for Nursing Mothers Act ("WANMA"); (2) claims pertaining to the flight attendants' Dependability Policy; (3) claims challenging Defendant's ban on pumping during flight; and (4) the numerous disparate impact claims asserting that the challenged policies disproportionately harmed pregnant and breastfeeding pilots and flight attendants. In other words, the Order misapplies the standard applicable to Plaintiffs' disparate treatment claims for failure to accommodate and applies the wrong standard to the remainder of Plaintiffs' claims.[2] Finally, the Order ignores the need for broad discovery into common injury in *Hodgkins*, a putative class action, and accepts Frontier's bald assertion of burdensomeness as to both cases without requiring it to satisfy its burden of demonstrating a lack of proportionality.

The Order's cramped—and wrong—interpretation of *Young* deprives Plaintiffs of the majority of the information relevant to proving some of their claims and may foreclose them from pursuing others at all. *See* Declaration of David Neumark ("Neumark Decl."). Accordingly, Plaintiffs respectfully request that the Court reverse the Order and grant their motions to compel.

---

[2] Plaintiffs' disparate treatment claims for failure to accommodate are only Claims 2, 4, 9, and 12 in the *Freyer* matter and Claims 1, 3, 10, and 13 in the *Hodgkins* matter. ECF No. 74 (*Freyer*); ECF No. 1 (*Hodgkins*). The Order entirely fails to address 9 of the 13 total claims in *Freyer* and 12 of the 16 total claims in *Hodgkins*.

## STANDARD OF REVIEW

In reviewing a magistrate judge's pretrial order, the district court must modify or set aside any portion that "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000). As to matters of law, the court conducts "an independent, plenary review," and must set the order aside where it either applied the incorrect legal standard or applied the appropriate legal standard incorrectly. *Beltran v. InterExchange, Inc.*, No. 14-CV-03074, 2018 WL 839927, at *3 (D. Colo. Feb. 12, 2018).

## ARGUMENT

I. **By Limiting Comparator Data to Those with Physical or Medical Limitations, the Order Applies a Standard Inconsistent with *Young v. UPS*.**

The Order misconstrues the ruling in *Young*, in which the Supreme Court recognized that an employer's failure to accommodate pregnancy—even with a facially neutral reason—may still be discriminatory. *Young* held that a plaintiff alleging failure to accommodate pregnancy can make out a prima facie case of disparate treatment by showing "[1] that she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others 'similar in their ability or inability to work.'" 135 S. Ct. at 1354. Once the prima facie case has been satisfied, even if the defendant comes forward with a neutral reason for the differential treatment, the plaintiff may still prove that the proffered reason is only pretextual. *Id.* at 1354–55.

The Order incorrectly interprets the fourth prong of the prima facie case to refer only to nonpregnant pilots and flight attendants with physical limitations or disabilities.

4

Order 1–2.[3] But *Young* imposed no such restriction. *Young* involved a UPS driver who was denied light duty as an accommodation for a lifting restriction resulting from her pregnancy. 135 S. Ct. at 1344. At summary judgment, Young introduced evidence that UPS offered light duty to employees not just for medical or disability reasons but also for other reasons—including at least one employee who lost their DOT certification after driving under the influence. *Id.* at 1346. The Court agreed that Young had created a genuine dispute of material fact as to the fourth prong in light of this evidence. *Id.* at 1355. Nowhere did the Court indicate that the only permissible comparator evidence would be those employees who sought accommodations due to their own physical limitations.

The Order relies on dicta from *Young*, in which the Court wrote that the phrase "similar in their ability or inability to work" "refer[s] to nonpregnant persons with similar disabilities." *Id.* at 1350; Order 1–2. Read in context, however, it is clear that the phrase "similar disabilities" refers not exclusively to physical disabilities, but rather to all limitations on the ability to work—regardless of their source. Indeed, lower courts applying *Young* have affirmed that the sole factor guiding comparator analysis is the nature of the limitation on the ability to work, rather than the underlying reason for the limitation. *See Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1286 (11th Cir. 2020)

---

[3] The Order incorrectly characterizes Plaintiffs as seeking comparator data for "virtually all Frontier employees, regardless of the existence of any physical limitation or disability whatsoever," Order at 2, when in fact, for purposes of showing disparate treatment, Plaintiffs seek comparator data only for pilots and flight attendants "similar in their ability or inability to work, regardless of the reason." ECF No. 116 ("*Freyer* Motion to Compel") at 2; ECF No. 98 ("*Hodgkins* Motion to Compel") at 2.

("[T]he comparator analysis under the PDA focuses on a single criterion—one's ability to do the job."); *Hills v. AT&T Mobility Servs., LLC*, No. 3:17-CV-556, 2021 WL 3088629, at *5 (N.D. Ind. July 22, 2021) ("[N]on-pregnant workers . . . can arguably be similar to [a plaintiff] 'in their ability or inability to work' simply by being . . . unable to perform any work, regardless of whether their . . . inability to work was caused by a medical or non-medical reason."); *Bonner-Gibson v. Genesis Eng'g Grp.*, No. 3:18-CV-00298, 2019 WL 3818872, at *10 & n.2 (M.D. Tenn. Aug. 14, 2019) (finding plaintiff satisfied the comparator analysis by identifying non-pregnant employees who received accommodations due to family obligations).

The Order further ignores that under *Young*, evidence showing that accommodations had been available to others, regardless of the reason, is relevant to the analysis of whether the justification offered is genuine or pretextual. *See Young*, 135 S. Ct. at 1354–55. The Supreme Court explicitly pointed to UPS' DOT accommodation policy—one that included employees requiring light duty for non-physical reasons, such as DUI convictions—in remanding to the Fourth Circuit to consider whether Young had created a genuine issue of material fact as to pretext. *Id.* at 1355. Just as it did not limit its prima facie analysis to comparators who required accommodations due to physical limitations, the Supreme Court did not indicate that the pretext analysis should be so limited. Rather, it directed the lower courts to consider "why, when the employer accommodated so many, could it not accommodate pregnant women as well?" *Id.* Because the Order imposes a limitation contrary to the Court's instruction in *Young*, Plaintiffs' objections should be sustained.

II. **The Order Ignores the Different Substantive Standards Applicable to Each of Plaintiffs' Claims and Extends Its Cramped Interpretation of Plaintiffs' Accommodation Claim to All of Plaintiffs' Claims.**

A. **The Order Improperly Limits the Comparator Universe for Plaintiffs' State-Law WANMA and PWFA Claims to Title VII Comparators.**

The Order further errs in failing to address Plaintiffs' claims under Colorado's WANMA and PWFA, which entitle Plaintiffs to evidence of all other pilots and flight attendants granted accommodations for *any* reason—not just those with *physical* restrictions. Both statutes impose an independent, affirmative obligation on employers to provide accommodations so long as they are either "reasonable" under WANMA or do not "impose an undue hardship" under PWFA, without reference to others similar in ability. Colo. Rev. Stat. Ann. § 8-13.5-104; Colo. Rev. Stat. Ann. § 24-34-402.3(1)(a)(I). PWFA explicitly states that evidence that similar accommodations have previously been granted is relevant to whether a plaintiff's requested accommodations impose an "undue hardship," and does not limit consideration to accommodations granted for medical reasons. Colo. Rev. Stat. Ann. § 24-34-402.3(4)(c)(II). Similarly, WANMA's "undue hardship" defense requires courts to assess whether efforts to comply would impose "an undue hardship on the operation of the employer's business." Colo. Rev. Stat. Ann. § 8-13.5-103(2). Accommodations offered to others, regardless of the reason, are thus highly relevant to the "undue hardship" inquiry. Therefore, there is no basis in the text of either PWFA or WANMA for the limitation the Order imposes.

B. **The Order Ignores Plaintiffs' Challenge to the Dependability Policy.**

The Order also ignores the relevance of the information sought relating to the *Hodgkins* Plaintiffs' challenge to the Dependability Policy. Plaintiffs claim Frontier

7

discriminated against pregnant flight attendants by penalizing them for absences by assigning them "dependability points," resulting in progressive discipline. All flight attendants assigned dependability points are relevant to this analysis. As one court recently held in a similar case challenging AT&T's points-based attendance policy, "non-pregnant workers . . . can arguably be similar to [the plaintiff] 'in their ability or inability to work' *simply by being absent*, by being unable to perform any work, *regardless of whether their absence and inability to work was caused by a medical or non-medical reason*." *Hills*, 2021 WL 3088629, at *5 (emphases added). Likewise, here, absence or tardiness alone—whatever the reason—is enough to render a flight attendant similar in inability to work to pregnant flight attendants like Plaintiffs.

Accordingly, Plaintiffs' disparate treatment claims entail a comparison of how Frontier treated pregnancy-related absences under the policy with absences for other medical and non-medical reasons, such as jury duty, bereavement, or caregiving for a family member. For purposes of their disparate impact claims, Plaintiffs will seek to demonstrate the policy's disparate effects on pregnant flight attendants—e.g., that they were assigned points at significantly higher rates (and had absences excused at lower rates) than those who were not pregnant; suffered a higher rate of disciplinary consequences than those who were not pregnant; and attained perfect attendance at significantly lower rates. To conduct these analyses, Plaintiffs seek to compare the rates of points accrual, excused absences, perfect attendance, and disciplinary actions between those who were pregnant and those who were not pregnant. Moreover, as Plaintiffs' expert witness, a labor economist, attests, the limited data permitted under the

Order would prevent an accurate statistical analysis of both the immediate and longer-term effects of the challenged policies. *See* Neumark Decl. ¶¶ 5–14. Because the limit contained in the Order bears no relationship to the facts alleged or the law governing the challenge to the Dependability Policy, it is erroneous.

### C. The Order Errs in Ignoring Plaintiffs' Claims Related to Pumping During Flight, Which Are Not Tied to Medical Accommodations.

To support their claims related to the ban on use of breaks for pumping, Plaintiffs seek information on disciplinary actions taken against *any* flight attendant or pilot for taking breaks during flights. The Order ignores that with respect to those claims, *all* pilots and flight attendants are similar in their inability to work to those who are breastfeeding.

Plaintiffs seek to show that in banning use of breaks for pumping, Frontier treated pilots and flight attendants who asked to take breaks to pump worse than those who took breaks for any other reason, such as using the restroom or stretching one's legs to relieve cramping. The relevant comparator group is not limited to those who required accommodations because Frontier's policies regarding the use of breaks apply to everyone, not just those who required accommodations. And all pilots or flight attendants have taken breaks to stretch their legs or use the restroom at one point. Many or most breaks taken during flight, whether to pump or to use the restroom, are situations in which employees may be temporarily unable to perform their duties; thus, all flight attendants and pilots are potentially "similar in their . . . inability to work" during such breaks. *Young*, 135 S. Ct. at 1354; *see Falk v. City of Glendale*, No. 12-CV-00925, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) ("If lactation is a natural consequence

of pregnancy, then expressing milk is equivalent to any other involuntary bodily function. Therefore, if other coworkers were allowed to take breaks to use the restroom while lactating mothers were banned from pumping, discrimination might exist."). Because the Order fails to address Plaintiffs' challenges to the airline's in-flight pumping ban, it should be set aside.

### D. The Order Errs in Limiting Comparators for Plaintiffs' Disparate Impact Claims to Others Who Required Accommodations.

The Order further errs by ignoring Plaintiffs' disparate impact claims and thus failing to apply the correct standard to assess the relevance of the information sought. A disparate impact claim involves the "consequences of employment practices," *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971), and requires a plaintiff to show that a particular employment practice caused "discrimination against a protected group." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 997 (1988). There is no single, uniformly applied method for demonstrating disparate impact. Rather, "[d]isparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims." *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014).

Plaintiffs' discovery requests are aimed at making a statistical showing of disparate effects of the challenged policies and practices on pilots and flight attendants who have been pregnant or breastfed relative to those who have not. Plaintiffs seek to prove, for example, that pregnant and breastfeeding flight attendants and pilots both required and were denied accommodations, including leave, ground positions, and breaks for pumping, more frequently than flight attendants and pilots who were not pregnant or breastfeeding, and that Frontier's refusal to provide such accommodations

10

caused them to disproportionately experience various harms, such as lost income and employment benefits and disciplinary action. *See* Neumark Decl. ¶¶ 3–4. Plaintiffs also seek to demonstrate other, longer-term negative outcomes resulting from the challenged policies, such as pregnant and breastfeeding pilots and flight attendants obtaining lower rates of promotion and higher rates of discharge or separation from Frontier than other flight attendants and pilots.[4] *Id.* ¶ 4. And critically, as discussed below, because *Hodgkins* is a putative class action, the flight attendant Plaintiffs must also establish that these harms were common across the class.

In order to demonstrate these disproportionate, harmful effects, Plaintiffs seek to draw comparisons between the policies' adverse effects on flight attendants or pilots who have been pregnant or breastfed and their effects on other flight attendants or pilots *as a whole*—not only those who required accommodations. Such comparison is consistent with courts' application of both Title VII and the Pregnancy Discrimination Act. For example, in *Warshawsky*, the court considered a challenge to a policy containing a cap on the number of permissible sick leave days. *U.S. E.E.O.C. v. Warshawsky & Co.*,

---

[4] Plaintiffs allege and intend to prove that the challenged policies harm all or most pregnant and breastfeeding flight attendants and no flight attendants who are not pregnant or breastfeeding, and therefore have a discriminatory impact per se. *See, e.g., Legg v. Ulster Cty.*, 832 Fed. App'x 727, 731–32 (2d Cir. 2020) (noting no requirement to demonstrate "statistically significant impact" to make out a prima facie disparate impact case if plaintiff could show that all or most pregnant correction officers would need an accommodation); *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 813 (5th Cir. 1996) (stating that evidence that "all or substantially all pregnant women" would have a lifting restriction similar to plaintiff's would be sufficient to show disproportionate effects of lifting requirement, without need for statistical evidence). But Plaintiffs have sought data necessary to make, in the alternative, a statistical showing of some of the concrete effects of Frontier's discriminatory policies, as some courts have required.

768 F. Supp. 647, 650 (N.D. Ill. 1991). In addressing disparate impact, the court correctly rejected the defendant's proposal to limit the comparison of the effects on pregnant employees only to those who had also taken sick leave—essentially, the same standard applied by the Order—finding it would be contrary to both the purpose of the Pregnancy Discrimination Act and to general principles of a disparate impact analysis.[5] *See id.* at 652–54 (citing *Griggs*, 401 U.S. 424); *see also Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 819 (D.C. Cir. 1981) (finding a maximum length of disability leave could have a disparate impact on women employees of childbearing age compared to all others subject to union contract).

Moreover, as a practical matter, limiting the comparator data to flight attendants and pilots *who required accommodations for medical reasons* would "significantly understate" the difference in outcomes between pregnant/breastfeeding pilots and flight attendants and their non-pregnant peers. Neumark Decl. ¶¶ 10–14. Because the Order applies an unduly narrow and incorrect legal standard for disparate impact claims and would prevent Plaintiffs from conducting an accurate statistical measurement of the outcomes for pregnant/breastfeeding pilots and flight attendants, it should be set aside.

---

[5] *Cf. Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977) (comparing racial composition of school's teaching staff to all qualified public school teachers in relevant labor market); *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 604–05 (1st Cir. 1995) (comparing composition of workers admitted to union versus entire locally available labor force).

### III. The Order Fails to Consider that Putative Class Actions are Entitled to Broad Discovery, and that Plaintiffs' Requests are Proportionate.

Finally, the Order errs in ignoring the need for broad class discovery in *Hodgkins* and in failing to address proportionality, accepting Frontier's burdensomeness objection at face value.

In *Hodgkins*, the discovery sought is essential for purposes of demonstrating commonality, typicality, and predominance, as required under Rule 23. *See Kennicott v. Sandia Corp.*, No. CV 17-188, 2018 WL 2206880, at *2 (D.N.M. May 14, 2018), *aff'd*, 327 F.R.D. 354 (D.N.M. 2018) ("The scope of discovery in a Title VII employment discrimination class action case is even broader, in part because the requirements of Rule 23 constitute a high standard for the plaintiffs to overcome to have their class certified."). Most relevant here, the discovery sought is relevant to—and necessary for—the Court's consideration of the Rule 23 factors by allowing Plaintiffs to identify common, harmful effects of the challenged policies across the class. *See, e.g.*, *Infinity Home Collection v. Coleman*, No. 17-MC-00200, 2018 WL 1733262, at *3 (D. Colo. Apr. 10, 2018) (granting pre-certification discovery on topics relevant to commonality); *In re Urethane Antitrust Litig.*, No. 04-MD-1616, 2006 WL 2620347, at *2 (D. Kan. Aug. 25, 2006) ("[D]iscovery on class certification is not a matter of ascertaining whether Plaintiffs will prevail on the merits, but whether the moving party can establish that the discovery is pertinent to the . . . class certification requirements . . . ."). The Order fails to

acknowledge these considerations, much less analyze why these presumptions should be overridden with respect to the specific contested discovery requests.

The Order further fails to require Defendant to satisfy its burden of demonstrating that the discovery sought was not proportionate to the needs of the cases, or to apply the test necessary to assess proportionality under Fed. R. Civ. P. 26(b)(1). Indeed, the Order mischaracterizes Plaintiffs' requests when it stated that Plaintiffs have sought production of comparator information "*involving virtually all Frontier employees*." Order at 2 (emphasis added). In fact, Plaintiffs seek only data on pilots and flight attendants and not for example, on baggage handlers or customer service personnel, and do not seek their entire personnel files but only discrete information (such as pay and discipline data) regarding each.

Frontier has made no showing as to the burden imposed by any specific request.[6] To the contrary, it has disclosed that much of the data Plaintiffs seek exists in an easily accessible database. *See Hodgkins* Motion to Compel at 19. And as a publicly traded company that stated $550 million in total revenue in its most recent quarterly report,[7] Frontier has ample resources to make the requested productions. Moreover,

---

[6] Although Plaintiffs raised the issue of proportionality at prior discovery conferences (*see, e.g.*, ECF No. 76) and in their motions to compel, Frontier declined to address that issue in its responses, arguing that a relevance determination was necessary first. *See* ECF No. 130 at 3 n.1 (*Freyer*). Contrary to Frontier's assertions, the issue was squarely presented, and an inquiry into proportionality and burden would not be premature, as courts regularly consider these factors at the motion to compel stage. *See, e.g.*, *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064, 2018 WL 9662030, at *4–6 (D. Colo. Feb. 2, 2018) (assessing burden and proportionality in an order on a motion to compel prior to class certification); *Kennicott*, 2018 WL 2206880, at *3–4 (same).
[7] *See* Frontier Group Holdings, Inc. Form 10-Q, period ending June 30, 2021, https://ir.flyfrontier.com/node/6971/html.

Case 1:19-cv-03468-CMA-MEH   Document 139   Filed 11/08/21   USDC Colorado   Page 15 of 17

Plaintiffs have repeatedly offered to receive a representative sample for those categories of data that Frontier can establish are unduly burdensome to produce. In any event, even if the Court were to find that a specific discovery request is too broad, or that certain data is unnecessary to demonstrate the disparate effects of the challenged policies (e.g., specific requests for data relating to promotion or separation), it should only deny the motions to compel with respect to those *specific discovery requests*, rather than categorically—and arbitrarily—limiting comparators across all the various forms of data sought to those physically unable to work without accommodations.

## CONCLUSION

Plaintiffs respectfully request this Court set aside the Order and grant their motions to compel.

Dated: Nov. 8, 2021                                  By: /s/ Jayme Jonat_____

Jayme Jonat
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP, IN COOPERATION WITH THE AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10019
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: ksebaski@hsgllp.com

Galen L. Sherwin
Kathleen L. Xu
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819

15

Email: gsherwin@aclu.org
Email: kxu@aclu.org


Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

Juno Turner
TOWARDS JUSTICE
2840 Fairfax St., Suite 220
Denver, CO 80207
Phone: 720-441-2236
Email: juno@towardsjustice.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re FRONTIER AIRLINES LITIGATION | Civil Action No. 19-cv-03468-CMA-MEH (Consolidated with Civil Action No. 19-cv-03469-CMA-MEH)<br><br>**PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDER [ECF NO. 135]** |

## Certificate of Service

I hereby certify that on this 8th day of November, 2021, I caused a true and correct copy of the foregoing Plaintiffs' Objections to Discovery Order to be served electronically on all counsel of record via the Court's ECF filing system.

/s/ Jayme Jonat
Jayme Jonat, Esq.