|  | Civil Action No. 19-cv-03468-CMA-MEH (Consolidated with Case No. 19-cv-03469-CMA-MEH) |
|---|---|
| In re FRONTIER AIRLINES LITIGATION | **DECLARATION OF DAVID NEUMARK REGARDING PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDER [ECF NO. 135]** |

I, David Neumark, declare under penalty of perjury that the below statement is true and correct:

1.      I am a labor economist and the Distinguished Professor of Economics and Co-Director of the Center for Population, Inequality, and Policy at the University of California-Irvine. I have been retained as an expert in the above captioned cases to analyze the impacts of Frontier's policies and practices related to pregnancy and breastfeeding on pilots and flight attendants who have been pregnant or breastfed during their employment at Frontier.

2.      It is my understanding that the specific policies and practices being challenged include the policy of forcing pilots onto unpaid leave after 32 weeks of pregnancy; the penalization of pregnancy-related absences for flight attendants under the Dependability Policy; the ban on pilots' and flight attendants' use of in-flight breaks for pumping; and the failure to provide workplace accommodations for pilots and flight attendants who are pregnant and breastfeeding.

3.      My analysis would be aimed at identifying the impact of the challenged policies on pregnant/breastfeeding pilots and flight attendants. To assess this, I would

conduct analyses to compare certain outcomes for pregnant/breastfeeding pilots and flight attendants to the outcomes for workers. Those analyses would, at a minimum, fall into two different categories. First, I would attempt to assess the immediate effects of the policies on outcomes for pregnant/breastfeeding pilots and flight attendants as compared to other pilots and flight attendants who were similarly limited in their ability to work or required similar accommodations, whether for medical reasons or other reasons. I will refer to this set of questions as **Question 1**.

4.       Second, in order to assess the common impacts of the challenged policies on pregnant/breastfeeding pilots and flight attendants, I would attempt to assess the immediate and longer-term effects of the policies and practices on certain outcomes for pregnant/breastfeeding pilots and flight attendants versus all other pilots and flight attendants affected by the policies. (For example, rates of promotion might be lower due to disciplinary consequences from violating the challenged policies.) I will refer to this set of questions as **Question 2**.

5.       It is my understanding that under the Order, I would only have access to data on those pilots and flight attendants who required accommodations *for reasons related to their own medical or physical limitations*. This would constitute a small and biased subset of the relevant data sets, and would impair me from conducting the necessary analyses for either Question 1 or Question 2.

6.       With respect to Question 1, I would not have access to data on pilots and flight attendants who were limited in their ability to work for reasons other than their own medical or physical reasons. Those who are excluded from this data set may include,

for example, pilots and flight attendants with work limitations on their ability to fly similar to those of pregnant or breastfeeding pilots or flight attendants but for reasons such as childcare obligations, disciplinary issues, military leave, and care for other family members' medical issues.

7.      With respect to Question 2, I would be hampered from assessing both the immediate and longer-term, harmful outcomes on pregnant/breastfeeding pilots and flight attendants because I could only compare them to other pilots and flight attendants *who requested accommodations*, rather than including the remainder of the pilot/flight attendant groups subject to or affected by the policies in my analysis.[1]

8.      It is very simple to demonstrate that the data granted would be insufficient to answer either Question 1 or Question 2. To see this, let's consider a particular outcome—say, the probability of a promotion in some given window of employment. (The argument would apply for any outcome.) I simplify by ignoring other factors that might affect this outcome, like performance reviews, and focus simply on a comparison

---

[1] A subset of Question 2 concerns a comparison of the direct effects between pregnant/breastfeeding flight attendants and other flight attendants directly impacted by the Dependability Policy in ways that do not concern *accommodations requests at all*. For example, for purposes of the challenge to the Dependability Policy, I would compare the rates at which pregnant flight attendants were assigned disciplinary "points," granted excused absences, and disciplined under the policy to the rates among flight attendants who were late/absent for other reasons, including for non-medical reasons. The limited data permitted under the Order would exclude not only those who sought accommodations for reasons other than their own medical or physical limitations, but also those who did not *seek accommodations at all*—those who were simply absent/tardy because they were *unable to work*. Finally, it would exclude flight attendants with perfect attendance records, who may or may not have sought excused absences, but would be necessary to draw a comparison between the rates of perfect attendance between pregnant flight attendants and all other flight attendants subject to the policy.

of promotion probabilities.[2] To answer question (1), I would conduct the computation in the following table, where I use hypothetical numbers:

| | | Excluding pregnant/breastfeeding pilots and flight attendants | | |
|---|---|---|---|---|
| | Pregnant/ breastfeeding pilots and flight attendants | Other pilots and flight attendants with work limitations similar to pregnancy/breastfeeding or requiring accommodation for medical/physical *or other reasons* | Other pilots and flight attendants requiring accommodation for medical/physical reasons | Other pilots and flight attendants with work limitations similar to pregnancy/breastfeeding, excluding workers requiring accommodation for medical/physical reasons *or other reasons* |
| | (1) | (2) | (3) | (4) |
| Number promoted | 10 | 300 | 20 | 280 |
| Number eligible for promotion | 100 | 1000 | 100 | 900 |
| Probability of promotion | 0.1 | 0.3 | 0.2 | 0.31 |
| Data provided | Yes | Partial (column (3), but not column (4)) | Yes | No |
| True difference in promotion probability between pregnant/breastfeeding pilots and flight attendants and other pilots and flight attendants requesting accommodation for medical/physical or other reasons | -0.2 [column (1) – column (2)] | | | |
| Estimated difference in promotion probability, restricted to comparing pregnant/breastfeeding pilots and flight attendants to other pilots and flight attendants requesting accommodation for medical/physical reasons | -0.1 [column (1) – column (3)] | | | |

9.      The data granted would include the data in column (1) and in column (3), but not the data in column (4). But I would need the data in columns (3) <u>and</u> (4) to do the right comparison between columns (1) and (2), and I can only construct the data in column (2) if I get the data in column (3) <u>and</u> column (4).

---

[2] Factors like performance reviews and seniority might be added as control variables in a regression model for promotions, but the argument would be the same.

10.     Because I would have only the data in columns (1) and (3), the only comparison I could compute would indicate that pregnant/breastfeeding pilots and flight attendants experience a promotion rate that is lower by 0.1 (10 percentage points). This shortfall is smaller than the actual shortfall of interest—the shortfall between pregnant/breastfeeding pilots and flight attendants and other pilots and flight attendants with work limitations similar to theirs or requiring accommodation for medical/physical *or other reasons*. The latter shortfall is 0.2 (20 percentage points), implying that the limited data allowed by the Order could potentially significantly understate the shortfall in promotion rates for pregnant/breastfeeding pilots and flight attendants, leading to a potentially biased estimate.

11.     I would face the identical problem in trying to answer Question 2—the impact of the policies on outcomes for pregnant/breastfeeding pilots and flight attendants vs. all other pilots and flight attendants. I would use the computation in the following table, where I again use hypothetical numbers:

| | Pregnant/ breastfeeding pilots and flight attendants | Excluding pregnant/breastfeeding pilots and flight attendants | | |
| --- | --- | --- | --- | --- |
| | | All pilots and flight attendants | Only other workers requesting accommodation for medical/physical reasons | All workers excluding those requesting accommodation for medical/physical reasons |
| | (1) | (2) | (3) | (4) |
| Number promoted | 10 | 3000 | 20 | 2980 |
| Number eligible for promotion | 100 | 10000 | 100 | 9900 |
| Probability of promotion | 0.1 | 0.3 | 0.2 | 0.3 (rounding) |
| Data provided | Yes | Partial (column (3), but not column (4)) | Yes | No |
| True difference in promotion probability between pregnant/breastfeeding pilots and flight attendants and all other pilots and flight attendants | -0.2 [column (1) – column (2)] | | | |
| Estimated difference in promotion probability, restricted to comparing pregnant/breastfeeding pilots and flight attendants to other workers requesting accommodation for medical/physical reasons | -0.1 [column (1) – column (3)] | | | |

12.     Again, the data granted would include the data in column (1) and in column (3), but not the data in column (4). But I would need the data in columns (3) and (4) to do the right comparison between columns (1) and (2), and I can only construct the data column (2) if I obtain the data in column (3) and column (4).

13.     Because I would have only the data in columns (1) and (3), the only comparison I could compute would indicate that pregnant/breastfeeding pilots and flight attendants experience a promotion rate that is lower by 0.1 (10 percentage points). This shortfall is smaller than the actual shortfall of interest—the shortfall between pregnant/breastfeeding pilots and flight attendants and all other pilots and flight attendants. The latter shortfall is 0.2 (20 percentage points), implying, again, that the limited data allowed by the Order could potentially significantly understate the shortfall

in promotion rates for pregnant/breastfeeding pilots and flight attendants, leading to a potentially biased estimate.

14.     Aside from the potential bias introduced by the data restrictions, the limited data allowed by the Order would restrict the sample size—i.e., the number of observations in the comparison groups. This makes it less likely that I would find statistically significant shortfalls in answering Questions One or Two because—all else being equal—statistical significance declines with the number of observations available.

Dated: November 8, 2021

By: _____

David Neumark