IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-3468-CMA-MEH

In re FRONTIER AIRLINES LITIGATION

_____

**ORDER OVERRULING OBJECTIONS AND AFFIRMING ORDER**
_____

This matter is before the Court on Plaintiffs' Objections (Doc. # 139) to Magistrate Judge Hegarty's October 25, 2021, Discovery Order (the "Discovery Order," Doc. # 135). For the following reasons, the Objections are overruled, and the Discovery Order is affirmed.

### I.  BACKGROUND

**A.  FACTUAL BACKGROUND**

This is a putative class action brought by pilots who work for Defendant Frontier Airlines, Inc. ("Defendant" or "Frontier"). (Doc. # 74.) Plaintiffs allege that Frontier discriminated against them and failed to accommodate their "needs related to pregnancy and breastfeeding" which "caused them to suffer serious penalties, both at and outside of work, simply because they had children." (*Id.* at ¶¶ 1–2.) Plaintiffs allege that they were forced to take unpaid leave during their pregnancies and were denied accommodations to pump breastmilk once they returned from their pregnancy leave. (*Id.* at ¶¶ 2–3.)

Plaintiffs assert thirteen causes of action against Frontier, based on what they describe as "Frontier's systemic, pervasive and discriminatory employment policies and practices." (Doc. # 74 at ¶ 7.) They allege violations of: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (2) the Colorado's Pregnant Workers Fairness Act, C.R.S. § 24-34-402.3 ("PWFA"); (3) Colorado's Workplace Accommodations for Nursing Mothers Act, C.R.S. § 13-1-124(1) ("WANMA"); and (4) the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 ("CADA"). (Doc. # 75 at ¶ 7.)

**B.     THE MOTION TO COMPEL AND DISCOVERY ORDER**

On August 27, 2021, Plaintiffs filed a Motion to Compel Comparator Data. (Doc. # 116.) The Parties dispute the scope of comparator data that Frontier is required to provide. In written discovery requests to Defendant, Plaintiffs requested that Frontier provide comparator data "for all its pilots regarding pay, separation/termination, promotions, discipline, and accommodations, including requests for leave." (Doc. # 116 at 3.) Frontier objects to the discovery request as overly broad.

Plaintiffs argue that they should be given wide latitude with respect to their discovery of comparator data. For their failure to accommodate claims, Plaintiffs seek discovery "related to relevant policies and disciplinary actions against all pilots who took breaks during flight for any reason." (Doc. # 116 at 7.) For their disparate treatment claims, Plaintiffs seek discovery regarding "accommodations Frontier granted to other pilots similar in their ability to work." (*Id.* at 7–9.) For their WNMA and PWFA claims, Plaintiffs seek discovery related to accommodations Frontier provided to others. (*Id.* at 9.)

In contrast, Defendant seeks to limit the comparator data discovery to those pilots who requested accommodations. (Doc. # 122.) Specifically, Defendant argues that comparator data should be limited to Frontier pilots who: (1) "were not pregnant or experiencing a pregnancy-related condition, but who" (2) "were unable to work due to their own physical limitations or restrictions of some kind without some form of accommodation." (Doc. # 122 at 13.)

On October 25, 2021, the magistrate judge issued the Discovery Order. (Doc. # 135.) The magistrate judge determined that Plaintiffs' discovery request is overbroad. Thus, the magistrate judge adopted Defendant's proposed comparator universe, as amended by the Court:

> [A]ll [pilots] over the relevant time period who were unable to work for any length of time due to their own disabilities, medical conditions, physical limitations or restrictions of any kind without some form of accommodation.

(*Id.* at 2.) The magistrate judge further noted that Plaintiffs "have not established at this point that production of comparator information on such a broad scope . . . is warranted." (*Id.*) However, the magistrate judge stated that Plaintiffs "may request a supplemental discovery conference for the purpose of expanding production of comparator information" if Plaintiffs have a "reasoned argument" that discovery is insufficient to advance their anticipated motions to certify a class. (*Id.*)

Plaintiffs filed their Objections on November 8, 2021. (Doc. # 139.) Defendant did not file a response to the Objections.

## II.     LEGAL STANDARD

Under Rule 72(a) of the Federal Rules of Civil Procedure, a district court may reverse a magistrate judge's decision on a non-dispositive matter only if the decision is found to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous standard . . . requires that the reviewing court affirm unless it "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). "The contrary to law standard permits plenary review as to matters of law, but the Court will set aside a Magistrate Judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly." *Seidman v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-3193-WJM-KMT, 2016 WL 6518254, at *1 (D. Colo. Nov. 3, 2016) (citations, internal quotations, and alterations omitted).

## III.     ANALYSIS

Plaintiffs argue that the Discovery Order's "cramped—and wrong—interpretation of . . . [*Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1343 (2015)] deprives Plaintiffs of the majority of the information relevant to proving some of their claims and may foreclose them from pursuing others at all." (Doc. # 139 at 3.) Thus, because Plaintiffs' arguments center on *Young*, the Court first analyzes *Young* and then addresses each objection in turn.[1]

---

[1] In light of the settlement reached in *Hodgkins v. Frontier Airlines, Inc.*, Case No. 19-cv-03469, Plaintiffs have withdrawn portions of their objections, including Sections II.B and III. (Doc. # 147.)

In *Young*, the plaintiff was a part-time driver for United Parcel Service ("UPS"). *Young*, 135 S. Ct. at 1344. After several miscarriages, the plaintiff became pregnant, and her doctor told her that "she should not lift more than 20 pounds during the first 20 weeks of her pregnancy or more than 10 pounds thereafter." *Id.* UPS drivers were required to be able to lift parcels weighing up to 70 pounds—and up to 150 pounds with assistance. UPS told the plaintiff that she could not work while she was under a lifting restriction. Thus, the plaintiff stayed home without pay during the majority of her pregnancy, and she eventually lost her medical coverage. *Id.*

The plaintiff filed suit, arguing that UPS acted unlawfully in failing to accommodate her restrictions. The plaintiff also argued that UPS was required to accommodate her like other drivers who were accommodated and were "similar . . . in their inability to work." *Id.* As part of her evidence, the plaintiff pointed to UPS's accommodation of other individuals, including: (1) "workers injured on the job"; (2) "those suffering from ADA disabilities"; and (3) "those who had lost their DOT certifications." *Id.* at 1347.

The Supreme Court reiterated that the "Pregnancy Discrimination Act ["PDA"] makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Id.* at 1343. Thus, pursuant to Title VII, employers must treat "women affected by pregnancy, childbirth, or other related conditions . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). A plaintiff can establish a prima facie case of pregnancy discrimination by showing: "[1] that she belongs to the

5

protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others 'similar in their ability or inability to work.'" *Young*, 135 S. Ct. at 1354.

The Supreme Court's analysis turned on the meaning of "similar in their ability or inability to work." *Id.* at 1348. Indeed, the Supreme Court recognized that this phrase could be interpreted many ways:

> Does this clause mean that courts must compare workers *only* in respect to the work limitations that they suffer? Does it mean that courts must ignore all other similarities or differences between pregnant and nonpregnant workers? Or does it mean that courts, when deciding who the relevant "other persons are, may consider other similarities and differences as well? If so, which ones?

*Id.* at 1348–49. Ultimately, the Supreme Court rejected a broad interpretation of the phrase "similar in their ability or inability to work." The court noted that the clause "does not say that the employer must treat pregnant employees the "same" as "*any* other persons" (who are similar in their ability or inability to work), nor does it otherwise specify *which* other persons Congress had in mind." *Id.* at 1350 (emphasis in the original).

Ultimately, the *Young* court determined that a plaintiff can demonstrate an employer's proffered reasons for disparate treatment are pretext for pregnancy discrimination by "providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Id.* at 1354. Under the facts of *Young*, the Supreme Court stated that the plaintiff in that case could "show that UPS accommodates most nonpregnant employees with lifting limitations while categorically failing to accommodate pregnant

6

employees with lifting limitations." *Id.* Thus, the Supreme Court's opinion suggests that the scope of comparator data will depend on the facts of each case.

Turning now to the facts of this case, the Court addresses each of Plaintiffs' objections, which center on the fourth prong of the prima facie test and what comparator data Plaintiff needs to demonstrate accommodations of others who were "similar in their ability or inability to work."

First, Plaintiffs contend that the magistrate judge misconstrued the Supreme Court's ruling in *Young* because it "incorrectly interprets the fourth prong of the prima facia case to refer only to nonpregnant pilots and flight attendants with physical limitations or disabilities." (Doc. # 139 at 4–6.) Plaintiffs argue that they are required to demonstrate that Frontier accommodated "others 'similar in their ability or inability to work,'" which would include all pilots, not just those with physical limitations or disabilities. (*Id.* at 4.) The Court disagrees with Plaintiffs. In *Young*, the Supreme Court rejected a broad interpretation of the fourth prong. *Young*, 135 S. Ct. at 1350. Further, the Supreme Court recognized that the plaintiff in *Young* "can show that UPS accommodates most nonpregnant employees with lifting limitations while categorically failing to accommodate pregnant employees with lifting limitations." *Id.* at 1354. Thus, given that Judge Hegarty is permitting similar discovery regarding pilots who received accommodations, his interpretation of *Young* was not contrary to law.

Plaintiffs also argue that that the Discovery Order "ignores that under *Young*, evidence showing that accommodations had been available to others, regardless of the reason, is relevant to the analysis of whether the justification offered is genuine or

7

pretextual." (Doc. # 139 at 6.) Again, the Court disagrees with Plaintiffs' broad interpretation of *Young*. The court in *Young* stated that a plaintiff can prove the fourth prong by "providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Young*, 135 S. Ct. at 1355.

Here, Judge Hegarty is permitting discovery regarding pilots "who were unable to work for any length of time due to their disabilities, medical conditions, physical limitations or restrictions of any kind without some form of accommodation." (Doc. # 135 at 2.) Thus, the Discovery Order is not as limited as Plaintiffs suggest, because Plaintiffs are permitted to obtain discovery regarding pilots with restrictions, not just medical conditions, who received an accommodation from Frontier. Further, Judge Hegarty specifically stated that Plaintiffs could renew their discovery motion if the scope of discovery proves to be insufficient. Thus, Judge Hegarty's application of *Young* is not contrary to law or clearly erroneous on this basis.

Next, Plaintiffs argue that the Discovery Order improperly limits Plaintiffs' claims under WANMA and PWFA, which Plaintiffs argue entitles them to "evidence of all other pilots and flight attendants granted accommodations for *any* reason." (Doc. # 139 at 7.) Plaintiffs argue that such information would help them prove their claims because "[b]oth statutes impose an independent, affirmative obligation on employers to provide accommodations so long as they are either 'reasonable' under WANMA or do not 'impose an undue hardship' under PWFA." (*Id.*) However, Plaintiffs have cited to no case law that automatically entitles them to the broad discovery they seek.

8

Indeed, in reaching his decision, Judge Hegarty noted that he was considering the requirements of proportionality and relevance in reaching his decision. The Court agrees that the broad discovery requested by Plaintiffs—virtually all records of any pilot at Frontier during the relevant period—would be overly broad and unduly burdensome. Judge Hegarty appropriately balanced these concerns with Plaintiffs' needs for discovery. *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014) (noting that discovery must be bounded by principles of "proportionality, reasonableness, convenience, and common sense"). Thus, the Discovery Order was not clearly erroneous or contrary to law on this basis.

Plaintiffs also argue that the Discovery Order is erroneous because their claims related to bans on pumping are not tied to medical accommodations. (Doc. # 139 at 9.) Plaintiffs argue that they are entitled to comparator data regarding pilots who took breaks for any reason to support their claims related to pumping. However, the Court agrees with Frontier that pumping relates to medical needs. (*See* Doc. # 122 at 11–12.) Regardless, the Discovery Order is broad enough to encompass comparator data related to accommodations. If Plaintiffs find that the scope of discovery is insufficient, they are not foreclosed from requesting a discovery conference and seeking additional discovery. Accordingly, the Discovery Order is neither contrary to law nor clearly erroneous on this basis.

Finally, Plaintiffs argue that the Discovery Order is erroneous because it ignores "Plaintiffs' disparate impact claims and thus [fails] to apply the correct standard to assess the relevance of the information sought." (Doc. # 139 at 10–12.) However, as

9

noted above, the Discovery Order was not as limited as Plaintiffs suggest. Judge Hegarty is permitting discovery regarding "disabilities, medical conditions, physical limitations or restrictions of any kind" that required accommodation. (Doc. # 135 at 2.) A disparate impact claim can be proven by demonstrating that a plaintiff was treated differently than other employees with disabilities or medical needs. *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 (10th Cir. 2000). Accordingly, the discovery limitations set forth in the Discovery Order were not contrary to law or clearly erroneous.

Having reviewed Judge Hegarty's Discovery Order (Doc. # 135) and Plaintiffs' Objections (Doc. # 139), the relevant briefing and portions of the record, and applicable authority, the Court is satisfied that the Discovery Order is not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Court therefore overrules Plaintiffs' objections and affirms Judge Hegarty's ruling. *See Ariza*, 167 F.R.D. at 133 (D. Colo. 1996).

## IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that Plaintiffs' Objections (Doc. # 139) are OVERRULED, and the Discovery Order (Doc. # 135) is AFFIRMED.

DATED:  April 26, 2022

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge